**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*, | Case No. 24-10561 (VFP) |
| Debtors. [1] | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE APPOINTMENT OF**
**DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this application (the "Application"):[2]

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor
Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases
is:  1119 Colorado Avenue, Santa Monica, California 90401.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to
the Debtors' chapter 11 cases, is set forth in the *Declaration of Kent Percy, Chief Restructuring Officer of*

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):  (a) authorizing the Debtors to appoint Donlin, Recano & Company, Inc.

("DRC") as the claims and noticing agent (the "Claims and Noticing Agent") in the Debtors'

chapter 11 cases effective as of the Petition Date (as defined herein) pursuant to the terms and

conditions of that certain services agreement dated January 16, 2024, by and between the Debtors

and DRC (the "Services Agreement"), attached to Exhibit 1 to the Order, and (b) granting related

relief.  In support of this Application, the Debtors submit the *Declaration of Lisa Terry in Support*

*of the Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Donlin,*

*Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and*

*(II) Granting Related Relief* (the "Terry Declaration"), attached hereto as **Exhibit B**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Application to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

*Careismatic Brands, LLC, in Support of the Chapter 11 Petitions and First Day Motions*
(the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this
Application have the meaning ascribed to them in the First Day Declaration.

4.      The bases for the relief requested herein are section 156(c) of title 11 of the United States Code (the "Bankruptcy Code") and rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Careismatic" or the "Company"), are a leading global designer, marketer, and distributor of medical apparel uniforms, footwear, and accessories.  Founded in 1995, today Careismatic's distribution platform spans approximately 65 countries to serve a diverse base of retailers and customers across multiple channels, including specialty retail, mass retail, online marketplaces, and direct-to-consumer.  The Company has an extensive portfolio of iconic and emerging brands across the health and wellness platform, including Cherokee Uniforms, Dickies Medical, Heartsoul Scrubs, Infinity, Scrubstar, Healing Hands, Med Couture, Medelita, Classroom Uniforms, AllHeart, Silverts Adaptive Apparel, and BALA Footwear.  The combination of its geographic footprint, coupled with an expansive item profile, enables Careismatic to quickly and efficiently meet the needs of its valued customers worldwide.

6.      On January 22, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

## **DRC's Qualifications**

7.     DRC has significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  DRC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  DRC's recent and active cases include:  *In re Nogin, Inc., et al*., Case No. 23-11945 (Bankr. D. Del. 2023); *Novvi, LLC*, Case No. 23-90906 (Bankr. S.D. Tex. 2023); *Westlake Surgical, L.P. d/b/a The Hospital at Westlake Medical* Center, Case No. 23-10747 (Bankr. W.D. Tex. 2023); Polaris *Operating, LLC, et al*., Case No. 23- 32810 (Bankr. S.D. Tex. 2023); *Sherman/Grayson Hospital, LLC*, Case No. 23-10810 (Bankr. D. Del. 2023); *Paradox Resources, LLC, et al*., Case No. 23-90558 (Bankr. S.D. Tex. 2023); *Tritek International Inc., et al*., Case No. 23-10520 (Bankr. D. Del. 2023); *PLx Pharma Inc., et al*. (n/k/a *PLx Pharma Winddown Corp., et al*.), Case No. 23-10456 (Bankr. D. Del. 2023); *SiO2 Medical Products, Inc., et al*., Case No. 23-10366 (Bankr. D. Del. 2023); *The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244 (Bankr. N.D.N.Y. 2023); *The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. 2023); *In re HyreCar, Inc.*, Case No. 23-10259 (JTD) (Bankr. D. Del. 2023); *In re Lucira Health, Inc.*, Case No. 23-10242 (MFW) (Bankr. D. Del. 2023).

8.     Appointing DRC as the Claims and Noticing Agent in these chapter 11 cases will expedite and maximize the efficiency of the distribution of notices and the processing of claims, as well as relieve the Office of the Clerk of the Bankruptcy Court of the District of New Jersey (the "Clerk") of the administrative burden of processing an overwhelming number of claims.

9.     Prior to selecting DRC as their Claims and Noticing Agent, the Debtors solicited and reviewed engagement proposals from two other Court-approved claims and noticing agents to ensure selection through a competitive process.  The Debtors submit that DRC's rates are

competitive and reasonable given DRC's quality of services and expertise.  The terms of DRC's

engagement are set forth in the Services Agreement.

