**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CAREISMATIC BRANDS, LLC, *et al*.,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 24-10561 (VFP)<br><br>(Joint Administration Requested) |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY
PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN
VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS, (II) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON
ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):[2]

**Relief Requested**

1.    The Debtors seek entry of orders substantially in the forms attached hereto as

**Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing,

but not directing, the Debtors to pay, in the ordinary course of business, prepetition amounts owing

on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and

(iv) Lien Claims (each as defined herein); (b) granting administrative expense priority to all

undisputed obligations on account of goods ordered by the Debtors prior to the date hereof that

will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such

obligations in the ordinary course of business; and (c) granting related relief.  In addition, the

Debtors request that the Court schedule a final hearing approximately twenty-eight (28) days after

the commencement of these chapter 11 cases to consider entry of an order approving the relief

requested herein on a final basis.

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to
the Debtors' chapter 11 cases, is set forth in the *Declaration of Kent Percy, Chief Restructuring Officer of
Careismatic Brands, LLC, in Support of the Chapter 11 Petitions and First Day Motions*
(the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this
Motion have the meaning ascribed to them in the First Day Declaration.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on
September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a
final order in connection with this Motion to the extent that it is later determined that the Court,
absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and
1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9013-1, and
9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey
(the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Careismatic"
or the "Company"), are a leading global designer, marketer, and distributor of medical apparel
uniforms, footwear, and accessories.  Founded in 1995, today Careismatic's distribution platform
spans approximately 65 countries to serve a diverse base of retailers and customers across multiple
channels, including specialty retail, mass retail, online marketplaces, and direct-to-consumer.  The
Company has an extensive portfolio of iconic and emerging brands across the health and wellness
platform, including Cherokee Uniforms, Dickies Medical, Heartsoul Scrubs, Infinity, Scrubstar,
Healing Hands, Med Couture, Medelita, Classroom Uniforms, AllHeart, Silverts Adaptive
Apparel, and BALA Footwear.  The combination of its geographic footprint, coupled with an

expansive item profile, enables Careismatic to quickly and efficiently meet the needs of its valued customers worldwide.

6.      On January 22, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

### Overview of the Debtors' Vendors

7.      To effectuate their business model and ensure the uninterrupted provision of services to their customers, the Debtors rely on goods and services provided by over 1,400 vendors, including an array of Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants (each as defined below, and collectively, the "Trade Claimants" and such claims, collectively, the "Trade Claims").  To that end, and in accordance with this Motion, the Debtors seek authority to pay prepetition obligations on account of Trade Claims in an aggregate amount of $21.6 million on an interim basis and $36 million on a final basis.

8.      In order to protect their business (and, ultimately, customers) on a postpetition basis, the Debtors request authorization to pay certain outstanding prepetition claims of the Trade Claimants, subject to the terms set forth in the Interim Order and the Final Order.  The following table summarizes the categories of claims that the Debtors request authority to pay:

| Category | Description of Services Provided | Requested Relief on an Interim Basis | Requested Relief on a Final Basis |
|---|---|---|---|
| Critical Vendors | Specialized suppliers of goods and services that are critical to maintain the Debtors' day-to-day operations, or which are sole or limited-source providers of the goods and services necessary for the uninterrupted operations of the Debtors' business. | $1.8 million | $3 million |
| Foreign Vendors | Foreign vendors that provided raw material, merchandise, and manufacturing services. | $15 million | $25 million |
| 503(b)(9) Claimants | Suppliers that provided goods to the Debtors that were received within twenty days before the Petition Date. | $1.2 million | $2 million |
| Lien Claimants | Suppliers of goods or services utilized by or provided to the Debtors that may assert mechanic's, possessory, or other similar liens. | $3.6 million | $6 million |
| **Total amount of Trade Claims:** | | **$21.6 million** | **$36 million** |

