UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Peter J. D'Auria, Esq.
Fran B. Steele, Esq.
Robert J. Schneider, Jr., Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: Peter.J.D'Auria@usdoj.gov
Email: Fran.B.Steele@usdoj.gov
Email: Robert.J.Schneider@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, et al., | Case No. 24-10561(VFP) |
| | Jointly Administered |
| Debtors.[1] | The Honorable Vincent F. Papalia |
| | Hearing Date: May 30, 2024 at 10:00 am |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to confirmation of the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Second Amended Plan") filed by Careismatic Brands, LLC and related entities (the "Debtors").

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic.

## INTRODUCTION

1.  The Debtors' Second Amended Plan cannot be confirmed in its current form because Article XII.C and D violate 28 U.S.C. § 1930(a)(6).  Specifically, the Second Amended Plan does not provide for the GUC Trustee to pay quarterly fees after the Effective Date on any disbursements made from proceeds obtained through the resolution of GUC Trust Claims and file separate reports of disbursements made from the GUC Trust.  As a result, all post-confirmation distributions or expenditures made by the GUC Trust will be excluded from the calculation of quarterly "disbursements" made in the Debtors' cases for purposes of calculating the statutorily-mandated fee that must be paid under section 1930(a)(6) for every quarter in which the Debtors' cases remain in chapter 11.

2.  The Debtors will presumably pay the quarterly fee on the $3.5 million in cash it will transfer to the GUC Trust on the Effective Date, and no subsequent distributions made from that cash will be included in calculating quarterly fees (*i.e.*, there will be no "double-dipping" of quarterly fees on the cash received by the GUC Trust).  But the transfer to the GUC Trust of non-cash assets such as causes of action is not a "distribution" for purposes of section 1930(a)(6), so the transfer of those non-cash assets on the Effective Date has no effect on the calculation of the fee owed that quarter.  Article XII.C and D of the Second Amended Plan would allow those non-cash assets to be liquidated post-confirmation and the proceeds distributed to unsecured creditors without the proceeds being included as "disbursements" in the Debtors' cases for purposes of calculating the post-confirmation quarterly fees mandated by section 1930(a)(6).  That result would be contrary to the language and intent of section 1930(a)(6), as well as the overwhelming weight of case law interpreting section 1930(a)(6).

3.  For these reasons, confirmation of the Second Amended Plan should be denied.

## JURISDICTION, VENUE, AND STANDING

4. This Court has jurisdiction under 28 U.S.C. § 157(b) to hear and determine this Objection. *See U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999).

5. Venue is appropriate in this Court under 28 U.S.C. § 1409.

6. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district as part of his overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The U.S. Trustee is specifically charged with taking such actions as he deems appropriate to ensure that all fees required to be paid in cases under titles 11 and 28 are properly and timely paid. 28 U.S.C. § 586(a)(3)(D).

7. Under 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on this Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## FACTUAL BACKGROUND

8. January 22, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

9. On January 22, 2024, the Debtors filed the *Declaration of Kent Percy, Chief Restructuring Officer of Careismatic Brands in Support of the Debtors' Chapter 11 Petitions and First Day Motions*. (the "Percy Declaration"). *See* Dkt. 3.

3

10. On January 24, the Court entered an Order directing that these cases be jointly administered. *See* Dkt. 57.

11. The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

12. On February 2, 2024, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* Dkt. 136.

13. According to presentations made to this Court, Careismatic is the leading designer, marketer, and distributor of medical apparel, footwear, and accessories. Founded in 1995 in Chatsworth, California, Careismatic grew from operating a single flagship brand, Cherokee Medical Uniforms, to a portfolio of seventeen brands. *Percy Declaration* at ¶ 7. Careismatic offers value to its stakeholders through its spectrum of medical apparel and workwear and omnichannel distribution capabilities across the globe. Careismatic is the market leader in the $3 billion domestic medical scrubs industry, with dominant positions in the wholesale and online marketplace segments. *Id*. at ¶ 7.

14. On February 27, 2024, the Debtors filed a *Joint Plan of Reorganization of Careismatic Brands, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and related Disclosure Statement. *See* Dkts. 296 & 297.

15. On April 4, 2024, the Debtors filed an *Amended Joint Plan of Reorganization of Caresimatic Brands, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and related Disclosure Statement. *See* Dkts. 546 & 547.

