**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.**

Kaitlin R. Walsh, Esq. (NJ Bar No. 038402006)
919 Third Avenue
New York, New York 10022
Tel: (212) 935-3000
E-mail: KRWalsh@mintz.com

*Counsel to Michael Singer*

In re:

CAREISMATIC BRANDS, LLC, *et al.*,

　　　　Debtors.[1]

Chapter 11

Case No.: 24-10561 (VFP)

(Jointly Administered)

**Re: Dkt. No. 697**

### LIMITED OBJECTION OF MICHAEL SINGER TO THE
### SECOND AMENDED JOINT PLAN OF REORGANIZATION OF
### CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Michael Singer, by and through his undersigned counsel, hereby submits this limited objection (this "Objection") to the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Dkt. No. 697] (as may be modified, amended, or supplemented from time to time and including all exhibits, schedules, and other supplements thereto, collectively the "Plan") filed on May 16, 2024 by the above-captioned debtors (collectively, the "Debtors"). In support of this Objection[2], Mr. Singer respectfully states as follows:

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic. The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 1119 Colorado Avenue, Santa Monica, California 90401.

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

## PRELIMINARY STATEMENT

Mr. Singer founded Careismatic almost thirty years ago and served at its helm until November 2021, eight months after Partners Group (USA) Inc. acquired Careismatic. This acquisition is the subject of the Investigations nominally described in the Disclosure Statement. The scope of the proposed releases in the Plan is exceptionally broad and includes the Sponsor, Debtors' former ownership, and now, pursuant to the most recent iteration of the Plan, Debtors' former counsel.  In fact, it appears that just about everyone involved in Careismatic prior to and in connection with the filing of these Chapter 11 Cases is being released from claims and Causes of Action belonging to the Debtors' Estates.  For reasons unbeknownst to Mr. Singer, he is among the three parties defined as a "Non-Released Party."[3] Mr. Singer was not contacted by either the CBI Parent Transaction Committee nor the Intermediate Transaction Committee before they reached their determination to include Mr. Singer as a Non-Released Party, and the Disclosure Statement does not detail any allegations of wrongdoing concerning Mr. Singer.

In connection with his status as a "Non-Released Party," the Debtors purport to cut off all Indemnification Obligations, as well as the nebulous "other employee obligations" owing to Mr. Singer.  Further, the Plan is unclear as to whether it impairs Mr. Singer's direct rights to the D&O Insurance Liability Policies.  Mr. Singer objects to confirmation of the Plan to the extent it alters his rights and benefits under the D&O Insurance Liability Policies, the Separation Agreement (as defined below), and "other employee obligations," and to the extent that it terminates all Indemnification Obligations that Mr. Singer is afforded under California law.

## BACKGROUND

**A.     The Chapter 11 Cases and the Plan**

1.      On January 22, 2024 (the "Petition Date"), each of the above-captioned debtors (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing these jointly administered bankruptcy

---

[3] The other Non-Released Parties are certain entities relating to Mr. Singer as well as Robert Pierpoint.

proceedings under Case No. 24-10561 (VFP) (the "Chapter 11 Cases").

2.     Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No trustee or examiner has been appointed in these Chapter 11 Cases.

4.     On February 2, 2024, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee") filed the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 136]. On February 14, 2024, the U.S. Trustee filed the *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 204]. The members appointed to the Official Committee of Unsecured Creditors (the "Committee") are (a) Ball Up, Inc. (b) Koi Design, LLC, and (c) Angela Mendoza. The Chair of the Committee is Ball Up.

5.     On February 27, 2024, the Debtors filed the *Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 296], *Disclosure Statement Relating to the Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 297], and *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 298].

6.     On April 4, 2024, the Debtors filed their *Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 546] and *Disclosure Statement Relating to the Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 547][4].

