**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel to the Debtors and Debtors in*
*Possession*

<br>

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*, | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Jointly Administered) |

<br>

## NOTICE OF FILING OF SECOND AMENDED JOINT PLAN OF REORGANIZATION OF CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)

**PLEASE TAKE NOTICE** that on February 27, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 296].

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**PLEASE TAKE NOTICE** that on April 4, 2024, the Debtors filed the *Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 546].

**PLEASE TAKE FURTHER NOTICE** that on April 18, 2024, the Debtors filed the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 587].

**PLEASE TAKE FURTHER NOTICE** that on May 16, 2024, the Debtors filed the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 697] (the "Second Amended Plan (Technical Modifications)").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)*, attached hereto as **Exhibit A** (the "Second Amended Plan (Further Technical Modifications)").

**PLEASE TAKE FURTHER NOTICE** that a comparison between the Second Amended Plan (Technical Modifications) and the Second Amended Plan (Further Technical Modifications) is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Second Amended Plan (Further Technical Modifications) and all other documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Donlin, Recano & Company, Inc. at https://www.donlinrecano.com/careismatic.  You may also obtain copies of any pleadings filed in these chapter 11 cases by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: May 24, 2024

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         chusnick@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

## Exhibit A

**Second Amended Plan (Further Technical Modifications)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CAREISMATIC BRANDS, LLC, *et al.*,[1] | ) | Case No. 24-10561 (VFP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**SECOND AMENDED JOINT PLAN OF REORGANIZATION
OF CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES PURSUANT
TO CHAPTER 11 OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)**

---

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Felice R. Yudkin, Esq. (NJ Bar No. 014962005)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
Email:     msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2000
Email:     chusnick@kirkland.com

*Co-Counsel to the*
*Debtors and Debtors in Possession*

*Co-Counsel to the*
*Debtors and Debtors in Possession*

Dated:  May 24, 2024

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://donlinrecano.com/careismatic.   The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
  GOVERNING LAW ........................................................................................................... 1
 A. Defined Terms. ............................................................................................................... 1
 B. Rules of Interpretation. ................................................................................................ 15
 C. Computation of Time. .................................................................................................. 16
 D. Governing Law. ........................................................................................................... 16
 E. Reference to Monetary Figures. ................................................................................... 16
 F. Reference to the Debtors or the Post-Effective Date Debtors. ...................................... 16
 G. Controlling Document. ................................................................................................ 16
 H. Consultation, Notice, Information, and Consent Rights ................................................ 16

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING
  EXPENSES ...................................................................................................................... 17
 A. Administrative Claims. ................................................................................................ 17
 B. DIP Claims. ................................................................................................................. 17
 C. Priority Tax Claims. .................................................................................................... 17
 D. Professional Fee Claims. .............................................................................................. 18
 E. Payment of Restructuring Expenses. ............................................................................ 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS, AND INTERCOMPANY
  INTERESTS ..................................................................................................................... 19
 A. Classification of Claims, Interests, and Intercompany Interests. ................................... 19
 B. Treatment of Claims, Interests, and Intercompany Interests. ........................................ 19
 C. Special Provision Governing Unimpaired Claims. ........................................................ 22
 D. Elimination of Vacant Classes. .................................................................................... 22
 E. Voting Classes, Presumed Acceptance by Non-Voting Classes. .................................... 23
 F. Intercompany Interests. ............................................................................................... 23
 G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................. 23
 H. Controversy Concerning Impairment. .......................................................................... 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................ 23
 A. General Settlement of Claims, Interests, and Intercompany Interests. ............................ 23
 B. Restructuring Transactions. .......................................................................................... 23
 C. Section 1146 Exemption. ............................................................................................. 24
 D. The Recapitalization Transaction. ................................................................................ 25
 E. Cancellation of Existing Agreements, Interests, and Intercompany Interests. ................. 30
 F. The GUC Trust. ........................................................................................................... 30
 G. Preservation of Causes of Action. ................................................................................ 32
 H. Closing the Chapter 11 Cases. ..................................................................................... 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 33
 A. Assumption and Rejection of Executory Contracts and Unexpired Leases. .................... 33
 B. Indemnification Obligations. ........................................................................................ 34
 C. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..................... 34
 D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .................. 35
 E. Insurance Policies. ...................................................................................................... 35
 F. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. .......... 36
 G. Reservation of Rights. ................................................................................................. 36
 H. Nonoccurrence of Effective Date. ................................................................................ 37
 I. Contracts and Leases Entered Into After the Petition Date. ........................................... 37

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .................................................................. 37

A. Timing and Calculation of Amounts to Be Distributed. .................................................37
B. Disbursing Agent. ............................................................................................................37
C. Rights and Powers of Disbursing Agent. .......................................................................37
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..................38
E. Manner of Payment. ........................................................................................................39
F. Compliance with Tax Requirements. ..............................................................................39
G. Allocations. .....................................................................................................................39
H. No Postpetition Interest on Claims. ...............................................................................39
I. Foreign Currency Exchange Rate. ..................................................................................40
J. Setoffs and Recoupment. ................................................................................................40
K. Claims Paid or Payable by Third Parties. .......................................................................40

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .................................................................................................................41
A. Disputed Claims Process. ...............................................................................................41
B. Allowance of Claims. ......................................................................................................41
C. Estimation of Claims. ......................................................................................................41
D. Claims Administration Responsibilities. ........................................................................42
E. Time to File Objections to Claims. .................................................................................42
F. Adjustment to Claims, Interests, or Intercompany Interests without Objection. ...........42
G. Disputed and Contingent Claims Reserve. .....................................................................42
H. Disallowance of Claims. .................................................................................................43
I. Amendments to Proofs of Claim. ...................................................................................43
J. Distributions Pending Allowance. ..................................................................................43
K. Distributions After Allowance. .......................................................................................43

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .............................43
A. Discharge of Claims and Termination of Interests and Intercompany Interests. ...........43
B. Release of Liens. .............................................................................................................44
C. Releases by the Debtors. .................................................................................................44
D. Releases by Holders of Claims, Interests, and Intercompany Interests. ........................45
E. Exculpation. ....................................................................................................................46
F. Injunction. .......................................................................................................................47
G. Protections Against Discriminatory Treatment. .............................................................48
H. Document Retention. .......................................................................................................48
I. Reimbursement or Contribution. ....................................................................................48

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .................................48
A. Conditions Precedent to the Effective Date. ..................................................................48
B. Waiver of Conditions. .....................................................................................................49
C. Effect of Failure of Conditions. .....................................................................................49
D. Substantial Consummation. ............................................................................................49

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .............................50
A. Modification and Amendments. ......................................................................................50
B. Effect of Confirmation on Modifications. ......................................................................50
C. Revocation or Withdrawal of Plan. ................................................................................50

ARTICLE XI. RETENTION OF JURISDICTION ..................................................................................50

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................................52
A. Immediate Binding Effect. ..............................................................................................52
B. Additional Documents. ....................................................................................................52
C. Payment of Statutory Fees. .............................................................................................52
D. Statutory Committee and Cessation of Fee and Expense Payment. ...............................53
E. Reservation of Rights. .....................................................................................................53

| | | |
|---|---|---|
| F. | Successors and Assigns. | 53 |
| G. | Notices. | 53 |
| H. | Term of Injunctions or Stays. | 54 |
| I. | Entire Agreement. | 55 |
| J. | Exhibits. | 55 |
| K. | Nonseverability of Plan Provisions. | 55 |
| L. | Votes Solicited in Good Faith. | 55 |
| M. | Closing of Chapter 11 Cases. | 55 |
| N. | Waiver or Estoppel. | 55 |
| O. | Creditor Default. | 56 |

**INTRODUCTION**

Careismatic Brands, LLC and the above-captioned debtors and debtors in possession propose this Plan for the resolution of the outstanding Claims and Interests pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims, Interests, and Intercompany Interests pursuant to the Bankruptcy Code. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations as well as a summary and description of the Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.      "*Acceptable Alternative Exit Facility*" means an exit financing facility other than the Exit Term Loan Facility that is acceptable to the Required Consenting First Lien Lenders.

2.      "*Acceptable Alternative Exit Facility Documents*" means the documents governing the Acceptable Alternative Exit Facility, together with any related notes, certificates, agreements, security agreements, documents, and instruments related to or executed in connection therewith.

3.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; (d) adequate protection Claims provided for in the DIP Orders; and (e) Restructuring Expenses.

4.      "*Administrative Claims Bar Date*" means, for any Administrative Claim arising on or prior to March 23, 2024, establishing April 2, 2024, at 5:00 p.m., prevailing Eastern Time, as the last date and time by which claimants holding such Administrative Claims must File Proofs of Claim, and for any Administrative Claims arising after March 23, 2024, such Claims must be Filed by the earlier of: (a) the 15th day of the month following the month in which the Claim arose and (b) 14 days following the Effective Date.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

6.      "*Agents*" means, collectively, the DIP Agent, the Exit Agent, the First Lien Agent, and the Second Lien Agent, including, in each case, any successors thereto.

7.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable bar date (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Debtors' Schedules as not contingent, not unliquidated, and not Disputed and for which no Proof of Claim

asserting a different amount or classification has been timely Filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order of the Bankruptcy Court; *provided, further,* that unless expressly waived by the Plan or otherwise permitted by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

8.      "*Assumed Executory Contracts and Unexpired Leases List*" means the list to be included in the Plan Supplement, as determined by the Debtors, of Executory Contracts and Unexpired Leases that will be assumed by the Debtors, pursuant to the Plan, which list may be amended from time to time.

9.      "*Assumed Plans*" means, collectively, the Debtors' wages, compensation, and benefits programs according to existing terms and practices as of the date of this Plan, including executive compensation programs and executive employment agreements.

10.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law other than the Vendor Avoidance Actions.

11.     "*Backstop Commitment*" means the Backstop Parties' commitment to backstop 100% of the DIP Facility pursuant to the DIP Credit Agreement in exchange for the Backstop Premium.

12.     "*Backstop Party*" means the Consenting Creditors providing the Backstop Commitment.

13.     "*Backstop Premium*" means an amount equal to 11.0% of the DIP Commitments, payable in-kind to each Backstop Party, according to its *pro rata* share of the DIP Commitments, which may be equitized in accordance with the DIP Premium Conversion Election Option.

14.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

15.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey.

16.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

17.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

19.     "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

20.     "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories),

whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims, Interests, or Intercompany Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

21.    "*CBI Parent*" means CBI Parent, L.P.

22.    "*CBI Parent Transaction Committee*" means the transaction committee of the board of directors of CBI Parent.

23.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25.    "*Claims and Noticing Agent*" means Donlin Recano & Company, Inc., the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 71].

26.    "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

27.    "*Class*" means a class of Claims, Interests, or Intercompany Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28.    "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

29.    "*Commitment Premium*" means an amount equal to 3.5% of the DIP Commitments, payable in-kind to each DIP Lender, according to its *pro rata* share of the DIP Commitments, which may be equitized in accordance with the DIP Premium Conversion Election Option.

30.    "*Committee*" means the official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee on February 2, 2024 [Docket No. 136] in the Chapter 11 Cases, as amended on February 14, 2024 [Docket No. 204], the membership of which may be further reconstituted from time to time by the U.S. Trustee.

31.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

32.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

33.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35.    "*Consenting Creditors*" means, collectively, the First Lien Ad Hoc Group and the Cross-Holder Ad Hoc Group.

36.     "*Consenting Stakeholders*" means, collectively, the Consenting Creditors and the Sponsor.

37.     "*Consummation*" means the occurrence of the Effective Date.

38.     "*Cross-Holder Ad Hoc Group*" means, collectively, those Holders of First Lien Term Loan Claims and Second Lien Claims represented by the Cross-Holder Ad Hoc Group Advisors, that are signatories to the RSA.

39.     "*Cross-Holder Ad Hoc Group Advisors*" means King & Spalding LLP.

40.     "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

41.     "*D&O Liability Insurance Policies*" means all Insurance Policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

42.     "*Debtor*" means each of the Debtors in its individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

43.     "*Debtor Release*" means the release set forth in Article VIII.C hereof.

44.     "*Debtors*" means, collectively, each of the following:  AllHearts, LLC; Careismatic, LLC; Careismatic Brands, LLC; Careismatic Group Inc.; Careismatic Group II Inc.; CBI Intermediate, Inc.; CBI Midco, Inc.; CBI Parent; Krazy Kat Sportswear LLC; Marketplace Impact, LLC; Med Couture, LLC; Medelita, LLC; New Trojan Parent, Inc.; Pacoima Limited, LLC; Silverts Adaptive, LLC; Strategic Distribution, L.P.; Strategic General Partners, LLC; Strategic Partners Acquisition Corp.; Strategic Partners Corp.; Strategic Partners Midco, LLC; Trojan Buyer, Inc.; and Trojan Holdco, Inc.

45.     "*Definitive Documents*" means, collectively and as applicable, (a) this Plan (including the releases set forth in Article VIII herein) and all exhibits hereto; (b) the Plan Supplement and the documents contained therein; (c) the Confirmation Order; (d) the Disclosure Statement; (e) the Disclosure Statement Order; (f) all material pleadings Filed by the Debtors in connection with the Chapter 11 Cases (and related orders), including the First Day Pleadings and all orders sought pursuant thereto; (g) all motions, orders, filings, documents, and agreements related to the Restructuring Transactions, including any motion to approve the Disclosure Statement, (h) the Solicitation Materials; (i) the New Organizational Documents; (j) the DIP Orders; (k) the DIP Documents; (l) the Exit Facilities Documents, (m) the Second Lien Warrants Documents; (o) the GUC Trust Agreement; (o) any KEIP or KERP (if applicable); (p) any and all filings with or requests for regulatory or other approvals from any governmental entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Restructuring Transactions; and (q) such other agreements, instruments, and documentation as may be necessary to consummate and document the transactions contemplated by the Plan.

46.     "*DIP Agent*" means the administrative agent and collateral agent under the DIP Facility.

47.     "*DIP Agent Advisors*" means (i) Paul Hastings LLP, (ii) Porzio, Bromberg & Newman, P.C., and (iii) any other advisors permitted under the DIP Documents.

48.     "*DIP Claims*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility, the DIP Credit Agreement (including accrued but unpaid interest and fees arising under the DIP Credit Agreement), or the other DIP Documents, including any DIP Premiums, payable on the terms provided for in the DIP Credit Agreement and the DIP Orders.

49.     "*DIP Commitments*" means the loans under the DIP Facility.

50.   "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit and Guaranty Agreement, dated as of January 24, 2024, by and among New Trojan Parent, Inc., as Borrower, CBI Intermediate, Inc., as Holdings, all other Debtors, the guarantors party thereto, the lenders party thereto, and Jefferies Finance LLC, as administrative agent and collateral agent.

51.   "*DIP Documents*" means, collectively, the DIP Credit Agreement and any other documents governing the DIP Facility, including the DIP Orders.

52.   "*DIP Facility*" means the superpriority senior secured debtor-in-possession credit facility provided for under the DIP Documents.

53.   "*DIP Lenders*" means, collectively, each lender under the DIP Facility.

54.   "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

55.   "*DIP Premium Conversion Election Option*" means the right of each Holder of a DIP Claim to elect, at its sole discretion, to convert the DIP Premiums that such Holder earned in connection with the DIP Facility into New Common Stock at the Discount Value; *provided* that the DIP Premium Conversion Election Option shall not apply in the event that:  (i) the Debtors' restructuring is consummated through a Plan that provides for payment in full in Cash on the Effective Date of all First Priority Claims and DIP Claims; or (ii) an Acceptable Alternative Exit Facility is approved and becomes effective.

56.   "*DIP Premiums*" means, collectively, the Backstop Premium, the Commitment Premium, and the Exit Premium, each of which may be equitized in accordance with the DIP Premium Conversion Election Option.

57.   "*Disbursing Agent*" means the Post-Effective Date Debtors, or any Entity the Debtors or the Post-Effective Date Debtors select to make or to facilitate distributions in accordance with the Plan, which Entity may include the Claims and Noticing Agent or the Agents (with the respective Agent's prior written consent), as applicable.

58.   "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

59.   "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving the adequacy of the Disclosure Statement.

60.   "*Discount Value*" means 40.0% to the plan enterprise value of $325 million.

61.   "*Disputed*" means, as to a Claim, Interest, or Intercompany Interest, a Claim, Interest, or Intercompany Interest:  (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

62.   "*Disputed Claims Reserve*" means the account to be established on the Effective Date and funded with the Disputed Claims Reserve Amount for distribution as set forth in Article VII.G, if any.

63.   "*Disputed Claims Reserve Account*" means the account funded with the Disputed Claims Reserve Amount.

64.   "*Disputed Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors in consultation with the Required Consenting First Lien Lenders, which amount shall be used to fund the Disputed Claims Reserve.

65.    "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing or such other date agreed to by the Debtors and the Required Consenting First Lien Lenders.

66.    "*DTC*" means the Depository Trust Company.

67.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

68.    "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

69.    "*Equipment Financing Claims*" means any Claim on account of the Equipment Lease Agreement.

70.    "*Equipment Lease Agreement*" means that certain Master Equipment Lease Agreement dated July 25, 2023, by and among Wingspire Equipment Finance LLC, as Lessor, and Careismatic Brands, LLC, as Lessee.

71.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

72.    "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

73.    "*Excluded Vendor List*" means the list of vendors to be provided by the Post-Effective Date Debtors to the GUC Trustee not later than sixty (60) days following entry of the Confirmation Order.

74.    "*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Post-Effective Date Debtors; (c) the Committee and each of its members; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), each such Entity's current and former control persons, directors, members of any committees of any Entity's board of directors or managers, equity Holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided*, *however*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be an Exculpated Party under the Plan.

75.    "*Executory Contract*" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

76.    "*Exit Agent*" means the administrative agent and collateral agent under the Exit Facilities Documents.

77.    "*Exit Facilities Documents*" means, as applicable, either the Exit Term Loan Facility Documents or the Acceptable Alternative Exit Facility Documents.

78.    "*Exit Facility Lenders*" means, collectively, each lender under the applicable Exit Financing Arrangement.

79.    "*Exit Financing Arrangements*" means the Exit Term Loan Facility or the Acceptable Alternative Exit Facility, as applicable.

80.    "*Exit Premium*" means an amount equal to 3.5% of the DIP Commitments payable to each DIP Lender, according to its *pro rata* share of the DIP Commitments, (i) in-kind upon conversion into the Exit Term Loan Facility or (ii) in Cash upon repayment in full of the DIP Facility (which, for the avoidance of doubt, shall also be subject to the DIP Premium Conversion Election Option).

81.     "*Exit Term Loan Credit Agreement*" means the credit agreement with respect to the Exit Term Loan Facility.

82.     "*Exit Term Loans*" means the loans issued on account of the Exit Term Loan Facility.

83.     "*Exit Term Loan Facility*" means a new term loan facility wherein the DIP Commitments are converted to Exit Term Loan Facility Loans.

84.     "*Exit Term Loan Facility Documents*" means any documents governing the Exit Term Loan Facility and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

85.     "*Exit Term Loan Facility Loans*" means loans issued under the Exit Term Loan Facility.

86.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

87.     "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

88.     "*Final DIP Order*" means the Final Order approving the DIP Facility and the DIP Documents and authorizing the Debtors' use of Cash Collateral.

89.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

90.     "*First Day Pleadings*" means those certain pleadings Filed by the Debtors contemporaneously with their voluntary petitions on the Petition Date.

91.     "*First Lien Ad Hoc Group*" means, collectively, those Holders of First Lien Term Loan Claims and Second Lien Claims represented by the First Lien Ad Hoc Group Advisors, that are signatories to the RSA or any subsequent Holder of First Lien Term Loan Claims, First Lien RCF Claims, and Second Lien Claims that becomes party thereto as a member of the First Lien Ad Hoc Group, in accordance with the terms of the RSA.

92.     "*First Lien Ad Hoc Group Advisors*" means (i) Milbank LLP, (ii) Gibbons P.C., (iii) Houlihan Lokey Capital, Inc., (iv) St. Onge Company, and (v) any regulatory counsel or other advisors retained by the First Lien Ad Hoc Group.

93.     "*First Lien Agent*" means UBS AG, Stamford Branch, as administrative and collateral agent to the First Lien Credit Agreement.

94.     "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated as of January 6, 2021, among New Trojan Parent, Inc., a Delaware corporation, as Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, the issuing banks thereto from time

to time, the Swing Line Lender party thereto from time to time, and UBS AG, Stamford Branch, as administrative and collateral agent.

95.    "*First Lien Credit Documents*" means any documents governing the First Lien Revolving Credit Facility and First Lien Term Loan Facility, and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments related to or executed in connection therewith.

96.    "*First Lien RCF Claims*" means any Claim on account of the First Lien Revolving Credit Facility.

97.    "*First Lien Revolving Credit Facility*" means that certain first lien revolving credit facility issued pursuant to the First Lien Credit Agreement.

98.    "*First Lien Secured Claims*" means any First Priority Claim that is a Secured Claim.

99.    "*First Lien Term Loan Claims*" means any Claim on account of the First Lien Credit Agreement arising out of the term loans issued thereby, plus applicable interest, fees, costs, expenses, and premiums.

100.    "*First Lien Term Loan Facility*" means that certain term loan credit facility issued pursuant to the First Lien Credit Agreement.

101.    "*First Priority Claims*" means, collectively, the First Lien RCF Claims, the First Lien Term Loan Claims, and the Equipment Financing Claims.

102.    "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a DIP Claim; (e) an Other Secured Claim; (f) an Other Priority Claim; (g) a First Priority Claim; (h) a Second Lien Secured Claim; (i) a Subordinated Claim; or (j) an Intercompany Claim.  For the avoidance of doubt, General Unsecured Claims shall include the Second Lien Deficiency Claims.

103.    "*Governance Term Sheet*" means that certain Governance Term Sheet attached as <u>Exhibit D</u> to the Restructuring Term Sheet.

104.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Post-Effective Date Debtors, as applicable.

105.    "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

106.    "*GUC Trust*" means the trust established on the Effective Date in accordance with the Plan to hold the GUC Trust Assets and administer Allowed General Unsecured Claims pursuant to the GUC Trust Agreement.

107.    "*GUC Trust Agreement*" means the trust agreement establishing the terms and conditions for the creation and operation of the GUC Trust to be entered into on or before the Effective Date between the Debtors and the GUC Trustee, which agreement shall be in form and substance acceptable to the Debtors and the Committee, and, for the limited purpose of determining impact on the Post-Effective Date Debtors, the Consenting Creditors holding First Priority Claims, or the Plan, the Required Consenting First Lien Lenders, whose consent will not be unreasonably withheld.