### Services to Be Provided by DRC

10.     This Application pertains only to the work to be performed by DRC under the

Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c).  Any work to be performed by

DRC outside of this scope is not covered by this Application or by any order of the Court granting

approval hereof.

11.     Subject to the Court's approval, at the request of the Debtors, and to the extent

necessary, DRC will perform the following tasks in its role as the Claims and Noticing Agent in

these chapter 11 cases (collectively, the "Claims and Noticing Services"), as well as all quality

control relating thereto:

(a)     preparing and serving required notices and documents in these
chapter 11 cases in accordance with the Bankruptcy Code and the
Bankruptcy Rules in the form and manner directed by the Debtors
or the Court, including, without limitation:  (i) notice of the
commencement of these chapter 11 cases and the initial meeting of
creditors under section 341(a) of the Bankruptcy Code (if any);
(ii) notice of any claims bar date; (iii) notices of transfers of claims;
(iv) notices of objections to claims and objections to transfers of
claims; (v) notices of any hearings on a disclosure statement and
confirmation of the Debtors' chapter 11 plan or plans, including
under Bankruptcy Rule 3017(d); (vi) notice of the effective date of
any plan; and (vii) all other notices, orders, pleadings, publications,
and other documents as the Debtors or the Court may deem
necessary or appropriate for an orderly administration of these
chapter 11 cases;

(b)     maintaining an official copy of the Debtors' schedules of assets and
liabilities and statements of financial affairs (collectively,
the "Schedules"), listing the Debtors' known creditors and the
amounts owed thereto;

(c)     maintaining a (i) list of all potential creditors, equity holders, and
other parties in interest and (ii) "core" service list consisting of all
parties described in Bankruptcy Rule 2002(i), (j), and (k), and those
parties that have filed a notice of appearance pursuant to Bankruptcy

Rule 9010, and updating said lists and making said lists available upon request by a party-in-interest or the Clerk;

(d)  furnishing a notice to all potential creditors of the deadline for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)  maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

(f)  for all notices, motions, orders, or other pleadings or documents served, preparing and filing, or causing to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes:  (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons or entities to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g)  processing all proofs of claim received, including those received by the Clerk, checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

(h)  providing an electronic interface for filing proofs of claim;

(i)  maintaining the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk on a case-specific website, and, upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers;

(j)  specifying in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(k)  providing public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(l)     implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(m)    recording all transfers of claims and providing any notices of such transfers, as required by Bankruptcy Rule 3001(e);

(n)    relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

(o)    upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(p)    monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and making necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q)    identifying and correcting any incomplete or incorrect addresses in any mailing or service lists;

(r)    monitoring the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alerting the filing party of such error and assisting them in correcting any such error;

(s)    assisting in the dissemination of information to the public and responding to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website or call center;

(t)    if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contacting the Clerk's office within three (3) days of DRC receiving notice to DRC of entry of the order converting the cases;

(u)    thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing DRC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(v)    within seven (7) days of notice to DRC of entry of an order closing these chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

        (w)      at the close of these chapter 11 cases:  (i) boxing and transporting all original documents, in proper format, as provided by the Clerk, to (1) the Philadelphia Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154, or (2) any other location requested by the Clerk.

12.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

13.     For the avoidance of doubt, this Application pertains only to services to be provided by DRC pursuant to 28 U.S.C. § 156(c) and does not seek approval for DRC to perform any services outside of that scope.  However, the Debtors reserve the right to seek authority to retain DRC to perform additional services pursuant to section 327 of the Bankruptcy Code.

**Professional Compensation**

14.     The Debtors respectfully request that the undisputed fees and expenses incurred by DRC in the performance of the Claims and Noticing Services in accordance with the terms of the Services Agreement be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

15.     DRC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  DRC further agrees to serve monthly invoices on (a) the Debtors, (b) the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee"), (c) counsel for the Debtors, (d) counsel for any official committee appointed to monitor the expenses of the Debtors in these chapter 11 cases, and (e) any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.    Prior to the Petition Date, the Debtors provided DRC a retainer in the amount of $40,000.  DRC seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

17.    Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless DRC and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from DRC's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or any order authorizing the employment and retention of DRC.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