## I.    Critical Vendor Claims.

9.    As part of the foregoing review and evaluation, the Debtors have identified, and will continue to identify, a narrow subset of vendors and services that are critical to preserving the value of the Debtors' estates and ensuring a seamless transition into chapter 11 (the "Critical Vendors").  This subset of Critical Vendors includes merchandise vendors, software providers, marketing services providers, and major brand partnerships.  The Debtors' business relies on continuing access to, and relationships with, the Critical Vendors, and, in many instances, the Debtors could not operate their physical infrastructure without access to the goods and services provided by the Critical Vendors.  The Critical Vendors are so essential to the Debtors' business that the lack of any of their particular goods or services, even for a short duration, could significantly disrupt the Debtors' operations and cause irreparable harm to the Debtors' businesses, goodwill, and market share.

10.    Recognizing that payment of all prepetition claims of such third-party vendors outside of a plan of reorganization would be extraordinary relief, the Debtors, with the assistance of their advisors, reviewed their books and records, consulted operations management and

purchasing personnel, reviewed contracts and supply agreements, and analyzed applicable laws, regulations, and historical practices. In doing so, the Debtors were able to identify only those vendors that are critical to the continued and uninterrupted operation of the Debtors' business and the loss of which could materially harm their business, by, among other things, shrinking their market share, reducing their enterprise value, and ultimately impairing the Debtors' ability to reorganize to the detriment of the Debtors, their stakeholders, and the Debtors' vendors. Specifically, in identifying vendors critical to their business, the Debtors examined each of their vendor relationships with, among other things, the following criteria in mind:

- whether certain specifications or contract requirements directly or indirectly prevent the Debtors from obtaining goods or services from alternative sources;

- the location and nationality of the vendor;

- whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to hold goods owned by the Debtors, or to refuse to ship inventory or to provide critical services on a postpetition basis;

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation; and

- whether failure to pay a particular vendor could cause an inability to properly service the Debtors' customers and result in substantial revenue loss.

11.    In addition to these factors, the Debtors and their advisors examined the health of each vendor relationship, the vendor's familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

12.    Among the Critical Vendors are major brands (the "Brands") that have entered into certain licensing agreements (the "License Agreements") with the Debtors that provide terms by which the Debtors are permitted to sell Brand-themed apparel.  Approximately twelve percent of the Debtors' revenue can be attributed to Brand-themed apparel.  The License Agreements generally require the Debtors to make periodic royalty payments, typically based on a percentage of the Debtors' gross receipts, in exchange for the right to sell Brand-themed apparel over a specified time period.  Crucially, nothing in the License Agreements requires the Brands to continue go-forward licensing after the expiration of their term.  If the Brands are not timely paid pursuant to the existing License Agreements, they may be reluctant to license future intellectual property to the Debtors, endangering the Debtors' ability to generate revenue, and irrevocably damaging the Debtors' valuable market share.  The License Agreements form an integral part of the Debtors' business, and if access to the Brand intellectual property use was disrupted, even for a limited time, the Debtors' estates would suffer irreparable harm.

13.    Based on the foregoing, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments, in their sole discretion and business judgment, on account of the prepetition claims held by the Critical Vendors, including the Brands (the "Critical Vendor Claims") in an amount not to exceed an aggregate amount of $1.8 million on an interim basis and $3 million on a final basis.

## II.    Foreign Vendor Claims.

14.    An additional critical component of the Debtors' supply chain involves transacting with certain foreign vendors (collectively, the "Foreign Vendors").  The Foreign Vendors provide among other things, critical goods and services, consisting mostly of raw material, merchandise, and manufacturing services.  As of the Petition Date, the Debtors estimate that there is approximately $25 million in aggregate amount outstanding on account of prepetition goods provided and/or services rendered by the Debtors' Foreign Vendors (the "Foreign Vendor Claims").