16. On April 18, 2024, the Debtors filed the Second Amended Plan and related Disclosure Statement. *See* Dkts. 587 & 588.

17. On April 18, 2024, this Court entered an *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and*

*Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto*. See Dkt. 591.

18. The Second Amended Plan provides for the creation of a "GUC Trust" to be established on the Effective Date to hold "GUC Trust Assets" and administer Allowed General Unsecured Claims pursuant to a GUC Trust Agreement. The term "GUC Trust Assets" is defined as "collectively, (i) $3.5 million in Cash, and (ii) the GUC Trust Claims." Dkt. 587, Art.I.A.106. A "GUC Trustee" is selected to administer the GUC Trust. *Id.*, Art. I.A.100.

19. The term "GUC Trust Claims" is defined as "(i) any Claims and Causes of Action held by the Debtors and their respective Estates against the Non-Released Parties; (ii) any Interchange Claims, and (iii) any Avoidance Action held by the Debtors and their Estates to the extent not released under the Plan, which shall include all Avoidance Actions against the Non-Released Parties; provided that the GUC Trust Claims shall not include (a) any Vendor Avoidance Actions or (b) Retained Causes of Actions." *Id.*, Art.I.A.109.

20. Article III.B.5 provides that the Debtors' unsecured creditors will each receive "in full and final satisfaction of such Claim[,] its *pro rata* share of the GUC Trust Net Assets." The term "GUC Trust Net Assets" is defined as "the GUC Trust Assets *less*" fees and expenses attributable to the operation of the GUC Trust. *Id.*, Art. I.A.112. The Second Amended Plan provides for no distribution to unsecured creditors other than whatever distribution they may receive from the GUC Trust.

21. Article XII C and D of the Second Amended Plan provide as follows:

C. Payment of Statutory Fees.

> All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Post-Effective Date Debtors, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors and the GUC Trustee) for each quarter (including any fraction thereof) until such Post-Effective Date Debtor's

        Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

   D.   Statutory Committee and Cessation of Fee and Expense Payment.

        On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Post-Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

        All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors and the GUC Trustee) on the Effective Date, and following the Effective Date, the Post-Effective Date Debtors (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) and shall File quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## LEGAL ARGUMENT

### The Second Amended Plan Contravenes Applicable Law Regarding Quarterly Fee Liability

    22.    If the Second Amended Plan is confirmed as is, on the Effective Date the GUC Trust will receive from the Debtors not only $3.5 million in cash, but also non-cash assets including various causes of action, which the GUC Trust may then liquidate and distribute the proceeds to unsecured creditors. Article XII.C and D of the Second Amended Plan do not interfere with the calculation of the quarterly fee required under section 1930(a)(6) with regard to the $3.5 million in cash; those funds will be included as disbursements in the quarter in which the Debtors transfer

them to the GUC Trust. But, Article XII.C and D do interfere with the calculation of the mandatory fee due in any post-confirmation quarters during which the GUC Trust disburses the proceeds of any resolutions of the causes of action transferred to it by the Debtors. For the following reasons, the existence of Article XII.C and D in their current form requires confirmation of the Second Amended Plan to be denied.

### *The term "disbursements" in section 1930(a)(6) includes all cash payments made in a chapter 11 case during a quarter, but does not include non-cash transactions.*

23. Section 1930(a)(6) provides in relevant part that "a quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 . . . for each quarter (including any fraction thereof) until the case is converted or dismissed . . . ," and that the fee is to be calculated on "disbursements" made in the case during the quarter. 28 U.S.C. § 1930(a)(6). Payment of quarterly fees is mandatory in every chapter 11 case from the quarter in which the petition is filed until the quarter in which the case is closed by final decree. *See, e.g.*, *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 418 (3d Cir. 2005); *Gryphon*, 166 F.3d at 554.

24. Because it is not defined in the Bankruptcy Code, the term "disbursements" in section 1930(a)(6) must be given its "'ordinary, contemporary, common meaning.'" *Genesis*, 402 F.3d at 421 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). In interpreting section 1930(a)(6), the Third Circuit has held that "'[d]isburse' is defined as 'to expend' or 'to pay out.'" *Id.* (quoting Websters' Third New International Dictionary 644 (1976)). More recently, other Circuit Courts of Appeals have acknowledged that, as used in section 1930(a)(6), the term "disbursement" means "money paid out." *See, e.g.*, *In re Buffets, L.L.C.*, 979 F.3d 366, 373 (5th Cir. 2020) (citing Merriam-Webster Dictionary (2016)); *Cranberry Growers Coop. v. Layng (In*

7

*re Cranberry Growers Coop.)*, 930 F.3d 844, 850 (7th Cir. 2019) (citing The American Heritage Dictionary of the English Language (5th ed. 2018)).