---

[4] In this disclosure statement, the Debtors falsely stated that "The Intermediate Transaction Committee notes that, in addition to its belief that possible Claims against Messrs. Singer and Pierpoint exist, these individuals did not respond to requests to be interviewed by McDonald Hopkins and K&K." *See* Dkt. No. 547 at p. 39 n.10.  Neither McDonald Hopkins nor K&K contacted Mr. Singer about an interview.  Counsel for Mr. Singer contacted McDonald Hopkins, K&K, and Debtors' counsel regarding Mr. Singer's supposed failure to respond to an interview and it was determined that no interview request had been made.  The Debtors correctly removed this reference in the current Disclosure Statement. It was not until after the Intermediate Transaction Committee completed their investigations that they indicated an interest in interviewing Mr. Singer.  However, the Disclosure Statement explicitly states that the

7.      On April 18, 2024, the Debtors filed the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 587] and the *Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 588] (the "Disclosure Statement").

8.      Also on April 18, 2024, the Court entered the *Order Approving (I) The Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 591].

9.      On May 16, 2024, the Debtors filed the Plan [Dkt. No. 697] and the *Plan Supplement for the Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Dkt. No. 698] (the "Plan Supplement").

10.     The Plan provides Debtor and third-party releases, as well as exculpation, of all claims and Causes of Action for Released Parties and Exculpated Parties, while specifically excluding Non-Released Parties. *See* Plan, Art. VIII.C.–VIII.E. "Causes of Action" includes, among other things, indemnity and contribution. Plan, Art. I.A., at § 20.

11.     Singer and the Non-Released Singer Parties are among the Non-Released Parties, which are defined as:

> "*Non-Released Parties*" means, collectively, each of the following parties: (a) Michael L. Singer, the former chief executive officer, president, vice president, and/or director of certain of the Debtors; (b) Robert Pierpoint, the former chief financial officer, chief operating officer, executive vice president, vice president, secretary, committee member, and director of certain of the Debtors; and (c) the Non-Released Singer Parties.
>
> "*Non-Released Singer Parties*" means any Person or Entity that received consideration in connection with that certain Confidential Separation Agreement by and between Michael L. Singer, the Singer

---

Intermediate Transaction Committee is not aware of any documents or witnesses that would alter its conclusions. *See* Disclosure Statement, Art. VI.J.2. One might question why the Intermediate Transaction Committee would fail to seek an interview of a critical witness prior to publicly concluding that no further documents or witnesses would alter the results of its investigation.

1995 Family Trust, the Singer 2012 Irrevocable Trust, Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.) and CBI Parent, dated October 3, 2022, and any and all documentation related thereto, including, but not limited to, any repurchase agreements and severance agreements.

Plan, Art. I.A., at §§ 135–136.

12.     Similarly, the Plan treats Indemnification Obligations as executory contracts and proposes to reject those Indemnification Obligations in favor of the Non-Released Parties, while also discharging any and all Indemnification Obligations and "other employee obligations" in favor of a Non-Released Party.  *See* Plan, Art. V.B.  Specifically, the Plan provides:

> Consistent with applicable law, all Indemnification Obligations (other than with respect to Non-Released Parties) shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date; *provided* that the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtors' organization documents, or applicable agreements governing the Indemnification Obligations. All such Indemnification Obligations shall be deemed and treated as Executory Contracts to be assumed and assigned in their entirety by the Debtors under the Plan to the Post-Effective Date Debtors; *provided* that, notwithstanding the foregoing, any Indemnification Obligation or other employee obligations in favor of the Non-Released Parties shall be deemed and treated as an Executory Contract that has been rejected by the Post-Effective Date Debtors under the Plan, and the Debtors and the Post-Effective Date Debtors shall not honor, pay, or reimburse any claims by a Non-Released Party for indemnification or reimbursement.

Plan, Art. V.B. (emphasis added).  The Plan defines "Indemnification Obligations" as:

> "Indemnification Obligations" means any obligations of the Debtors pursuant to corporate charters, bylaws, limited partnership agreements, limited liability company agreements, written deeds of

> indemnity, or other organizational documents in place as of the
> Effective Date to indemnify current and former officers, directors,
> partners, managers, members, agents, or employees with respect to
> all present and future actions, suits, and proceedings against the
> Debtors or such directors, officers, managers, members, partners,
> agents, or employees, based upon any act or omission for or on
> behalf of the Debtors.