108.    "*GUC Trust Assets*" means, collectively, (i) $3.5 million in Cash, and (ii) the GUC Trust Claims.

109.    "*GUC Trust Claims*" means (i) any Claims and Causes of Action held by the Debtors and their respective Estates against the Non-Released Parties; (ii) any Interchange Claims, and (iii) any Avoidance Action held by the Debtors and their Estates to the extent not released under the Plan, which shall include all Avoidance

Actions against the Non-Released Parties; *provided* that the GUC Trust Claims shall not include (a) any Vendor Avoidance Actions or (b) Retained Causes of Actions.

110.    "*GUC Trustee*" means, in its capacity as such, the Person or Entity selected by the Committee, with the consent (not to be unreasonably withheld) of the Debtors and any successor thereto, in accordance with the GUC Trust Agreement.

111.    "*GUC Trust Fees and Expenses*" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professionals retained by the GUC Trust, and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust.

112.    "*GUC Trust Net Assets*" means the GUC Trust Assets *less* the GUC Trust Fees and Expenses.

113.    "*Holder*" means a Person or an Entity holding a Claim, Interest, or Intercompany Interest, as applicable.

114.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

115.    "*Interchange Claims*" means any Claim or Cause of Action held by a Debtor or a Debtor's Affiliate, and any successors or assigns, relating to the payment card interchange fee and merchant discount antitrust litigation.

116.    "*Indemnification Obligations*" means any obligations of the Debtors pursuant to corporate charters, bylaws, limited partnership agreements, limited liability company agreements, written deeds of indemnity, or other organizational documents in place as of the Effective Date to indemnify current and former officers, directors, partners, managers, members, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors.

117.    "*Insurance Policies*" means all insurance policies that have been issued at any time to, or provide coverage to, any of the Debtors or any of their predecessors, and all agreements, documents or instruments relating thereto, including all D&O Liability Insurance Policies.

118.    "*Insurer*" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

119.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

120.    "*Intercompany Interest*" means, other than an Interest, any shares (or any class thereof), common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, profits interests, puts, options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in a Debtor held by another Debtor.

121.    "*Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests in CBI Parent, and puts, options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of CBI Parent (in each case whether or not arising under or in connection with any employment agreement).

122.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 60].

123. "*Intermediate Transaction Committee*" means the transaction committee of the board of directors of CBI Intermediate, Inc.

124. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

125. "*KEIP*" means any key executive incentive plan or similar proposal or documentation that would require Bankruptcy Court approval to make payments to "insiders" during the course of the Chapter 11 Cases.

126. "*KERP*" means any key employee retention plan or similar proposal or documentation that would require Bankruptcy Court approval to make payments to non-"insiders" during the course of the Chapter 11 Cases.

127. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

128. "*M&R*" means Michelman & Robinson LLP.

129. "*M&R Action*" means that certain Los Angeles County Superior Court action captioned *Michelman & Robinson, LLP v. Partners Group et al.*, Case No. 23STVC05652.

130. "*M&R Claim*" means that certain Claim held by M&R, which Proof of Claim evidencing such Claim was submitted on March 20, 2024 as claim number 106, as amended on March 22, 2024 by claim number 113, in the amount of $10,094,655.00.

131. "*M&R Settlement Payment*" means the Settlement Payment, paid in full, as that term is defined in the Settlement Agreement to be entered into by and between the Sponsor, Michael Penner, Girisha Chandraraj, M&R, and Sanford L. Michelman.

132. "*Management Incentive Plan*" means a post-emergence incentive plan to be designed and adopted by the New Board following the Effective Date, to be used to incentivize and compensate employees, directors, consultants, and other service providers which will include the ability to grant restricted stock units, options, New Common Stock, or other rights exercisable, exchangeable, or convertible into New Common Stock (or equivalent Cash value thereof) representing up to 15.0% of the New Common Stock on a fully diluted basis.

133. "*MIP Equity*" means any New Common Stock under the Management Incentive Plan as authorized by the New Board.

134. "*New Board*" means the Governing Body of Reorganized Careismatic, which shall consist of the Chief Executive Officer of the Post-Effective Date Debtors and six members appointed by the First Lien Ad Hoc Group in accordance with the Governance Term Sheet.

135. "*New Common Stock*" means the new common equity issued by Reorganized Careismatic on the Effective Date.

136. "*New Organizational Documents*" means the documents providing for corporate governance of Reorganized Careismatic and the other Post-Effective Date Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with section 1123(a)(6) of the Bankruptcy Code (as applicable).

137. "*Non-Released Parties*" means, collectively, each of the following parties:  (a) Michael L. Singer, the former chief executive officer, president, vice president, and/or director of certain of the Debtors; (b) Robert Pierpoint, the former chief financial officer, chief operating officer, executive vice president, vice president, secretary, committee member, and director of certain of the Debtors; and (c) the Non-Released Singer Parties.

138. "*Non-Released Singer Parties*" means any Person or Entity that received consideration in connection with that certain Confidential Separation Agreement by and between Michael L. Singer, the Singer 1995 Family Trust, the Singer 2012 Irrevocable Trust, Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.) and CBI Parent,

dated October 3, 2022, and any and all documentation related thereto, including, but not limited to, any repurchase agreements and severance agreements.

139. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

140. "*Other Secured Claim*" means any Secured Claim against the Debtors other than the DIP Claims, the First Lien Secured Claims, or the Second Lien Secured Claims.

141. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

142. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

143. "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

144. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Interests, or other eligible Entities under and in accordance with the Plan.

145. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, to the extent reasonably practicable, no later than seven (7) days before the voting deadline provided in the Solicitation Materials or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) the New Organizational Documents; (b) the identity and members of the New Board, which shall be consistent with the Governance Term Sheet; (c) the Schedule of Retained Causes of Action; (d) the Exit Facilities Documents; (e) the Restructuring Steps Plan; (f) the Assumed Executory Contracts and Unexpired Leases List, if any; (g) the Rejected Executory Contracts and Unexpired Leases List, if any; (h) the GUC Trust Agreement; (i) the Second Lien Warrants Documents; and (j) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

146. "*Post-Effective Date Debtors*" means the Debtors, as reorganized pursuant to and under the Plan, on and after the Effective Date.

147. "*Prepetition Agent Advisors*" means (i) Davis Polk & Wardwell LLP and (ii) Greenberg Traurig, LLP, in each case in their capacity as advisors to the First Lien Agent and the Second Lien Agent.

148. "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

149. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

150. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

151. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals reasonably estimated in good faith that they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of the Plan.

152.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

153.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

154.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

155.    "*Recapitalization Transaction*" means the equitization of 100% of the Allowed First Priority Claims, subject to dilution from the (i) MIP Equity, (ii) the DIP Premiums, and (iii) the exercise of the Second Lien Warrants (if applicable).

156.    "*Reinstate*" means reinstate, reinstated, or reinstatement with respect to Claims or Intercompany Interests, that the Claim, Interest, or Intercompany Interest shall be rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code.  "Reinstated" and "Reinstatement" shall have correlative meanings.

157.    "*Rejected Executory Contracts and Unexpired Leases List*" means the list to be included in the Plan Supplement, as determined by the Debtors, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors, pursuant to the Plan, which list may be amended from time to time.

158.    "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; *provided*, *however*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Related Party under the Plan.

159.    "*Released Party*" means collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) each of the Post-Effective Date Debtors; (c) each Consenting Stakeholder; (d) each DIP Lender; (e) each of the Agents; (f) each member of the First Lien Ad Hoc Group; (g) each member of the Cross-Holder Ad Hoc Group; (h) each Backstop Party; (i) each of the Exit Facility Lenders; (j) each Holder of a First Priority Claim; (k) each Holder of a Second Lien Claim; (l) the Committee and each of its members; (m) only upon receipt of the M&R Settlement Payment, M&R and Sanford L. Michelman; (n) each current and former Affiliate of each Entity in clause (a) through the following clause (o); and (o) each Related Party of each Entity in clause (a) through this clause (o) (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial Holder, such beneficial Holder); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases set forth in Article VIII.D; or (y) timely objects to the releases set forth in Article VIII.D and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered; *provided*, *further*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Released Party under the Plan.

160.    "*Releasing Party*" means collectively, and each solely in its capacity as such: (a) each of the Debtors; (b) each of the Post-Effective Date Debtors; (c) each Consenting Stakeholder; (d) each DIP Lender; (e) each of the Agents; (f) each member of the First Lien Ad Hoc Group; (g) each member of the Cross-Holder Ad Hoc Group; (h) each Backstop Party; (i) each of the Exit Facility Lenders; (j) only upon receipt of the M&R Settlement Payment, M&R and Sanford L. Michelman; (k) all Holders of Claims that vote to accept the Plan; (l) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (m) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form in accordance with any Filed Disclosure Statement Order, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating

that they opt not to grant the releases provided for in the Plan; (n) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (o) each current and former Affiliate of each Entity in clause (a) through (n); and (p) each Related Party of each Entity in clause (a) through (o) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that, for the avoidance of doubt, an Entity in clause (k) through clause (n) shall not be a Releasing Party if it: (w) has not received a ballot due to the same being returned as undeliverable; (x) elects to opt out of the releases contained in the Plan; (y) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation order is entered; or (z) is a Non-Released Party.

161.    "*Reorganized Careismatic*" means one or more Post-Effective Date Debtors or a new entity, in each case to be determined by the Debtors and the Required Consenting First Lien Lenders, to issue the New Common Stock, on and after the Effective Date.

162.    "*Required Consenting First Lien Lenders*" means, as of the relevant date, Consenting Creditors holding at least 50.01% of the aggregate outstanding principal amount of the First Priority Claims that are held by Consenting Creditors.

163.    "*Restructuring Expenses*" means the (x) reasonable and documented fees and expenses accrued from the inception of their respective engagements related to the implementation of the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors of: (i) the First Lien Ad Hoc Group Advisors, (ii) the Cross-Holder Ad Hoc Group Advisors; *provided*, that fees and expenses of the Cross-Holder Ad Hoc Group Advisors shall not be paid in an amount greater than $250,000 in the aggregate, (iii) the DIP Agent Advisors, and (iv) the Prepetition Agent Advisors; and (y) the reasonable and documented prepetition and postpetition agency fees of the First Lien Agent and Second Lien Agent that have accrued and not otherwise been paid by, or on behalf of, the Debtors as of the Effective Date.

164.    "*Restructuring Steps Plan*" means the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan (to be included in the Plan Supplement). The Restructuring Steps Plan shall, among other things, designate Reorganized Careismatic.

165.    "*Restructuring Term Sheet*" means the term sheet attached to the RSA as <u>Exhibit B</u>.

166.    "*Restructuring Transactions*" means the transactions described in Article IV.A, Article IV.B, Article IV.C; and, Article IV.D.

167.    "*Retained Causes of Action*" means, collectively, any (i) Avoidance Actions not retained by the GUC Trust, and (ii) Cause of Action listed on the Schedule of Retained Causes of Action; *provided* that no Retained Cause of Action shall be a GUC Trust Claim or a Claim or Cause of Action that is released under the Plan and Confirmation Order; *provided further* that all other Claims and Causes of Action not released by the Debtors under the Plan shall be retained by the Post-Effective Date Debtors.

168.    "*RSA*" means that certain restructuring support agreement, dated as of January 22, 2024, by and among the Debtors and the Consenting Stakeholders, including all exhibits thereto (including the Restructuring Term Sheet).

169.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

170.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

171. "*Second Lien Agent*" means UBS AG, Stamford Branch, as administrative and collateral agent to the Second Lien Credit Agreement.

172. "*Second Lien Claims*" means any Claim on account of the Second Lien Credit Agreement.

173. "*Second Lien Condition*" means the condition that the class of Second Lien Claims shall have voted to accept the Plan by the voting deadline provided in the Solicitation Materials.

174. "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of January 6, 2021, among New Trojan Parent, Inc., a Delaware corporation, as the Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, and UBS AG, Stamford Branch, as administrative and collateral agent (as amended, restated, amended and restated, supplemented and/or otherwise modified).

175. "*Second Lien Credit Documents*" means any documents governing the Second Lien Term Loan Facility and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

176. "*Second Lien Deficiency Claim*" means the Second Lien Claims that are not Second Lien Secured Claims, which shall be Allowed in the aggregate amount of $25 million if the Second Lien Condition is met.

177. "*Second Lien Secured Claims*" means any Second Lien Claim that is a Secured Claim.

178. "*Second Lien Term Loan Facility*" means that certain term loan facility under the Second Lien Credit Agreement.

179. "*Second Lien Warrants*" means 5-year warrants to purchase up to 8.5% of the New Common Stock issued on account of the Allowed Second Lien Secured Claims with a strike price set at $818 million, and which shall not include Black Scholes protections.

180. "*Second Lien Warrants Documents*" means any documents governing the Second Lien Warrants.

181. "*Secured Claim*" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

182. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

183. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

184. "*Solicitation Materials*" means, as applicable, any documents, forms, ballots, notices, and other materials provided in connection with the solicitation of votes on the Plan, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

185. "*Sponsor*" means, collectively, Partners Group (USA) Inc. and its affiliates that hold Claims against or Interests in one or more of the Debtors.

186. "*Sponsor Loan Agreements*" means, collectively, those certain agreements, each dated October 17, 2022, among certain limited partners of CBI Parent, as co-issuers and Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.), as Borrower.

187. "*Sponsor Loan Claims*" means any Claim on account of any Sponsor Loan Agreement.

188.    "*Subordinated Claims*" means, collectively, (i) the Sponsor Loan Claims; (ii) any Claims arising out of advisory services provided by the Sponsor to one or more of the Debtors pursuant to that certain Services Agreement among New Trojan Parent, Inc., Careismatic Brands, LLC, and Partners Group US Investment Services LLC dated as of January 6, 2021; and (iii) the M&R Claim.

189.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

190.    "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

191.    "*Unimpaired*" means, with respect to a Class of Claims, Interests, or Intercompany Interests, a Class of Claims, Interests, or Intercompany Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

192.    "*Vendor Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought against any of the Post-Effective Date Debtors' vendors not identified on the Excluded Vendor List, by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (ii) shall affect any party's consent rights over any of the Definitive Documents or any amendments thereto (both as that term is defined herein and as it is defined in the RSA); (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim, Interest, or Intercompany Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (viii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (x) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (xi) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xiii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xiv) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xv) any immaterial effectuating provisions may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xvi) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Post-Effective Date Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document or instrument in the Plan Supplement, the terms of the relevant document or instrument in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

H.      *Consultation, Notice, Information, and Consent Rights.*

Notwithstanding anything herein to the contrary, all respective consultation, information, notice, and consent rights set forth in the RSA and the DIP Credit Agreement, with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein until such time as the RSA or the DIP Credit Agreement, as applicable, is terminated in accordance with its terms.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the RSA, as applicable, shall not impair such rights and obligations.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims, Interests, and Intercompany Interests set forth in Article III hereof.

A.    *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of DIP Claims, Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by a Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Post-Effective Date Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Post-Effective Date Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

B.    *DIP Claims.*

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to alternative treatment, and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each Holder of an Allowed DIP Claim shall receive:  (a) such Holder's *pro rata* share of the Exit Term Loan Facility, subject to the DIP Premium Conversion Election Option, or (b) if there is an Acceptable Alternative Exit Facility, payment in Cash in full (including all DIP Premiums).  The DIP Claims shall be Allowed in the aggregate amount outstanding under the DIP Documents as of the Effective Date.  Any exercise of the DIP Premium Conversion Election Option shall be given effect in accordance with the terms of the DIP Credit Agreement, the Final DIP Order, and the Plan.  The agreements set forth in section 10.8 of the DIP Credit Agreement shall survive the Effective Date, and, in the event the Exit Term Loan Facility is entered into, continue on the same terms set forth in the DIP Credit Agreement.

C.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Post-Effective Date Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

2.    Professional Fee Escrow Account.

On the Effective Date, the Post-Effective Date Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtors, as applicable.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtors, without any further action or order of the Bankruptcy Court.

3.    Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that may be Allowed pursuant to the Professional's final request for payment.  If a Professional does not provide an estimate, the Debtors or the Post-Effective Date Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional for the purpose of determining the Professional Fee Amount.

4.    Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and/or the Post-Effective Date Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective

Date shall be submitted to the Debtors.  In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses arising directly out of the implementation of the Plan and Consummation thereof without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS,**
**AND INTERCOMPANY INTERESTS**

A.    *Classification of Claims, Interests, and Intercompany Interests.*

The Plan constitutes a separate Plan for each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims, Interests, and Intercompany Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim, Interest, or an Intercompany Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim, Interest, or Intercompany Interest or such portion thereof qualifies within the description of that Class and is classified in other Class(es) to the extent that such Claim, Interest, or Intercompany Interest or such portion thereof qualifies within the description of such other Class(es).  A Claim, Interest, or an Intercompany Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim, Interest, or Intercompany Interest is an Allowed Claim, Interest, or Intercompany Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against, and Interests and Intercompany Interests in, the Debtors pursuant to the Plan is as follows:

| Class | Claims, Interests, and Intercompany Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | First Priority Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims, Interests, and Intercompany Interests.*

Each Holder of an Allowed Claim, Interest, or Intercompany Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim, Interest, or Intercompany Interest, except to the extent different treatment is agreed to by the Post-Effective Date Debtors, and the Holder of such Allowed Claim, Interest, or Intercompany Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim, Interest, or Intercompany Interest, as applicable, shall receive such treatment on the Effective Date.

1.    <u>Class 1 - Other Secured Claims</u>

(a)  *Classification*:  Class 1 consists of all Other Secured Claims.

(b)  *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim and at the option of the Debtors:

(i)  payment in full in Cash of its Allowed Other Secured Claim;

(ii)  the collateral securing its Allowed Other Secured Claim;

(iii)  Reinstatement of its Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code; or

(iv)  such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)  *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.  Class 2 – Other Priority Claims

(a)  *Classification*:  Class 2 consists of all Other Priority Claims.

(b)  *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim, or as and when due in the ordinary course of business of the Post-Effective Date Debtors, or otherwise as consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)  *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.  Class 3 – First Priority Claims

(a)  *Classification*:  Class 3 consists of all First Priority Claims.

(b)  *Allowance*: To the extent permitted by the Bankruptcy Code, (i) the First Lien Term Loan Claims are Allowed in the aggregate principal amount of $589,875,000.00, plus interest, fees, expenses and other amounts arising and payable under and in accordance with the First Lien Credit Documents; and (ii) the First Lien RCF Claims are Allowed in the aggregate principal amount of $100,000,000.00, plus interest, fees, expenses and other amounts arising and payable under and in accordance with the First Lien Credit Documents.

(c)  *Treatment*:  Except to the extent that a Holder of an Allowed First Priority Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed First Priority Claim (or its designated Affiliate, managed fund or account, or other designee) shall receive, in full and final satisfaction of such Claim:  its *pro rata* share of 100% of the New Common Stock (subject to dilution from (a) MIP Equity, (b) DIP Premiums, and

20

(c) the exercise of the Second Lien Warrants (if applicable), subject to the DIP Premium Conversion Election Option).

(d)     *Voting*: Class 3 is Impaired under the Plan, and Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – Second Lien Secured Claims</u>

(a)     *Classification*: Class 4 consists of all Second Lien Secured Claims.

(b)     *Allowance*: If the Second Lien Condition is satisfied, the Second Lien Secured Claims are deemed Allowed in the aggregate principal amount of $85,000,000 plus interest, fees, expenses, and other amounts arising and payable under and in accordance with the Second Lien Credit Documents.

(c)     *Treatment*: Except to the extent that a Holder of an Allowed Second Lien Secured Claim agrees to less favorable treatment on the Effective Date, each Holder of an Allowed Second Lien Secured Claim shall receive, in full and final satisfaction of such Claim: (a) if the Second Lien Condition is not satisfied, no recovery or distribution on account of its Allowed Second Lien Secured Claim; and (b) if the Second Lien Condition is satisfied, its *pro rata* share of the Second Lien Warrants.

(d)     *Voting*: Class 4 is Impaired under the Plan, and Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – General Unsecured Claims</u>

(a)     *Classification*: Class 5 consists of all General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim its *pro rata* share of the GUC Trust Net Assets.

(c)     *Voting*: Class 5 is Impaired under the Plan, and Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Subordinated Claims</u>

(a)     *Classification*: Class 6 consists of all Subordinated Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Subordinated Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Subordinated Claim shall receive, in full and final satisfaction of such Claim, no recovery or distribution on account of such Allowed Subordinated Claims.

(c)     *Voting*: Class 6 is Impaired under the Plan. Holders of Interests in Class 6 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 – Intercompany Claims</u>

(a)     *Classification*: Class 7 consists of all Intercompany Claims.

(b)     *Treatment*:  Subject to any specific provisions contained in the Plan Supplement, each Intercompany Claim shall be, at the option of the applicable Debtor or Post-Effective Date Debtor, with the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed), Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Claims, or such other treatment as determined by the Post-Effective Date Debtors and the Required Consenting First Lien Lenders.

(c)     *Voting*:  Class 7 is Unimpaired if the Class 7 Claims are Reinstated or Impaired if the Class 7 Claims are cancelled.  Holders of Class 7 Claims are conclusively presumed to have either accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

8.   Class 8 – Intercompany Interests

(a)     *Classification*:  Class 8 consists of all Intercompany Interests.

(b)     *Treatment*:  Subject to any specific provisions contained in the Plan Supplement, each Intercompany Interest shall be, at the option of the applicable Debtor or Post-Effective Date Debtor, in all cases with the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed), Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interests, or such other treatment as determined by the Post-Effective Date Debtors and the Required Consenting First Lien Lenders.

(c)     *Voting*:  Class 8 is Unimpaired if the Class 8 Intercompany Interests are Reinstated or Impaired if the Class 8 Intercompany Interests are cancelled.  Holders of Class 8 Intercompany Interests are conclusively deemed to have either accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.   Class 9 – Interests

(a)     *Classification*:  Class 9 consists of all Interests.

(b)     *Treatment*:  On the Effective Date, all Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.  Holders of Interests shall receive no recovery or distribution on account of their Interests.