**Disinterestedness**

18.    Although the Debtors do not propose to employ DRC under section 327 of the Bankruptcy Code pursuant to this Application, DRC has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and the Debtors have been advised that, to the best of DRC's knowledge, information and belief, and except as disclosed in the Terry Declaration, DRC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

19.    Moreover, in connection with its retention as Claims and Noticing Agent, DRC represents in the Terry Declaration, among other things, that:

(a)    DRC is not a creditor of the Debtors;

9

(b)      DRC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)      DRC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(d)      by accepting employment in these chapter 11 cases, DRC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(e)      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

(f)      DRC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(g)      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, DRC will not intentionally misrepresent any fact to any person;

(h)      DRC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)      DRC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)      none of the services provided by DRC as the Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

20.      If any new facts or circumstances are discovered that require additional disclosure, DRC will supplement its disclosure to the Court.

## **Basis for Relief**

**I.      Retention and Employment of DRC as Claims and Noticing Agent Is Permitted**.

21.      Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002(f). Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various

matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

22.    Due to the size of these chapter 11 cases, the Debtors anticipate that many hundreds of entities will need to be noticed.  Accordingly, Bankruptcy Rule 2002, and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

23.    For all of the foregoing reasons, the Debtors believe that the retention of DRC as the Claims and Noticing Agent in these in the chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the fees and expenses that would be incurred by DRC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

24.    By separate application, the Debtors intend to seek authorization to retain and employ DRC as the administrative agent in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of these chapter 11 cases will require DRC to perform duties outside the scope of 28 U.S.C. § 156(c).

**II.     Relief Effective as of the Petition Date Is Appropriate**.

25.     Pursuant to the Debtors' request, DRC has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that DRC may be compensated for its services prior to approval of this Application.   Such relief is appropriate in light of 28 U.S.C. § 156(c) and in order to relieve the Court and the Clerk's office of the heavy administrative burdens these chapter 11 cases stand to impose.   The Debtors believe that no party in interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because DRC has provided and continues to provide valuable services to the Debtors' estates in the interim period.   In light of the number of anticipated claimants and the complexity of these chapter 11 cases, the Debtors submit that the appointment of a Claims and Noticing Agent is in the best interests of the Debtors' estates, their creditors, and all parties in interest.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

26.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."   As set forth in this Application, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.   Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.   The appointment of DRC as Claims and Noticing Agent is vital to a smooth transition into chapter 11.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**Request of Waiver of Stay**

27.     To the extent that the relief sought in this Application constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Application is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

**Waiver of Memorandum of Law**

28.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and this Application does not raise any novel issues of law.

**No Prior Request**

29.     No prior request for the relief sought in this Application has been made to this Court or any other court.

**Notice**

30.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the First Lien Ad Hoc Group; (d) counsel to the Cross-Holder Group; (e) counsel to the Sponsor; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: January 22, 2024

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al* | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (I) AUTHORIZING THE APPOINTMENT OF
### DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT
### EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.   The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

The relief set forth on the following pages, numbered three (3) through nine (9) is **ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to employ and retain Donlin, Recano & Company, Inc. ("DRC") as claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of the Bankruptcy Code effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration and the Terry Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application establish just

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

(Page 4)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

cause for the relief granted herein; and upon all of the proceedings had before the Court and after

due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** as set forth herein.

2.      The Debtors are authorized to retain DRC as Claims and Noticing Agent, effective

as to the Petition Date, pursuant to the terms of the Services Agreement, in the form attached hereto

as **Exhibit 1**, and DRC is authorized and directed to perform noticing services and to receive,

maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and

all related tasks, all as described in the Application (collectively, the "Claims and Noticing

Services").

3.      DRC shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and

directed to maintain official claims registers for each of the Debtors and to provide the Clerk with

a certified duplicate thereof upon the request of the Clerk.

4.      DRC is authorized and directed to provide public access to every proof of claim

unless otherwise ordered by the Court and to obtain a post office box or address for the receipt of

proofs of claim.

5.      DRC is authorized to take such other action to comply with all duties set forth in

the Application.

6.      The Debtors are authorized to compensate DRC for the Claims and Noticing

Services in accordance with the terms of the Services Agreement upon the receipt of reasonably

detailed invoices setting forth the services provided by DRC and the rates charged for each, and to

(Page 5)
Debtors:            CAREISMATIC BRANDS, LLC, *et al*.
Case No.            24-10561 (VFP)
Caption of Order:   Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc.
                    as Claims and Noticing Agent Effective as of the Petition Date, and
                    (II) Granting Related Relief

reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek this Court's approval for the compensation of its services and reimbursement of its expenses.