15.    The Debtors believe there is a significant and material risk that a Foreign Vendor may stop providing services to the Debtors on a timely basis and/or to completely sever its business relationship with the Debtors.  Suppliers and vendors located in foreign countries are often unfamiliar with the chapter 11 process, frequently react skeptically to various debtor protections, and may consider themselves beyond the jurisdiction of the United States Bankruptcy Court.  Short of severing their relations with the Debtors, nonpayment of certain Foreign Vendor Claims may also cause Foreign Vendors to take other harmful actions, including refusing to supply goods or services, which would be to the detriment of the Debtors' customers.  Providing uninterrupted services for the Debtors' customers is critical to the Debtors' businesses and cash flows, and the Debtors can ill afford any delays or interruptions of this nature.

16.    In light of the above, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments, in their sole discretion and business judgment, on account of the Foreign Vendor Claims in the ordinary course of business.  The DIP Budget (as

defined in the DIP Motion[3]) contemplates sufficient funds to render the Foreign Vendor Claims

unimpaired should the Court grant the requested relief.

17.     In an exercise of their reasonable business judgment, the Debtors have determined

that continuing to receive goods and services from the Critical Vendors and the Foreign Vendors

is necessary to operate and restructure their businesses as going concerns and to maximize value.

If granted discretion to satisfy Critical Vendor Claims and Foreign Vendor Claims as requested

herein, the Debtors will assess, on a case-by-case basis, the benefits to their estates of paying the

Critical Vendor Claims and the Foreign Vendor Claims and pay any such claim only to the extent

their estates will benefit.  Without this relief, the Debtors believe that the Critical Vendors and the

Foreign Vendors may cease providing certain critical services and thereby take action that could

impede the Debtors' going concern value—a result that could be devastating for the Debtors and

their stakeholders.

**III.     503(b)(9) Claims.**

18.     The Debtors may have received goods from various vendors within the twenty-day

period immediately preceding the Petition Date (collectively, the "503(b)(9) Claimants"), thereby

giving rise to prepetition claims of the 503(b)(9) Claimants (the "503(b)(9) Claims").  The Debtors

receive inventory, goods, and other materials from their vendors on a rolling basis to satisfy their

customers' demands.

19.     The vast majority of the 503(b)(9) Claimants are also Critical Vendors, Foreign

Vendors, or Lien Claimants (as defined herein).  The Debtors' relationships with these vendors,

---

3      The "DIP Motion" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief,* filed contemporaneously herewith.

and with many of the other 503(b)(9) Claimants, are not governed by long-term contracts or supply agreements.  Rather, the Debtors obtain inventory, goods, or other materials from such claimants on an order-by-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders if the Debtors do not pay the 503(b)(9) Claims.  Such refusal would negatively affect the Debtors' estates, as the Debtors' business is dependent on the steady flow of inventory, goods, and other materials.

20.     The Debtors also believe that certain 503(b)(9) Claimants could demand payment in cash on delivery—further exacerbating the Debtors' liquidity.  The Debtors believe that, as of the Petition Date, they owe approximately $2 million on account of goods delivered within the twenty days immediately preceding the Petition Date, approximately $1.2 million of which may become due within the first thirty days of these chapter 11 cases, and the value of which may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

21.     For the foregoing reasons, the Debtors request the authority, but not the direction, to pay the undisputed 503(b)(9) Claims, as and when they come due, in an amount not to exceed an aggregate amount of $1.2 million on an interim basis and $2 million on a final basis. Importantly, the Debtors do not seek to accelerate or modify existing payment terms with respect to the 503(b)(9) Claims.  Rather, the Debtors will pay the 503(b)(9) Claims as they come due in the ordinary course of business, *provided* that such claimants make commercially reasonable efforts to maintain or restore Customary Trade Terms (as defined herein).

## IV.    Lien Claims.

22.     The Debtors regularly transact business with a number of third parties who may assert various statutory liens (the "Lien Claimants"), including mechanics' liens, against the Debtors and their property if the Debtors fail to pay for the services rendered.  The Lien Claimants primarily consist of shipping and warehouse vendors.