25.  As "disbursement" means "money paid out," section 1930(a)(6) quarterly fees are calculated only upon payments of money during a quarter in a chapter 11 case; they are not calculated upon the transfer of non-cash assets such as causes of action. This is consistent with the interpretation that Circuit Courts of Appeals, including the Third Circuit, have given the term "moneys disbursed" for purposes of determining a trustee's commission under 11 U.S.C. § 326(a). *See, e.g.*, *Tamm v. U.S. Tr. (In re Hokulani Square, Inc.)*, 776 F.3d 1083, 1086 (9th Cir. 2015) (holding that, because "'disburse' means to 'pay out,'" trustees may only calculate their commission on transactions using "some form of generally accepted medium of exchange") (quoting Black's Law Dictionary 561 (10th ed. 2014)); *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 118-19 (3d Cir. 1999) (holding that trustees may only calculate their commission "on moneys actually disbursed" and not on transfers of "property and other types of consideration" such as credit bids).

26.  In light of the foregoing, the Effective Date transfer of $3.5 million in cash will be a disbursement for purposes of section 1930(a)(6). Those funds will be included in calculating the fee for that quarter, but will not be included in calculating the fee for any subsequent quarter in which they are distributed to unsecured creditors by the GUC Trust.

27.  But, the non-cash assets transferred to the GUC Trust will not be included as disbursements for purposes of section 1930(a)(6) in the quarter in which they are received. If and when those non-cash assets are ultimately reduced to money and that money is used by the GUC Trust to fund its operations or to fund distributions to unsecured creditors, those payments of money will constitute disbursements in the Debtors' cases for purposes of section 1930(a)(6) in the quarter in which the payments are made.

28. As all post-confirmation payments of money made in the Debtors' cases should be included as "disbursements" for purposes of section 1930(a)(6), and the Second Amended Plan Article XII.C would prevent that from happening, the Second Amended Plan cannot be confirmed.

***Courts broadly construe the term "disbursements" in section 1930(a)(6) to include all cash payments made in a chapter 11 case during a quarter, regardless of the payor, payee, purpose, or source of the payments.***

29. Section 1930(a)(6) contains relatively few material terms. It requires a "fee" to be "paid to the United States trustee" every quarter "in each case under title 11" based on "disbursements." *See* 28 U.S.C. § 1930(a)(6). Congress did not specify the entity that must make the disbursements, the recipients to which the disbursements must be made, the purpose for which disbursements must be made, or the source from which the disbursements must originate. Although Congress could have placed such limitations on the section 1930(a)(6) disbursements as "by the debtor," "to creditors," "in payment of the debtor's expenses," or "from estate funds," it made the policy determination not to do so.

30. As a result, Circuit Courts of Appeals, including the Third Circuit, broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of who made the payment. *See, e.g.*, *Cranberry Growers*, 930 F.3d at 850-53 (holding that "disbursements" include a debtor's customers' direct payment of the debtor's revolving line of credit); *Genesis*, 402 F.3d at 422 (holding that the quarterly fee owed in a debtor's case is calculated on all "[p]ayments made on behalf of [the] debtor, whether directly or indirectly").

31. Circuit Courts of Appeals also interpret "disbursements" to include payments made, not only to creditors, but also to other recipients of money. *See, e.g.*, *Cash Cow Servs. of Fla. LLC v. U.S. Tr. (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1265 (11th Cir. 2002), *cert. denied,* 537 U.S. 1161 (2003) (holding that disbursements include loans made by the debtor

9

to consumers); *Robiner v. Danny's Mkts., Inc.*, 266 F.3d 523, 526 (6th Cir. 2001) ("Congress contemplated that disbursements will encompass all payments to third parties directly attributable to the existence of the bankruptcy proceeding."); *Jamko, Inc.*, 240 F.3d 1312, 1316 (11th Cir. 2001) (holding that disbursements are "not limited to payments made to creditors").

32. Similarly, courts broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of the purpose for which the payments were made. *See, e.g.*, *Cranberry Growers*, 930 F.3d at 850-53 (paying revolving line of credit); *Cash Cow*, 296 F.3d at 1265 (making consumer loans); *Jamko*, 240 F.3d at 1316 (paying operating expenses and creditors).