Plan, Art. I.A., at § 116.

13.     Similarly, the Debtors seek to eliminate Non-Released Parties' rights and access to

D&O Liability Insurance Policies for Indemnification Obligations and "other employee

obligations" owing to Non-Released Parties:

> After the Effective Date, none of the Post-Effective Date Debtors
> shall terminate or otherwise reduce the coverage under any of the
> D&O Liability Insurance Policies (including any "tail policy") in
> effect on or after the Petition Date, with respect to conduct or events
> occurring prior to the Effective Date, other than those
> Indemnification Obligations or other employee obligations in favor
> of the Non-Released Parties which shall be deemed rejected, and all
> directors and officers of the Debtors who served in such capacity at
> any time prior to the Effective Date shall be entitled to the full
> benefits of any such policy for the full term of such policy, to the
> extent set forth therein, regardless of whether such directors and
> officers remain in such positions after the Effective Date.

Plan, Art. IV.D., at § 12 (emphasis added).  "D&O Liability Insurance Policies" means "all

insurance policies (including any "tail policy") covering any of the Debtors' current or former

directors', managers', officers' and/or employees' liability and all agreements, documents, or

instruments relating thereto." Plan, Art. I.A., at § 41.

14.     The Debtors do not define or otherwise provide any explanation of what "other

employee obligations" they intend to reject and eliminate.

15.     Despite the foregoing, the Debtors note that the Plan does not alter or modify the

terms and conditions of, or coverage provided by, any insurance policies, nor does it alter the

insurers' duty to pay claims covered by such insurance policies or to seek reimbursement from the

Debtors. *See* Plan, Art. V.E. ("Nothing in the Plan, the Disclosure Statement, the Confirmation

Order, or any other order of the Bankruptcy Court (including any other provision that purports to

be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (ii) alters or modifies the duty, if any, that the insurers or third party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Post-Effective Date Debtors) or draw on any collateral or security therefor.").

**B.      Mr. Singer's Employment with Careismatic**

16.     In July 1995, Mr. Singer formed Strategic Partners, which is now known as Careismatic Brands, Inc. ("Careismatic"). Mr. Singer held various positions at other Debtor entities as well. In these positions, including former Chairman and Chief Executive Officer of Careismatic, Mr. Singer always acted in good faith and in a manner that was in the best interests of Careismatic.

17.     Mr. Singer departed from Careismatic in November 2021 pursuant to that certain Confidential Separation Agreement by and between Michael L. Singer, the Singer 1995 Family Trust, the Singer 2012 Irrevocable Trust, Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.), and CBI Parent, dated October 3, 2022 (the "Separation Agreement"). However, pursuant to that certain Consulting Agreement by and between Michael L. Singer and Careismatic Brands, Inc. dated October 3, 2022 (the "Consulting Agreement"), Mr. Singer provided very limited consulting services to Careismatic and other Debtors following his separation. At the time of Mr. Singer's termination, Careismatic had not been marked down in value by Partners Group. The tremendous increases in debt and the substantial decreases in Careismatic's profitability occurred after Mr. Singer's termination. Under Mr. Singer's leadership, Careismatic and its predecessor companies grew sales and profitability in 29 of the 31 years during a multitude of economic circumstances and crises.

18.     The Consulting Agreement and Separation Agreement are executory contracts that the Debtors have indicated they intend to reject. *See* Plan Supplement, Ex. G.

## ARGUMENT AND AUTHORITIES

### A.    The Plan's Proposed Rejection and Discharge of All Indemnification Obligations Violates California Law

19.    The Debtors seek to reject, terminate, and discharge their statutory duty and obligations under California law to indemnify Mr. Singer and other current and former directors and officers. Because the Plan violates applicable nonbankruptcy law, it cannot be confirmed.