(c)     *Voting*:  Class 9 is Impaired under the Plan.  Holders of Interests in Class 9 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.   *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.   *Elimination of Vacant Classes.*

Any Class of Claims, Interests, or Intercompany Interests that does not have an Allowed Claim, Interest, or Intercompany Interest or a Claim, Interest, or Intercompany Interest temporarily Allowed by the Bankruptcy Court

as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of New Common Stock, and in exchange for the agreement of the Debtors and/or the Post-Effective Date Debtors, as applicable, under the Plan to make certain distributions to the Holders of Allowed Claims.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims, Interests, or Intercompany Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims, Interests, or Intercompany Interests to render such Class of Claims, Interests, or Intercompany Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims, Interests, or Intercompany Interests or any Class of Claims, Interests, or Intercompany Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims, Interests, and Intercompany Interests.*

To the greatest extent permissible under the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and Intercompany Interests, and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and Intercompany Interests, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and Holders of Claims and Interests.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Restructuring Transactions.*

Before, on, and after the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall consummate the Restructuring Transactions and may take all actions (which, for the avoidance of doubt, shall be in

form, substance, and structure reasonably acceptable to the Required Consenting First Lien Lenders) as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including, as applicable:   (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the other Definitive Documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, and the other Definitive Documents; (iii) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the execution and delivery of the Exit Facilities Documents and entry into the Exit Financing Arrangements; (v) the issuance and distribution of the New Common Stock as set forth in the Plan, including in connection with the DIP Premium Conversion Election Option; (vi) the execution and delivery of the Second Lien Warrants Documents and any filings related thereto, and the issuance of the Second Lien Warrants thereunder (if applicable); (vii) with respect to the Post-Effective Date Debtors, the implementation of the Management Incentive Plan and any distribution of MIP Equity; (viii) the execution and delivery of the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Post-Effective Date Debtor (including all actions to be taken, undertakings to be made, obligations to be incurred, and fees and expenses to be paid by the Debtors and/or the Post-Effective Date Debtors, as applicable); (ix) such other transactions that, in the reasonable business judgment of the Debtors or the Post-Effective Date Debtors, as applicable, the Required Consenting First Lien Lenders (in accordance with this Plan) are required to effectuate the Restructuring Transactions; and (x) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

The Confirmation Order shall authorize the Debtors, the Post-Effective Date Debtors, and the Consenting Creditors, as applicable, to undertake the Restructuring Transactions contemplated by this Plan and the Definitive Documents.

C.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor, as applicable, or to any other Person) of property under the Plan or pursuant to:  (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; (v) the grant of collateral as security for the Exit Financing Arrangements; or (vi) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

D.      *The Recapitalization Transaction.*

    1.      <u>The Post-Effective Date Debtors.</u>

On the Effective Date, the New Board shall be established, and each Post-Effective Date Debtor shall adopt its New Organizational Documents.  The Post-Effective Date Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

    2.      <u>Sources of Consideration for Plan Distributions.</u>

The Debtors shall fund or make distributions under the Plan, including the conveyance and funding of the GUC Trust Assets, as applicable, with:  (i) the proceeds from the Exit Financing Arrangements, (ii) the New Common Stock, (iii) the Debtors' Cash on hand, (iv) the Second Lien Warrants; and (v) the proceeds of any Retained Causes of Action (if any).  The GUC Trust shall fund its distributions, as contemplated by the Plan, from the GUC Trust Net Assets.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance, distribution, or authorization, as applicable, of certain Securities in connection with the Plan, including the New Common Stock and Second Lien Warrants (if applicable), is expected to be exempt from Securities Act registration, as described more fully in Article IV.D.9 below.

    (a)      The Exit Financing Arrangements.

On the Effective Date, the Post-Effective Date Debtors shall enter into or assume, as applicable, the Exit Term Loan Facility or another Acceptable Alternative Exit Facility, each on the terms set forth in the applicable Exit Facilities Documents.  Confirmation of the Plan shall be deemed approval of the Exit Financing Arrangements and the Exit Facilities Documents, as applicable, and all transactions contemplated thereby; all actions to be taken, undertakings to be made, and obligations to be incurred by the Post-Effective Date Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein; and authorization for the Post-Effective Date Debtors to enter into and execute the Exit Facilities Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Financing Arrangements.  Execution of the Exit Term Loan Facility Documents by the agent thereof shall be deemed to bind all Holders of DIP Claims as if each such Holder had executed the applicable Exit Facilities Documents with appropriate authorization.

In the event the Exit Term Loan Facility is entered into, the DIP Commitments giving rise to the DIP Claims shall be refinanced by means of a cashless settlement whereby such DIP Commitments shall be converted on a dollar-for-dollar basis into the Exit Term Loans in accordance with the DIP Documents and the Exit Facilities Documents (subject to the DIP Premium Conversion Election Option), and all collateral that secures the Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall be reaffirmed and ratified, and shall automatically secure all obligations under the Exit Term Loan Facility Documents.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facilities Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, valid, binding, and enforceable Liens on, and security interests in, the collateral specified thereunder in accordance with the terms of the applicable Exit Facilities Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the applicable Exit Facilities Documents, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Post-Effective Date Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings,

recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

       (b)     Issuance of the New Common Stock.

Reorganized Careismatic shall be authorized to issue a certain number of shares of New Common Stock pursuant to its New Organizational Documents and any options or other equity awards, if any, reserved for the Management Incentive Plan and that may be issuable upon exercise of the Second Lien Warrants. The issuance of the New Common Stock shall be authorized without the need for any further corporate action. On the Effective Date, the New Common Stock shall be issued and distributed pursuant to, and in accordance with, the Plan.

All of the shares of New Common Stock issued pursuant to the Plan (or upon exercise of the Second Lien Warrants, if applicable) shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Common Stock, including any New Common Stock issuable upon exercise of the Second Lien Warrants, shall be deemed to constitute its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms, without the need for execution by any party thereto other than the applicable Post-Effective Date Debtor(s). The New Common Stock will not be registered under the Securities Act or on any national securities exchange as of the Effective Date.

       (c)     Issuance of the Second Lien Warrants.

Solely to the extent the Second Lien Condition is satisfied, on the Effective Date, Reorganized Careismatic will issue the Second Lien Warrants to Holders of Allowed Second Lien Secured Claims; *provided*, *however*, that a Holder of a Second Lien Claim may designate a trustee, agent, nominee, or one or more Affiliates to receive and hold the Second Lien Warrants on behalf of such Holder. All of the Second Lien Warrants that may be issued pursuant to this Plan and the shares of New Common Stock that may be issued upon exercise of the Second Lien Warrants shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or the Post-Effective Date Debtors, as applicable, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in this Plan, the New Organizational Documents, or the Second Lien Warrants Documents applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Post-Effective Date Debtor(s). The Second Lien Warrants Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of Second Lien Warrants shall be bound thereby (without any further action or signature) in all respects, whether or not such Holder has executed any Second Lien Warrants Documents. The Second Lien Warrants will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the DTC.

3.   Vesting of Assets in the Post-Effective Date Debtors.

Except as otherwise provided in the Plan or the Exit Facilities Documents (if applicable), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action belonging to the Debtors or the Estates, and any property acquired by any of the Debtors under the Plan shall vest in each respective Post-Effective Date Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit Facilities Documents, and Liens securing Other Secured Claims that are Reinstated pursuant to the Plan, as applicable).  On and after the Effective Date, except as otherwise provided herein, each Post-Effective Date Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, Intercompany Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.   Corporate Existence.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which such Debtor is incorporated or formed and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  On or after the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Post-Effective Date Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On or after the Effective Date, one or more of the Post-Effective Date Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.   Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (a) adoption or assumption, as applicable, of the obligations set forth in Article IV.D.11; (b) selection of the directors, officers, or managers for the Post-Effective Date Debtors; (c) the distribution of the New Common Stock; (d) entry into the Second Lien Warrants Documents and the issuance and distribution of the Second Lien Warrants; (e) implementation of the Restructuring Transactions; (f) entry into the Exit Facilities Documents and incurrence (or assumption, as applicable) of debt thereunder; (g) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (h) adoption of the New Organizational Documents; (i) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (j) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security Holders, directors, officers, or managers of the Debtors or the Post-Effective Date Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors, including the New Common Stock, the New Organizational Documents, the Exit Financing Arrangements, the Exit Facilities Documents, the Second Lien Warrants, the Second Lien Warrants Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.D.9 shall be effective notwithstanding any requirements under non-bankruptcy law.

6.  New Organizational Documents.

On or immediately prior to the Effective Date, the New Organizational Documents shall be adopted or amended as may be necessary to effectuate the transactions contemplated by the Plan.  To the extent required under the Plan or applicable non-bankruptcy law, each of the Post-Effective Date Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document.  The New Organizational Documents will prohibit the issuance of non-voting equity securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.  For the avoidance of doubt, the New Organizational Documents shall be included in the Plan Supplement.  After the Effective Date, each Post-Effective Date Debtor may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents, and the Post-Effective Date Debtors may file such amended certificates or articles of incorporation, bylaws, or other applicable formation and constituent documents as permitted by the laws of the applicable states, provinces, or countries of incorporation and the New Organizational Documents.  For the avoidance of doubt, any claimant's acceptance of the New Common Stock shall be deemed to constitute its agreement to be bound by the New Organizational Documents without the need for execution by any party other than the Post-Effective Date Debtors.

7.  Directors and Officers of the Post-Effective Date Debtors.

As of the Effective Date, the term of the current members of the CBI Parent Transaction Committee, the Intermediate Transaction Committee, and the boards of directors of each of the applicable Debtor Entities shall expire, and the members for the initial term of the New Board shall be appointed.  The initial members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing, which shall be consistent in all respects with the Governance Term Sheet.  Each such member and officer of the Post-Effective Date Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Post-Effective Date Debtors.

8.  Effectuating Documents; Further Transactions.

On and after the Effective Date, the Post-Effective Date Debtors and the New Board are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

9.  Certain Securities Law Matters.

Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, it is expected that the offering, issuance, and distribution of the New Common Stock and the Second Lien Warrants (as well as exercising the Second Lien Warrants) as contemplated herein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

The shares of New Common Stock to be issued under the Plan, including any New Common Stock which may be issued in connection with the equitization of any DIP Premiums and including upon exercise of the Second Lien Warrants, as well as the Second Lien Warrants themselves, in each case, on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any

restrictions on the transferability of such New Common Stock or Second Lien Warrants in the New Organizational Documents or the Second Lien Warrants Documents, as applicable.

The shares of New Common Stock, including the MIP Equity, and upon exercise of the Second Lien Warrants, and the Second Lien Warrants themselves, in each case, that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

10. Management Incentive Plan.

On or as soon as reasonably practicable following the Effective Date, the New Board shall adopt and implement the Management Incentive Plan to be used to incentivize and compensate employees, directors, consultants, and other service providers of the Post-Effective Date Debtors, which Management Incentive Plan will include (i) the ability to grant restricted stock units, options, New Common Stock, or other rights exercisable, exchangeable, or convertible into New Common Stock (or equivalent Cash value thereof) representing up to 15.0% of the New Common Stock on a fully diluted basis and (ii) other terms and conditions customary for similar type equity plans as determined by the New Board in its sole discretion (including with respect to participants, allocation of awards, and vesting).

11. Employment Obligations.

All Assumed Plans shall be assumed by the Post-Effective Date Debtors as of the Effective Date and shall remain in place.  The Post-Effective Date Debtors shall continue to honor their obligations under such Assumed Plans; *provided* that (i) the Assumed Plans shall not include any equity or equity-based programs and awards, and (ii) each Assumed Plan shall be amended, to the extent applicable, to exclude any right(s) to receive future equity or equity-based awards provided for under any Assumed Plans, and such awards and rights described in the foregoing subsections (i) and (ii) shall be terminated as of the Effective Date for no consideration.  Without Bankruptcy Court approval or approval of the Required Consenting First Lien Lenders, the Debtors will not be permitted to establish any annual, short-term, or long-term compensation programs unless such program(s) are (i) in the ordinary course of business and consistent with past practice and (ii) performance-based (*i.e.*, are only eligible to be paid upon achievement of pre-established performance goals).

For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

The occurrence of the Effective Date shall not be deemed to result in an accelerated payment event or a "good reason" or other constructive termination event for purposes of any Debtor compensation or benefit plan; *provided* that employees who, as of the Effective Date, are party to Assumed Plans with a contractual entitlement to severance may, in their sole discretion, elect to treat the occurrence of the Effective Date as "good reason" or constructive termination event.

12. Director and Officer Liability Insurance.

After the Effective Date, none of the Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on the Effective Date with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any applicable D&O Liability Insurance Policies, subject in all respects to the terms and conditions of any applicable D&O Liability Insurance Policy, regardless of whether such directors and officers remain in such positions after the Effective Date.  For the avoidance of doubt, those Indemnification Obligations or other employee obligations in favor of the Non-Released Parties shall be deemed rejected in accordance with Article V.B.

E.      *Cancellation of Existing Agreements, Interests, and Intercompany Interests.*

On the Effective Date, except with respect to the Exit Facilities Documents (if applicable) or to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims, Interests, or Intercompany Interests, including credit agreements and indentures, shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the Agents shall be released from all duties and obligations thereunder. Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding anything to the contrary herein, (x) any cancelled instruments, securities, and other documentation shall continue in effect solely for the purposes of allowing Holders of Claims to receive distributions as specified under the Plan, as applicable, and (y) any agreement that governs the rights of the Agents shall continue in effect solely for purposes of allowing the Agents, as applicable, to (i) receive any distributions under the Plan and distribute them to the Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, in each case in accordance with the terms of the Plan, (ii) maintain, enforce, or exercise any right to compensation, contribution, expense reimbursement, or indemnification that (1) may be owed to the applicable Agent under the Plan, the DIP Documents, or the First Lien Credit Documents (including by the Debtors or the Post-Effective Date Debtors), and that (2) by its terms survives termination of such document; (iii) maintain, enforce, or exercise its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable or allocable under the Plan to Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, (iv) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to any of the Agents or Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, and (v) without limiting the foregoing clause (ii), maintain, enforce, or exercise any right (that by its terms survive termination of the applicable document) to compensation, contribution, expense reimbursement, or indemnification of the Agents, as applicable, and any predecessor thereof, vis-à-vis parties other than the Debtors and the Post-Effective Date Debtors.

F.      *The GUC Trust.*

    1.  <u>General Terms</u>.

On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deem to be vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  Under no circumstance shall the Debtors or the Post-Effective Date Debtors or any other party be required to contribute any additional assets to the GUC Trust other than the GUC Trust Assets.  After the Effective Date, neither the Debtors, Post-Effective Date Debtors, nor any other party shall have any interest in the GUC Trust Assets except as expressly set forth herein.

The GUC Trustee shall be the exclusive administrator of the assets of the GUC Trust (including the GUC Trust Assets) for purposes of section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving Class 5 General Unsecured Claims under the Plan for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement and with respect to the GUC Trust Claims.  The Confirmation Order shall contain a finding that the GUC Trust has standing to pursue the GUC Trust Claims on behalf of the Debtors.  The GUC Trustee shall be a party in interest under section 1109(b) of the Bankruptcy Code for purposes of the claims reconciliation process, including objecting to General Unsecured Claims; *provided* that the GUC Trustee may otherwise be a party in interest with the prior written consent of the Post-Effective Date Debtors or as otherwise ordered by the Bankruptcy Court.

The Debtors and the Post-Effective Date Debtors shall provide commercially reasonable access to the GUC Trustee and any professionals retained by the GUC Trust (at the sole cost and expense of the GUC Trust) to retrieve or access data reasonably necessary to prosecute the GUC Trust Claims; *provided* that the Debtors and Post-Effective Date Debtors shall not incur any expenses to provide such access to the GUC Trustee and any

professionals retained by the GUC Trust.  To the extent the GUC Trust receives information from the Debtors or the Post-Effective Date Debtors in connection with the General Unsecured Claims or the GUC Trust Claims, the GUC Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors or the Post-Effective Date Debtors, as applicable, and the Debtors or the Post-Effective Date Debtors, as applicable, retain the sole right to waive their own privileges.  Reasonable agreements will be made with the GUC Trustee such that confidential information and privileges are preserved, while permitting the GUC Trustee to use, as necessary to administer the GUC Trust, such information and privilege; absent such agreements, either the GUC Trustee or the Post-Effective Date Debtors may present the issue to the Bankruptcy Court for resolution.

The GUC Trust shall be administered by the GUC Trustee and governed by the GUC Trust Agreement, and the GUC Trustee shall have the sole power and authority to distribute the GUC Trust Net Assets to Holders of Allowed General Unsecured Claims in accordance with the treatment set forth in the Plan for Class 5.  The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee; *provided* that, for the avoidance of doubt, any such indemnification shall be by the GUC Trust and the GUC Trustee alone and shall not implicate the Debtors or the Post-Effective Date Debtors.  In the event of any conflict between the terms of the Plan and the GUC Trust Agreement, the terms of the Plan shall govern.

The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the responsibility and requisite power to reconcile General Unsecured Claims, including asserting any objections thereto.  From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall, in the ordinary course of business and without the need for any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses from the GUC Trust Assets.  The Debtors, the Post-Effective Date Debtors, and their Affiliates (and anyone acting on their behalf) shall not be responsible for any costs, fees, or expenses of the GUC Trust.  The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, such time as all distributions required to be made by the GUC Trustee under the Plan have been made, but in no event later than the fifth anniversary of the Effective Date (unless extended by order of the Bankruptcy Court).

Upon dissolution of the GUC Trust, any remaining GUC Trust Net Assets shall be distributed to all Holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement as appropriate; *provided*, *however*, that if the GUC Trustee reasonably determines that such remaining GUC Trust Net Assets are insufficient to render a further distribution practicable, the GUC Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the GUC Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the Internal Revenue Code, (B) exempt from U.S. federal income tax under Section 501(a) of the Internal Revenue Code, (C) not a "private foundation" as defined in Section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the GUC Trust, and any insider of the GUC Trustee, and (iii) dissolve the GUC Trust.

2.    Tax Treatment.

In furtherance of this section of the Plan, (i) it is intended that the GUC Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 677 of the Internal Revenue Code consistent with the terms of the Plan, and accordingly, all assets held by the GUC Trust are intended to be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Post-Effective Date Debtors, as applicable, directly to the Holders of Allowed General Unsecured Claims in respect of such Claims, and then contributed by such Holders of Allowed General Unsecured Claims to the GUC Trust in exchange for their pro rata interests in the GUC Trust; (ii) the primary purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Net Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Post-Effective Date Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with such treatment described in provisos (i) and (ii) of this paragraph; (iv) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the

GUC Trust, and the GUC Trustee) shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee) and prepared pursuant to this Plan for all U.S. federal income tax purposes; (v) the "taxable year" of the GUC Trust shall be the "calendar year" as such terms are defined in section 441 of the Internal Revenue Code; (vi) the GUC Trustee shall be responsible for filing all applicable tax returns for the GUC Trust and shall file such tax returns treating the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vii) the GUC Trustee shall annually send to each Holder of an interest in the GUC Trust a separate statement regarding such Holder's share of items of income, gain, loss, deduction or credit (including receipts and expenditures) of the GUC Trust as relevant for U.S. federal income tax purposes.

Subject to definitive guidance from the United States Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the United States Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (i) treat any portion of the GUC Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for United States state and local income tax purposes. If a "disputed ownership fund" election is made, (i) the GUC Trust Assets will be subject to entity-level taxation and (ii) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report for U.S. federal (and, to the extent applicable state, and local) income tax purposes consistently with the foregoing.

Any taxes (including with respect to earned interest, if any) imposed on the GUC Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid by the GUC Trustee out of the assets of the GUC Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). The GUC Trustee may request an expedited determination of taxes of the GUC Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-bankruptcy law, and the GUC Trustee shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

G.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Post-Effective Date Debtors; *provided* that, notwithstanding anything contained herein, any Causes of Action against Non-Released Parties shall vest in the GUC Trust. The Post-Effective Date Debtors or the GUC Trustee, as applicable, shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors or the GUC Trust, as applicable, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Notwithstanding anything to the contrary herein, the Debtors or Post-Effective Date Debtors, as applicable, may not settle any Retained Cause of Action that would result in a Class 5 General Unsecured Claim without obtaining either (i) relief from a court with competent jurisdiction (and if such court is a court other than the Bankruptcy Court, the GUC Trustee shall be deemed, for purposes of such proposed settlement presented to such other court, a party-in-interest with standing to be heard in such other court for such purpose, solely to the extent that such settlement would result in a Class 5 General Unsecured Claim) or (ii) approval of the GUC Trustee.

**No Person or Entity may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and Post-Effective Date Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**

The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

H.      *Closing the Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Post-Effective Date Debtors shall be permitted, subject to the Filing of appropriate motion by the Post-Effective Date Debtors, to close all of the Chapter 11 Cases except one, and all contested matters relating to any Post-Effective Date Debtor, including objections to Claims, shall be administered and heard in such remaining Chapter 11 Case.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the date that is ninety (90) days after the Effective Date, each Executory Contract and Unexpired Lease, not previously assumed, assumed and assigned, or rejected shall be deemed automatically assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is identified on the Assumed Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be assumed as of the Effective Date; (ii) is identified on the Rejected Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be rejected as of the Effective Date; (iii) previously expired or terminated pursuant to its own terms; (iv) is the subject of a motion to reject Filed on or before the Effective Date; or (v) is an insurance policy (which shall be treated in accordance with Article V.E); *provided* that the assumption, assumption and assignment, or rejection of all Executory Contracts and Unexpired Leases shall be subject to the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed). The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates. The Plan constitutes a motion for approval of the foregoing assumptions and assignments, and the Confirmation Order will constitute an order of the Bankruptcy Court granting such motion.

Notwithstanding anything to the contrary in the Plan, the Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List (i) to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List at any time prior to the Effective Date, and (ii) to add any Executory Contract or Unexpired Lease to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List not otherwise identified on the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List at any time through and including ninety (90) days after the Effective Date, the modifications thereto shall constitute assumption or rejection of such Executory Contract or Unexpired Lease as of the date of such modification, notwithstanding anything contained in this Article V.A; *provided* that, subject to Article V.C hereof, at any time during such ninety (90)-day period after the Effective Date, the Post-Effective Date Debtors shall remain liable for any and all amounts incurred under any such Executory Contract and Unexpired Lease not on the Rejected Executory Contracts and Unexpired Leases List in the ordinary course of business. The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements of Executory Contracts and Unexpired Leases executed during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Except as set forth in Article IV.D.11, to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.    *Indemnification Obligations.*

Consistent with applicable law, all Indemnification Obligations (other than with respect to Non-Released Parties) shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date; *provided* that the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtors' organization documents, or applicable agreements governing the Indemnification Obligations.  All such Indemnification Obligations shall be deemed and treated as Executory Contracts to be assumed and assigned in their entirety by the Debtors under the Plan to the Post-Effective Date Debtors; *provided* that, notwithstanding the foregoing, any Indemnification Obligation or other employee obligations in favor of the Non-Released Parties shall be deemed and treated as an Executory Contract that has been rejected by the Post-Effective Date Debtors under the Plan, and the Debtors and the Post-Effective Date Debtors shall not honor, pay, or reimburse any Claims by a Non-Released Party for indemnification or reimbursement.