7.      DRC shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on (a) the Debtors, (b) the U.S. Trustee, (c) counsel to the Debtors, and (d) counsel to any official committee appointed in these chapter 11 cases.

8.      Parties shall have ten days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on DRC, to the fees and expenses being requested by DRC.  If an objection is interposed, the parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or DRC's monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful.  If no objection has been raised, the Debtors are authorized to pay DRC the full amount of the requested fees and expenses upon expiration of the ten day review without further order of the Court.  If an objection has been raised, the Debtors may not pay the objected to amount pending agreement of the parties or entry of an order of this Court authorizing payment.  Notwithstanding anything to the contrary contained in the Services Agreement, no late charges shall accrue on any invoices.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of DRC under this Order shall be an administrative expense of the Debtors' estates.  DRC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer

(Page 6)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

amount and, thereafter, DRC may hold the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

10.     The Debtors shall indemnify DRC under the terms of the Services Agreement, as modified by this Order.

11.     DRC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the Claims and Noticing Services, as provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

12.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any losses, claims, damages, judgments, liabilities or expense that are either:  (a) judicially determined (the determination having become final) to have arisen from DRC's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of DRC's contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which DRC should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

13.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or

(Page 7)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

(b) the entry of an order closing these chapter 11 cases, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Services Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, DRC must file an application in this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving such application and the payment requested therein. This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by DRC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution, or reimbursement.

14.     In the event DRC is unable to provide the Claims and Noticing Services, DRC will immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

15.     Notwithstanding anything to the contrary contained in the Application, the Terry Declaration, or the Services Agreement, DRC shall provide at least ten days' notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases.

16.     The Debtors may submit a separate retention application, pursuant to section 327(a) of the Bankruptcy Code or any applicable law, for work that is to be performed by DRC but is not specifically authorized by this Order.

(Page 8)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

17.     Notwithstanding any of the terms of the Services Agreement to the contrary, DRC shall not be permitted to recover attorneys' fees in connection with its defense of any fee disputes arising in connection with the Services Agreement.

18.     Notwithstanding anything to the contrary in the Services Agreement, in the event that any of these chapter 11 cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of DRC.

19.     DRC shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of this Court.

20.     The Debtors and DRC are authorized to take all steps necessary or appropriate to carry out this Order.

21.     In the event of any inconsistency between the Services Agreement and this Order, the terms of this Order shall govern.

22.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

24.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

(Page 9)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief |

25.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

27.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

28.     A true copy of this Order shall be served on all required parties pursuant to Local Rule 9013-5(f).

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

**Services Agreement**

**EQ** **DONLIN RECANO**

## STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## <u>TERMS AND CONDITIONS</u>

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide Careismatic Brands, LLC, including but not limited to any and all bankruptcy cases filed by any affiliate of Careismatic Brands, LLC (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein.  Client agrees and understands that none of the services constitute legal advice.

**1. <u>SERVICES:</u>** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. <u>CHARGES</u>**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate minus an overall 10% discount on professional hourly rates (except clerical). The overall 10% discount is reflected in the fee schedule.  DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment.  In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC.  Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements.  When possible, DRC will notify Client in advance of any additional charges.  Checks are accepted subject to collection and the date of collection shall be deemed the date of payment.  Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance.  DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC.  In addition, Client shall reimburse DRC for all actual and documented out-of-pocket expenses reasonably incurred by DRC.  The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses.  In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.  In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s).  In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA**:   Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office.  In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data.  Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located:  New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so.  If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. EVERGREEN RETAINER & INVOICES**:   At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $40,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement.  DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer.  Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made.  DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay").  Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach").  If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable.  Late charges shall not accrue on any amounts in dispute.  Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach").  Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.



**5. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility.  Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.  DRC shall return or dispose of any Client storage media or other materials furnished to DRC in connection with this Agreement in the manner requested by the Client.