23.     In the ordinary course of business, the Debtors incur obligations (the "Lien Claims") to the Lien Claimants for the distribution, receipt, and delivery of the Debtors' goods.  To maintain their operations and efficiently transport products, the Debtors employ a network that utilizes the services of the Lien Claimants.  The Debtors' businesses depend on both the uninterrupted flow of inventory through their supply chain and distribution network.  This supply and distribution network is critical to the Debtors' timely delivery of products to their retail partners and end consumers.  The supply chain depends on services provided by, among others, shipping providers (including ocean, air, rail, freight forwarding, and trucking services) and third-party warehouses where products are stored until utilized to fulfill retail partners or direct ecommerce orders.  For example, in many instances, after leaving overseas factories, the Debtors' products are sent to a port before sailing on freight vessels to designated receiving ports in the United States.  The Debtors occasionally depend on air freight carriers in the transportation of overseas and domestically sourced products.  These shippers transport merchandise:  (a) from the overseas facility to port facilities; (b) between facilities for the reassignment of goods; (c) to the facilities of the Debtors' customers; and (d) directly to customers as part of the Debtors' expansion into end-consumer interaction.  Under the laws of most states, these servicers or carriers will, in certain circumstances, have a lien on the goods in their possession that secures the charges or expenses incurred in connection with the transportation of goods or the supply of labor.[4]

24.     To the extent any Lien Claimant has perfected a lien on any of the Debtors' property or their customers' property or, in the Debtors' judgment, could assert and perfect a lien on any

---

[4]    For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  See U.C.C. § 7-307(a) (2005).

such property, it is imperative that the Debtors be authorized to pay such Lien Claimants, regardless of whether their claims arose prior to or after the Petition Date.  Such payment will secure the release of any such lien and the Debtors' continued uninterrupted access to the goods and services provided by the Lien Claimants.  Further, if amounts owed to the Lien Claimants are not paid, certain of the Lien Claimants may be able to assert and perfect mechanics or other liens against certain of the Debtors' goods or property, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code.

25.     Moreover, the value of the assets in the possession of the Lien Claimants generally exceeds the value of their respective prepetition claims.  The refusal of Lien Claimants to deliver or return the Debtors' goods as a result of not being paid would severely disrupt the Debtors' operations and could potentially cost the Debtors a substantial amount of revenue and future business.  The Debtors' ability to maintain access to materials, goods, equipment, and installation services is critical to the continued viability of the Debtors' business operations.

26.     In light of the above, the Debtors seek entry of the Interim Order and Final Order granting them authority to make payments, in their sole discretion and business judgment, on account of the Lien Claims in an amount not to exceed an aggregate amount of $3.6 million on an interim basis and $6 million on a final basis.  Accordingly, by this Motion, the Debtors request authority to pay prepetition outstanding amounts on account of the Lien Claims and continue paying Lien Claims on a postpetition basis in the ordinary course of business.

## V.     Customary Trade Terms Condition.

27.     Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims only to the extent necessary to preserve their business.  To that end, in return for paying such claims either in full or in part, the Debtors propose, in their discretion, that they be authorized to require the Critical Vendors, the

Foreign Vendors, the 503(b)(9) Claimants, and the Lien Claimants, as applicable, to provide favorable trade terms for the postpetition procurement of goods and services.

28.    Specifically, the Debtors intend to pay the Trade Claims only to the extent necessary to preserve the value of their estates.  The Debtors have designated a core group of executives, advisors, and employees who have experience in the Debtors' businesses and in the reorganization process to review, assess, and potentially recommend any payment on account of a Trade Claim.  In exchange for paying the Trade Claims, the Debtors will use commercially reasonable efforts to condition payment of the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims upon such claimant's agreement to continue—or recommencement of—supplying such products and services to the Debtors in accordance with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed by the Debtors in their discretion and reasonable business judgment (the "Customary Trade Terms").  The Debtors reserve the right to require, at their discretion, that the Customary Trade Terms condition to payment be made in writing.