33. Additionally, Circuit Courts of Appeals broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of the source of the payment. *See, e.g.*, *Cash Cow*, 296 F.3d at 1265 (holding that "disbursements" for purposes of section 1930(a)(6) are not "limit[ed] . . . to only 'payments' or capital flowing from the bankruptcy estate"); *Danny's Mkts.*, 266 F.3d at 526 ("[T]he technical source of the payments . . . is apparently inconsequential."); *Jamko*, 240 F.3d at 1313, 1316 (holding that all payments "made during the entire process" are included in calculating the quarterly fees, "from whatever source"); *Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 998 (9th Cir. 2000) (holding that, although disbursements include all payments from the bankruptcy estate, "that does not [mean] that disbursements are limited to payments from a bankruptcy estate").

34. In *In re Nassau Tower Realty, LLC*, 518 B.R. 842 (Bankr. D.N.J. 2014), Chief Judge Kaplan of this Court phrased the issue as "not **'who'** is paying the disbursement, but rather from **'where'** did the funds originate," held that all payments that "originated from property of the bankruptcy estate" constitute disbursements for purposes of section 1930(a)(6)—including proceeds derived from assets that used to be bankruptcy estate property. *Id.* at 846, 847 (emphasis

in original). Thus, even under Chief Judge Kaplan's interpretation, which imposes some limitations on the extent to which third-party payments can be included as disbursements, third-party payments funded by proceeds derived from the resolution of causes of action that used to be estate property must be included in calculating the disbursements made in a debtor's case for purposes of section 1930(a)(6).

35. Circuit Courts of Appeals have held that pre- and post-confirmation quarterly fees are calculated the same way; if a payment would be a disbursement pre-confirmation, the same payment is a disbursement post-confirmation. *See, e.g.*, *Danny's Mkts.*, 266 F.3d at 526 ("[T]hroughout the proceeding, these payments' essential character will not change."); *Jamko*, 240 F.3d at 1316 (holding that "[t]here is nothing in the statute or legislative history to indicate that Congress intended that [] distinction be made post-confirmation," and "conclud[ing] that Congress intended the UST fee to apply to all disbursements made during the entire process").

36. Here, the Second Amended Plan would allow the GUC Trust to liquidate what are currently assets of the Debtors' bankruptcy estates and pay the proceeds to recipients that are currently the Debtors' unsecured creditors, yet still avoid paying the mandatory quarterly fee imposed by section 1930(a)(6). If those payments were made pre-confirmation, that would result in "disbursements" under section 1930(a)(6). Made post-confirmation, the payments must be treated the same way.

37. In light of the foregoing, this Court should adopt the majority view that every payment made in a chapter 11 case during a quarter—regardless of who makes the payment, to whom the payment is made, why the payment is made, or what the source of the payment may be—must be included in calculating quarterly "disbursements" for purposes of section 1930(a)(6).

***Payments made by post-confirmation trusts are included as "disbursements" for purposes of section 1930(a)(6).***

38.     Courts have long held that a liquidation trust created under a confirmed plan is responsible for paying post-confirmation quarterly fees.  There is no principled reason to treat the GUC Trust any differently than any other trust created under a confirmed plan to pursue causes of action and distribute the proceeds.

39.     For example, in *U.S. Trustee v. Hudson Oil Co. (In re Hudson Oil Co.)*, 210 B.R. 380 (D. Kan. 1997), the district court "reject[ed] the argument that . . . the liquidating trust established under the confirmed plan has no responsibility for the fees imposed" under section 1930(a)(6).  *Id*. at 383.  Although it reversed for other reasons, the district court noted that the bankruptcy court had also rejected the liquidating trust's argument because, among other reasons, "the trust [was] a liquidating and disbursing agent for the debtors" and was "subject to continuing bankruptcy court supervision."  *Id*. at 384, n.3.

40.     Similarly, in *In re Atna Resources, Inc.*, 576 B.R. 214 (Bankr. D. Colo. 2017), the bankruptcy court was presented with "a liquidating trustee, whose sole existence flow[ed] from the debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, [who sought] to avoid payment of post-confirmation [quarterly] fees[.]"  *Id*. at. 216.  The court held that the liquidating trust was liable for payment of post-confirmation quarterly fees on the proceeds of the resolution of causes of action transferred to the trust through the plan, "even without an express [plan] provision requiring the Trust to pay the statutory fee."  *Id*. at 218-20.