20.    Section 1129(a)(3) precludes confirmation of a plan that violates nonbankruptcy law. 11 U.S.C. § 1129(a)(3) ("The court shall confirm a plan only if all of the following requirements are met: … The plan has been proposed in good faith and not by any means forbidden by law."); *see also In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) ("Section 1129(a)(3) provides that the court shall confirm a plan *only if* '[t]he plan has been proposed in good faith and not by any means forbidden by law.'") (emphasis added); *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) ("We accept the debtors' argument that 'means forbidden by law' refers *inter alia* to state law."); 7 Collier on Bankruptcy ¶ 1129.02 (16th ed. 2024) ("[C]ourts have addressed two possible sources of "forbidden" animus: nonbankruptcy organic law, such as state corporation or partnership law, which governs the creation and existence of entities outside of bankruptcy; and law that prohibits certain activities of the estate.").

21.    Under the California Corporate Code, a corporation must indemnify its current and former directors and officers to the extent that such director and officer has been successful on the merits in defense of a proceeding.[5]    *See* Cal. Corp. Code § 317(d) ("To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, *the agent shall be indemnified* against expenses actually and reasonably incurred by the agent in connection therewith.") (emphasis added); *see also id.* at (a) ("For the purposes of this section, 'agent' means any person who is or was a director, officer, employee or other agent of the corporation . . . .").

---

[5] Because Careismatic is a California entity, California law governs.

22.     Likewise, a limited liability company must also indemnify its current and former directors and officers if such director and officer has been successful on the merits in defense or settlement of a proceeding in which the director and officer was a party by reason of their position with the limited liability company and the director and officer acted in good faith. *See* Cal. Corp. Code § 17704.08(d)(1) ("[T]o the extent that an agent of a limited liability company has been successful on the merits in defense or settlement of any claim, issue, or matter in any proceeding in which the agent was or is a party or is threatened to be made a party by reason of the fact that the person is or was an agent of the limited liability company, if the agent acted in good faith and in a manner that the agent reasonably believed to be in the best interests of the limited liability company and its members, *the agent shall be indemnified* against expenses actually and reasonably incurred by the agent in connection therewith.") (emphasis added); *see also id.* at (d)(2) ("'Agent' means any person who is or was a member of a member-managed limited liability company, manager of a manager-managed limited liability company, officer, employee, or other agent of the limited liability company . . . .").

23.     As set forth above, the Debtors have a statutory duty to indemnify Mr. Singer for expenses incurred in an action or settlement in which they are successful on the merits in defense or settlement.  The Plan, however, deprives Mr. Singer of his indemnification rights under California law by proposing to reject, terminate, and discharge all Indemnification Obligations that Mr. Singer has or may have against the Debtors. *See* Plan, Art. V.B and Art. VIII.C.–VIII.E. Because the Plan contravenes California law, it cannot be confirmed.  Mr. Singer respectfully requests this Court to condition approval of the Plan on preservation of the Indemnification Obligations.

**B.      Debtors May Not Reject Undefined and Overly Broad "Other Employee Obligations" or Eliminate Mr. Singer's Rights to Receive Distributions on Account of Related Rejection Damages**

24.     The Plan seeks to discharge "other employee obligations" that the Debtors may owe to Mr. Singer without defining the term or explaining what specific "other employee obligations"

9

are intended to be rejected and eliminated. As currently drafted, the Plan's proposed elimination, termination, discharge, and rejection of "other employee obligations" in favor of Non-Released Parties is overly broad and ambiguous.

25.    Additionally, it appears that the Debtors seek to treat "other employee obligations" as executory contracts that are deemed rejected while also eliminating Mr. Singer's rights to file a proof of claim for rejection damages and receive distribution on account of such claims. This proposed treatment of the "other employee obligations" is antithetical to the Bankruptcy Code and cannot be permitted. Furthermore, to the extent the Debtors owe "other employee obligations" to Mr. Singer pursuant to the Separation Agreement, Consulting Agreement, or otherwise, Mr. Singer is entitled to assert a claim for rejection damages in accordance with Section 365 of the Bankruptcy Code. To avoid ambiguity, the Plan should be revised to eliminate references to "other employee obligations."