C.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Counterparties to Executory Contracts or Unexpired Leases deemed rejected shall be served with a notice of rejection of their Executory Contracts and Unexpired Leases via service of the Confirmation Order and the Plan Supplement.  Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the earliest to occur of (i) thirty (30) days after the date of service of notice on the affected claimant or entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, which notice shall set forth the date by which such Proofs of Claim must be filed, or (ii) thirty (30) days after service of notice on the affected claimant of any rejection that occurs after the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claims is not Filed with the Claims and Noticing Agent within such time will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtors, the Post-Effective Date Debtors, the Estates, the GUC Trust, or their property without the need for any objection by the Debtors, the Post-Effective Date Debtors, or the GUC Trust, as applicable, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim as set forth in Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Post-Effective Date Debtors shall pay all Cure Claims, if any, on the Effective Date.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to a proposed assumption, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee no later than thirty (30) days after the Effective Date or any other deadline that may be set by the Bankruptcy Court.  Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against any Post-Effective Date Debtor without the need for any objection by the Post-Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtors, as applicable, of the Cure; *provided* that nothing herein shall prevent the Post-Effective Date Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure.  The Post-Effective Date Debtors may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or the Post-Effective Date Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or the Post-Effective Date Debtors, as applicable, with respect to which such objection is timely Filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Post-Effective Date Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

E.      *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, any bar date order or notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, purports to limit or impact a setoff or recoupment right, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a) on the Effective Date, the Post-Effective Date Debtors, shall be deemed to have assumed all Insurance Policies that (i) are not listed on the Rejected Executory Contracts and Unexpired Leases List prior to the Confirmation Hearing, (ii) are D&O Liability Insurance Policies, and (iii) identify one or more of the Debtors as first named insured or counterparty thereto pursuant to sections 105 and 365 of the Bankruptcy Code; *provided* that on the Effective Date, the Post-Effective Date Debtors shall assume all Insurance Policies issued or entered into by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Illinois Union Insurance Company and each of their respective U.S.-based affiliates, predecessors, and successors,

each solely in their capacities as insurers, in their entirety, pursuant to this Article V.E, and sections 105 and 365 of the Bankruptcy Code, and such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms;

(b) on and after the Effective Date, the Post-Effective Date Debtors shall remain liable in full for all of their and the Debtors' obligations under the Insurance Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, without the need or requirement for Insurers to file or serve any objection to a notice of proposed Cure amount (or lack of such notice) or file or serve a request, motion, or application for payment of such obligations, or Proof of Claim, Cure amount, or Administrative Claim;

(c) nothing (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any  Insurance Policy; or (ii) alters or modifies the duty, if any, of the Insurers to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Post-Effective Date Debtors) or draw on any collateral or security therefor; and

(d) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against Insurers under applicable non-bankruptcy law to proceed with their claims; (II) Insurers to administer, handle, defend, settle, and/or pay, in the  ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against an Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Post-Effective Date Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) under the Insurance Policies , in such order as the applicable Insurer may determine; and (IV) Insurers to cancel any Insurance Policy, and take other actions relating to the Insurance Policies (including effectuating a setoff or recoupment) to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

For the avoidance of doubt, the GUC Trust is not liable for any costs associated with insurance policies of the Debtors or the Post-Effective Date Debtors, including self-insured retentions, deductibles, or premium adjustments.  Following the Effective Date, any such costs incurred under assumed insurance policies of the Debtors or those entered into by the Post-Effective Date Debtors shall be paid by the Post-Effective Date Debtors.

F.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.   In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

G.      *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Post-Effective Date Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

H.       *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.       *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtors or the Post-Effective Date Debtors liable thereunder in the ordinary course of their business.   Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.       *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Interests (as applicable) in the applicable Class.   In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.   If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.   Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.   For the avoidance of doubt, distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

B.       *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent or the GUC Trustee, as applicable, on the Effective Date or at such other time as provided for in the Plan.   The Disbursing Agent and the GUC Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.   Additionally, in the event that the Disbursing Agent or the GUC Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors or the GUC Trustee, respectively.

C.       *Rights and Powers of Disbursing Agent.*

1.       Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:   (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.       Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation

and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.      Record Date for Distribution.

On the Distribution Record Date, (i) the Claims Register and (ii) the loan registers maintained by each of the Agents, respectively, shall each be deemed closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register or such loan registers as of the close of business on the Distribution Record Date.

    2.      Delivery of Distributions in General.

Except as otherwise provided in the Plan, the Disbursing Agent or the GUC Trustee, as applicable, shall make distributions to Holders of Allowed Claims or Interests as of the Distribution Record Date, or, if applicable, to such Holder's designee, as appropriate:  (a) at the address for each such Holder as indicated on the Debtors' records as of the Distribution Record Date (or of a designee designated by a Holder of First Priority Claims); (b) to the signatory set forth on any Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors or the GUC Trust have not been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Post-Effective Date Debtors, the applicable Disbursing Agent, or the GUC Trustee, as appropriate, after the date of any related Proof of Claim; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf; *provided* that the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors or the GUC Trustee, as applicable.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims or Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trustee, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.  For the avoidance of doubt, distributions on account of Allowed General Unsecured Claims shall be governed by the GUC Trust Agreement.

All distributions to Holders of Allowed DIP Claims shall be deemed to be made by the DIP Agent. Regardless of whether such distributions are made by the DIP Agent or by the Disbursing Agent at the reasonable discretion of the DIP Agent, any applicable charging lien shall attach to the property to be distributed to Holders of Allowed DIP Claims in the same manner as if such distributions were made through the DIP Agent.

    3.      Minimum Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional shares.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock (including upon exercising any Second Lien Warrant) that is not a whole number, the actual distribution shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock or Second Lien Warrants to be distributed under the Plan shall be adjusted as necessary to account for the foregoing rounding.

    4.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent or the GUC Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed

property or interests in property shall revert to the Post-Effective Date Debtors, or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheatment, abandoned property, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder related to such property or interest in property shall be discharged and forever barred.  The Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trust shall have no obligation to attempt to locate a Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.  For the avoidance of doubt, treatment of undeliverable distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

E.      *Manner of Payment.*

Except as set forth herein, all distributions of New Common Stock and Second Lien Warrants to the Holders of applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Debtors or Post-Effective Date Debtors, as applicable.

Any distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent or the GUC Trustee, on behalf of the applicable Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable.

At the option of the Disbursing Agent or the GUC Trustee, as applicable, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in the GUC Trust Agreement or other applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Post-Effective Date Debtors, and the GUC Trust reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances in a tax-efficient manner.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.       *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.       *Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment (other than for the DIP Claims held by the DIP Lenders) is either (i) agreed in amount among the relevant Post-Effective Date Debtor(s) and Holder of the Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against or Interests in one or more of the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder has provided notice of such recoupment in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.       *Claims Paid or Payable by Third Parties.*

1.       <u>Claims Paid by Third Parties</u>.

The Debtors, the Post-Effective Date Debtors, and the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Post-Effective Date Debtor, or the GUC Trust, as applicable.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Post-Effective Date Debtor or the GUC Trust, as applicable, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Assets) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is fully repaid.

2.       <u>Claims Payable by Third Parties</u>.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' satisfaction, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   <u>Applicability of Insurance Policies</u>.

Except as otherwise provided in the Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Notwithstanding anything to the contrary contained herein (including Article III), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.   *Disputed Claims Process*.

The Debtors, the Post-Effective Date Debtors, and the GUC Trust (solely with respect to General Unsecured Claims) shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. **Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of: (a) the Effective Date or (b) the applicable claims bar date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable, without the need for any objection by the Debtor or Post-Effective Date Debtor, or the GUC Trust, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.   *Allowance of Claims*.

After the Effective Date and subject to the terms of the Plan, each of the Post-Effective Date Debtors and the GUC Trust, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim, Interest, or Intercompany Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

**Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.**

C.   *Estimation of Claims*.

Before or after the Effective Date, the Debtors, the Post-Effective Date Debtors or the GUC Trust, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim, Interest, or Intercompany Interest that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim, Interest, or Intercompany Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, Interest, or Intercompany Interest, including during the litigation of any objection to any Disputed Claim, Interest, or Intercompany Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Disputed Claim, Interest, or Intercompany Interest that has been expunged from the Claims Register but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy

Court.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, Interest, or Intercompany Interest, that estimated amount shall constitute a maximum limitation on such Claim, Interest, or Intercompany Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors, the Post-Effective Date Debtors or the GUC Trust (with respect to General Unsecured Claims), as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim, Interest, or Intercompany Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Disputed Claim, Interest, or Intercompany Interest is estimated.

D.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Post-Effective Date Debtors or the GUC Trust (solely with respect to General Unsecured Claims) shall have the sole authority:  (i) to File, withdraw, or litigate to judgment, objections to Claims, Interests, or Intercompany Interests; (ii) to settle or compromise any Disputed Claim, Interest, or Intercompany Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Post-Effective Date Debtor or the GUC Trust, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, Interest, or Intercompany Interest, including the Causes of Action retained pursuant to the Plan.  Notwithstanding anything to the contrary herein, the Debtors or Post-Effective Date Debtors, as applicable, may not settle any Retained Cause of Action that would result in a Class 5 General Unsecured Claim without obtaining either (i) relief from a court with competent jurisdiction (and if such court is a court other than the Bankruptcy Court, the GUC Trustee shall be deemed, for purposes of such proposed settlement presented to such other court, a party-in-interest with standing to be heard in such other court for such purpose, solely to the extent that such settlement would result in a Class 5 General Unsecured Claim) or (ii) approval of the GUC Trustee.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the applicable Claims objection deadline, as such deadline may be extended from time to time.

F.      *Adjustment to Claims, Interests, or Intercompany Interests without Objection.*

**Any duplicate Claim, Interest, or Intercompany Interest or any Claim, Interest, or Intercompany Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Post-Effective Date Debtors and/or the GUC Trust (with respect to General Unsecured Claims), as applicable, without the Post-Effective Date Debtors or the GUC Trust, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim, Interest, or Intercompany Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.**

G.      *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Post-Effective Date Debtors may establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Post-Effective Date Debtors consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.  Following the final resolution of all Disputed Claims, any residual amounts in the Disputed Claims Reserve shall constitute Residual Cash and be immediately distributed to Holders of Allowed First Priority Claims.

H.      *Disallowance of Claims.*

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be disallowed pursuant to section 502(d) of the Bankruptcy Code if:  (1) the Entity, on the one hand, and the Debtors or the Post-Effective Date Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferees liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as provided herein or otherwise agreed to by the Post-Effective Date Debtors or the GUC Trust (with respect to the General Unsecured Claims), in their sole discretion, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed as of the Effective Date without further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claims has been deemed timely Filed by the Final Order.

I.      *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Post-Effective Date Debtors, or the GUC Trust (with respect to General Unsecured Claims), and any such new or amended Proof of Claim Filed that is not authorized before it is Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court absent prior Bankruptcy Court approval or agreement by the Post-Effective Date Debtors; *provided* that the foregoing shall not apply to Administrative Claims or claims Filed by Governmental Units.

J.      *Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim, Interest, or Intercompany Interest is Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim, Interest, or Intercompany Interest unless and until such Disputed Claim, Interest, or Intercompany Interest becomes an Allowed Claim, Interest, or Intercompany Interest.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent (or the GUC Trustee, with respect to General Unsecured Claims) shall provide to the Holder of such Allowed Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim, or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests and Intercompany Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and discharge, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Post-Effective Date Debtors), Interests, Intercompany Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after

the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests and Intercompany Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Interests, or Intercompany Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims, Interests, or Intercompany Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such Claim has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than any Reinstated Claims), subject to the occurrence of the Effective Date.

**B.**      *Release of Liens.*

**Except as otherwise provided in the Exit Facilities Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns.  The Holders of such Secured Claim (and the applicable agents for such Holders) shall be directed, at the sole cost and expense of the Post-Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (or the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**C.**      *Releases by the Debtors.*

**Notwithstanding anything contained herein or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each of the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by and on behalf of the Debtors, their Estates, and, if applicable, the Post-Effective Date Debtors, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Post-Effective Date Debtors), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, their Estates, the Post-Effective Date Debtors, if applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or Intercompany Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest**

that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtors and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Exit Financing Arrangements, the Exit Facilities Documents, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the releases set forth above, release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claim, Interests, and Intercompany Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Post-Effective Date Debtors, asserting any claim or Cause of Action released pursuant to the Debtor Release.

D.      *Releases by Holders of Claims, Interests, and Intercompany Interests.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each of the Released Parties, will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or Intercompany Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtors and any Released Party, the distribution of any Cash or other property to any Released Party, the assertion or enforcement of rights or remedies against any Person, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11

Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Exit Financing Arrangements, the Exit Facilities Documents, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, no Non-Released Party shall be a Releasing Party or a Released Party under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided in this Article VIII.D, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases provided in this Article VIII.D are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the releases contained in this Article VIII.D; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to this Article VIII.D.

E.      *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Post-Effective Date Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

For the avoidance of doubt, no Non-Released Party shall be an Exculpated Party under the Plan.

F.    **Injunction.**

**Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Intercompany Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in the Post-Effective Date Debtors has been liquidated and distributed in accordance with the terms of the Plan, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Intercompany Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or Cause of Action constitutes a direct or derivative claim and represents a colorable claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party; *provided, however,* that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.**

**Upon entry of the Confirmation Order, all Holders of Claims, Interests, or Intercompany Interests, and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim, Interest, or Intercompany Interests, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, Interest, or Intercompany Interest, as applicable, pursuant to the Plan, shall be subject to the injunction provisions set forth in the Plan.**

For the avoidance of doubt, pending the consummation of the settlement of the M&R Action and receipt by M&R of the M&R Settlement Payment, nothing in the Plan, including, without limitation, the third-party release and injunction provisions, shall, and shall not be deemed to, prevent or impair the prosecution of the M&R Action against any non-Debtor defendants thereto (the "Non-Debtor Defendants"); *provided* that all rights are reserved as to ability of the Non-Debtor Defendants to assert defenses in the M&R Action, including, without limitation, that any claim in the M&R Action is derivative of the Debtors' rights or is otherwise property of the Debtors' Estates; *provided, further,* that the Bankruptcy Court shall retain exclusive jurisdiction with respect to the foregoing, as set forth in Article XI of the Plan.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent or (ii) the Holder of the relevant Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Restructuring Transactions shall have been implemented in accordance with the Restructuring Steps Plan in all material respects;

2.      the Bankruptcy Court shall have entered an order approving the Disclosure Statement, in form and substance consistent with the RSA and otherwise reasonably acceptable to the Required Consenting First Lien Lenders, which order shall be in full force and effect and such orders shall not have been stayed, modified, or vacated on appeal;

3.      the Bankruptcy Court shall have entered the Confirmation Order, which order shall have become a Final Order;

4.      the New Common Stock shall have been issued;

5.      solely to the extent the Second Lien Condition has occurred, the Second Lien Warrants shall have been issued in accordance with the Second Lien Warrants Documents;

6.      the RSA shall not have been terminated and shall remain in full force and effect;

7.      the GUC Trust Agreement shall have been executed and the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust;

8.        the DIP Facility shall be in full force and effect and there shall be no defaults under the DIP Documents continuing unless waived by the requisite DIP Lenders in accordance with the terms and conditions of the DIP Documents;

9.        the Plan Supplement, Definitive Documents, Plan, and all schedules, documents, supplements, and exhibits thereto, or the Exit Financing Arrangements, as applicable, shall have become effective and shall be in full force and effect;

10.        all Restructuring Expenses and any other professional fees and other amounts required to be paid pursuant to the RSA, in any Definitive Document, or in any order of the Bankruptcy Court related thereto shall have been paid in full and in Cash;

11.        any and all requisite governmental, regulatory, and third-party approvals and consents necessary to effectuate the Restructuring Transactions shall have been obtained, and all applicable waiting periods shall have expired;

12.        the Exit Facilities Documents, as applicable, shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the parties thereto (with the consent of the Required Consenting First Lien Lenders), other than such conditions that relate to the effectiveness of the Plan and related transactions, including payment of fees and expenses;

13.        all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court (including for the avoidance of doubt all professional fees and other amounts required to be paid pursuant to the RSA) shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court;

14.        the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed; and

15.        the DIP Claims shall have been satisfied in accordance with Article II.B.

B.        *Waiver of Conditions.*

The conditions to the Effective Date set forth in this Article IX, except for the conditions set forth in Article IX.A.7, 9, 14, and 15 of the Plan (each of which may not be waived without the consent of the affected parties), may be waived in whole or in part at any time by the Debtors only with the prior written consent (email shall suffice) of the Required Consenting First Lien Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.        *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims, Interests, or Intercompany Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims, Interests, or Intercompany Interests, or any other Entity in any respect; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

D.        *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Required Consenting First Lien Lenders, reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that the consent of the Cross-Holder Ad Hoc Group shall be required solely to the extent any such modification to the Plan seeks to modify the treatment of the Second Lien Claims under the Plan or otherwise disproportionately and negatively affects the Cross-Holder Ad Hoc Group in its capacity as Holders of First Lien Secured Claims or DIP Claims.  Subject to those restrictions on modifications set forth in the Plan, and the requirements of section 1127 of the Bankruptcy Code, rule 3019 of the Bankruptcy Rules, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify, the Plan with respect to such Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors, with the consent of the Required Consenting First Lien Lenders, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Intercompany Interests, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

### ARTICLE XI.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.	resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including the amount of Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.	ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.	adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.	adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

7.	enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Plan Supplement;

8.	enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.	resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.	issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.	resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in the Plan, including under Article VIII hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12.	resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by Holders of Claims pursuant to Article VI.K hereof;

13.	enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.	determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the RSA;

15.	enter an order concluding or closing the Chapter 11 Cases;

16.	adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.	consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.        determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.        hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.        hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.        hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

22.        adjudicate, decide, or resolve any and all matters related to the GUC Trust or the GUC Trust Assets;

23.        enforce all orders previously entered by the Bankruptcy Court; and

24.        hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the Exit Facilities Documents shall be governed by the jurisdictional provisions therein, and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.        *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all Holders of Claims, Interests, or Intercompany Interests (irrespective of whether such Claims, Interests, or Intercompany Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or Intercompany Interest has voted on the Plan.

B.        *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the RSA.  The Debtors or the Post-Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.        *Payment of Statutory Fees.*

All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by each of the Debtors or the Post-Effective Date Debtors, as applicable, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) on the Effective Date, and following the Effective Date, the Post-Effective Date

Debtors (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until such Post-Effective Date Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. The Post-Effective Date Debtors shall File quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each of the Debtors and the Post-Effective Date Debtors are jointly and severally liable for the payment of quarterly fees and shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense Claims and shall not be treated as providing any release under the Plan.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The dissolution of the Committee does not limit the rights and obligation of the Committee and its Professionals to prepare and if necessary, defend, final fee applications for services rendered prior to the Effective Date. The Post-Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims, Interests, or Intercompany Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.      if to the Debtors, to:

        Careismatic Brands, LLC
        Attention:      Sidharth Lakhani, Chief Executive Officer; Sean Bogue, Chief Financial Officer
        E-mail address:  slakhani@careismatic.com
                      sbogue@careismatic.com

        with copies to:

        Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, NY 10022
        Attention:      Joshua A. Sussberg
        E-mail addresses:jsussberg@kirkland.com

-and-

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Attention:      Chad J. Husnick
E-mail address:   chusnick@kirkland.com

2.    if to the First Lien Ad Hoc Group, to:

Milbank LLP
55 Hudson Yards
New York, NY 10001
Attention:      Evan R. Fleck; Nelly Almeida
E-mail address:   efleck@milbank.com
                nalmeida@milbank.com

3.    if to the Cross-Holder Ad Hoc Group, to:

King & Spalding LLP
1185 6th Avenue
New York, NY 10036
Attention:      Peter Montoni; Matt Warren
E-mail address:   pmontoni@kslaw.com;
                mwarren@kslaw.com

4.    if to the Sponsor, to:

Partners Group (USA) Inc.
1114 Avenue of the Americas, 37th Floor
New York, NY 10036
Attention:      Philip Wolf
E-mail address:   philip.wolf@partnersgroup.com

with copies to:

Ropes & Gray LLP
1211 6th Avenue
New York, NY 10036
Attention:      Gregg Galardi
E-mail address:   gregg.galardi@ropesgray.com

After the Effective Date, the Debtors have authority to notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.donlinrecano.com/clients or the Bankruptcy Court's website at www.njb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan; and (iii) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties nor individuals nor the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim, Interest, or Intercompany Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim, Interest, or Intercompany Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Creditor Default.*

An act or omission by a Holder of a Claim or Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan.  Upon an event of default, the Post-Effective Date Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Post-Effective Date Debtors in remedying such default.  Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may:  (a) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Post-Effective Date Debtors in an amount, including interest, if applicable, to compensate the Post-Effective Date Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

[*Remainder of page intentionally left blank.*]

Dated:  May 24, 2024

Careismatic Brands, LLC
on behalf of itself and all other Debtors

_/s/ Kent Percy_

Name:   Kent Percy
Title:    Chief Restructuring Officer

## Exhibit B

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*,[1] | Case No. 24-10561 (VFP) |
| Debtors. | (Jointly Administered) |

**SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**OF CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES**
**PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Felice R. Yudkin, Esq. (NJ Bar No. 014962005)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:     (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com


*Co-Counsel to the*
*Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2000
Email:     chusnick@kirkland.com


*Co-Counsel to the*
*Debtors and Debtors in Possession*

Dated:  May 1624, 2024

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ........................................................................................................ 1
    A.    Defined Terms. ................................................................................................................. 1
    B.    Rules of Interpretation. .................................................................................................. 15
    C.    Computation of Time. ................................................................................................. 15<del>6</del>
    D.    Governing Law. ............................................................................................................. 16
    E.    Reference to Monetary Figures. .................................................................................... 16
    F.    Reference to the Debtors or the Post-Effective Date Debtors. ..................................... 16
    G.    Controlling Document. ................................................................................................... 16
    H.    Consultation, Notice, Information, and Consent Rights. .............................................. 16