**6. E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address.  However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use.  Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**:  All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**:  Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement.  Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.  DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC.   Client is responsible for the accuracy of all programs, data and other information it submits to DRC.  The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report.  If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**:  This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above.  In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement.  The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement.   In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff,


services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. <u>TERMS OF AGREEMENT</u>**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. <u>INDEMNIFICATION</u>**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. <u>CONFIDENTIALITY</u>:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information. A breach by DRC of any promises or agreements contained herein may result in irreparable and continuing damage to Client for which there will be no adequate remedy at law, and Client shall be entitled to seek injunctive relief or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate), without having to post any bond in support thereof.

**13. <u>OWNERSHIP OF PROGRAMS</u>**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon


demand providing all charges for such programming and/or systems documentation have been paid in full.

14. <u>**SYSTEMS IMPROVEMENTS:**</u>  DRC's policy is to provide continuous improvements in the quality of service to its clients.  DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

15. <u>**UNUSUAL MEASURES**</u>:  Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client.  Said charges may be required in advance if DRC deems it appropriate.

16. <u>**JURISDICTION.**</u>  In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

17. <u>**FORCE MAJEURE.**</u>  Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

18. <u>**NOTICE.**</u>  Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows:

if to DRC, to:                      Donlin, Recano & Company, Inc.,
                                    48 Wall Street, 22nd Floor
                                    New York, NY 10005,
                                    Attention:  Roland Tomforde

if to the Client, to:               Kirkland & Ellis LLP
                                    300 North LaSalle
                                    Chicago, IL 60654
                                    Attention: Chad J. Husnick, Esq.
                                    Ashley L. Surinak, Esq.



**19.  GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20.  SEVERABILITY.**  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21.  ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.  DRC shall only be permitted to assign this Agreement with the advance written consent of Client.

**22. GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.  Client will not employ any DRC employee within two (2) years from the termination of this Agreement.  The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

[Remainder of page intentionally left blank]

**EQ DONLIN RECANO**

Accepted and Approved:

Donlin, Recano & Company, Inc.
48 Wall Street, 22nd Floor
New York, NY 10005

By:        Roland Tomforde

Signature:    _Roland W. Tomforde_

Title:        President

Date:        1/16/2024


Accepted and Approved:

Careismatic Brands, LLC

By:        Sidharth Lakhani

Signature:    _Lakhani_

Title:        CEO

Date:        1/16/24


This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.



**SCHEDULE A**
**Careismatic Brands, Inc.**
<u>**Fee Schedule**</u>

| | Hourly Rates |
|---|---|
| Senior Bankruptcy Consultant | $167 - $203 |
| Case Manager | $153 - $167 |
| Consultant/Analyst | $126 - $149 |
| Technology/Programming Consultant | $86 - $122 |
| Clerical | $40 - $50 |
| **Noticing Service** | |
| Laser Printing/ Photocopies | $.10 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |
| **Solicitation/Balloting, Schedule/SOFA, Custom Programming** | |
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $86 - $212 as needed |
| Public Securities Solicitation | $86 - $212 per Hour |
| Schedule/SOFA preparation | $86 - $212 per Hour |
| Customized Programming | $86 - $212 per Hour |
| **Claims Docketing and Management** | |
| Website Core Construction | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.08 per record monthly |
| Document Imaging | $.10 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |
| Electronic Docket, Notice, Mail operations | $.08 per process |
| **Data Room Services** | |
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $95 per Hour |
| **Miscellaneous** | |
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |

**<u>Exhibit B</u>**

**Terry Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*, | Case No. 24-10561 (VFP) |
| Debtors. [1] | (Joint Administration Requested) |

**DECLARATION OF LISA TERRY**
**IN SUPPORT OF DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT**
**OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Lisa Terry, being duly sworn, state the following under penalty of perjury:

1.      I am the Senior Legal Director of Donlin, Recano & Company, Inc. ("DRC"),

whose offices are located at 48 Wall Street, 22nd Floor, New York, NY 10005.  I am authorized to

submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an*

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.   The location of Debtor
Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases
is:  1119 Colorado Avenue, Santa Monica, California 90401.

*Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief* (the "Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       DRC is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  DRC has acted as official claims and noticing agent in many large bankruptcy cases in this district and others.  *In re Nogin, Inc., et al.*, Case No. 23-11945 (Bankr. D. Del. 2023); *Novvi, LLC*, Case No. 23-90906 (Bankr. S.D. Tex. 2023); *Westlake Surgical, L.P. d/b/a The Hospital at Westlake Medical* Center, Case No. 23-10747 (Bankr. W.D. Tex. 2023); *Polaris Operating, LLC, et al.*, Case No. 23- 32810 (Bankr. S.D. Tex. 2023); *Sherman/Grayson Hospital, LLC*, Case No. 23-10810 (Bankr. D. Del. 2023); *Paradox Resources, LLC, et al.*, Case No. 23-90558 (Bankr. S.D. Tex. 2023); *Tritek International Inc., et al.*, Case No. 23-10520 (Bankr. D. Del. 2023); *PLx Pharma Inc., et al.* (n/k/a *PLx Pharma Winddown Corp., et al.*), Case No. 23-10456 (Bankr. D. Del. 2023); *SiO2 Medical Products, Inc., et al.*, Case No. 23-10366 (Bankr. D. Del. 2023); *The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244 (Bankr. N.D.N.Y. 2023); *The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. 2023); *In re HyreCar, Inc.*, Case No. 23-10259 (JTD) (Bankr. D. Del. 2023); *In re Lucira Health, Inc.*, Case No. 23-10242 (MFW) (Bankr. D. Del. 2023).  As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), DRC will perform at the request of the Clerk's office the noticing and claims-related services specified in the Application and the Services Agreement.

---

[2]    Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Application.

In addition, at the Debtors' request, DRC will perform such other noticing, claims, technical, administrative, and support services specified in the Application, subject to 28 U.S.C. § 156(c).

3. Prior to the filing of these chapter 11 cases, the Debtors paid DRC a retainer of $40,000, of which $29,790.20 was applied to prepetition services. DRC seeks to first apply the retainer to all prepetition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the Cases as security for the payment of fees and expenses under the Services Agreement. Following the termination of the Services Agreement, DRC will return to the Debtors any amount of the retainer that remains.

4. DRC represents, among other things, the following:

(a) DRC is not a creditor of the Debtors;

(b) DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c) DRC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(d) by accepting employment in these chapter 11 cases, DRC waives any rights to receive compensation from the United States government as claims and noticing agent;

(e) in its capacity as the Claims and Noticing Agent in these chapter 11 cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

(f) DRC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(g) in its capacity as Claims and Noticing Agent in these chapter 11 cases, DRC will not intentionally misrepresent any fact to any person;

(h)     DRC will be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     DRC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by DRC as Claims and Noticing Agent will be at the expense of the Clerk's office.

5.      To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither DRC, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  DRC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which DRC serves or has served in a neutral capacity as claims and noticing agent or administrative advisor for another chapter 11 debtor.

6.      Certain of DRC's professionals were formerly employed by a firm, Davis Polk & Wardwell LLP, that may provide professional services to parties in interest in these cases.  Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

7.      DRC is an affiliate of Equiniti Trust Company ("EQ").  EQ is a global financial communications and stakeholder management company. Within the EQ corporate structure, DRC operates as a separate and independent legal entity. Given the legal and operational separateness of DRC from EQ, DRC does not believe that any relationships that EQ and its affiliates maintain would create an interest of DRC that would be materially adverse to the Debtor's estate or any class of creditors or equity security holders. EQ provides stock transfer solution services primarily to public companies or companies intending to trade shares publicly. These services include

transfer agency services, initial public offering counseling, proxy solicitation assistance and data analysis, and electronic transmission of data services. EQ does not provide advisory services in restructurings.

8.      DRC, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  DRC may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

9.      DRC, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by DRC, or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent DRC or its personnel in their individual capacities are unrelated to these chapter 11 cases.

10.     To the best of my knowledge, neither DRC nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter upon which DRC is to be engaged.  Based upon the information available to me, I believe that DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that DRC and its personnel:  (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of these cases, a director, officer or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

11.     In performing the services identified above, DRC will charge the rates set forth in the Services Agreement annexed to the Order as <u>Exhibit 1</u>.  The rates set forth therein are as favorable and reasonable as the prices DRC charges in cases in which it has been retained to perform similar bankruptcy related services.

12.     DRC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

Dated:  January 22, 2024

/s/ *Lisa Terry*

Lisa Terry
Senior Legal Director
Donlin, Recano & Company, Inc.

*Proposed Claims and Noticing Agent of the Debtors and Debtors in Possession*