29.    In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made

pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## VI.    Outstanding Orders.

30.    Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Orders").  In the mistaken belief that they would be general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially disrupting the Debtors' ongoing business operations and requiring the Debtors to expend substantial time and effort in issuing such substitute orders.  As set forth in greater detail below, because the Outstanding Orders are administrative expenses of the Debtors' estates, the Debtors are requesting that the Court confirm the administrative expense priority of the Outstanding Orders and authorize the Debtors to pay amounts due on account of Outstanding Orders, but only in the ordinary course of business.

## Basis for Relief Requested

## I.    The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

31.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary to protect and preserve the estate.  *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that

payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

32.    Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

33.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its equitable power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

34.     Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

35.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . " *Id.*

36.     The Debtors have a sound business purpose for the relief requested herein.  The authority to honor unpaid, prepetition Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims in the initial days of these chapter 11 cases, without disrupting the Debtors' operations, will maintain the integrity of the Debtors' supply chain, facilitate the Debtors' operation of their premises, and allow the Debtors to efficiently administer these chapter 11 cases.

37.     The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Debtors' prepetition obligations to the Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants (together, the "Vendors").  Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into chapter 11 with minimal disruption to their operations.  As such, the Debtors believe the relief sought in this Motion will not burden the Debtors but will help them maximize the value of their estates.  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims.

## II.    The Court Should Authorize the Payment of the Critical Vendor Claims and the Foreign Vendor Claims.

38.     Allowing the Debtors to pay the Critical Vendor Claims and the Foreign Vendor Claims pursuant to all or some of the above-referenced Bankruptcy Code provisions is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).  Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to preserve any going-concern value and maximize creditor recovery—thereby increasing prospects

for a successful reorganization—courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20. 2023) (authorizing the debtors to pay critical vendor claims); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. May 31, 2023) (same); *In re David's Bridal, LLC,* No. 23-13131 (CMG) (Bankr. D.N.J. May 18, 2023) (same).[5]

39.    Additionally, if the Debtors do not pay certain of the Foreign Vendor Claims, certain Foreign Vendors may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims.  The Foreign Vendors may take other precipitous action against the Debtors based on the incorrect belief they are not bound by the automatic stay.  As a result, the Debtors would be unable to procure necessary services that support the core functions of their business, potentially causing the Debtors to fail or delay providing products to their customers.  Courts in this circuit regularly grant authorization for debtors to pay claims owing to foreign entities against which the automatic stay cannot be enforced readily in the United States and as to which it would be unduly time-consuming and expensive to seek enforcement of an order of the bankruptcy court in the creditor's home country.  *See, e.g.*, *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (authorizing payment of certain prepetition foreign vendor claims on a final basis); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re Bluestem Brands, Inc.,* No. 20-10566 (MFW) (Bankr.

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

D. Del. Mar. 30, 2020) (same); *In re Akorn, INC.*, No. 20-11177 (KBO) (Bankr. D. Del. Jun. 11, 2020) (same).[6]

40.     The Debtors depend on the provision of services by the Critical Vendors and the Foreign Vendors.  Ensuring these Critical Vendors and Foreign Vendors continue to provide services is therefore vital to the success of these chapter 11 cases and the ability of the Debtors to maximize any going-concern value.  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims and Foreign Vendor Claims.

### III.    The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

41.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  The 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments lies squarely within the Court's discretion. *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").  The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates.  Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of

---

6    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

payment and not the ultimate treatment of such claims—the Debtors could be denied access to the goods necessary to maintain the Debtors' operations and maximize the value of the Debtors' estates.