41.     Likewise, in *In re CSC Industries, Inc.*, 226 B.R. 402 (Bankr. N.D. Ohio 1998), the bankruptcy court held that "the Liquidation Trustee [was] responsible to pay post-confirmation quarterly fees out of the Liquidation Trust" because "Congress intend[ed] such fees be paid by Chapter 11 debtors prior to conversion or dismissal," and "the Liquidation Trust ha[d] essentially

12

stepped into the shoes of the original debtor and [was] therefore liable for any such fees which may be imposed" post-confirmation. *Id*. at 404.

42. In *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr. N.D. Ohio 1997), as here, the debtor "turned over all of its tangible and intangible assets" to a liquidating trust that was created to make distributions required by the plan. *Id*. at 683. The bankruptcy court held that, since the liquidating trust "was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors," the court "c[ould] find no other meaningful interpretation" of section 1930(a)(6) other than to hold that the liquidating trust was responsible for paying post-confirmation quarterly fees. *Id*. at 683-84.

43. More recently, in *In re JNL Funding Corp.*, 620 B.R. 25 (Bankr. E.D.N.Y. 2020), the bankruptcy court ordered the trustee of a "distribution trust" created under a confirmed plan to disgorge an amount equal to the quarterly fees he had failed to pay while the case was in chapter 11. *Id*. at 29-30. The district court affirmed, finding that "the Distribution Trust was required by statute to pay Post-Confirmation Quarterly Fees[.]" *Weigel v. Barnard*, No. CV 20-3570 (GRB), 2021 WL 3793794, at *1 (E.D.N.Y. Aug. 26,2021).

44. Even the bankruptcy court in a pre-*Jamko* case from within the Eleventh Circuit, which held that post-confirmation "disbursements" do not include the payment of a debtor's general operating expenses (a position since superseded, *see Jamko*, 240 F.3d at 1316), stated in *dicta* as follows: "In a liquidating plan it is not unusual for some assets to be liquidated post-confirmation to provide additional payments to creditors. In such a case, payments from assets liquidated pre-confirmation would clearly be disbursements subject to the UST quarterly fee. It makes no sense to hold that the post-confirmation payments made from the liquidation of the remaining assets are not disbursements just because the remaining assets were vested in a

13

reorganized debtor or liquidating trust at confirmation." *See In re Betwell Oil & Gas Co.*, 204 B.R. 817, 819 (Bankr. S.D. Fla. 1997). [2]

45. Although the issue seemed settled, in 2021 Judge Sontchi of the United States Bankruptcy Court for the District of Delaware held in *In re Paragon Offshore, PLC*, 629 B.R. 227 (Bankr. D. Del. 2021), that distributions made by a liquidation trust formed under the confirmed plan in that case did not have to be included in calculating the quarterly fee mandated by section 1930(a)(6). *Id.* at 232. But, in addition to being contrary to the majority view regarding the treatment of liquidating trusts' distributions as disbursements for purposes of section 1930(a)(6), *Paragon* is factually inapposite. *Paragon* was based on a concern that the U.S. Trustee was "double-dipping" in that case, because the funds in question had already been included as disbursements for purposes of section 1930(a)(6) in another bankruptcy case when they were transferred to the *Paragon* trust. *See id.* at 228 & 232. There is no such concern here, because no quarterly fee will be—or possibly could be—paid on the non-cash assets when they are transferred to the GUC Trust. Rather, the U.S. Trustee seeks only to ensure that the fee mandated by Congress is properly paid on all disbursements made in the Debtors' chapter 11 cases. *See* 28 U.S.C. § 586(a)(3)(D) (requiring the U.S. Trustee to "tak[e] such action as [he] deems appropriate to ensure that all . . . fees required to be [paid] under" titles 11 and 28 are paid). Quarterly fees will only be incurred once—albeit when the proceeds of non-cash assets are ultimately paid out by the GUC Trust, not when the non-cash assets are transferred to the GUC Trust. In any event, to the extent *Paragon* suggested that non-cash transfers can be included as "disbursements" for purposes of section 1930(a)(6) (*see id.* at 231-32), it was simply wrong; only payments of money are

---

[2] Similarly, the bankruptcy court in *In re A.H. Robins Co., Inc.*, 219 B.R. 145 (Bankr. E.D. Va. 1998), noted in *dicta* that "ample authority exists" to hold "the various trusts established during the course of A.H. Robins Co., Inc.'s bankruptcy proceeding liable for such fees," citing several of the cases cited in this Objection. *See id.* at 153.