## C.    The Debtors Cannot Alter Mr. Singer's Rights to D&O Liability Insurance Policies that Inure Directly to His Benefit

26.    Although the Plan is unclear, it appears that the Debtors may be seeking to confiscate Mr. Singer's rights, benefits, and access to those D&O Liability Insurance Policies that inure directly to his benefit as a former director and officer. Any order confirming the Plan must clarify that Mr. Singer's access to and rights under the D&O Liability Insurance Policies are not being impacted.

27.    To the extent that certain tail policies and applicable coverages under the D&O Liability Insurance Policies inure directly to the benefit of Mr. Singer, such D&O Liability Insurance Policies cannot be rejected and terminated in their entirety as they are not property of the Debtors' estates.[6]   Similarly, the Debtors cannot reject in their entirety the D&O Liability

---

[6] Courts in the Third Circuit have established four general rules in determining whether proceeds of a D&O Policy are property of the estate:

(1) [W]hen a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor.

(2) [W]hen the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate.

Insurance Policies that provide indemnification coverage where indemnification either has not occurred, is hypothetical, or speculative because the proceeds for such coverage are not property of the Debtors' bankruptcy estates.

28.    Although the Debtors note that the Plan does not alter or amend the insurers' duties to honor claims made under the policies or the insurers' rights seek reimbursement from the Debtors, it is not entirely clear that Mr. Singer's rights, benefits, and access to the D&O Liability Insurance Policies will continue.  *Compare* Plan, Art. IV.D., at § 12; *with* Plan, Art. V.E.  The Debtors should clearly state that the Plan does not and will not impact rights that Mr. Singer has under those D&O Liability Insurance Policies that inure directly to his benefit, or that the rejection of D&O Liability Insurance Policies excludes all policies, tail policies, and side coverage that inure directly to Mr. Singer's benefit.

## <u>RESERVATION OF RIGHTS</u>

29.    Mr. Singer continues to analyze and review the Plan and the documentation in support thereof, and submits this Objection without prejudice to, and with a full reservation of all rights to, supplement, modify, or amend this Objection in advance of, or in connection with, any hearing to confirm the Plan. Nothing herein is intended to be a waiver by Mr. Singer of any right, objection, argument, claim, or defense with respect to any matter, including matters involving the Plan or the Separation Agreement or the Consulting Agreement, all of which are hereby expressly

---

(3) [W]hen there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.

(4) [W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.

*In re Allied Digital Technologies, Corp*., 306 B.R. 505, 512 (Bankr. D. Del. 2004); *see also In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504, 572–73 (Bankr. D. Del. 2022), supplemented, 2022 WL 20541782 (Bankr. D. Del. Sept. 8, 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023), and *aff'd*, 650 B.R. 87 (D. Del. 2023) (quoting same); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (stating the respective rights of debtors and nondebtors to insurance proceeds "[m]ust be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under appliable state law."); *In re GB Holdings, Inc*., No. 05-42736 JHW, 2006 WL 4457350, at *3 (Bankr. D.N.J. Sept. 21, 2006) ("The debtor's right to receive proceeds, as well as the right of the directors and officers to the payment of defense costs, are subject to the contractual provisions and restrictions of the insurance policy.") (citations omitted); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 216 (3d Cir. 2000) (stating that the "proceeds from a[n] insurance policy should be evaluated separately from the debtor's interest in the policy itself.") (citation omitted).

11

reserved.  Mr. Singer was not served an Opt-Out Form, ostensibly because he may not give any releases under the Plan as a "Non-Released Party." *See* Plan, Art. I.A., at §§ 157 and 158. For the avoidance of doubt, Mr. Singer does not consent to provide any releases to any party under the Plan.

## CONCLUSION

30.    For the foregoing reasons, Mr. Singer respectfully requests this Court deny confirmation of the Plan absent the modifications specified herein.

Dated: May 23, 2024

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: */s/ Kaitlin R. Walsh*

Kaitlin R. Walsh, Esq.
(NJ Bar No. 038402006)
919 Third Avenue
New York, New York, 10022
Tel: (212) 935-3000
E-mail: KRWalsh@mintz.com

*Counsel to Michael Singer*