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES ............................................................................................................................. 16<ins>7</ins>
    A.    Administrative Claims. ............................................................................................. 16<ins>7</ins>
    B.    DIP Claims. .................................................................................................................... 17
    C.    Priority Tax Claims. ....................................................................................................... 17
    D.    Professional Fee Claims. ............................................................................................. 17<ins>8</ins>
    E.    Payment of Restructuring Expenses. ............................................................................ 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS, AND INTERCOMPANY INTERESTS .............................................................................................................................. 19
    A.    Classification of Claims, Interests, and Intercompany Interests. .................................. 19
    B.    Treatment of Claims, Interests, and Intercompany Interests. ....................................... 19
    C.    Special Provision Governing Unimpaired Claims. ........................................................ 22
    D.    Elimination of Vacant Classes. ..................................................................................... 22
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ................................... 23
    F.    Intercompany Interests. ................................................................................................. 23
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ...... 23
    H.    Controversy Concerning Impairment. ........................................................................... 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................................... 23
    A.    General Settlement of Claims, Interests, and Intercompany Interests. .......................... 23
    B.    Restructuring Transactions. ........................................................................................... 23
    C.    Section 1146 Exemption. ............................................................................................... 24
    D.    The Recapitalization Transaction. ................................................................................. 25
    E.    Cancellation of Existing Agreements, Interests, and Intercompany Interests. ............... 30
    F.    The GUC Trust. ............................................................................................................. 30
    G.    Preservation of Causes of Action. ................................................................................. 32
    H.    Closing the Chapter 11 Cases. ...................................................................................... 33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 33
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ................. 33
    B.    Indemnification Obligations. ......................................................................................... 34
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................... 34
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ............... 35
    E.    Insurance Policies. ......................................................................................................... 35
    F.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ..... 36
    G.    Reservation of Rights. ................................................................................................... 36
    H.    Nonoccurrence of Effective Date. ............................................................................. 36<ins>7</ins>
    I.    Contracts and Leases Entered Into After the Petition Date. ...................................... 36<ins>7</ins>

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ......................................................... 36<ins>7</ins>
    A.    Timing and Calculation of Amounts to Be Distributed. ............................................ 36<ins>7</ins>

|   | B. | Disbursing Agent. | 37 |
|   | C. | Rights and Powers of Disbursing Agent. | 37 |
|   | D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 37~~8~~ |
|   | E. | Manner of Payment. | 38~~9~~ |
|   | F. | Compliance with Tax Requirements. | 38~~9~~ |
|   | G. | Allocations. | 39 |
|   | H. | No Postpetition Interest on Claims. | 39 |
|   | I. | Foreign Currency Exchange Rate. | ~~39~~40 |
|   | J. | Setoffs and Recoupment. | ~~39~~40 |
|   | K. | Claims Paid or Payable by Third Parties. | ~~39~~40 |

ARTICLE VII.  PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS | 40~~1~~ |
|   | A. | Disputed Claims Process. | 40~~1~~ |
|   | B. | Allowance of Claims. | 40~~1~~ |
|   | C. | Estimation of Claims. | 41 |
|   | D. | Claims Administration Responsibilities. | 41~~2~~ |
|   | E. | Time to File Objections to Claims. | 41~~2~~ |
|   | F. | Adjustment to Claims, Interests, or Intercompany Interests without Objection. | 42 |
|   | G. | Disputed and Contingent Claims Reserve. | 42 |
|   | H. | Disallowance of Claims. | 42~~3~~ |
|   | I. | Amendments to Proofs of Claim. | 42~~3~~ |
|   | J. | Distributions Pending Allowance. | 42~~3~~ |
|   | K. | Distributions After Allowance. | 43 |

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS | 43 |
|   | A. | Discharge of Claims and Termination of Interests and Intercompany Interests. | 43 |
|   | B. | Release of Liens. | 43~~4~~ |
|   | C. | Releases by the Debtors. | 44 |
|   | D. | Releases by Holders of Claims, Interests, and Intercompany Interests. | 45 |
|   | E. | Exculpation. | 46 |
|   | F. | Injunction. | 46~~7~~ |
|   | G. | Protections Against Discriminatory Treatment. | 47~~8~~ |
|   | H. | Document Retention. | 47~~8~~ |
|   | I. | Reimbursement or Contribution. | 47~~8~~ |

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN | 48 |
|   | A. | Conditions Precedent to the Effective Date. | 48 |
|   | B. | Waiver of Conditions. | 49 |
|   | C. | Effect of Failure of Conditions. | 49 |
|   | D. | Substantial Consummation. | 49 |

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | ~~49~~50 |
|   | A. | Modification and Amendments. | ~~49~~50 |
|   | B. | Effect of Confirmation on Modifications. | ~~49~~50 |
|   | C. | Revocation or Withdrawal of Plan. | 50 |

ARTICLE XI. RETENTION OF JURISDICTION | 50 |

ARTICLE XII. MISCELLANEOUS PROVISIONS | 52 |
|   | A. | Immediate Binding Effect. | 52 |
|   | B. | Additional Documents. | 52 |
|   | C. | Payment of Statutory Fees. | 52 |
|   | D. | Statutory Committee and Cessation of Fee and Expense Payment. | 52~~3~~ |
|   | E. | Reservation of Rights. | 52~~3~~ |
|   | F. | Successors and Assigns. | 53 |

G.    Notices. ..................................................................................................... 53

H.    Term of Injunctions or Stays. ...................................................................... 54

I.    Entire Agreement. ....................................................................................... 5445

J.    Exhibits. ...................................................................................................... 5445

K.    Nonseverability of Plan Provisions. ............................................................ 5445

L.    Votes Solicited in Good Faith. ..................................................................... 55

M.    Closing of Chapter 11 Cases. ....................................................................... 55

N.    Waiver or Estoppel. ..................................................................................... 55

O.    Creditor Default. .......................................................................................... 5556

**INTRODUCTION**

Careismatic Brands, LLC and the above-captioned debtors and debtors in possession propose this Plan for the resolution of the outstanding Claims and Interests pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims, Interests, and Intercompany Interests pursuant to the Bankruptcy Code. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations as well as a summary and description of the Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.      "*Acceptable Alternative Exit Facility*" means an exit financing facility other than the Exit Term Loan Facility that is acceptable to the Required Consenting First Lien Lenders.

2.      "*Acceptable Alternative Exit Facility Documents*" means the documents governing the Acceptable Alternative Exit Facility, together with any related notes, certificates, agreements, security agreements, documents, and instruments related to or executed in connection therewith.

3.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; (d) adequate protection Claims provided for in the DIP Orders; and (e) Restructuring Expenses.

4.      "*Administrative Claims Bar Date*" means, for any Administrative Claim arising on or prior to March 23, 2024, establishing April 2, 2024, at 5:00 p.m., prevailing Eastern Time, as the last date and time by which claimants holding such Administrative Claims must File Proofs of Claim, and for any Administrative Claims arising after March 23, 2024, such Claims must be Filed by the earlier of: (a) the 15th day of the month following the month in which the Claim arose and (b) 14 days following the Effective Date.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

6.      "*Agents*" means, collectively, the DIP Agent, the Exit Agent, the First Lien Agent, and the Second Lien Agent, including, in each case, any successors thereto.

7.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable bar date (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Debtors' Schedules as not contingent, not unliquidated, and not Disputed and for which no Proof of Claim

asserting a different amount or classification has been timely Filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order of the Bankruptcy Court; *provided*, *further*, that unless expressly waived by the Plan or otherwise permitted by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

8.      "*Assumed Executory Contracts and Unexpired Leases List*" means the list to be included in the Plan Supplement, as determined by the Debtors, of Executory Contracts and Unexpired Leases that will be assumed by the Debtors, pursuant to the Plan, which list may be amended from time to time.

9.      "*Assumed Plans*" means, collectively, the Debtors' wages, compensation, and benefits programs according to existing terms and practices as of the date of this Plan, including executive compensation programs and executive employment agreements.

10.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law other than the Vendor Avoidance Actions.

11.      "*Backstop Commitment*" means the Backstop Parties' commitment to backstop 100% of the DIP Facility pursuant to the DIP Credit Agreement in exchange for the Backstop Premium.

12.      "*Backstop Party*" means the Consenting Creditors providing the Backstop Commitment.

13.      "*Backstop Premium*" means an amount equal to 11.0% of the DIP Commitments, payable in-kind to each Backstop Party, according to its *pro rata* share of the DIP Commitments, which may be equitized in accordance with the DIP Premium Conversion Election Option.

14.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

15.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey.

16.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

17.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.      "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

19.      "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

20.      "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories),

whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims, Interests, or Intercompany Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

21.    "*CBI Parent*" means CBI Parent, L.P.

22.    "*CBI Parent Transaction Committee*" means the transaction committee of the board of directors of CBI Parent.

23.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25.    "*Claims and Noticing Agent*" means Donlin Recano & Company, Inc., the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Order (I) Authorizing the Appointment of Donlin, Recano & Company, Inc. as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 71].

26.    "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

27.    "*Class*" means a class of Claims, Interests, or Intercompany Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28.    "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

29.    "*Commitment Premium*" means an amount equal to 3.5% of the DIP Commitments, payable in-kind to each DIP Lender, according to its *pro rata* share of the DIP Commitments, which may be equitized in accordance with the DIP Premium Conversion Election Option.

30.    "*Committee*" means the official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee on February 2, 2024 [Docket No. 136] in the Chapter 11 Cases, as amended on February 14, 2024 [Docket No. 204], the membership of which may be further reconstituted from time to time by the U.S. Trustee.

31.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

32.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

33.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35. "*Consenting Creditors*" means, collectively, the First Lien Ad Hoc Group and the Cross-Holder Ad Hoc Group.

36. "*Consenting Stakeholders*" means, collectively, the Consenting Creditors and the Sponsor.

37. "*Consummation*" means the occurrence of the Effective Date.

38. "*Cross-Holder Ad Hoc Group*" means, collectively, those Holders of First Lien Term Loan Claims and Second Lien Claims represented by the Cross-Holder Ad Hoc Group Advisors, that are signatories to the RSA.

39. "*Cross-Holder Ad Hoc Group Advisors*" means King & Spalding LLP.

40. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

41. "*D&O Liability Insurance Policies*" means all ~~i~~Insurance ~~p~~Policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', and officers' ~~and/or employees'~~ liability and all agreements, documents, or instruments relating thereto.

42. "*Debtor*" means each of the Debtors in its individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

43. "*Debtor Release*" means the release set forth in Article VIII.C hereof.

44. "*Debtors*" means, collectively, each of the following: AllHearts, LLC; Careismatic, LLC; Careismatic Brands, LLC; Careismatic Group Inc.; Careismatic Group II Inc.; CBI Intermediate, Inc.; CBI Midco, Inc.; CBI Parent; Krazy Kat Sportswear LLC; Marketplace Impact, LLC; Med Couture, LLC; Medelita, LLC; New Trojan Parent, Inc.; Pacoima Limited, LLC; Silverts Adaptive, LLC; Strategic Distribution, L.P.; Strategic General Partners, LLC; Strategic Partners Acquisition Corp.; Strategic Partners Corp.; Strategic Partners Midco, LLC; Trojan Buyer, Inc.; and Trojan Holdco, Inc.

45. "*Definitive Documents*" means, collectively and as applicable, (a) this Plan (including the releases set forth in Article VIII herein) and all exhibits hereto; (b) the Plan Supplement and the documents contained therein; (c) the Confirmation Order; (d) the Disclosure Statement; (e) the Disclosure Statement Order; (f) all material pleadings Filed by the Debtors in connection with the Chapter 11 Cases (and related orders), including the First Day Pleadings and all orders sought pursuant thereto; (g) all motions, orders, filings, documents, and agreements related to the Restructuring Transactions, including any motion to approve the Disclosure Statement, (h) the Solicitation Materials; (i) the New Organizational Documents; (j) the DIP Orders; (k) the DIP Documents; (l) the Exit Facilities Documents, (m) the Second Lien Warrants Documents; (n) the GUC Trust Agreement; (o) any KEIP or KERP (if applicable); (p) any and all filings with or requests for regulatory or other approvals from any governmental entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Restructuring Transactions; and (q) such other agreements, instruments, and documentation as may be necessary to consummate and document the transactions contemplated by the Plan.

46. "*DIP Agent*" means the administrative agent and collateral agent under the DIP Facility.

47. "*DIP Agent Advisors*" means (i) Paul Hastings LLP, (ii) Porzio, Bromberg & Newman, P.C., and (iii) any other advisors permitted under the DIP Documents.

48. "*DIP Claims*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility, the DIP Credit Agreement (including accrued but unpaid interest and fees arising under the DIP Credit

Agreement), or the other DIP Documents, including any DIP Premiums, payable on the terms provided for in the DIP Credit Agreement and the DIP Orders.

49.     "*DIP Commitments*" means the loans under the DIP Facility.

50.     "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit and Guaranty Agreement, dated as of January 24, 2024, by and among New Trojan Parent, Inc., as Borrower, CBI Intermediate, Inc., as Holdings, all other Debtors, the guarantors party thereto, the lenders party thereto, and Jefferies Finance LLC, as administrative agent and collateral agent.

51.     "*DIP Documents*" means, collectively, the DIP Credit Agreement and any other documents governing the DIP Facility, including the DIP Orders.

52.     "*DIP Facility*" means the superpriority senior secured debtor-in-possession credit facility provided for under the DIP Documents.

53.     "*DIP Lenders*" means, collectively, each lender under the DIP Facility.

54.     "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

55.     "*DIP Premium Conversion Election Option*" means the right of each Holder of a DIP Claim to elect, at its sole discretion, to convert the DIP Premiums that such Holder earned in connection with the DIP Facility into New Common Stock at the Discount Value; *provided* that the DIP Premium Conversion Election Option shall not apply in the event that:  (i) the Debtors' restructuring is consummated through a Plan that provides for payment in full in Cash on the Effective Date of all First Priority Claims and DIP Claims; or (ii) an Acceptable Alternative Exit Facility is approved and becomes effective.

56.     "*DIP Premiums*" means, collectively, the Backstop Premium, the Commitment Premium, and the Exit Premium, each of which may be equitized in accordance with the DIP Premium Conversion Election Option.

57.     "*Disbursing Agent*" means the Post-Effective Date Debtors, or any Entity the Debtors or the Post-Effective Date Debtors select to make or to facilitate distributions in accordance with the Plan, which Entity may include the Claims and Noticing Agent or the Agents (with the respective Agent's prior written consent), as applicable.

58.     "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

59.     "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving the adequacy of the Disclosure Statement.

60.     "*Discount Value*" means 40.0% to the plan enterprise value of $325 million.

61.     "*Disputed*" means, as to a Claim, Interest, or Intercompany Interest, a Claim, Interest, or Intercompany Interest:  (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

62.     "*Disputed Claims Reserve*" means the account to be established on the Effective Date and funded with the Disputed Claims Reserve Amount for distribution as set forth in Article VII.G, if any.

63.     "*Disputed Claims Reserve Account*" means the account funded with the Disputed Claims Reserve Amount.

64.     "*Disputed Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors in consultation with the Required Consenting First Lien Lenders, which amount shall be used to fund the Disputed Claims Reserve.

65.     "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing or such other date agreed to by the Debtors and the Required Consenting First Lien Lenders.

66.     "*DTC*" means the Depository Trust Company.

67.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

68.     "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

69.     "*Equipment Financing Claims*" means any Claim on account of the Equipment Lease Agreement.

70.     "*Equipment Lease Agreement*" means that certain Master Equipment Lease Agreement dated July 25, 2023, by and among Wingspire Equipment Finance LLC, as Lessor, and Careismatic Brands, LLC, as Lessee.

71.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

72.     "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

73.     "*Excluded Vendor List*" means the list of vendors to be provided by the Post-Effective Date Debtors to the GUC Trustee not later than sixty (60) days following entry of the Confirmation Order.

74.     "*Exculpated Parties*" means, collectively: (a) the Debtors; (b) the Post-Effective Date Debtors; (c) the Committee and each of its members; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), each such Entity's current and former control persons, directors, members of any committees of any Entity's board of directors or managers, equity Holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; *provided*, *however*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be an Exculpated Party under the Plan.

75.     "*Executory Contract*" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

76.     "*Exit Agent*" means the administrative agent and collateral agent under the Exit Facilities Documents.

77.     "*Exit Facilities Documents*" means, as applicable, either the Exit Term Loan Facility Documents or the Acceptable Alternative Exit Facility Documents.

78.     "*Exit Facility Lenders*" means, collectively, each lender under the applicable Exit Financing Arrangement.

79.     "*Exit Financing Arrangements*" means the Exit Term Loan Facility or the Acceptable Alternative Exit Facility, as applicable.

80.    "*Exit Premium*" means an amount equal to 3.5% of the DIP Commitments payable to each DIP Lender, according to its *pro rata* share of the DIP Commitments, (i) in-kind upon conversion into the Exit Term Loan Facility or (ii) in Cash upon repayment in full of the DIP Facility (which, for the avoidance of doubt, shall also be subject to the DIP Premium Conversion Election Option).

81.    "*Exit Term Loan Credit Agreement*" means the credit agreement with respect to the Exit Term Loan Facility.

82.    "*Exit Term Loans*" means the loans issued on account of the Exit Term Loan Facility.

83.    "*Exit Term Loan Facility*" means a new term loan facility wherein the DIP Commitments are converted to Exit Term Loan Facility Loans.

84.    "*Exit Term Loan Facility Documents*" means any documents governing the Exit Term Loan Facility and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

85.    "*Exit Term Loan Facility Loans*" means loans issued under the Exit Term Loan Facility.

86.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

87.    "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

88.    "*Final DIP Order*" means the Final Order approving the DIP Facility and the DIP Documents and authorizing the Debtors' use of Cash Collateral.

89.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

90.    "*First Day Pleadings*" means those certain pleadings Filed by the Debtors contemporaneously with their voluntary petitions on the Petition Date.

91.    "*First Lien Ad Hoc Group*" means, collectively, those Holders of First Lien Term Loan Claims and Second Lien Claims represented by the First Lien Ad Hoc Group Advisors, that are signatories to the RSA or any subsequent Holder of First Lien Term Loan Claims, First Lien RCF Claims, and Second Lien Claims that becomes party thereto as a member of the First Lien Ad Hoc Group, in accordance with the terms of the RSA.

92.    "*First Lien Ad Hoc Group Advisors*" means (i) Milbank LLP, (ii) Gibbons P.C., (iii) Houlihan Lokey Capital, Inc., (iv) St. Onge Company, and (v) any regulatory counsel or other advisors retained by the First Lien Ad Hoc Group.

93.    "*First Lien Agent*" means UBS AG, Stamford Branch, as administrative and collateral agent to the First Lien Credit Agreement.

94.    "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated as of January 6, 2021, among New Trojan Parent, Inc., a Delaware corporation, as Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, the issuing banks thereto from time to time, the Swing Line Lender party thereto from time to time, and UBS AG, Stamford Branch, as administrative and collateral agent.

95.    "*First Lien Credit Documents*" means any documents governing the First Lien Revolving Credit Facility and First Lien Term Loan Facility, and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments related to or executed in connection therewith.

96.    "*First Lien RCF Claims*" means any Claim on account of the First Lien Revolving Credit Facility.

97.    "*First Lien Revolving Credit Facility*" means that certain first lien revolving credit facility issued pursuant to the First Lien Credit Agreement.

98.    "*First Lien Secured Claims*" means any First Priority Claim that is a Secured Claim.

99.    "*First Lien Term Loan Claims*" means any Claim on account of the First Lien Credit Agreement arising out of the term loans issued thereby, plus applicable interest, fees, costs, expenses, and premiums.

100.    "*First Lien Term Loan Facility*" means that certain term loan credit facility issued pursuant to the First Lien Credit Agreement.

101.    "*First Priority Claims*" means, collectively, the First Lien RCF Claims, the First Lien Term Loan Claims, and the Equipment Financing Claims.

102.    "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) a DIP Claim; (e) an Other Secured Claim; (f) an Other Priority Claim; (g) a First Priority Claim; (h) a Second Lien Secured Claim; (i) a Subordinated Claim; or (j) an Intercompany Claim.  For the avoidance of doubt, General Unsecured Claims shall include the Second Lien Deficiency Claims.

103.    "*Governance Term Sheet*" means that certain Governance Term Sheet attached as <u>Exhibit D</u> to the Restructuring Term Sheet.

104.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Post-Effective Date Debtors, as applicable.

105.    "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

106.    "*GUC Trust*" means the trust established on the Effective Date in accordance with the Plan to hold the GUC Trust Assets and administer Allowed General Unsecured Claims pursuant to the GUC Trust Agreement.

107.    "*GUC Trust Agreement*" means the trust agreement establishing the terms and conditions for the creation and operation of the GUC Trust to be entered into on or before the Effective Date between the Debtors and the GUC Trustee, which agreement shall be in form and substance acceptable to the Debtors and the Committee, and, for the limited purpose of determining impact on the Post-Effective Date Debtors, the Consenting Creditors holding First Priority Claims, or the Plan, the Required Consenting First Lien Lenders, whose consent will not be unreasonably withheld.

108.    "*GUC Trust Assets*" means, collectively, (i) $3.5 million in Cash, and (ii) the GUC Trust Claims.

109.    "*GUC Trust Claims*" means (i) any Claims and Causes of Action held by the Debtors and their respective Estates against the Non-Released Parties; (ii) any Interchange Claims, and (iii) any Avoidance Action held by the Debtors and their Estates to the extent not released under the Plan, which shall include all Avoidance Actions against the Non-Released Parties; *provided* that the GUC Trust Claims shall not include (a) any Vendor Avoidance Actions or (b) Retained Causes of Actions.

110.    "*GUC Trustee*" means, in its capacity as such, the Person or Entity selected by the Committee, with the consent (not to be unreasonably withheld) of the Debtors and any successor thereto, in accordance with the GUC Trust Agreement.

111.    "*GUC Trust Fees and Expenses*" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professionals retained by the GUC Trust, and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust.

112.    "*GUC Trust Net Assets*" means the GUC Trust Assets *less* the GUC Trust Fees and Expenses.

113.    "*Holder*" means a Person or an Entity holding a Claim, Interest, or Intercompany Interest, as applicable.

114.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

115.    "*Interchange Claims*" means any Claim or Cause of Action held by a Debtor or a Debtor's Affiliate, and any successors or assigns, relating to the payment card interchange fee and merchant discount antitrust litigation.

116.    "*Indemnification Obligations*" means any obligations of the Debtors pursuant to corporate charters, bylaws, limited partnership agreements, limited liability company agreements, written deeds of indemnity, or other organizational documents in place as of the Effective Date to indemnify current and former officers, directors, partners, managers, members, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors.

117.    "*Insurance Policies*" means all insurance policies that have been issued at any time to, or provide coverage to, any of the Debtors or any of their predecessors, and all agreements, documents or instruments relating thereto, including all D&O Liability Insurance Policies.