42.     Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their reasonable business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, Transcript of Hearing held on October 31, 2006, at 49, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 6, 2006) ("THE COURT: I think arguably the debtor could pay its 503(b)(9) claimants without court approval.").  Again, the timing of such payments lies squarely within the Court's discretion.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3.

43.     For these reasons, courts have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business.  *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20. 2023) (authorizing payment to parties with section 503(b)(9) claims on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same); *In re Alex and Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. June 11, 2021) (same).[7]  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the 503(b)(9) Claims.

---

[7]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

#### IV.    The Court Should Authorize the Payment of Lien Claims.

44.    Certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[8]  11 U.S.C. § 362(b)(3).  As a result, the Debtors anticipate that certain Lien Claimants may assert or perfect liens, refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent that certain Lien Claimants have possession of the Debtors' inventory, mere possession or retention would disrupt the Debtors' operations.

45.    Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of a valid possessory lien to the extent that the Debtors use or sell the estate property against which a Lien Claim is asserted.  Given that the value of such property will generally far exceed the value of the related Lien Claim, creditors will not be harmed—and, in fact, will be benefited—by the satisfaction of certain amounts owed to the Lien Claimants.  Those payments will facilitate the use and/or sale of estate property against which liens may otherwise be asserted, helping to preserve the going-concern value of the Debtors' business and enabling the Debtors to smoothly transition into chapter 11.

46.    For these reasons, courts in this district have authorized the payment of prepetition lien claims under similar circumstances in recent chapter 11 cases.  *See*, *e.g.*, *In re Rite Aid Corp.*,

---

[8]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection.").

No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20. 2023) (authorizing payment of certain lienholder claims on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 31, 2023) (same); *In re David's Bridal, LLC,* No. 23-13131 (CMG) (Bankr. D.N.J. May 18, 2023) (same).[9]  Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Lien Claims.

**V.    The Court Should Confirm That Outstanding Orders Are Administrative Expense Priority Claims and That Payment of Such Claims Is Authorized.**

47.    Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, granting the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted and will not prejudice any other party in interest.

48.    Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority.  The attendant disruption and delay to the continuous and timely flow

---

[9]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

of critical materials and other goods to the Debtors would force the Debtors to potentially halt operations and production, disrupt the Debtors' business, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors.

49. Indeed, courts in this circuit have regularly granted the type of relief requested herein. *See, e.g.*, *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20. 2023) (granting administrative expense priority to undisputed obligations on account of outstanding orders on a final basis); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Dec. 6, 2023) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (same); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. May 31, 2023) (same); *In re SiO2 Medical Products, Inc.,* No. 23-10366 (JTD) (Bankr. D. Del. April 24, 2023) (same).[10] Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

## **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

50. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, anticipated debtor-in-possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors request

---

[10]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

51.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  The requested relief is vital to a smooth transition into chapter 11.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request of Waiver of Stay

52.     To the extent that the relief sought in this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

53.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and this Motion does not raise any novel issues of law.

## Reservation of Rights

54.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection

or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

55.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

56.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the First Lien Ad Hoc Group; (d) counsel to the Cross-Holder Group; (e) counsel to the Sponsor; (f) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: January 22, 2024

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al* | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.   The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**INTERIM ORDER (I) AUTHORIZING DEBTORS
TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL
VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND
LIEN CLAIMANTS, (II) GRANTING ADMINISTRATIVE EXPENSE
PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT
OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through eleven (11), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Upon the *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims; (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business; (c) granting related relief; and (d) scheduling a final hearing (the "Final Hearing") to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court

---

[2]   Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____, **2024 at _____ (Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtors' proposed counsel on or before _____, **2024 at 4:00 p.m. (Eastern Time)**.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to honor, pay all or part of, and otherwise satisfy and discharge, on a case-by-case basis (i) the Critical Vendor Claims in an aggregate amount not to exceed $1.8 million on an interim basis, (ii) the Foreign Vendor Claims in an aggregate amount not to exceed $15 million on an interim basis, (iii) the 503(b)(9) Claims in an aggregate amount not to exceed $1.2 million on an interim basis, and (iv) the Lien Claims in an aggregate amount not to exceed $3.6 million on an interim basis, absent further order of the Court.