14

included in calculating the statutorily-mandated quarterly fee. And, of course, *Paragon* has no binding effect on this Court.

46.     In a more recent case, Judge Huennekens of the Bankruptcy Court for the Eastern District of Virginia distinguished *Paragon* as not only "not binding" but "also factually distinguishable" because "[t]he decision in *Paragon* was based on a concern that the U.S. Trustee was 'double-dipping.'" *See In re Health Diagnostic Laboratory, Inc.*, No. 15-32919-KRH, 2023 WL 105586, at *4 (Bankr. E.D. Va. Jan. 4, 2023). In that case, the liquidating trustee argued that "distributions of moneys he holds in trust to the beneficiaries of the trust are not disbursements because the beneficiaries are the equitable owners of the trust's assets." *Id*. at *3. Judge Huennekins rejected that argument because, "as the U.S. Trustee observe[d], quarterly fees could be virtually eliminated by the simple expedient of transferring assets from the bankruptcy estate to a post-confirmation entity for subsequent payment." *Id*. at *4. Citing "[t]he majority of courts that have considered this issue" (which are also the cases cited by the U.S. Trustee in this Objection), Judge Huennekens "conclude[d] that the Liquidating Trustee is required to pay quarterly fees on the distributions he makes to the trust beneficiaries." *Id*.

47.     The U.S. Trustee is not aware of any published or electronically available decisions that have adopted *Paragon*'s reasoning.

48.     In light of the foregoing, the GUC Trust's post-confirmation payments from proceeds derived from the resolution of non-cash assets must be included as disbursements made in the Debtors' cases in calculating the quarterly fee mandated by section 1930(a)(6). And, to assist the U.S. Trustee in ensuring that the mandated fee is paid, *see* 28 U.S.C. § 586(a)(3)(D), the

GUC Trust must file post-confirmation quarterly reports disclosing its disbursements, as must the Post-Effective Date Debtors. *See* 28 U.S.C. § 589b and 28 C.F.R. § 58.8 (2020).[3]

49. Regardless of whether a post-confirmation entity created under a confirmed plan is called a "liquidation trust" or some other kind of trust, and regardless of whether the recipients of its distributions are referred to as "unsecured creditors" or "beneficiaries," all moneys distributed by that post-confirmation entity must be included in calculating the disbursements made in the debtor's case for purposes of calculating the mandatory section 1930(a)(6) quarterly fee. As Article XII.C. does not address the GUC Trust's mandatory fee payment and reporting obligations, the Second Amended Plan cannot be confirmed.

## CONCLUSION

50. WHEREFORE, the U.S. Trustee requests that this Court enter an order (i) denying confirmation of the Plan, and (ii) granting such other relief that the Court deems just and proper.

## RESERVATION OF RIGHTS

51. The U.S. Trustee reserves any and all rights, remedies, and obligations to, among other things, complement, supplement, augment, alter or modify this objection, assert any further objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

---

[3] In 28 U.S.C. § 589b, Congress directed the Attorney General to "issue rules requiring uniform forms for (and from time to time thereafter to appropriately modify and approve) . . . periodic reports by debtors in possession or trustees in cases under chapter 11 of title 11." 28 U.S.C. § 589b(a)(2). Congress has further directed that the information required to be reported in periodic reports filed after plan confirmation includes, "by class, the recoveries of the holders, expressed in aggregate dollar values and, in the case of claims, as a percentage of total claims of the class allowed." 28 U.S.C. § 589b(e)(7). Pursuant to 28 U.S.C. § 589b and the Attorney General's subsequent directive, the U.S. Trustee promulgated 28 C.F.R. § 58.8 (2020) and created UST Form 11-PCR for post-confirmation reporting. Part 3 of UST Form 11-PCR seeks information regarding recoveries under a plan for various classes of claims.

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By:   */s/ Fran B. Steele*
     Fran B. Steele
     Trial Attorney

By:   */s/ Peter J. D'Auria*
     Peter J. D'Auria
     Trial Attorney

By:   */s/ Robert J. Schneider, Jr*.
     Robert J. Schneider, Jr.
     Trial Attorney

Dated:  May 24, 2024