118.    "*Insurer*" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

119.    ~~117.~~ "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

120.    ~~118.~~ "*Intercompany Interest*" means, other than an Interest, any shares (or any class thereof), common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, profits interests, puts, options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests in a Debtor held by another Debtor.

121.    ~~119.~~ "*Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, equity security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests in CBI Parent, and puts, options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common

stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of CBI Parent (in each case whether or not arising under or in connection with any employment agreement).

122. ~~120.~~ "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 60].

123. ~~121.~~ "*Intermediate Transaction Committee*" means the transaction committee of the board of directors of CBI Intermediate, Inc.

124. ~~122.~~ "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

125. ~~123.~~ "*KEIP*" means any key executive incentive plan or similar proposal or documentation that would require Bankruptcy Court approval to make payments to "insiders" during the course of the Chapter 11 Cases.

126. ~~124.~~ "*KERP*" means any key employee retention plan or similar proposal or documentation that would require Bankruptcy Court approval to make payments to non-"insiders" during the course of the Chapter 11 Cases.

127. ~~125.~~ "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

128. ~~126.~~ "*M&R*" means Michelman & Robinson LLP.

129. ~~127.~~ "*M&R Action*" means that certain Los Angeles County Superior Court action captioned *Michelman & Robinson, LLP v. Partners Group et al.*, Case No. 23STVC05652.

130. ~~128.~~ "*M&R Claim*" means that certain Claim held by M&R, which Proof of Claim evidencing such Claim was submitted on March 20, 2024 as claim number 106, as amended on March 22, 2024 by claim number 113, in the amount of $10,094,655.00.

131. ~~129.~~ "*M&R Settlement Payment*" means the Settlement Payment, paid in full, as that term is defined in the Settlement Agreement ~~dated as of May [   ], 2024~~to be entered into by and between the Sponsor, Michael Penner, Girisha Chandraraj, M&R, and Sanford L. Michelman.

132. ~~130.~~ "*Management Incentive Plan*" means a post-emergence incentive plan to be designed and adopted by the New Board following the Effective Date, to be used to incentivize and compensate employees, directors, consultants, and other service providers which will include the ability to grant restricted stock units, options, New Common Stock, or other rights exercisable, exchangeable, or convertible into New Common Stock (or equivalent Cash value thereof) representing up to 15.0% of the New Common Stock on a fully diluted basis.

133. ~~131.~~ "*MIP Equity*" means any New Common Stock under the Management Incentive Plan as authorized by the New Board.

134. ~~132.~~ "*New Board*" means the Governing Body of Reorganized Careismatic, which shall consist of the Chief Executive Officer of the Post-Effective Date Debtors and six members appointed by the First Lien Ad Hoc Group in accordance with the Governance Term Sheet.

135. ~~133.~~ "*New Common Stock*" means the new common equity issued by Reorganized Careismatic on the Effective Date.

136. ~~134.~~ "*New Organizational Documents*" means the documents providing for corporate governance of Reorganized Careismatic and the other Post-Effective Date Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with section 1123(a)(6) of the Bankruptcy Code (as applicable).

137.   135.  "*Non-Released Parties*" means, collectively, each of the following parties:  (a) Michael L. Singer, the former chief executive officer, president, vice president, and/or director of certain of the Debtors; (b) Robert Pierpoint, the former chief financial officer, chief operating officer, executive vice president, vice president, secretary, committee member, and director of certain of the Debtors; and (c) the Non-Released Singer Parties.

138.   136.  "*Non-Released Singer Parties*" means any Person or Entity that received consideration in connection with that certain Confidential Separation Agreement by and between Michael L. Singer, the Singer 1995 Family Trust, the Singer 2012 Irrevocable Trust, Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.) and CBI Parent, dated October 3, 2022, and any and all documentation related thereto, including, but not limited to, any repurchase agreements and severance agreements.

139.   137.  "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

140.   138.  "*Other Secured Claim*" means any Secured Claim against the Debtors other than the DIP Claims, the First Lien Secured Claims, or the Second Lien Secured Claims.

141.   139.  "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

142.   140.  "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

143.   141.  "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

144.   142.  "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Interests, or other eligible Entities under and in accordance with the Plan.

145.   143.  "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, to the extent reasonably practicable, no later than seven (7) days before the voting deadline provided in the Solicitation Materials or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable:  (a) the New Organizational Documents; (b) the identity and members of the New Board, which shall be consistent with the Governance Term Sheet; (c) the Schedule of Retained Causes of Action; (d) the Exit Facilities Documents; (e) the Restructuring Steps Plan; (f) the Assumed Executory Contracts and Unexpired Leases List, if any; (g) the Rejected Executory Contracts and Unexpired Leases List, if any; (h) the GUC Trust Agreement; (i) the Second Lien Warrants Documents; and (j) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

146.   144.  "*Post-Effective Date Debtors*" means the Debtors, as reorganized pursuant to and under the Plan, on and after the Effective Date.

147.   145.  "*Prepetition Agent Advisors*" means (i) Davis Polk & Wardwell LLP and (ii) Greenberg Traurig, LLP, in each case in their capacity as advisors to the First Lien Agent and the Second Lien Agent.

148.   146.  "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

149.   147.  "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

150.   148.  "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on

the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

151. 149. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals reasonably estimated in good faith that they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of the Plan.

152. 150. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

153. 151. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

154. 152. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

155. 153. "*Recapitalization Transaction*" means the equitization of 100% of the Allowed First Priority Claims, subject to dilution from the (i) MIP Equity, (ii) the DIP Premiums, and (iii) the exercise of the Second Lien Warrants (if applicable).

156. 154. "*Reinstate*" means reinstate, reinstated, or reinstatement with respect to Claims or Intercompany Interests, that the Claim, Interest, or Intercompany Interest shall be rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code.  "Reinstated" and "Reinstatement" shall have correlative meanings.

157. 155. "*Rejected Executory Contracts and Unexpired Leases List*" means the list to be included in the Plan Supplement, as determined by the Debtors, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors, pursuant to the Plan, which list may be amended from time to time.

158. 156. "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; *provided*, *however*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Related Party under the Plan.

159. 157. "*Released Party*" means collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) each of the Post-Effective Date Debtors; (c) each Consenting Stakeholder; (d) each DIP Lender; (e) each of the Agents; (f) each member of the First Lien Ad Hoc Group; (g) each member of the Cross-Holder Ad Hoc Group; (h) each Backstop Party; (i) each of the Exit Facility Lenders; (j) each Holder of a First Priority Claim; (k) each Holder of a Second Lien Claim; (l) the Committee and each of its members; (m) only upon receipt of the M&R Settlement Payment, M&R and Sanford L. Michelman; (n) each current and former Affiliate of each Entity in clause (a) through the following clause (o); and (o) each Related Party of each Entity in clause (a) through this clause (o) (and, in addition to each of the foregoing, where any of the foregoing is an investment manager or advisor for a beneficial Holder, such beneficial Holder); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases set forth in Article VIII.D; or (y) timely objects to the releases set forth in Article VIII.D and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered; *provided*, *further*, that notwithstanding the foregoing or anything herein to the contrary, no Non-Released Party shall be a Released Party under the Plan.

160.    158.  "*Releasing Party*" means collectively, and each solely in its capacity as such: (a) each of the Debtors; (b) each of the Post-Effective Date Debtors; (c) each Consenting Stakeholder; (d) each DIP Lender; (e) each of the Agents; (f) each member of the First Lien Ad Hoc Group; (g) each member of the Cross-Holder Ad Hoc Group; (h) each Backstop Party; (i) each of the Exit Facility Lenders; (j) only upon receipt of the M&R Settlement Payment, M&R and Sanford L. Michelman; (k) all Holders of Claims that vote to accept the Plan; (l) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (m) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form in accordance with any Filed Disclosure Statement Order, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (n) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (o) each current and former Affiliate of each Entity in clause (a) through (n); and (p) each Related Party of each Entity in clause (a) through (o) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that, for the avoidance of doubt, an Entity in clause (k) through clause (n) shall not be a Releasing Party if it:  (w) has not received a ballot due to the same being returned as undeliverable; (x) elects to opt out of the releases contained in the Plan; (y) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation order is entered; or (z) is a Non-Released Party.

161.    159.  "*Reorganized Careismatic*" means one or more Post-Effective Date Debtors or a new entity, in each case to be determined by the Debtors and the Required Consenting First Lien Lenders, to issue the New Common Stock, on and after the Effective Date.

162.    160.  "*Required Consenting First Lien Lenders*" means, as of the relevant date, Consenting Creditors holding at least 50.01% of the aggregate outstanding principal amount of the First Priority Claims that are held by Consenting Creditors.

163.    161.  "*Restructuring Expenses*" means the (x) reasonable and documented fees and expenses accrued from the inception of their respective engagements related to the implementation of the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors of:  (i) the First Lien Ad Hoc Group Advisors, (ii) the Cross-Holder Ad Hoc Group Advisors; *provided*, that fees and expenses of the Cross-Holder Ad Hoc Group Advisors shall not be paid in an amount greater than $250,000 in the aggregate, (iii) the DIP Agent Advisors, and (iv) the Prepetition Agent Advisors; and (y) the reasonable and documented prepetition and postpetition agency fees of the First Lien Agent and Second Lien Agent that have accrued and not otherwise been paid by, or on behalf of, the Debtors as of the Effective Date.

164.    162.  "*Restructuring Steps Plan*" means the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan (to be included in the Plan Supplement).  The Restructuring Steps Plan shall, among other things, designate Reorganized Careismatic.

165.    163.  "*Restructuring Term Sheet*" means the term sheet attached to the RSA as Exhibit B.

166.    164.  "*Restructuring Transactions*" means the transactions described in Article IV.A, Article IV.B, Article IV.C; and, Article IV.D.

167.    165.  "*Retained Causes of Action*" means, collectively, any (i) Avoidance Actions not retained by the GUC Trust, and (ii) Cause of Action listed on the Schedule of Retained Causes of Action; *provided* that no Retained Cause of Action shall be a GUC Trust Claim or a Claim or Cause of Action that is released under the Plan and Confirmation Order; *provided further* that all other Claims and Causes of Action not released by the Debtors under the Plan shall be retained by the Post-Effective Date Debtors.

168.    166.    "*RSA*" means that certain restructuring support agreement, dated as of January 22, 2024, by and among the Debtors and the Consenting Stakeholders, including all exhibits thereto (including the Restructuring Term Sheet).

169.    167.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

170.    168.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

171.    169.    "*Second Lien Agent*" means UBS AG, Stamford Branch, as administrative and collateral agent to the Second Lien Credit Agreement.

172.    170.    "*Second Lien Claims*" means any Claim on account of the Second Lien Credit Agreement.

173.    171.    "*Second Lien Condition*" means the condition that the class of Second Lien Claims shall have voted to accept the Plan by the voting deadline provided in the Solicitation Materials.

174.    172.    "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of January 6, 2021, among New Trojan Parent, Inc., a Delaware corporation, as the Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, and UBS AG, Stamford Branch, as administrative and collateral agent (as amended, restated, amended and restated, supplemented and/or otherwise modified).

175.    173.    "*Second Lien Credit Documents*" means any documents governing the Second Lien Term Loan Facility and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

176.    174.    "*Second Lien Deficiency Claim*" means the Second Lien Claims that are not Second Lien Secured Claims, which shall be Allowed in the aggregate amount of $25 million if the Second Lien Condition is met.

177.    175.    "*Second Lien Secured Claims*" means any Second Lien Claim that is a Secured Claim.

178.    176.    "*Second Lien Term Loan Facility*" means that certain term loan facility under the Second Lien Credit Agreement.

179.    177.    "*Second Lien Warrants*" means 5-year warrants to purchase up to 8.5% of the New Common Stock issued on account of the Allowed Second Lien Secured Claims with a strike price set at $818 million, and which shall not include Black Scholes protections.

180.    178.    "*Second Lien Warrants Documents*" means any documents governing the Second Lien Warrants.

181.    179.    "*Secured Claim*" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

182.    180.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

183.    181.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

184. ~~182.~~ "*Solicitation Materials*" means, as applicable, any documents, forms, ballots, notices, and other materials provided in connection with the solicitation of votes on the Plan, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

185. ~~183.~~ "*Sponsor*" means, collectively, Partners Group (USA) Inc. and its affiliates that hold Claims against or Interests in one or more of the Debtors.

186. ~~184.~~ "*Sponsor Loan Agreements*" means, collectively, those certain agreements, each dated October 17, 2022, among certain limited partners of CBI Parent, as co-issuers and Careismatic Brands, LLC (f/k/a Careismatic Brands, Inc.), as Borrower.

187. ~~185.~~ "*Sponsor Loan Claims*" means any Claim on account of any Sponsor Loan Agreement.

188. ~~186.~~ "*Subordinated Claims*" means, collectively, (i) the Sponsor Loan Claims; (ii) any Claims arising out of advisory services provided by the Sponsor to one or more of the Debtors pursuant to that certain Services Agreement among New Trojan Parent, Inc., Careismatic Brands, LLC, and Partners Group US Investment Services LLC dated as of January 6, 2021; and (iii) the M&R Claim.

189. ~~187.~~ "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

190. ~~188.~~ "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

191. ~~189.~~ "*Unimpaired*" means, with respect to a Class of Claims, Interests, or Intercompany Interests, a Class of Claims, Interests, or Intercompany Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

192. ~~190.~~ "*Vendor Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought against any of the Post-Effective Date Debtors' vendors not identified on the Excluded Vendor List, by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (ii) shall affect any party's consent rights over any of the Definitive Documents or any amendments thereto (both as that term is defined herein and as it is defined in the RSA); (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim, Interest, or Intercompany Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (viii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (x) captions and

headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (xi) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xiii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xiv) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xv) any immaterial effectuating provisions may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xvi) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Post-Effective Date Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document or instrument in the Plan Supplement, the terms of the relevant document or instrument in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

H.      *Consultation, Notice, Information, and Consent Rights.*

Notwithstanding anything herein to the contrary, all respective consultation, information, notice, and consent rights set forth in the RSA and the DIP Credit Agreement, with respect to the form and substance of the

Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein until such time as the RSA or the DIP Credit Agreement, as applicable, is terminated in accordance with its terms.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the RSA, as applicable, shall not impair such rights and obligations.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims, Interests, and Intercompany Interests set forth in Article III hereof.

*A.    Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of DIP Claims, Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by a Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Post-Effective Date Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Post-Effective Date Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

*B.    DIP Claims.*

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to alternative treatment, and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each Holder of an Allowed DIP Claim shall receive:  (a) such Holder's *pro rata* share of the Exit Term Loan Facility, subject to the DIP Premium Conversion Election Option, or (b) if there is an Acceptable Alternative Exit Facility, payment in Cash in full (including all DIP Premiums).  The DIP Claims shall be Allowed in the aggregate amount outstanding under the DIP Documents as of the Effective Date.  Any exercise of the DIP Premium Conversion Election Option shall be given effect in accordance with the terms of the DIP Credit Agreement, the Final DIP Order, and the Plan.  The agreements set forth in section 10.8 of the DIP Credit Agreement shall survive

the Effective Date, and, in the event the Exit Term Loan Facility is entered into, continue on the same terms set forth in the DIP Credit Agreement.

C.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.    *Professional Fee Claims.*

1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Post-Effective Date Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account.

2.    <u>Professional Fee Escrow Account</u>.

On the Effective Date, the Post-Effective Date Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtors, as applicable.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtors, without any further action or order of the Bankruptcy Court.

3.    <u>Professional Fee Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that may be Allowed pursuant to the Professional's final request for payment.  If a Professional does not provide an estimate, the Debtors or the Post-Effective Date Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional for the purpose of determining the Professional Fee Amount.

4.    <u>Post-Confirmation Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and/or the Post-Effective Date Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

18

E.      *Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses arising directly out of the implementation of the Plan and Consummation thereof without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS, INTERESTS,
## AND INTERCOMPANY INTERESTS

A.      *Classification of Claims, Interests, and Intercompany Interests.*

The Plan constitutes a separate Plan for each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims, Interests, and Intercompany Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim, Interest, or an Intercompany Interest, or any portion thereof, is classified in a particular Class only to the extent that such Claim, Interest, or Intercompany Interest or such portion thereof qualifies within the description of that Class and is classified in other Class(es) to the extent that such Claim, Interest, or Intercompany Interest or such portion thereof qualifies within the description of such other Class(es).  A Claim, Interest, or an Intercompany Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim, Interest, or Intercompany Interest is an Allowed Claim, Interest, or Intercompany Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against, and Interests and Intercompany Interests in, the Debtors pursuant to the Plan is as follows:

| Class | Claims, Interests, and Intercompany Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | First Priority Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims, Interests, and Intercompany Interests.*

Each Holder of an Allowed Claim, Interest, or Intercompany Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim, Interest, or Intercompany Interest, except to the extent different treatment is agreed to by the Post-Effective Date Debtors, and the Holder of such Allowed Claim, Interest, or Intercompany Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim, Interest, or Intercompany Interest, as applicable, shall receive such treatment on the Effective Date.

1.   Class 1 - Other Secured Claims

   (a)   *Classification*:  Class 1 consists of all Other Secured Claims.

   (b)   *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim and at the option of the Debtors:

      (i)    payment in full in Cash of its Allowed Other Secured Claim;

      (ii)   the collateral securing its Allowed Other Secured Claim;

      (iii)  Reinstatement of its Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code; or

      (iv)   such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

   (c)   *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Priority Claims

   (a)   *Classification*:  Class 2 consists of all Other Priority Claims.

   (b)   *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim, or as and when due in the ordinary course of business of the Post-Effective Date Debtors, or otherwise as consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

   (c)   *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.   Class 3 – First Priority Claims

   (a)   *Classification*:  Class 3 consists of all First Priority Claims.

   (b)   *Allowance*:  To the extent permitted by the Bankruptcy Code, (i) the First Lien Term Loan Claims are Allowed in the aggregate principal amount of $589,875,000.00, plus interest,

fees, expenses and other amounts arising and payable under and in accordance with the First Lien Credit Documents; and (ii) the First Lien RCF Claims are Allowed in the aggregate principal amount of $100,000,000.00, plus interest, fees, expenses and other amounts arising and payable under and in accordance with the First Lien Credit Documents.

(c)      *Treatment*:  Except to the extent that a Holder of an Allowed First Priority Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed First Priority Claim (or its designated Affiliate, managed fund or account, or other designee) shall receive, in full and final satisfaction of such Claim:  its *pro rata* share of 100% of the New Common Stock (subject to dilution from (a) MIP Equity, (b) DIP Premiums, and (c) the exercise of the Second Lien Warrants (if applicable), subject to the DIP Premium Conversion Election Option).

(d)      *Voting*:  Class 3 is Impaired under the Plan, and Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.   Class 4 – Second Lien Secured Claims

(a)      *Classification*:  Class 4 consists of all Second Lien Secured Claims.

(b)      *Allowance*:  If the Second Lien Condition is satisfied, the Second Lien Secured Claims are deemed Allowed in the aggregate principal amount of $85,000,000 plus interest, fees, expenses, and other amounts arising and payable under and in accordance with the Second Lien Credit Documents.

(c)      *Treatment*:  Except to the extent that a Holder of an Allowed Second Lien Secured Claim agrees to less favorable treatment on the Effective Date, each Holder of an Allowed Second Lien Secured Claim shall receive, in full and final satisfaction of such Claim: (a) if the Second Lien Condition is not satisfied, no recovery or distribution on account of its Allowed Second Lien Secured Claim; and (b) if the Second Lien Condition is satisfied, its *pro rata* share of the Second Lien Warrants.

(d)      *Voting*:  Class 4 is Impaired under the Plan, and Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.   Class 5 – General Unsecured Claims

(a)      *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim its *pro rata* share of the GUC Trust Net Assets.

(c)      *Voting*:  Class 5 is Impaired under the Plan, and Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.   Class 6 – Subordinated Claims

(a)      *Classification*:  Class 6 consists of all Subordinated Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Subordinated Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed

Subordinated Claim shall receive, in full and final satisfaction of such Claim, no recovery or distribution on account of such Allowed Subordinated Claims.

(c) *Voting*:  Class 6 is Impaired under the Plan.  Holders of Interests in Class 6 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7. Class 7 – Intercompany Claims

(a) *Classification*:  Class 7 consists of all Intercompany Claims.

(b) *Treatment*:  Subject to any specific provisions contained in the Plan Supplement, each Intercompany Claim shall be, at the option of the applicable Debtor or Post-Effective Date Debtor, with the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed), Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Claims, or such other treatment as determined by the Post-Effective Date Debtors and the Required Consenting First Lien Lenders.

(c) *Voting*:  Class 7 is Unimpaired if the Class 7 Claims are Reinstated or Impaired if the Class 7 Claims are cancelled.  Holders of Class 7 Claims are conclusively presumed to have either accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

8. Class 8 – Intercompany Interests

(a) *Classification*:  Class 8 consists of all Intercompany Interests.

(b) *Treatment*:  Subject to any specific provisions contained in the Plan Supplement, each Intercompany Interest shall be, at the option of the applicable Debtor or Post-Effective Date Debtor, in all cases with the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed), Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interests, or such other treatment as determined by the Post-Effective Date Debtors and the Required Consenting First Lien Lenders.

(c) *Voting*:  Class 8 is Unimpaired if the Class 8 Intercompany Interests are Reinstated or Impaired if the Class 8 Intercompany Interests are cancelled.  Holders of Class 8 Intercompany Interests are conclusively deemed to have either accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9. Class 9 – Interests

(a) *Classification*:  Class 9 consists of all Interests.

(b) *Treatment*:  On the Effective Date, all Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.  Holders of Interests shall receive no recovery or distribution on account of their Interests.