(Page | 5)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

4.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided*, *however*, the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

5.      The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

6.      The Debtors are authorized, but not directed, to condition payment of Trade Claims upon each Trade Claimant's written agreement to (a) continue—or recommence—providing goods and services to the Debtors in accordance with the Customary Trade Terms and (b) agree that such specified Trade Claimants shall not cancel on less than 90 days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim.

7.      If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' reasonable discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of

(Page | 6)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8.      Any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.  Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant with a copy of this Interim Order (unless previously provided to such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant).

9.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all

(Page | 7)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

10.     Notwithstanding the foregoing, prior to entry of an order granting the relief requested in the Motion on a final basis, the Debtors are not authorized to pay any prepetition amounts on account of Critical Vendors Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims other than as provided by the Bankruptcy Code or the Bankruptcy Rules.

11.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made or obligation incurred shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

12.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors

(Page | 8)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

(Page | 9)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

13.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

14.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee and the statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Interim Order to an insider (as such term is defined in section 101(3) of the Bankruptcy Code), or an affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practical, provide three (3) business days' advance notice to, and opportunity to object by, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

15.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases every thirty (30) days upon entry of this Interim Order.

(Page | 10)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

16.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

17.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

20.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 11)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

23.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Interim Order.

24.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## Exhibit B

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al* | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**FINAL ORDER (I) AUTHORIZING DEBTORS
TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL
VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND
LIEN CLAIMANTS, (II) GRANTING ADMINISTRATIVE EXPENSE
PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT
OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ten (10), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Upon the *Motion of Debtors Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* (the "Motion")[1]. of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims; (b) granting administrative expense priority to all undisputed obligations on account of goods ordered by the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.       The Motion is **GRANTED** on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to honor, pay all or part of, and otherwise satisfy and discharge on a case-by-case basis (i) the Critical Vendor Claims in an aggregate amount not to exceed $3 million on a final basis, (ii) the Foreign Vendor Claims in an aggregate amount not to exceed $25 million on a final basis, (iii) the 503(b)(9) Claims in an aggregate amount not to exceed $2 million on a final basis, and (iv) the Lien Claims in an aggregate amount not to exceed $6 million on a final basis, absent further order of the Court.

3.       All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided*, *however*, the Debtors can terminate any outstanding orders prior to delivery and any canceled orders are not afforded administrative priority.

4.       The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary

(Page | 5)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

practices in effect prior to the Petition Date.

5.      The Debtors are authorized, but not directed, to condition payment of Trade Claims upon each Trade Claimant's written agreement to (a) continue—or recommence—providing goods and services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment the Customary Trade Terms and (b) agree that such specified Trade Claimants shall not cancel on less than 90 days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.  The Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim.

6.      If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' reasonable discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the

(Page | 6)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

7.      Any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, or Lien Claims of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.  Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant with a copy of this Final Order (unless previously provided to such Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant).

8.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their reasonable discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor, Foreign Vendor, 503(b)(9) Claimant, or Lien Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

9.      Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made or obligation incurred shall not be inconsistent with, and shall be

(Page | 7)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed substantially contemporaneously herewith (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

10.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

11.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

12.    Nothing herein shall impair or prejudice the rights of the U.S. Trustee and the statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Final Order to an insider (as such term is defined in section 101(3) of the Bankruptcy Code), or an affiliate of an insider to the Debtors. To the extent the

(Page | 9)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practical, provide three (3) business days' advance notice to, and opportunity to object by, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

13.     The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; and (d) the payment due.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases every thirty (30) days upon entry of this Final Order.

14.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

15.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

(Page | 10)

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC, *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief |

17.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

18.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

20.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order