(c)      *Voting*:  Class 9 is Impaired under the Plan.  Holders of Interests in Class 9 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.      *Elimination of Vacant Classes.*

Any Class of Claims, Interests, or Intercompany Interests that does not have an Allowed Claim, Interest, or Intercompany Interest or a Claim, Interest, or Intercompany Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of New Common Stock, and in exchange for the agreement of the Debtors and/or the Post-Effective Date Debtors, as applicable, under the Plan to make certain distributions to the Holders of Allowed Claims.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims, Interests, or Intercompany Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims, Interests, or Intercompany Interests to render such Class of Claims, Interests, or Intercompany Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims, Interests, or Intercompany Interests or any Class of Claims, Interests, or Intercompany Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims, Interests, and Intercompany Interests.*

To the greatest extent permissible under the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and Intercompany Interests, and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and Intercompany Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and Holders of Claims and Interests.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

Before, on, and after the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall consummate the Restructuring Transactions and may take all actions (which, for the avoidance of doubt, shall be in form, substance, and structure reasonably acceptable to the Required Consenting First Lien Lenders) as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including, as applicable:  (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the other Definitive Documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, and the other Definitive Documents; (iii) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the execution and delivery of the Exit Facilities Documents and entry into the Exit Financing Arrangements; (v) the issuance and distribution of the New Common Stock as set forth in the Plan, including in connection with the DIP Premium Conversion Election Option; (vi) the execution and delivery of the Second Lien Warrants Documents and any filings related thereto, and the issuance of the Second Lien Warrants thereunder (if applicable); (vii) with respect to the Post-Effective Date Debtors, the implementation of the Management Incentive Plan and any distribution of MIP Equity; (viii) the execution and delivery of the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Post-Effective Date Debtor (including all actions to be taken, undertakings to be made, obligations to be incurred, and fees and expenses to be paid by the Debtors and/or the Post-Effective Date Debtors, as applicable); (ix) such other transactions that, in the reasonable business judgment of the Debtors or the Post-Effective Date Debtors, as applicable, the Required Consenting First Lien Lenders (in accordance with this Plan) are required to effectuate the Restructuring Transactions; and (x) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

The Confirmation Order shall authorize the Debtors, the Post-Effective Date Debtors, and the Consenting Creditors, as applicable, to undertake the Restructuring Transactions contemplated by this Plan and the Definitive Documents.

C.    *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor, as applicable, or to any other Person) of property under the Plan or pursuant to: (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; (v) the grant of collateral as security for the Exit Financing Arrangements; or (vi) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

D.    *The Recapitalization Transaction.*

1.    <u>The Post-Effective Date Debtors</u>.

On the Effective Date, the New Board shall be established, and each Post-Effective Date Debtor shall adopt its New Organizational Documents. The Post-Effective Date Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

2.    <u>Sources of Consideration for Plan Distributions</u>.

The Debtors shall fund or make distributions under the Plan, including the conveyance and funding of the GUC Trust Assets, as applicable, with: (i) the proceeds from the Exit Financing Arrangements, (ii) the New Common Stock, (iii) the Debtors' Cash on hand, (iv) the Second Lien Warrants; and (v) the proceeds of any Retained Causes of Action (if any). The GUC Trust shall fund its distributions, as contemplated by the Plan, from the GUC Trust Net Assets. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain Securities in connection with the Plan, including the New Common Stock and Second Lien Warrants (if applicable), is expected to be exempt from Securities Act registration, as described more fully in Article IV.D.9 below.

(a)    The Exit Financing Arrangements.

On the Effective Date, the Post-Effective Date Debtors shall enter into or assume, as applicable, the Exit Term Loan Facility or another Acceptable Alternative Exit Facility, each on the terms set forth in the applicable Exit Facilities Documents. Confirmation of the Plan shall be deemed approval of the Exit Financing Arrangements and the Exit Facilities Documents, as applicable, and all transactions contemplated thereby; all actions to be taken, undertakings to be made, and obligations to be incurred by the Post-Effective Date Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein; and authorization for the Post-Effective Date Debtors to enter into and execute the Exit Facilities Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Financing Arrangements. Execution

of the Exit Term Loan Facility Documents by the agent thereof shall be deemed to bind all Holders of DIP Claims as if each such Holder had executed the applicable Exit Facilities Documents with appropriate authorization.

In the event the Exit Term Loan Facility is entered into, the DIP Commitments giving rise to the DIP Claims shall be refinanced by means of a cashless settlement whereby such DIP Commitments shall be converted on a dollar-for-dollar basis into the Exit Term Loans in accordance with the DIP Documents and the Exit Facilities Documents (subject to the DIP Premium Conversion Election Option), and all collateral that secures the Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall be reaffirmed and ratified, and shall automatically secure all obligations under the Exit Term Loan Facility Documents.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facilities Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, valid, binding, and enforceable Liens on, and security interests in, the collateral specified thereunder in accordance with the terms of the applicable Exit Facilities Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the applicable Exit Facilities Documents, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Post-Effective Date Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(b)    Issuance of the New Common Stock.

Reorganized Careismatic shall be authorized to issue a certain number of shares of New Common Stock pursuant to its New Organizational Documents and any options or other equity awards, if any, reserved for the Management Incentive Plan and that may be issuable upon exercise of the Second Lien Warrants. The issuance of the New Common Stock shall be authorized without the need for any corporate action. On the Effective Date, the New Common Stock shall be issued and distributed pursuant to, and in accordance with, the Plan.

All of the shares of New Common Stock issued pursuant to the Plan (or upon exercise of the Second Lien Warrants, if applicable) shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Common Stock, including any New Common Stock issuable upon exercise of the Second Lien Warrants, shall be deemed to constitute its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms, without the need for execution by any party thereto other than the applicable Post-Effective Date Debtor(s). The New Common Stock will not be registered under the Securities Act or on any national securities exchange as of the Effective Date.

(c)    Issuance of the Second Lien Warrants.

Solely to the extent the Second Lien Condition is satisfied, on the Effective Date, Reorganized Careismatic will issue the Second Lien Warrants to Holders of Allowed Second Lien Secured Claims; *provided*, *however*, that a Holder of a Second Lien Claim may designate a trustee, agent, nominee, or one or more Affiliates to receive and hold the Second Lien Warrants on behalf of such Holder. All of the Second Lien Warrants that may be issued pursuant to this Plan and the shares of New Common Stock that may be issued upon exercise of the Second Lien Warrants shall be duly authorized without the need for any further corporate action and without any further action by

the Debtors or the Post-Effective Date Debtors, as applicable, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in this Plan, the New Organizational Documents, or the Second Lien Warrants Documents applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Post-Effective Date Debtor(s). The Second Lien Warrants Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of Second Lien Warrants shall be bound thereby (without any further action or signature) in all respects, whether or not such Holder has executed any Second Lien Warrants Documents. The Second Lien Warrants will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the DTC.

3. Vesting of Assets in the Post-Effective Date Debtors.

Except as otherwise provided in the Plan or the Exit Facilities Documents (if applicable), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action belonging to the Debtors or the Estates, and any property acquired by any of the Debtors under the Plan shall vest in each respective Post-Effective Date Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit Facilities Documents, and Liens securing Other Secured Claims that are Reinstated pursuant to the Plan, as applicable). On and after the Effective Date, except as otherwise provided herein, each Post-Effective Date Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, Intercompany Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4. Corporate Existence.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which such Debtor is incorporated or formed and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). On or after the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Post-Effective Date Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On or after the Effective Date, one or more of the Post-Effective Date Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5. Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (a) adoption or assumption, as applicable, of the obligations set forth in Article IV.D.11; (b) selection of the directors, officers, or managers for the Post-Effective Date Debtors; (c) the distribution of the New Common Stock; (d) entry into the Second Lien Warrants Documents and the issuance and distribution of the Second Lien Warrants; (e) implementation of the Restructuring Transactions; (f) entry into the Exit Facilities Documents and incurrence (or assumption, as applicable) of debt thereunder; (g) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (h) adoption of the New Organizational Documents; (i) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (j) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors, as applicable, in connection with the

Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security Holders, directors, officers, or managers of the Debtors or the Post-Effective Date Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors, including the New Common Stock, the New Organizational Documents, the Exit Financing Arrangements, the Exit Facilities Documents, the Second Lien Warrants, the Second Lien Warrants Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.D.9 shall be effective notwithstanding any requirements under non-bankruptcy law.

6.    New Organizational Documents.

On or immediately prior to the Effective Date, the New Organizational Documents shall be adopted or amended as may be necessary to effectuate the transactions contemplated by the Plan.  To the extent required under the Plan or applicable non-bankruptcy law, each of the Post-Effective Date Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document.  The New Organizational Documents will prohibit the issuance of non-voting equity securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.  For the avoidance of doubt, the New Organizational Documents shall be included in the Plan Supplement.  After the Effective Date, each Post-Effective Date Debtor may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents, and the Post-Effective Date Debtors may file such amended certificates or articles of incorporation, bylaws, or other applicable formation and constituent documents as permitted by the laws of the applicable states, provinces, or countries of incorporation and the New Organizational Documents.  For the avoidance of doubt, any claimant's acceptance of the New Common Stock shall be deemed to constitute its agreement to be bound by the New Organizational Documents without the need for execution by any party other than the Post-Effective Date Debtors.

7.    Directors and Officers of the Post-Effective Date Debtors.

As of the Effective Date, the term of the current members of the CBI Parent Transaction Committee, the Intermediate Transaction Committee, and the boards of directors of each of the applicable Debtor Entities shall expire, and the members for the initial term of the New Board shall be appointed.  The initial members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing, which shall be consistent in all respects with the Governance Term Sheet.  Each such member and officer of the Post-Effective Date Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Post-Effective Date Debtors.

8.    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Post-Effective Date Debtors and the New Board are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

9.    Certain Securities Law Matters.

Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, it is expected that the offering, issuance, and distribution of the New Common Stock and the Second Lien Warrants (as well as exercising the Second Lien Warrants) as contemplated herein shall be exempt from, among other things, the

registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

The shares of New Common Stock to be issued under the Plan, including any New Common Stock which may be issued in connection with the equitization of any DIP Premiums and including upon exercise of the Second Lien Warrants, as well as the Second Lien Warrants themselves, in each case, on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Common Stock or Second Lien Warrants in the New Organizational Documents or the Second Lien Warrants Documents, as applicable.

The shares of New Common Stock, including the MIP Equity, and upon exercise of the Second Lien Warrants, and the Second Lien Warrants themselves, in each case, that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

10. <u>Management Incentive Plan.</u>

On or as soon as reasonably practicable following the Effective Date, the New Board shall adopt and implement the Management Incentive Plan to be used to incentivize and compensate employees, directors, consultants, and other service providers of the Post-Effective Date Debtors, which Management Incentive Plan will include (i) the ability to grant restricted stock units, options, New Common Stock, or other rights exercisable, exchangeable, or convertible into New Common Stock (or equivalent Cash value thereof) representing up to 15.0% of the New Common Stock on a fully diluted basis and (ii) other terms and conditions customary for similar type equity plans as determined by the New Board in its sole discretion (including with respect to participants, allocation of awards, and vesting).

11. <u>Employment Obligations.</u>

All Assumed Plans shall be assumed by the Post-Effective Date Debtors as of the Effective Date and shall remain in place.  The Post-Effective Date Debtors shall continue to honor their obligations under such Assumed Plans; *provided* that (i) the Assumed Plans shall not include any equity or equity-based programs and awards, and (ii) each Assumed Plan shall be amended, to the extent applicable, to exclude any right(s) to receive future equity or equity-based awards provided for under any Assumed Plans, and such awards and rights described in the foregoing subsections (i) and (ii) shall be terminated as of the Effective Date for no consideration.  Without Bankruptcy Court approval or approval of the Required Consenting First Lien Lenders, the Debtors will not be permitted to establish any annual, short-term, or long-term compensation programs unless such program(s) are (i) in the ordinary course of business and consistent with past practice and (ii) performance-based (*i.e.*, are only eligible to be paid upon achievement of pre-established performance goals).

For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

The occurrence of the Effective Date shall not be deemed to result in an accelerated payment event or a "good reason" or other constructive termination event for purposes of any Debtor compensation or benefit plan; *provided* that employees who, as of the Effective Date, are party to Assumed Plans with a contractual entitlement to severance may, in their sole discretion, elect to treat the occurrence of the Effective Date as "good reason" or constructive termination event.

12.    Director and Officer Liability Insurance.

After the Effective Date, none of the ~~Post~~ Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies ~~(including any "tail policy")~~ in effect on ~~or after~~ the ~~Petition~~Effective Date~~,~~ with respect to conduct or events occurring prior to the Effective Date~~, other than those Indemnification Obligations or other employee obligations in favor of the Non-Released Parties which shall be deemed rejected~~, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any ~~such policy for the full term of such policy, to the extent set forth therein~~applicable D&O Liability Insurance Policies, subject in all respects to the terms and conditions of any applicable D&O Liability Insurance Policy, regardless of whether such directors and officers remain in such positions after the Effective Date.  For the avoidance of doubt, those Indemnification Obligations or other employee obligations in favor of the Non-Released Parties shall be deemed rejected in accordance with Article V.B.

E.      *Cancellation of Existing Agreements, Interests, and Intercompany Interests.*

On the Effective Date, except with respect to the Exit Facilities Documents (if applicable) or to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims, Interests, or Intercompany Interests, including credit agreements and indentures, shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the Agents shall be released from all duties and obligations thereunder.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding anything to the contrary herein, (x) any cancelled instruments, securities, and other documentation shall continue in effect solely for the purposes of allowing Holders of Claims to receive distributions as specified under the Plan, as applicable, and (y) any agreement that governs the rights of the Agents shall continue in effect solely for purposes of allowing the Agents, as applicable, to (i) receive any distributions under the Plan and distribute them to the Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, in each case in accordance with the terms of the Plan, (ii) maintain, enforce, or exercise any right to compensation, contribution, expense reimbursement, or indemnification that (1) may be owed to the applicable Agent under the Plan, the DIP Documents, or the First Lien Credit Documents (including by the Debtors or the Post-Effective Date Debtors), and that (2) by its terms survives termination of such document; (iii) maintain, enforce, or exercise its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable or allocable under the Plan to Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, (iv) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to any of the Agents or Holders of Allowed DIP Claims, Allowed First Priority Claims, or Allowed Second Lien Secured Claims, as applicable, and (v) without limiting the foregoing clause (ii), maintain, enforce, or exercise any right (that by its terms survive termination of the applicable document) to compensation, contribution, expense reimbursement, or indemnification of the Agents, as applicable, and any predecessor thereof, vis-à-vis parties other than the Debtors and the Post-Effective Date Debtors.

F.      *The GUC Trust.*

1.    General Terms.

On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deem to be vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  Under no circumstance shall the Debtors or the Post-Effective Date Debtors or any other party be required to contribute any additional assets to the GUC Trust other than the GUC Trust Assets.  After the Effective Date, neither the Debtors, Post-Effective Date Debtors, nor any other party shall have any interest in the GUC Trust Assets except as expressly set forth herein.

The GUC Trustee shall be the exclusive administrator of the assets of the GUC Trust (including the GUC Trust Assets) for purposes of section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving Class 5 General Unsecured Claims under the Plan for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement and with respect to the GUC Trust Claims. The Confirmation Order shall contain a finding that the GUC Trust has standing to pursue the GUC Trust Claims on behalf of the Debtors. The GUC Trustee shall be a party in interest under section 1109(b) of the Bankruptcy Code for purposes of the claims reconciliation process, including objecting to General Unsecured Claims; *provided* that the GUC Trustee may otherwise be a party in interest with the prior written consent of the Post-Effective Date Debtors or as otherwise ordered by the Bankruptcy Court.

The Debtors and the Post-Effective Date Debtors shall provide commercially reasonable access to the GUC Trustee and any professionals retained by the GUC Trust (at the sole cost and expense of the GUC Trust) to retrieve or access data reasonably necessary to prosecute the GUC Trust Claims; *provided* that the Debtors and Post-Effective Date Debtors shall not incur any expenses to provide such access to the GUC Trustee and any professionals retained by the GUC Trust. To the extent the GUC Trust receives information from the Debtors or the Post-Effective Date Debtors in connection with the General Unsecured Claims or the GUC Trust Claims, the GUC Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or the Post-Effective Date Debtors, as applicable, and the Debtors or the Post-Effective Date Debtors, as applicable, retain the sole right to waive their own privileges. Reasonable agreements will be made with the GUC Trustee such that confidential information and privileges are preserved, while permitting the GUC Trustee to use, as necessary to administer the GUC Trust, such information and privilege; absent such agreements, either the GUC Trustee or the Post-Effective Date Debtors may present the issue to the Bankruptcy Court for resolution.

The GUC Trust shall be administered by the GUC Trustee and governed by the GUC Trust Agreement, and the GUC Trustee shall have the sole power and authority to distribute the GUC Trust Net Assets to Holders of Allowed General Unsecured Claims in accordance with the treatment set forth in the Plan for Class 5. The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee; *provided* that, for the avoidance of doubt, any such indemnification shall be by the GUC Trust and the GUC Trustee alone and shall not implicate the Debtors or the Post-Effective Date Debtors. In the event of any conflict between the terms of the Plan and the GUC Trust Agreement, the terms of the Plan shall govern.

The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the responsibility and requisite power to reconcile General Unsecured Claims, including asserting any objections thereto. From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall, in the ordinary course of business and without the need for any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses from the GUC Trust Assets. The Debtors, the Post-Effective Date Debtors, and their Affiliates (and anyone acting on their behalf) shall not be responsible for any costs, fees, or expenses of the GUC Trust. The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, such time as all distributions required to be made by the GUC Trustee under the Plan have been made, but in no event later than the fifth anniversary of the Effective Date (unless extended by order of the Bankruptcy Court).

Upon dissolution of the GUC Trust, any remaining GUC Trust Net Assets shall be distributed to all Holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement as appropriate; *provided*, *however*, that if the GUC Trustee reasonably determines that such remaining GUC Trust Net Assets are insufficient to render a further distribution practicable, the GUC Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the GUC Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the Internal Revenue Code, (B) exempt from U.S. federal income tax under Section 501(a) of the Internal Revenue Code, (C) not a "private foundation" as defined in Section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the GUC Trust, and any insider of the GUC Trustee, and (iii) dissolve the GUC Trust.

2.    <u>Tax Treatment</u>.

In furtherance of this section of the Plan, (i) it is intended that the GUC Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 677 of the Internal Revenue Code consistent with the terms of the Plan, and accordingly, all assets held by the GUC Trust are intended to be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Post-Effective Date Debtors, as applicable, directly to the Holders of Allowed General Unsecured Claims in respect of such Claims, and then contributed by such Holders of Allowed General Unsecured Claims to the GUC Trust in exchange for their pro rata interests in the GUC Trust; (ii) the primary purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Net Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Post-Effective Date Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with such treatment described in provisos (i) and (ii) of this paragraph; (iv) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee) and prepared pursuant to this Plan for all U.S. federal income tax purposes; (v) the "taxable year" of the GUC Trust shall be the "calendar year" as such terms are defined in section 441 of the Internal Revenue Code; (vi) the GUC Trustee shall be responsible for filing all applicable tax returns for the GUC Trust and shall file such tax returns treating the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vii) the GUC Trustee shall annually send to each Holder of an interest in the GUC Trust a separate statement regarding such Holder's share of items of income, gain, loss, deduction or credit (including receipts and expenditures) of the GUC Trust as relevant for U.S. federal income tax purposes.

Subject to definitive guidance from the United States Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the United States Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (i) treat any portion of the GUC Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for United States state and local income tax purposes.  If a "disputed ownership fund" election is made, (i) the GUC Trust Assets will be subject to entity-level taxation and (ii) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report for U.S. federal (and, to the extent applicable state, and local) income tax purposes consistently with the foregoing.

Any taxes (including with respect to earned interest, if any) imposed on the GUC Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid by the GUC Trustee out of the assets of the GUC Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).  The GUC Trustee may request an expedited determination of taxes of the GUC Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-bankruptcy law, and the GUC Trustee shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

*G.*      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Post-Effective Date Debtors; *provided* that, notwithstanding anything contained herein, any Causes of Action against Non-Released Parties shall vest in the GUC Trust. The Post-Effective Date Debtors or the GUC Trustee, as applicable, shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors or the GUC Trust, as applicable, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Notwithstanding anything to the contrary herein, the Debtors or Post-Effective Date Debtors, as applicable, may not settle any Retained Cause of Action that would result in a Class 5 General Unsecured Claim without obtaining either (i) relief from a court with competent jurisdiction (and if such court is a court other than the Bankruptcy Court, the GUC Trustee shall be deemed, for purposes of such proposed settlement presented to such other court, a party-in-interest with standing to be heard in such other court for such purpose, solely to the extent that such settlement would result in a Class 5 General Unsecured Claim) or (ii) approval of the GUC Trustee.

**No Person or Entity may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and Post-Effective Date Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**

The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

*H.*      *Closing the Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Post-Effective Date Debtors shall be permitted, subject to the Filing of appropriate motion by the Post-Effective Date Debtors, to close all of the Chapter 11 Cases except one, and all contested matters relating to any Post-Effective Date Debtor, including objections to Claims, shall be administered and heard in such remaining Chapter 11 Case.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the date that is ninety (90) days after the Effective Date, each Executory Contract and Unexpired Lease, not previously assumed, assumed and assigned, or rejected shall be deemed automatically assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is identified on the Assumed Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be assumed as of the Effective Date; (ii) is identified on the Rejected Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be rejected as of the Effective Date; (iii) previously expired or terminated pursuant to its own terms; (iv) is the subject of a motion to reject Filed on or before the Effective Date; or (v) is an insurance policy (which shall be treated in accordance with Article V.E); *provided* that the assumption, assumption and assignment, or rejection of all Executory Contracts and Unexpired Leases shall be subject to the consent of the Required

Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed).  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  The Plan constitutes a motion for approval of the foregoing assumptions and assignments, and the Confirmation Order will constitute an order of the Bankruptcy Court granting such motion.

Notwithstanding anything to the contrary in the Plan, the Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List (i) to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List at any time prior to the Effective Date, and (ii) to add any Executory Contract or Unexpired Lease to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List not otherwise identified on the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List at any time through and including ninety (90) days after the Effective Date, the modifications thereto shall constitute assumption or rejection of such Executory Contract or Unexpired Lease as of the date of such modification, notwithstanding anything contained in this Article V.A; *provided* that, subject to Article V.C hereof, at any time during such ninety (90)-day period after the Effective Date, the Post-Effective Date Debtors shall remain liable for any and all amounts incurred under any such Executory Contract and Unexpired Lease not on the Rejected Executory Contracts and Unexpired Leases List in the ordinary course of business.  The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements of Executory Contracts and Unexpired Leases executed during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Except as set forth in Article IV.D.11, to the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.       *Indemnification Obligations.*

Consistent with applicable law, all Indemnification Obligations (other than with respect to Non-Released Parties) shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date; *provided* that the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtors' organization documents, or applicable agreements governing the Indemnification Obligations.  All such Indemnification Obligations shall be deemed and treated as Executory Contracts to be assumed and assigned in their entirety by the Debtors under the Plan to the Post-Effective Date Debtors; *provided* that, notwithstanding the foregoing, any Indemnification Obligation or other employee obligations in favor of the Non-Released Parties shall be deemed and treated as an Executory Contract that has been rejected by the Post-Effective Date Debtors under the Plan, and the Debtors and

the Post-Effective Date Debtors shall not honor, pay, or reimburse any Claims by a Non-Released Party for indemnification or reimbursement.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Counterparties to Executory Contracts or Unexpired Leases deemed rejected shall be served with a notice of rejection of their Executory Contracts and Unexpired Leases via service of the Confirmation Order and the Plan Supplement.  Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the earliest to occur of (i) thirty (30) days after the date of service of notice on the affected claimant of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, which notice shall set forth the date by which such Proofs of Claim must be filed, or (ii) thirty (30) days after service of notice on the affected claimant of any rejection that occurs after the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claims is not Filed with the Claims and Noticing Agent within such time will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtors, the Post-Effective Date Debtors, the Estates, the GUC Trust, or their property without the need for any objection by the Debtors, the Post-Effective Date Debtors, or the GUC Trust, as applicable, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim as set forth in Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Post-Effective Date Debtors shall pay all Cure Claims, if any, on the Effective Date.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to a proposed assumption, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee no later than thirty (30) days after the Effective Date or any other deadline that may be set by the Bankruptcy Court.  Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against any Post-Effective Date Debtor without the need for any objection by the Post-Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtors, as applicable, of the Cure; *provided* that nothing herein shall prevent the Post-Effective Date Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure.  The Post-Effective Date Debtors may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or the Post-Effective Date Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or the Post-Effective Date Debtors, as applicable, with respect to which such objection is timely Filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Post-Effective Date Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

E.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, any bar date order or notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening), grants an injunction, discharge or release, purports to limit or impact a setoff or recoupment right, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a) on the Effective Date, the Post-Effective Date Debtors, shall be deemed to have assumed all Insurance Policies that (i) are not listed on the Rejected Executory Contracts and Unexpired Leases List prior to the Confirmation Hearing, (ii) are D&O Liability Insurance Policies, and (iii) identify one or more of the Debtors as first named insured or counterparty thereto pursuant to sections 105 and 365 of the Bankruptcy Code; *provided* that on the Effective Date, the Post-Effective Date Debtors shall assume all Insurance Policies issued or entered into by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Illinois Union Insurance Company and each of their respective U.S.-based affiliates, predecessors, and successors, each solely in their capacities as insurers, in their entirety, pursuant to this Article V.E, and sections 105 and 365 of the Bankruptcy Code, and such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms;

~~Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies and (ii) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the Post-Effective Date Debtors. For the avoidance of doubt, the GUC Trust is not liable for any costs associated with insurance policies of the Debtors or the Post-Effective Date Debtors, including self-insured retentions, deductibles, or premium adjustments. Following the Effective Date, any such costs incurred under assumed insurance policies of the Debtors or those entered into by the Post-Effective Date Debtors shall be paid by the Post-Effective Date Debtors.~~(b) on and after the Effective Date, the Post-Effective Date Debtors shall remain liable in full for all of their and the Debtors' obligations under the Insurance Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, without the need or requirement for Insurers to file or serve any objection to a notice of proposed Cure amount (or lack of such notice) or file or serve a request, motion, or application for payment of such obligations, or Proof of Claim, Cure amount, or Administrative Claim;

(c) N~~n~~othing ~~in the Plan, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening),~~ (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any ~~of such~~ iInsurance ~~policies~~Policy; or (ii) alters or modifies the duty, if any, ~~that~~of the iInsurers ~~or third party administrators~~to pay claims covered by such iInsurance pPolicies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the ~~Post~~ Post-Effective Date Debtors) or draw on any collateral or security therefor~~.~~; and

(d) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Insurers under applicable non-bankruptcy law to proceed with their claims; (II) Insurers to administer, handle, defend, settle, and/or

pay, in the  ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against an Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Post-Effective Date Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Post-Effective Date Debtors, as applicable) under the Insurance Policies , in such order as the applicable Insurer may determine; and (IV) Insurers to cancel any Insurance Policy, and take other actions relating to the Insurance Policies (including effectuating a setoff or recoupment) to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

For the avoidance of doubt, the GUC Trust is not liable for any costs associated with insurance policies of the Debtors or the Post-Effective Date Debtors, including self-insured retentions, deductibles, or premium adjustments.  Following the Effective Date, any such costs incurred under assumed insurance policies of the Debtors or those entered into by the Post-Effective Date Debtors shall be paid by the Post-Effective Date Debtors.

F.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

G.      *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Post-Effective Date Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

H.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtors or the Post-Effective Date Debtors liable thereunder in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Interests (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  For the avoidance of doubt, distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

B.      *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent or the GUC Trustee, as applicable, on the Effective Date or at such other time as provided for in the Plan.  The Disbursing Agent and the GUC Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent or the GUC Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors or the GUC Trustee, respectively.

C.      *Rights and Powers of Disbursing Agent.*

1.      <u>Powers of the Disbursing Agent</u>.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      <u>Expenses Incurred on or After the Effective Date</u>.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      <u>Record Date for Distribution</u>.

On the Distribution Record Date, (i) the Claims Register and (ii) the loan registers maintained by each of the Agents, respectively, shall each be deemed closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register or such loan registers as of the close of business on the Distribution Record Date.

2.  Delivery of Distributions in General.

Except as otherwise provided in the Plan, the Disbursing Agent or the GUC Trustee, as applicable, shall make distributions to Holders of Allowed Claims or Interests as of the Distribution Record Date, or, if applicable, to such Holder's designee, as appropriate:  (a) at the address for each such Holder as indicated on the Debtors' records as of the Distribution Record Date (or of a designee designated by a Holder of First Priority Claims); (b) to the signatory set forth on any Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors or the GUC Trust have not been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Post-Effective Date Debtors, the applicable Disbursing Agent, or the GUC Trustee, as appropriate, after the date of any related Proof of Claim; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf; *provided* that the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors or the GUC Trustee, as applicable.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims or Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors, the Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trustee, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.  For the avoidance of doubt, distributions on account of Allowed General Unsecured Claims shall be governed by the GUC Trust Agreement.

All distributions to Holders of Allowed DIP Claims shall be deemed to be made by the DIP Agent.  Regardless of whether such distributions are made by the DIP Agent or by the Disbursing Agent at the reasonable discretion of the DIP Agent, any applicable charging lien shall attach to the property to be distributed to Holders of Allowed DIP Claims in the same manner as if such distributions were made through the DIP Agent.

3.  Minimum Distributions.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional shares.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock (including upon exercising any Second Lien Warrant) that is not a whole number, the actual distribution shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock or Second Lien Warrants to be distributed under the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.  Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent or the GUC Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtors, or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheatment, abandoned property, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder related to such property or interest in property shall be discharged and forever barred.  The Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trust shall have no obligation to attempt to locate a Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.  For the avoidance of doubt, treatment of undeliverable distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

E.    *Manner of Payment.*

Except as set forth herein, all distributions of New Common Stock and Second Lien Warrants to the Holders of applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Debtors or Post-Effective Date Debtors, as applicable.

Any distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent or the GUC Trustee, on behalf of the applicable Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable.

At the option of the Disbursing Agent or the GUC Trustee, as applicable, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in the GUC Trust Agreement or other applicable agreements.

F.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Post-Effective Date Debtors, and the GUC Trust reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances in a tax-efficient manner.

G.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.    *Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor may hold against the

Holder of such Allowed Claim to the extent such setoff or recoupment (other than for the DIP Claims held by the DIP Lenders) is either (i) agreed in amount among the relevant Post-Effective Date Debtor(s) and Holder of the Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against or Interests in one or more of the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder has provided notice of such recoupment in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.    *Claims Paid or Payable by Third Parties.*

    1.    <u>Claims Paid by Third Parties</u>.

The Debtors, the Post-Effective Date Debtors, and the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Post-Effective Date Debtor, or the GUC Trust, as applicable. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Post-Effective Date Debtor or the GUC Trust, as applicable, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Assets) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is fully repaid.

    2.    <u>Claims Payable by Third Parties</u>.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' ~~i~~Insurance ~~p~~Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such ~~i~~Insurance ~~p~~Policy. To the extent that one or more of the Debtors' ~~i~~Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction <u>or otherwise settled</u>), then immediately upon such ~~i~~Insurers' ~~agreement~~<u>satisfaction</u>, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    <u>Applicability of Insurance Policies</u>.

Except as otherwise provided in the Plan, ~~distributions~~<u>payments</u> to Holders of ~~Allowed~~ Claims <u>covered by Insurance Policies</u> shall be in accordance with the provisions of any applicable ~~i~~Insurance ~~p~~Policy. Notwithstanding anything to the contrary contained herein (including Article III ~~of the Plan~~), nothing ~~contained in the Plan~~ shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including ~~i~~Insurers, under any ~~policies of i~~<u>Insurance Policies</u>, nor shall anything contained herein constitute or be deemed a waiver by such ~~i~~Insurers of any <u>rights or</u> defenses, including coverage defenses, held by such ~~i~~Insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Disputed Claims Process.*

The Debtors, the Post-Effective Date Debtors, and the GUC Trust (solely with respect to General Unsecured Claims) shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  **Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of:  (a) the Effective Date or (b) the applicable claims bar date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable, without the need for any objection by the Debtor or Post-Effective Date Debtor, or the GUC Trust, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims.*

After the Effective Date and subject to the terms of the Plan, each of the Post-Effective Date Debtors and the GUC Trust, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim, Interest, or Intercompany Interest immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

**Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.**

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Post-Effective Date Debtors or the GUC Trust, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim, Interest, or Intercompany Interest that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim, Interest, or Intercompany Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, Interest, or Intercompany Interest, including during the litigation of any objection to any Disputed Claim, Interest, or Intercompany Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Disputed Claim, Interest, or Intercompany Interest that has been expunged from the Claims Register but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, Interest, or Intercompany Interest, that estimated amount shall constitute a maximum limitation on such Claim, Interest, or Intercompany Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors, the Post-Effective Date Debtors or the GUC Trust (with respect to General Unsecured Claims), as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim, Interest, or Intercompany Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has

Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Disputed Claim, Interest, or Intercompany Interest is estimated.

D.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Post-Effective Date Debtors or the GUC Trust (solely with respect to General Unsecured Claims) shall have the sole authority:  (i) to File, withdraw, or litigate to judgment, objections to Claims, Interests, or Intercompany Interests; (ii) to settle or compromise any Disputed Claim, Interest, or Intercompany Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Post-Effective Date Debtor or the GUC Trust, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, Interest, or Intercompany Interest, including the Causes of Action retained pursuant to the Plan.  Notwithstanding anything to the contrary herein, the Debtors or Post-Effective Date Debtors, as applicable, may not settle any Retained Cause of Action that would result in a Class 5 General Unsecured Claim without obtaining either (i) relief from a court with competent jurisdiction (and if such court is a court other than the Bankruptcy Court, the GUC Trustee shall be deemed, for purposes of such proposed settlement presented to such other court, a party-in-interest with standing to be heard in such other court for such purpose, solely to the extent that such settlement would result in a Class 5 General Unsecured Claim) or (ii) approval of the GUC Trustee.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the applicable Claims objection deadline, as such deadline may be extended from time to time.

F.      *Adjustment to Claims, Interests, or Intercompany Interests without Objection.*

**Any duplicate Claim, Interest, or Intercompany Interest or any Claim, Interest, or Intercompany Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Post-Effective Date Debtors and/or the GUC Trust (with respect to General Unsecured Claims), as applicable, without the Post-Effective Date Debtors or the GUC Trust, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim, Interest, or Intercompany Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.**

G.      *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Post-Effective Date Debtors may establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the Post-Effective Date Debtors consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim.  Following the final resolution of all Disputed Claims, any residual amounts in the Disputed Claims Reserve shall constitute Residual Cash and be immediately distributed to Holders of Allowed First Priority Claims.

H.      *Disallowance of Claims.*

All Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be disallowed pursuant to section 502(d) of the Bankruptcy Code if:  (1) the Entity, on the one hand, and the Debtors or the Post-Effective Date Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferees liable to turn over any property or monies under any of the

aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as provided herein or otherwise agreed to by the Post-Effective Date Debtors or the GUC Trust (with respect to the General Unsecured Claims), in their sole discretion, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed as of the Effective Date without further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claims has been deemed timely Filed by the Final Order.

I.     *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Post-Effective Date Debtors, or the GUC Trust (with respect to General Unsecured Claims), and any such new or amended Proof of Claim Filed that is not authorized before it is Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court absent prior Bankruptcy Court approval or agreement by the Post-Effective Date Debtors; *provided* that the foregoing shall not apply to Administrative Claims or claims Filed by Governmental Units.

J.     *Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim, Interest, or Intercompany Interest is Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim, Interest, or Intercompany Interest unless and until such Disputed Claim, Interest, or Intercompany Interest becomes an Allowed Claim, Interest, or Intercompany Interest.

K.     *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent (or the GUC Trustee, with respect to General Unsecured Claims) shall provide to the Holder of such Allowed Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim, or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests and Intercompany Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, and discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Post-Effective Date Debtors), Interests, Intercompany Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests and Intercompany Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Interests, or Intercompany Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims, Interests, or Intercompany Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the

Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such Claim has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than any Reinstated Claims), subject to the occurrence of the Effective Date.

**B.      *Release of Liens.***

**        Except as otherwise provided in the Exit Facilities Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns.  The Holders of such Secured Claim (and the applicable agents for such Holders) shall be directed, at the sole cost and expense of the Post-Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (or the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**C.      *Releases by the Debtors.***

**        Notwithstanding anything contained herein or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each of the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released ~~and discharged,~~ by and on behalf of the Debtors, their Estates, and, if applicable, the Post-Effective Date Debtors, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Post-Effective Date Debtors), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, their Estates, the Post-Effective Date Debtors, if applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or Intercompany Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtors and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants**

Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Exit Financing Arrangements, the Exit Facilities Documents, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the releases set forth above, release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claim, Interests, and Intercompany Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Post-Effective Date Debtors, asserting any claim or Cause of Action released pursuant to the Debtor Release.

**D.**     *Releases by Holders of Claims, Interests, and Intercompany Interests.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each of the Released Parties, will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released ~~and discharged,~~ by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or Intercompany Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtors and any Released Party, the distribution of any Cash or other property to any Released Party, the assertion or enforcement of rights or remedies against any Person, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Exit Financing Arrangements, the Exit Facilities Documents, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the Restructuring Transactions, the

solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) the Non-Released Parties, and (iii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, no Non-Released Party shall be a Releasing Party or a Released Party under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided in this Article VIII.D, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases provided in this Article VIII.D are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the releases contained in this Article VIII.D; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to this Article VIII.D.

E.    *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Second Lien Credit Documents, the New Organizational Documents, the New Common Stock, the Second Lien Warrants Documents, the Second Lien Warrants, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facilities Documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Post-Effective Date Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

For the avoidance of doubt, no Non-Released Party shall be an Exculpated Party under the Plan.

F.    *Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Intercompany Interests that have been released, discharged, or are

subject to exculpation are permanently enjoined, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in the Post-Effective Date Debtors has been liquidated and distributed in accordance with the terms of the Plan, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Intercompany Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Intercompany Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or Cause of Action constitutes a direct or derivative claim and represents a colorable claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party.; *provided, however,* **that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.**

Upon entry of the Confirmation Order, all Holders of Claims, Interests, or Intercompany Interests, and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim, Interest, or Intercompany Interests, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, Interest, or Intercompany Interest, as applicable, pursuant to the Plan, shall be subject to the injunction provisions set forth in the Plan.

For the avoidance of doubt, pending the consummation of the settlement of the M&R Action and receipt by M&R of the M&R Settlement Payment, nothing in the Plan, including, without limitation, the third-party release and injunction provisions, shall, and shall not be deemed to, prevent or impair the prosecution of the M&R Action against any non-Debtor defendants thereto (the "Non-Debtor Defendants"); *provided* that all rights are reserved as to ability of the Non-Debtor Defendants to assert defenses in the M&R Action, including, without limitation, that any claim in the M&R Action is derivative of the Debtors' rights or is otherwise property of the Debtors' Estates; *provided*, *further*, that the Bankruptcy Court shall retain exclusive jurisdiction with respect to the foregoing, as set forth in Article XI of the Plan.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Post-Effective Date Debtors, or another Entity with

whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the Holder of the relevant Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Restructuring Transactions shall have been implemented in accordance with the Restructuring Steps Plan in all material respects;

2.      the Bankruptcy Court shall have entered an order approving the Disclosure Statement, in form and substance consistent with the RSA and otherwise reasonably acceptable to the Required Consenting First Lien Lenders, which order shall be in full force and effect and such orders shall not have been stayed, modified, or vacated on appeal;

3.      the Bankruptcy Court shall have entered the Confirmation Order, which order shall have become a Final Order;

4.      the New Common Stock shall have been issued;

5.      solely to the extent the Second Lien Condition has occurred, the Second Lien Warrants shall have been issued in accordance with the Second Lien Warrants Documents;

6.      the RSA shall not have been terminated and shall remain in full force and effect;

7.      the GUC Trust Agreement shall have been executed and the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust;

8.      the DIP Facility shall be in full force and effect and there shall be no defaults under the DIP Documents continuing unless waived by the requisite DIP Lenders in accordance with the terms and conditions of the DIP Documents;

9.        the Plan Supplement, Definitive Documents, Plan, and all schedules, documents, supplements, and exhibits thereto, or the Exit Financing Arrangements, as applicable, shall have become effective and shall be in full force and effect;

10.        all Restructuring Expenses and any other professional fees and other amounts required to be paid pursuant to the RSA, in any Definitive Document, or in any order of the Bankruptcy Court related thereto shall have been paid in full and in Cash;

11.        any and all requisite governmental, regulatory, and third-party approvals and consents necessary to effectuate the Restructuring Transactions shall have been obtained, and all applicable waiting periods shall have expired;

12.        the Exit Facilities Documents, as applicable, shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the parties thereto (with the consent of the Required Consenting First Lien Lenders), other than such conditions that relate to the effectiveness of the Plan and related transactions, including payment of fees and expenses;

13.        all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court (including for the avoidance of doubt all professional fees and other amounts required to be paid pursuant to the RSA) shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court;

14.        the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed; and

15.        the DIP Claims shall have been satisfied in accordance with Article II.B.

B.      *Waiver of Conditions.*

The conditions to the Effective Date set forth in this Article IX, except for the conditions set forth in Article IX.A.7, 9, 14, and 15 of the Plan (each of which may not be waived without the consent of the affected parties), may be waived in whole or in part at any time by the Debtors only with the prior written consent (email shall suffice) of the Required Consenting First Lien Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims, Interests, or Intercompany Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims, Interests, or Intercompany Interests, or any other Entity in any respect; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

D.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Required Consenting First Lien Lenders, reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that the consent of the Cross-Holder Ad Hoc Group shall be required solely to the extent any such modification to the Plan seeks to modify the treatment of the Second Lien Claims under the Plan or otherwise disproportionately and negatively affects the Cross-Holder Ad Hoc Group in its capacity as Holders of First Lien Secured Claims or DIP Claims.  Subject to those restrictions on modifications set forth in the Plan, and the requirements of section 1127 of the Bankruptcy Code, rule 3019 of the Bankruptcy Rules, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify, the Plan with respect to such Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan.*

The Debtors, with the consent of the Required Consenting First Lien Lenders, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Intercompany Interests, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including the amount of Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.        ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

7.        enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Plan Supplement;

8.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in the Plan, including under Article VIII hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by Holders of Claims pursuant to Article VI.K hereof;

13.        enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the RSA;

15.        enter an order concluding or closing the Chapter 11 Cases;

16.        adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.        consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.           determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.           hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.           hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.           hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

22.           adjudicate, decide, or resolve any and all matters related to the GUC Trust or the GUC Trust Assets;

23.           enforce all orders previously entered by the Bankruptcy Court; and

24.           hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the Exit Facilities Documents shall be governed by the jurisdictional provisions therein, and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all Holders of Claims, Interests, or Intercompany Interests (irrespective of whether such Claims, Interests, or Intercompany Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or Intercompany Interest has voted on the Plan.

*B.      Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the RSA.  The Debtors or the Post-Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.      Payment of Statutory Fees.*

All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by each of the Debtors or the Post-Effective Date Debtors, as applicable, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) on the Effective Date, and following the Effective Date, the Post-Effective Date

Debtors (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until such Post-Effective Date Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The Post-Effective Date Debtors shall File quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each of the Debtors and the Post-Effective Date Debtors are jointly and severally liable for the payment of quarterly fees and shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Expense Claims and shall not be treated as providing any release under the Plan.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The dissolution of the Committee does not limit the rights and obligation of the Committee and its Professionals to prepare and if necessary, defend, final fee applications for services rendered prior to the Effective Date.  The Post-Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims, Interests, or Intercompany Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.      if to the Debtors, to:

Careismatic Brands, LLC
Attention:       Sidharth Lakhani, Chief Executive Officer; Sean Bogue, Chief Financial Officer
E-mail address:  slakhani@careismatic.com
                 sbogue@careismatic.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:       Joshua A. Sussberg
E-mail addresses: jsussberg@kirkland.com

-and-

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Attention:        Chad J. Husnick
E-mail address:   chusnick@kirkland.com

2.    if to the First Lien Ad Hoc Group, to:

Milbank LLP
55 Hudson Yards
New York, NY 10001
Attention:        Evan R. Fleck; Nelly Almeida
E-mail address:   efleck@milbank.com
                  nalmeida@milbank.com

3.    if to the Cross-Holder Ad Hoc Group, to:

King & Spalding LLP
1185 6th Avenue
New York, NY 10036
Attention:        Peter Montoni; Matt Warren
E-mail address:   pmontoni@kslaw.com;
                  mwarren@kslaw.com

4.    if to the Sponsor, to:

Partners Group (USA) Inc.
1114 Avenue of the Americas, 37th Floor
New York, NY 10036
Attention:        Philip Wolf
E-mail address:   philip.wolf@partnersgroup.com

with copies to:

Ropes & Gray LLP
1211 6th Avenue
New York, NY 10036
Attention:        Gregg Galardi
E-mail address:   gregg.galardi@ropesgray.com

After the Effective Date, the Debtors have authority to notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H.    Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the

Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.donlinrecano.com/clients or the Bankruptcy Court's website at www.njb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan; and (iii) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties nor individuals nor the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim, Interest, or Intercompany Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim, Interest, or Intercompany Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the

Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Creditor Default.*

An act or omission by a Holder of a Claim or Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan.  Upon an event of default, the Post-Effective Date Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Post-Effective Date Debtors in remedying such default.  Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may:  (a) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Post-Effective Date Debtors in an amount, including interest, if applicable, to compensate the Post-Effective Date Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

*[Remainder of page intentionally left blank.]*

Dated:  May ~~16~~24, 2024

Careismatic Brands, LLC
on behalf of itself and all other Debtors

_/s/ Kent Percy_
     Name:    Kent Percy
     Title:    Chief Restructuring Officer