**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*, | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT FOR**
**THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF**
**CAREISMATIC BRANDS, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)**

   **PLEASE TAKE NOTICE** that, in accordance with the *Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)* [Docket No. 744] (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "Plan"),[2] on May 16, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors")

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

[2] Capitalized terms used but not defined in herein have the meanings given to them in the Plan.

filed the *Plan Supplement for the Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 698] (the "Plan Supplement") with the United States Bankruptcy Court for the District of New Jersey (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this amendment to the Plan Supplement (this "Amended Plan Supplement") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that this Amended Plan Supplement includes current drafts of the following documents (certain of which continue to be negotiated pursuant to the terms of the Plan by the Debtors and the Consenting Stakeholders), as may be modified, amended, or supplement from time to time:

| | |
|---|---|
| **Exhibit A** | New Organizational Documents |
| **Exhibit A-1** | Redline to New Organizational Documents Filed May 16, 2024 |
| **Exhibit B** | Identities of the Members of the New Board |
| **Exhibit E** | Restructuring Steps Plan |
| **Exhibit F** | Schedule of Assumed Executory Contracts and Unexpired Leases |
| **Exhibit F-1** | Redline to Schedule of Assumed Executory Contracts and Unexpired Leases Filed May 16, 2024 |
| **Exhibit G** | Schedule of Rejected Executory Contracts and Unexpired Leases |
| **Exhibit G-1** | Redline to Schedule of Rejected Executory Contracts and Unexpired Leases Filed May 16, 2024 |

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights, with the consent of any applicable counterparties to the extent required under the Plan and/or the RSA, to alter, amend, modify, or supplement this Amended Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan; *provided* that if any document in this Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect, the Debtors will file a redline of such document with the Court. The final version of any such document may contain material differences from the version filed herewith.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in this Amended Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in this Amended Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek confirmation of the Plan at the Confirmation Hearing to be held before the Honorable Vincent F. Papalia, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102, Courtroom 3B, on **May 30, 2024, at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Donlin, Recano & Company, Inc. at https://www.donlinrecano.com/careismatic.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: May 29, 2024

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          chusnick@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel to the Debtors and Debtors in*
*Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREISMATIC BRANDS, LLC, *et al.*, | Case No. 24-10561 (VFP) |
| Debtors.[1] | (Jointly Administered) |

**AMENDED PLAN SUPPLEMENT**
**FOR THE SECOND AMENDED JOINT PLAN OF**
**REORGANIZATION OF CAREISMATIC BRANDS, LLC**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11**
**OF THE BANKRUPTCY CODE (FURTHER TECHNICAL MODIFICATIONS)**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

# Table of Contents[1]

**Exhibit A**       New Organizational Documents

**Exhibit A-1**    Redline to New Organizational Documents Filed May 16, 2024

**Exhibit B**       Identities of the Members of the New Board

**Exhibit E**       Restructuring Steps Plan

**Exhibit F**       Schedule of Assumed Executory Contracts and Unexpired Leases

**Exhibit F-1**    Redline to Schedule of Assumed Executory Contracts and Unexpired Leases Filed May 16, 2024

**Exhibit G**       Schedule of Rejected Executory Contracts and Unexpired Leases

**Exhibit G-1**    Redline to Schedule of Rejected Executory Contracts and Unexpired Leases Filed May 16, 2024

---

[1]    Capitalized terms used but not defined in herein have the meanings given to them in the Plan.

## Exhibit A

### New Organizational Documents

This **Exhibit A** includes the following New Organizational Documents of the Post-Effective Date Debtors:

Exhibit A(i):  New Limited Liability Company Agreement

Certain documents, or portions thereof, contained or to be contained in this **Exhibit A** and this Amended Plan Supplement remain subject to continued review, as applicable, by the Debtors and the Required Consenting First Lien Lenders, and the final version of any such document may contain material differences from the version filed herewith.  The respective rights of the Debtors and the Required Consenting First Lien Lenders, as applicable, are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement this Amended Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan, or by order of the Court; *provided* that if any document in this Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Court.

**<u>Exhibit A(i)</u>**

**New Limited Liability Company Agreement**

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

OF

[REORGANIZED CAREISMATIC BRANDS, LLC]

Dated as of [●]

# TABLE OF CONTENTS

**Page**

Article I Defined Terms ........................................................................................................ 1

    1.1     Definitions ........................................................................................................... 1
    1.2     Rules of Construction .................................................................................... 14

Article II Organization ....................................................................................................... 14

    2.1     Formation of the Company ........................................................................... 14
    2.2     Name .................................................................................................................. 14
    2.3     Purpose .............................................................................................................. 15
    2.4     Registered Office; Registered Agent; Principal Office; Other Offices......... 15
    2.5     Interest of Members; Property of Company .............................................. 15
    2.6     Limited Liability ............................................................................................. 15
    2.7     Term................................................................................................................... 15

Article III Contributions of Members .............................................................................. 15

    3.1     Initial Contributions ..................................................................................... 15
    3.2     Additional Capital Contributions ............................................................... 15
    3.3     Return of Contributions ............................................................................... 16
    3.4     Interest on Capital Contributions .............................................................. 16
    3.5     Advances by Members.................................................................................... 16
    3.6     Common Interests .......................................................................................... 16
    3.7     Incentive Interests. ........................................................................................ 17
    3.8     Transfer Books. ............................................................................................... 18
    3.9     Certificate Signature ...................................................................................... 18

Article IV Distributions; Distributions in Kind ............................................................ 19

    4.1     Distributions..................................................................................................... 19
    4.2     Limitations on Distributions ....................................................................... 19
    4.3     Reserves ............................................................................................................ 19

Article V Transferability ................................................................................................... 20

    5.1     Transfer Generally ......................................................................................... 20
    5.2     Right of First Offer ........................................................................................ 20
    5.3     Tag-Along Rights ........................................................................................... 22
    5.4     Drag-Along Right ........................................................................................... 24
    5.5     Company Sale Right. ...................................................................................... 26
    5.6     Preemptive Rights .......................................................................................... 27
    5.7     Debt Preemptive Rights ............................................................................... 29
    5.8     General Restrictions on Transfer; Admission of New Members ......................... 30
    5.9     Resignation ...................................................................................................... 30
    5.10    Record of Members ........................................................................................ 30
    5.11    Registration Rights ........................................................................................ 30
    5.12    Mandatory Repurchase of Interests ........................................................... 30

Article VI Governance ....................................................................................................... 31

    6.1     Board of Directors ......................................................................................... 31
    6.2     Appointment of Directors ............................................................................ 31
    6.3     Designation Right .......................................................................................... 32
    6.4     Removal of Directors..................................................................................... 33

6.5     Vacancies ..................................................................................................... 33
6.6     Authority and Duties of the Board and Board Committees ............................... 34
6.7     Meetings; Telephonic Meetings ...................................................................... 34
6.8     Quorum; Acts of the Board and Board Committees ......................................... 34
6.9     Observer Rights .............................................................................................. 35
6.10    Special Approval Requirements ...................................................................... 36
6.11    Qualified IPO; Conversion to a Corporation .................................................. 38
6.12    Officers ......................................................................................................... 38
6.13    Officers as Agents; Duties of Officers ............................................................ 38
6.14    Powers of Members ........................................................................................ 38
6.15    Confidentiality ............................................................................................... 39
6.16    Regulated Holders .......................................................................................... 39
6.17    Partnership Representative .............................................................................. 40

Article VII Powers, Duties and Restrictions of the Company and the Members; Other Provisions
        Relating to the Members ................................................................................. 40

7.1     Powers of the Company .................................................................................. 40
7.2     Compensation of the Members and Directors .................................................. 40
7.3     Cessation of Status as a Member ..................................................................... 41
7.4     Other Activities of the Members ..................................................................... 41

Article VIII Books, Records and Accounting; Information Rights ......................................... 41

8.1     Books of Account; Access ............................................................................... 41
8.2     Deposits of Funds .......................................................................................... 41
8.3     Information Rights .......................................................................................... 41
8.4     Information Rights of the Company ................................................................. 43

Article IX Term and Dissolution ......................................................................................... 43

9.1     Term .............................................................................................................. 43
9.2     Dissolution ..................................................................................................... 43
9.3     Application and Distribution of Assets ............................................................ 44
9.4     Termination of the LLC .................................................................................. 44

Article X Representations and Warranties of Members ......................................................... 44

10.1    Authority ....................................................................................................... 45
10.2    Binding Obligations ....................................................................................... 45
10.3    No Conflict .................................................................................................... 45
10.4    Purchase Entirely for Own Account ................................................................ 45
10.5    No Registration .............................................................................................. 45
10.6    Investment Experience .................................................................................... 45
10.7    Accredited Investor ........................................................................................ 45
10.8    Restricted Securities ....................................................................................... 45
10.9    Nonreliance .................................................................................................... 46

Article XI Allocation of Net Income and Net Loss ............................................................... 46

11.1    General .......................................................................................................... 46
11.2    Special Allocations ........................................................................................ 46
11.3    Allocations for Income Tax Purposes .............................................................. 48
11.4    Other Allocation Rules ................................................................................... 49
11.5    Withholding and Entity-Level Taxes ............................................................... 49

Article XII General Provisions ........................................................................................... 50

    12.1    Exculpation and Indemnification ................................................................... 50
    12.2    Entire Agreement; Amendments ................................................................... 51
    12.3    Avoidance of Provisions ............................................................................... 52
    12.4    Binding Agreement ....................................................................................... 52
    12.5    Notices .......................................................................................................... 52
    12.6    Governing Law ............................................................................................. 52
    12.7    Consent to Jurisdiction; WAIVER OF JURY TRIAL .................................. 52
    12.8    Construction .................................................................................................. 53
    12.9    Severability .................................................................................................. 53
    12.10  Counterparts, Electronic Copies ................................................................... 53
    12.11  Survival ......................................................................................................... 53
    12.12  Termination ................................................................................................... 53
    12.13  Special Power of Attorney ............................................................................ 53
    12.14  Further Assurance ......................................................................................... 54

ANNEX I        REGISTRATION RIGHTS

SCHEDULE I COMPETITORS
SCHEDULE II BOARD OF DIRECTORS

EXHIBIT A    CERTIFICATE OF FORMATION
EXHIBIT B    INTERESTS OF MEMBERS
EXHIBIT C    CAPITAL CONTRIBUTIONS
EXHIBIT D    FORM OF JOINDER AGREEMENT
EXHIBIT E    FORM OF WARRANT

### AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
### OF REORGANIZED CAREISMATIC BRANDS, LLC

This Amended and Restated Limited Liability Company Agreement of [Reorganized Careismatic Brands, LLC] (the "Company") is made as of [●], 2024 (the "Effective Date"), by and among the Members listed on the signature pages hereto. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Section 1.1.

<u>Recitals</u>

WHEREAS, on [●], the Company was formed as a limited liability company pursuant to the Act, by causing to be filed a Certificate of Formation of the Company, attached hereto as Exhibit A (the "Certificate"), with the office of the Secretary of State of the State of Delaware;

WHEREAS, [●] is party to the limited liability company agreement of the Company, dated as of [●] (the "Original Agreement");

WHEREAS, Careismatic Brands, LLC, along with each of its Affiliates (the "Debtors"), commenced voluntary reorganization cases (the "Chapter 11 Cases") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 in the United States Bankruptcy Court, District of New Jersey, pursuant to a Restructuring Support Agreement by and between the Debtors and certain Holders of Allowed First Lien Claims, filed January 23, 2024 (the "RSA"), which sets forth the plan of reorganization (the "Plan");

WHEREAS, the Company was formed for the purpose of reorganizing Careismatic Brands, LLC and its affiliates, and in connection therewith and pursuant to the Plan and the Confirmation Order (as applicable), on the "Effective Date" under the Plan (i) the Holders of Allowed First Lien Claims will receive common equity in [Reorganized Careismatic Brands Grandparent, LLC] (the "Grandparent Equity") and immediately thereafter pursuant to the Plan, the Holders of Allowed First Lien Claims will contribute the Grandparent Equity to this Company in exchange for Common Interests, and (ii) the Holders of Second Lien Claims will receive warrants to purchase Grandparent Equity (the "Grandparent Warrants"), and immediately thereafter pursuant to the Plan, the Holders of Second Lien Claims will contribute the Grandparent Warrants to the Company, and in exchange, the Company will issue warrants in the form attached hereto as Exhibit E to the Holders of Second Lien Claims (the "Warrants") that entitle the holders thereof to acquire an additional eight and one half percent (8.5%) of the Common Interests, in the aggregate, exercisable at a share price that assumes a transaction enterprise value of $818,000,000 (collectively, the "Transaction");

WHEREAS, the Company and the Members desires to amend and restate the Original Agreement in its entirety, and pursuant to the Plan, this Agreement shall become effective as of the date hereof.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members hereby agree as follows:

### Article I
### Defined Terms

1.1    <u>Definitions</u>.  The following terms shall have the following meanings as used in this Agreement:

"<u>Accelerated Acquirer</u>" shall have the meaning set forth in <u>Section 5.6(g)</u>.

"<u>Act</u>" shall mean the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 <u>et seq.</u>, as amended and in effect from time to time and any successor statute.

"<u>Additional Capital Contribution</u>" shall have the meaning set forth in <u>Section 3.2(a)</u>.

"<u>Adjusted Capital Account</u>" means, with respect to any Member, the balance in such Member's Capital Account as of the end of the relevant Fiscal Year or portion thereof, after:

(a)     crediting to such Capital Account any amounts that such Member is obligated to restore to the Company pursuant to the terms of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulation § 1.704-2(g)(1) and (i)(5); and

(b)     debiting from such Capital Account the items described in Regulation § 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

The foregoing definition of "Adjusted Capital Account" is intended to comply with the provisions of Regulation § 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"<u>Affiliate</u>" shall mean, with respect to a specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified, including a Related Fund of such Person; <u>provided</u> that for purposes of this Agreement, no Member shall be deemed an Affiliate of the Company or any of its Subsidiaries. For purposes of this definition, the term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise. For purposes of this Agreement, Jefferies LLC and its Affiliates shall be deemed to be Affiliates of Jefferies Finance LLC and its Affiliates.

"<u>Agreement</u>" shall mean this Limited Liability Company Operating Agreement, including all annexes and exhibits hereto, as amended, restated or supplemented from time to time in accordance with the terms hereof.

"<u>Allocated Share</u>" shall have the meaning set forth in <u>Section 5.7(a)</u>.

"<u>Available Cash</u>" at the time of any proposed distribution shall mean the excess, as determined by the Board, of (a) all unrestricted cash and cash equivalents then held by the Company to the extent not otherwise required to pay the Company's expenses that have then accrued and are due and owing and all outstanding and unpaid current obligations of the Company as of such time over (b) the amount of reserves established by the Company in accordance with <u>Section 4.3</u>.

"<u>Award Agreement</u>" means any agreement that the Company may enter into with any of its officers, directors, consultants or employees on or after the date hereof in connection with any management incentive plan approved by the Board and adopted in accordance with this Agreement pursuant to which the Company grants such individuals, directly or indirectly, interests in Management Incentive Interests.

"<u>Banking Laws</u>" shall mean all laws, statutes, rules, regulations, regulatory guidance, ordinances and other pronouncements having the effect of law applicable to a Regulated Holder, including the U.S. Bank Holding Company Act and its implementing regulations and rules, 12 U.S.C. § 1841 <u>et seq.</u>

"Bankruptcy" shall have the meaning ascribed thereto in Sections 18-101(1) and 18-304 of the Act.

"Barclays" shall mean Barclays Bank PLC.

"Board" shall have the meaning set forth in Section 6.1(a).

"Business Day" shall mean any day other than a Saturday, Sunday or another day on which commercial banks in New York are required or permitted under applicable laws or regulations to close.

"Capital Account" means with respect to each Member the account established and maintained for such Member on the books of the Company in compliance with Regulation §§ 1.704-1(b)(2)(iv) and 1.704-2, as amended.

"Capital Contribution" shall mean, at any date, the amount of all capital contributions contributed by a Member to the Company in its capacity as such at or prior to such date, which may be in the form of cash or property.

"CEO Director" shall have the meaning set forth in Section 6.2(a).

"Certificate" shall have the meaning set forth in the recitals.

"Chairman" shall have the meaning set forth in Section 6.8(c).

"Chapter 11 Cases" shall have the meaning set forth in the recitals.

"Chief Executive Officer" shall mean the chief executive officer of the Company.

"Claim" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Common Director" shall have the meaning set forth in Section 6.3(a).

"Common Interests" shall mean the limited liability company interest(s) of a Member in the Company representing the rights of a Member to distributions (liquidating or otherwise) and any and all of the other benefits to which such Member may be entitled as provided in this Agreement and in the Act, together with the obligations of such Member to comply with all the provisions of this Agreement and of the Act, other than Incentive Interests.

"Company" shall have the meaning set forth in the preamble.

"Company Confidential Information" shall have the meaning set forth in Section 6.15.

"Company ROFO Notice" shall have the meaning set forth in Section 5.2(c).

"Company Undersubscription Notice" shall have the meaning set forth in Section 5.2(d).

"Compelled Members" shall have the meaning set forth in Section 5.4(a).

"Competitor" shall mean any Person set forth on Schedule I and its Affiliates, provided that Schedule I may be modified by the Board in good faith from time to time to add Persons who are engaged, whether directly or indirectly, in the business of selling clothing to retail consumers in North America or to

remove Persons who are no longer engaged in such business; _provided_, further, that the Board may not modify Schedule I to add any Person who is a Member as of the Effective Date.

"Confirmation Order" shall have the meaning set forth in the Plan.

"Confirmation Date" means the date on which the Confirmation Order is entered.

"Consulting Agreement" shall mean that certain consulting agreement contemplated to be entered into by the Company or its Subsidiaries with Nexus or one of its Affiliates following the Effective Date.

"Conversion" shall have the meaning set forth in Section 3.7(d).

"Covered Persons" shall have the meaning set forth in Section 12.1(a).

"D&O Insurance Policy" shall have the meaning set forth in Section 12.1(d).

"Debt Exercise Notice" shall have the meaning set forth in Section 5.7(b).

"Debt Preemptive Rights Notice" shall have the meaning set forth in Section 5.7(a).

"Debt Right Holder" shall have the meaning set forth in Section 5.7(a).

"Debtors" shall have the meaning set forth in the recitals.

"Depreciation" means, for each Fiscal Year or other taxable period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable for U.S. federal income tax purposes with respect to an asset for such Fiscal Year or other taxable period, except that (a) with respect to any asset the Gross Asset Value of which differs from its adjusted tax basis for U.S. federal income tax purposes at the beginning of such Fiscal Year or other taxable period and which difference is being eliminated by use of the "remedial allocation method" as defined by Regulation § 1.704-3(d), Depreciation for such Fiscal Year or other taxable period shall be the amount of book basis recovered for such Fiscal Year or other taxable period under the rules prescribed by Regulation § 1.704-3(d)(2), and (b) with respect to any other asset the Gross Asset Value of which differs from its adjusted tax basis for U.S. federal income tax purposes at the beginning of such Fiscal Year or other taxable period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the U.S. federal income tax depreciation, amortization, or other cost recovery deduction allowable for such Fiscal Year or other taxable period bears to such beginning adjusted tax basis; _provided_, _however_, in the case of clause (b) above, if the adjusted tax basis for U.S. federal income tax purposes of an asset at the beginning of such Fiscal Year or other taxable period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Board.

"Depreciation Recapture" means the portion of any gain from the disposition of an asset of the Company that, for U.S. federal income tax purposes, (a) is treated as ordinary income under Code Section 1245, (b) is treated as ordinary income under Code Section 1250 or (c) is "unrecaptured section 1250 gain" as such term is defined in Code Section 1(h).

"Designated Individual" means the designated individual appointed by the Company pursuant to Regulation § 301.6223-1 (and any similar provision of state, local or foreign law).

"Designation Right" shall have the meaning set forth in Section 6.3(a).

4

"DIP Facility" shall have the meaning set forth in the Term Sheet.

"Director" shall have the meaning set forth in Section 6.1(a).

"Drag-Along Notice" shall have the meaning set forth in Section 5.4(b).

"Drag-Along Sale" shall have the meaning set forth in Section 5.4(a).

"Drag-Along Transaction" shall have the meaning set forth in Section 5.4(a).

"Effective Date" shall have the meaning set forth in the preamble.

"Effective Date Capital Contribution" shall mean an amount equal to the equity value of the Company as of the Effective Date.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended and any successor statute and the rules and regulations of the SEC thereunder, in each case as in effect from time to time.

"Excluded Issuances" shall mean any issuance of any equity interests (including Common Interests and Incentive Interests) or any securities that are convertible into, or exercisable or exchangeable for, such equity interests or indebtedness (a) to Persons who are, or who are becoming, employees, managers, directors or consultants of the Company or any of its Subsidiaries in connection with the Consulting Agreement, an Award Agreement or any management incentive plans approved by the Board and adopted in accordance with this Agreement, and any equity interests issued thereunder, (b) as part of or in connection with any employee compensation, (c) as consideration for an acquisition, merger, joint venture or joint venture partnership or similar transaction duly approved by the Board; provided, however, that such acquisition, merger, joint venture, joint venture partnership or similar transaction is not with an Affiliate of the Company or any Related Fund of such Affiliate, (d) pursuant to conversion or exchange rights included in securities issued by the Company on or after the Effective Date that was made in accordance with this Agreement, (e) in connection with an equity interest split, division, dividend or similar transaction or reorganization to the extent (i) made *pro rata* with respect to all outstanding Common Interests and (ii) duly approved by the Board, (f) expressly contemplated by the Plan, (g) issued by the company or a Subsidiary of the Company, to the Company or another wholly owned direct or indirect Subsidiary of the Company, as applicable, or (i) [Common Interests] issuable upon conversion or exercise of the Warrants issued or to be issued to the Holders of Second Lien Claims pursuant to the Plan and the Confirmation Order.

"Exempt Person" shall mean, with respect to any Person, any Affiliate of such Person and such Person's or such Person's Affiliates' respective Representatives, in each case, who (a) has a reasonable need to know the contents of the Company Confidential Information or Member Confidential Information, as the case may be, (b) is informed of the confidential nature of the Company Confidential Information or Member Confidential Information and (c) agrees to keep such information confidential in accordance with the terms of this Agreement.

"Exercising Rightholders" shall have the meaning set forth in Section 5.2(d).

"Exiting Designating Member" shall have the meaning set forth in Section 6.2(c).

"Fair Market Value" shall mean (i) in the case of Publicly Traded Securities, the average closing price on the applicable trading exchange or quotation system on each trading day during the five (5) trading day period ending on the trading day prior to the measurement date, (ii) in the case of equity securities other than Publicly Traded Securities, the fair market value per equity security, as determined on a reasonable

basis and in good faith by the Board, but without regard for any liquidity or minority discounts, or (iii) in the case of any other asset or property, the fair market value of such asset or property, as determined on a reasonable basis and in good faith by the Board.

"Final Offer Notice" shall have the meaning set forth in Section 5.2(f).

"First Lien Claims" shall have the meaning set forth in the RSA.

"First Lien Credit Agreement" shall have the meaning set forth in the Plan.

"Fiscal Year" shall mean the fiscal year of the Company, which shall end on December 31 of each year.

"GAAP" shall mean United States generally accepted accounting principles.

"Golub" shall mean Golub Capital LLC, collectively with its Affiliates and Related Funds.

"Golub/Soundpoint Director" shall have the meaning set forth in Section 6.2(d).

"Governmental Authority" shall mean shall mean the government of any nation, state, city, locality or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, and any corporation or other entity owned or controlled, through stock or capital ownership or otherwise, by any of the foregoing.

"Grandparent Equity" shall have the meaning set forth in the Recitals.

"Grandparent Warrants" shall have the meaning set forth in the Recitals.

"Gross Asset Value" means, with respect to any asset, the asset's adjusted tax basis for U.S. federal income tax purposes, except as follows:

(a)     the initial Gross Asset Value of any asset contributed (or deemed contributed) by a Member to the Company shall be the Value of such asset as of the date of contribution;

(b)     the Gross Asset Values of all the Company assets will be adjusted to equal their respective Values (taking Code Section 7701(g) into account) immediately prior to (or, in the case of the exercise of a Noncompensatory Option described in clause (v) below, immediately after, if required pursuant to Regulation § 1.704-1(b)(2)(iv)(s)(1)) the occurrence of any of the following events:  (i) the acquisition of a new or additional Interest by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the Company to a Member of more than a *de minimis* amount of Company property (including cash) as consideration for all or a portion of an Interest; (iii) the liquidation of the Company within the meaning of Regulation § 1.704-1(b)(2)(ii)(*g*); (iv) the grant of an Interest (other than a *de minimis* Interest) as consideration for the provision of services to or for the benefit of the Company by an existing Member acting in a Member capacity, or by a new Member acting in a Member capacity or in anticipation of becoming a Member; (v) the acquisition of a Common Interest by any new or existing Member upon the exercise of a Noncompensatory Option in accordance with Regulation § 1.704-1(b)(2)(iv)(*s*); and (vi) the occurrence of any other event with respect to which a revaluation of Company assets is permitted under Regulation § 1.704-1(b)(2)(iv)(f); provided, however, that if any Noncompensatory Options are outstanding upon the occurrence of an event described in clauses (i) through (vi) above, the Company shall adjust the Gross Asset Values of its properties in accordance with Regulation §§ 1.704-1(b)(2)(iv)(*f*) and 1.704-1(b)(2)(iv)(h)(2); provided, further, however, that an adjustment pursuant

to an event described in <u>clauses (i)</u>, <u>(ii)</u>, <u>(iv)</u> or <u>(vi)</u> of this paragraph shall be made only if the Board reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company;

(c)      the Gross Asset Value of any Company asset distributed (or deemed distributed) to any Member shall be adjusted to equal the Value of such asset on the date of distribution;

(d)      the Gross Asset Values of all Company assets shall be adjusted to reflect any adjustments to the adjusted basis of such assets pursuant to Code Section 732(d), 734(b) or 743(b), but only to the extent that such adjustments are required to be taken into account in determining Capital Accounts pursuant to Regulation § 1.704-1(b)(2)(iv)(*m*); <u>provided</u>, <u>however</u>, that Gross Asset Values shall not be adjusted pursuant to this <u>clause (d)</u> to the extent that an adjustment pursuant to <u>clause (b)</u> above is made in connection with a transaction that would otherwise result in an adjustment pursuant to this <u>clause (d)</u>; and

(e)      if the Gross Asset Value of an asset has been determined or adjusted pursuant to <u>clause (a)</u>, <u>(b)</u> or <u>(d)</u> above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset (and not the depreciation, amortization, or other cost recovery deduction allowable for U.S. federal income tax purposes).

"<u>Holders of Allowed First Lien Claims</u>" shall have the meaning set forth in the Term Sheet.

"<u>Holders of Second Lien Claims</u>" means those certain holders of Second Lien Claims.

"<u>Incentive Interests</u>" shall mean the Nexus Incentive Interests and the Management Incentive Interests.

"<u>Initial Capital Contributions</u>" shall have the meaning set forth in <u>Section 3.1</u>.

"<u>Interest</u>" when used in reference to an interest in the Company, means the limited liability company interest of a Member in the Company at any particular time, including any Common Interests and Incentive Interests and a Member's interest in the capital, profits, losses and distributions of the Company.

"<u>Independent Director</u>" shall have the meaning set forth in <u>Section 6.2(e)</u>.

"<u>Industry Director</u>" shall have the meaning set forth in <u>Section 6.2(f)</u>.

"<u>Initial Independent Director</u>" shall have the meaning set forth in <u>Section 6.2(e)</u>.

"<u>Interested Party</u>" shall have the meaning set forth in <u>Section 6.10(b)</u>.

"<u>Jefferies</u>" shall mean each of Jefferies LLC and Jefferies Finance LLC, collectively with their respective Affiliates and Related Funds.

"<u>Jefferies/Mockingbird Director</u>" shall have the meaning set forth in <u>Section 6.2(c)</u>.

"<u>Liquidator</u>" shall have the meaning set forth in <u>Section 9.2(b)</u>.

"<u>Listing Rules Member</u>" shall have the meaning set forth in <u>Section 5.4(i)</u>.

"<u>Listing Rules Subject Sale</u>" shall have the meaning set forth in <u>Section 5.4(i)</u>.

"<u>Management Incentive Interests</u>" shall mean units representing limited liability company interests in the Company granted under <u>Section 3.7</u> hereof, with such rights and powers as set forth in this Agreement and which are issued pursuant to an Award Agreement. Holders of Management Incentive Interests shall not be entitled to any voting rights, notwithstanding any provision of the Act.

"<u>Member</u>" shall mean any Person (i) listed on the signature pages hereto and automatically admitted to the Company as a member pursuant to the Plan and the Confirmation Order or (ii) hereafter admitted to the Company as an additional or substitute member of the Company as provided in this Agreement for so long as such Person owns Voting Interests, each in its capacity as a member of the Company, and shall have the same meaning as the term "member" under the Act, but does not include any Person who has ceased to be a member of the Company from and after the date such Person has ceased to be a Member.

"<u>Member Confidential Information</u>" shall have the meaning set forth in <u>Section 6.15</u>.

"<u>Member List</u>" shall have the meaning set forth in <u>Section 5.10</u>.

"<u>Mockingbird</u>" shall mean Mockingbird Credit Opportunities Company LLC and MCOC IV LLC, collectively with its Affiliates and Related Funds.

"<u>NASDAQ</u>" shall mean the NASDAQ National Market.

"<u>Net Income</u>" and "<u>Net Loss</u>", respectively, for any period means the income or loss of the Company for such period as determined in accordance with the method of accounting followed by the Company for U.S. federal income tax purposes, including, for all purposes, any income exempt from tax and any expenditures of the Company that are described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulation § 1.704-1(b)(2)(iv)(i); <u>provided</u>, <u>however</u>, that in determining Net Income and Net Loss and every item entering into the computation thereof, solely for the purpose of adjusting the Capital Accounts of the Members (and not for tax purposes), (i) any income, gain, loss or deduction attributable to the disposition of any Company asset shall be computed as if the adjusted basis of such Company asset on the date of such disposition equaled its Gross Asset Value as of such date, (ii) if the Gross Asset Value of any Company asset is adjusted pursuant to <u>clause (b)</u>, <u>(c)</u> or <u>(d)</u> of the definition of "Gross Asset Value", the amount of such adjustment shall be treated as gain or loss, and (iii) in lieu of any depreciation, cost recovery and amortization deductions as to any Company asset, there shall be taken into account Depreciation as to such Company asset for such period; <u>provided</u>, <u>further</u>, <u>however</u>, that any item (computed with the adjustments in the preceding proviso) allocated under <u>Section 11.2</u> shall be excluded from the computation of Net Income and Net Loss.

"<u>New Securities</u>" shall have the meaning set forth in <u>Section 5.6(a)</u>.

"<u>Nexus</u>" shall mean Nexus Capital Management LP, collectively with its Affiliates and Related Funds.

"<u>Nexus Director</u>" shall have the meaning set forth in <u>Section 6.2(b)</u>.

"<u>Nexus Incentive Interests</u>" means units representing limited liability company interests in the Company granted under <u>Section 3.7</u> hereof, with such rights, powers and duties as set forth in this Agreement and which are issued pursuant to that certain Consulting Agreement with Nexus or one of its Affiliates.

"<u>Nexus Minimum Holdings</u>" shall have the meaning set forth in <u>Section 6.6(b)</u>.

"Noncompensatory Option" has the meaning set forth in Regulation § 1.721-2(f). For the avoidance of doubt, the Warrants are intended to be treated for U.S. federal income tax purposes as a Noncompensatory Option.

"Notice of Acceptance" shall have the meaning set forth in Section 5.6(b).

"NYSE" shall mean the New York Stock Exchange.

"Observer" shall have the meaning set forth in Section 6.9.

"Offer Sale Price" shall have the meaning set forth in Section 5.2(a).

"Offered Interests" shall have the meaning set forth in Section 5.2(a).

"Offered Preemptive Securities" shall have the meaning set forth in Section 5.6(a).

"Original Agreement" shall have the meaning set forth in the recitals.

"Other Indemnitors" shall have the meaning set forth in Section 12.1(e).

"Partnership Representative" means the partnership representative of the Company within the meaning of Code Section 6223(a) (and any similar provision of state, local or foreign law).

"Percentage Interest" shall mean, with respect to a Member, the ratio of the number of Voting Interests held by the Member at any time to the total number of Voting Interests issued and outstanding at such time, expressed as a percentage.

"Permitted Transfer" shall mean, with respect to any Member: (i) a Transfer of Voting Interests or any portion thereof to any Affiliate of such Member (including any Related Fund); (ii) a Transfer of Voting Interests or any portion thereof in connection with a contractually required distribution-in-kind to such Member's limited partners or members pursuant to the express written terms of a partnership investment between the applicable Member and its applicable limited partners or members; (iii) a Transfer of Voting Interests to a broker that will hold the shares in an account for the benefit of such Member or its Affiliates that is acting on a non-principal basis; (iv) of either First Lien Claims or claims under the DIP Facility (including any equity received in connection therewith pursuant to the Plan), in each case that were agreed to, pursuant to valid and binding definitive documentation, prior to the Effective Date; and (v) the Transfer (whether in one Transfer or series of Transfers) during any six (6) month period of a number of Voting Interests (excluding shares transferred pursuant to the foregoing clauses (i)-(iii)) not exceeding the lesser of (x) two and a half percent (2.5%) of all issued and outstanding Voting Interests and (y) fifty percent (50%) of all Voting Interests held by such transferring Member on the Effective Date.  For example, if a Member owns 7% of all issued and outstanding Voting Interests and has owned the same number of Voting Interests since the Effective Date, such Member is permitted to Transfer up to 2.5% of such Member's issued and outstanding Voting Interests in a six month period, 2.5% of such Member's issued and outstanding Voting Interests in a subsequent six month period, and the remaining 2% of such Member's issued and outstanding Voting Interests in the following six month period.

"Permitted Transferee" shall mean any Person to whom a Member may Transfer its Voting Interests or any portion thereof pursuant to a Permitted Transfer.

"<u>Person</u>" shall mean any individual, partnership, joint stock company, corporation, entity, association, trust, limited liability company, joint venture, unincorporated organization and any government, governmental department or agency or political subdivision of any government.

"<u>Plan</u>" shall have the meaning set forth in the recitals.

"<u>Potential Purchaser</u>" shall mean, with respect to any Member, any Person or group of Persons other than an Affiliate of such Member or the Company or any of its Subsidiaries.

"<u>Preemptive Offer</u>" shall have the meaning set forth in <u>Section 5.6(a)</u>.

"<u>Preemptive Percentage</u>" shall have the meaning set forth in <u>Section 5.6(a)</u>.

"<u>Preemptive Right</u>" shall have the meaning set forth in <u>Section 5.6(a)</u>.

"<u>Preemptive Rightholder</u>" shall have the meaning set forth in <u>Section 5.6(a)</u>.

"<u>Presumed Tax Liability</u>" means, with respect to each Member for any Fiscal Year, an amount equal to the product of (a) the excess, if any, of the amount of taxable income (as computed for U.S. federal income tax purposes) allocated by the Company to such Member (determined by taking into account any allocations pursuant to Code Section 704(c)) for such Fiscal Year over the amount of creditable foreign tax expenditures (within the meaning of Regulation § 1.704-1(b)(4)(viii)) allocated by the Company to such Member for such Fiscal Year and (b) the Presumed Tax Rate.

"<u>Presumed Tax Rate</u>" means the highest combined U.S. federal, state and local marginal tax rates applicable to individuals resident in New York, New York (taking into account the character (long-term or short-term capital gain or ordinary income or qualified dividend income including by application of Code Section 1061) and any tax on net investment income and, where determined appropriate by the Board, the application of the limitations set forth under Sections 67 and 68 and other provisions of the Code and the alternative minimum tax rules), and taking into account such other assumptions as the Board determines in its discretion to be appropriate.

"<u>Proxy Holder</u>" shall have the meaning set forth in <u>Section 12.13</u>.

"<u>Publicly Traded Securities</u>" shall mean securities that are registered under the Securities Act, are freely tradable and listed for trading on a national securities exchange.

"<u>Purchase Right</u>" shall have the meaning set forth in <u>Section 5.2(c)</u>.

"<u>Qualified IPO</u>" shall mean (i) the first underwritten public offering of at least 15% of the common equity (or equivalent equity security) of the Company (or its successor) pursuant to an effective registration statement filed under the Securities Act, or (ii) a direct listing or other similar transaction on the NYSE or NASDAQ with respect to the common equity of the Company (or its successor), in each case of clause (i) or (ii), that results in the common equity of the Company (or its successor) being registered under the Securities Exchange Act of 1934 and listed on the NYSE or NASDAQ; and either (a) results in proceeds of at least $200,000,000 or (b) is otherwise approved by Members holding a majority in Percentage Interest of the Voting Interests, <u>provided</u> that a Qualified IPO shall not include an offering made in connection with a business acquisition or combination pursuant to a registration statement on Form S-4 or any similar form, or an employee benefit plan pursuant to a registration statement on Form S-8 or any similar form.

"Qualifying Holder" shall mean any holder that, at the time of Transfer, holds at least seven and a half percent (7.5%) of all issued and outstanding Voting Interests.

"Quarterly Financials" shall have the meaning set forth in Section 8.3(a)(ii).

"Regulation" means a United States Treasury Regulation promulgated under the Code.

"Regulated Holder" shall mean any Person that is a bank holding company, or any affiliate or subsidiary of any bank holding company, as such terms are defined in the U.S. Bank Holding Company Act and its implementing regulations and rules, 12 U.S.C. § 1841 et seq. For the avoidance of doubt, Barclays shall be a Regulated Holder.

"Related Fund" shall mean, with respect to any Member, any fund, account or investment vehicle that is controlled, managed advised or sub-advised by such Member, a controlled Affiliate of such Member or the same investment manager or advisor as such Member or an Affiliate of such investment manager or advisor.

"Remaining Designation Threshold" shall have the meaning set forth in Section 6.2(c).

"Remaining Offered Interests" shall have the meaning set forth in Section 5.2(c).

"Reorganization" shall have the meaning set forth in Section 6.11.

"Representatives" shall have the meaning set forth in Section 6.15.

"Restructuring Transaction Steps" shall mean the steps evidencing the corporate reorganization as set forth in the Plan.

"Rightholders" shall have the meaning set forth in Section 5.2(a).

"Rightholder Notice Period" shall have the meaning set forth in Section 5.2(d).

"Rightholder Offer Purchase Notice" shall have the meaning set forth in Section 5.2(c).

"ROFO Evaluation Period" shall have the meaning set forth in Section 5.2(b).

"ROFO Offer Notice" shall have the meaning set forth in Section 5.2(a).

"ROFO Offer Purchase Notice" shall have the meaning set forth in Section 5.2(b).

"ROFO Third Party Sale" shall have the meaning set forth in Section 5.2(e).

"ROFO Third Party Sale Period" shall have the meaning set forth in Section 5.2(e).

"RSA" shall have the meaning set forth in the recitals.

"Sale of the Company" shall mean any of the following: (a) a merger, consolidation, share exchange, business combination or other sale of the Company or its Subsidiaries into or with any other Person or Persons, or a transfer of Interests in a single transaction or a series of transactions, in which in any case the Members of the Company or the members of its Subsidiaries immediately prior to such merger, consolidation, share exchange, business combination or other sale or first of such series of transactions possess less than a majority of the voting power of the Company's or its Subsidiaries' or any successor

entity's issued and outstanding capital securities immediately after such transaction or series of such transactions; or (b) a single transaction or series of transactions, pursuant to which a Person or Persons who are not direct or indirect wholly-owned Subsidiaries of the Company acquire all or substantially all of the Company's or its Subsidiaries' assets determined on a consolidated basis.

"Sale Process" shall have the meaning set forth in Section 5.5(a).

"SEC" shall mean the United States Securities and Exchange Commission.

"Second Lien Claims" means any Claim on account of the Second Lien Loans.

"Second Lien Credit Agreement" means that certain agreement, dated as of January 6, 2021, and as amended from time to time, among New Trojan Parent, Inc., a Delaware corporation, as the Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, and UBS AG, Stamford Branch, as administrative agent and collateral agent.

"Second Lien Loans" means loans outstanding under the Second Lien Credit Agreement.

"Secure Site" shall have the meaning set forth in Section 8.3(a).

"Securities" means any foreign or domestic "securities," as defined in Section 2(1) of the Securities Act of 1933, as amended, or Section 3(a)(10) of the Securities Exchange Act of 1934, as amended, and shall include common or preferred stocks, limited partnership interests, investment contracts, certificates of deposit, trade acceptances and trade claims, convertible securities, fixed income securities, notes or other evidences of indebtedness of other Persons, warrants, rights, synthetic securities, put and call options on any of the foregoing, other options related thereto, interests or participations therein or any combination of any of the foregoing.

"Securities Act" shall mean the Securities Act of 1933, as amended and any successor statute and the rules and regulations of the SEC thereunder, in each case as in effect from time to time.

"Selling Members" shall have the meaning set forth in Section 5.4(a).

"Selling ROFO Member" shall have the meaning set forth in Section 5.2(a).

"Significant Approval Matter" shall have the meaning set forth in Section 6.10(d).

"Significant Holder" shall mean any Member that, together with its Affiliates, holds a Percentage Interest of at least forty percent (40%) or more.

"Soundpoint" shall mean Sound Point Capital Management, LP, collectively with its Affiliates and Related Funds, including all investment vehicles managed by Sound Point Capital Management, LP and its Affiliates, and each of the officers and directors thereof

"Subject Purchaser" shall have the meaning set forth in Section 5.6(a).

"Subsidiary" shall mean, with respect to any Person, any corporation fifty percent (50%) or more of whose stock of any class or classes having by the terms thereof ordinary voting power to elect a majority of the directors of such corporation is at the time owned by such Person, directly or indirectly through one or more Subsidiaries, and any other Person, including but not limited to a joint venture, a general or limited partnership or a limited liability company, in which such Person, directly or indirectly through one or more Subsidiaries, at the time owns at least fifty percent (50%) or more of the ownership interests entitled to vote

in the election of managing partners, managers or trustees thereof (or other Persons performing such functions) or acts as the general partner, managing member, trustee (or Persons performing similar functions) of such other Person.  For the avoidance of doubt, "Subsidiary" shall include any Person that is included in the Company's consolidated group for purposes of preparing the Company's consolidated financial statements in accordance with GAAP.

"Tag-Along Notice" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Offered Interests" shall have the meaning set forth in Section5.3(a).

"Tag-Along Purchaser" shall have the meaning set forth in Section5.3(a).

"Tag-Along Record Date" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Rightholder" shall have the meaning set forth in Section 5.3(a).

"Tag-Along Rightholder's Offer" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Sale" shall have the meaning set forth in Section 5.3(a).

"Tag-Along Seller" shall have the meaning set forth in Section 5.3(a).

"Term Loan" shall have the meaning ascribed to it in the RSA.

"Term Sheet" shall mean that certain Restructuring Term Sheet attached as Exhibit B to the RSA.

"Third Party Purchaser" shall have the meaning set forth in Section 5.2(a).

"Threshold Equity Value" of each Incentive Interest means the "Threshold Equity Value" as set forth in respect of such Incentive Interest in the relevant Award Agreement pursuant to which such Incentive Interest was issued, increased from time to time by the amount of cash and the Value of other property contributed to the capital of the Company (for the avoidance of doubt, excluding any cash proceeds of indebtedness) after the date of grant of such Incentive Interest. The Threshold Equity Value shall be determined by the Board in good faith.

"Transaction" shall have the meaning set forth in the recitals.

"Transfer" shall mean, (i) when used as a verb, to sell, transfer, assign, encumber or otherwise dispose of, directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise and (ii) when used as a noun, a direct or indirect, voluntary or involuntary, sale, transfer, assignment, encumbrance or other disposition by operation of law or otherwise. "Transferor" and "Transferee" shall mean a Person who makes or receives a Transfer, respectively.

"Unvested Amount" shall have the meaning set forth in Section 3.7(c).

"Value" of any asset of the Company, as the case may be, as of any date, means the fair market value of such asset, as the case may be, as of such date, with the fair market value of the type of assets described below being determined as follows:

(a)        Securities listed on one or more national securities exchanges shall be valued at their last reported sales prices on the consolidated tape on the date of determination (or if the date of determination is not a Business Day, on the last Business Day immediately prior to such date of determination).  If no

such sales of such securities occurred on such date, such securities shall be valued at the mean of the last "bid" and "ask" prices on the date of determination on the national securities exchange which has the highest average daily volume for such Security over the last sixty (60) days on or prior to the date of determination (or, if the date of determination is not a date upon which such national securities exchange was open for trading, on the last prior date on which such national securities exchange was so open);

(b)      Securities which are not listed on a national securities exchange shall be valued at a price equal to the mean of the last "bid" and "ask" prices on the date of determination as reported by the NASDAQ or as reported in the "pink sheets" published by the National Daily Quotation Service;

(c)      Securities for which no such market prices are available, or as to which, in the sole judgment of the Board, any of the above market prices are below or exceed (as the case may be) the amount realizable by the Company upon a sale thereof, shall be valued at the fair value thereof as determined upon a reasonable basis and in good faith by the Board; and

(d)      the fair market value of other investments, assets or properties shall be valued as determined by the Board.

Any determination of the Value or of the fair market value of an asset of the Company made in good faith by the Board in accordance with the above shall be binding on the Members for all purposes of this Agreement.

"Voting Interests" shall mean the Common Interests and the Nexus Incentive Interests.

"Warrants" shall have the meaning set forth in the recitals.

1.2      Rules of Construction.  Unless the context otherwise requires, definitions in this Agreement apply equally to both the singular and plural forms of the defined terms.  The terms "include" and "including" and other words of similar import shall be deemed to be followed by the phrase "without limitation".  The terms "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section or subsection.  The headings appear as a matter of convenience only and shall not affect the interpretation of this Agreement.  All section, subsection, clause and exhibit references not attributed to a particular document shall be references to such parts of this Agreement.  All equity percentage calculations set forth in this Agreement shall exclude therefrom any equity interests in the Company (including interests convertible into or exercisable or exchangeable for such equity interests) that constitute Excluded Issuances, in addition to any other equity interests to be excluded from such calculations pursuant to the terms of this Agreement.

## Article II
## Organization

2.1      Formation of the Company.  The Company was formed as a limited liability company under the Act by the filing of the Certificate with the Secretary of State of the State of Delaware on [●].  The Company shall accomplish all filing, recording, publishing and other acts necessary or appropriate for compliance with all requirements for operation of the Company as a limited liability company under this Agreement and the Act and under all other applicable laws of the State of Delaware and such other jurisdictions in which the Company determines that it may conduct business.

2.2      Name.  The name of the Company shall be "[Reorganized Careismatic Brands, LLC]", as such name may be modified from time to time by the Board as it may deem advisable.

2.3     <u>Purpose</u>.  Subject to any limitations on the activities of the Company otherwise specified in this Agreement, the purpose and business of the Company shall be to (a) engage in any and all activities as the Board may reasonably determine to be necessary or advisable to the carrying out of the foregoing purpose and business of the Company and (b) conduct any other business or activity that may be conducted by a limited liability company organized pursuant to the Act.

2.4     <u>Registered Office; Registered Agent; Principal Office; Other Offices</u>.  The registered office of the Company shall be the office of the initial registered office named in the Certificate or such other registered office (which need not be a place of business of the Company) as the Board may designate from time to time in the manner provided by the Act.  The registered agent of the Company shall be the Corporation Service Company or such other Person or Persons as the Board may designate from time to time in the manner provided by the Act.  The address of the principal office of the Company on the date hereof is 1119 Colorado Avenue, Santa Monica, California 90401  and the Company shall maintain there the records required to be maintained under Section 18-305 of the Act.  In addition, the Company may maintain such other offices as the Board may deem advisable at any other place or places within or without the State of Delaware.

2.5     <u>Interest of Members; Property of Company</u>.  Interests held by a Member shall be personal property of such Member for all purposes.  All real and other property owned by the Company shall be deemed property of the Company that is owned by the Company as an entity, and no Member shall own such property in an individual capacity.  No Member shall be entitled to interest on or with respect to any Capital Contribution.  Except as provided in this Agreement, no Member shall be entitled to withdraw any part of such Member's Capital Contribution or to receive distributions from the Company.

2.6     <u>Limited Liability</u>.  Except as otherwise expressly required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and no Member shall be obligated personally for any such debt, obligation or liability solely by reason of being a Member of the Company.

2.7     <u>Term</u>.  The term of the Company commenced on the date of filing of the Certificate, and shall be perpetual unless the Company is earlier dissolved and its existence terminated in accordance with the provisions of this Agreement.

## Article III
## <u>Contributions of Members</u>

3.1     <u>Initial Contributions</u>.  Pursuant to the Plan, the Confirmation Order and the Restructuring Transaction Steps, each Member shall be automatically deemed to have made the initial Capital Contributions (the "<u>Initial Capital Contributions</u>") set forth in <u>Exhibit C</u> in exchange for its Common Interests.  After giving effect to the Initial Capital Contributions, each Member shall hold the Common Interests set forth on <u>Exhibit B</u> opposite such Member's name.

3.2     <u>Additional Capital Contributions</u>.

(a)     Subject to <u>Sections 5.6</u> and without limitation to <u>Section 3.2(b)</u>, in addition to the Initial Capital Contributions, Members may from time to time make Capital Contributions to the Company (each, an "<u>Additional Capital Contribution</u>" and, for the avoidance of doubt, any Initial Capital Contribution shall not be deemed to be an Additional Capital Contribution) at such times and in such amounts as the Board may determine to accept from the Members.  Except as required by law, no Member shall be required to make any Additional Capital Contributions to the Company.

(b)     Additional Capital Contributions shall be made in cash or, with the approval of the Board, in other property.  The value assigned to any non-cash Additional Capital Contribution shall be equal to the Fair Market Value thereof.

3.3     <u>Return of Contributions</u>.  No Member shall be entitled to the return of any part of its Capital Contributions except as specified in this Agreement.  An unpaid Capital Contribution is not a liability of the Company or of any Member.  A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions.

3.4     <u>Interest on Capital Contributions</u>.  No Member shall be entitled to interest on, or with respect to, any Capital Contribution.

3.5     <u>Advances by Members</u>.  If the Company does not have sufficient funds to pay its obligations, any Member(s) that may agree to do so, with the consent of the Board, may advance all or part of the funds required to, or on behalf of, the Company.  An advance described in this <u>Section 3.5</u> constitutes a loan from such Member(s) to the Company, and shall not constitute a Capital Contribution.

3.6     <u>Common Interests</u>.

(a)     The Company shall have one class of Common Interests, which shall constitute limited liability company interests under the Act.  All Common Interests are identical to each other and accord the holders thereof the same obligations, rights and privileges as are accorded to each other holder thereof, except for any specific obligations, rights and privileges expressly set forth in this Agreement.

(b)     The Company is authorized to issue certificates to represent any or all of the Common Interests.  In the event the Company issues certificates evidencing the Common Interests issued by the Company, the certificates shall bear the following restrictive legends (in addition to any legend restrictions required under applicable state securities laws):

"THE RIGHTS, POWERS, PREFERENCES, RESTRICTIONS (INCLUDING TRANSFER RESTRICTIONS) AND LIMITATIONS OF THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED BY THIS CERTIFICATE ARE SET FORTH IN, AND THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED HEREBY ARE ISSUED IN ACCORDANCE WITH AND SHALL IN ALL RESPECTS BE SUBJECT TO, THE TERMS AND PROVISIONS OF THE AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF [REORGANIZED CAREISMATIC BRANDS, LLC], DATED AS OF [●], AS THE SAME MAY BE AMENDED AND/OR RESTATED FROM TIME TO TIME IN ACCORDANCE WITH ITS TERMS (THE "<u>AGREEMENT</u>").  THE TRANSFER, SALE, ASSIGNMENT, ENCUMBRANCE OR DISPOSITION IN ANY MANNER, WHETHER DIRECT OR INDIRECT, VOLUNTARY OR INVOLUNTARY, BY OPERATION OF LAW OR OTHERWISE, OF THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED HEREBY ARE RESTRICTED AS DESCRIBED IN THE AGREEMENT."

In addition, unless counsel to the Company has advised the Company that such legend is not necessary, each certificate evidencing Common Interests issued by the Company shall bear a legend in substantially the following form:

"THE SECURITIES REPRESENTED BY THIS INSTRUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED PURSUANT

TO THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>"), OR ANY STATE SECURITIES LAWS, AND SUCH SECURITIES MAY NOT BE SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED OF UNLESS THEY ARE REGISTERED AND QUALIFIED IN ACCORDANCE WITH THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS, OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION AND QUALIFICATION SHALL APPLY."

(c)    Subject to the requirements of <u>Section 5.6</u>, the Company is hereby authorized to issue additional Common Interests from time to time, subject to prior authorization of the Board in accordance with the terms of this Agreement.  In addition, the Company is hereby authorized to issue Common Interests pursuant to the exercise of any Warrant, which shall not require any prior authorization of the Board or the Members.

3.7    <u>Incentive Interests.</u>

(a)    The Company may, at the direction of the Board, establish an equity incentive plan or other similar plan to permit certain directors, officers, employees and consultants of the Company to participate in the Company's equity appreciation through a direct or indirect interest in Management Incentive Interests.

(b)    It is intended that the Incentive Interests will be treated as "profits interests" within the meaning of IRS Revenue Procedure 93-27, 1993-2 C.B. 343. In this regard, (i) the Members agree that the economic rights of the Members holding Incentive Interests with respect to their interests in such Incentive Interests may be adjusted by the Board if necessary to ensure such treatment, (ii) except to the extent not permitted by law, in accordance with IRS Revenue Procedure 2001-43, 2001-2 C.B. 191, the Company shall treat a Member holding Incentive Interests as the owner of the Incentive Interests from the issue date of such Incentive Interests, (iii) except as required pursuant to a "determination" as defined in Code Section 1313(a), the Company and the Members agree not to claim a deduction (as wages, compensation or otherwise) for the fair market value of any such Incentive Interests issued to a Member, either at the time of issuance, or at the time the Incentive Interests becomes substantially vested, (iv) the Company shall file its IRS Form 1065, and issue appropriate Schedule K-1s to a Member holding an Incentive Interest, allocating to such Member, such Member's distributive share of all items of income, gain, loss, deduction and credit associated with such Incentive Interest as if such Incentive Interests were fully vested, and (v) each Member holding an Incentive Interest agrees to take into account such distributive share in computing such Member's U.S. federal income tax liability for the entire period during which such Member holds such Incentive Interest. Further, except to the extent not permitted by law, the provisions of this <u>Section 3.7(b)</u> shall apply regardless of whether the Member files an election pursuant to Code Section 83(b). Notwithstanding any other provision of this Agreement, each Member shall, and shall cause each of such Member's Affiliates and Transferees to, (x) take any action requested by the Company to ensure that the fair market value of any Incentive Interests at the time of issuance is treated for U.S. federal income tax purposes as being equal to the "liquidation value" (within the meaning of Proposed Regulation § 1.83-3(l)) of such Incentive Interests and (y) without limiting the generality of the foregoing, to the extent required in order to attain or ensure such treatment, agree to any condition imposed on such Member and such Member's Affiliates or Transferees, execute any amendment to this Agreement or other agreements, execute any new agreement, make any tax election or tax filing, and agree not to take any contrary position unless required pursuant to applicable law. As to the issuance of any Incentive Interests that are "substantially nonvested" within the meaning of Regulation § 1.83-3(b), within twenty (20) days after the issuance of such Incentive Interests to a Member, such Member shall provide the Company with a copy of a completed election under Code Section 83(b) with respect to such Incentive Interests.  For the avoidance of doubt, such election shall reflect a $0 Value and $0 issuance date taxable income as to any Incentive

17

Interests. Such Member shall, within thirty (30) days after the issuance of such Incentive Interests, file the Code Section 83(b) election required hereby with the Internal Revenue Service via certified mail, return receipt requested, and shall thereafter notify the Company that such election has been timely filed.

(c)     In furtherance of the foregoing, a holder of Incentive Interests shall be entitled to receive distributions on account of such holder's Incentive Interests in the manner set forth herein, provided that, other than distributions described in Section 4.4, a holder of Incentive Interests shall not be entitled to receive any distributions on account of such Incentive Interests unless and until the sum of the aggregate amount of distributions made by the Company in respect of all Interests (measured from and after the date such Incentive Interests were issued) at least equals the Threshold Equity Value applicable to such Incentive Interests. To the extent that any holder of Incentive Interests is not entitled to participate in a distribution on account of any Incentive Interests in which such holder otherwise would have participated but for the operation of the preceding sentence, then the amount as to which such holder is not entitled to participate shall be distributed to the Common Interests and any other Incentive Interests with respect to which distribution is permitted pursuant to the preceding sentence of this Section 3.7(c), in accordance with Section 4.1. In addition, other than distributions described in Section 4.4, the portion of any distribution that would otherwise be made on account of any unvested Incentive Interests if such Incentive Interests had been fully vested (the "Unvested Amount") shall be set aside and held by the Company until the earlier of the vesting, forfeiture, cancellation, reacquisition, repurchase, or redemption of such unvested Incentive Interests. In the event such unvested Incentive Interests become vested, the applicable Unvested Amount shall be distributed to the owner of such Incentive Interests upon (and to the extent of) such vesting. Upon (and to the extent of) a forfeiture, cancellation, reacquisition, repurchase, or redemption of such unvested Incentive Interests, the applicable Unvested Amount shall be distributed to the remaining Members in accordance with Section 4.1 and this Section 3.7(c) (not including for the purposes of such calculation such number of forfeited, cancelled, reacquired, repurchased or redeemed Incentive Interests) on the date determined by the Board. Determinations pursuant to this Section 3.7(c) shall be made for each dollar of distribution made by the Company.

(d)     If the Board (subject to the requirements of Section 6.10) determines that, based upon the liquidation value of the Company, each Nexus Incentive Interest has a value that is substantially equal to the value of a Common Interest, the Board may covert all, but not less than all, of the Nexus Incentive Interests into Common Interests on a one for one basis (a "Conversion"). The Members shall take all actions reasonably requested by the Board in connection with the consummation of such Conversion, including consenting to, voting for and waiving any dissenters rights, appraisal rights or similar rights and participating in any exchange or other transaction required in connection with such Conversion. No Member shall have any right to vote, consent to or approve any Conversion. The Company shall pay any and all reasonable organizational, legal and accounting expenses and filing fees incurred by the Company or the Members in connection with such Conversion and the Board may select, on behalf of the Company, any accounting firm, legal counsel, underwriters or any other providers in connection with such Conversion.

3.8     Transfer Books.  The Company shall maintain books for the purpose of registering the Transfer of Voting Interests.  If Voting Interests are represented by certificates, in connection with a Transfer in accordance with this Agreement of any certificated Voting Interests, the endorsed certificate(s) evidencing the Voting Interests shall be delivered to the Company for cancellation, and the Company shall thereupon issue a new certificate to the Transferee evidencing the Voting Interests that were Transferred and, if applicable, the Company shall issue a new certificate to the transferor evidencing any Voting Interests registered in the name of the transferor that were not Transferred.

3.9     Certificate Signature.  If Voting Interests are represented by certificates, each such certificate shall be executed by manual or .pdf signature of an officer on behalf of the Company.

**Article IV**
**Distributions; Distributions in Kind**

4.1     <u>Distributions</u>.

(a)     Subject to the provisions of the Act, the Board may from time to time by resolution declare, and the Company may pay, distributions to the Members from Available Cash according to their respective rights and interests in the Company, in accordance with <u>Sections 3.7</u>, <u>4.1</u>, <u>4.2</u> and <u>4.4</u> and in the following order of priority:

(i)     <u>first</u>, 100% among the holders of the Common Interests, on a pro rata basis in accordance with the number of Common Interests, until the aggregate amount distributed pursuant to this <u>Section 4.1(a)(i)</u> (taking into account all prior distributions under this <u>Section 4.1(a)(i)</u>) equals the amount of Effective Date Capital Contributions and any Capital Contributions after the date hereof by such Common Interest holders;

(ii)     <u>second</u>, 100% to the holders of Nexus Incentive Interests, on a pro rata basis in accordance with the number of Nexus Incentive Interests, until the aggregate amount distributed to the holders of Nexus Incentive Interests pursuant to this <u>Section 4.1(a)(ii)</u> equals 4.5% of the sum of the amounts distributed pursuant to <u>Section 4.1(a)(i)</u> and this <u>Section 4.1(a)(ii)</u>; and

(iii)     <u>third</u>, 100% among the holders of Interests, on a pro rata basis in accordance with the number of Interests.

4.2     <u>Limitations on Distributions</u>.

(a)     Anything to the contrary herein notwithstanding, no distribution pursuant to this Agreement shall be made if such distribution would result in a violation of Section 18-607 of the Act or any other applicable law.

(b)     In the event that a distribution is not made as a result of the application of <u>paragraph (a)</u> of this <u>Section 4.2</u>, all amounts so retained by the Company shall continue to be subject to all of the debts and obligations of the Company.  The Company shall make such distribution as soon as such distribution would not be prohibited pursuant to this <u>Section 4.2</u>.

4.3     <u>Reserves</u>.  The Company may establish reserves in such amounts and for such time periods as the Board determines is reasonably necessary or prudent for estimated accrued Company expenses, obligations and liabilities (including amounts owed, restricted or reserved by or in connection with, to the extent applicable, any agreement or any other instrument to which the Company or any of its direct or indirect Subsidiaries is a party governing indebtedness of the Company or any of its Subsidiaries) and any contingent or unforeseen Company liabilities.  When such reserves are no longer necessary, the balance shall be distributed to the Members in accordance with this <u>Article IV</u>.

4.4     <u>Tax Distributions</u>.  Subject to <u>Section 4.2</u> and any financing agreements of the Company or any of its Subsidiaries, the Company shall, at least ten days prior to the due date for the quarterly payment of estimated U.S. federal income taxes by individuals for any Fiscal Year, distribute Available Cash to the Members up to and in proportion to the excess of (x) each such Member's Presumed Tax Liability for such portion of the Fiscal Year ending on the last day of the month preceding such payment date, calculated as if such portion of the Fiscal Year were a separate Fiscal Year, over (y) amounts previously distributed to each such Member pursuant to <u>Section 4.1</u> during such Fiscal Year or pursuant to this <u>Section 4.4</u> with respect to such portion of a Fiscal Year (which, for the avoidance of doubt, shall not include any

19

distributions made pursuant to this Section 4.4 with respect to prior Fiscal Years).  Promptly upon filing the Company's U.S. federal income tax return, subject to Section 4.2 and any financing agreements of the Company or any of its Subsidiaries, the Company shall distribute Available Cash to the Members up to and in proportion to the excess of (x) each such Member's Presumed Tax Liability with respect to such Fiscal Year, as computed based on the filed income tax returns of the Company, over (y) amounts previously distributed to each such Member pursuant to Section 4.1 during such Fiscal Year or pursuant to this Section 4.4 with respect to such Fiscal Year (which, for the avoidance of doubt, shall not include any distributions made pursuant to this Section 4.4 with respect to prior Fiscal Years).  Any amount distributed pursuant to this Section 4.4 shall be deemed to be an advance distribution of amounts otherwise distributable to the Members pursuant to Section 4.1 or Article IX and shall reduce the amounts that would subsequently otherwise be distributed to the Members pursuant to Section 4.1 or Article IX in the order in which they would otherwise have been distributable.

## Article V
## Transferability

5.1    Transfer Generally.  No Member shall be permitted to Transfer all or any portion of its Interests except pursuant to, and in compliance with, this Article V.  Additionally, no Member shall be permitted to Transfer all or any portion of its Voting Interests prior to [●] if such Transfer would result in a loss of such Member's Designation Rights pursuant to Section 6.2.  No Transfer of any Voting Interest in the Company shall be effective until such time as all requirements of this Article V in respect thereof have been satisfied and, if consents, approvals or waivers are required by the Board, all of same shall have been confirmed in writing by the Board.  Subject to Section 5.2, Section 5.3, Section 5.4, Section 5.5 and Section 5.8, a Member may Transfer all or a portion of its Voting Interest in the Company without the consent of the Board or any other Member. Notwithstanding the foregoing, except for a Transfer to a trust or similar estate planning vehicle established for the sole benefit of one or more family members that is permitted by the applicable Award Agreement, a holder of Management Incentive Interests may not transfer such Management Incentive Interests without Board consent and any attempted Transfer of such Management Incentive Interests without such consent shall be null and void *ab initio*.

5.2    Right of First Offer.

(a)    Except in a transaction pursuant to which Section 5.4 applies or in connection with a repurchase of Voting Interests from any individual serving as an employee or consultant of the Company or any of its Subsidiaries, if any Member wishes to Transfer all or any portion of its Voting Interests (such Member, the "Selling ROFO Member") to any Person other than a Permitted Transferee (each such Person, a "Third Party Purchaser"), such Selling ROFO Member shall first offer such Voting Interests that are proposed to be Transferred by sending written notice (the "ROFO Offer Notice") to the Company, which ROFO Offer Notice shall be an offer to sell and shall state the proposed terms of such Transfer, including (i) the number of Voting Interests such Selling ROFO Member proposes to Transfer (the "Offered Interests"), (ii) the proposed amount and consideration per Common Interest or Nexus Incentive Interests, as applicable (which consideration shall be exclusively cash) (the "Offer Sale Price"), and (iii) all other material terms and conditions of the proposed Transfer.  The ROFO Offer Notice shall constitute an irrevocable offer by the Selling ROFO Member to sell to the Company and the Rightholders the Offered Interests for cash at the Offer Sale Price on the terms set forth in the ROFO Offer Notice, pursuant to the terms and conditions of this Section 5.2.

(b)    The Company shall have a period of ten (10) Business Days following the receipt of the ROFO Offer Notice (the "ROFO Evaluation Period") to accept the Selling ROFO Member's offer by delivering written notice (the "ROFO Offer Purchase Notice") to the Selling ROFO Member agreeing to purchase up to the number of Offered Interests on the terms set forth in the ROFO Offer Notice (including

the same price and with the same amount of consideration), which ROFO Offer Purchase Notice shall indicate the number of Offered Interests it wishes to purchase and include the Company's election and agreement to purchase such Offered Interests.

(c)     Subject to the terms of Section 5.2(d) below, each Selling ROFO Member hereby unconditionally and irrevocably grants to Qualifying Holders a secondary right to purchase on a *pro rata* basis, in proportion to such Qualifying Holder's Percentage Interests, all or any portion of the Offered Interests not elected to be purchased by the Company pursuant to Sections 5.2(a) and 5.2(b) (a "Purchase Right," and each Qualifying Holder with a Purchase Right, a "Rightholder"). If the Company does not provide the ROFO Offer Purchase Notice exercising its rights with respect to all Offered Interests, the Company must deliver a notice to the Selling ROFO Member and to each other Rightholder to that effect no later than fifteen (15) Business Days after the Selling ROFO Member delivers the ROFO Offer Notice to the Company (the "Company ROFO Notice").  The Company ROFO Notice shall state the proposed terms of such Transfer, including (i) the number of Offered Interests available for purchase by the Qualifying Holders (the "Remaining Offered Interests"), (ii) the Offer Sale Price, and (iii) all other material terms and conditions of the proposed Transfer included in the ROFO Offer Notice. To exercise its Purchase Right, such Rightholder must deliver written notice to the Selling ROFO Member and the Company within ten (10) Business Days after delivery of the Company ROFO Notice indicating the number of Remaining Offered Interests it wishes to purchase and including the Rightholder's election and agreement to purchase such Offered Interests (the "Rightholder Offer Purchase Notice").

(d)     If more than one Rightholder elects to purchase Remaining Offered Interests prior to the expiration of the ten (10) Business Day period specified in the last sentence of Section 5.2(c) (the "Rightholder Notice Period") and the aggregate number of Remaining Offered Interests elected to be purchased by such Rightholders exceeds the aggregate number of Remaining Offered Interests, the Remaining Offered Interests shall be allocated among such Rightholders *pro rata* based on the number of Remaining Offered Interests such Exercising Rightholders have elected to purchase pursuant to the Purchase Right until all Remaining Offered Interests shall have been so allocated or each Exercising Rightholder shall have been allocated all of the Remaining Offered Interests specified by each such Exercising Rightholder in its Rightholder Offer Purchase Notice.  If options to purchase have been exercised by the Company and/or the Rightholders pursuant to Sections 5.2(b) and 5.2(c) with respect to some but not all of the Offered Interests by the end of Rightholder Notice Period, then the Company shall, within five (5) Business Days after the expiration of the Rightholder Notice Period, send written notice (the "Company Undersubscription Notice") to those Rightholders who fully exercised their Purchase Right within the Rightholder Notice Period (the "Exercising Rightholders"). Each Exercising Rightholder shall, subject to the provisions of this Section 5.2(d), have an additional option to purchase all or any part of the balance of any such remaining unsubscribed shares of Offered Interests on the terms and conditions set forth in the ROFO Offer Notice. To exercise such option, an Exercising Rightholder must deliver a Company Undersubscription Notice to the Selling ROFO Member and the Company within ten (10) Business Days after the expiration of the Rightholder Notice Period. In the event there are two (2) or more such Exercising Rightholders that choose to exercise the last-mentioned option for a total number of remaining shares in excess of the number available, the remaining shares available for purchase under this Section 5.2(d) shall be allocated to such Exercising Rightholders *pro rata* based on the number of shares of Offered Interests such Exercising Rightholders have elected to purchase pursuant to the Purchase Right (without giving effect to any shares of Offered Interests that any such Exercising Rightholder has elected to purchase pursuant to the Company Undersubscription Notice). If the options to purchase the remaining Offered Interests are exercised in full by the Exercising Rightholders, the Company shall immediately notify all of the Exercising Rightholders and the Selling ROFO Member of that fact.

(e)     If (i) no ROFO Offer Purchase Notice or Rightholder Offer Purchase Notice has been timely delivered under Section 5.2(b) or Section 5.2(c), as applicable, (ii) the ROFO Offer Purchase Notices

and/or Rightholder Offer Purchase Notices that are delivered do not cover all of the Offered Interests or (iii) the Company or a Rightholder fails to purchase all of the Offered Interests that the Company or such Rightholder has agreed to purchase pursuant to Sections 5.2(b) or 5.2(c), respectively, then the Selling ROFO Member shall be permitted to Transfer any or all of the Offered Interests that have not been purchased by the Company or the Rightholders to the applicable Third Party Purchaser(s) on terms and conditions no more favorable to such Third Party Purchaser than those set forth in the ROFO Offer Notice for a purchase price in cash that is no lower than the Offer Sale Price (a "ROFO Third Party Sale"); provided, however, that such ROFO Third Party Sale is consummated within sixty (60) days after the earlier to occur of (i) the waiver by the Company or all of the Rightholders of their option to purchase the Offered Interests and (ii) the expiration of the Rightholder Notice Period (such period, the "ROFO Third Party Sale Period"). If such ROFO Third Party Sale is not consummated within such ROFO Third Party Sale Period for any reason, then the restrictions provided for in this Section 5.2 shall again become effective, and no Transfer of Voting Interests may be made thereafter by the Selling ROFO Member without again offering the same to the Company or Rightholders in accordance with this Section 5.2.

(f)     The Selling ROFO Member shall notify (the "Final Offer Notice") each Rightholder within three (3) Business Days following the expiration of the Rightholder Notice Period, with copy to the Company, of the number of Offered Interests which such Rightholder has agreed to purchase pursuant to this Section 5.2. The closing of the sale of the applicable Offered Interests to the Company and/or the Exercising Rightholders shall take place at 10:00 a.m. on the tenth (10th) Business Day after the expiration of the Rightholder Notice Period unless the parties agree on a different place or time. Each the Company and each Rightholder, as appliable, shall, at the closing, deliver to the Selling ROFO Member payment in full in immediately available funds for the Offered Interests purchased by it; it being further agreed that no portion of the purchase price shall be subject to any escrow or holdback. At such closing, all the parties to the transaction shall execute such additional documents as are otherwise necessary or appropriate.

(g)     At the closing contemplated by Section 5.2(f) above, the Selling ROFO Member shall provide customary representations, warranties, covenants and indemnities in its individual capacity in connection with such transaction; provided, however, that such representations, warranties, covenants and indemnities shall be limited to customary fundamental representations and warranties regarding (i) its brokers and finders, (ii) title to its Offered Interests, free and clear of all liens, claims and encumbrances (other than those arising under applicable securities laws and this Agreement), (iii) its authority, power and right to enter into and consummate the transaction without violating any other material agreement or applicable law, (iv) its power and right to enter into and consummate the transaction without the consent of a Governmental Authority or Person and (v) the absence of any required consents for it to enter into and consummate the transaction and the absence of any registration requirements in connection therewith. The Selling ROFO Member's liability under the definitive transfer agreement with respect to such transaction will not exceed the total purchase price received by the Selling ROFO Member in such transaction except for liability resulting from fraud or knowing and willful breach. In no event shall any Affiliate (other than any Affiliate of such Selling ROFO Member which Affiliate itself is Transferring Voting Interests in such transaction) of such Selling ROFO Member be liable under such transaction, in any respect.

5.3     Tag-Along Rights.

(a)     Without limiting the other terms and conditions hereof, if at any time one or more Members (a "Tag-Along Seller") propose to Transfer fifteen percent (15%) or more of the outstanding Voting Interests (but less than one hundred percent (100%) of the Voting Interests), in a single transaction or series of related transactions (other than any Drag-Along Transaction or any Transfers by a Member to any Affiliates of such Member, a "Tag-Along Sale", and the purchaser involved in such transaction(s), the "Tag-Along Purchaser"), then, following compliance by the Tag-Along Seller with Section 5.2, each other Member (other than Affiliates of a Tag-Along Seller) (each, a "Tag-Along Rightholder") shall have the

right to make an offer to sell to such Tag-Along Purchaser, at the same price (subject to Section 5.3(b)) and upon the same terms and conditions set forth in the Tag-Along Notice (as defined below), a number of Voting Interests held by such Tag-Along Rightholder (the "Tag-Along Offered Interests") equal to the product obtained by multiplying (i) the total number of Voting Interests owned by such Tag-Along Rightholder at the Tag-Along Record Date (as defined below) by (ii) a fraction, the numerator of which is the number of Voting Interests intended to be sold by the Tag-Along Seller in such Tag-Along Sale and the denominator of which is the total number of Voting Interests owned by such Tag-Along Seller at the Tag-Along Record Date.

(b)    The Tag-Along Seller shall give written notice to the Company of each proposed Transfer by it that gives rise to the rights of the Tag-Along Rightholders set forth in this Section 5.3, at least thirty (30) days prior to the proposed consummation of such Transfer and the Company, within three (3) Business Days after receiving notice from such Tag-Along Seller, shall give notice of such Transfer to each Tag-Along Rightholder.  The close of business on the tenth (10th) Business Day following the date that each notice is given by the Company shall be deemed to be the "Tag-Along Record Date".  The notice provided by the Tag-Along Seller, and forwarded by the Company, shall set forth in reasonable detail, based on information available to the Tag-Along Seller, the name of such Tag-Along Seller, the number of Voting Interests that will be held by such Tag-Along Seller as of the Tag-Along Record Date and the number and class of Voting Interests proposed to be sold by such Tag-Along Seller, the name of and contact information for the proposed Tag-Along Purchaser (including any material relationships with the Company or any Tag-Along Seller), the proposed amount and form of consideration and terms and conditions of payment offered by such Tag-Along Purchaser, the percentage (or a reasonable estimate of the minimum and maximum percentage) of its Voting Interests that such Tag-Along Rightholder may sell to such Tag-Along Purchaser (determined in accordance with Section 5.3(a)) and the purchase price per Common Interest or Nexus Incentive Interests (or a reasonable estimate of the maximum and minimum per share purchase price) (the "Tag-Along Notice").  Where the Tag-Along Seller is seeking to sell Common Interests, the purchase price per Nexus Incentive Interest to be set forth in the Tag-Along Notice shall equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1.  The tag-along rights provided by this Section 5.3 must be exercised by any Tag-Along Rightholder wishing to sell Tag-Along Offered Interests no later than the Tag-Along Record Date, which exercise shall be by delivery of a written irrevocable offer (the "Tag-Along Rightholder's Offer") to the Tag-Along Seller and the Company indicating such Tag-Along Rightholder's wish to have its Tag-Along Offered Interests included in the Tag-Along Sale and specifying the number and class of Tag-Along Offered Interests (up to the maximum number of Tag-Along Offered Interests as determined in accordance with Section 5.3(a)) it wishes to sell; provided that any Tag-Along Rightholder may waive its tag-along rights under this Section 5.3 with respect to such Tag-Along Sale prior to the expiration of such ten (10) Business Day period by giving written notice thereof to the Tag-Along Seller, with a copy to the Company (and failure to deliver a Tag-Along Rightholder's Offer by the Tag-Along Record Date will be deemed to be a waiver of such Tag-Along Rightholder's tag-along rights under this Section 5.3 with respect to such Tag-Along Sale).  Subject to the other terms herein, delivery of the Tag-Along Rightholder's Offer will constitute an irrevocable binding commitment by such Tag-Along Rightholder to sell the number of Tag-Along Offered Interests specified in such Tag-Along Rightholder's Offer on the terms set forth in the Tag-Along Notice.

(c)    The Tag-Along Seller shall attempt to obtain the inclusion in the proposed Tag-Along Sale of the entire number of Tag-Along Offered Interests that the Tag-Along Rightholders timely elect to have included in such Tag-Along Sale.  If the Tag-Along Seller is unable to obtain such inclusion of all such Tag-Along Offered Interests, then (i) the number of Tag-Along Offered Interests to be sold in such Tag-Along Sale shall be allocated on a pro rata basis among the Tag-Along Seller and each Tag-Along Rightholder who shall have timely elected to participate in such Tag-Along Sale in proportion to the total number of Voting Interests offered and eligible to be sold in the Tag-Along Sale by each such

Member or (ii) the Tag-Along Seller shall be permitted to sell its Voting Interests in such Tag-Along Sale provided that it purchases, for the same price and upon the same terms, from each Tag-Along Rightholder who shall have timely elected to participate in such Tag-Along Sale the number of Voting Interests that such Tag-Along Rightholder could have included in such Tag-Along Sale.

(d)    The Tag-Along Rightholders shall make or provide the same representations, warranties, covenants (other than non-competes and restrictive covenants), indemnities and agreements the Tag-Along Seller makes or provides in connection with the Tag-Along Sale (except that in the case of representations, warranties, covenants, indemnities and agreements pertaining specifically to the Tag-Along Seller, the Tag-Along Rightholders shall make the comparable representations, warranties, covenants, indemnities and agreements pertaining specifically to them).  The liability of any Tag-Along Rightholder shall be capped at the proceeds actually received in such sale by such Tag-Along Rightholder and no Tag-Along Rightholder shall be required to enter into noncompetition, non-solicitation or similar restrictive covenants and each Tag-Along Rightholder's liability shall be several and not joint.  If (i) the Tag-Along Seller has not consummated the Tag-Along Sale within forty-five (45) days of the delivery to the Company of the related Tag-Along Notice (for any reason other than the failure of a Tag-Along Rightholder to sell its Voting Interests under this Section 5.3) or (ii) the terms and conditions of the Tag-Along Sale shall change, in any respect, from those in the Tag-Along Notice, then the Tag-Along Notice and any Tag-Along Rightholder's Offer shall be null and void and it shall be necessary for a separate Tag-Along Notice to be furnished and the terms and provisions of this Section 5.3 separately complied with, in order to subsequently consummate such proposed Tag-Along Sale pursuant to this Section 5.3; provided, however, that the Tag-Along Notice and the Tag-Along Rightholder's Offers shall not be null and void if the Tag-Along Seller receives the unanimous written consent of each of the Tag-Along Rightholders agreeing to an extension and/or revised terms.  Notwithstanding any other provision of this Section 5.3, there shall be no liability on the part of any Tag-Along Seller to any other Member arising from the failure of any Tag-Along Seller to consummate the Tag-Along Sale for any reason and the decision to consummate such Tag-Along Sale shall be in the sole discretion of the Tag-Along Seller.

5.4    Drag-Along Right.

(a)    If one (1) or more Members holding a majority of the outstanding Voting Interests (such Members, the "Selling Members") propose to consummate a Drag-Along Transaction with a Potential Purchaser in a bona fide transaction, the Selling Members may, at their option, require the other Members (the "Compelled Members") to sell to the Potential Purchaser the same portion of its own Voting Interests as is being sold by the Selling Members in such transaction, or otherwise participate in such transaction, on the same terms and conditions upon which the Selling Members propose to enter into such sale (a "Drag-Along Sale"), subject to the other provisions of this Section 5.4.  "Drag-Along Transaction" means: (a) any merger, recapitalization, consolidation or restructuring or any other transaction that would result in a change of control of the Company; (b) a sale or other disposition of all or substantially all of the assets of the Company and its Subsidiaries (together as a whole) to be followed promptly by a dissolution with respect to the Company or a distribution to the Members of all or substantially all of the net proceeds of such disposition after payment or other satisfaction of liabilities and other obligations of the Company and its Subsidiaries; or (c) the sale of fifty percent (50%) or more of the outstanding Voting Interests in a single transaction or series of related transactions.  Notwithstanding the foregoing, any Transfers solely among Members, on one hand, and Affiliates of such Members, on the other hand, shall be excluded from the definition of "Drag-Along Transaction".

(b)    The Selling Members shall provide a written notice (the "Drag-Along Notice") of such Drag-Along Sale to each of the Compelled Members, with a copy to the Company, not later than ten (10) Business Days prior to the proposed consummation of the Drag-Along Sale by the Potential Purchaser. The Drag-Along Notice shall contain written notice of the exercise of the rights of the Selling Members

pursuant to Section 5.4(a), setting forth the applicable form of consideration, and price per Common Interest and Nexus Incentive Interest, to be paid by the Potential Purchaser and all other material terms and conditions of the Drag-Along Sale and a copy of the definitive purchase agreement or similar document providing for the Drag-Along Sale. The purchase price per Nexus Incentive Interest to be set forth in the Drag-Along Notice shall equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1.

(c)     At the closing of the Drag-Along Sale, the Potential Purchaser shall remit to each Compelled Member the total consideration due such Compelled Member in respect of the Voting Interests sold by such Compelled Member in the Drag-Along Sale, less a pro rata portion of any amounts to be held in escrow or subject to an earn-out or similar provision and of the expenses (including reasonable documented legal expenses) incurred by the Selling Members in connection with such sale for the benefit of and on behalf of all the Selling Members.

(d)     If the Selling Members shall not have completed the Drag-Along Sale on the later of (i) the date that is one hundred twenty (120) calendar days following delivery of the Drag-Along Notice and (ii) the fifth Business Day following the expiration or termination of all waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and receipt of all requisite consents or approvals under any other applicable regulatory regimes, to the extent applicable to such Drag-Along Sale, then no Member shall have any obligation with respect to the Drag-Along Sale set forth in such Drag-Along Notice; provided that the provisions of this Section 5.4 shall apply to any subsequent Drag-Along Sale.

(e)     Except as expressly provided in this Section 5.4, the Selling Members shall have no obligation to any Compelled Member to consummate any Drag-Along Sale (it being understood that any and all such decisions shall be made by the Selling Members in their sole discretion).  In the event that the Drag-Along Sale is not consummated by the Selling Members, the Compelled Members shall not be entitled to sell or otherwise dispose of any of their Voting Interests directly to any third party or parties pursuant to such Drag-Along Sale (it being understood that all such sales and other dispositions shall be made only on the terms and pursuant to the procedures set forth in this Article V).

(f)     In furtherance of, and not in limitation of, the foregoing, in connection with any Drag-Along Sale, each Member will (i) to the fullest extent permitted by law, raise no objections in its capacity as a Member against the Drag-Along Sale or the process pursuant to which it was arranged and waive all dissenters rights, appraisal rights and similar rights in connection with the Drag-Along Sale, (ii) vote or provide its written consent with respect to all of its Voting Interests in favor of the transaction pursuant to which the Transfer is effected and (iii) execute all documents containing terms and conditions consistent with the provisions of this Section 5.4 which are also executed by the Selling Members and are reasonably necessary to effect the transaction; provided, however, that no Compelled Member shall be required to enter into a release or non-compete or non-solicitation or no-hire provision, an exclusivity provision or any other provision that is not a strictly financial term related directly to such Drag-Along Sale; provided further that (A) the liability of the Members shall be several and not joint, (B) no Compelled Member shall have any liability to the Company or any other Member for any breaches of the representations, warranties or covenants of any other Member or the fraud or willful misconduct of any other Member, (C) any obligations of a Compelled Member under the agreement governing such transaction and any related escrow agreement shall be borne pro rata among the Members based on the proceeds and assets payable to such Members in such transaction (other than with respect to representations and warranties that relate specifically to a particular Member or its Voting Interests, which obligations shall be borne solely by such Member) and shall in no event exceed the actual proceeds and assets received by such Compelled Member in such transaction, and (D) no Compelled Member shall be required to make any representations or warranties or covenants in connection with such transaction except, as applicable, with

25

respect to (1) such Compelled Member's ownership of such Compelled Member's Voting Interests, (2) subject to the provisions of clauses (B) and (C) above, customary security holder indemnities for breaches of such Compelled Member's representations, warranties and covenants, (3) such Compelled Member's ability to convey title to such Compelled Member's Voting Interests free and clear of liens, (4) such Compelled Member's ability, power and authority to enter into the transaction, and (5) customary and reasonable covenants regarding confidentiality, publicity and similar matters that are consistent with those set forth in this Agreement.

(g)    Notwithstanding anything in this <u>Section 5.4</u> to the contrary, if the Selling Members or any of their respective Representatives, directly or indirectly, receive any consideration from the Potential Purchaser or any of the Potential Purchaser's Affiliates in connection with, or pursuant to oral or written agreements entered into substantially contemporaneously with, a Drag-Along Sale (including any payment for non-compete covenants, consulting arrangements or advisory or transaction services) other than (i) the consideration that is received by the Compelled Members on a pro rata basis as part of the Drag-Along Sale in accordance with <u>Section 5.4(h)</u> and (ii) consideration that is received by any Member for bona fide services rendered to the Company for periods commencing following the closing of a Drag-Along Sale on an arm's-length basis, then the Selling Members shall cause each of the Compelled Members to receive their pro rata share, determined by reference to the respective amounts of consideration otherwise payable to each Member (including the Selling Members) as part of the Drag-Along Sale, of such consideration.

(h)    All Members shall receive the same type and amount of consideration per share of Voting Interests in connection with a Drag-Along Sale (or if any Member is given an option as to the form of consideration to be received, all other Members shall be given the same option on the same terms).

(i)    Notwithstanding anything in this <u>Section 5.4</u> to the contrary, a Member may elect to have this <u>Section 5.4(i)</u> apply to a Drag-Along Transaction, and if a Member makes such election by providing notice to the Company of such election, the maximum amount payable to such Member that elects to have this provision apply to such Member (a "<u>Listing Rules Member</u>") pursuant to a sale or other disposition of such Listing Rules Member's Voting Interests and over which the applicable Listing Rules Member does not have sole discretion as to whether to enter into and consummate the applicable sale (including a Drag-Along Sale) (a "<u>Listing Rules Subject Sale</u>") shall be either (a) the minimum amount that would result in such Listing Rules Subject Sale constituting a UK Class 2 Transaction minus one pound Sterling (£1.00) or (b) such other amount as such Listing Rules Member notifies to the Company in writing from time to time; <u>provided</u> that Barclays is hereby deemed to be a Listing Rules Member for purposes of this section and is not required to provide notification to the Company of its election as such.

5.5    <u>Company Sale Right</u>.

(a)    At any time from and after the sixth (6th) anniversary of the date of this Agreement, Nexus, for so long as Nexus holds at least the Nexus Minimum Holdings, may, upon the written notice to the Board, cause the Company to pursue a Sale of the Company (a "<u>Sale Process</u>"), including:

(i)    (A) selecting an investment bank, providing confidential information to such investment bank and potential acquirers (pursuant to a confidentiality agreement), undertaking an auction or other sale process, selecting the winning bidder and negotiating the requisite documentation, and (B) assisting in the negotiation of the requisite documentation and preparation of schedules;

(ii)     providing confidential information and making the Company's properties, books and records, and other assets reasonably available for inspection by potential acquirers (pursuant to confidentiality agreements);

(iii)     establishing a physical or electronic data room including materials customarily made available to potential acquirers in connection with such processes; and

(iv)     making the Company's corporate office employees (including the chief executive officer) reasonably available for presentations, interviews and other diligence activities.

(b)     If the Sale Process results in a proposed Sale of the Company that is approved by the Board in accordance with the terms and conditions of this Agreement, the Company may engage in such Sale of the Company, and each Member will (i) to the fullest extent permitted by law, raise no objections in its capacity as a Member against such Sale of the Company or the Sale Process and waive all dissenters rights, appraisal rights and similar rights in connection with such Sale of the Company, (ii) vote or provide its written consent with respect to all of its Voting Interests in favor of the transaction pursuant to which the Transfer is effected and (iii) execute all documents containing terms and conditions consistent with the provisions of this Section 5.5(b) which are reasonably necessary to effect the transaction; provided, however, that no Member shall be required to enter into a release or non-compete or non-solicitation or no-hire provision, an exclusivity provision or any other provision that is not a strictly financial term related directly to such Sale of the Company. All Members shall receive the same type and amount of consideration per share of Common Interests in connection with a Sale of the Company pursuant to this Section 5.5 (or if any Member is given an option as to the form of consideration to be received, all other Members shall be given the same option on the same terms). However, holders of Nexus Incentive Interests shall receive the purchase price per Nexus Incentive Interest equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1.

5.6     Preemptive Rights.

(a)     If the Company or any Subsidiary shall propose to issue and sell Common Interests, other equity securities of the Company or any Subsidiary, or securities convertible into or exchangeable therefor (collectively, the "New Securities"), or enter into any contracts relating to the issuance or sale of any New Securities to any Person (the "Subject Purchaser"), in each case, other than with respect to Excluded Issuances, each Member who, together with its Affiliates, at the time of such proposed sale or issuance holds at least one percent (1%) of all issued and outstanding Voting Interests (for the purposes of this Section 5.6, a "Preemptive Rightholder") shall have the right (a "Preemptive Right") to purchase such Preemptive Rightholder's pro rata portion (based on ownership of Voting Interests) of the New Securities at the same price and on the same other terms proposed to be issued and sold (the "Preemptive Percentage"). The Company shall offer to sell to any such Preemptive Rightholder its Preemptive Percentage of such New Securities (the "Offered Preemptive Securities") and to sell to any such Preemptive Rightholder such of the Offered Preemptive Securities as shall not have been subscribed for by the other Preemptive Rightholders as hereinafter provided, at the price and on the terms described above, which shall be specified by the Company in a written notice delivered to any such Preemptive Rightholder which such notice shall also state (x) the number of New Securities proposed to be issued and (y) the portion of the New Securities available for purchase by such Preemptive Rightholder (the "Preemptive Offer"). The Preemptive Offer shall by its terms remain open for a period of at least ten (10) days from the date of receipt thereof and shall specify the date on which the Offered Preemptive Securities will be sold to accepting Members (which shall be at least fifteen (15) but not more than one hundred and fifty (150) days from the date of the Preemptive Offer). The failure of any Preemptive Rightholder to respond to the Preemptive Offer during the ten (10) day period shall be deemed a waiver of such Preemptive Rightholder's Preemptive Right in connection

with the sale of such Offered Preemptive Securities.

(b)    Each such Preemptive Rightholder shall have the right, during the period of the Preemptive Offer, to purchase any or all of its Preemptive Percentage of the Offered Preemptive Securities at the purchase price and on the terms stated in the Preemptive Offer.  Notice by any Preemptive Rightholder of its acceptance, in whole or in part, of a Preemptive Offer shall be in writing (a "Notice of Acceptance") signed by such Preemptive Rightholder and delivered to the Company prior to the end of the specified period of the Preemptive Offer, setting forth the Offered Preemptive Securities such Preemptive Rightholder elects to purchase.

(c)    Each such Preemptive Rightholder shall have the additional right to offer in its Notice of Acceptance to purchase any of the Offered Preemptive Securities not accepted for purchase by any other Preemptive Rightholders, in which event such Offered Preemptive Securities not accepted by such other Preemptive Rightholders shall be deemed to have been offered to and accepted by the Members exercising such additional right under this paragraph (c) pro rata in accordance with their respective Preemptive Percentage (determined without regard to those Preemptive Rightholders not electing to purchase their full respective Preemptive Percentage under the foregoing paragraph (a)) on the same terms and conditions as those specified in the Preemptive Offer, but in no event shall any such electing Preemptive Rightholder be allocated a number of New Securities in the Company in excess of the maximum number of Offered Preemptive Securities such Member has elected to purchase in its Notice of Acceptance.

(d)    At the closing of the purchase of New Securities subscribed for by the Members under this Section 5.6 the Company shall deliver certificates (if the Company has elected to issue certificates) representing the New Securities, and such New Securities shall be issued free and clear of all liens and the Company shall so represent and warrant, and further represent and warrant that such New Securities shall be, upon issuance thereof to the Members that elected to purchase New Securities and after payment therefor, duly authorized, validly issued, fully paid and non-assessable.  Each Preemptive Rightholder purchasing the New Securities shall deliver at the closing payment in full in immediately available funds for the New Securities purchased by it.  At such closing, all of the parties to the transaction shall execute (including the Company in respect of any Voting Interests in the event that any Member fails to do so within a reasonable time) such additional documents as are otherwise necessary or appropriate.

(e)    In its discretion, the Board may impose other reasonable and customary terms and procedures, such as setting a closing date, rounding the number of New Securities covered by this Section 5.6 to the nearest whole number or dollar of New Security, as applicable, and requiring customary closing deliveries in connection with any Preemptive Offer.

(f)    Sale to Subject Purchaser.  In the case of any Preemptive Offer, if Notices of Acceptance given by the Members do not cover in the aggregate all of the Offered Preemptive Securities, the Company may during the period of ninety (90) days following the date of expiration of such Preemptive Offer sell to any other Person or Persons all or any part of the New Securities not covered by a Notice of Acceptance, but only on terms and conditions that are no more favorable to such Person or Persons or less favorable to the Company than those set forth in the Preemptive Offer.  If such sale is not consummated within such ninety (90) day period for any reason, then the restrictions provided for herein shall again become effective, and no issuance and sale of New Securities may be made thereafter by the Company without again offering the same in accordance with this Section 5.6.  The closing of any issuance and purchase pursuant to this Section 5.6 shall be held at a time and place as the parties to the transaction may agree.

(g)    Preemptive Rights Exception.  Notwithstanding anything to the contrary herein, if the Board, acting in good faith, determines that it would be in the best interests of the Company to issue

New Securities which would otherwise be required to be offered to the Members under this <u>Section 5.6</u> prior to making such offer, the Company may issue such New Securities to a Person (an "<u>Accelerated Acquirer</u>") without first complying with the procedures set forth in <u>Section 5.6(a)</u>; provided, however, that within ten (10) Business Days after the closing of such issuance, the Company shall provide to each Preemptive Rightholder: (i) written notice of such issuance and the Preemptive Offer required by <u>Section 5.6(a)</u> and (ii) the Preemptive Right to purchase such Member's Preemptive Percentage of the New Securities that such Member would have been entitled to purchase pursuant to the procedures set forth in <u>Section 5.6(a)</u>, <u>Section 5.6(b)</u>, and <u>Section 5.6(c)</u> had this <u>Section 5.6(g)</u> not been invoked, subject to such eligible Member's delivery of a Notice of Acceptance pursuant to <u>Section 5.6(b)</u> prior to the later of the end of the specified period of the Preemptive Offer and five (5) Business Days after receipt of notice of the Preemptive Offer, and which shall be on the same terms and conditions provided in the provisions of this <u>Section 5.6</u> relating to the Preemptive Right, the closing of such purchase to take place as soon as reasonably practicable.  If one or more Members exercise the election to make a purchase, the Company shall give effect to each such exercise by (i) requiring that the Accelerated Acquirer (in which case the Accelerated Acquirer hereby agrees to) sell down a portion of its New Securities, (ii) issuing additional New Securities to such Member or (iii) a combination of (i) and (ii), so long as such action effectively provides such Member with the same number of New Securities that such Member would have been entitled to had this <u>Section 5.6(g)</u> not been invoked.

5.7   <u>Debt Preemptive Rights</u>.

(a)   In the event the Company or any of its Subsidiaries issues any debt securities to, or borrows money (in the form of a Term Loan or otherwise) from, one or more Members or their Affiliates directly or indirectly, other than: (1) borrowings under the Company's and its Subsidiaries' existing credit facilities, or (2) borrowings in which Jefferies is acting in its capacity as lender or arranger and at least five (5) Directors (not counting the Industry Director for this purpose) have approved waiver of the preemptive rights set forth in this <u>Section 5.7</u> with respect to such loan, each Member who, at the time of such proposed sale or issuance holds at least one percent (1%) of all issued and outstanding Voting Interests(for the purposes of this <u>Section 5.7</u>, each "<u>Debt Right Holder</u>") shall have the right to purchase or lend up to an amount of such debt securities or borrowed amounts (its "<u>Allocated Share</u>") equal to (1) the product of (x) the principal amount of debt securities being issued or the principal amount being borrowed, as applicable, and (y) such Debt Right Holder's Percentage Interest.  If the Company intends to issue any debt securities to, or borrow money from, one or more Members or their Affiliates, directly or indirectly, the Company shall deliver a written notice (a "<u>Debt Preemptive Rights Notice</u>") to the Debt Right Holders specifying (i) the amount of its Allocated Share, (ii) the anticipated closing date; and (iii) any other material terms of such issuance or borrowing.

(b)   Within five (5) Business Days following receipt of a Debt Preemptive Rights Notice, each Debt Right Holder shall deliver to the Company a written notice (a "<u>Debt Exercise Notice</u>") (i) indicating whether it will exercise its right to participate in the offering or borrowing and (ii) specifying the principal amount it wishes to purchase or lend in connection therewith up to its Allocated Share.  If any Debt Right Holder fails to deliver a Debt Exercise Notice to the Company within such fifteen (15) Business Day period, such Debt Right Holder shall be deemed to have elected not to participate in such offering or borrowing.

(c)   To the extent any Debt Right Holder fails to exercise fully its aggregate Preemptive Rights granted pursuant to this <u>Section 5.7</u> with respect to such offering or borrowing, the Company shall have ninety (90) days thereafter to sell such debt securities or borrow such amounts upon terms not materially more favorable, taken as a whole (as determined conclusively by the Board in good faith), than specified in the Debt Preemptive Rights Notice.

(d)    The Preemptive Rights set forth in this Section 5.7 may not be assigned or transferred, except that such right may be assigned by any Debt Right Holder to any Affiliate of such Debt Right Holder.

5.8    General Restrictions on Transfer; Admission of New Members.

(a)    Any Person acquiring one or more Voting Interests from the Company or from any Member in accordance with this Agreement shall, unless such acquiring Person is already a Member as of immediately prior to such acquisition, be admitted to the Company as a Member only upon execution of a joinder to this Agreement substantially in the form attached hereto as Exhibit D.

(b)    Notwithstanding anything to the contrary contained in this Agreement, no Transfer of Voting Interests issued to a Member pursuant to the Plan or in connection with the exercise of the Warrants shall be made if such Transfer or issuance (i) would result in any circumstances that the Board determines could require the Company to file reports under the Exchange Act, (ii) would violate any state or U.S. federal securities laws, (iii) would require the Company to register as an investment company under the Investment Company Act of 1940, as amended, (iv) would require the Company to register as an investment adviser under state or U.S. federal securities laws, or (v) would, as reasonably determined by the Board, cause the Company to be treated as a publicly traded partnership for U.S. federal income tax purposes.  If any Member purports to Transfer Voting Interests to any Person in a transaction that would violate the provisions of this Article V or that would violate any applicable federal or state securities law, such Transfer shall be void *ab initio* and of no effect.

(c)    No Transfer of Voting Interests may be made to any Competitor of the Company without the approval of the Board, other than in a Drag-Along Sale in accordance with Section 5.4 or a Sale of the Company pursuant to Section 5.5.

5.9    Resignation.  No Member shall have the right or power to resign, withdraw or retire from the Company, except upon a Transfer of all of such Member's Voting Interests in compliance with and subject to, the provisions of this Article V.

5.10    Record of Members.  The Board shall be responsible for maintaining, at the Company's principal place of business, an up-to-date list of all Members ("Member List"), which shall reflect the name of each Member and the number Voting Interests and Percentage Interest held by such Member.  The Board shall be required to update the Member List and Exhibit B of this Agreement from time to time so as to accurately reflect the information contained thereon upon (a) the resignation of a Member, (b) the admission of a new Member or (c) any change in the number of Voting Interests owned by a Member.

5.11    Registration Rights.  The Members shall have the registration rights, and Transfers shall be subject to terms and conditions, set forth on Annex I, which is hereby made part of this Agreement as if it was set forth in full in this Section 5.11.

5.12    Mandatory Repurchase of Interests.  Notwithstanding any provisions hereof to the contrary, in the event that a Member determines in its sole discretion that (i) the holding of any rights, interests or obligations with respect to the Company or this Agreement will or could be unlawful or a breach of any Banking Laws or any other applicable laws, whether U.S. or foreign, or (ii) there has been, is, or could be, an act, matter, event or circumstance related to the Company that results in or could result in damage to the reputation of the Member or any of its Affiliates, upon prior written notice to the Company, the Member shall have the right to require the Company to repurchase its rights, interests and obligations with respect to this Company or this Agreement for $1.00.  In connection with a Sale of the Company, the Company

30

shall cause the terms of the Voting Interests to include provisions which give effect to the Member's rights provided in this Section 5.12.

## Article VI
## Governance

6.1     Board of Directors.

(a)     Except for situations in which the approval of any Member is required by this Agreement, management of the Company shall be vested in the Board. "Board" means all the Persons elected and serving from time to time as the Board in accordance with Section 6.1(b) and Section 6.2. Each member of the Board is referred to as a "Director". There is no limit on the number of terms a Director may serve on the Board and a Director need not be a resident of the State of Delaware or a Member of the Company.

(b)     Subject to the provisions of Section 6.13 to the extent applicable, (i) this Agreement is not intended to, and does not, create or impose any fiduciary duty on any Director, and each of the Members and the Company hereby waive any and all fiduciary duties that, absent such waiver, may be implied by applicable law and, in doing so, acknowledge and agree that the duties and obligations of each such Director to the Company are only as expressly set forth in this Agreement, and (ii) the provisions of this Agreement, to the extent that they restrict the duties and liabilities of any Director otherwise existing at law or in equity, are agreed by the Members and the Company to replace such other duties and liabilities of any such Director. Each Director's liability to the Company, any Member, any other Director or any other Person for breach of duties (including fiduciary duties) to the Company, any Members, any other Directors or any other Person by reason of or arising from or relating to the operations, business or affairs of, or any action taken or failure to act on behalf of, the Company, shall be limited to the fullest extent permitted by Delaware law, except to the extent that it is determined by a final, non-appealable order of a court of competent jurisdiction that any of the foregoing was caused by a bad faith violation of the implied contractual covenant of good faith and fair dealing or actual fraud or willful misconduct, or, with respect to any criminal action or proceeding against a Director, that such Director had reasonable cause to believe such Director's conduct was unlawful.

6.2     Appointment of Directors. The Board shall consist of eight (8) Directors, of which (subject to Section 6.3):

(a)     one (1) Director shall be the Chief Executive Officer of the Company (the "CEO Director"), who initially shall be [●];

(b)     three (3) Directors shall be appointed by Nexus (the "Nexus Director"), who initially shall be [●], [●] and [●]; provided that in the event the Percentage Interest of Nexus (collectively with its Affiliates) is (i) 30% or greater, than Nexus shall have the right to appoint three (3) Directors, (ii) is less than 30% but greater than 15%, Nexus shall have the right to appoint two (2) Nexus Directors, and one (1) Nexus Director shall immediately resign from the Board, (iii) is less than 15% but greater than 7.5%, Nexus shall have the right to appoint one (1) Nexus Director, and any additional Nexus Directors shall immediately resign from the Board, and (iv) is less than 7.5%, Nexus shall lose the right to appoint an Nexus Director and all Nexus Directors shall immediately resign from the Board;

(c)     one (1) Director shall be appointed by the mutual agreement of both Jefferies and Mockingbird (the "Jefferies/Mockingbird Director"). To the extent that Jefferies or Mockingbird, as the case may be, Transfers more than fifty percent (50%) its respective Percentage Interests as of the Effective Date to Persons other than their respective Affiliates (including Related Funds) that does not result in the

31

Transfer of such Member's respective Designation Rights as set forth in Section 6.3(b) (the Member making such a Transfer, the "Exiting Designating Member"), immediately following such Transfer, the Jefferies/Mockingbird Director shall be selected solely by the non-Exiting Designating Member for so long as such non-Exiting Designating Member holds at least the lesser of (i) 75% of its Percentage Interest as of the Effective Date and (ii) the number of Voting Interests such non-Exiting Designating Member held on the date it was notified that the Exiting Designating Member had agreed to, or consummated, the Transfer resulting in its loss of its Designation Right (the "Remaining Designation Threshold"); provided, however, that the Remaining Designation Threshold shall be no less than 50% of the non-Exiting Designating Member's Percentage Interest as of the Effective Date. Once the non-Exiting Designating Member ceases to have a Percentage Interest in excess of the Remaining Designation Threshold, the Jefferies/Mockingbird Director shall immediately resign from the Board and the Director seat formerly occupied by the Jefferies/Mockingbird Director shall be filled pursuant to Section 6.3(d). For the avoidance of doubt, to the extent either Jefferies or Mockingbird Transfers its Designation Right in compliance with Section 6.3(b), the Transferee of such Designation Right shall not be deemed to be an Exiting Designating Member and shall thereafter, in all respects, assume the same rights of Jefferies or Mockingbird, as the case may be, as set forth in this Agreement and be subject to the same conditions (including as set forth in this Section 6.2(c)) as set forth in this Agreement. The initial Jefferies/Mockingbird Director shall initially be [●];

(d)     one (1) Director shall be appointed by the mutual agreement of both Golub and Soundpoint (the "Golub/Soundpoint Director").  To the extent that Golub or Soundpoint Transfers more than fifty percent (50%) its respective Percentage Interests as of the Effective Date to Persons other than their respective Affiliates (including Related Funds) that does not result in the Transfer of such Member's respective Designation Rights as set forth in Section 6.3(b), immediately following such Transfer, the Golub/Soundpoint Director shall be selected solely by the non-Exiting Designating Member for so long as such non-Exiting Designating Member holds at least the lesser of (i) 75% of its Percentage Interest as of the Effective Date and (ii) the Remaining Designation Threshold; provided, however, that the Remaining Designation Threshold shall be no less than 50% of the non-Exiting Designating Member's Percentage Interest as of the Effective Date. Once the non-Exiting Designating Member ceases to have a Percentage Interest in excess of the Remaining Designation Threshold, the Golub/Soundpoint Director shall immediately resign from the Board and the Director seat formerly occupied by the Golub/Soundpoint Director shall be filled pursuant to Section 6.3(d). ). For the avoidance of doubt, to the extent either Golub or Soundpoint Transfers its Designation Right in compliance with Section 6.3(b), the Transferee of such Designation Right shall not be deemed to be an Exiting Designating Member and shall thereafter, in all respects, assume the same rights of Golub or Soundpoint, as the case may be, as set forth in this Agreement and be subject to the same conditions (including as set forth in this Section 6.2(c)) as set forth in this Agreement. The initial Golub/Soundpoint shall initially be [●];

(e)     one (1) Director who is an industry expert and independent from the Company and any of its Affiliates (the "Independent Director") and who shall initially be [●] (the "Initial Independent Director").  Upon the resignation or removal of the Initial Independent Director, each subsequent Independent Director shall be selected  a vote of the Board; and

(f)     one (1) Director who is a [a nurse, or otherwise affiliated with [●]] (the "Industry Director"). For the avoidance of doubt, the Industry Director shall not be entitled to vote on any matters which come before the Board, and shall not be counted for the purposes of calculating a quorum pursuant to Section 6.8, or whether a matter has received the approval of a majority of the Board. Upon the resignation or removal of the Industry Director by the Board pursuant to Section 6.4, each subsequent Industry Director shall be selected by the Board.

6.3     Designation Right.

(a)      Each right of an individual Member to designate or nominate a Director shall be deemed a "Designation Right." For the avoidance of doubt, any Director seat not subject to a Designation Right shall be filled by (i) a majority of the holders of the issued and outstanding Voting Interests acting by written consent or (ii) a plurality vote of the holders of the issued and outstanding Voting Interests at a special or annual election of such Director (each such Director, a "Common Director").

(b)      Transfer of Designation Rights.  A Member who holds a Designation Right may transfer such right in connection with a Transfer of Voting Interests representing more than fifty percent (50%) of the Voting Interests such Member holds as of the Effective Date in a single Transfer or a series of Transfers.  Notwithstanding the foregoing, in the event that a Member Transfers more than fifty percent (50%) of its Voting Interests to the Company, the Designation Right shall not transfer and the respective Director shall either (i) be replaced with a Common Director pursuant to Section 6.3(d), or (ii) subject to Section 6.2, in the event a Designation Right is shares between two Members, then the Designation Right shall become the sole right of the non-Transferring Member. For the avoidance of doubt, the foregoing transfer of such Designation Right shall remain subject to the same fall-aways, and to the requirements to designate jointly, as set forth in Section 6.2.

(c)      Right to Appoint Observer.  If a Member who holds a Designation Right: (i) appoints a Director who is not employed by or otherwise affiliated with such Member, but who has, in such Member's good faith view, relevant industry or operating experience, or (ii) irrevocably waives such Designation Right, such Member shall have the right to appoint an Observer pursuant to Section 6.9.  For the avoidance of doubt, if two Members jointly hold a Designation Right and the Director they designate is the employee of, or otherwise affiliated with, one such Member, the other Member shall have the right to appoint an Observer for so long as such Director continues to serve, and if the Director they designate is not the employee of, or otherwise affiliated with, either such Member, each such Member shall have the right to appoint an Observer for so long as such Director continues to serve.  Notwithstanding the foregoing, if a Designation Right is shared between two Members and one Member ceases to hold a Designation Right due to a decrease in such Member's Percentage Interests as set forth in Section 6.2, neither such Member will have the right to appoint an Observer.

(d)      Termination of Designation Right.  If a Designation Right terminates in accordance with the terms hereof or a Member with a Designation Right irrevocably waives such Designation Right, then the Director position that had related to such Designation Right shall instead become a Common Director position; provided that the Director serving pursuant to such Designation Right at the time of its termination shall continue to serve in such position until his/her successor is duly elected pursuant to either Section 6.2 or Section 6.3(a), as applicable.

6.4      Removal of Directors.  Each Director shall hold office from the time of his or her appointment until his or her resignation or removal.  Each Director may be removed or replaced at any time, with or without cause, as determined by a majority vote of the Members entitled to appoint or select such Director; provided that the Industry Director may be removed by a vote of the Board.

6.5      Vacancies.  Any Director may resign at any time upon written notice to the Company.  Any such resignation shall take effect at the time specified therein or, if the time be not specified, upon receipt by the Company thereof, and the acceptance of such resignation, unless required by the terms thereof, shall not be necessary to make such resignation effective.  In the event that any Director resigns, is removed from the Board or dies, a successor Director shall be elected in accordance with Section 6.2 to fill such vacancy.

6.6     Authority and Duties of the Board and Board Committees.

(a)     Except as set forth in Sections 6.10(a), 6.10(b), 6.10(c), 6.10(d), and 9.2(b), the Board, acting as a body in accordance with the affirmative votes required by this Agreement (and no Director, individually), shall have the right, power and authority to oversee the business and affairs of the Company and to do all things necessary to manage the business of the Company, and the Board is hereby authorized to take any action of any kind and to do anything and everything the Board deems necessary or appropriate in accordance with the provisions of this Agreement and applicable law.

(b)     The Board may from time to time designate one or more committees. To the extent authorized by the Board and permitted by this Agreement and applicable law, a committee shall have and may exercise specific powers of the Board in the management of the business and affairs of the Company. For so long as Nexus has the right to appoint two (2) Directors pursuant to Section 6.2(b) (the "Nexus Minimum Holdings"), Nexus shall have the right to have one Director on each committee of the Board.

6.7     Meetings; Telephonic Meetings.

(a)     The Board and any committee thereof may hold regular or special meetings within or outside of the State of Delaware. Regular meetings of the Board shall be held at least quarterly, and regular or special meetings of the Board or any committee thereof may otherwise be held from time to time, in each case at such time and at such place as may be determined by a majority of all the Directors serving on the Board or on such committee, as applicable; provided that at least seventy-two (72) hours advance notice of any such meeting shall be provided to each Director serving on the Board or such committee. Any Director may call a special meeting of the Board or of a committee thereof, as applicable, on notice of not less than seventy-two (72) hours' advance notice to all the other Directors serving on the Board or such committee. Any notice of a regular or special meeting of the Board or a committee thereof shall be given in writing to each applicable Director, at the address provided by such Director to the Board or at such other address that such Director shall have advised the Company to use for the purpose of delivering notice, or via electronic mail. Any such notice provided shall be deemed to be given when delivered in accordance with this Section 6.7(a). Each notice of a regular or special meeting of the Board shall set forth the time, date, location and agenda for the meeting in reasonable detail and attach the relevant papers to be discussed at the meeting and all available data and information relating to matters to be discussed at the meeting.

(b)     Any Director that is entitled to notice of a meeting of the Board or any committee thereof may waive such notice in writing, whether before or after the time of such meeting. Attendance by a Director at a meeting of the Board or any committee thereof shall constitute a waiver of notice of such meeting by such Director, except when such Director attends such meeting for the express purpose of objecting, at the beginning of such meeting, to the transaction of any business at such meeting because such meeting is called or convened in violation of this Agreement or any applicable law.

(c)     Directors may participate in and hold a meeting of the Board by means of conference telephone or similar communications equipment by means of which all Persons participating in the meeting can hear each other. Participation in a meeting by such means shall constitute presence in Person at the meeting, except where a Director participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

6.8     Quorum; Acts of the Board and Board Committees.

(a)     At all meetings of the Board, a majority of the Directors then serving on the Board, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum

Holdings and disregarding the Industry Director for this purpose, shall constitute a quorum for the transaction of business by the Board.  At all meetings of any committee of the Board, a majority of the Directors then serving on such committee, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings and disregarding the Industry Director for this purpose, shall constitute a quorum for the transaction of business by such committee.  Each Director, whether in respect of matters brought before the Board or any committee thereof, shall have one (1) vote in respect of each matter submitted for consideration and approval, except that the Industry Director shall not have any votes.  Except as otherwise provided in this Agreement or required by applicable law, the approval of a majority of the Directors present at any meeting of the Board (disregarding the Industry Director for this purpose), shall be required for any act of the Board.  Except as otherwise provided in this Agreement or required by the Board or applicable law, the scope of authority of any committee of the Board (including the form of charter of any such committee) and the Directors whose approval is required for any act of any committee of the Board shall be specified by the Board in resolutions establishing such committee approved in accordance with Section 6.6(b).  If a quorum shall not be present at any meeting of the Board or any committee thereof, the Directors present at such meeting may adjourn the meeting from time to time, with notice of the time and place of the adjourned meeting provided to any Director who is not in attendance at the meeting, until a quorum shall be present.  If a Nexus Director's presence is required to establish a quorum pursuant to this Section 6.8(a), and no Nexus Director is present for two (2) consecutive meetings called for the same purpose pursuant to written notice provided to all of the Directors pursuant to Section 6.7(a), then the presence of a Nexus Director shall no longer be required to constitute a quorum for the next meeting called for such purpose.

(b)     Any action required or permitted to be taken at any meeting of the Board or any action that may be taken at a meeting of a committee of the Board may be taken without a meeting if the action is taken in writing (including by electronic transmission) by all of the Directors of the Board or of such committee, as the case may be, who are entitled to vote on such action and the writing or writings are filed with the minutes of proceedings of the Board or such committee.

(c)     For so long as Nexus holds the Nexus Minimum Holdings, Nexus shall designate a chair of the Board (the "Chairman") who shall preside at all meetings of the Board.  The initial Chairman shall receive compensation terms substantially consistent with those [attached as Annex I to this Agreement].  After Nexus no longer holds the Nexus Minimum Holdings, the Board shall elect the chair of the Board who shall preside at all meetings of the Board.

6.9     Observer Rights.  A Member with a Designation Right may designate a non-voting observer to the Board (the "Observer") in accordance with Section 6.3(c), which Observer will be entitled (i) to attend all meetings of the Board and all committees and subcommittees thereof and (ii) to participate in the discussion of matters addressed at such meetings (including telephonically, if the Observer elects).  Subject to such restrictions as the Board may establish (which may include a requirement that the Observer enter into a confidentiality agreement with the Company in form and substance satisfactory to the Board), the Observer shall receive copies of all materials provided to the members of the Board and all committees and subcommittees thereof in connection with such meetings at the same time and in the same manner as such materials are provided to such members.  Notwithstanding the foregoing, (x) the Board or any committee of it may restrict any Person's attendance as an Observer at any portion of a meeting if the Board or any committee of it makes a good-faith determination that such Person has a conflict of interest with respect to the subject matter of such portion of the meeting or that the attendance by such Person at such portion of the meeting would cause the Company to lose the benefit of protection in respect of what would otherwise be privileged communications, and (y) the failure of any Observer to attend any meeting of the Board or any committee of it shall not prevent any such meeting from proceeding or otherwise affect the validity of such meeting or any actions taken at such meeting.  The Observer shall receive reimbursement from the Company with respect to meetings of the Board or committees or subcommittees thereof for

reasonable out-of-pocket travel expenses incurred by the Observer in connection with attendance at any and all such meetings to the same extent, and on the same general terms, as other members of the Board receive such reimbursement.

6.10    Special Approval Requirements.

(a)    Notwithstanding anything to the contrary contained in this Agreement, and subject to any applicable approval requirements set forth in Section 6.10(b), Section 6.10(c) and Section 6.10(d), the following actions by the Company or any of its Subsidiaries shall require the approval of, and shall be authorized upon obtaining the approval of, each of (i) the Board and (ii) the holders of a majority of the outstanding Voting Interests:

(i)    Any Sale of the Company other than a Drag-Along Sale consummated pursuant to Section 5.4 or Section 5.5 hereof; and

(ii)    Any agreement or commitment to do the foregoing.

(b)    The Company and its Subsidiaries will not enter into any agreement or other transaction with any Affiliates or Members of the Company (including portfolio companies of any Members) (each, an "Interested Party") without the approval of a majority of the Directors then serving on the Board, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings and is not an Interested Party, in each case who are not affiliated with such Interested Party or any of such Interested Party's executive officers, directors or Affiliates.  For the avoidance of doubt, such approval shall not be required for (i) transactions pursuant to Section 5.6 hereof; (ii) the exchange of all or part of indebtedness into equity securities of the Company from time to time so long as such exchange is approved by the Board and offered to all equity holders who are debt holders of such instrument on a *pro rata* basis; (iii) to approve transactions with Acosta, Inc. (or any of its Affiliates) or an operating advisor of Nexus so long as the terms of any such transaction are on arm's length terms, and (iv) the Consulting Agreement.

(c)    The commencement of any liquidation, dissolution or voluntary Bankruptcy, administration, insolvency proceeding, recapitalization or reorganization of the Company or its Subsidiaries in any form of transaction, any arrangement with creditors, or the consent to entry of an order for relief in an involuntary case, or the conversion of an involuntary case to a voluntary case, or the consent to any plan of reorganization in any involuntary or voluntary case, or the consent to the appointment or taking possession by a receiver, trustee or other custodian for all or any portion of its property, or otherwise seek the protection of any applicable Bankruptcy or insolvency law shall require the approval of at least five (5) Directors (which shall not include the Industry Director), including at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings.

(d)    Notwithstanding anything to the contrary contained in this Agreement, the Company and its Subsidiaries will not take any of the following actions (each, a "Significant Approval Matter") without the approval of (i) at least one Director that is not a Nexus Director, the CEO Director, the Industry Director or a Director with respect to which Nexus or any of its Affiliates has been assigned Designation Rights pursuant to Section 6.3(b), and (ii) each Significant Holder:

(i)    approving the annual budget for any fiscal year of the Company and its Subsidiaries and the business plan;

36

(ii)    appointing, removing or making any changes to the compensation of, the Chief Executive Officer of the Company or any employee who reports directly to the Chief Executive Officer of the Company;

(iii)    entering into, amending or terminating any material contract that is not previously contemplated in the annual budget;

(iv)    the establishment, adoption, entering into amendment or modification to (including increasing the authorized number of equity interests issuable thereunder) or termination of any employee incentive plan of the Company or any of its Subsidiaries;

(v)    the repurchase, redemption or other retirement of any equity interests of the Company or any of its Subsidiaries other than repurchases by the Company of securities held by employees of the Company or any of its Subsidiaries upon termination of employment pursuant to the terms of any employee incentive plan or Award Agreement approved by the Board;

(vi)    the guarantee, assumption, incurrence or refinancing of indebtedness for borrowed money by the Company or any of its Subsidiaries other than: (A) indebtedness incurred in the ordinary course of business under the First Lien Credit Agreement; and (B) trade indebtedness incurred in the ordinary course of business by the Company or any of its Subsidiaries;

(vii)    incurring or permitting to exist, any encumbrance on any material assets of the Company or its Subsidiaries, or permitting the Company or its Subsidiaries to provide or give any loans, guarantees or security in favor of any Person, other than in the ordinary course of business in line with the First Lien Credit Agreement;

(viii)    initiating, conducting, or entering into any settlement agreement or arrangement with respect to, any litigation, claims, suits, investigations, arbitrations or mediation proceedings material to the business of the Company and its Subsidiaries, taken as a whole, in excess of $[•] million;

(ix)    fundamental changes to the scope or nature of the Company's or any of its Subsidiaries' business and operations;

(x)    any Sale of the Company other than a Drag-Along Sale consummated pursuant to Section 5.4 or Section 5.5 hereof;

(xi)    any acquisition or disposition of a brand;

(xii)    the determination of Fair Market Value;

(xiii)    the making of distributions with respect to any equity interests of the Company or any of its Subsidiaries;

(xiv)    any Conversion as set forth in Section 6.11(a) hereof;

(xv)    the termination of the Consulting Agreement; and

(xvi)    any agreement or commitment to do any of the foregoing, whether by amendment, consolidation or otherwise.

6.11    Qualified IPO; Conversion to a Corporation.

(a)    In connection with a Qualified IPO, the Board may cause the Company to reorganize into a corporation or use any other structure or means to effect such a Qualified IPO or listing, including by the conversion, recapitalization, reorganization or exchange of securities of the Company or any portion of the Company or any Subsidiary of the Company into one or more corporations, limited liability companies, limited partnerships or other business entities (such conversion, a "Reorganization"), in each case without the need to obtain approval from the holders of the outstanding Voting Interests; provided that the Company shall not consummate any Reorganization unless the Board reasonably expects the Qualified IPO to be consummated.  The Members shall take all actions reasonably requested by the Board in connection with the consummation of such Reorganization, including consenting to, voting for and waiving any dissenters rights, appraisal rights or similar rights and participating in any exchange or other transaction required in connection with such Reorganization. No Member shall have any right to vote, consent to or approve any Reorganization. The Company shall pay any and all reasonable organizational, legal and accounting expenses and filing fees incurred by the Company or the Members in connection with such Reorganization and the Board may select, on behalf of the Company, any accounting firm, legal counsel, underwriters or any other providers in connection with such Reorganization.

(b)    In connection with any Reorganization involving a Transfer of Voting Interests, Warrants or other Securities, each Member agrees to the Transfer of its Voting Interests, Warrants or other Securities in accordance with the terms of conversion or exchange, as applicable, as provided by the Board, and to execute in the name and on behalf of such Member any agreement, certificate, instrument or document to be delivered by the Member in connection with any such Reorganization as determined by the Board.

(c)    Each of the Members shall take all necessary or desirable actions reasonably requested by the Board in connection with the consummation of a Qualified IPO, including compliance with the requirements of all laws and regulatory bodies that are applicable or that have jurisdiction over such Qualified IPO.

6.12    Officers.  The Board shall appoint such other officers and agents of the Company as it shall from time to time deem necessary and may assign any title to such officer or agent as it deems appropriate. Such officers and agents shall have such terms of employment, shall receive such compensation and shall exercise such powers and perform such duties as the Board shall from time to time determine.  Any number of offices may be held by the same Person.  The Board shall have the authority to remove any officers or agents with or without cause.

6.13    Officers as Agents; Duties of Officers.  The officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business, and the actions of the officers taken in accordance with such powers shall bind the Company.  Each officer of the Company shall owe the same fiduciary duty to the Company and the Members that such individual would owe to a corporation and its stockholders thereof under the laws of the State of Delaware.

6.14    Powers of Members.  Except as otherwise specifically provided by this Agreement or as required by the Act, no Member shall have the power to act for or on behalf of or to bind, the Company. For the avoidance of doubt, with respect to actions taken by Members pursuant to this Agreement, the Members may act without a meeting by written consent signed by the holders of Voting Interests having not fewer than the minimum number of votes that would be necessary to authorize or take such action at a meeting.

6.15   Confidentiality.  No Member shall, (a) without the Company's prior written consent, disclose to any Person other than an Exempt Person of such Member any confidential, non-public information of the Company or any Member obtained from the Company or one of its Affiliates concerning, without limitation, the following:  (i) any dealings between the Company or any of its Subsidiaries, on the one hand, and any material customer or vendor or any employee, director, officer, Director or Member of the Company or such Subsidiary, on the other hand; (ii) any financial information or results of operations of the Company or any of its Subsidiaries; or (iii) any business plans, pricing information, customer information or regulatory information of the Company or any of its Subsidiaries (collectively, "Company Confidential Information"), or (b) disclose to any Person other than an Exempt Person of such Member any confidential, non-public information obtained from the Company or one of its Affiliates (including the Members) relating to another Member (the "Member Confidential Information") without such Member's prior written consent; provided, however, that, notwithstanding anything to the contrary in the foregoing, neither Company Confidential Information nor Member Confidential Information shall include, with respect to any Person, any information that:  (i) is or becomes generally available to the public other than as a result of a disclosure directly or indirectly by any Person or any of its Affiliates or any of their respective directors, officers, managers, partners, members, employees, attorneys, advisors or other representatives (collectively, "Representatives") in breach of this Section 6.15; (ii) is disclosed by another Person not known by the recipient to be under a confidentiality agreement or obligation to the Company or such other Member not to disclose such information; or (iii) is independently developed by such Person or any of its Affiliates or any of their respective Representatives without derivation from, reference to or reliance upon any Company Confidential Information or Member Confidential Information, as the case may be; provided further that, notwithstanding anything to the contrary in this Agreement, any Member may disclose any Company Confidential Information or Member Confidential Information, as the case may be, (A) to the extent required by any applicable law, statute, rule or regulation or any request, order or subpoena issued by any court or other governmental entity; provided that, to the extent permitted by law, the Member required to make such disclosure shall provide to the Board prompt notice of such disclosure; provided further that to the extent such Member or its Representatives are subject to examination by a regulatory or self-regulatory authority, bank examiner or auditor, notice to the Board shall not be required where disclosure is in connection with a routine audit or examination by, or a blanket document request from, such auditor or a regulatory or governmental entity that does not reference the Company, its Subsidiaries or this Agreement, (B) as part of such Member's normal reporting, rating or review procedure (including normal credit rating or pricing process) or in connection with such Member's or its Affiliates' normal fund raising, marketing, informational or reporting activities or (C) to any bona fide prospective purchaser of the equity or assets of such Member or its Affiliates or the Voting Interests held by such Member or prospective merger partner of such Member or its Affiliates, in each case other than a Competitor unless approved by the Board; provided that in the case of this clause (C) prior written notice of any disclosure of Company Confidential Information or Member Confidential Information is given to the Company and such prospective purchaser or merger partner agrees in writing prior to such disclosure to be bound by the provisions of this Section 6.15 (which agreement shall provide that the Company shall be a third party beneficiary with full enforcement rights thereunder).  Each Member shall be responsible for any breach of this Section 6.15 by any of its Representatives and agrees to use commercially reasonable efforts to cause its Representatives to treat all Company Confidential Information and Member Confidential Information in the same manner as such Member would generally treat its own confidential, non-public information.

6.16   Regulated Holders.  Notwithstanding anything to the contrary in this Agreement, any portion of a Regulated Holder's Voting Interests in excess of 4.99% of the total issued and outstanding Voting Interests (excluding, for purposes of calculating this percentage, portions of any Voting Interests that are non-voting securities pursuant to this Agreement) shall be automatically deemed to be, and subject to the restrictions of, a nonvoting security for purposes of the U.S. Bank Holding Company Act and 12 C.F.R. Part 225 (Subpart A) and shall not be entitled to vote or consent on any matter other than matters permissible for nonvoting securities pursuant to 12 C.F.R. § 225.2(q)(2).

6.17    <u>Partnership Representative</u>.  For purposes of Code Section 6223(a) (and any similar provision of state, local or foreign law), the Partnership Representative shall be a Person designated by the Board (and, for each taxable year of the Company, the Company shall appoint an individual subject to the control of, and selected by, the Partnership Representative as the Designated Individual, and the Company shall revoke such appointment if and only if instructed to do so by the Partnership Representative or such individual ceases to be subject to the control of the Partnership Representative).  The Partnership Representative and Designated Individual are specifically directed and authorized to take whatever steps may be necessary or desirable to perfect such designations, including filing any forms or documents with the Internal Revenue Service and taking such other action as may from time to time be required under the Regulations.  Expenses incurred by the Partnership Representative or Designated Individual acting in its capacity as such shall be borne by the Company.  Such expenses shall include fees of attorneys and other tax professionals, accountants, appraisers and experts, filing fees and reasonable out-of-pocket costs.  Each Member (and each former Member) agrees to use commercially reasonable efforts to provide the Partnership Representative and Designated Individual all information required to facilitate the making of an election under Code Section 6226 (or any similar provision of state or local law) or to facilitate the making of the modifications described in Code Section 6225(c) (or any similar provision of state or local Law). The Partnership Representative and Designated Individual shall comply with any reasonable request of a Member to modify any partnership audit adjustment attributable to such Member by application of Code Section 6225(c) (or any similar provision of state or local law).  The Partnership Representative and Designated Individual shall keep the Members fully informed of any inquiry, examination or proceeding, including promptly notifying Members of the beginning and completion of an administrative proceeding involving the Company promptly upon such notice being received by the Partnership Representative or Designated Individual.  The provisions contained in this Section 6.17 shall survive the termination of the Company and the Transfer of any Interests.

## Article VII
## <u>Powers, Duties and Restrictions of the Company and the Members;</u>
## <u>Other Provisions Relating to the Members</u>

7.1    <u>Powers of the Company</u>.  In furtherance of the purposes set forth in <u>Section 2.3</u> and subject to the provisions of <u>Article VI</u>, the Company shall possess the power to do anything not prohibited by the Act, by other applicable law or by this Agreement, including but not limited to the following powers:  (a) to undertake any of the activities described in <u>Section 2.3</u>; (b) to make, perform and enter into any contract, commitment, activity or agreement relating thereto; (c) to open, maintain and close bank and money market accounts, to endorse, for deposit to any such account or otherwise, checks payable or belonging to the Company from any other Person, and to draw checks or other orders for the payment of money on any such account; (d) to hold, distribute and exercise all rights (including voting rights), powers and privileges and other incidents of ownership with respect to assets of the Company; (e) to borrow funds, issue evidences of indebtedness and refinance any such indebtedness in furtherance of any or all of the purposes of the Company; (f) to employ or retain such agents, employees, managers, accountants, attorneys, consultants and other Persons necessary or appropriate to carry out the business and affairs of the Company, and to pay such fees, expenses, salaries, wages and other compensation to such Persons; (g) to bring, defend and compromise actions, in its own name, at law or in equity; and (h) to take all actions and do all things necessary or advisable or incident to carry out the purposes of the Company, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the Company's business, purposes or activities.

7.2    <u>Compensation of the Members and Directors</u>.  The Members shall not be entitled to any compensation for their services hereunder.  Each Director who is not an employee of any Member or such Member's Affiliates shall be entitled to a reasonable fee be paid by the Company in an amount determined by the Board and shall be reimbursed for the reasonable out-of-pocket expenses, if any, incurred in

connection with attendance at each meeting of the Board and at each meeting of a committee of the Board of which they are members, as determined by the Board.  All other Directors may be reimbursed for all reasonable out-of-pocket expenses incurred in connection with each meeting of the Board or each meeting of a committee of the Board, as determined by the Board.

7.3    Cessation of Status as a Member.  A Member shall cease to be a member of the Company (a) upon the Bankruptcy or involuntary dissolution of such Member, provided that thereafter such Person shall only be entitled to the economic rights of an assignee of Voting Interests under the Act, or (b) upon the Transfer of all of such Member's Voting Interests.

7.4    Other Activities of the Members.  Notwithstanding any duty otherwise existing at law or in equity, each of the Members and its Affiliates (including any Director appointed via a Designation Right of such Member) may have other business interests and may engage in any business or trade, profession, employment or activity whatsoever (regardless of whether any such activity competes, directly or indirectly, with the business or activities of the Company or any of its Subsidiaries), for its own account, or in partnership or participation with, or as an employee, officer, director, stockholder, member, manager, trustee, general or limited partner, agent or representative of, any other Person, and no Member or Director shall be required to devote its entire time (business or otherwise), or any particular portion of its time (business or otherwise) to the business of the Company or any of its Subsidiaries.  Neither the Company nor any Member nor Director, nor any Affiliate of any thereof, by virtue of this Agreement, shall have any rights in and to any such independent venture or the income or profits derived therefrom.  Notwithstanding any duty otherwise existing at law or in equity, no Member, representative of such Member, or Director shall have any obligation hereunder to present any business opportunity to the Company, even if the opportunity is one that the Company might reasonably have pursued or had the ability or desire to pursue, in each case, if granted the opportunity to do so and, to the fullest extent permitted by law, no Member shall be liable to the Company or any other Member (or any Affiliate thereof) for breach of any fiduciary or other duty relating to the Company (whether imposed by applicable law or otherwise), by reason of the fact that such Member pursues or acquires such business opportunity, directs such business opportunity to another Person or fails to present such business opportunity or information regarding such business opportunity, to the Company.

## Article VIII
### Books, Records and Accounting; Information Rights

8.1    Books of Account; Access.  The Board shall cause to be entered in appropriate books, kept at the Company's principal place of business, all transactions of or relating to the Company.  The books and records of the Company shall be made and maintained, and the financial position and the results of operations recorded, at the expense of the Company, in accordance with such method of accounting as is determined by the Board.  Each Member, for any purpose reasonably related to such Member's interest as a Member in the Company, shall have access to and the right, at such Member's sole cost and expense, to inspect and copy such books and records and to discuss the affairs, finances and accounts of the Company and its Subsidiaries with the officers, employees and the other Representatives of the Company and its Subsidiaries during normal business hours; provided that the inspecting Member shall be responsible for any out-of-pocket costs or expenses incurred by the Company in making any books and records available for inspection.

8.2    Deposits of Funds.  All funds of the Company shall be deposited in its name in such checking, money market or other account or accounts as the Board may from time to time designate; withdrawals shall be made therefrom on such signature or signatures as the Board shall determine.

8.3    Information Rights.

(a)      Each Member who agrees to such customary confidentiality restrictions as the Company shall reasonably request shall have the right to receive the following information (which right the Company may satisfy by providing access to each Member to a confidential, secure datasite (which website shall have a system of email notification of new postings and may require confirmation by viewers of the site of the confidentiality obligations set forth in <u>Section 6.15</u>, a "<u>Secure Site</u>")), and each Member may share and discuss such information (along with any other information provided to Members pursuant to this Agreement and otherwise made available to Members via the Secure Site) with its Affiliates, directors, officers, partners, managers, stockholders, employees, investors and advisors as well as any bona fide prospective purchaser of Voting Interests or indebtedness for borrowed money incurred by the Company or its Subsidiaries and held by such Member that (x) is not a Competitor and (y)(i) has entered into, and delivered to the Company, a confidentiality agreement regarding the treatment of such information (and for the avoidance of doubt, at its election, the Company may share and discuss such information with any prospective purchaser of Voting Interests) or (ii) has entered into, and delivered to such Member, a confidentiality agreement regarding the treatment of such information containing provisions at least as restrictive as those of a similar confidentiality agreement with the Company and provides that the Company shall be a third party beneficiary with full enforcement rights thereunder:

(i)      within (x) one hundred fifty (150) days after the end of the first Fiscal Year ending after the Effective Date and (y) one hundred twenty (120) days after the end of each Fiscal Year ending thereafter, copies of annual consolidated financial statements of the Company and its Subsidiaries as of the end of such Fiscal Year, which financial statements shall (i) be prepared in accordance with GAAP, and (ii) be audited by a nationally recognized accounting firm approved by the Board; and

(ii)      As soon as available, and in any event within (x) one hundred twenty (120) days after the end of each of the first fiscal quarter ending after the Effective Date and (y) sixty (60) days after the end of each of the first three (3) fiscal quarters of each Fiscal Year ending thereafter, or such earlier date as the Company or any of its Subsidiaries may be required to deliver such information to the Company's lenders under any credit agreement, indenture or similar agreement with respect to indebtedness for borrowed money of the Company or any of its Subsidiaries, consolidated balance sheets of the Company and its subsidiaries as of the end of such period, and consolidated statements of income and cash flows of the Company and, if applicable, its Subsidiaries for the period then ended prepared in accordance with GAAP, except as otherwise noted therein, and subject to the absence of footnotes and to year-end adjustments (collectively, the "<u>Quarterly Financials</u>").

(b)      The Company shall host, and each Member holding at least one percent (1%) of the Voting Interests shall have access to, regular conference calls with senior officers of the Company to discuss the results of operations for the relevant reporting period, which calls shall include a reasonable and customary question and answer session.  Each such call shall be hosted no later than ten (10) Business Days after the Company furnishes the corresponding annual or quarterly report in accordance with this <u>Section 8.3</u>. Unless otherwise determined by the Board, the first conference call shall not be held until at least one (1) year following the Effective Date.

(c)      For so long as the Voting Interests remain outstanding and during any period during which the Company is not subject to Section 13 or Section 15(d) of the Exchange Act, as amended, nor exempt therefrom pursuant to Rule 12g3-2(b), the Company shall furnish to the holders of Voting Interests and, upon their request, prospective purchasers of the Voting Interests, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

(d)    During the term of the Company's existence, there shall be maintained in the Company's principal office or at the office of the Company's agents and representatives all records required to be kept pursuant to the Act, including (whether or not so required) a current list of the names, addresses and Voting Interests held by each of the Members (including the dates on which each of the Members became a Member), copies of federal, state and local information or income tax returns for each of the Company's tax years, copies of this Agreement and each of the Company's organizational documents, including all amendments thereto and restatements thereof, and correct and complete books and records of account of the Company.  Prior to any termination of the Company's existence, the Company shall use all reasonable efforts to ensure that, for a period of six (6) years after any such termination, such information, to the extent still in existence and available, may be obtained by a Member's request in writing to a legal advisor or agent of the Company to be designated prior to any such termination, with the cost (as reasonably determined by such legal advisor or agent) of accessing and providing such information being borne by the requesting Member.

(e)    The rights of each Member granted pursuant to Sections 8.3(a) through 8.3(d) of this Agreement shall be freely Transferable by such Member in connection with any Transfer of its Voting Interests otherwise permitted in accordance with Article V.

(f)    The Company shall provide to each Director and, subject to the limitations set out in Section 6.9, each Observer, copies of any materials distributed or made available to any other Directors or Observers.  A Director or Observer shall be entitled to share and discuss with directors, officers and employees of the Member that appointed such Director or Observer any materials or other information obtained by such person in such capacity.

(g)    Promptly following any request therefor, the Company shall use its reasonable efforts to furnish to any Member information and documentation reasonably requested by such Member for purposes of such Member's compliance with applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT ACT of 2001 and 31 C.F.R. § 1010.230, and/or other due diligence related to regulatory requirements and/or reputational risk.

8.4    Information Rights of the Company.  As a result of the transactions contemplated by the RSA, after which the Company will have more than one regarded owner for U.S. federal income tax purposes, the Members agree to treat the Company as a newly formed partnership and the Members as partners for U.S. federal income tax purposes and shall file all tax returns accordingly. The Company may from time to time (including in connection with the admission of a new Member), but a Member may be compelled to answer no more frequently than once per calendar quarter (unless, with respect to clause (i) hereof, required by applicable law), reasonably request of any or all Members (at the expense of the Company) information (i) needed by the Company to comply with applicable law and/or (ii) regarding such Member's "accredited investor" status (within the meaning of Regulation D promulgated under the Securities Act).

## Article IX
## Term and Dissolution

9.1    Term.  The legal existence of the Company shall be perpetual, unless the Company is sooner dissolved as a result of an event specified in the Act or pursuant to a provision of this Agreement.

9.2    Dissolution.

(a)    The Company shall be dissolved and its affairs wound up upon the first to occur of the following:

(i)      The entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act;

(ii)      Approval of the dissolution of the Company by the Board pursuant to <u>Section 6.10(c)</u> hereof;

(iii)      The resignation, expulsion, Bankruptcy or dissolution of the last remaining Member or the occurrence of any other event which terminates the continued membership of the last remaining Member in the Company, unless the business of the Company is continued without dissolution in accordance with the Act; and

(iv)      The occurrence of any other event that causes the dissolution of a limited liability company under the Act, unless the Company is continued without dissolution in accordance with the Act.

(b)      Upon dissolution of the Company, the business of the Company shall continue for the sole purpose of winding up its affairs.  The winding up process shall be carried out by the Members unless the dissolution is caused by an event of withdrawal by the sole remaining Member, in which case the Board shall appoint a liquidating trustee.  Otherwise, a liquidating trustee may be appointed for the Company by vote of a majority in Percentage Interest of the Members holding Voting Interests (the Members or such liquidating trustee appointed by the Board or the Members is referred to herein as the "<u>Liquidator</u>").  In winding up the Company's affairs, every effort shall then be made to dispose of the assets of the Company in an orderly manner, having regard to the liquidity, divisibility and marketability of the Company's assets.  The Liquidator shall not be entitled to be paid by the Company any fee for services rendered in connection with the liquation of the Company, but the Liquidator (whether one or more Members or a liquidating trustee) shall be reimbursed by the Company for all third-party costs and expenses incurred by it in connection therewith and shall, to the fullest extent permitted by law, be indemnified by the Company with respect to any action brought against it in connection therewith by applying, *mutatis mutandis*, the provisions of <u>Section 12.1</u>.

9.3      <u>Application and Distribution of Assets</u>.  Upon a windup of the Company, the Company shall distribute its assets as follows:

(a)      <u>first</u>, to creditors of the Company, including Members and Directors who are creditors, to the extent permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for the payment thereof) and including any contingent, conditional and unmatured liabilities of the Company, taking into account the relative priorities thereof;

(b)      <u>second</u>, to the Members and former Members in satisfaction of liabilities under the Act for distributions to such Members and former Members; and

(c)      <u>third</u>, to the remainder of the Members in accordance with <u>Section 4.1</u>.

9.4      <u>Termination of the LLC</u>.  Subject to <u>Section 2.7</u>, the separate legal existence of the Company shall terminate upon a Reorganization or when all assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Members in the manner provided for in this <u>Article IX</u> and a certificate of cancellation of the Certificate shall have been filed in the manner required by Section 18-203 of the Act.

## Article X
## <u>Representations and Warranties of Members</u>

Each Member severally, but not jointly, represents and warrants as of the Effective Date to the Company and the other Members that:

10.1    Authority.  Each such Member that is a corporation or a limited liability company or a partnership is an entity duly formed and validly existing under the laws of the jurisdiction of its formation and the execution, delivery and performance by such Member of this Agreement have been duly authorized by all necessary corporate, limited liability company or partnership action, as applicable.  Each such Member that is an individual is an individual with full legal capacity under the laws of his jurisdiction of domicile and has the capacity to execute, deliver and perform this Agreement, and this Agreement has been duly executed and delivered by such Member.

10.2    Binding Obligations.  This Agreement has been duly and validly executed and delivered by such Member and constitutes the binding obligation of such Member, enforceable against such Member in accordance with its terms.

10.3    No Conflict.  The execution, delivery and performance by such Member of this Agreement will not, with or without the giving of notice or the lapse of time or both, (a) violate any provision of law to which such Member is subject, (b) violate any order, judgment or decree applicable to such Member or (c) conflict with or result in a breach or default under, any term or condition of its certificate of incorporation or bylaws, certificate of limited partnership or partnership agreement, certificate of formation or limited liability company agreement, as applicable or, except where such conflict, breach or default would not reasonably be expected to, individually or in the aggregate, have an adverse effect on such Member's ability to satisfy its obligations hereunder.

10.4    Purchase Entirely for Own Account.  The Voting Interests to be acquired by such Member will be acquired for investment for such Member's own account, not as a nominee or agent and not with a view to the resale or distribution of any part thereof; such Member has no present intention of selling, granting any participation in or otherwise distributing the same; and such Member does not have any contract, undertaking, agreement or other arrangement with any Person to sell, transfer or grant participation to such Person or to any third Person, with respect to any of the Voting Interests.

10.5    No Registration.  Such Member understands that the Voting Interests, at the time of issuance, will not be registered under the Securities Act by reason of a specific exemption from the registration provisions of the Securities Act, the availability of which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of such Member's representations as expressed herein or otherwise made pursuant hereto.

10.6    Investment Experience.  Such Member confirms that the Member has such knowledge and experience in financial and business matters that such Member is capable of evaluating the merits and risks of an investment in the Voting Interests and of making an informed investment decision and understands that (a) this investment is suitable only for an investor that is able to bear the economic consequences of losing its entire investment, (b) the acquisition of Voting Interests hereunder is a speculative investment that involves a high degree of risk of loss of the entire investment and (c) there are substantial restrictions on the transferability of and there will be no public market for, the Voting Interests.

10.7    Accredited Investor.  Such Member is an "accredited investor" within the meaning of Regulation D, Rule 501(a), promulgated by the SEC under the Securities Act.

10.8    Restricted Securities.  Such Member understands that the Voting Interests may not be sold, transferred or otherwise disposed of without registration under the Securities Act or an exemption therefrom, and that in the absence of either an effective registration statement covering such Voting

Interests or an available exemption from registration under the Securities Act, the Voting Interests must be held indefinitely.  In particular, such Member is aware that the Voting Interests may not be sold pursuant to Rule 144 promulgated by the SEC under the Securities Act unless all of the conditions thereof are met.

10.9    Nonreliance.  No promise, agreement, statement or representation that is not expressly set forth in this Agreement or in any other agreement by and among any of the Company, the Members or their respective Affiliates has been made to such Member by any other Member or any other Member's Affiliates, counsel, agent or any other Person with respect to the terms set forth in this Agreement, and such Member is not relying upon any such promise, agreement, statement or representation of any other Member or any other Member's Affiliates, counsel, agent or any other Person.

## Article XI
## Allocation of Net Income and Net Loss

11.1    General.

(a)    After giving effect to the special allocations set forth in Section 11.2, Net Income or Net Loss and as and to the extent necessary items of income, gain, loss and deduction for each Fiscal Year or other taxable period shall be allocated among the Members (and credited and debited to their Capital Accounts) so as to cause, to the extent possible, each Member's Capital Account balance, as increased by the amount of such Member's share of partnership minimum gain (as defined in Regulation § 1.704-2(g)(1) and (3)) and the amount of such Member's share of partner nonrecourse debt minimum gain (as defined in Regulation § 1.704-2(i)(5)), to equal the amount that would be distributed to such Member if the Company sold all of its assets for their Gross Asset Value in cash, paid all of its liabilities to the extent required by their terms (limited, with respect to each nonrecourse liability (as defined in Regulation § 1.704-2(b)(3)) or partner nonrecourse debt (as defined in Regulation § 1.704-2(b)(4)), to the Gross Asset Value of the assets securing each such liability), and distributed its cash to the Members pursuant to Section 9.3 in complete liquidation.  For purposes of allocating Net Income and Net Loss and all other items of income, gain, deduction and loss pursuant to this Section 11.1 and Section 11.2, all outstanding Incentive Interests shall be treated as vested.

(b)    Notwithstanding any provision of Section 11.1(a), no allocation of Net Loss shall be made to a Member if it would cause the Member to have a negative balance in its Adjusted Capital Account.  Allocations of Net Loss that would be made to a Member but for this Section 11.1(b) shall instead be made to other Members pursuant to Section 11.1(a) to the extent not inconsistent with this Section 11.1(b).

11.2    Special Allocations.  The following special allocations shall be made in the following order of priority:

(a)    Losses, deductions or expenditures that are attributable to a particular partner nonrecourse liability (as defined in Regulation § 1.704-2(b)(4)) shall be allocated to the Member that bears the economic risk of loss for the liability in accordance with the rules of Regulation § 1.704-2(i).

(b)    Losses, deductions or expenditures that are attributable to nonrecourse liabilities (as defined in Regulation § 1.704-2(b)(3)) for any Fiscal Year or other taxable period shall be allocated to each Member in proportion to its ownership percentage of the total number of Interests outstanding.

(c)    If during a Fiscal Year or other taxable period there is a net decrease in "partnership minimum gain" (within the meaning of Regulation § 1.704-2(b)(2) and 1.704-2(d)) with respect to the Company, then there shall be allocated to each Member items of income and gain of the Company for such

Fiscal Year or other taxable period (and, if necessary, for succeeding Fiscal Years or other taxable periods) equal to such Member's share of the net decrease in partnership minimum gain (as determined in accordance with Regulation § 1.704-2(g)(2)), subject to the exceptions set forth in Regulation § 1.704-2(f)(2) and (3), and to any exceptions provided by the Commissioner of the United States Internal Revenue Service pursuant to Regulation § 1.704-2(f)(4) and (5); provided, however, that if the Company has any discretion as to an exception provided pursuant to Regulation § 1.704-2(f)(4) or (5), the Board may exercise reasonable discretion on behalf of the Company.  The items of Company income and gain to be allocated pursuant to this Section 11.2(c) shall be determined in accordance with Regulation § 1.704-2(f)(6) and 1.704-2(j)(2).  The foregoing is intended to be a "minimum gain chargeback" provision as described in Regulation § 1.704-2(f) and shall be interpreted and applied in all respects in accordance with such Regulation.

(d)      If during a Fiscal Year or other taxable period there is a net decrease in partner nonrecourse debt minimum gain (as determined in accordance with Regulation § 1.704-2(i)(3)) with respect to the Company, then, in addition to the amounts, if any, allocated pursuant to the preceding paragraph, any Member with a share of such partner nonrecourse debt minimum gain (determined in accordance with Regulation § 1.704-2(i)(5)) as of the beginning of the Fiscal Year or other taxable period shall, subject to the exceptions set forth in Regulation § 1.704-2(i)(4), be allocated items of income and gain for such Fiscal Year or other taxable period (and, if necessary, for succeeding Fiscal Years or other taxable periods) equal to such Member's share of the net decrease in the partner nonrecourse debt minimum gain.  Allocations pursuant to the preceding sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto.  The items of Company income and gain to be allocated pursuant to this Section 11.2(d) shall be determined in accordance with Regulation § 1.704-2(i)(4) and 1.704-2(j)(2).  The foregoing is intended to be the "chargeback of partner nonrecourse debt minimum gain" required by Regulation § 1.704-2(i)(4) and shall be interpreted and applied in all respects in accordance with such Regulation.

(e)      If during any Fiscal Year or other taxable period a Member unexpectedly receives an adjustment, allocation or distribution described in Regulation § 1.704-1(b)(2)(ii)(d)(4), (5) or (6) that causes or increases a deficit balance in such Member's Adjusted Capital Account, there shall be allocated to such Member items of income and gain (consisting of a pro rata portion of each item of income, including gross income, and gain of the Company for such Fiscal Year or other taxable period) in an amount and manner sufficient to eliminate such deficit as quickly as possible; provided, however, that an allocation pursuant to this Section 11.2(e) shall be made if and only to the extent that such Member would have a deficit in its Adjusted Capital Account after all other allocations provided for in this Agreement have been tentatively made as if this Section 11.2(e) and Section 11.2(f) were not in this Agreement.  The foregoing is intended to be a "qualified income offset" provision as described in Regulation § 1.704-1(b)(2)(ii)(d) and shall be interpreted and applied in all respects in accordance with such Regulation.

(f)      If any Member has a deficit in its Adjusted Capital Account at the end of any Fiscal Year or other taxable period, such Member shall be specially allocated items of Company income and gain (consisting of a pro rata portion of each item of income, including gross income, and gain of the Company for such Fiscal Year or other taxable period) in the amount of such deficit as rapidly as possible; provided, however, that an allocation pursuant to this Section 11.2(f) shall be made if and only to the extent that such Member would have a deficit in its Adjusted Capital Account after all other allocations provided for in this Agreement have been tentatively made as if this Section 11.2(f) were not in this Agreement.

(g)      To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 732(d), 734(b) or 743(b) is required pursuant to Regulation § 1.704-1(b)(2)(iv)(m)(2) or (3) or, in the case of a distribution to a Member in complete liquidation of its Interest, Regulation § 1.704-1(b)(2)(iv)(m)(4), to be taken into account in determining

Capital Accounts, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of such Company asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with Section 11.1 in the event Regulation § 1.704-1(b)(2)(iv)(*m*)(*2*) or (*3*) applies, or to the Member to whom such distribution in complete liquidation of its Interest was made in the event Regulation § 1.704-1(b)(2)(iv)(*m*)(*4*) applies.

(h)     To the extent that any item of income, gain, loss or deduction has been specially allocated pursuant to Section 11.2(a)-(g) and such allocation is inconsistent with the way in which the same amount otherwise would have been allocated under Section 11.1, subsequent allocations under this Section 11.2(h) shall be made, to the extent possible and without duplication, in a manner consistent with Section 11.2 and taking into account future allocations under Section 11.2(a)-(g) that, although not yet made, are likely to offset other allocations previously made under Section 11.2(a)-(g), which negate as rapidly as possible the effect of all such inconsistent allocations under Section 11.2(a)-(g).

(i)     Any "imputed underpayment" within the meaning of Code Section 6225 (or any similar provision of state or local Law) paid (or payable) by the Company as a result of an adjustment with respect to any Company item, including any interest or penalties with respect to any such adjustment, shall be allocated to the Members in a manner consistent with applicable Regulations (or comparable provisions of applicable state or local Law) and Section 11.5.

(j)     Upon the exercise of any Noncompensatory Option, the allocation of any unrealized gain, loss, income or deduction from an adjustment to Gross Asset Value under clause (b)(v) of the definition thereof shall be made pursuant to Regulation § 1.704-1(b)(2)(iv)(s)(2) and, if necessary, a Capital Account reallocation shall be accomplished as provided in Regulation § 1.704-1(b)(2)(iv)(s)(3) and as further described in Section 11.3(d).

These provisions shall be applied as if all distributions and allocations were made at the end of the Fiscal Year or other taxable period.  Where any provision depends on the balance of a Capital Account of any Member, such Capital Account shall be determined after the operation of all preceding provisions for the period.  These allocations shall be made consistently with the requirements of Regulation § 1.704-2(j).

11.3     Allocations for Income Tax Purposes.

(a)     The income, gains, losses, deductions and credits of the Company for U.S. federal, state and local income tax purposes for any Fiscal Year or other taxable period shall be allocated to the Members in the same manner as Company items of income, gain, loss, deduction and credit were allocated to the Members for such Fiscal Year or other taxable period pursuant to Sections 11.1 and 11.2; provided, however, that solely for U.S. federal, state and local income and franchise tax purposes and not for book or Capital Account purposes, income, gain, loss and deduction with respect to any Company asset properly carried on the Company's Code Section 704(b) books at a value other than the tax basis of such Company asset shall be allocated in a manner determined in the discretion of the Board so as to take into account (consistently with Code Section 704(c) principles) the difference between such Company asset's Code Section 704(b) book basis and its tax basis.

(b)     Allocations of tax credits, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Board taking into account the principles of Regulation § 1.704-1(b)(4)(ii) and (viii).

(c)     If the Company recognizes Depreciation Recapture in respect of the disposition of any Company asset, (i) the portion of the gain on such disposition that is allocated to a Member pursuant to Section 11.1 or 11.2 shall be treated as consisting of a portion of the Company's Depreciation Recapture

on the disposition and a portion of the Company's remaining gain on such sale under principles consistent with Regulation § 1.1245-1, and (ii) if, for U.S. federal income tax purposes, the Company recognizes both "unrecaptured section 1250 gain" (as defined in Code Section 1(h)) and gain treated as ordinary income under Code Section 1250(a) in respect of such disposition, the amount treated as Depreciation Recapture under clause (i) above shall comprise a proportionate share of both such types of gain.

(d)      If, as a result of an exercise of a Noncompensatory Option, a Capital Account reallocation is required under Regulation § 1.704-1(b)(2)(iv)(s)(3), the Company shall make corrective allocations pursuant to Regulation § 1.704-1(b)(4)(x).

11.4   Other Allocation Rules.

(a)      If any Interest in the Company or part thereof is Transferred or reduced (including due to the issuance of a new Interest) in any Fiscal Year or other taxable period, unless otherwise agreed to by the Transferor and Transferee and approved by the Board, the items of income, gain, loss, deduction and credit allocable to such Interest for such Fiscal Year or other taxable period shall be apportioned between the Transferor and the Transferee (in the case of a Transfer) or between the Member whose Interest was reduced and the other Members (in the case of a reduction) using the "interim closing method" and the "calendar day convention" of Regulation § 1.706-4.

(b)      Solely for purposes of determining a Member's proportionate share of the "excess nonrecourse liabilities" of the Company in any Fiscal Year or other taxable period within the meaning of Regulation § 1.752-3(a)(3), each Member's interests in Company profits shall be its ownership percentage of the total number of Interests outstanding.

11.5   Withholding and Entity-Level Taxes.

(a)      The Company shall comply with withholding requirements under U.S. federal, state and local and foreign law and shall remit amounts withheld to and file required forms with the applicable jurisdictions.  To the extent the Company is required to withhold and pay over any amounts to any authority with respect to distributions or amounts allocable to any Member or to the extent the Company is required to pay any income tax (including interest and penalties) that (as reasonably determined by the Board based upon this Agreement) is attributable or allocable to any Member, the amount withheld or paid shall be deemed to be a distribution by the Company to such Member (which shall reduce the amounts that would subsequently otherwise be distributed to such Member pursuant to Section 4.1 in the order in which they would otherwise have been distributable).  In the event of any claimed over-withholding, Members shall be limited to an action against the applicable jurisdiction.  Each Member agrees to furnish the Company with any representations and forms as shall reasonably be requested by the Company to assist it in determining the extent of, and in fulfilling, its withholding obligations.

(b)      If the Company receives proceeds in respect of which a tax has been withheld, the Company shall be treated as having received cash in an amount equal to the amount of such withheld tax, and, for all purposes of this Agreement, the portion of the withholding tax allocable to each Member, as reasonably determined by the Board, shall be deemed to be a distribution by the Company to such Member (which shall reduce the amounts that would subsequently otherwise be distributed to such Member pursuant to Section 4.1 in the order in which they would otherwise have been distributable).  In the event that the Company receives a refund of taxes previously withheld by a third party from one or more payments to the Company, the economic benefit of such refund shall be apportioned among the Members in a manner reasonably determined by the Board to offset the prior operation of this Section 11.5(b) in respect of such withheld taxes.

(c)    If the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, managers, members, partners, shareholders, employees, consultants, agents or advisors becomes liable as a result of a failure to withhold and remit taxes in respect of any Member (or former Member) hereunder, then such Member (or former Member) shall, to the fullest extent permitted by law, indemnify and hold harmless the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, managers, members, partners, shareholders, employees, consultants, agents or advisors, as the case may be, in respect of all taxes, including interest and penalties, and any expenses incurred in any examination, determination, resolution and payment of such liability (and any such indemnity with respect to any withholding taxes imposed pursuant to Code Section 1446(f)(4) and any interest, penalties and expenses in connection therewith shall be provided jointly and severally by the transferor Member (or former Member) and transferee Member (or former Member) of any Interest), except with respect to any penalties or expenses that arise as a result of any act or omission with respect to which a court of competent jurisdiction has issued a final, nonappealable judgment that the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, employees, managers, members, partners, shareholders, and, as determined by the Board in its sole and absolute discretion, consultants, agents or advisors was grossly negligent or engaged in willful misconduct or fraud. Additionally, each Member (and each former Member) shall indemnify the Company against any losses and liabilities (including interest and penalties) related to any income tax payable by the Company that (as reasonably determined by the Board based upon this Agreement) is attributable or allocable to such Member (or former Member), including under Code Section 6225(a) or any similar provision of state or local Law. The provisions contained in this <u>Section 11.5(c)</u> shall survive the termination of the Company and the Transfer of any Interest.

## Article XII
### General Provisions

12.1    <u>Exculpation and Indemnification</u>.

(a)    Unless specifically set forth herein, to the fullest extent permitted by applicable law, no Member, officer, Director, Partnership Representative, Designated Individual, employee or agent of the Company and no officer, director, employee, Representative, agent or Affiliate of any Member (collectively, the "<u>Covered Persons</u>") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's fraud, gross negligence or willful misconduct as determined by a final, non-appealable judgment of a court of competent jurisdiction.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by a Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's fraud, gross negligence or willful misconduct with respect to such acts or omissions as determined by a final, non-appealable judgment of a court of competent jurisdiction.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon demand by such Covered Person and receipt by the Company of

an undertaking by or on behalf of such Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this <u>Section 12.1</u>.

(c)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities or any other facts pertinent to the existence and amount of assets of the Company from which distributions to any Member might properly be paid.

(d)     As of or prior to the Effective Date, the Company has obtained directors' and officers' liability insurance for the Directors and officers of the Company, if any (a "<u>D&O Insurance Policy</u>"), with coverage under such D&O Insurance Policy to be effective no later than the Effective Date, naming each Director and officer as an insured in such a manner as to provide such Director the same rights and benefits, subject to the same limitations, as are accorded to the Directors or officers of the Company most favored by such D&O Insurance Policy.  The Company shall use its commercially reasonable efforts to maintain a D&O Insurance Policy at all times that are no less favorable to the Directors than the D&O Insurance Policy entered into pursuant to the first sentence of this <u>Section 12.1(d)</u>.

(e)     The Company hereby acknowledges that a Covered Person may have certain rights to indemnification, advancement of expenses and/or insurance provided by companies for which such Covered Person serves as a director, officer or employee (collectively, the "<u>Other Indemnitors</u>").  The Company hereby agrees that it (i) is the indemnitor of first resort (*i.e.*, its obligations to a Covered Person are primary and any obligation of the Other Indemnitors to advance expenses or to provide indemnification for the same expenses or liabilities incurred by or on behalf of such Covered Person are secondary), (ii) shall be required to advance the full amount of expenses incurred by or on behalf of such Covered Person and shall be liable for the full amount of all expenses, judgments, penalties, fines and amounts paid in settlement to the extent not prohibited by applicable law and as required by the terms of this Agreement, without regard to any rights such Covered Person may have against the Other Indemnitors and (iii) irrevocably waives, relinquishes and releases the Other Indemnitors from any and all claims against the Other Indemnitors for reimbursement, subrogation or any other recovery of any kind in respect thereof. The Company further agrees that no advancement or payment by the Other Indemnitors on behalf of a Covered Person with respect to any claim for which a Covered Person has sought indemnification from the Company shall affect the foregoing and the Other Indemnitors shall have a right of reimbursement and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of a Covered Person against the Company.  The Company and any Covered Person agree that the Other Indemnitors are express third-party beneficiaries of the terms of this <u>Section 12.1(e)</u>.

12.2    <u>Entire Agreement; Amendments</u>.

(a)     This Agreement (including the exhibits and annexes attached hereto) contains the sole and entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

(b)     Subject to the proviso hereafter, this Agreement may be modified or amended or supplemented with the approval of (1) a majority of the issued and outstanding Voting Interests, and (2) the Board; <u>provided</u>, <u>however</u>, that, notwithstanding anything in this Agreement to the contrary, (i) without the consent of any Member, the Board may amend <u>Exhibit B</u> from time to time so as to accurately reflect the information contained thereon upon (A) the withdrawal of a Member, (B) the admission of a new Member and (C) any changes to Percentage Interests and the number of Voting Interests held by Members as a

consequence thereof, (ii) any change to any voting, consent or approval threshold or requirement specified in this Agreement shall require the approval of Members or Directors, as the case may be, constituting at least such voting, consent or approval threshold or otherwise satisfying such requirement, (iii) any amendment to this Agreement or any limited liability company agreement, charter, bylaws or comparable organizational document of the Company or any material Subsidiary of the Company that (w) modifies the limited liability of a Member, (x) changes the Capital Contribution required by a Member, (y) would reasonably be expected to materially adversely affect any Member's rights pursuant to Section 5.2, Section 5.3, Section 5.4, Section 5.6, Section 5.7, Section 6.2, Section 6.3, Section 6.9, Section 6.10 and this Section 12.2 or (z) would reasonably be expected to materially adversely affect any Member or group of Members in a manner that is disproportionate to the effect on any other holder or group of Members shall require the prior written consent of such Member or, with respect to a group of Member pursuant to clause (z) above, the holders of a majority of the collective Voting Interests of such group of Members, and (iv) any amendment to this Agreement or any limited liability company agreement, charter, bylaws or comparable organizational document of the Company or any material Subsidiary of the Company that does not and would not be reasonably expected to adversely affect any Member in any material respect may be made by the Board, without the consent of any Member, to the extent permitted by law.

12.3    Avoidance of Provisions.  No party hereto shall avoid the provisions of this Agreement by making one or more Transfers to one or more Affiliates and then disposing of all or any portion of such party's interest in any such Affiliate.

12.4    Binding Agreement.  The covenants and agreements herein contained shall inure to the benefit of and shall be binding upon the parties hereto and their respective Representatives, successors in interest and permitted assigns.

12.5    Notices.  Unless otherwise provided in this Agreement, any and all notices contemplated by this Agreement shall be deemed adequately given if in writing and delivered in hand, or upon receipt when sent by telecopy or electronic transmission, including electronic mail.  All such notices to Members shall be addressed to the last address of record on the books of the Company; all such notices to the Company shall be addressed to the Company at the address set forth in Section 2.4 or at such other address as the Company may have designated by notice given in accordance with the terms of this subsection.

12.6    Governing Law.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, all rights and remedies being governed by such laws, without regard to its conflict of laws rules.

12.7    Consent to Jurisdiction; WAIVER OF JURY TRIAL.

(a)    The Company and each Member (i) irrevocably submits to the exclusive jurisdiction of the Chancery Court of the State of Delaware and the United States District Court for the District of Delaware (and the appropriate appellate courts), for the purposes of any suit, action or other proceeding arising out of this Agreement and (ii) agrees to commence any such action, suit or proceeding either in the United States District Court for the District of Delaware or if such suit, action or other proceeding may not be brought in such court for jurisdictional reasons, in the Chancery Court of the State of Delaware.  Notwithstanding the foregoing, any party hereto may commence an action, suit or proceeding with any governmental body anywhere in the world for the sole purpose of seeking recognition and enforcement of a judgment of any court referred to in the first sentence of this Section 12.7(a).  The Company and each Member further (x) agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth on the Member List (or in the case of the Company, at the Company's principal office in Delaware) shall be effective service of process for any action, suit or proceeding in Delaware with respect to any matters to which it has submitted to jurisdiction

in this Section 12.7(a) and (y) irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in (A) the Chancery Court of the State of Delaware, or (B) the United States District Court for the District of Delaware, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(b)      THE COMPANY AND EACH MEMBER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, INVOLVING OR OTHERWISE IN RESPECT OF THIS AGREEMENT OR SUCH MEMBER'S OWNERSHIP OF COMPANY COMMON EQUITY.  THE COMPANY AND EACH MEMBER (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE COMPANY OR ANY MEMBER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE COMPANY OR SUCH MEMBER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT THE COMPANY AND EACH MEMBER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 12.7(b).

12.8    Construction.  The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent and, to the fullest extent permitted by law, the parties intend that no rule of strict construction will be applied against any party.

12.9    Severability.   The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.   In the case of any such invalidity or unenforceability, the parties hereto agree to use all reasonable best efforts to achieve the purpose of such provision by a new legally valid and enforceable stipulation.

12.10   Counterparts, Electronic Copies.   This Agreement may be executed in multiple counterparts, including by electronic transmission or portable document format (.pdf), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.11   Survival.  The provisions of Sections 6.15 and this Article XII shall survive the termination of this Agreement for any reason or the dissolution of the Company.  Subject to the Act, all other rights and obligations of the Members shall cease upon the earlier of the termination of this Agreement or dissolution of the Company.

12.12   Termination.

(a)    This Agreement will be automatically effective as of the Effective Date and will continue in effect until the earlier to occur of (i) its termination by the unanimous written consent of all Members of the Company, (ii) the dissolution, liquidation or winding up of the Company and (iii) the consummation of a Drag-Along Sale in which, for whatever reason, all of the Members participate either as Selling Members or Compelled Members.

(b)    Section 3.6(b), Sections 5.1 through 5.8, Section 6.10, Section 6.15, Section 8.3, Section 8.4 and Article X shall automatically terminate upon (i) a Qualified IPO or (ii) the listing of any equity securities of the Company on the NASDAQ, the NYSE or another U.S. national securities exchange.

12.13   Special Power of Attorney.  Each Member grants a majority of the Board and the Company (each a "Proxy Holder") a special power of attorney (with full power of substitution and resubstitution)

irrevocably making, constituting, and appointing such person as the Member's attorney-in-fact, with full power and authority to act in the Member's name and on the Member's behalf to execute, acknowledge and deliver and swear to in the execution, acknowledgment, delivery and filing of any agreements or instruments that a majority of the Board deems necessary or appropriate in connection with a Drag-Along Sale or Sale of the Company, conducted pursuant to. and subject to the terms and conditions set forth in, Section 5.4 or Section 5.5, as applicable.  Further, each Member grants to each Proxy Holder with respect to such a Drag-Along Sale or Sale of the Company a special power of attorney (with full power of substitution and resubstitution) irrevocably making, constituting, and appointing such person as the Member's attorney-in-fact, with full power and authority to act in the Member's name and on the Member's behalf to: (a) vote on all matters to be voted on under this Agreement on behalf of such Members, (b) receive all notices on behalf of such Members, (c) execute and deliver, on behalf of such Members, any agreement, consent, assignment, waiver, other document or instrument or any amendment thereto or to take any other action required of such Members under this Agreement, including executing, acknowledging, delivering and swearing to in the execution, acknowledgment, delivery and filing of any agreements or instruments that a majority of the Board deems necessary or appropriate, and (d) take all other actions to be taken by or on behalf of the Members, as a group, and exercise any and all rights that such Members are permitted or required to do or exercise under this Agreement with respect to such a Drag-Along Sale or Sale of the Company.  The special powers granted in this Section 12.13 (i) is irrevocable, (ii) is coupled with an interest, and (iii) shall survive a Member's death, incapacity or dissolution.  A majority of the Board, duly appointed officer of the Company or other person duly designated by a majority of the Board and the Company may exercise the special power of attorney granted in this Section 12.13 by a facsimile or other electronic signature (including electronic mail with PDF attachment).

12.14   Further Assurance.  Each party to this Agreement agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents and to do all such other acts and things, as may be required by law or as, in the reasonable judgment of the Board, may be necessary or reasonably advisable to carry out the intent and purpose of this Agreement.

[Signature pages follow]

IN WITNESS WHEREOF, the Members signatory hereto have entered into this Agreement on the date first above written:

MEMBERS:

*[●]Member*

_____

Name:
Title:

**Annex I**
**Registration Rights**

See attached.

**REGISTRATION RIGHTS**

1.      Definitions. Capitalized terms used but not defined in this Annex I have the meanings given to such terms in the LLC Agreement.  As used in this Annex I, and solely for the purposes of this Annex I, the following terms have the meanings specified below:

"Affiliated Holders" has the meaning set forth in Section 2(b)(i) of this Annex I. "beneficially owned," "beneficial ownership" and similar phrases have the same meanings as such terms have under Rule 13d-3 (or any successor rule then in effect) under the Exchange Act, except that in calculating the beneficial ownership of any Holder, such Holder shall be deemed to have beneficial ownership of all securities that such Holder has the right to acquire, whether such right is currently exercisable or is exercisable upon the occurrence of a subsequent event.  For the avoidance of doubt, each Holder shall be deemed to beneficially own all of the Common Interests held by any of its Affiliates.

"Block Sale" means the sale of Common Interests constituting more than one percent (1%) of Common Interests then outstanding to one or more purchasers in a registered transaction without a prior marketing process by means of (i) a bought deal, (ii) a block trade or (iii) a direct sale.

"Company Notice" has the meaning set forth in Section 2(a)(iii) of this Annex I.

"Demand Eligible Holder" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Demand Eligible Holder Request" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Demand Notice" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Demand Registration" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Demand Registration Statement" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Effectiveness Period" has the meaning set forth in Section 2(b)(iii) of this Annex I. "Family Member" means, with respect to any natural Person, such Person's parents, spouse (but not including a former spouse or a spouse from whom such Person is legally separated) and descendants (whether or not adopted) and any trust, family limited partnership or limited liability company that is and remains solely for the benefit of such Person's spouse (but not including a former spouse or a spouse from whom such Person is legally separated) and/or descendants.

"FINRA" means Financial Industry Regulatory Authority, Inc.

"Holder" means each Member of the Company who holds any portion of the Company's then outstanding Common Interests.

"Indemnified Persons" has the meaning set forth in Section 5(a) of this Annex I.

"Initial Public Offering" means the initial firm commitment underwritten public offering of Registrable Securities consummated for cash and registered under the Securities Act or equivalent foreign securities laws (other than a registration statement on Form S-4 or Form S-8 (or any similar or successor form or equivalent foreign form)) pursuant to which Registrable Securities are sold and concurrently listed on a national securities exchange in the United States.

"Initiating Holders" has the meaning set forth in Section 2(b)(i) of this Annex I.

"Issuer Free Writing Prospectus" means an issuer free writing prospectus, as defined in Rule 433 under the Securities Act, relating to an offer of the Registrable Securities.

"LLC Agreement" means that certain Amended and Restated Limited Liability Company

Agreement of [Reorganized Careismatic Brands, LLC], dated [●], 2024, to which these Registration Rights are attached as <u>Annex I</u>.

"<u>Losses</u>" has the meaning set forth in <u>Section 5(a)</u> of this <u>Annex I</u>.

"<u>Other Registrable Securities</u>" means Common Interests issued or issuable with respect to, on account of or in exchange for Common Interests, whether by dividend, recapitalization, merger or otherwise held by any other Person who has rights to participate in any public offering of securities by the Company pursuant to a registration rights agreement or other similar arrangement with the Company.

"<u>Piggyback Eligible Holders</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Notice</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Registration</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Registration Statement</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Request</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Proceeding</u>" means any action, claim, suit, proceeding or investigation (including a preliminary investigation or partial proceeding, such as a deposition) pending or known to the Company to be threatened.

"<u>Prospectus</u>" means the prospectus or prospectuses included in a Registration Statement (including a prospectus that includes any information previously omitted from a prospectus filed as part of an effective Registration Statement in reliance upon Rule 430A promulgated under the Securities Act or any successor rule thereto), all amendments and supplements to the prospectus, including post-effective amendments, all material incorporated by reference or deemed to be incorporated by reference in such prospectus or prospectuses and any Issuer Free Writing Prospectus.

"<u>Registrable Securities</u>" means any Common Interests and any other securities issued or issuable with respect to, on account of or in exchange for Common Interests, whether by dividend, recapitalization, merger or otherwise that are held by the Holder or that are held by any Affiliate, transferee or assignee of any Holder, all of which Common Interests are subject to the rights provided herein until such rights terminate pursuant to the provisions of this <u>Annex I</u>. As to any particular Registrable Securities, such securities shall cease to be Registrable Securities when (i) a registration statement registering such Registrable Securities under the Securities Act has been declared effective and such Registrable Securities have been sold, transferred or otherwise disposed of by the Holder thereof pursuant to such effective registration statement, (ii) such Registrable Securities are sold, transferred or otherwise disposed of pursuant to Rule 144, (iii) such securities cease to be outstanding, or (iv) such Registrable Securities as are held by any Holder who, together with its Affiliates, at the time of determination, holds in the aggregate less than one percent (1%) of the Company's then outstanding Common Interests; <u>provided</u> that such Common Interests may be sold pursuant to Rule 144(b)(1) under the Securities Act without limitations on volume.

"<u>Registration Date</u>" means the date on which the Company becomes subject to Section 13(a) or Section 15(d) of the Exchange Act in connection with the Common Interests or any other class of equity securities of the Company.

"<u>Registration Expenses</u>" has the meaning set forth in <u>Section 4(a)</u> of this <u>Annex I</u>.

"<u>Registration Statement</u>" means a registration statement of the Company filed with or to be filed with the SEC under the Securities Act and other applicable law, and including any Prospectus, amendments and supplements to each such registration statement or Prospectus, including pre- and post-effective amendments, all exhibits thereto and all material incorporated by reference or deemed to

be incorporated by reference in such registration statement.

"Rule 144" means Rule 144 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 144A" means Rule 144A promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 158" means Rule 158 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 405" means Rule 405 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 424" means Rule 424 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Selling Expenses" means all underwriting fees, discounts, selling commissions and transfer taxes applicable to the sale of Registrable Securities and related legal and other fees of a Holder or any underwriter not included within the definition of Registration Expenses.

"Shelf" has the meaning set forth in Section 2(a)(i) of this Annex I.

"Shelf Period" has the meaning set forth in Section 2(a)(i) of this Annex I.

"Shelf Registration" means the registration of the Registrable Securities on a Shelf pursuant to Section 2(a)(i) of this Annex I.

"Shelf Takedown Notice" has the meaning set forth in Section 2(a)(iii) of this Annex I.

"Suspension Period" has the meaning set forth in Section 2(e) of this Annex I.

"Trading Market" means any principal national securities exchange in the United States, including, but not limited to, the New York Stock Exchange or The Nasdaq Global Market or, in each case, any successor exchange on which Registrable Securities are (or are to be) listed.

"Underwritten Shelf Takedown" has the meaning set forth in Section 2(a)(ii) of this Annex I.

Unless the context requires otherwise: (a) any pronoun used in this Annex I shall include the corresponding masculine, feminine or neuter forms; (b) references to Sections, paragraphs and clauses refer to Sections, paragraphs and clauses of this Annex I; (c) the terms "include," "includes," "including" or words of like import shall be deemed to be followed by the words "without limitation"; (d) the terms "hereof," "herein" or "hereunder" refer to this Annex I as a whole and not to any particular provision of this Annex I; (e) unless the context otherwise requires, the term "or" is not exclusive and shall have the inclusive meaning of "and/or"; (f) defined terms herein will apply equally to both the singular and plural forms and derivative forms of defined terms will have correlative meanings; (g) references to any law or statute shall include all rules and regulations promulgated thereunder, and references to any form of Registration Statement, law or statute shall be construed as including any legal and statutory provisions consolidating, amending, succeeding or replacing the applicable form of Registration Statement, law or statute; (h) references to any Person include such Person's successors and permitted assigns; and (i) references to "days" are to calendar days unless otherwise indicated.

2.    Registration.  This Annex I, and the rights granted hereunder, shall not be effective and

will not vest until a majority of the members of the Board ratify this <u>Annex I</u>.

(a)    <u>Shelf Registration</u>.

(i)    As soon as reasonably practicable after the date on which the Company becomes eligible to use a Registration Statement on Form S-3 to register the resale of Registrable Securities, and upon the request of an eligible Holder beneficially owning at least five percent (5%) of the then outstanding Common Interests, the Company shall file a Registration Statement on Form S-3 covering the resale of all Registrable Securities on a delayed or continuous basis (the "<u>Shelf</u>") for such Registrable Securities held by all such requesting Holders. The Company shall use its reasonable best efforts to cause such Registration Statement to become effective as promptly as practicable. The Company shall use its reasonable best efforts to keep the Shelf continuously effective under the Securities Act until there are no longer any Registrable Securities (the "<u>Shelf Period</u>").

(ii)    Subject to the provisions of <u>Section 2(a)(v)</u> of this <u>Annex I</u>, at any time during which the Shelf is effective (or in connection with its initial effectiveness), any one or more of the eligible Holders of Registrable Securities may request to sell all or any portion of their Registrable Securities in an underwritten offering that is registered pursuant to the Shelf (each, an "<u>Underwritten Shelf Takedown</u>"); <u>provided</u> that in the case of each such Underwritten Shelf Takedown such Holder or Holders will be entitled to make such demand only if (A) the number of Registrable Securities to be sold in such Underwritten Shelf Takedown represents not less than ten percent (10%) of the outstanding Common Interests in the aggregate and (B) the total offering price of the Common Interests to be sold in such Underwritten Shelf Takedown (including any piggyback securities and before deduction of underwriting discounts) is reasonably expected to exceed, in the aggregate, [$200 million].

(iii)    All requests for Underwritten Shelf Takedowns shall be made by giving written notice to the Company (the "<u>Shelf Takedown Notice</u>"). Each Shelf Takedown Notice shall specify the approximate number of Registrable Securities to be sold in the Underwritten Shelf Takedown and the expected price range (net of underwriting discounts and commissions) of such Underwritten Shelf Takedown. Subject to <u>Section 2(i)</u> of this <u>Annex I</u> below, within three (3) days after receipt of any Shelf Takedown Notice, the Company shall give notice of such requested Underwritten Shelf Takedown to all other Holders of Registrable Securities (the "<u>Company Notice</u>") and, subject to the provisions of <u>Section 2(a)(iv)</u> and <u>Section 2(i)</u> of this <u>Annex I</u> below, shall include in such Underwritten Shelf Takedown all Registrable Securities with respect to which the Company has received written requests for inclusion therein within five (5) Business Days after giving the Company Notice.

(iv)    If the managing underwriters for such Underwritten Shelf Takedown advise the Company that in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company, if the Company concludes after consultation with such managing underwriters and the Holder of Registrable Securities proposed to be included in such Underwritten Shelf Takedown that in the Company's reasonable view, the number of Common Interests proposed to be included in such Underwritten Shelf Takedown exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Holders of a majority of the Registrable Securities requested to be included in the Underwritten Shelf Takedown, then the Company shall so advise all Holders of Registrable Securities proposed to be included in such Underwritten Shelf Takedown, and shall include in such Underwritten Shelf Takedown the number of Common Interests which can be so sold in the following order of priority: (A) <u>first</u>, the Registrable Securities requested to be included in such Underwritten Shelf Takedown, which in the view of such underwriters or the Company, as applicable, can be sold in an orderly manner within the price range of such

offering, pro rata among the respective Holders of such Registrable Securities on the basis of the number of Registrable Securities requested to be included therein by each such Holder, and (B) second, Other Registrable Securities requested to be included in such Underwritten Shelf Takedown to the extent permitted hereunder, pro rata among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder.

(v)     Other than Block Sales, which shall not be classified as an Underwritten Shelf Takedown solely for the purposes of the limitations under this Section 2(a)(v) of this Annex I, the Company shall not be obligated to (A) effect an Underwritten Shelf Takedown within ninety (90) days (or such shorter period specified in any applicable lock-up agreement entered into with underwriters) after the consummation of a previous Underwritten Shelf Takedown or Demand Registration and (B) effect a total of not more than two (2) Underwritten Shelf Takedowns while any Registrable Securities remain outstanding; provided that one (1) of such two (2) Underwritten Shelf Takedowns shall be reserved for Holders who beneficially own in the aggregate more than 20 percent (20%) of the Company's then outstanding Common Interests.

(vi)    The Holders of a majority of the Registrable Securities requested to be included in an Underwritten Shelf Takedown shall have the right to select the investment banker(s) and manager(s) to administer the offering (which shall consist of one (1) or more reputable nationally recognized investment banks, subject to the Company's approval (which shall not be unreasonably withheld, conditioned or delayed)) and one (1) firm of counsel to represent all of the Holders (along with any reasonably necessary local counsel), in connection with such Underwritten Shelf Takedown; provided that the Company shall select such investment banker(s), manager(s) and counsel (including local counsel) if such Holders of such majority cannot so agree on the same within a reasonable time period.

(vii)   Any Holder whose Registrable Securities were to be included in any such registration pursuant to Section 2(a)(ii) of this Annex I may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future registration (or registrations), by written notice to the Company delivered on or prior to the effective date of the relevant Underwritten Shelf Takedown.

(viii)  As of the date this Annex I is ratified by a majority of the members of the Board, the Company represents and warrants that it is not a party to, or otherwise subject to, any agreement other than this Annex I granting registration rights to any other Person with respect to any securities of the Company.

(ix)    Notwithstanding any of the foregoing, the Company shall not be obligated to file any Registration Statement pursuant to Section 2(a) of this Annex I without the prior approval of a majority of the members of the Board.

(b)     Demand Registration.  Subject to the terms and conditions of this Annex I (including Section 2(b)(ii)), at any time on or after an Initial Public Offering or the listing of the Common Interests on a Trading Market, upon written notice to the Company (a "Demand Notice") delivered by a Holder or Holders, collectively, beneficially owning more than ten percent (10%) of the then outstanding Common Interests in the aggregate or, which for the avoidance of doubt shall include any Holder with respect to which there is a director serving on the Board who was appointed by, or is otherwise employed by or affiliated with, such Holder or its Affiliates  (each of the foregoing being referred to as the "Initiating Holders") at any time requesting that the Company effect the registration (a "Demand Registration") under the Securities Act (other than pursuant to a Registration Statement on Form S-4 or S-8) the number of Registrable Securities (which, for purposes of this Section 2(b)(i), shall include Common Interests

issuable pursuant to the Warrants) included in such Demand Notice, the Company shall promptly (but in any event, not later than five (5) Business Days following the Company's receipt of such Demand Notice) give written notice of the receipt of such Demand Notice to all other Holders that, to its knowledge, hold Registrable Securities (each, a "Demand Eligible Holder"). The Company shall promptly file the appropriate registration statement (the "Demand Registration Statement") and use its reasonable best efforts to effect, at the earliest practicable date, the registration under the Securities Act and under the applicable state securities laws of (1) the Registrable Securities which the Company has been so requested to register by the Initiating Holders in the Demand Notice and (2) all other Registrable Securities which the Company has been requested to register by the Demand Eligible Holders by written request (the "Demand Eligible Holder Request") given to the Company within ten (10) Business Days after the giving of such written notice by the Company, in each case subject to Section 2(b)(v) of this Annex I, all to the extent required to permit the disposition (in accordance with the intended methods of disposition) of the Registrable Securities to be so registered.

(i)        Notwithstanding anything herein to the contrary, the Company shall only be required to (A) effect one (1) Demand Registration in any six (6) month period and (B) effect a total of not more than three (3) Demand Registrations by Holders beneficially owning not less than ten percent (10%) of the outstanding shares of the Common Interests in the aggregate.

(ii)        The Company shall use its reasonable best efforts to keep the Demand Registration Statement continuously effective under the Securities Act for the period of time necessary for the underwriters or Holders to sell all the Registrable Securities covered by such Demand Registration Statement or such shorter period which will terminate when all Registrable Securities covered by such Demand Registration Statement have been sold pursuant thereto (including, if necessary, by filing with the SEC a post-effective amendment or a supplement to the Demand Registration Statement or the related Prospectus or any document incorporated therein by reference or by filing any other required document or otherwise supplementing or amending the Demand Registration Statement, if required by the rules, regulations or instructions applicable to the registration form used by the Company for such Demand Registration Statement or by the Securities Act, any state securities or "blue sky" laws, or any other rules and regulations thereunder) (the "Effectiveness Period"). A Demand Registration requested pursuant to this Section 2(b) shall not be deemed to have been effected (A) if the Registration Statement is withdrawn without becoming effective, (B) if the Registration Statement does not remain effective in compliance with the provisions of the Securities Act and the laws of any state or other jurisdiction applicable to the disposition of the Registrable Securities covered by such Registration Statement for the Effectiveness Period, (C) if, after it has become effective, such Registration Statement is subject to any stop order, injunction or other order or requirement of the SEC or other governmental or regulatory agency or court for any reason other than a violation of applicable law solely by any selling Holder and has not thereafter become effective, (D) in the event of an underwritten offering, if the conditions to closing specified in the underwriting agreement entered into in connection with such registration are not satisfied or waived other than by reason of some wrongful act or omission by an Initiating Holder, (E) if the Company does not include in the applicable Registration Statement any Registrable Securities held by a Holder that is required by the terms hereof to be included in such Registration Statement,  or (F) if the Initiating Holders and Demand Eligible Holders have not been able to sell at least seventy-five percent (75%) of the Registrable Securities that they have requested to sell in the Demand Notice or Demand Eligible Holder Request.

(iii)        Notwithstanding any other provision of this Section 2(b), if (A) the Initiating Holders intend to distribute the Registrable Securities covered by a Demand

Registration by means of an underwritten offering and (B) the managing underwriters advise the Company and the Initiating Holders that in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company and the Initiating Holders, the Company concludes after consultation with such managing underwriters and the Holders of Registrable Securities proposed to be included in such offering that in the Company's reasonable view, the number of Common Interests proposed to be included in such offering (including Registrable Securities requested by Holders to be included in such offering and any securities that the Company or any other Person proposes to be included that are not Registrable Securities) exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Holders of a majority of the Registrable Securities requested to be included in such Demand Registration, then the Company shall so advise all Initiating Holders and Demand Eligible Holders with Registrable Securities proposed to be included in such underwritten offering, and shall include in such offering the number of Common Interests which can be so sold in the following order of priority: (1) first, the Registrable Securities requested to be included in such underwritten offering by the Initiating Holders and the Demand Eligible Holders, which in the view of such underwriters or the Company, as applicable, can be sold in an orderly manner within the price range of such offering, pro rata  among such Initiating Holders and Demand Eligible Holders on the basis of the number of Registrable Securities requested to be included therein by each such Initiating Holder and Demand Eligible Holder, and (2) second, Other Registrable Securities requested to be included in such underwritten offering to the extent permitted hereunder pro rata  among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder.

(iv)    The determination of whether any offering of Registrable Securities pursuant to a Demand Registration will be an underwritten offering shall be made in the sole discretion of the Holders of a majority of the Registrable Securities included in such underwritten offering, and such Holders of a majority of the Registrable Securities shall have the right to (A) determine the plan of distribution, including the price at which the Registrable Securities are to be sold and the underwriting commissions, discounts and fees and (B) select the investment banker(s) and manager(s) to administer the offering (which shall consist of one (1) or more reputable nationally recognized investment banks, subject to the Company's approval (which shall not be unreasonably withheld, conditioned or delayed)) and one (1) firm of counsel to represent all of the Holders (along with any reasonably necessary local counsel), in connection with such Demand Registration; provided that the Company shall select such investment banker(s), manager(s) and counsel (including local counsel) if such Holders of such majority cannot so agree on the same within a reasonable time period.

(v)    Any Holder whose Registrable Securities were to be included in any such registration pursuant to this Section 2(b) may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future registration (or registrations), by written notice to the Company delivered on or prior to the effective date of the relevant Demand Registration Statement.

(c)    Piggyback Registration.

(i)    If at any time the Company proposes to file a Registration Statement (a "Piggyback Registration Statement"), other than pursuant to a Shelf Registration under Section 2(a) of this Annex I or any Demand Registration under Section 2(b) of this Annex I and other than an Initial Public Offering, for an offering of Common Interests or other equity interests for cash (whether in connection with a public offering of Common Interests by the Company, a public offering of Common Interests by holders of such securities other than Holders, or both,

but excluding an offering relating solely to an employee benefit plan, an offering relating to a transaction on Form S-4, an offering on any Registration Statement form that does not permit secondary sales or an offering in connection with any dividend or distribution reinvestment or similar plan), the Company shall give written notice (the "Piggyback Notice") to all Holders that, to its knowledge, hold at least 1% of the Company's outstanding Common Interests (collectively, the "Piggyback Eligible Holders") of the Company's intention to file a Piggyback Registration Statement reasonably in advance of (and in any event at least ten (10) Business Days before) the anticipated filing date of such Piggyback Registration Statement. The Piggyback Notice shall offer the Piggyback Eligible Holders the opportunity to include for registration in such Piggyback Registration Statement the number of Registrable Securities as they may request, subject to Section 2(c)(ii) of this Annex I (a "Piggyback Registration"). Subject to Section 2(c)(ii) of this Annex I, the Company shall use its reasonable best efforts to include in each such Piggyback Registration such Registrable Securities for which the Company has received written requests (each, a "Piggyback Request") from Piggyback Eligible Holders within five (5) Business Days after giving the Piggyback Notice. If a Piggyback Eligible Holder decides not to include all of its Registrable Securities in any Piggyback Registration Statement thereafter filed by the Company, such Piggyback Eligible Holder shall nevertheless continue to have the right to include any Registrable Securities in any subsequent Piggyback Registration Statements or registration statements as may be filed by the Company with respect to offerings of Common Interests, all upon the terms and conditions set forth herein. The Company shall use its reasonable best efforts to effect the registration under the Securities Act (other than pursuant to a Registration Statement on Form S-4 or S-8) of all Registrable Securities which the Company has been so requested to register pursuant to the Piggyback Requests, to the extent required to permit the disposition of the Registrable Securities so requested to be registered.

(ii)     If the Piggyback Registration under which the Company gives notice pursuant to Section 2(c)(i) of this Annex I is an underwritten offering, and the managing underwriter or managing underwriters of such offering advise the Company and the Piggyback Eligible Holders that, in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company and the Piggyback Eligible Holders, the Company concludes after consultation with such managing underwriters and the Holders of Registrable Securities proposed to be included in such registration that in the Company's reasonable view, the amount of securities requested to be included in such registration (including Registrable Securities requested by the Piggyback Eligible Holders to be included in such offering and any securities that the Company or any other Person proposes to be included that are not Registrable Securities) exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Company, then the Company shall so advise all Piggyback Eligible Holders with Registrable Securities proposed to be included in such Piggyback Registration, and shall include in such offering the number which can be so sold in the following order of priority: (A) in the case of a Company-initiated registration, (1) first, the securities that the Company proposes to sell, (2) second, the Registrable Securities requested to be included in such Piggyback Registration pro rata among the Piggyback Eligible Holders on the basis of the number of Registrable Securities requested to be included therein by each Piggyback Eligible Holder and (3) third, Other Registrable Securities requested to be included in such Piggyback Registration, pro rata among the Holders thereof on the basis of the number of securities requested to be included therein by each such Holder and (B) in the case of a non-Company initiated registration, (1) first, the securities requested to be included in such offering by the Holders of the Company's securities initiating such registration and the Piggyback Eligible Holders, pro rata among such Holders on the basis of the number of securities requested to be included therein by each such Holder and (2) second, Other

Registrable Securities requested to be included in such offering to the extent permitted hereunder pro rata among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder. Promptly (and in any event within one (1) Business Day) following receipt of notification by the Company from the managing underwriter of a range of prices at which such Registrable Securities are likely to be sold, the Company shall so advise each Piggyback Eligible Holder requesting registration in such offering of such price. If any Piggyback Eligible Holder disapproves of the terms of any such underwriting (including the price offered by the underwriter(s) in such offering), such Piggyback Eligible Holder may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future Piggyback Registration or other registration statement, by written notice to the Company and the managing underwriter(s) delivered on or prior to the effective date of such Piggyback Registration Statement. Any Registrable Securities withdrawn from such underwriting shall be excluded and withdrawn from the registration. For any Piggyback Eligible Holder that is a partnership, limited liability company, corporation or other entity, the partners, members, stockholders, subsidiaries, parents and Affiliates of such Piggyback Eligible Holder, or the estates and Family Members of any such partners or members and retired partners or members and any trusts for the benefit of any of the foregoing Persons, shall be deemed to be a single "Piggyback Eligible Holder," and any pro rata reduction with respect to such "Piggyback Eligible Holder" shall be based upon the aggregate amount of securities carrying registration rights owned by all entities and individuals included in such "Piggyback Eligible Holder," as defined in this sentence.

(iii)    The Company shall have the right to terminate or withdraw any registration initiated by it under this Section 2(c) prior to the effective date of such Registration Statement, whether or not any Piggyback Eligible Holder has elected to include Registrable Securities in such Registration Statement, without prejudice, however, to the right of the Holders immediately to request that such registration be effected as a registration under Section 2(b) of this Annex I to the extent permitted thereunder and subject to the terms set forth therein.

(iv)    If a Piggyback Registration pursuant to this Section 2(c) involves an underwritten offering, the Company shall have the right, in consultation with subject to the approval of the Holders of a majority of the Registrable Securities included in such underwritten offering (which approval shall not be unreasonably withheld, conditioned or delayed), to (A) determine the plan of distribution, including the price at which the Registrable Securities are to be sold and the underwriting commissions, discounts and fees and (B) select the investment banker or bankers and managers to administer the offering, including the lead managing underwriter.

(v)    No registration effected under this Section 2(c) shall relieve the Company of its obligations to effect any registration of the sale of Registrable Securities upon request under Section 2(a) or Section 2(b) of this Annex I and no registration effected pursuant to this Section 2(c) shall be deemed to have been effected pursuant to Section 2(a) or Section 2(b) of this Annex I.

(d)    Any Demand Notice, Demand Eligible Holder Request, Piggyback Request or Shelf Takedown Notice shall (i) specify the number or class of Registrable Securities and, if applicable, other securities, intended to be offered and sold by the Holder making the request, (ii) express such Holder's bona fide intent to offer such Registrable Securities for distribution, (iii) describe the nature or method of the proposed offer and sale of Registrable Securities (to the extent applicable) and (iv) contain the undertaking of such Holder to provide all such information and materials and take all action as may reasonably be required in order to permit the Company to comply with all applicable

requirements in connection with the registration of such Registrable Securities.

(e)    Notwithstanding any other provision of this Section 2, the Company shall have the right but not the obligation to defer the filing of, or suspend the use by the Holders of, any Demand Registration or Shelf Registration for a period of up to sixty (60) days if (i) the Board determines, in its good faith judgment, that the disclosure that would otherwise be required to file or update  such Registration Statement would cause the disclosure of material non-public information in a manner that would materially and adversely interfere with any pending material financing or material acquisition, merger, recapitalization, consolidation or reorganization or similar transaction involving the Company; (ii) if the Company is subject to any of its customary suspension or blackout periods, for all or part of such period; (iii) upon issuance by the SEC of a stop order suspending the effectiveness of any registration statement with respect to Registrable Securities or the initiation of proceedings with respect to such registration statement under Section 8(d) or 8(e) of the Securities Act; (iv) if the Company believes that any such registration or offering (A) should not be undertaken because it would reasonably be expected to materially interfere with any material corporate development or plan or (B) would require the Company, under applicable securities laws and other laws, to make disclosure of material nonpublic information that would not otherwise be required to be disclosed at that time and the Company believes in good faith that such disclosures at that time would not be in the Company's best interests; provided that this exception (B) shall continue to apply only during the time that such material nonpublic information has not been disclosed and remains material; (v) if the Company elects at such time to offer Common Interests to (1) fund a merger, third-party tender offer or other business combination, acquisition of assets or similar transaction or (2) meet rating agency and other capital funding requirements; (vi) if the Company is pursuing a primary underwritten offering of Common Interests pursuant to a registration statement; provided that Holders shall have Piggyback Registration rights with respect to such primary underwritten offering in accordance with and subject to the restrictions set forth in Section 2(c) of this Annex I or (vii) if any other material development would materially and adversely interfere with any such Demand Registration or Shelf Registration (any such period, a "Suspension Period"); provided, however, that in such event, the Initiating Holders will be entitled to withdraw any request for a Demand Registration and, if such request is withdrawn, such Demand Registration will not count as a Demand Registration; and provided, further, that in no event shall the Company declare a Suspension Period more than twice in any twelve (12) month period or for more than an aggregate of ninety (90) days in any twelve (12) month period. The Company shall give written notice to the Holders of its declaration of a Suspension Period and of the expiration of the relevant Suspension Period.

(f)    The Company may require each Holder of Registrable Securities as to which any Registration Statement is being filed or sale is being effected to furnish to the Company such information regarding the distribution of such securities and such other information relating to such Holder and its ownership of Registrable Securities as the Company may from time to time reasonably request in writing (provided that such information shall be used only in connection with such registration) and the Company may exclude from such registration or sale the Registrable Securities of any such Holder who fails to furnish such information within a reasonable time after receiving such request. Each Holder agrees to furnish such information to the Company and to cooperate with the Company as reasonably necessary to enable the Company to comply with the provisions of this Annex I.

(g)    All registration rights granted under this Section 2 shall continue to be applicable with respect to any Holder until such Holder no longer holds any Registrable Securities.

(h)    Notwithstanding anything to the contrary contained herein, (i) no Holder shall be entitled to any piggyback right or to participate as a Demand Eligible Holder under this Section 2 in the event of a Block Sale (including Block Sales off of a Shelf; provided that any registration with respect to a Block Sale shall not constitute a Demand Registration for purposes of determining the number of

Demand Registrations effected by the Company under <u>Section 2(b)(ii)</u> of this <u>Annex I</u>) except as set forth in <u>Section 2(h)(iii)</u> below, (ii) no Holder, other than an Affiliated Holder, shall be permitted to request or participate in an underwritten offering (including an Underwritten Shelf Takedown) that is a Block Sale and (iii) an Affiliated Holder effecting an underwritten offering (including an Underwritten Shelf Takedown) that is a Block Sale shall provide prompt notice (but in no event later than twenty-four (24) hours prior to such Block Sale) to the Company and any other Affiliated Holder setting forth the proposed timeline for such offering to permit participation by such other Affiliated Holder in such offering, and such other Affiliated Holder shall be entitled to participate in such offering so long as such participation of such other Affiliated Holder does not materially delay the proposed timeline of such Block Sale specified in the notice.

(i)     Following the Registration Date, the Company, in connection with any action taken under this <u>Annex I</u>, may, in good faith, reasonably request in writing from any Holder the number of Registrable Securities held by such Holder, and any Holder receiving such a written request shall provide the duly requested information to the Company as promptly as is reasonably practicable.

3.     <u>Registration Procedures</u>.  The procedures to be followed by the Company and each participating Holder to register the sale of Registrable Securities pursuant to a Registration Statement in accordance with this <u>Annex I</u>, and the respective rights and obligations of the Company and such Holders with respect to the preparation, filing and effectiveness of such Registration Statement, are as follows:

(a)     The Company will (i) prepare and file a Registration Statement or a prospectus supplement, as applicable, with the SEC (within the time period specified in <u>Section 2(a)</u> or <u>Section 2(b)</u> of this <u>Annex I</u>, as applicable, in the case of a Shelf Registration, an Underwritten Shelf Takedown or a Demand Registration) which Registration Statement (A) shall be on a form selected by the Company for which the Company qualifies, (B) shall be available for the sale or exchange of the Registrable Securities in accordance with the intended method or methods of distribution, in the case of a Demand Registration Statement, a Shelf or an Underwritten Shelf Takedown, and (C) shall comply as to form in all material respects with the requirements of the applicable form and include and/or incorporate by reference all financial statements required by the SEC to be filed therewith, (ii) use its reasonable best efforts to cause such Registration Statement to become effective and remain effective for the periods provided under <u>Section 2(a)</u> or <u>Section 2(b)</u> of this <u>Annex I</u>, as applicable, in the case of a Shelf Registration Statement or a Demand Registration Statement, respectively, (iii) use its reasonable best efforts to prevent the occurrence of any event that would cause a Registration Statement to contain a material misstatement or omission or to be not effective and usable for resale of the Registrable Securities registered pursuant thereto (during the period that such Registration Statement is required to be effective as provided under <u>Section 2(a)</u> or <u>Section 2(b)</u> of this <u>Annex I</u>), and (iv) cause each Registration Statement and the related Prospectus and any amendment or supplement thereto, as of the effective date of such Registration Statement, amendment or supplement (A) to comply in all material respects with any requirements of the Securities Act and the rules and regulations of the SEC and (B) not to contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading. The Company will, (1) at least five (5) Business Days prior to the anticipated filing of a Registration Statement or any related Prospectus or any amendment or supplement thereto furnish to such Holders and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, copies of all such documents proposed to be filed, (2) use its reasonable best efforts to address in each such document prior to being so filed with the SEC such comments as such Holder or underwriter reasonably shall propose within three (3) Business Days of receipt of such copies by the Holders and (3) not file any Registration Statement or any related Prospectus or any amendment or supplement thereto to which a participating Holder reasonably objects.

(b)     The Company will use its reasonable best efforts to, as promptly as reasonably

practicable (i) prepare and file with the SEC such amendments, including post-effective amendments, and supplements to each Registration Statement and the Prospectus used in connection therewith as (A) may be reasonably requested by any Holder of Registrable Securities covered by such Registration Statement necessary to permit such Holder to sell in accordance with its intended method of distribution or (B) may be necessary under applicable law to keep such Registration Statement continuously effective with respect to the disposition of all Registrable Securities covered thereby for the periods provided under <u>Section 2(a)</u> or <u>Section 2(b)</u> of this <u>Annex I</u>, as applicable, in accordance with the intended method of distribution and, subject to the limitations contained in this <u>Annex I</u>, prepare and file with the SEC such additional Registration Statements in order to register for resale under the Securities Act all of the Registrable Securities held by the Holders, (ii) cause the related Prospectus to be amended or supplemented by any required prospectus supplement and, as so supplemented or amended, to be filed pursuant to Rule 424, (iii) respond to any comments received from the SEC with respect to each Registration Statement or Prospectus or any amendment thereto and (iv) as promptly as reasonably practicable, provide such Holders true and complete copies of all correspondence from and to the SEC relating to such Registration Statement or Prospectus other than any comments that the Company determines in good faith would result in the disclosure to such Holders of material and non-public information concerning the Company that is not already in the possession of such Holder.

(c)     The Company will comply in all material respects with the provisions of the Securities Act and the Exchange Act (including Regulation M under the Exchange Act) with respect to each Registration Statement and the disposition of all Registrable Securities covered by each Registration Statement.

(d)     The Company will notify such Holders that, to its knowledge, hold Registrable Securities and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, as promptly as reasonably practicable: (i)(A) when a Registration Statement, any pre-effective amendment, any Prospectus or any prospectus supplement or post- effective amendment to a Registration Statement or any free writing prospectus is proposed to be filed, (B) when the SEC notifies the Company whether there will be a "review" of such Registration Statement and whenever the SEC comments on such Registration Statement (in which case the Company shall provide true and complete copies thereof and all written responses thereto to each Holder and underwriter, if applicable, other than information which the Company determines in good faith would constitute material and non-public information that is not already in the possession of such Holder) and (C) with respect to each Registration Statement or any post- effective amendment thereto, when the same has been declared effective; (ii) of any request by the SEC or any other federal or state governmental or regulatory authority for amendments or supplements to a Registration Statement or Prospectus or for additional information (whether before or after the effective date of the Registration Statement) or any other correspondence with the SEC or any such authority relating to, or which may affect, the Registration Statement; (iii) of the issuance by the SEC or any other governmental or regulatory authority of any stop order, injunction or other order or requirement suspending the effectiveness of a Registration Statement covering any or all of the Registrable Securities or the initiation of any Proceedings for that purpose; (iv) of the receipt by the Company of any notification with respect to the suspension of the qualification or exemption from qualification of any of the Registrable Securities for sale in any jurisdiction, or the initiation or threatening of any Proceeding for such purpose; (v) if, at any time, to the Company's knowledge, the representations and warranties of the Company in any applicable underwriting agreement or similar agreement cease to be true and correct in all material respects or (vi) of the occurrence of any event that makes any statement made in such Registration Statement or Prospectus or any document incorporated or deemed to be incorporated therein by reference untrue in any material respect or if, as a result of such event or the passage of time, such Registration Statement, Prospectus or other documents requires revisions so that, in the case of such Registration Statement or the Prospectus, as the case may be, it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary

to make the statements therein (in the case of the Prospectus, in light of the circumstances under which they were made) not misleading, or when any Issuer Free Writing Prospectus includes information that may conflict with the information contained in the Registration Statement or Prospectus, or if, for any other reason, it shall be necessary during such time period to amend or supplement such Registration Statement or Prospectus in order to comply with the Securities Act, which shall correct such misstatement or omission or effect such compliance.

(e)    The Company will use its reasonable best efforts to avoid the issuance of or, if issued, obtain the withdrawal of (i) any stop order or other order suspending the effectiveness of a Registration Statement or the use of any Prospectus or (ii) any suspension of the qualification (or exemption from qualification) of any of the Registrable Securities for sale in any jurisdiction, at the earliest practicable moment, or if any such order or suspension is made effective during any Suspension Period, at the earliest practicable moment after the Suspension Period is over.

(f)    During the Effectiveness Period or the Shelf Period, as applicable, the Company will furnish to each Holder and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, upon their request, without charge, at least one (1) conformed copy of each Registration Statement and each amendment thereto and all exhibits to the extent requested by such Holder or underwriter (including those incorporated by reference) promptly after the filing of such documents with the SEC.

(g)    The Company will promptly deliver to each Holder and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, without charge, as many copies of each Prospectus or Prospectuses (including each form of prospectus) and each amendment or supplement thereto as such Holder or underwriter may reasonably request in order to facilitate the disposition of the Registrable Securities by such Holder or underwriter. The Company consents to the use of such Prospectus and each amendment or supplement thereto by each of the selling Holders and any applicable underwriter in connection with the offering and sale of the Registrable Securities covered by such Prospectus and any amendment or supplement thereto. The Company will use its reasonable best efforts to (i) register or qualify the Registrable Securities covered by a Registration Statement, no later than the time such Registration Statement is declared effective by the SEC, under all applicable securities laws (including the "blue sky" laws) of such jurisdictions each underwriter, if any, or any Holder shall reasonably request; (ii) keep each such registration or qualification effective during the period such Registration Statement is required to be kept effective under the terms of this Annex I and (iii) do any and all other acts and things which may be reasonably necessary or advisable to enable such underwriter, if any, and each Holder to consummate the disposition in each such jurisdictions of the Registrable Securities covered by such Registration Statement; provided, however, that the Company will not be required to (A) qualify generally to do business in any jurisdiction where it would not otherwise be required to qualify but for this subparagraph, (B) subject itself to taxation in any such jurisdiction or (C) consent to general service of process (other than service of process in connection with such registration or qualification or any sale of Registrable Securities in connection therewith) in any such jurisdiction.

(h)    The Company will cooperate with each Holder and the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if applicable, to facilitate the timely preparation and delivery of certificates representing Registrable Securities to be delivered to a transferee pursuant to a Registration Statement, which certificates shall be free of all restrictive legends indicating that the Registrable Securities are unregistered or unqualified for resale under the Securities Act, Exchange Act or other applicable securities laws, and to enable such Registrable Securities to be in such denominations and registered in such names as each Holder or the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if any, may request in writing. In connection therewith, if required by the Company's transfer agent, the Company will promptly, after the effective date of the Registration Statement, cause an opinion of counsel as to the effectiveness of the

Registration Statement to be delivered to and maintained with such transfer agent, together with any other authorizations, certificates and directions required by the transfer agent which authorize and direct the transfer agent to issue such Registrable Securities without any such legend upon sale by the Holder or the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if any, of such Registrable Securities under the Registration Statement.

(i)    Upon the occurrence of any event contemplated by Section 3(d)(vi) of this Annex I, as promptly as reasonably practicable, the Company will prepare a supplement or amendment, including a post-effective amendment, if required by applicable law, to the affected Registration Statement or a supplement to the related Prospectus or any document incorporated or deemed to be incorporated therein by reference or to the applicable Issuer Free Writing Prospectus, and file any other required document so that, as thereafter delivered, no Registration Statement nor any Prospectus will contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein (in the case of a Prospectus, in light of the circumstances under which they were made) not misleading and no Issuer Free Writing Prospectus will include information that conflicts with information contained in the Registration Statement or Prospectus and such that each selling Holder can resume disposition of such Registrable Securities covered by such Registration Statement or Prospectus.

(j)    Such Holders may distribute the Registrable Securities by means of an underwritten offering; provided that (i) such Holders provide to the Company a Shelf Takedown Notice or Demand Notice of their intention to distribute Registrable Securities by means of an underwritten offering, (ii) the right of any Holder to include such Holder's Registrable Securities in such registration shall be conditioned upon such Holder's participation in such underwriting and the inclusion of such Holder's Registrable Securities in the underwriting to the extent provided herein, (iii) each Holder participating in such underwritten offering agrees to enter into an underwriting agreement in customary form and sell such Holder's Registrable Securities on the basis provided in any underwriting arrangements approved by the Holders entitled to select the managing underwriter or managing underwriters hereunder (provided that any such Holder shall not be required to make any representations or warranties to or agreements with the Company or the underwriters other than representations, warranties, agreements and indemnities regarding such Holder, such Holder's title to the Registrable Securities, such Holder's intended method of distribution, the accuracy of information concerning such Holder as provided by or on behalf of such Holder, and any other representations required to be made by the Holder under applicable law, and the aggregate amount of the liability of such Holder in connection with such offering shall not exceed such Holder's net proceeds from the disposition of such Holder's Registrable Securities in such offering) and (iv) each Holder participating in such underwritten offering completes and executes all questionnaires, powers of attorney, custody agreements and other documents reasonably required under the terms of such underwriting arrangements. The Company hereby agrees with each Holder that, in connection with any underwritten offering in accordance with the terms hereof, it will negotiate in good faith and execute all indemnities, underwriting agreements and other documents reasonably required under the terms of such underwriting arrangements, and will procure auditor "comfort" letters addressed to the underwriters in the offering from the Company's independent certified public accountants or independent auditors (and, if necessary, any other independent certified public accountants or independent auditors of any subsidiary of the Company or any business acquired by the Company for which financial statements and financial data are, or are required to be, included in the Registration Statement) in customary form and covering such matters of the type customarily covered by comfort letters as the underwriters reasonably request, dated the date of execution of the underwriting agreement and brought down to the closing under the underwriting agreement.

(k)    The Company will obtain for delivery to the underwriter or underwriters of an underwritten offering of Registrable Securities, an opinion or opinions from counsel for the Company

(including any local counsel reasonably requested by the underwriters) dated the most recent effective date of the Registration Statement or, in the event of an underwritten offering, the date of the closing under the underwriting agreement, in customary form, scope and substance, covering the matters customarily covered in opinions requested in sales of securities or underwritten offerings, which opinions shall be reasonably satisfactory to such underwriters and its counsel.

(l)      For a reasonable period prior to the filing of any Registration Statement and throughout the Effectiveness Period or the Shelf Period, as applicable, the Company will make available upon reasonable notice at the Company's principal place of business or such other reasonable place for inspection by a representative appointed by a majority of the Holders covered by the applicable Registration Statement, by any managing underwriter or managing underwriters selected in accordance with this Annex I and by any attorney, accountant or other agent retained by such Holders or underwriter, such financial and other information and books and records of the Company, and cause the officers, employees, counsel and independent certified public accountants of the Company to respond to such inquiries, as shall be reasonably necessary (and in the case of counsel, not violate an attorney-client privilege in such counsel's reasonable belief) to conduct a reasonable investigation within the meaning of Section 11 of the Securities Act.

(m)      The Company will (i) provide and cause to be maintained a transfer agent and registrar for all Registrable Securities covered by the applicable Registration Statement from and after a date not later than the effective date of such Registration Statement and provide and enter into any reasonable agreements with a custodian for the Registrable Securities and (ii) not later than the effective date of the applicable Registration Statement, provide a CUSIP number for all Registrable Securities.

(n)      The Company will cooperate with each Holder of Registrable Securities and each underwriter or agent participating in the disposition of Registrable Securities and their respective counsel in connection with any filings required to be made with FINRA and in performance of any due diligence investigations by any underwriter.

(o)      The Company will use its reasonable best efforts to comply with all applicable rules and regulations of the SEC, any securities exchange on which the Company's securities are listed, FINRA and any state securities authority, and make available to each Holder, as soon as reasonably practicable after the effective date of the Registration Statement, an earnings statement covering at least twelve (12) months which shall satisfy the provisions of Section 11(a) of the Securities Act and Rule 158.

(p)      The Company will use its reasonable best efforts to ensure that any Issuer Free Writing Prospectus utilized in connection with any Prospectus complies in all material respects with the Securities Act, is filed in accordance with the Securities Act to the extent required thereby, is retained in accordance with the Securities Act to the extent required thereby and, when taken together with the related Prospectus, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

(q)      In connection with any registration of Registrable Securities pursuant to this Annex I, the Company will use its reasonable best efforts to expedite or facilitate the disposition of Registrable Securities by such Holders, including using reasonable best efforts to cause appropriate officers and employees to be available, on a customary basis and upon reasonable advance notice, to meet with prospective investors in presentations, meetings and road shows but not in connection with more than four offerings in any twelve (12) months.

(r)      Following the listing of the Common Interests on the NYSE or NASDAQ or any successor national securities exchange, the Company will use its reasonable best efforts to maintain such listing until each Holder has sold all of its Registrable Securities.

4.    <u>Registration Expenses</u>. The Company shall bear all reasonable Registration Expenses in connection with any Demand Registration, Shelf Registration, Shelf Takedown Notice or Piggyback Registration (excluding any Selling Expenses), whether or not any Registrable Securities are sold pursuant to a Registration Statement.

(a)    "<u>Registration Expenses</u>" shall include, without limitation, (i) all registration, qualification and filing fees and expenses (including fees and expenses (A) of the SEC or FINRA, incurred in connection with the listing of the Registrable Securities on the Trading Market and in compliance with applicable state securities or "blue sky" laws (including reasonable documented fees and disbursements of counsel for the underwriters in connection with "blue sky" qualifications of the Registrable Securities)); (ii) printing expenses (including expenses of printing certificates for the Company's shares and of printing prospectuses); (iii) road show expenses of the Company and the underwriters, if any; (iv) messenger, telephone and delivery expenses; (v) reasonable documented fees and disbursements of counsel (including any local counsel), auditors and accountants for the Company (including the expenses incurred in connection with "comfort letters" required by or incident to such performance and compliance); (vi) the reasonable documented fees and disbursements of underwriters to the extent customarily paid by issuers or sellers of securities (including, if applicable, the fees and expenses of any "qualified independent underwriter" (and its counsel) that is required to be retained in accordance with the rules and regulations of FINRA); (vii) fees and expenses of any special experts retained by the Company; (viii) Securities Act liability insurance, if the Company so desires such insurance, and (ix) reasonable documented fees and disbursements of one counsel (along with any reasonably necessary local counsel) representing all Holders mutually agreed by Holders of a majority of the Registrable Securities participating in the related registration.  In addition, the Company shall be responsible for all of its expenses incurred in connection with the consummation of the transactions contemplated by this <u>Annex I</u> (including expenses payable to third parties and including all salaries and expenses of the Company's officers and employees performing legal or accounting duties), the expense of any annual audit, the expense of any liability insurance it determines to obtain and any underwriting fees, discounts, selling commissions and stock transfer taxes and related legal and other fees applicable to securities sold by the Company and in respect of which proceeds are received by the Company.  Each Holder shall pay any Selling Expenses applicable to the sale or disposition of such Holder's Registrable Securities pursuant to any Demand Registration Statement or Piggyback Registration Statement, or pursuant to any Shelf under which such selling Holder's Registrable Securities were sold, in proportion to the amount of such selling Holder's shares of Registrable Securities sold in any offering under such Demand Registration Statement, Piggyback Registration Statement or Shelf.

(b)    Notwithstanding anything to the contrary contained herein, the Company shall have no obligation to pay any underwriting discounts or selling commissions attributable to the Registrable Securities being sold by the Holders, which underwriting discounts or selling commissions shall be borne by the selling Holders, pro rata  in proportion to the respective amount of Registrable Securities each is selling in such offering.

5.    <u>Indemnification</u>.

(a)    If requested by a participating Holder, the Company shall indemnify and hold harmless each underwriter, if any, engaged in connection with any registration referred to in <u>Section 2</u> of this <u>Annex I</u> and provide representations, covenants, opinions and other assurances to such underwriter in form and substance reasonably satisfactory to such underwriter and the Company. Further, the Company shall indemnify and hold harmless each Holder, its Affiliates and each of their respective officers and directors and any Person who controls any such Holder (within the meaning of the Securities Act) and any agent thereof (collectively, "<u>Indemnified Persons</u>"), to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, joint or several, costs (including reasonable costs of preparation and reasonable attorneys' fees) and expenses, judgments,

fines, penalties, interest, settlements or other amounts, in each case to the extent, but only to the extent, arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, in which any Indemnified Person may be involved, or is threatened to be involved, as a party or otherwise, under the Securities Act or otherwise (collectively, "Losses"), as incurred, arising out of, based upon, resulting from or relating to (i) any untrue or alleged untrue statement of a material fact contained in any Registration Statement under which any Registrable Securities were registered, Prospectus (including in any preliminary prospectus (if used prior to the effective date of such Registration Statement)), or in any summary or final prospectus or free writing prospectus or in any amendment or supplement thereto or in any documents incorporated by reference in any of the foregoing or (ii) the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements made therein (in the case of a Prospectus or preliminary Prospectus, in light of the circumstances under which they were made), not misleading; provided, however, that the Company shall not be liable to any Indemnified Person to the extent that any such Losses arise out of, are based upon or result from an untrue or alleged untrue statement or omission or alleged omission made in such Registration Statement, such preliminary, summary or final prospectus or free writing prospectus or such amendment or supplement, in reliance upon and in conformity with written information furnished to the Company by or on behalf of such Indemnified Person specifically for use in the preparation thereof.

(b)    In connection with any Registration Statement filed by the Company pursuant to Section 2 of this Annex I in which a Holder has registered for sale its Registrable Securities, each such selling Holder agrees (severally and not jointly) to indemnify and hold harmless, to the fullest extent permitted by law, the Company, its directors and officers, each Person who controls the Company (within the meaning of the Securities Act or the Exchange Act) and each underwriter, if any, from and against any Losses resulting from (i) any untrue statement of a material fact in any Registration Statement under which such Registrable Securities were registered or sold under the Securities Act (including any final, preliminary or summary Prospectus contained therein or any amendment thereof or supplement thereto or any documents incorporated by reference therein) or (ii) any omission to state therein a material fact required to be stated therein or necessary to make the statements therein (in the case of a Prospectus or preliminary Prospectus, in light of the circumstances under which they were made) not misleading, in each case to the extent, but only to the extent, that such untrue statement or omission is contained in any information furnished in writing by or on behalf of such selling Holder to the Company specifically for inclusion in such Registration Statement or Prospectus. In no event shall the liability of any selling Holder hereunder be greater in amount than the dollar amount of the net proceeds received by such Holder under the sale of Registrable Securities giving rise to such indemnification obligation less any amounts paid by such Holder pursuant to Section 5(d) of this Annex I and any amounts paid by such Holder as a result of liabilities incurred under the underwriting agreement, if any, related to such sale. The underwriter for any underwritten offer shall provide the Company and any selling Holder with customary indemnifications and agree to contribution.

(c)    Any indemnified Person shall (i) give prompt written notice to the indemnifying party of any claim with respect to which it seeks indemnification; provided that any delay or failure to so notify the indemnifying party shall not relieve the indemnifying party of its obligations hereunder except to the extent, if at all, that it is actually and materially prejudiced by reason of such delay or failure and (ii) permit such indemnifying party to assume the defense of such claim with counsel reasonably satisfactory to the indemnified party; provided, however, that any indemnified Person shall have the right to select and employ separate counsel and to participate in the defense of such claim, but the fees and expenses of such counsel shall be at the expense of such indemnified Person unless (A) the indemnifying party has agreed in writing to pay such fees or expenses, (B) the indemnifying party shall have failed to assume the defense of such claim within a reasonable time after receipt of notice of such claim from the indemnified Person and employ counsel reasonably satisfactory to such indemnified Person, (C) the indemnified party has reasonably concluded (based upon advice of its counsel) that there

may be legal defenses available to it or other indemnified Persons that are different from or in addition to those available to the indemnifying party or (D) in the reasonable judgment of any such indemnified Person (based upon advice of its counsel) a conflict of interest may exist between such indemnified Person and the indemnifying party with respect to such claims (in which case, if the indemnified Person notifies the indemnifying party in writing that such indemnified Person elects to employ separate counsel at the expense of the indemnifying party, the indemnifying party shall not have the right to assume the defense of such claim on behalf of such indemnified Person). If the indemnifying party assumes the defense, the indemnifying party shall not have the right to settle such action without the consent of the indemnified Person. If such defense is not assumed by the indemnifying party, the indemnifying party will not be subject to any liability for any settlement made without its prior written consent, but such consent may not be unreasonably delayed, withheld or conditioned. It is understood that the indemnifying party or parties shall not, except as specifically set forth in this Section 5(c), in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees, disbursements or other charges of more than one separate firm admitted to practice in such jurisdiction at any one time.

(d)     If for any reason the indemnification provided for in Section 5(a) and Section 5(b) of this Annex I is unavailable to an indemnified Person (other than as a result of exceptions contained in Section 5(a) and Section 5(b) of this Annex I) or insufficient in respect of any Losses referred to therein, then the indemnifying party shall contribute to the amount paid or payable by the indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the indemnifying party on the one hand and the indemnified Person or Persons on the other hand in connection with the acts, statements or omissions that resulted in such Losses, as well as any other relevant equitable considerations. In connection with any Registration Statement filed with the SEC by the Company, the relative fault of the indemnifying party on the one hand and the indemnified Person on the other hand shall be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the indemnifying party or by the indemnified Person and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission. The parties hereto agree that it would not be just or equitable if contribution pursuant to this Section 5(d) were determined by pro rata allocation or by any other method of allocation that does not take account of the equitable considerations referred to in this Section 5(d). No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation. The amount paid or payable by an indemnified Person as a result of the Losses referred to in Section 5(a) and Section 5(b) of this Annex I shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified Person in connection with investigating or defending any such action or claim. Notwithstanding the provisions of this Section 5(d), in connection with any Registration Statement filed by the Company, a selling Holder shall not be required to contribute any amount in excess of the dollar amount of the net proceeds received by such Holder from the sale of Registrable Securities giving rise to such contribution obligation less any amounts paid by such Holder pursuant to Section 5(b) of this Annex I and any amounts paid by such Holder as a result of liabilities incurred under the underwriting agreement, if any, related to such sale. If indemnification is available under this Section 5, the indemnifying parties shall indemnify each indemnified Person to the full extent provided in Section 5(a) and Section 5(b) of this Annex I without regard to the provisions of this Section 5(d).

(e)     The remedies provided for in this Section 5 are not exclusive and shall not limit any rights or remedies which may otherwise be available to any indemnified party at law or in equity.

6.      Facilitation of Sales Pursuant to Rule 144 and Rule 144A.  The Company shall (a) to the extent it shall be required to do so under the Exchange Act, use its reasonable best efforts to timely

file the reports required to be filed by it under the Exchange Act or the Securities Act and the rules adopted by the SEC thereunder (including the reports under Sections 13 and 15(d) of the Exchange Act referred to in subparagraph (c)(1) of Rule 144), and (b) take such further action as any Holder may reasonably request and make available information necessary to comply with Rule 144 and Rule 144A, all to the extent required from time to time to enable the Holders to sell Registrable Securities without registration under the Securities Act within the limitations of the exemption provided by Rule 144 and 144A.  Upon the written request of any Holder in connection with that Holder's sale pursuant to Rule 144 or Rule 144A, the Company shall deliver to such Holder a written statement as to whether it has complied with such requirements.

7.     <u>Company Undertakings</u>.  In furtherance of the registration provisions set forth herein intended to facilitate the sale of Common Interests by the Holders, the Company shall furnish to each Holder (a) within ninety (90) days of the end of each fiscal year (or such longer period as may be permitted by Rule 12b-25 of the Exchange Act), annual audited financial statements for such fiscal year and (b) within forty-five (45) days of the end of each of the first three fiscal quarters of every fiscal year (or such longer period as may be permitted by Rule 12b-25 of the Exchange Act), unaudited financial statements for the interim period as of, and for the period ending on, the end of such fiscal quarter, in each case to be prepared on a basis substantially consistent with then applicable SEC. Notwithstanding the foregoing, the Company will be deemed to have furnished such reports referred to above to the Holders if the Company has filed such reports with the SEC via the EDGAR filing system and such reports are publicly available

8.     <u>Discontinued Disposition</u>.  Each Holder agrees by its acquisition of Registrable Securities that, upon receipt of a notice from the Company of the occurrence of any event of the kind described in clauses (ii) through (iv) and (vi) of <u>Section 3(d)</u> of this <u>Annex I</u> or the occurrence of a Suspension Period, such Holder will forthwith discontinue disposition of such Registrable Securities under the Registration Statement until such Holder's receipt of the copies of the supplemental Prospectus or amended Registration Statement or until it is advised in writing by the Company that the use of the applicable Prospectus may be resumed, and, in either case, has received copies of any additional or supplemental filings that are incorporated or deemed to be incorporated by reference in such Prospectus or Registration Statement.  The Company may provide appropriate stop orders to enforce the provisions of this <u>Section 8</u>.  In the event the Company shall give any such notice, the period during which the applicable Registration Statement is required to be maintained effective shall be extended by the number of days during the period from and including the date of the giving of such notice to and including the date when each seller of Registrable Securities covered by such Registration Statement either receives the copies of the supplemented or amended Prospectus or is advised in writing by the Company that the use of the Prospectus may be resumed.

**Exhibit A**
**Certificate of Formation**

See attached.

**Exhibit B**

**Name and Notice Information of Members, Number of Common Interests; Number of Nexus Incentive Interests; and Percentage Interests**

*Last Updated: [●]*

| Name of Member | Notice Information | Number of Common Interests | Number of Nexus Incentive Interests | Percentage Interest |
|---|---|---|---|---|
| [●] | | | | |

**Exhibit C**
**Capital Contributions**

| Name of Member | | Total Initial Capital Contributions | Additional Capital Contributions |
|---|---|---|---|
| [●] | | $ [●] | $[●] |

**Exhibit D**
**Form of Joinder Agreement**

This Joinder Agreement (this "<u>Joinder Agreement</u>") is made as of **[_____ ___, 20__]** by the undersigned (the "<u>Transferee</u>") in accordance with the Amended and Restated Limited Liability Company Agreement of [Reorganized Careismatic Brands, LLC], dated as of [●] (as the same may be amended from time to time in accordance with its terms, the "<u>LLC Agreement</u>").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the LLC Agreement.

The Transferee hereby acknowledges, agrees and confirms that, by its execution of this Joinder Agreement, it shall become a party to the LLC Agreement and shall be fully bound by and subject to, all of the covenants, terms and conditions of the LLC Agreement as though an original party thereto and shall be deemed and is hereby admitted as, a Member for all purposes thereof and entitled to all the rights incidental thereto, as of the date first written above.

The Transferee hereby makes the representations and warranties of a Member set forth in the LLC Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Joinder Agreement as of the date first written above and hereby authorizes this signature page to be attached to a counterpart of the LLC Agreement.

**[TRANSFEREE]**

By: _____

    Name:
    Title:

**Exhibit E**
**Form of Warrant**

*[To be attached].*

**Schedule I**
**Competitors**

[Barco Uniforms
Fabletics
FIGS
Hanesbrands
Headwaters
Jaanu
Kindthreads
Partners Group
Superior Group of Companies]

**Exhibit A-1**

**Redline to New Organizational Documents Filed May 16, 2024**

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

OF

[REORGANIZED CAREISMATIC BRANDS, LLC]

Dated as of [●]

TABLE OF CONTENTS

**Page**

Article I Defined Terms .......................................................................................................... 1

    1.1     Definitions ...................................................................................................... 1
    1.2     Rules of Construction ................................................................................... 1~~3~~4

Article II Organization .......................................................................................................... 1~~3~~4

    2.1     Formation of the Company ........................................................................... 1~~3~~4
    2.2     Name ............................................................................................................... 1~~3~~4
    2.3     Purpose ......................................................................................................... 1~~3~~4
    2.4     Registered Office; Registered Agent; Principal Office; Other Offices ......... 14
    2.5     Interest of Members; Property of Company ................................................. 14
    2.6     Limited Liability ........................................................................................... 14~~5~~
    2.7     Term .............................................................................................................. 14~~5~~

Article III Contributions of Members .................................................................................... 14~~5~~

    3.1     Initial Contributions .................................................................................... 14~~5~~
    3.2     Additional Capital Contributions ................................................................ 14~~5~~
    3.3     Return of Contributions ............................................................................... 15
    3.4     Interest on Capital Contributions ............................................................... 15
    3.5     Advances by Members .................................................................................. 15
    3.6     Common Interests ........................................................................................ 15
    3.7     Incentive Interests. ....................................................................................... 16
    3.8     Transfer Books ............................................................................................. 17~~8~~
    3.9     Certificate Signature .................................................................................... 17~~8~~

Article IV Distributions; Distributions in Kind .................................................................... 18

    4.1     Distributions ................................................................................................. 18
    4.2     Limitations on Distributions ........................................................................ 18~~9~~
    4.3     Reserves ........................................................................................................ 18~~9~~

Article V Transferability ....................................................................................................... 19

    5.1     Transfer Generally ....................................................................................... ~~19~~20
    5.2     Right of First Offer ...................................................................................... ~~19~~20
    5.3     Tag-Along Rights .......................................................................................... 21~~2~~
    5.4     Drag-Along Right ......................................................................................... 23~~4~~
    5.5     Company Sale Right. .................................................................................... 25~~6~~
    5.6     Preemptive Rights ........................................................................................ 26~~7~~
    5.7     Debt Preemptive Rights ............................................................................... 28~~9~~
    5.8     General Restrictions on Transfer; Admission of New Members ................. 29
    5.9     Resignation ................................................................................................... ~~29~~30
    5.10    Record of Members ...................................................................................... ~~29~~30
    5.11    Registration Rights ...................................................................................... ~~29~~30
    5.12    Mandatory Repurchase of Interests ............................................................ ~~29~~30

Article VI Governance ........................................................................................................... 30

    6.1     Board of Directors ....................................................................................... 30

6.2     Appointment of Directors................................................................301

6.3     Designation Right..........................................................................312

6.4     Removal of Directors.....................................................................323

6.5     Vacancies......................................................................................323

6.6     Authority and Duties of the Board and Board Committees...........323

6.7     Meetings; Telephonic Meetings.....................................................323

6.8     Quorum; Acts of the Board and Board Committees......................334

6.9     Observer Rights.............................................................................345

6.10    Special Approval Requirements.....................................................345

6.11    Qualified IPO; Conversion to a Corporation.................................367

6.12    Officers.........................................................................................378

6.13    Officers as Agents; Duties of Officers..........................................378

6.14    Powers of Members.......................................................................378

6.15    Confidentiality...............................................................................378

6.16    Regulated Holders.........................................................................389

6.17    Partnership Representative.............................................................389

Article VII Powers, Duties and Restrictions of the Company and the Members; Other Provisions
        Relating to the Members................................................................3940

7.1     Powers of the Company.................................................................3940

7.2     Compensation of the Members and Directors................................3940

7.3     Cessation of Status as a Member...................................................3940

7.4     Other Activities of the Members....................................................3940

Article VIII Books, Records and Accounting; Information Rights..............................401

8.1     Books of Account; Access.............................................................401

8.2     Deposits of Funds..........................................................................401

8.3     Information Rights..........................................................................401

8.4     Information Rights of the Company...............................................423

Article IX Term and Dissolution...............................................................................423

9.1     Term...............................................................................................423

9.2     Dissolution.....................................................................................423

9.3     Application and Distribution of Assets..........................................434

9.4     Termination of the LLC.................................................................434

Article X Representations and Warranties of Members.............................................434

10.1    Authority........................................................................................434

10.2    Binding Obligations.......................................................................44

10.3    No Conflict.....................................................................................44

10.4    Purchase Entirely for Own Account...............................................445

10.5    No Registration..............................................................................445

10.6    Investment Experience...................................................................445

10.7    Accredited Investor........................................................................445

10.8    Restricted Securities.......................................................................445

10.9    Nonreliance....................................................................................445

Article XI Allocation of Net Income and Net Loss .................................................. 45

    11.1    General ....................................................................................... 45
    11.2    Special Allocations ..................................................................... 456
    11.3    Allocations for Income Tax Purposes ........................................... 478
    11.4    Other Allocation Rules ................................................................ 478
    11.5    Withholding and Entity-Level Taxes ............................................ 489

Article XII General Provisions ............................................................................. 4950

    12.1    Exculpation and Indemnification ................................................. 4950
    12.2    Entire Agreement; Amendments ................................................... 501
    12.3    Avoidance of Provisions ............................................................. 502
    12.4    Binding Agreement .................................................................... 512
    12.5    Notices .................................................................................... 512
    12.6    Governing Law .......................................................................... 512
    12.7    Consent to Jurisdiction; WAIVER OF JURY TRIAL ....................... 512
    12.8    Construction ............................................................................. 513
    12.9    Severability .............................................................................. 523
    12.10   Counterparts, Electronic Copies .................................................. 523
    12.11   Survival .................................................................................. 523
    12.12   Termination ............................................................................. 523
    12.13   Special Power of Attorney .......................................................... 523
    12.14   Further Assurance ..................................................................... 534

ANNEX I       REGISTRATION RIGHTS

SCHEDULE I COMPETITORS
SCHEDULE II BOARD OF DIRECTORS

EXHIBIT A    CERTIFICATE OF FORMATION
EXHIBIT B    INTERESTS OF MEMBERS
EXHIBIT C    CAPITAL CONTRIBUTIONS
EXHIBIT D    FORM OF JOINDER AGREEMENT
EXHIBIT E    FORM OF WARRANT

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
OF REORGANIZED CAREISMATIC BRANDS, LLC

This Amended and Restated Limited Liability Company Agreement of [Reorganized Careismatic Brands, LLC] (the "Company") is made as of [●], 2024 (the "Effective Date"), by and among the Members listed on the signature pages hereto. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Section 1.1.

Recitals

WHEREAS, on [●], the Company was formed as a limited liability company pursuant to the Act, by causing to be filed a Certificate of Formation of the Company, attached hereto as Exhibit A (the "Certificate"), with the office of the Secretary of State of the State of Delaware;

WHEREAS, [●] is party to the limited liability company agreement of the Company, dated as of [●] (the "Original Agreement");

WHEREAS, Careismatic Brands, LLC, along with each of its Affiliates (the "Debtors"), commenced voluntary reorganization cases (the "Chapter 11 Cases") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 in the United States Bankruptcy Court, District of New Jersey, pursuant to a Restructuring Support Agreement by and between the Debtors and certain Holders of Allowed First Lien Claims, filed January 23, 2024 (the "RSA"), which sets forth the plan of reorganization (the "Plan");

WHEREAS, the Company was formed for the purpose of reorganizing Careismatic Brands, LLC and its affiliates, and in connection therewith and pursuant to the Plan and the Confirmation Order (as applicable), on the "Effective Date" under the Plan (i) the Holders of Allowed First Lien Claims will receive common equity in [Reorganized Careismatic Brands Grandparent, LLC] (the "Grandparent Equity") and immediately thereafter pursuant to the Plan, the Holders of Allowed First Lien Claims will acquire [contribute the Grandparent Equity to this Company in exchange for Common Interests], and (ii) the Holders of Second Lien Claims will receive warrants to purchase Grandparent Equity (the "Grandparent Warrants"), and immediately thereafter pursuant to the Plan, the Holders of Second Lien Claims will contribute the Grandparent Warrants to the Company, and in exchange, the Company will issue warrants in the form attached hereto as Exhibit E to the Holders of Second Lien Claims (the "Warrants") that entitle the holders thereof to acquire an additional eight and one half percent (8.5%) of the Common Interests, in the aggregate, exercisable at a share price that assumes a transaction enterprise value of $818,000,000 (collectively, the "Transaction"); and

WHEREAS, the Company and the Members desires to amend and restate the Original Agreement in its entirety, and pursuant to the Plan, this Agreement shall become effective as of the date hereof.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members hereby agree as follows:

## Article I
## Defined Terms

1

1.1    Definitions.  The following terms shall have the following meanings as used in this Agreement:

"Accelerated Acquirer" shall have the meaning set forth in Section 5.6(g).

"Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. § 18-101 et seq., as amended and in effect from time to time and any successor statute.

"Additional Capital Contribution" shall have the meaning set forth in Section 3.2(a).

"Adjusted Capital Account" means, with respect to any Member, the balance in such Member's Capital Account as of the end of the relevant Fiscal Year or portion thereof, after:

(a)    crediting to such Capital Account any amounts that such Member is obligated to restore to the Company pursuant to the terms of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulation § 1.704-2(g)(1) and (i)(5); and

(b)    debiting from such Capital Account the items described in Regulation § 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

The foregoing definition of "Adjusted Capital Account" is intended to comply with the provisions of Regulation § 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"Affiliate" shall mean, with respect to a specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified, including a Related Fund of such Person; provided that for purposes of this Agreement, no Member shall be deemed an Affiliate of the Company or any of its Subsidiaries.  For purposes of this definition, the term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.  For purposes of this Agreement, Jefferies LLC and its Affiliates shall be deemed to be Affiliates of Jefferies Finance LLC and its Affiliates.

"Agreement" shall mean this Limited Liability Company Operating Agreement, including all annexes and exhibits hereto, as amended, restated or supplemented from time to time in accordance with the terms hereof.

"Allocated Share" shall have the meaning set forth in Section 5.7(a).

"Available Cash" at the time of any proposed distribution shall mean the excess, as determined by the Board, of (a) all unrestricted cash and cash equivalents then held by the Company to the extent not otherwise required to pay the Company's expenses that have then accrued and are due and owing and all outstanding and unpaid current obligations of the Company as of such time over (b) the amount of reserves established by the Company in accordance with Section 4.3.

"Award Agreement" means any agreement that the Company may enter into with any of its officers, directors, consultants or employees on or after the date hereof in connection with any management incentive plan approved by the Board and adopted in accordance with this Agreement pursuant to which the Company grants such individuals, directly or indirectly, interests in Management Incentive Interests.

[ "Banking Laws" shall mean [•]]all laws, statutes, rules, regulations, regulatory guidance, ordinances and other pronouncements having the effect of law applicable to a Regulated Holder, including the U.S. Bank Holding Company Act and its implementing regulations and rules, 12 U.S.C. § 1841 et seq.

"Bankruptcy" shall have the meaning ascribed thereto in Sections 18-101(1) and 18-304 of the Act.

"Barclays" shall mean [Barclays Bank PLC].

"Board" shall have the meaning set forth in Section 6.1(a).

"Business Day" shall mean any day other than a Saturday, Sunday or another day on which commercial banks in New York are required or permitted under applicable laws or regulations to close.

"Capital Account" means with respect to each Member the account established and maintained for such Member on the books of the Company in compliance with Regulation §§ 1.704-1(b)(2)(iv) and 1.704-2, as amended.

"Capital Contribution" shall mean, at any date, the amount of all capital contributions contributed by a Member to the Company in its capacity as such at or prior to such date, which may be in the form of cash or property.

"CEO Director" shall have the meaning set forth in Section 6.2(a).

"Certificate" shall have the meaning set forth in the recitals.

"Chairman" shall have the meaning set forth in Section 6.8(c).

"Chapter 11 Cases" shall have the meaning set forth in the recitals.

"Chief Executive Officer" shall mean the chief executive officer of the Company.

"Claim" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Common Director" shall have the meaning set forth in Section 6.3(a).

"Common Interests" shall mean the limited liability company interest(s) of a Member in the Company representing the rights of a Member to distributions (liquidating or otherwise) and any and all of the other benefits to which such Member may be entitled as provided in this Agreement and in the Act, together with the obligations of such Member to comply with all the provisions of this Agreement and of the Act, other than Incentive Interests.

"Company" shall have the meaning set forth in the preamble.

"Company Confidential Information" shall have the meaning set forth in Section 6.15.

"Company ROFO Notice" shall have the meaning set forth in Section 5.2(c).

"<u>Company Undersubscription Notice</u>" shall have the meaning set forth in <u>Section 5.2(d)</u>.

"<u>Compelled Members</u>" shall have the meaning set forth in <u>Section 5.4(a)</u>.

"<u>Competitor</u>" shall mean any Person set forth on <u>Schedule I</u> and its Affiliates, <u>provided</u> that <u>Schedule I</u> may be modified by the Board in good faith from time to time to add Persons who are engaged, whether directly or indirectly, in the business of selling clothing to retail consumers in North America or to remove Persons who are no longer engaged in such business; <u>provided</u>, further, that the Board may not modify Schedule I to add any Person who is a Member as of the Effective Date.

"<u>Confirmation Order</u>" shall have the meaning set forth in the Plan.

"<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered.

"<u>Consulting Agreement</u>" shall mean that certain consulting agreement contemplated to be entered into by the Company or its Subsidiaries with Nexus or one of its Affiliates following the Effective Date.

"<u>Conversion</u>" shall have the meaning set forth in <u>Section 3.7(d)</u>.

"<u>Covered Persons</u>" shall have the meaning set forth in <u>Section 12.1(a)</u>.

"<u>D&O Insurance Policy</u>" shall have the meaning set forth in <u>Section 12.1(d)</u>.

"<u>Debt Exercise Notice</u>" shall have the meaning set forth in <u>Section 5.7(b)</u>.

"<u>Debt Preemptive Rights Notice</u>" shall have the meaning set forth in <u>Section 5.7(a)</u>.

"<u>Debt Right Holder</u>" shall have the meaning set forth in <u>Section 5.7(a)</u>.

"<u>Debtors</u>" shall have the meaning set forth in the recitals.

"<u>Depreciation</u>" means, for each Fiscal Year or other taxable period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable for U.S. federal income tax purposes with respect to an asset for such Fiscal Year or other taxable period, except that (a) with respect to any asset the Gross Asset Value of which differs from its adjusted tax basis for U.S. federal income tax purposes at the beginning of such Fiscal Year or other taxable period and which difference is being eliminated by use of the "remedial allocation method" as defined by Regulation § 1.704-3(d), Depreciation for such Fiscal Year or other taxable period shall be the amount of book basis recovered for such Fiscal Year or other taxable period under the rules prescribed by Regulation § 1.704-3(d)(2), and (b) with respect to any other asset the Gross Asset Value of which differs from its adjusted tax basis for U.S. federal income tax purposes at the beginning of such Fiscal Year or other taxable period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the U.S. federal income tax depreciation, amortization, or other cost recovery deduction allowable for such Fiscal Year or other taxable period bears to such beginning adjusted tax basis; <u>provided</u>, <u>however</u>, in the case of <u>clause (b)</u> above, if the adjusted tax basis for U.S. federal income tax purposes of an asset at the beginning of such Fiscal Year or other taxable period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Board.

"<u>Depreciation Recapture</u>" means the portion of any gain from the disposition of an asset of the Company that, for U.S. federal income tax purposes, (a) is treated as ordinary income under Code

Section 1245, (b) is treated as ordinary income under Code Section 1250 or (c) is "unrecaptured section 1250 gain" as such term is defined in Code Section 1(h).

"Designated Individual" means the designated individual appointed by the Company pursuant to Regulation § 301.6223-1 (and any similar provision of state, local or foreign law).

"Designation Right" shall have the meaning set forth in Section 6.3(a).

"DIP Facility" shall have the meaning set forth in the Term Sheet.

"Director" shall have the meaning set forth in Section 6.1(a).

"Drag-Along Notice" shall have the meaning set forth in Section 5.4(b).

"Drag-Along Sale" shall have the meaning set forth in Section 5.4(a).

"Drag-Along Transaction" shall have the meaning set forth in Section 5.4(a).

"Effective Date" shall have the meaning set forth in the preamble.

"Effective Date Capital Contribution" shall mean an amount equal to the equity value of the Company as of the Effective Date.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended and any successor statute and the rules and regulations of the SEC thereunder, in each case as in effect from time to time.

"Excluded Issuances" shall mean any issuance of any equity interests (including Common Interests and Incentive Interests) or any securities that are convertible into, or exercisable or exchangeable for, such equity interests or indebtedness (a) to Persons who are, or who are becoming, employees, managers, directors or consultants of the Company or any of its Subsidiaries in connection with the Consulting Agreement, an Award Agreement or any management incentive plans approved by the Board and adopted in accordance with this Agreement, and any equity interests issued thereunder, (b) as part of or in connection with any employee compensation, (c) as consideration for an acquisition, merger, joint venture or joint venture partnership or similar transaction duly approved by the Board; provided, however, that such acquisition, merger, joint venture, joint venture partnership or similar transaction is not with an Affiliate of the Company or any Related Fund of such Affiliate, (d) pursuant to conversion or exchange rights included in securities issued by the Company on or after the Effective Date that was made in accordance with this Agreement, (e) in connection with an equity interest split, division, dividend or similar transaction or reorganization to the extent (i) made *pro rata* with respect to all outstanding Common Interests and (ii) duly approved by the Board, (f) expressly contemplated by the Plan or, (g) issued by the company or a Subsidiary of the Company, to the Company or another wholly owned direct or indirect Subsidiary of the Company, as applicable, or (i) [Common Interests] issuable upon conversion or exercise of the Warrants issued or to be issued to the Holders of Second Lien Claims pursuant to the Plan and the Confirmation Order.

"Exempt Person" shall mean, with respect to any Person, any Affiliate of such Person and such Person's or such Person's Affiliates' respective Representatives, in each case, who (a) has a reasonable need to know the contents of the Company Confidential Information or Member Confidential Information, as the case may be, (b) is informed of the confidential nature of the Company Confidential

Information or Member Confidential Information and (c) agrees to keep such information confidential in accordance with the terms of this Agreement.

"Exercising Rightholders" shall have the meaning set forth in Section 5.2(d).

"Exiting Designating Member" shall have the meaning set forth in Section 6.2(c).

"Fair Market Value" shall mean (i) in the case of Publicly Traded Securities, the average closing price on the applicable trading exchange or quotation system on each trading day during the five (5) trading day period ending on the trading day prior to the measurement date, (ii) in the case of equity securities other than Publicly Traded Securities, the fair market value per equity security, as determined on a reasonable basis and in good faith by the Board, but without regard for any liquidity or minority discounts, or (iii) in the case of any other asset or property, the fair market value of such asset or property, as determined on a reasonable basis and in good faith by the Board.

"Final Offer Notice" shall have the meaning set forth in Section 5.2(f).

"First Lien Claims" shall have the meaning set forth in the RSA.

"First Lien Credit Agreement" shall have the meaning set forth in the Plan.

"Fiscal Year" shall mean the fiscal year of the Company, which shall end on December 31 of each year.

"GAAP" shall mean United States generally accepted accounting principles.

"Golub" shall mean Golub Capital LLC, collectively with its Affiliates and Related Funds.

"Golub/Soundpoint Director" shall have the meaning set forth in Section 6.2(d).

"Governmental Authority" shall mean shall mean the government of any nation, state, city, locality or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, and any corporation or other entity owned or controlled, through stock or capital ownership or otherwise, by any of the foregoing.

"Grandparent Equity" shall have the meaning set forth in the Recitals.

"Grandparent Warrants" shall have the meaning set forth in the Recitals.

"Gross Asset Value" means, with respect to any asset, the asset's adjusted tax basis for U.S. federal income tax purposes, except as follows:

(a)    the initial Gross Asset Value of any asset contributed (or deemed contributed) by a Member to the Company shall be the Value of such asset as of the date of contribution;

(b)    the Gross Asset Values of all the Company assets will be adjusted to equal their respective Values (taking Code Section 7701(g) into account) upon immediately prior to (or, in the case of the exercise of a Noncompensatory Option described in clause (v) below, immediately after, if required pursuant to Regulation § 1.704-1(b)(2)(iv)(s)(1)) the occurrence of any of the following events: (i) the acquisition of a new or additional Interest by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (ii) the distribution by the Company to a Member of more than a *de minimis* amount of Company property (including cash) as consideration for all or a portion of an

Interest; (iii) the liquidation of the Company within the meaning of Regulation § 1.704-1(b)(2)(ii)(*g*); (iv) the grant of an Interest (other than a *de minimis* Interest) as consideration for the provision of services to or for the benefit of the Company by an existing Member acting in a Member capacity, or by a new Member acting in a Member capacity or in anticipation of becoming a Member; ~~and~~ (v) the acquisition of a Common Interest by any new or existing Member upon the exercise of a Noncompensatory Option in accordance with Regulation § 1.704-1(b)(2)(iv)(*s*); and (vi) the occurrence of any other event with respect to which a revaluation of Company assets is permitted under Regulation § 1.704-1(b)(2)(iv)(f); provided, however, that if any Noncompensatory Options are outstanding upon the occurrence of an event described in clauses (i) through (vi) above, the Company shall adjust the Gross Asset Values of its properties in accordance with Regulation §§ 1.704-1(b)(2)(iv)(*f*) and 1.704-1(b)(2)(iv)(h)(2); provided, further, however, that an adjustment pursuant to an event described in clauses (i), (ii), (iv) or (~~v~~vi) of this paragraph shall be made only if the Board reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company;

(c)    the Gross Asset Value of any Company asset distributed (or deemed distributed) to any Member shall be adjusted to equal the Value of such asset on the date of distribution;

(d)    the Gross Asset Values of all Company assets shall be adjusted to reflect any adjustments to the adjusted basis of such assets pursuant to Code Section 732(d), 734(b) or 743(b), but only to the extent that such adjustments are required to be taken into account in determining Capital Accounts pursuant to Regulation § 1.704-1(b)(2)(iv)(*m*); provided, however, that Gross Asset Values shall not be adjusted pursuant to this clause (d) to the extent that an adjustment pursuant to clause (b) above is made in connection with a transaction that would otherwise result in an adjustment pursuant to this clause (d); and

(e)    if the Gross Asset Value of an asset has been determined or adjusted pursuant to clause (a), (b) or (d) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset (and not the depreciation, amortization, or other cost recovery deduction allowable for U.S. federal income tax purposes).

"Holders of Allowed First Lien Claims" shall have the meaning set forth in the Term Sheet.

"Holders of Second Lien Claims" means those certain holders of Second Lien Claims.

"Incentive Interests" shall mean the Nexus Incentive Interests and the Management Incentive Interests.

"Initial Capital Contributions" shall have the meaning set forth in Section 3.1.

"Interest" when used in reference to an interest in the Company, means the limited liability company interest of a Member in the Company at any particular time, including any Common Interests and Incentive Interests and a Member's interest in the capital, profits, losses and distributions of the Company.

"Independent Director" shall have the meaning set forth in Section 6.2(e).

"Industry Director" shall have the meaning set forth in Section 6.2(f).

~~"Initial Capital Contribution" shall have the meaning set forth in Section 3.1.~~

"<u>Initial Independent Director</u>" shall have the meaning set forth in <u>Section 6.2(e)</u>.

"<u>Interested Party</u>" shall have the meaning set forth in <u>Section 6.10(b)</u>.

"<u>Jefferies</u>" shall mean each of Jefferies LLC and Jefferies Finance LLC, collectively with their respective Affiliates and Related Funds.

"<u>Jefferies/Mockingbird Director</u>" shall have the meaning set forth in <u>Section 6.2(c)</u>.

"<u>Liquidator</u>" shall have the meaning set forth in <u>Section 9.2(b)</u>.

"<u>Listing Rules Member</u>" shall have the meaning set forth in <u>Section 5.4(i)</u>.

"<u>Listing Rules Subject Sale</u>" shall have the meaning set forth in <u>Section 5.4(i)</u>.

"<u>Management Incentive Interests</u>" shall mean units representing limited liability company interests in the Company granted under <u>Section 3.7</u> hereof, with such rights and powers as set forth in this Agreement and which are issued pursuant to an Award Agreement. Holders of Management Incentive Interests shall not be entitled to any voting rights, notwithstanding any provision of the Act.

"<u>Member</u>" shall mean any Person (i) listed on the signature pages hereto and automatically admitted to the Company as a member pursuant to the Plan and the Confirmation Order or (ii) hereafter admitted to the Company as an additional or substitute member of the Company as provided in this Agreement for so long as such Person owns Voting Interests, each in its capacity as a member of the Company, and shall have the same meaning as the term "member" under the Act, but does not include any Person who has ceased to be a member of the Company from and after the date such Person has ceased to be a Member.

"<u>Member Confidential Information</u>" shall have the meaning set forth in <u>Section 6.15</u>.

"<u>Member List</u>" shall have the meaning set forth in <u>Section 5.10</u>.

"<u>Mockingbird</u>" shall mean Mockingbird Credit Opportunities Company LLC and MCOC IV LLC, collectively with its Affiliates and Related Funds.

"<u>NASDAQ</u>" shall mean the NASDAQ National Market.

"<u>Net Income</u>" and "<u>Net Loss</u>", respectively, for any period means the income or loss of the Company for such period as determined in accordance with the method of accounting followed by the Company for U.S. federal income tax purposes, including, for all purposes, any income exempt from tax and any expenditures of the Company that are described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulation § 1.704-1(b)(2)(iv)(i); <u>provided</u>, <u>however</u>, that in determining Net Income and Net Loss and every item entering into the computation thereof, solely for the purpose of adjusting the Capital Accounts of the Members (and not for tax purposes), (i) any income, gain, loss or deduction attributable to the disposition of any Company asset shall be computed as if the adjusted basis of such Company asset on the date of such disposition equaled its Gross Asset Value as of such date, (ii) if the Gross Asset Value of any Company asset is adjusted pursuant to <u>clause (b)</u>, <u>(c)</u> or <u>(d)</u> of the definition of "Gross Asset Value", the amount of such adjustment shall be treated as gain or loss, and (iii) in lieu of any depreciation, cost recovery and amortization deductions as to any Company asset, there shall be taken into account Depreciation as to such Company asset for such period; <u>provided</u>,

further, however, that any item (computed with the adjustments in the preceding proviso) allocated under Section 11.2 shall be excluded from the computation of Net Income and Net Loss.

"New Securities" shall have the meaning set forth in Section 5.6(a).

"Nexus" shall mean Nexus Capital Management LP, collectively with its Affiliates and Related Funds.

"Nexus Director" shall have the meaning set forth in Section 6.2(b).

"Nexus Incentive Interests" means units representing limited liability company interests in the Company granted under Section 3.7 hereof, with such rights, powers and duties as set forth in this Agreement and which are issued pursuant to that certain Consulting Agreement with Nexus or one of its Affiliates.

"Nexus Minimum Holdings" shall have the meaning set forth in Section 6.6(b).

"Noncompensatory Option" has the meaning set forth in Regulation § 1.721-2(f). For the avoidance of doubt, the Warrants are intended to be treated for U.S. federal income tax purposes as a Noncompensatory Option.

"Notice of Acceptance" shall have the meaning set forth in Section 5.6(b).

"NYSE" shall mean the New York Stock Exchange.

"Observer" shall have the meaning set forth in Section 6.9.

"Offer Sale Price" shall have the meaning set forth in Section 5.2(a).

"Offered Interests" shall have the meaning set forth in Section 5.2(a).

"Offered Preemptive Securities" shall have the meaning set forth in Section 5.6(a).

"Original Agreement" shall have the meaning set forth in the recitals.

"Other Indemnitors" shall have the meaning set forth in Section 12.1(e).

"Partnership Representative" means the partnership representative of the Company within the meaning of Code Section 6223(a) (and any similar provision of state, local or foreign law).

"Percentage Interest" shall mean, with respect to a Member, the ratio of the number of Voting Interests held by the Member at any time to the total number of Voting Interests issued and outstanding at such time, expressed as a percentage.

"Permitted Transfer" shall mean, with respect to any Member: (i) a Transfer of Voting Interests or any portion thereof to any Affiliate of such Member (including any Related Fund); (ii) a Transfer of Voting Interests or any portion thereof in connection with a contractually required distribution-in-kind to such Member's limited partners or members pursuant to the express written terms of a partnership investment between the applicable Member and its applicable limited partners or members; (iii) a Transfer of Voting Interests to a broker that will hold the shares in an account for the benefit of such Member or its Affiliates that is acting on a non-principal basis; and (iv) of either First Lien Claims or claims under the DIP Facility (including any equity received in connection therewith pursuant to the

Plan), in each case that were agreed to, pursuant to valid and binding definitive documentation, prior to the Effective Date; and (v) the Transfer (whether in one Transfer or series of Transfers) during any six (6) month period of a number of Voting Interests (excluding shares transferred pursuant to the foregoing clauses (i)-(iii)) not exceeding the lesser of (x) two and a half percent (2.5%) of all issued and outstanding Voting Interests and (y) fifty percent (50%) of all Voting Interests held by such transferring Member on the Effective Date.  For example, if a Member owns 7% of all issued and outstanding Voting Interests and has owned the same number of Voting Interests since the Effective Date, such Member is permitted to Transfer up to 2.5% of such Member's issued and outstanding Voting Interests in a six month period, 2.5% of such Member's issued and outstanding Voting Interests in a subsequent six month period, and the remaining 2~~0~~% of such Member's issued and outstanding Voting Interests in the following six month period.

"Permitted Transferee" shall mean any Person to whom a Member may Transfer its Voting Interests or any portion thereof pursuant to a Permitted Transfer.

"Person" shall mean any individual, partnership, joint stock company, corporation, entity, association, trust, limited liability company, joint venture, unincorporated organization and any government, governmental department or agency or political subdivision of any government.

"Plan" shall have the meaning set forth in the recitals.

"Potential Purchaser" shall mean, with respect to any Member, any Person or group of Persons other than an Affiliate of such Member or the Company or any of its Subsidiaries.

"Preemptive Offer" shall have the meaning set forth in Section 5.6(a).

"Preemptive Percentage" shall have the meaning set forth in Section 5.6(a).

"Preemptive Right" shall have the meaning set forth in Section 5.6(a).

"Preemptive Rightholder" shall have the meaning set forth in Section 5.6(a).

"Presumed Tax Liability" means, with respect to each Member for any Fiscal Year, an amount equal to the product of (a) the excess, if any, of the amount of taxable income (as computed for U.S. federal income tax purposes) allocated by the Company to such Member (determined by taking into account any allocations pursuant to Code Section 704(c)) for such Fiscal Year over the amount of creditable foreign tax expenditures (within the meaning of Regulation § 1.704-1(b)(4)(viii)) allocated by the Company to such Member for such Fiscal Year and (b) the Presumed Tax Rate.

"Presumed Tax Rate" means the highest combined U.S. federal, state and local marginal tax rates applicable to individuals resident in New York, New York (taking into account the character (long-term or short-term capital gain or ordinary income or qualified dividend income including by application of Code Section 1061) and any tax on net investment income and, where determined appropriate by the Board, the application of the limitations set forth under Sections 67 and 68 and other provisions of the Code and the alternative minimum tax rules), and taking into account such other assumptions as the Board determines in its discretion to be appropriate.

"Proxy Holder" shall have the meaning set forth in Section 12.13.

"Publicly Traded Securities" shall mean securities that are registered under the Securities Act, are freely tradable and listed for trading on a national securities exchange.

10

"Purchase Right" shall have the meaning set forth in Section 5.2(c).

"Qualified IPO" shall mean (i) the first underwritten public offering of at least 15% of the common equity (or equivalent equity security) of the Company (or its successor) pursuant to an effective registration statement filed under the Securities Act, or (ii) a direct listing or other similar transaction on the NYSE or NASDAQ with respect to the common equity of the Company (or its successor), in each case of clause (i) or (ii), that results in the common equity of the Company (or its successor) being registered under the Securities Exchange Act of 1934 and listed on the NYSE or NASDAQ; and either (a) results in proceeds of at least $200,000,000 or (b) is otherwise approved by Members holding a majority in Percentage Interest of the Voting Interests, provided that a Qualified IPO shall not include an offering made in connection with a business acquisition or combination pursuant to a registration statement on Form S-4 or any similar form, or an employee benefit plan pursuant to a registration statement on Form S-8 or any similar form.

"Qualifying Holder" shall mean any holder that, at the time of Transfer, holds at least seven and a half percent (7.5%) of all issued and outstanding Voting Interests.

"Quarterly Financials" shall have the meaning set forth in Section 8.3(a)(ii).

"Regulation" means a United States Treasury Regulation promulgated under the Code.

"Regulated Holder" shall mean any Person that is a bank holding company, or any affiliate or subsidiary of any bank holding company, as such terms are defined in the U.S. Bank Holding Company Act and its implementing regulations and rules, 12 U.S.C. § 1841 et seq. For the avoidance of doubt, Barclays shall be a Regulated Holder.

"Related Fund" shall mean, with respect to any Member, any fund, account or investment vehicle that is controlled, managed advised or sub-advised by such Member, a controlled Affiliate of such Member or the same investment manager or advisor as such Member or an Affiliate of such investment manager or advisor.

"Remaining Designation Threshold" shall have the meaning set forth in Section 6.2(c).

"Remaining Offered Interests" shall have the meaning set forth in Section 5.2(c).

"Reorganization" shall have the meaning set forth in Section 6.11.

"Representatives" shall have the meaning set forth in Section 6.15.

["Restructuring Transaction Steps" shall mean the steps evidencing the corporate reorganization as set forth in the Plan].

"Rightholders" shall have the meaning set forth in Section 5.2(a).

"Rightholder Notice Period" shall have the meaning set forth in Section 5.2(d).

"Rightholder Offer Purchase Notice" shall have the meaning set forth in Section 5.2(c).

"ROFO Evaluation Period" shall have the meaning set forth in Section 5.2(b).

"ROFO Offer Notice" shall have the meaning set forth in Section 5.2(a).

11

"ROFO Offer Purchase Notice" shall have the meaning set forth in Section 5.2(b).

"ROFO Third Party Sale" shall have the meaning set forth in Section 5.2(e).

"ROFO Third Party Sale Period" shall have the meaning set forth in Section 5.2(e).

"RSA" shall have the meaning set forth in the recitals.

"Sale of the Company" shall mean any of the following: (a) a merger, consolidation, share exchange, business combination or other sale of the Company or its Subsidiaries into or with any other Person or Persons, or a transfer of Interests in a single transaction or a series of transactions, in which in any case the Members of the Company or the members of its Subsidiaries immediately prior to such merger, consolidation, share exchange, business combination or other sale or first of such series of transactions possess less than a majority of the voting power of the Company's or its Subsidiaries' or any successor entity's issued and outstanding capital securities immediately after such transaction or series of such transactions; or (b) a single transaction or series of transactions, pursuant to which a Person or Persons who are not direct or indirect wholly-owned Subsidiaries of the Company acquire all or substantially all of the Company's or its Subsidiaries' assets determined on a consolidated basis.

"Sale Process" shall have the meaning set forth in Section 5.5(a).

"SEC" shall mean the United States Securities and Exchange Commission.

"Second Lien Claims" means any Claim on account of the Second Lien Loans.

"Second Lien Credit Agreement" means that certain agreement, dated as of January 6, 2021, and as amended from time to time, among New Trojan Parent, Inc., a Delaware corporation, as the Borrower, CBI Intermediate, Inc., a Delaware corporation, as Holdings, the lenders party thereto from time to time, and UBS AG, Stamford Branch, as administrative agent and collateral agent.

"Second Lien Loans" means loans outstanding under the Second Lien Credit Agreement.

"Secure Site" shall have the meaning set forth in Section 8.3(a).

"Securities" means any foreign or domestic "securities," as defined in Section 2(1) of the Securities Act of 1933, as amended, or Section 3(a)(10) of the Securities Exchange Act of 1934, as amended, and shall include common or preferred stocks, limited partnership interests, investment contracts, certificates of deposit, trade acceptances and trade claims, convertible securities, fixed income securities, notes or other evidences of indebtedness of other Persons, warrants, rights, synthetic securities, put and call options on any of the foregoing, other options related thereto, interests or participations therein or any combination of any of the foregoing.

"Securities Act" shall mean the Securities Act of 1933, as amended and any successor statute and the rules and regulations of the SEC thereunder, in each case as in effect from time to time.

"Selling Members" shall have the meaning set forth in Section 5.4(a).

"Selling ROFO Member" shall have the meaning set forth in Section 5.2(a).

"Significant Approval Matter" shall have the meaning set forth in Section 6.10(d).

"Significant Holder" shall mean any Member that, together with its Affiliates, holds a Percentage Interest of at least forty percent (40%) or more.

"Soundpoint" shall mean Sound Point Capital Management, LP, collectively with its Affiliates and Related Funds, including all investment vehicles managed by Sound Point Capital Management, LP and its Affiliates, and each of the officers and directors thereof.

"Subject Purchaser" shall have the meaning set forth in Section 5.6(a).

"Subsidiary" shall mean, with respect to any Person, any corporation fifty percent (50%) or more of whose stock of any class or classes having by the terms thereof ordinary voting power to elect a majority of the directors of such corporation is at the time owned by such Person, directly or indirectly through one or more Subsidiaries, and any other Person, including but not limited to a joint venture, a general or limited partnership or a limited liability company, in which such Person, directly or indirectly through one or more Subsidiaries, at the time owns at least fifty percent (50%) or more of the ownership interests entitled to vote in the election of managing partners, managers or trustees thereof (or other Persons performing such functions) or acts as the general partner, managing member, trustee (or Persons performing similar functions) of such other Person.  For the avoidance of doubt, "Subsidiary" shall include any Person that is included in the Company's consolidated group for purposes of preparing the Company's consolidated financial statements in accordance with GAAP.

"Tag-Along Notice" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Offered Interests" shall have the meaning set forth in Section5.3(a).

"Tag-Along Purchaser" shall have the meaning set forth in Section5.3(a).

"Tag-Along Record Date" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Rightholder" shall have the meaning set forth in Section 5.3(a).

"Tag-Along Rightholder's Offer" shall have the meaning set forth in Section 5.3(b).

"Tag-Along Sale" shall have the meaning set forth in Section 5.3(a).

"Tag-Along Seller" shall have the meaning set forth in Section 5.3(a).

"Term Loan" shall have the meaning ascribed to it in the RSA.

"Term Sheet" shall mean that certain Restructuring Term Sheet attached as Exhibit B to the RSA.

"Third Party Purchaser" shall have the meaning set forth in Section 5.2(a).

"Threshold Equity Value" of each Incentive Interest means the "Threshold Equity Value" as set forth in respect of such Incentive Interest in the relevant Award Agreement pursuant to which such Incentive Interest was issued, increased from time to time by the amount of cash and the Value of other property contributed to the capital of the Company (for the avoidance of doubt, excluding any cash proceeds of indebtedness) after the date of grant of such Incentive Interest. The Threshold Equity Value shall be determined by the Board in good faith.

"Transaction" shall have the meaning set forth in the recitals.

"Transfer" shall mean, (i) when used as a verb, to sell, transfer, assign, encumber or otherwise dispose of, directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise and (ii) when used as a noun, a direct or indirect, voluntary or involuntary, sale, transfer, assignment, encumbrance or other disposition by operation of law or otherwise. "Transferor" and "Transferee" shall mean a Person who makes or receives a Transfer, respectively.

"Unvested Amount" shall have the meaning set forth in Section 3.7(c).

"Value" of any asset of the Company, as the case may be, as of any date, means the fair market value of such asset, as the case may be, as of such date, with the fair market value of the type of assets described below being determined as follows:

(a)     Securities listed on one or more national securities exchanges shall be valued at their last reported sales prices on the consolidated tape on the date of determination (or if the date of determination is not a Business Day, on the last Business Day immediately prior to such date of determination).  If no such sales of such securities occurred on such date, such securities shall be valued at the mean of the last "bid" and "ask" prices on the date of determination on the national securities exchange which has the highest average daily volume for such Security over the last sixty (60) days on or prior to the date of determination (or, if the date of determination is not a date upon which such national securities exchange was open for trading, on the last prior date on which such national securities exchange was so open);

(b)     Securities which are not listed on a national securities exchange shall be valued at a price equal to the mean of the last "bid" and "ask" prices on the date of determination as reported by the NASDAQ or as reported in the "pink sheets" published by the National Daily Quotation Service;

(c)     Securities for which no such market prices are available, or as to which, in the sole judgment of the Board, any of the above market prices are below or exceed (as the case may be) the amount realizable by the Company upon a sale thereof, shall be valued at the fair value thereof as determined upon a reasonable basis and in good faith by the Board; and

(d)     the fair market value of other investments, assets or properties shall be valued as determined by the Board.

Any determination of the Value or of the fair market value of an asset of the Company made in good faith by the Board in accordance with the above shall be binding on the Members for all purposes of this Agreement.

"Voting Interests" shall mean the Common Interests and the Nexus Incentive Interests.

"Warrants" shall have the meaning set forth in the recitals.

1.2     Rules of Construction.  Unless the context otherwise requires, definitions in this Agreement apply equally to both the singular and plural forms of the defined terms.  The terms "include" and "including" and other words of similar import shall be deemed to be followed by the phrase "without limitation".  The terms "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular section or subsection.  The headings appear as a matter of convenience only and shall not affect the interpretation of this Agreement.  All section, subsection, clause and exhibit references not attributed to a particular document shall be references to such parts of this Agreement.  All equity percentage calculations set forth in this Agreement shall exclude therefrom

any equity interests in the Company (including interests convertible into or exercisable or exchangeable for such equity interests) that constitute Excluded Issuances, in addition to any other equity interests to be excluded from such calculations pursuant to the terms of this Agreement.

## Article II
### Organization

2.1    Formation of the Company.  The Company was formed as a limited liability company under the Act by the filing of the Certificate with the Secretary of State of the State of Delaware on [●]. The Company shall accomplish all filing, recording, publishing and other acts necessary or appropriate for compliance with all requirements for operation of the Company as a limited liability company under this Agreement and the Act and under all other applicable laws of the State of Delaware and such other jurisdictions in which the Company determines that it may conduct business.

2.2    Name.  The name of the Company shall be "[Reorganized Careismatic Brands, LLC]", as such name may be modified from time to time by the Board as it may deem advisable.

2.3    Purpose.  Subject to any limitations on the activities of the Company otherwise specified in this Agreement, the purpose and business of the Company shall be to (a) engage in any and all activities as the Board may reasonably determine to be necessary or advisable to the carrying out of the foregoing purpose and business of the Company and (b) conduct any other business or activity that may be conducted by a limited liability company organized pursuant to the Act.

2.4    Registered Office; Registered Agent; Principal Office; Other Offices.  The registered office of the Company shall be the office of the initial registered office named in the Certificate or such other registered office (which need not be a place of business of the Company) as the Board may designate from time to time in the manner provided by the Act.  The registered agent of the Company shall be the Corporation Service Company or such other Person or Persons as the Board may designate from time to time in the manner provided by the Act.  The address of the principal office of the Company on the date hereof is 1119 Colorado Avenue, Santa Monica, California 90401  and the Company shall maintain there the records required to be maintained under Section 18-305 of the Act.  In addition, the Company may maintain such other offices as the Board may deem advisable at any other place or places within or without the State of Delaware.

2.5    Interest of Members; Property of Company.  Interests held by a Member shall be personal property of such Member for all purposes.  All real and other property owned by the Company shall be deemed property of the Company that is owned by the Company as an entity, and no Member shall own such property in an individual capacity.  No Member shall be entitled to interest on or with respect to any Capital Contribution.  Except as provided in this Agreement, no Member shall be entitled to withdraw any part of such Member's Capital Contribution or to receive distributions from the Company.

2.6    Limited Liability.  Except as otherwise expressly required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and no Member shall be obligated personally for any such debt, obligation or liability solely by reason of being a Member of the Company.

2.7    Term.  The term of the Company commenced on the date of filing of the Certificate, and shall be perpetual unless the Company is earlier dissolved and its existence terminated in accordance with the provisions of this Agreement.

## Article III
## Contributions of Members

3.1    <u>Initial Contributions</u>.    Pursuant to the Plan, the Confirmation Order and the [Restructuring Transaction Steps], each Member shall be automatically deemed to have made the initial Capital Contributions (the "<u>Initial Capital Contributions</u>") set forth in <u>Exhibit C</u> in exchange for its Common Interests.  After giving effect to the Initial Capital Contributions, each Member shall hold the Common Interests set forth on <u>Exhibit B</u> opposite such Member's name.

3.2    <u>Additional Capital Contributions</u>.

(a)    Subject to <u>Sections 5.6</u> and without limitation to <u>Section 3.2(b)</u>, in addition to the Initial Capital Contributions, Members may from time to time make Capital Contributions to the Company (each, an "<u>Additional Capital Contribution</u>" and, for the avoidance of doubt, any Initial Capital Contribution shall not be deemed to be an Additional Capital Contribution) at such times and in such amounts as the Board may determine to accept from the Members.  Except as required by law, no Member shall be required to make any Additional Capital Contributions to the Company.

(b)    Additional Capital Contributions shall be made in cash or, with the approval of the Board, in other property.  The value assigned to any non-cash Additional Capital Contribution shall be equal to the Fair Market Value thereof.

3.3    <u>Return of Contributions</u>.  No Member shall be entitled to the return of any part of its Capital Contributions except as specified in this Agreement.  An unrepaid Capital Contribution is not a liability of the Company or of any Member.  A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions.

3.4    <u>Interest on Capital Contributions</u>.  No Member shall be entitled to interest on, or with respect to, any Capital Contribution.

3.5    <u>Advances by Members</u>.  If the Company does not have sufficient funds to pay its obligations, any Member(s) that may agree to do so, with the consent of the Board, may advance all or part of the funds required to, or on behalf of, the Company.  An advance described in this <u>Section 3.5</u> constitutes a loan from such Member(s) to the Company, and shall not constitute a Capital Contribution.

3.6    <u>Common Interests</u>.

(a)    The Company shall have one class of Common Interests, which shall constitute limited liability company interests under the Act.  All Common Interests are identical to each other and accord the holders thereof the same obligations, rights and privileges as are accorded to each other holder thereof, except for any specific obligations, rights and privileges expressly set forth in this Agreement.

(b)    The Company is authorized to issue certificates to represent any or all of the Common Interests.  In the event the Company issues certificates evidencing the Common Interests issued by the Company, the certificates shall bear the following restrictive legends (in addition to any legend restrictions required under applicable state securities laws):

"THE RIGHTS, POWERS, PREFERENCES, RESTRICTIONS (INCLUDING TRANSFER RESTRICTIONS) AND LIMITATIONS OF THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED BY THIS CERTIFICATE ARE SET FORTH IN, AND THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY

16

INTERESTS REPRESENTED HEREBY ARE ISSUED IN ACCORDANCE WITH AND SHALL IN ALL RESPECTS BE SUBJECT TO, THE TERMS AND PROVISIONS OF THE AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF [REORGANIZED CAREISMATIC BRANDS, LLC], DATED AS OF [●], AS THE SAME MAY BE AMENDED AND/OR RESTATED FROM TIME TO TIME IN ACCORDANCE WITH ITS TERMS (THE "AGREEMENT").  THE TRANSFER, SALE, ASSIGNMENT, ENCUMBRANCE OR DISPOSITION IN ANY MANNER, WHETHER DIRECT OR INDIRECT, VOLUNTARY OR INVOLUNTARY, BY OPERATION OF LAW OR OTHERWISE, OF THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED HEREBY ARE RESTRICTED AS DESCRIBED IN THE AGREEMENT."

In addition, unless counsel to the Company has advised the Company that such legend is not necessary, each certificate evidencing Common Interests issued by the Company shall bear a legend in substantially the following form:

"THE SECURITIES REPRESENTED BY THIS INSTRUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED PURSUANT TO THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS, AND SUCH SECURITIES MAY NOT BE SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED OF UNLESS THEY ARE REGISTERED AND QUALIFIED IN ACCORDANCE WITH THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS, OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION AND QUALIFICATION SHALL APPLY."

(c)    Subject to the requirements of Section 5.6, the Company is hereby authorized to issue additional Common Interests from time to time, subject to prior authorization of the Board in accordance with the terms of this Agreement.  In addition, the Company is hereby authorized to issue Common Interests pursuant to the exercise of any Warrant, which shall not require any prior authorization of the Board or the Members.

3.7    Incentive Interests.

(a)    The Company may, at the direction of the Board, establish an equity incentive plan or other similar plan to permit certain directors, officers, employees and consultants of the Company to participate in the Company's equity appreciation through a direct or indirect interest in Management Incentive Interests.

(b)    It is intended that the Incentive Interests will be treated as "profits interests" within the meaning of IRS Revenue Procedure 93-27, 1993-2 C.B. 343. In this regard, (i) the Members agree that the economic rights of the Members holding Incentive Interests with respect to their interests in such Incentive Interests may be adjusted by the Board if necessary to ensure such treatment, (ii) except to the extent not permitted by law, in accordance with IRS Revenue Procedure 2001-43, 2001-2 C.B. 191, the Company shall treat a Member holding Incentive Interests as the owner of the Incentive Interests from the issue date of such Incentive Interests, (iii) except as required pursuant to a "determination" as defined in Code Section 1313(a), the Company and the Members agree not to claim a deduction (as wages, compensation or otherwise) for the fair market value of any such Incentive Interests issued to a Member, either at the time of issuance, or at the time the Incentive Interests becomes substantially vested, (iv) the Company shall file its IRS Form 1065, and issue appropriate Schedule K-1s to a Member

holding an Incentive Interest, allocating to such Member, such Member's distributive share of all items of income, gain, loss, deduction and credit associated with such Incentive Interest as if such Incentive Interests were fully vested, and (v) each Member holding an Incentive Interest agrees to take into account such distributive share in computing such Member's U.S. federal income tax liability for the entire period during which such Member holds such Incentive Interest. Further, except to the extent not permitted by law, the provisions of this Section 3.7(b) shall apply regardless of whether the Member files an election pursuant to Code Section 83(b). Notwithstanding any other provision of this Agreement, each Member shall, and shall cause each of such Member's Affiliates and Transferees to, (x) take any action requested by the Company to ensure that the fair market value of any Incentive Interests at the time of issuance is treated for U.S. federal income tax purposes as being equal to the "liquidation value" (within the meaning of Proposed Regulation § 1.83-3(l)) of such Incentive Interests and (y) without limiting the generality of the foregoing, to the extent required in order to attain or ensure such treatment, agree to any condition imposed on such Member and such Member's Affiliates or Transferees, execute any amendment to this Agreement or other agreements, execute any new agreement, make any tax election or tax filing, and agree not to take any contrary position unless required pursuant to applicable law. As to the issuance of any Incentive Interests that are "substantially nonvested" within the meaning of Regulation § 1.83-3(b), within twenty (20) days after the issuance of such Incentive Interests to a Member, such Member shall provide the Company with a copy of a completed election under Code Section 83(b) with respect to such Incentive Interests. For the avoidance of doubt, such election shall reflect a $0 Value and $0 issuance date taxable income as to any Incentive Interests. Such Member shall, within thirty (30) days after the issuance of such Incentive Interests, file the Code Section 83(b) election required hereby with the Internal Revenue Service via certified mail, return receipt requested, and shall thereafter notify the Company that such election has been timely filed.

(c)      In furtherance of the foregoing, a holder of Incentive Interests shall be entitled to receive distributions on account of such holder's Incentive Interests in the manner set forth herein, provided that, other than distributions described in Section 4.4, a holder of Incentive Interests shall not be entitled to receive any distributions on account of such Incentive Interests unless and until the sum of the aggregate amount of distributions made by the Company in respect of all Interests (measured from and after the date such Incentive Interests were issued) at least equals the Threshold Equity Value applicable to such Incentive Interests. To the extent that any holder of Incentive Interests is not entitled to participate in a distribution on account of any Incentive Interests in which such holder otherwise would have participated but for the operation of the preceding sentence, then the amount as to which such holder is not entitled to participate shall be distributed to the Common Interests and any other Incentive Interests with respect to which distribution is permitted pursuant to the preceding sentence of this Section 3.7(c), in accordance with Section 4.1. In addition, other than distributions described in Section 4.4, the portion of any distribution that would otherwise be made on account of any unvested Incentive Interests if such Incentive Interests had been fully vested (the "Unvested Amount") shall be set aside and held by the Company until the earlier of the vesting, forfeiture, cancellation, reacquisition, repurchase, or redemption of such unvested Incentive Interests. In the event such unvested Incentive Interests become vested, the applicable Unvested Amount shall be distributed to the owner of such Incentive Interests upon (and to the extent of) such vesting. Upon (and to the extent of) a forfeiture, cancellation, reacquisition, repurchase, or redemption of such unvested Incentive Interests, the applicable Unvested Amount shall be distributed to the remaining Members in accordance with Section 4.1 and this Section 3.7(c) (not including for the purposes of such calculation such number of forfeited, cancelled, reacquired, repurchased or redeemed Incentive Interests) on the date determined by the Board. Determinations pursuant to this Section 3.7(c) shall be made for each dollar of distribution made by the Company.

(d)      If the Board (subject to the requirements of Section 6.10) determines that, based upon the liquidation value of the Company, each Nexus Incentive Interest has a value that is substantially equal to the value of a Common Interest, the Board may covert all, but not less than all, of the Nexus

Incentive Interests into Common Interests on a one for one basis (a "Conversion"). The Members shall take all actions reasonably requested by the Board in connection with the consummation of such Conversion, including consenting to, voting for and waiving any dissenters rights, appraisal rights or similar rights and participating in any exchange or other transaction required in connection with such Conversion. No Member shall have any right to vote, consent to or approve any Conversion. The Company shall pay any and all reasonable organizational, legal and accounting expenses and filing fees incurred by the Company or the Members in connection with such Conversion and the Board may select, on behalf of the Company, any accounting firm, legal counsel, underwriters or any other providers in connection with such Conversion.

3.8    Transfer Books.  The Company shall maintain books for the purpose of registering the Transfer of Voting Interests.  If Voting Interests are represented by certificates, in connection with a Transfer in accordance with this Agreement of any certificated Voting Interests, the endorsed certificate(s) evidencing the Voting Interests shall be delivered to the Company for cancellation, and the Company shall thereupon issue a new certificate to the Transferee evidencing the Voting Interests that were Transferred and, if applicable, the Company shall issue a new certificate to the transferor evidencing any Voting Interests registered in the name of the transferor that were not Transferred.

3.9    Certificate Signature.  If Voting Interests are represented by certificates, each such certificate shall be executed by manual or .pdf signature of an officer on behalf of the Company.

**Article IV**
**Distributions; Distributions in Kind**

4.1    Distributions.

(a)    Subject to the provisions of the Act, the Board may from time to time by resolution declare, and the Company may pay, distributions to the Members from Available Cash according to their respective rights and interests in the Company, in accordance with Sections 3.7, 4.1, 4.2 and 4.4 and in the following order of priority:

(i)    first, 100% among the holders of the Common Interests, on a pro rata basis in accordance with the number of Common Interests, until the aggregate amount distributed pursuant to this Section 4.1(a)(i) (taking into account all prior distributions under this Section 4.1(a)(i)) equals the [amount of Effective Date Capital Contributions actually made]and any Capital Contributions after the date hereof by such Common Interest holders;

(ii)    second, 100% to the holders of Nexus Incentive Interests, on a pro rata basis in accordance with the number of Nexus Incentive Interests, until the aggregate amount distributed to the holders of Nexus Incentive Interests pursuant to this Section 4.1(a)(ii) equals [4.5]% of the sum of the amounts distributed pursuant to Section 4.1(a)(i) and this Section 4.1(a)(ii); and

(iii)    third, 100% among the holders of Interests, on a pro rata basis in accordance with the number of Interests.

4.2    Limitations on Distributions.

(a)    Anything to the contrary herein notwithstanding, no distribution pursuant to this Agreement shall be made if such distribution would result in a violation of Section 18-607 of the Act or any other applicable law.

(b)    In the event that a distribution is not made as a result of the application of paragraph (a) of this Section 4.2, all amounts so retained by the Company shall continue to be subject to all of the debts and obligations of the Company.  The Company shall make such distribution as soon as such distribution would not be prohibited pursuant to this Section 4.2.

4.3    Reserves.  The Company may establish reserves in such amounts and for such time periods as the Board determines is reasonably necessary or prudent for estimated accrued Company expenses, obligations and liabilities (including amounts owed, restricted or reserved by or in connection with, to the extent applicable, any agreement or any other instrument to which the Company or any of its direct or indirect Subsidiaries is a party governing indebtedness of the Company or any of its Subsidiaries) and any contingent or unforeseen Company liabilities.  When such reserves are no longer necessary, the balance shall be distributed to the Members in accordance with this Article IV.

4.4    Tax Distributions.  Subject to Section 4.2 and any financing agreements of the Company or any of its Subsidiaries, the Company shall, at least ten days prior to the due date for the quarterly payment of estimated U.S. federal income taxes by individuals for any Fiscal Year, distribute Available Cash to the Members up to and in proportion to the excess of (x) each such Member's Presumed Tax Liability for such portion of the Fiscal Year ending on the last day of the month preceding such payment date, calculated as if such portion of the Fiscal Year were a separate Fiscal Year, over (y) amounts previously distributed to each such Member pursuant to Section 4.1 during such Fiscal Year or pursuant to this Section 4.4 with respect to such portion of a Fiscal Year (which, for the avoidance of doubt, shall not include any distributions made pursuant to this Section 4.4 with respect to prior Fiscal Years).  Promptly upon filing the Company's U.S. federal income tax return, subject to Section 4.2 and any financing agreements of the Company or any of its Subsidiaries, the Company shall distribute Available Cash to the Members up to and in proportion to the excess of (x) each such Member's Presumed Tax Liability with respect to such Fiscal Year, as computed based on the filed income tax returns of the Company, over (y) amounts previously distributed to each such Member pursuant to Section 4.1 during such Fiscal Year or pursuant to this Section 4.4 with respect to such Fiscal Year (which, for the avoidance of doubt, shall not include any distributions made pursuant to this Section 4.4 with respect to prior Fiscal Years).  Any amount distributed pursuant to this Section 4.4 shall be deemed to be an advance distribution of amounts otherwise distributable to the Members pursuant to Section 4.1 or Article IX and shall reduce the amounts that would subsequently otherwise be distributed to the Members pursuant to Section 4.1 or Article IX in the order in which they would otherwise have been distributable.

**Article V**
**Transferability**

5.1    Transfer Generally.  No Member shall be permitted to Transfer all or any portion of its Interests except pursuant to, and in compliance with, this Article V.  Additionally, no Member shall be permitted to Transfer all or any portion of its Voting Interests ~~until the date that is six (6) months following the date of this Agreement~~prior to [●] if such Transfer would result in a loss of such Member's Designation Rights pursuant to Section 6.2.  No Transfer of any Voting Interest in the Company shall be effective until such time as all requirements of this Article V in respect thereof have been satisfied and, if consents, approvals or waivers are required by the Board, all of same shall have been confirmed in writing by the Board.  Subject to Section 5.2, Section 5.3, Section 5.4, Section 5.5 and Section 5.8, a Member may Transfer all or a portion of its Voting Interest in the Company without the consent of the Board or any other Member. Notwithstanding the foregoing, except for a Transfer to a trust or similar estate planning vehicle established for the sole benefit of one or more family members that is permitted by the applicable Award Agreement, a holder of Management Incentive Interests may not transfer such

Management Incentive Interests without Board consent and any attempted Transfer of such Management Incentive Interests without such consent shall be null and void *ab initio*.

5.2     <u>Right of First Offer</u>.

(a)     Except in a transaction pursuant to which <u>Section 5.4</u> applies or in connection with a repurchase of Voting Interests from any individual serving as an employee or consultant of the Company or any of its Subsidiaries, if any Member wishes to Transfer all or any portion of its Voting Interests (such Member, the "<u>Selling ROFO Member</u>") to any Person other than a Permitted Transferee (each such Person, a "<u>Third Party Purchaser</u>"), such Selling ROFO Member shall first offer such Voting Interests that are proposed to be Transferred by sending written notice (the "<u>ROFO Offer Notice</u>") to the Company, which ROFO Offer Notice shall be an offer to sell and shall state the proposed terms of such Transfer, including (i) the number of Voting Interests such Selling ROFO Member proposes to Transfer (the "<u>Offered Interests</u>"), (ii) the proposed amount and consideration per Common Interest or Nexus Incentive Interests, as applicable (which consideration shall be exclusively cash) (the "<u>Offer Sale Price</u>"), and (iii) all other material terms and conditions of the proposed Transfer.  The ROFO Offer Notice shall constitute an irrevocable offer by the Selling ROFO Member to sell to the Company and the Rightholders the Offered Interests for cash at the Offer Sale Price on the terms set forth in the ROFO Offer Notice, pursuant to the terms and conditions of this <u>Section 5.2</u>.

(b)     The Company shall have a period of ten (10) Business Days following the receipt of the ROFO Offer Notice (the "<u>ROFO Evaluation Period</u>") to accept the Selling ROFO Member's offer by delivering written notice (the "<u>ROFO Offer Purchase Notice</u>") to the Selling ROFO Member agreeing to purchase up to the number of Offered Interests on the terms set forth in the ROFO Offer Notice (including the same price and with the same amount of consideration), which ROFO Offer Purchase Notice shall indicate the number of Offered Interests it wishes to purchase and include the Company's election and agreement to purchase such Offered Interests.

(c)     Subject to the terms of <u>Section 5.2(d)</u> below, each Selling ROFO Member hereby unconditionally and irrevocably grants to Qualifying Holders a secondary right to purchase on a *pro rata* basis, in proportion to such Qualifying Holder's Percentage Interests, all or any portion of the Offered Interests not elected to be purchased by the Company pursuant to <u>Sections 5.2(a)</u> and <u>5.2(b)</u> (a "<u>Purchase Right</u>," and each Qualifying Holder with a Purchase Right, a "<u>Rightholder</u>"). If the Company does not provide the ROFO Offer Purchase Notice exercising its rights with respect to all Offered Interests, the Company must deliver a notice to the Selling ROFO Member and to each other Rightholder to that effect no later than fifteen (15) Business Days after the Selling ROFO Member delivers the ROFO Offer Notice to the Company (the "<u>Company ROFO Notice</u>").  The Company ROFO Notice shall state the proposed terms of such Transfer, including (i) the number of Offered Interests available for purchase by the Qualifying Holders (the "<u>Remaining Offered Interests</u>"), (ii) the Offer Sale Price, and (iii) all other material terms and conditions of the proposed Transfer included in the ROFO Offer Notice. To exercise its Purchase Right, such Rightholder must deliver written notice to the Selling ROFO Member and the Company within ten (10) Business Days after delivery of the Company ROFO Notice indicating the number of Remaining Offered Interests it wishes to purchase and including the Rightholder's election and agreement to purchase such Offered Interests (the "<u>Rightholder Offer Purchase Notice</u>").

(d)     If more than one Rightholder elects to purchase Remaining Offered Interests prior to the expiration of the ten (10) Business Day period specified in the last sentence of <u>Section 5.2(c)</u> (the "<u>Rightholder Notice Period</u>") and the aggregate number of Remaining Offered Interests elected to be purchased by such Rightholders exceeds the aggregate number of Remaining Offered Interests, the Remaining Offered Interests shall be allocated among such Rightholders *pro rata* based on the number of Remaining Offered Interests such Exercising Rightholders have elected to purchase pursuant to the

Purchase Right until all Remaining Offered Interests shall have been so allocated or each Exercising Rightholder shall have been allocated all of the Remaining Offered Interests specified by each such Exercising Rightholder in its Rightholder Offer Purchase Notice.  If options to purchase have been exercised by the Company and/or the Rightholders pursuant to Sections 5.2(b) and 5.2(c) with respect to some but not all of the Offered Interests by the end of Rightholder Notice Period, then the Company shall, within five (5) Business Days after the expiration of the Rightholder Notice Period, send written notice (the "Company Undersubscription Notice") to those Rightholders who fully exercised their Purchase Right within the Rightholder Notice Period (the "Exercising Rightholders"). Each Exercising Rightholder shall, subject to the provisions of this Section 5.2(d), have an additional option to purchase all or any part of the balance of any such remaining unsubscribed shares of Offered Interests on the terms and conditions set forth in the ROFO Offer Notice. To exercise such option, an Exercising Rightholder must deliver a Company Undersubscription Notice to the Selling ROFO Member and the Company within ten (10) Business Days after the expiration of the Rightholder Notice Period. In the event there are two (2) or more such Exercising Rightholders that choose to exercise the last-mentioned option for a total number of remaining shares in excess of the number available, the remaining shares available for purchase under this Section 5.2(d) shall be allocated to such Exercising Rightholders *pro rata* based on the number of shares of Offered Interests such Exercising Rightholders have elected to purchase pursuant to the Purchase Right (without giving effect to any shares of Offered Interests that any such Exercising Rightholder has elected to purchase pursuant to the Company Undersubscription Notice). If the options to purchase the remaining Offered Interests are exercised in full by the Exercising Rightholders, the Company shall immediately notify all of the Exercising Rightholders and the Selling ROFO Member of that fact.

(e)    If (i) no ROFO Offer Purchase Notice or Rightholder Offer Purchase Notice has been timely delivered under Section 5.2(b) or Section 5.2(c), as applicable, (ii) the ROFO Offer Purchase Notices and/or Rightholder Offer Purchase Notices that are delivered do not cover all of the Offered Interests or (iii) the Company or a Rightholder fails to purchase all of the Offered Interests that the Company or such Rightholder has agreed to purchase pursuant to Sections 5.2(b) or 5.2(c), respectively, then the Selling ROFO Member shall be permitted to Transfer any or all of the Offered Interests that have not been purchased by the Company or the Rightholders to the applicable Third Party Purchaser(s) on terms and conditions no more favorable to such Third Party Purchaser than those set forth in the ROFO Offer Notice for a purchase price in cash that is no lower than the Offer Sale Price (a "ROFO Third Party Sale"); provided, however, that such ROFO Third Party Sale is consummated within sixty (60) days after the earlier to occur of (i) the waiver by the Company or all of the Rightholders of their option to purchase the Offered Interests and (ii) the expiration of the Rightholder Notice Period (such period, the "ROFO Third Party Sale Period").  If such ROFO Third Party Sale is not consummated within such ROFO Third Party Sale Period for any reason, then the restrictions provided for in this Section 5.2 shall again become effective, and no Transfer of Voting Interests may be made thereafter by the Selling ROFO Member without again offering the same to the Company or Rightholders in accordance with this Section 5.2.

(f)    The Selling ROFO Member shall notify (the "Final Offer Notice") each Rightholder within three (3) Business Days following the expiration of the Rightholder Notice Period, with copy to the Company, of the number of Offered Interests which such Rightholder has agreed to purchase pursuant to this Section 5.2. The closing of the sale of the applicable Offered Interests to the Company and/or the Exercising Rightholders shall take place at 10:00 a.m. on the tenth (10th) Business Day after the expiration of the Rightholder Notice Period unless the parties agree on a different place or time.  Each the Company and each Rightholder, as appliable, shall, at the closing, deliver to the Selling ROFO Member payment in full in immediately available funds for the Offered Interests purchased by it; it being further agreed that no portion of the purchase price shall be subject to any escrow or holdback.

At such closing, all the parties to the transaction shall execute such additional documents as are otherwise necessary or appropriate.

(g)     At the closing contemplated by <u>Section 5.2(f)</u> above, the Selling ROFO Member shall provide customary representations, warranties, covenants and indemnities in its individual capacity in connection with such transaction; <u>provided</u>, <u>however</u>, that such representations, warranties, covenants and indemnities shall be limited to customary fundamental representations and warranties regarding (i) its brokers and finders, (ii) title to its Offered Interests, free and clear of all liens, claims and encumbrances (other than those arising under applicable securities laws and this Agreement), (iii) its authority, power and right to enter into and consummate the transaction without violating any other material agreement or applicable law, (iv) its power and right to enter into and consummate the transaction without the consent of a Governmental Authority or Person and (v) the absence of any required consents for it to enter into and consummate the transaction and the absence of any registration requirements in connection therewith.   The Selling ROFO Member's liability under the definitive transfer agreement with respect to such transaction will not exceed the total purchase price received by the Selling ROFO Member in such transaction except for liability resulting from fraud or knowing and willful breach.   In no event shall any Affiliate (other than any Affiliate of such Selling ROFO Member which Affiliate itself is Transferring Voting Interests in such transaction) of such Selling ROFO Member be liable under such transaction, in any respect.

5.3     <u>Tag-Along Rights</u>.

(a)     Without limiting the other terms and conditions hereof, if at any time one or more Members (a "<u>Tag-Along Seller</u>") propose to Transfer fifteen percent (15%) or more of the outstanding Voting Interests (but less than one hundred percent (100%) of the Voting Interests), in a single transaction or series of related transactions (other than any Drag-Along Transaction or any Transfers by a Member to any Affiliates of such Member, a "<u>Tag-Along Sale</u>", and the purchaser involved in such transaction(s), the "<u>Tag-Along Purchaser</u>"), then, following compliance by the Tag-Along Seller with <u>Section 5.2</u>, each other Member (other than Affiliates of a Tag-Along Seller) (each, a "<u>Tag-Along Rightholder</u>") shall have the right to make an offer to sell to such Tag-Along Purchaser, at the same price (subject to Section 5.3(b)) and upon the same terms and conditions set forth in the Tag-Along Notice (as defined below), a number of Voting Interests held by such Tag-Along Rightholder (the "<u>Tag-Along Offered Interests</u>") equal to the product obtained by multiplying (i) the total number of Voting Interests owned by such Tag-Along Rightholder at the Tag-Along Record Date (as defined below) by (ii) a fraction, the numerator of which is the number of Voting Interests intended to be sold by the Tag-Along Seller in such Tag-Along Sale and the denominator of which is the total number of Voting Interests owned by such Tag-Along Seller at the Tag-Along Record Date.

(b)     The Tag-Along Seller shall give written notice to the Company of each proposed Transfer by it that gives rise to the rights of the Tag-Along Rightholders set forth in this <u>Section 5.3</u>, at least thirty (30) days prior to the proposed consummation of such Transfer and the Company, within three (3) Business Days after receiving notice from such Tag-Along Seller, shall give notice of such Transfer to each Tag-Along Rightholder.   The close of business on the tenth (10th) Business Day following the date that each notice is given by the Company shall be deemed to be the "<u>Tag-Along Record Date</u>".   The notice provided by the Tag-Along Seller, and forwarded by the Company, shall set forth in reasonable detail, based on information available to the Tag-Along Seller, the name of such Tag-Along Seller, the number of Voting Interests that will be held by such Tag-Along Seller as of the Tag-Along Record Date and the number and class of Voting Interests proposed to be sold by such Tag-Along Seller, the name of and contact information for the proposed Tag-Along Purchaser (including any material relationships with the Company or any Tag-Along Seller), the proposed amount and form of consideration and terms and conditions of payment offered by such Tag-Along Purchaser, the percentage

(or a reasonable estimate of the minimum and maximum percentage) of its Voting Interests that such Tag-Along Rightholder may sell to such Tag-Along Purchaser (determined in accordance with Section 5.3(a)) and the purchase price per Common Interest or Nexus Incentive Interests (or a reasonable estimate of the maximum and minimum per share purchase price) (the "Tag-Along Notice").  Where the Tag-Along Seller is seeking to sell Common Interests, the purchase price per Nexus Incentive Interest to be set forth in the Tag-Along Notice shall equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1. The tag-along rights provided by this Section 5.3 must be exercised by any Tag-Along Rightholder wishing to sell Tag-Along Offered Interests no later than the Tag-Along Record Date, which exercise shall be by delivery of a written irrevocable offer (the "Tag-Along Rightholder's Offer") to the Tag-Along Seller and the Company indicating such Tag-Along Rightholder's wish to have its Tag-Along Offered Interests included in the Tag-Along Sale and specifying the number and class of Tag-Along Offered Interests (up to the maximum number of Tag-Along Offered Interests as determined in accordance with Section 5.3(a)) it wishes to sell; provided that any Tag-Along Rightholder may waive its tag-along rights under this Section 5.3 with respect to such Tag-Along Sale prior to the expiration of such ten (10) Business Day period by giving written notice thereof to the Tag-Along Seller, with a copy to the Company (and failure to deliver a Tag-Along Rightholder's Offer by the Tag-Along Record Date will be deemed to be a waiver of such Tag-Along Rightholder's tag-along rights under this Section 5.3 with respect to such Tag-Along Sale).  Subject to the other terms herein, delivery of the Tag-Along Rightholder's Offer will constitute an irrevocable binding commitment by such Tag-Along Rightholder to sell the number of Tag-Along Offered Interests specified in such Tag-Along Rightholder's Offer on the terms set forth in the Tag-Along Notice.

(c)      The Tag-Along Seller shall attempt to obtain the inclusion in the proposed Tag-Along Sale of the entire number of Tag-Along Offered Interests that the Tag-Along Rightholders timely elect to have included in such Tag-Along Sale.  If the Tag-Along Seller is unable to obtain such inclusion of all such Tag-Along Offered Interests, then (i) the number of Tag-Along Offered Interests to be sold in such Tag-Along Sale shall be allocated on a pro rata basis among the Tag-Along Seller and each Tag-Along Rightholder who shall have timely elected to participate in such Tag-Along Sale in proportion to the total number of Voting Interests offered and eligible to be sold in the Tag-Along Sale by each such Member or (ii) the Tag-Along Seller shall be permitted to sell its Voting Interests in such Tag-Along Sale provided that it purchases, for the same price and upon the same terms, from each Tag-Along Rightholder who shall have timely elected to participate in such Tag-Along Sale the number of Voting Interests that such Tag-Along Rightholder could have included in such Tag-Along Sale.

(d)      The Tag-Along Rightholders shall make or provide the same representations, warranties, covenants (other than non-competes and restrictive covenants), indemnities and agreements the Tag-Along Seller makes or provides in connection with the Tag-Along Sale (except that in the case of representations, warranties, covenants, indemnities and agreements pertaining specifically to the Tag-Along Seller, the Tag-Along Rightholders shall make the comparable representations, warranties, covenants, indemnities and agreements pertaining specifically to them).  The liability of any Tag-Along Rightholder shall be capped at the proceeds actually received in such sale by such Tag-Along Rightholder and no Tag-Along Rightholder shall be required to enter into noncompetition, non-solicitation or similar restrictive covenants and each Tag-Along Rightholder's liability shall be several and not joint.  If (i) the Tag-Along Seller has not consummated the Tag-Along Sale within forty-five (45) days of the delivery to the Company of the related Tag-Along Notice (for any reason other than the failure of a Tag-Along Rightholder to sell its Voting Interests under this Section 5.3) or (ii) the terms and conditions of the Tag-Along Sale shall change, in any respect, from those in the Tag-Along Notice, then the Tag-Along Notice and any Tag-Along Rightholder's Offer shall be null and void and it shall be necessary for a separate Tag-Along Notice to be furnished and the terms and provisions of this Section 5.3 separately complied with, in order to subsequently consummate such proposed Tag-Along

Sale pursuant to this Section 5.3; provided, however, that the Tag-Along Notice and the Tag-Along Rightholder's Offers shall not be null and void if the Tag-Along Seller receives the unanimous written consent of each of the Tag-Along Rightholders agreeing to an extension and/or revised terms. Notwithstanding any other provision of this Section 5.3, there shall be no liability on the part of any Tag-Along Seller to any other Member arising from the failure of any Tag-Along Seller to consummate the Tag-Along Sale for any reason and the decision to consummate such Tag-Along Sale shall be in the sole discretion of the Tag-Along Seller.

5.4    Drag-Along Right.

(a)    If one (1) or more Members holding a majority of the outstanding Voting Interests (such Members, the "Selling Members") propose to consummate a Drag-Along Transaction with a Potential Purchaser in a bona fide transaction, the Selling Members may, at their option, require the other Members (the "Compelled Members") to sell to the Potential Purchaser the same portion of its own Voting Interests as is being sold by the Selling Members in such transaction, or otherwise participate in such transaction, on the same terms and conditions upon which the Selling Members propose to enter into such sale (a "Drag-Along Sale"), subject to the other provisions of this Section 5.4. "Drag-Along Transaction" means: (a) any merger, recapitalization, consolidation or restructuring or any other transaction that would result in a change of control of the Company; (b) a sale or other disposition of all or substantially all of the assets of the Company and its Subsidiaries (together as a whole) to be followed promptly by a dissolution with respect to the Company or a distribution to the Members of all or substantially all of the net proceeds of such disposition after payment or other satisfaction of liabilities and other obligations of the Company and its Subsidiaries; or (c) the sale of fifty percent (50%) or more of the outstanding Voting Interests in a single transaction or series of related transactions. Notwithstanding the foregoing, any Transfers solely among Members, on one hand, and Affiliates of such Members, on the other hand, shall be excluded from the definition of "Drag-Along Transaction".

(b)    The Selling Members shall provide a written notice (the "Drag-Along Notice") of such Drag-Along Sale to each of the Compelled Members, with a copy to the Company, not later than ten (10) Business Days prior to the proposed consummation of the Drag-Along Sale by the Potential Purchaser. The Drag-Along Notice shall contain written notice of the exercise of the rights of the Selling Members pursuant to Section 5.4(a), setting forth the applicable form of consideration, and price per Common Interest and Nexus Incentive Interest, to be paid by the Potential Purchaser and all other material terms and conditions of the Drag-Along Sale and a copy of the definitive purchase agreement or similar document providing for the Drag-Along Sale. The purchase price per Nexus Incentive Interest to be set forth in the Drag-Along Notice shall equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1.

(c)    At the closing of the Drag-Along Sale, the Potential Purchaser shall remit to each Compelled Member the total consideration due such Compelled Member in respect of the Voting Interests sold by such Compelled Member in the Drag-Along Sale, less a pro rata portion of any amounts to be held in escrow or subject to an earn-out or similar provision and of the expenses (including reasonable documented legal expenses) incurred by the Selling Members in connection with such sale for the benefit of and on behalf of all the Selling Members.

(d)    If the Selling Members shall not have completed the Drag-Along Sale on the later of (i) the date that is one hundred twenty (120) calendar days following delivery of the Drag-Along Notice and (ii) the fifth Business Day following the expiration or termination of all waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and receipt of all requisite consents or approvals under any other applicable regulatory regimes, to the extent applicable to such

Drag-Along Sale, then no Member shall have any obligation with respect to the Drag-Along Sale set forth in such Drag-Along Notice; <u>provided</u> that the provisions of this <u>Section 5.4</u> shall apply to any subsequent Drag-Along Sale.

(e)    Except as expressly provided in this <u>Section 5.4</u>, the Selling Members shall have no obligation to any Compelled Member to consummate any Drag-Along Sale (it being understood that any and all such decisions shall be made by the Selling Members in their sole discretion).  In the event that the Drag-Along Sale is not consummated by the Selling Members, the Compelled Members shall not be entitled to sell or otherwise dispose of any of their Voting Interests directly to any third party or parties pursuant to such Drag-Along Sale (it being understood that all such sales and other dispositions shall be made only on the terms and pursuant to the procedures set forth in this <u>Article V</u>).

(f)    In furtherance of, and not in limitation of, the foregoing, in connection with any Drag-Along Sale, each Member will (i) to the fullest extent permitted by law, raise no objections in its capacity as a Member against the Drag-Along Sale or the process pursuant to which it was arranged and waive all dissenters rights, appraisal rights and similar rights in connection with the Drag-Along Sale, (ii) vote or provide its written consent with respect to all of its Voting Interests in favor of the transaction pursuant to which the Transfer is effected and (iii) execute all documents containing terms and conditions consistent with the provisions of this <u>Section 5.4</u> which are also executed by the Selling Members and are reasonably necessary to effect the transaction; <u>provided</u>, <u>however</u>, that no Compelled Member shall be required to enter into a release or non-compete or non-solicitation or no-hire provision, an exclusivity provision or any other provision that is not a strictly financial term related directly to such Drag-Along Sale; <u>provided</u> <u>further</u> that (A) the liability of the Members shall be several and not joint, (B) no Compelled Member shall have any liability to the Company or any other Member for any breaches of the representations, warranties or covenants of any other Member or the fraud or willful misconduct of any other Member, (C) any obligations of a Compelled Member under the agreement governing such transaction and any related escrow agreement shall be borne pro rata among the Members based on the proceeds and assets payable to such Members in such transaction (other than with respect to representations and warranties that relate specifically to a particular Member or its Voting Interests, which obligations shall be borne solely by such Member) and shall in no event exceed the actual proceeds and assets received by such Compelled Member in such transaction, and (D) no Compelled Member shall be required to make any representations or warranties or covenants in connection with such transaction except, as applicable, with respect to (1) such Compelled Member's ownership of such Compelled Member's Voting Interests, (2) subject to the provisions of clauses (B) and (C) above, customary security holder indemnities for breaches of such Compelled Member's representations, warranties and covenants, (3) such Compelled Member's ability to convey title to such Compelled Member's Voting Interests free and clear of liens, (4) such Compelled Member's ability, power and authority to enter into the transaction, and (5) customary and reasonable covenants regarding confidentiality, publicity and similar matters that are consistent with those set forth in this Agreement.

(g)    Notwithstanding anything in this <u>Section 5.4</u> to the contrary, if the Selling Members or any of their respective Representatives, directly or indirectly, receive any consideration from the Potential Purchaser or any of the Potential Purchaser's Affiliates in connection with, or pursuant to oral or written agreements entered into substantially contemporaneously with, a Drag-Along Sale (including any payment for non-compete covenants, consulting arrangements or advisory or transaction services) other than (i) the consideration that is received by the Compelled Members on a pro rata basis as part of the Drag-Along Sale in accordance with <u>Section 5.4(h)</u> and (ii) consideration that is received by any Member for bona fide services rendered to the Company for periods commencing following the closing of a Drag-Along Sale on an arm's-length basis, then the Selling Members shall cause each of the Compelled Members to receive their pro rata share, determined by reference to the respective amounts of

consideration otherwise payable to each Member (including the Selling Members) as part of the Drag-Along Sale, of such consideration.

(h)    All Members shall receive the same type and amount of consideration per share of Voting Interests in connection with a Drag-Along Sale (or if any Member is given an option as to the form of consideration to be received, all other Members shall be given the same option on the same terms).

(i)    Notwithstanding anything in this Section 5.4 to the contrary, a Member may elect to have this Section 5.4(i) apply to a Drag-Along Transaction, and if a Member makes such election by providing notice to the Company of such election, the maximum amount payable to such Member that elects to have this provision apply to such Member (a "Listing Rules Member") pursuant to a sale or other disposition of such Listing Rules Member's Voting Interests and over which the applicable Listing Rules Member does not have sole discretion as to whether to enter into and consummate the applicable sale (including a Drag-Along Sale) (a "Listing Rules Subject Sale") shall be either (a) the minimum amount that would result in such Listing Rules Subject Sale constituting a UK Class 2 Transaction minus one pound Sterling (£1.00) or (b) such other amount as such Listing Rules Member notifies to the Company in writing from time to time; provided that Barclays is hereby deemed to be a Listing Rules Member for purposes of this section and is not required to provide notification to the Company of its election as such.

5.5    Company Sale Right.

(a)    At any time from and after the sixth (6th) anniversary of the date of this Agreement, Nexus, for so long as Nexus holds at least the Nexus Minimum Holdings, may, upon the written notice to the Board, cause the Company to pursue a Sale of the Company (a "Sale Process"), including:

(i)    (A) selecting an investment bank, providing confidential information to such investment bank and potential acquirers (pursuant to a confidentiality agreement), undertaking an auction or other sale process, selecting the winning bidder and negotiating the requisite documentation, and (B) assisting in the negotiation of the requisite documentation and preparation of schedules;

(ii)    providing confidential information and making the Company's properties, books and records, and other assets reasonably available for inspection by potential acquirers (pursuant to confidentiality agreements);

(iii)    establishing a physical or electronic data room including materials customarily made available to potential acquirers in connection with such processes; and

(iv)    making the Company's corporate office employees (including the chief executive officer) reasonably available for presentations, interviews and other diligence activities.

(b)    If the Sale Process results in a proposed Sale of the Company that is approved by the Board in accordance with the terms and conditions of this Agreement, the Company may engage in such Sale of the Company, and each Member will (i) to the fullest extent permitted by law, raise no objections in its capacity as a Member against such Sale of the Company or the Sale Process and waive all dissenters rights, appraisal rights and similar rights in connection with such Sale of the Company, (ii) vote or provide its written consent with respect to all of its Voting Interests in favor of the transaction pursuant to which the Transfer is effected and (iii) execute all documents containing terms and

conditions consistent with the provisions of this Section 5.5(b) which are reasonably necessary to effect the transaction; provided, however, that no Member shall be required to enter into a release or non-compete or non-solicitation or no-hire provision, an exclusivity provision or any other provision that is not a strictly financial term related directly to such Sale of the Company. All Members shall receive the same type and amount of consideration per share of Common Interests in connection with a Sale of the Company pursuant to this Section 5.5 (or if any Member is given an option as to the form of consideration to be received, all other Members shall be given the same option on the same terms). However, holders of Nexus Incentive Interests shall receive the purchase price per Nexus Incentive Interest equal that amount that each Nexus Incentive Interest would receive if the entire equity valuation of the Company, as implied by the price per Common Interest, were distributed pursuant to Section 4.1.

5.6    Preemptive Rights.

(a)    If the Company or any Subsidiary shall propose to issue and sell Common Interests, other equity securities of the Company or any Subsidiary, or securities convertible into or exchangeable therefor (collectively, the "New Securities"), or enter into any contracts relating to the issuance or sale of any New Securities to any Person (the "Subject Purchaser"), in each case, other than with respect to Excluded Issuances, each Member who, together with its Affiliates, at the time of such proposed sale or issuance holds at least one percent (1%) of all issued and outstanding Voting Interests (for the purposes of this Section 5.6, a "Preemptive Rightholder") shall have the right (a "Preemptive Right") to purchase such Preemptive Rightholder's pro rata portion (based on ownership of Voting Interests) of the New Securities at the same price and on the same other terms proposed to be issued and sold (the "Preemptive Percentage"). The Company shall offer to sell to any such Preemptive Rightholder its Preemptive Percentage of such New Securities (the "Offered Preemptive Securities") and to sell to any such Preemptive Rightholder such of the Offered Preemptive Securities as shall not have been subscribed for by the other Preemptive Rightholders as hereinafter provided, at the price and on the terms described above, which shall be specified by the Company in a written notice delivered to any such Preemptive Rightholder which such notice shall also state (x) the number of New Securities proposed to be issued and (y) the portion of the New Securities available for purchase by such Preemptive Rightholder (the "Preemptive Offer"). The Preemptive Offer shall by its terms remain open for a period of at least ten (10) days from the date of receipt thereof and shall specify the date on which the Offered Preemptive Securities will be sold to accepting Members (which shall be at least fifteen (15) but not more than one hundred and fifty (150) days from the date of the Preemptive Offer). The failure of any Preemptive Rightholder to respond to the Preemptive Offer during the ten (10) day period shall be deemed a waiver of such Preemptive Rightholder's Preemptive Right in connection with the sale of such Offered Preemptive Securities.

(b)    Each such Preemptive Rightholder shall have the right, during the period of the Preemptive Offer, to purchase any or all of its Preemptive Percentage of the Offered Preemptive Securities at the purchase price and on the terms stated in the Preemptive Offer. Notice by any Preemptive Rightholder of its acceptance, in whole or in part, of a Preemptive Offer shall be in writing (a "Notice of Acceptance") signed by such Preemptive Rightholder and delivered to the Company prior to the end of the specified period of the Preemptive Offer, setting forth the Offered Preemptive Securities such Preemptive Rightholder elects to purchase.

(c)    Each such Preemptive Rightholder shall have the additional right to offer in its Notice of Acceptance to purchase any of the Offered Preemptive Securities not accepted for purchase by any other Preemptive Rightholders, in which event such Offered Preemptive Securities not accepted by such other Preemptive Rightholders shall be deemed to have been offered to and accepted by the Members exercising such additional right under this paragraph (c) pro rata in accordance with their respective Preemptive Percentage (determined without regard to those Preemptive Rightholders not

28

electing to purchase their full respective Preemptive Percentage under the foregoing paragraph (a)) on the same terms and conditions as those specified in the Preemptive Offer, but in no event shall any such electing Preemptive Rightholder be allocated a number of New Securities in the Company in excess of the maximum number of Offered Preemptive Securities such Member has elected to purchase in its Notice of Acceptance.

(d)     At the closing of the purchase of New Securities subscribed for by the Members under this Section 5.6 the Company shall deliver certificates (if the Company has elected to issue certificates) representing the New Securities, and such New Securities shall be issued free and clear of all liens and the Company shall so represent and warrant, and further represent and warrant that such New Securities shall be, upon issuance thereof to the Members that elected to purchase New Securities and after payment therefor, duly authorized, validly issued, fully paid and non-assessable.  Each Preemptive Rightholder purchasing the New Securities shall deliver at the closing payment in full in immediately available funds for the New Securities purchased by it.   At such closing, all of the parties to the transaction shall execute (including the Company in respect of any Voting Interests in the event that any Member fails to do so within a reasonable time) such additional documents as are otherwise necessary or appropriate.

(e)     In its discretion, the Board may impose other reasonable and customary terms and procedures, such as setting a closing date, rounding the number of New Securities covered by this Section 5.6 to the nearest whole number or dollar of New Security, as applicable, and requiring customary closing deliveries in connection with any Preemptive Offer.

(f)     Sale to Subject Purchaser.  In the case of any Preemptive Offer, if Notices of Acceptance given by the Members do not cover in the aggregate all of the Offered Preemptive Securities, the Company may during the period of ninety (90) days following the date of expiration of such Preemptive Offer sell to any other Person or Persons all or any part of the New Securities not covered by a Notice of Acceptance, but only on terms and conditions that are no more favorable to such Person or Persons or less favorable to the Company than those set forth in the Preemptive Offer.  If such sale is not consummated within such ninety (90) day period for any reason, then the restrictions provided for herein shall again become effective, and no issuance and sale of New Securities may be made thereafter by the Company without again offering the same in accordance with this Section 5.6.   The closing of any issuance and purchase pursuant to this Section 5.6 shall be held at a time and place as the parties to the transaction may agree.

(g)     Preemptive Rights Exception.  Notwithstanding anything to the contrary herein, if the Board, acting in good faith, determines that it would be in the best interests of the Company to issue New Securities which would otherwise be required to be offered to the Members under this Section 5.6 prior to making such offer, the Company may issue such New Securities to a Person (an "Accelerated Acquirer") without first complying with the procedures set forth in Section 5.6(a); provided, however, that within ten (10) Business Days after the closing of such issuance, the Company shall provide to each Preemptive Rightholder: (i) written notice of such issuance and the Preemptive Offer required by Section 5.6(a) and (ii) the Preemptive Right to purchase such Member's Preemptive Percentage of the New Securities that such Member would have been entitled to purchase pursuant to the procedures set forth in Section 5.6(a), Section 5.6(b), and Section 5.6(c) had this Section 5.6(g) not been invoked, subject to such eligible Member's delivery of a Notice of Acceptance pursuant to Section 5.6(b) prior to the later of the end of the specified period of the Preemptive Offer and five (5) Business Days after receipt of notice of the Preemptive Offer, and which shall be on the same terms and conditions provided in the provisions of this Section 5.6 relating to the Preemptive Right, the closing of such purchase to take place as soon as reasonably practicable.  If one or more Members exercise the election to make a purchase, the Company shall give effect to each such exercise by (i) requiring that the Accelerated Acquirer (in which case the

Accelerated Acquirer hereby agrees to) sell down a portion of its New Securities, (ii) issuing additional New Securities to such Member or (iii) a combination of (i) and (ii), so long as such action effectively provides such Member with the same number of New Securities that such Member would have been entitled to had this <u>Section 5.6(g)</u> not been invoked.

     5.7    <u>Debt Preemptive Rights</u>.

     (a)    In the event the Company or any of its Subsidiaries issues any debt securities to, or borrows money (in the form of a Term Loan or otherwise) from, one or more Members or their Affiliates directly or indirectly, other than: (1) borrowings under the Company's and its Subsidiaries' existing credit facilities, or (2) borrowings in which Jefferies is acting in its capacity as lender or arranger and at least five (5) Directors (not counting the Industry Director for this purpose) have approved waiver of the preemptive rights set forth in this <u>Section 5.7</u> with respect to such loan, each Member who, at the time of such proposed sale or issuance holds at least one percent (1%) of all issued and outstanding Voting Interests(for the purposes of this <u>Section 5.7</u>, each "<u>Debt Right Holder</u>") shall have the right to purchase or lend up to an amount of such debt securities or borrowed amounts (its "<u>Allocated Share</u>") equal to (1) the product of (x) the principal amount of debt securities being issued or the principal amount being borrowed, as applicable, and (y) such Debt Right Holder's Percentage Interest. If the Company intends to issue any debt securities to, or borrow money from, one or more Members or their Affiliates, directly or indirectly, the Company shall deliver a written notice (a "<u>Debt Preemptive Rights Notice</u>") to the Debt Right Holders specifying (i) the amount of its Allocated Share, (ii) the anticipated closing date; and (iii) any other material terms of such issuance or borrowing.

     (b)    Within five (5) Business Days following receipt of a Debt Preemptive Rights Notice, each Debt Right Holder shall deliver to the Company a written notice (a "<u>Debt Exercise Notice</u>") (i) indicating whether it will exercise its right to participate in the offering or borrowing and (ii) specifying the principal amount it wishes to purchase or lend in connection therewith up to its Allocated Share. If any Debt Right Holder fails to deliver a Debt Exercise Notice to the Company within such fifteen (15) Business Day period, such Debt Right Holder shall be deemed to have elected not to participate in such offering or borrowing.

     (c)    To the extent any Debt Right Holder fails to exercise fully its aggregate Preemptive Rights granted pursuant to this <u>Section 5.7</u> with respect to such offering or borrowing, the Company shall have ninety (90) days thereafter to sell such debt securities or borrow such amounts upon terms not materially more favorable, taken as a whole (as determined conclusively by the Board in good faith), than specified in the Debt Preemptive Rights Notice.

     (d)    The Preemptive Rights set forth in this <u>Section 5.7</u> may not be assigned or transferred, except that such right may be assigned by any Debt Right Holder to any Affiliate of such Debt Right Holder.

     5.8    <u>General Restrictions on Transfer; Admission of New Members</u>.

     (a)    Any Person acquiring one or more Voting Interests from the Company or from any Member in accordance with this Agreement shall, unless such acquiring Person is already a Member as of immediately prior to such acquisition, be admitted to the Company as a Member only upon execution of a joinder to this Agreement substantially in the form attached hereto as <u>Exhibit D</u>.

     (b)    Notwithstanding anything to the contrary contained in this Agreement, no Transfer of Voting Interests issued to a Member pursuant to the Plan <u>or in connection with the exercise of the Warrants</u> shall be made if such Transfer or issuance (i) would result in any circumstances that the

Board determines could require the Company to file reports under the Exchange Act, (ii) would violate any state or U.S. federal securities laws, (iii) would require the Company to register as an investment company under the Investment Company Act of 1940, as amended, (iv) would require the Company to register as an investment adviser under state or U.S. federal securities laws, or (v) would, as reasonably determined by the Board, cause the Company to be treated as a publicly traded partnership for U.S. federal income tax purposes.  If any Member purports to Transfer Voting Interests to any Person in a transaction that would violate the provisions of this <u>Article V</u> or that would violate any applicable federal or state securities law, such Transfer shall be void *ab initio* and of no effect.

(c)      No Transfer of Voting Interests may be made to any Competitor of the Company without the approval of the Board, other than in a Drag-Along Sale in accordance with <u>Section 5.4</u> or a Sale of the Company pursuant to <u>Section 5.5</u>.

5.9      <u>Resignation</u>.  No Member shall have the right or power to resign, withdraw or retire from the Company, except upon a Transfer of all of such Member's Voting Interests in compliance with and subject to, the provisions of this <u>Article V</u>.

5.10      <u>Record of Members</u>.  The Board shall be responsible for maintaining, at the Company's principal place of business, an up-to-date list of all Members ("<u>Member List</u>"), which shall reflect the name of each Member and the number Voting Interests and Percentage Interest held by such Member.  The Board shall be required to update the Member List and <u>Exhibit B</u> of this Agreement from time to time so as to accurately reflect the information contained thereon upon (a) the resignation of a Member, (b) the admission of a new Member or (c) any change in the number of Voting Interests owned by a Member.

5.11      <u>Registration Rights</u>.  The Members shall have the registration rights, and Transfers shall be subject to terms and conditions, set forth on <u>Annex I</u>, which is hereby made part of this Agreement as if it was set forth in full in this <u>Section 5.11</u>.

5.12      <u>Mandatory Repurchase of Interests</u>.  Notwithstanding any provisions hereof to the contrary, in the event that a Member determines in its sole discretion that (i) the holding of any rights, interests or obligations with respect to the Company or this Agreement will or could be unlawful or a breach of any Banking Laws or any other applicable laws, whether U.S. or foreign, or (ii) there has been, is, or could be, an act, matter, event or circumstance related to the Company that results in or could result in damage to the reputation of the Member or any of its Affiliates, upon prior written notice to the Company, the Member shall have the right to require the Company to repurchase its rights, interests and obligations with respect to this Company or this Agreement for $1.00.  In connection with a Sale of the Company, the Company shall cause the terms of the Voting Interests to include provisions which give effect to the Member's rights provided in this <u>Section 5.12</u>.

**Article VI**
**<u>Governance</u>**

6.1      <u>Board of Directors</u>.

(a)      Except for situations in which the approval of any Member is required by this Agreement, management of the Company shall be vested in the Board.  "<u>Board</u>" means all the Persons elected and serving from time to time as the Board in accordance with <u>Section 6.1(b)</u> and <u>Section 6.2</u>.  Each member of the Board is referred to as a "<u>Director</u>".  There is no limit on the number of terms a

31

Director may serve on the Board and a Director need not be a resident of the State of Delaware or a Member of the Company.

(b)        Subject to the provisions of <u>Section 6.13</u> to the extent applicable, (i) this Agreement is not intended to, and does not, create or impose any fiduciary duty on any Director, and each of the Members and the Company hereby waive any and all fiduciary duties that, absent such waiver, may be implied by applicable law and, in doing so, acknowledge and agree that the duties and obligations of each such Director to the Company are only as expressly set forth in this Agreement, and (ii) the provisions of this Agreement, to the extent that they restrict the duties and liabilities of any Director otherwise existing at law or in equity, are agreed by the Members and the Company to replace such other duties and liabilities of any such Director. Each Director's liability to the Company, any Member, any other Director or any other Person for breach of duties (including fiduciary duties) to the Company, any Members, any other Directors or any other Person by reason of or arising from or relating to the operations, business or affairs of, or any action taken or failure to act on behalf of, the Company, shall be limited to the fullest extent permitted by Delaware law, except to the extent that it is determined by a final, non-appealable order of a court of competent jurisdiction that any of the foregoing was caused by a bad faith violation of the implied contractual covenant of good faith and fair dealing or actual fraud or willful misconduct, or, with respect to any criminal action or proceeding against a Director, that such Director had reasonable cause to believe such Director's conduct was unlawful.

6.2    <u>Appointment of Directors</u>.  The Board shall consist of eight (8) Directors, of which (subject to <u>Section 6.3</u>):

(a)        one (1) Director shall be the Chief Executive Officer of the Company (the "<u>CEO Director</u>"), who initially shall be [●];

(b)        three (3) Directors shall be appointed by Nexus (the "<u>Nexus Director</u>"), who initially shall be [●], [●] and [●]; <u>provided</u> that in the event the Percentage Interest of Nexus (collectively with its Affiliates) <u>is (i) 30% or greater, than Nexus shall have the right to appoint three (3) Directors, (ii)</u> is less than ~~5~~<u>3</u>0% but greater than ~~30~~<u>15</u>%, Nexus shall have the right to appoint two (2) Nexus Directors, and one (1) Nexus Director shall immediately resign from the Board, (<u>iii</u>) is less than 15% but greater than 7.5%, Nexus shall have the right to appoint one (1) Nexus Director, and any additional Nexus Directors shall immediately resign from the Board, and (~~iii~~<u>iv</u>) is less than 7.5%, Nexus shall lose the right to appoint an Nexus Director and all Nexus Directors shall immediately resign from the Board;

(c)        one (1) Director shall be appointed by the mutual agreement of both Jefferies and Mockingbird (the "<u>Jefferies/Mockingbird Director</u>"). ~~As soon as either~~<u>To the extent that</u> Jefferies ~~and~~<u>or</u> Mockingbird, <u>as the case may be,</u> Transfers more than fifty percent (50%) its respective Percentage Interests as of the Effective Date to Persons other than their respective Affiliates (including Related Funds) <u>that does not result in the Transfer of such Member's respective Designation Rights as set forth in Section 6.3(b)</u> (the Member making such a Transfer, the "<u>Exiting Designating Member</u>"), <u>immediately following such Transfer,</u> the Jefferies/Mockingbird Director shall be selected solely by the non-Exiting Designating Member for so long as such non-Exiting Designating Member holds at least the lesser of (i) 75% of its Percentage Interest as of the Effective Date and (ii) the number of Voting Interests such non-Exiting Designating Member held on the date it was notified that the Exiting Designating Member had agreed to, or consummated, the Transfer resulting in its loss of its Designation Right (the "<u>Remaining Designation Threshold</u>"); <u>provided</u>, <u>however</u>, that the Remaining Designation Threshold shall be no less than 50% of the non-Exiting Designating Member's Percentage Interest as of the Effective Date.  Once the non-Exiting Designating Member ceases to have a Percentage Interest in excess of the Remaining Designation Threshold, the Jefferies/Mockingbird Director shall immediately resign from the Board and the Director seat formerly occupied by the Jefferies/Mockingbird Director shall be

filled pursuant to Section 6.3(d). For the avoidance of doubt, to the extent either Jefferies or Mockingbird Transfers its Designation Right in compliance with Section 6.3(b), the Transferee of such Designation Right shall not be deemed to be an Exiting Designating Member and shall thereafter, in all respects, assume the same rights of Jefferies or Mockingbird, as the case may be, as set forth in this Agreement and be subject to the same conditions (including as set forth in this Section 6.2(c)) as set forth in this Agreement. The initial Jefferies/Mockingbird Director shall initially be [●];

(d)    one (1) Director shall be appointed by the mutual agreement of both Golub and Soundpoint (the "Golub/Soundpoint Director"). As soon as eitherTo the extent that Golub andor Soundpoint Transfers more than fifty percent (50%) its respective Percentage Interests as of the Effective Date to Persons other than their respective Affiliates (including Related Funds) that does not result in the Transfer of such Member's respective Designation Rights as set forth in Section 6.3(b), immediately following such Transfer, the Golub/Soundpoint Director shall be selected solely by the non-Exiting Designating Member for so long as such non-Exiting Designating Member holds at least the lesser of (i) 75% of its Percentage Interest as of the Effective Date and (ii) the Remaining Designation Threshold; provided, however, that the Remaining Designation Threshold shall be no less than 50% of the non-Exiting Designating Member's Percentage Interest as of the Effective Date. Once the non-Exiting Designating Member ceases to have a Percentage Interest in excess of the Remaining Designation Threshold, the Golub/Soundpoint Director shall immediately resign from the Board and the Director seat formerly occupied by the Golub/Soundpoint Director shall be filled pursuant to Section 6.3(d). ). For the avoidance of doubt, to the extent either Golub or Soundpoint Transfers its Designation Right in compliance with Section 6.3(b), the Transferee of such Designation Right shall not be deemed to be an Exiting Designating Member and shall thereafter, in all respects, assume the same rights of Golub or Soundpoint, as the case may be, as set forth in this Agreement and be subject to the same conditions (including as set forth in this Section 6.2(c)) as set forth in this Agreement. The initial Golub/Soundpoint shall initially be [●];

(e)    one (1) Director who is an industry expert and independent from the Company and any of its Affiliates (the "Independent Director") and who shall initially be [●] (the "Initial Independent Director").  Upon the resignation or removal of the Initial Independent Director, each subsequent Independent Director shall be selected  a vote of the Board; and

(f)    one (1) Director who is a [a nurse, or otherwise affiliated with [●]] (the "Industry Director"). For the avoidance of doubt, the Industry Director shall not be entitled to vote on any matters which come before the Board, and shall not be counted for the purposes of calculating a quorum pursuant to Section 6.8, or whether a matter has received the approval of a majority of the Board. Upon the resignation or removal of the Industry Director by the Board pursuant to Section 6.4, each subsequent Industry Director shall be selected by the Board.

6.3    Designation Right.

(a)    Each right of an individual Member to designate or nominate a Director shall be deemed a "Designation Right." For the avoidance of doubt, any Director seat not subject to a Designation Right shall be filled by (i) a majority of the holders of the issued and outstanding Voting Interests acting by written consent or (ii) a plurality vote of the holders of the issued and outstanding Voting Interests at a special or annual election of such Director (each such Director, a "Common Director").

(b)    Transfer of Designation Rights.  A Member who holds a Designation Right may transfer such right in connection with a Transfer of Voting Interests representing more than fifty percent (50%) of the Voting Interests such Member holds as of the Effective Date in a single Transfer or a series of Transfers.  Notwithstanding the foregoing, in the event that a Member Transfers more than fifty

percent (50%) of its Voting Interests to the Company, the Designation Right shall not transfer and the respective Director shall either (i) be replaced with a Common Director pursuant to Section 6.3(d), or (ii) subject to Section 6.2, in the event a Designation Right is shares between two Members, then the Designation Right shall become the sole right of the non-Transferring Member. For the avoidance of doubt, the foregoing transfer of such Designation Right shall remain subject to the same fall-aways, and to the requirements to designate jointly, as set forth in Section 6.2.

(c)    Right to Appoint Observer.  If a Member who holds a Designation Right: (i) appoints a Director who is not employed by or otherwise affiliated with such Member, but who has, in such Member's good faith view, relevant industry or operating experience, or (ii) irrevocably waives such Designation Right, such Member shall have the right to appoint an Observer pursuant to Section 6.9.  For the avoidance of doubt, if two Members jointly hold a Designation Right and the Director they designate is the employee of, or otherwise affiliated with, one such Member, the other Member shall have the right to appoint an Observer for so long as such Director continues to serve, and if the Director they designate is not the employee of, or otherwise affiliated with, either such Member, each such Member shall have the right to appoint an Observer for so long as such Director continues to serve. Notwithstanding the foregoing, if a Designation Right is shared between two Members and one Member ceases to hold a Designation Right due to a decrease in such Member's Percentage Interests as set forth in Section 6.2, neither such Member will have the right to appoint an Observer.

(d)    Termination of Designation Right.  If a Designation Right terminates in accordance with the terms hereof or a Member with a Designation Right irrevocably waives such Designation Right, then the Director position that had related to such Designation Right shall instead become a Common Director position; provided that the Director serving pursuant to such Designation Right at the time of its termination shall continue to serve in such position until his/her successor is duly elected pursuant to either Section 6.2 or Section 6.3(a), as applicable.

6.4    Removal of Directors.  Each Director shall hold office from the time of his or her appointment until his or her resignation or removal.  Each Director may be removed or replaced at any time, with or without cause, as determined by a majority vote of the Members entitled to appoint or select such Director; provided that the Industry Director may be removed by a vote of the Board.

6.5    Vacancies.  Any Director may resign at any time upon written notice to the Company. Any such resignation shall take effect at the time specified therein or, if the time be not specified, upon receipt by the Company thereof, and the acceptance of such resignation, unless required by the terms thereof, shall not be necessary to make such resignation effective.  In the event that any Director resigns, is removed from the Board or dies, a successor Director shall be elected in accordance with Section 6.2 to fill such vacancy.

6.6    Authority and Duties of the Board and Board Committees.

(a)    Except as set forth in Sections 6.10(a), 6.10(b), 6.10(c), 6.10(d), and 9.2(b), the Board, acting as a body in accordance with the affirmative votes required by this Agreement (and no Director, individually), shall have the right, power and authority to oversee the business and affairs of the Company and to do all things necessary to manage the business of the Company, and the Board is hereby authorized to take any action of any kind and to do anything and everything the Board deems necessary or appropriate in accordance with the provisions of this Agreement and applicable law.

(b)    The Board may from time to time designate one or more committees.  To the extent authorized by the Board and permitted by this Agreement and applicable law, a committee shall have and may exercise specific powers of the Board in the management of the business and affairs of the

Company.  For so long as Nexus has the right to appoint two (2) Directors pursuant to Section 6.2(b) (the "Nexus Minimum Holdings"), Nexus shall have the right to have one Director on each committee of the Board.

6.7     Meetings; Telephonic Meetings.

(a)     The Board and any committee thereof may hold regular or special meetings within or outside of the State of Delaware.  Regular meetings of the Board shall be held at least quarterly, and regular or special meetings of the Board or any committee thereof may otherwise be held from time to time, in each case at such time and at such place as may be determined by a majority of all the Directors serving on the Board or on such committee, as applicable; provided that at least seventy-two (72) hours advance notice of any such meeting shall be provided to each Director serving on the Board or such committee.  Any Director may call a special meeting of the Board or of a committee thereof, as applicable, on notice of not less than seventy-two (72) hours' advance notice to all the other Directors serving on the Board or such committee.  Any notice of a regular or special meeting of the Board or a committee thereof shall be given in writing to each applicable Director, at the address provided by such Director to the Board or at such other address that such Director shall have advised the Company to use for the purpose of delivering notice, or via electronic mail.  Any such notice provided shall be deemed to be given when delivered in accordance with this Section 6.7(a).  Each notice of a regular or special meeting of the Board shall set forth the time, date, location and agenda for the meeting in reasonable detail and attach the relevant papers to be discussed at the meeting and all available data and information relating to matters to be discussed at the meeting.

(b)     Any Director that is entitled to notice of a meeting of the Board or any committee thereof may waive such notice in writing, whether before or after the time of such meeting.  Attendance by a Director at a meeting of the Board or any committee thereof shall constitute a waiver of notice of such meeting by such Director, except when such Director attends such meeting for the express purpose of objecting, at the beginning of such meeting, to the transaction of any business at such meeting because such meeting is called or convened in violation of this Agreement or any applicable law.

(c)     Directors may participate in and hold a meeting of the Board by means of conference telephone or similar communications equipment by means of which all Persons participating in the meeting can hear each other.  Participation in a meeting by such means shall constitute presence in Person at the meeting, except where a Director participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

6.8     Quorum; Acts of the Board and Board Committees.

(a)     At all meetings of the Board, a majority of the Directors then serving on the Board, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings and disregarding the Industry Director for this purpose, shall constitute a quorum for the transaction of business by the Board.  At all meetings of any committee of the Board, a majority of the Directors then serving on such committee, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings and disregarding the Industry Director for this purpose, shall constitute a quorum for the transaction of business by such committee.  Each Director, whether in respect of matters brought before the Board or any committee thereof, shall have one (1) vote in respect of each matter submitted for consideration and approval, except that the Industry Director shall not have any votes.  Except as otherwise provided in this Agreement or required by applicable law, the approval of a majority of the Directors present at any meeting of the Board (disregarding the Industry Director for this purpose), shall be required for any act of the Board.  Except as otherwise provided in

35

this Agreement or required by the Board or applicable law, the scope of authority of any committee of the Board (including the form of charter of any such committee) and the Directors whose approval is required for any act of any committee of the Board shall be specified by the Board in resolutions establishing such committee approved in accordance with Section 6.6(b).  If a quorum shall not be present at any meeting of the Board or any committee thereof, the Directors present at such meeting may adjourn the meeting from time to time, with notice of the time and place of the adjourned meeting provided to any Director who is not in attendance at the meeting, until a quorum shall be present.  If a Nexus Director's presence is required to establish a quorum pursuant to this Section 6.8(a), and no Nexus Director is present for two (2) consecutive meetings called for the same purpose pursuant to written notice provided to all of the Directors pursuant to Section 6.7(a), then the presence of a Nexus Director shall no longer be required to constitute a quorum for the next meeting called for such purpose.

(b)      Any action required or permitted to be taken at any meeting of the Board or any action that may be taken at a meeting of a committee of the Board may be taken without a meeting if the action is taken in writing (including by electronic transmission) by all of the Directors of the Board or of such committee, as the case may be, who are entitled to vote on such action and the writing or writings are filed with the minutes of proceedings of the Board or such committee.

(c)      For so long as Nexus holds the Nexus Minimum Holdings, Nexus shall designate a chair of the Board (the "Chairman") who shall preside at all meetings of the Board.  The initial Chairman shall receive compensation terms substantially consistent with those [attached as Annex I to this Agreement].  After Nexus no longer holds the Nexus Minimum Holdings, the Board shall elect the chair of the Board who shall preside at all meetings of the Board.

6.9    Observer Rights.  A Member with a Designation Right may designate a non-voting observer to the Board (the "Observer") in accordance with Section 6.3(c), which Observer will be entitled (i) to attend all meetings of the Board and all committees and subcommittees thereof and (ii) to participate in the discussion of matters addressed at such meetings (including telephonically, if the Observer elects).    Subject to such restrictions as the Board may establish (which may include a requirement that the Observer enter into a confidentiality agreement with the Company in form and substance satisfactory to the Board), the Observer shall receive copies of all materials provided to the members of the Board and all committees and subcommittees thereof in connection with such meetings at the same time and in the same manner as such materials are provided to such members.  Notwithstanding the foregoing, (x) the Board or any committee of it may restrict any Person's attendance as an Observer at any portion of a meeting if the Board or any committee of it makes a good-faith determination that such Person has a conflict of interest with respect to the subject matter of such portion of the meeting or that the attendance by such Person at such portion of the meeting would cause the Company to lose the benefit of protection in respect of what would otherwise be privileged communications, and (y) the failure of any Observer to attend any meeting of the Board or any committee of it shall not prevent any such meeting from proceeding or otherwise affect the validity of such meeting or any actions taken at such meeting.  The Observer shall receive reimbursement from the Company with respect to meetings of the Board or committees or subcommittees thereof for reasonable out-of-pocket travel expenses incurred by the Observer in connection with attendance at any and all such meetings to the same extent, and on the same general terms, as other members of the Board receive such reimbursement.

6.10    Special Approval Requirements.

(a)      Notwithstanding anything to the contrary contained in this Agreement, and subject to any applicable approval requirements set forth in Section 6.10(b), Section 6.10(c) and Section 6.10(d), the following actions by the Company or any of its Subsidiaries shall require the approval of,

36

and shall be authorized upon obtaining the approval of, each of (i) the Board and (ii) the holders of a majority of the outstanding Voting Interests:

        (i)      Any Sale of the Company other than a Drag-Along Sale consummated pursuant to Section 5.4 or Section 5.5 hereof; and

        (ii)     Any agreement or commitment to do the foregoing.

        (b)     The Company and its Subsidiaries will not enter into any agreement or other transaction with any Affiliates or Members of the Company (including portfolio companies of any Members) (each, an "Interested Party") without the approval of a majority of the Directors then serving on the Board, which majority must include at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings and is not an Interested Party, in each case who are not affiliated with such Interested Party or any of such Interested Party's executive officers, directors or Affiliates. For the avoidance of doubt, such approval shall not be required for (i) transactions pursuant to Section 5.6 hereof; (ii) the exchange of all or part of indebtedness into equity securities of the Company from time to time so long as such exchange is approved by the Board and offered to all equity holders who are debt holders of such instrument on a *pro rata* basis; (iii) to approve transactions with Acosta, Inc. (or any of its Affiliates) or an operating advisor of Nexus so long as the terms of any such transaction are on arm's length terms, and (iv) the Consulting Agreement.

        (c)     The commencement of any liquidation, dissolution or voluntary Bankruptcy, administration, insolvency proceeding, recapitalization or reorganization of the Company or its Subsidiaries in any form of transaction, any arrangement with creditors, or the consent to entry of an order for relief in an involuntary case, or the conversion of an involuntary case to a voluntary case, or the consent to any plan of reorganization in any involuntary or voluntary case, or the consent to the appointment or taking possession by a receiver, trustee or other custodian for all or any portion of its property, or otherwise seek the protection of any applicable Bankruptcy or insolvency law shall require the approval of at least five (5) Directors (which shall not include the Industry Director), including at least one Nexus Director for so long as Nexus holds the Nexus Minimum Holdings.

        (d)     Notwithstanding anything to the contrary contained in this Agreement, the Company and its Subsidiaries will not take any of the following actions (each, a "Significant Approval Matter") without the approval of (i) at least one Director that is not a Nexus Director, the CEO Director, the Industry Director or a Director with respect to which Nexus or any of its Affiliates has been assigned Designation Rights pursuant to Section 6.3(b), and (ii) each Significant Holder:

        (i)      approving the annual budget for any fiscal year of the Company and its Subsidiaries and the business plan;

        (ii)     appointing, removing or making any changes to the compensation of, the Chief Executive Officer of the Company or any employee who reports directly to the Chief Executive Officer of the Company;

        (iii)    entering into, amending or terminating any material contract that is not previously contemplated in the annual budget;

        (iv)    the establishment, adoption, entering into amendment or modification to (including increasing the authorized number of equity interests issuable thereunder) or termination of any employee incentive plan of the Company or any of its Subsidiaries;

(v)    the repurchase, redemption or other retirement of any equity interests of the Company or any of its Subsidiaries other than repurchases by the Company of securities held by employees of the Company or any of its Subsidiaries upon termination of employment pursuant to the terms of any employee incentive plan or Award Agreement approved by the Board;

(vi)    the guarantee, assumption, incurrence or refinancing of indebtedness for borrowed money by the Company or any of its Subsidiaries other than: (A) indebtedness incurred in the ordinary course of business under the First Lien Credit Agreement; and (B) trade indebtedness incurred in the ordinary course of business by the Company or any of its Subsidiaries;

(vii)    incurring or permitting to exist, any encumbrance on any material assets of the Company or its Subsidiaries, or permitting the Company or its Subsidiaries to provide or give any loans, guarantees or security in favor of any Person, other than in the ordinary course of business in line with the First Lien Credit Agreement;

(viii)    initiating, conducting, or entering into any settlement agreement or arrangement with respect to, any litigation, claims, suits, investigations, arbitrations or mediation proceedings material to the business of the Company and its Subsidiaries, taken as a whole, in excess of $[•] million;

(ix)    fundamental changes to the scope or nature of the Company's or any of its Subsidiaries' business and operations;

(x)    any Sale of the Company other than a Drag-Along Sale consummated pursuant to Section 5.4 or Section 5.5 hereof;

(xi)    any acquisition or disposition of a brand;

(xii)    the determination of Fair Market Value;

(xiii)    the making of distributions with respect to any equity interests of the Company or any of its Subsidiaries;

(xiv)    any Conversion as set forth in Section 6.11(a) hereof;

(xv)    the termination of the Consulting Agreement; and

(xvi)    any agreement or commitment to do any of the foregoing, whether by amendment, consolidation or otherwise.

6.11    Qualified IPO; Conversion to a Corporation.

(a)    In connection with a Qualified IPO, the Board may cause the Company to reorganize into a corporation or use any other structure or means to effect such a Qualified IPO or listing, including by the conversion, recapitalization, reorganization or exchange of securities of the Company or any portion of the Company or any Subsidiary of the Company into one or more corporations, limited liability companies, limited partnerships or other business entities (such conversion, a "Reorganization"), in each case without the need to obtain approval from the holders of the outstanding Voting Interests; provided that the Company shall not consummate any Reorganization unless the Board reasonably expects the Qualified IPO to be consummated.  The Members shall take all actions reasonably requested

by the Board in connection with the consummation of such Reorganization, including consenting to, voting for and waiving any dissenters rights, appraisal rights or similar rights and participating in any exchange or other transaction required in connection with such Reorganization. No Member shall have any right to vote, consent to or approve any Reorganization. The Company shall pay any and all reasonable organizational, legal and accounting expenses and filing fees incurred by the Company or the Members in connection with such Reorganization and the Board may select, on behalf of the Company, any accounting firm, legal counsel, underwriters or any other providers in connection with such Reorganization.

(b)    In connection with any Reorganization involving a Transfer of Voting Interests, Warrants or other Securities, each Member agrees to the Transfer of its Voting Interests or, Warrants or other Securities in accordance with the terms of conversion or exchange, as applicable, as provided by the Board, and to execute in the name and on behalf of such Member any agreement, certificate, instrument or document to be delivered by the Member in connection with any such Reorganization as determined by the Board.

(c)    Each of the Members shall take all necessary or desirable actions reasonably requested by the Board in connection with the consummation of a Qualified IPO, including compliance with the requirements of all laws and regulatory bodies that are applicable or that have jurisdiction over such Qualified IPO.

6.12    <u>Officers</u>.  The Board shall appoint such other officers and agents of the Company as it shall from time to time deem necessary and may assign any title to such officer or agent as it deems appropriate.  Such officers and agents shall have such terms of employment, shall receive such compensation and shall exercise such powers and perform such duties as the Board shall from time to time determine.  Any number of offices may be held by the same Person.  The Board shall have the authority to remove any officers or agents with or without cause.

6.13    <u>Officers as Agents; Duties of Officers</u>.  The officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business, and the actions of the officers taken in accordance with such powers shall bind the Company.  Each officer of the Company shall owe the same fiduciary duty to the Company and the Members that such individual would owe to a corporation and its stockholders thereof under the laws of the State of Delaware.

6.14    <u>Powers of Members</u>.  Except as otherwise specifically provided by this Agreement or as required by the Act, no Member shall have the power to act for or on behalf of or to bind, the Company. For the avoidance of doubt, with respect to actions taken by Members pursuant to this Agreement, the Members may act without a meeting by written consent signed by the holders of Voting Interests having not fewer than the minimum number of votes that would be necessary to authorize or take such action at a meeting.

6.15    <u>Confidentiality</u>.  No Member shall, (a) without the Company's prior written consent, disclose to any Person other than an Exempt Person of such Member any confidential, non-public information of the Company or any Member obtained from the Company or one of its Affiliates concerning, without limitation, the following:  (i) any dealings between the Company or any of its Subsidiaries, on the one hand, and any material customer or vendor or any employee, director, officer, Director or Member of the Company or such Subsidiary, on the other hand; (ii) any financial information or results of operations of the Company or any of its Subsidiaries; or (iii) any business plans, pricing information, customer information or regulatory information of the Company or any of its Subsidiaries (collectively, "<u>Company Confidential Information</u>"), or (b) disclose to any Person other than an Exempt

Person of such Member any confidential, non-public information obtained from the Company or one of its Affiliates (including the Members) relating to another Member (the "Member Confidential Information") without such Member's prior written consent; provided, however, that, notwithstanding anything to the contrary in the foregoing, neither Company Confidential Information nor Member Confidential Information shall include, with respect to any Person, any information that:  (i) is or becomes generally available to the public other than as a result of a disclosure directly or indirectly by any Person or any of its Affiliates or any of their respective directors, officers, managers, partners, members, employees, attorneys, advisors or other representatives (collectively, "Representatives") in breach of this Section 6.15; (ii) is disclosed by another Person not known by the recipient to be under a confidentiality agreement or obligation to the Company or such other Member not to disclose such information; or (iii) is independently developed by such Person or any of its Affiliates or any of their respective Representatives without derivation from, reference to or reliance upon any Company Confidential Information or Member Confidential Information, as the case may be; provided further that, notwithstanding anything to the contrary in this Agreement, any Member may disclose any Company Confidential Information or Member Confidential Information, as the case may be, (A) to the extent required by any applicable law, statute, rule or regulation or any request, order or subpoena issued by any court or other governmental entity; provided that, to the extent permitted by law, the Member required to make such disclosure shall provide to the Board prompt notice of such disclosure; provided further that to the extent such Member or its Representatives are subject to examination by a regulatory or self-regulatory authority, bank examiner or auditor, notice to the Board shall not be required where disclosure is in connection with a routine audit or examination by, or a blanket document request from, such auditor or a regulatory or governmental entity that does not reference the Company, its Subsidiaries or this Agreement, (B) as part of such Member's normal reporting, rating or review procedure (including normal credit rating or pricing process) or in connection with such Member's or its Affiliates' normal fund raising, marketing, informational or reporting activities or (C) to any bona fide prospective purchaser of the equity or assets of such Member or its Affiliates or the Voting Interests held by such Member or prospective merger partner of such Member or its Affiliates, in each case other than a Competitor unless approved by the Board; provided that in the case of this clause (C) prior written notice of any disclosure of Company Confidential Information or Member Confidential Information is given to the Company and such prospective purchaser or merger partner agrees in writing prior to such disclosure to be bound by the provisions of this Section 6.15 (which agreement shall provide that the Company shall be a third party beneficiary with full enforcement rights thereunder).  Each Member shall be responsible for any breach of this Section 6.15 by any of its Representatives and agrees to use commercially reasonable efforts to cause its Representatives to treat all Company Confidential Information and Member Confidential Information in the same manner as such Member would generally treat its own confidential, non-public information.

6.16    Regulated Holders.  Notwithstanding anything to the contrary in this Agreement, any portion of a Regulated Holder's Voting Interests in excess of 4.99% of the total issued and outstanding Voting Interests (excluding, for purposes of calculating this percentage, portions of any Voting Interests that are non-voting securities pursuant to this Agreement) shall be automatically deemed to be, and subject to the restrictions of, a nonvoting security for purposes of the U.S. Bank Holding Company Act and 12 C.F.R. Part 225 (Subpart A) and shall not be entitled to vote or consent on any matter other than matters permissible for nonvoting securities pursuant to 12 C.F.R. § 225.2(q)(2).

6.17    Partnership Representative.  For purposes of Code Section 6223(a) (and any similar provision of state, local or foreign law), the Partnership Representative shall be a Person designated by the Board (and, for each taxable year of the Company, the Company shall appoint an individual subject to the control of, and selected by, the Partnership Representative as the Designated Individual, and the Company shall revoke such appointment if and only if instructed to do so by the Partnership Representative or such individual ceases to be subject to the control of the Partnership Representative).

The Partnership Representative and Designated Individual are specifically directed and authorized to take whatever steps may be necessary or desirable to perfect such designations, including filing any forms or documents with the Internal Revenue Service and taking such other action as may from time to time be required under the Regulations.  Expenses incurred by the Partnership Representative or Designated Individual acting in its capacity as such shall be borne by the Company.  Such expenses shall include fees of attorneys and other tax professionals, accountants, appraisers and experts, filing fees and reasonable out-of-pocket costs.  Each Member (and each former Member) agrees to use commercially reasonable efforts to provide the Partnership Representative and Designated Individual all information required to facilitate the making of an election under Code Section 6226 (or any similar provision of state or local law) or to facilitate the making of the modifications described in Code Section 6225(c) (or any similar provision of state or local Law). The Partnership Representative and Designated Individual shall comply with any reasonable request of a Member to modify any partnership audit adjustment attributable to such Member by application of Code Section 6225(c) (or any similar provision of state or local law).  The Partnership Representative and Designated Individual shall keep the Members fully informed of any inquiry, examination or proceeding, including promptly notifying Members of the beginning and completion of an administrative proceeding involving the Company promptly upon such notice being received by the Partnership Representative or Designated Individual.  The provisions contained in this Section 6.17 shall survive the termination of the Company and the Transfer of any Interests.

## Article VII
### Powers, Duties and Restrictions of the Company and the Members; Other Provisions Relating to the Members

7.1    Powers of the Company.  In furtherance of the purposes set forth in Section 2.3 and subject to the provisions of Article VI, the Company shall possess the power to do anything not prohibited by the Act, by other applicable law or by this Agreement, including but not limited to the following powers:  (a) to undertake any of the activities described in Section 2.3; (b) to make, perform and enter into any contract, commitment, activity or agreement relating thereto; (c) to open, maintain and close bank and money market accounts, to endorse, for deposit to any such account or otherwise, checks payable or belonging to the Company from any other Person, and to draw checks or other orders for the payment of money on any such account; (d) to hold, distribute and exercise all rights (including voting rights), powers and privileges and other incidents of ownership with respect to assets of the Company; (e) to borrow funds, issue evidences of indebtedness and refinance any such indebtedness in furtherance of any or all of the purposes of the Company; (f) to employ or retain such agents, employees, managers, accountants, attorneys, consultants and other Persons necessary or appropriate to carry out the business and affairs of the Company, and to pay such fees, expenses, salaries, wages and other compensation to such Persons; (g) to bring, defend and compromise actions, in its own name, at law or in equity; and (h) to take all actions and do all things necessary or advisable or incident to carry out the purposes of the Company, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the Company's business, purposes or activities.

7.2    Compensation of the Members and Directors.  The Members shall not be entitled to any compensation for their services hereunder.  Each Director who is not an employee of any Member or such Member's Affiliates shall be entitled to a reasonable fee be paid by the Company in an amount determined by the Board and shall be reimbursed for the reasonable out-of-pocket expenses, if any, incurred in connection with attendance at each meeting of the Board and at each meeting of a committee of the Board of which they are members, as determined by the Board.  All other Directors may be reimbursed for all reasonable out-of-pocket expenses incurred in connection with each meeting of the Board or each meeting of a committee of the Board, as determined by the Board.

7.3    <u>Cessation of Status as a Member</u>.  A Member shall cease to be a member of the Company (a) upon the Bankruptcy or involuntary dissolution of such Member, <u>provided</u> that thereafter such Person shall only be entitled to the economic rights of an assignee of Voting Interests under the Act, or (b) upon the Transfer of all of such Member's Voting Interests.

7.4    <u>Other Activities of the Members</u>.  Notwithstanding any duty otherwise existing at law or in equity, each of the Members and its Affiliates (including any Director appointed via a Designation Right of such Member) may have other business interests and may engage in any business or trade, profession, employment or activity whatsoever (regardless of whether any such activity competes, directly or indirectly, with the business or activities of the Company or any of its Subsidiaries), for its own account, or in partnership or participation with, or as an employee, officer, director, stockholder, member, manager, trustee, general or limited partner, agent or representative of, any other Person, and no Member or Director shall be required to devote its entire time (business or otherwise), or any particular portion of its time (business or otherwise) to the business of the Company or any of its Subsidiaries. Neither the Company nor any Member nor Director, nor any Affiliate of any thereof, by virtue of this Agreement, shall have any rights in and to any such independent venture or the income or profits derived therefrom.  Notwithstanding any duty otherwise existing at law or in equity, no Member, representative of such Member, or Director shall have any obligation hereunder to present any business opportunity to the Company, even if the opportunity is one that the Company might reasonably have pursued or had the ability or desire to pursue, in each case, if granted the opportunity to do so and, to the fullest extent permitted by law, no Member shall be liable to the Company or any other Member (or any Affiliate thereof) for breach of any fiduciary or other duty relating to the Company (whether imposed by applicable law or otherwise), by reason of the fact that such Member pursues or acquires such business opportunity, directs such business opportunity to another Person or fails to present such business opportunity or information regarding such business opportunity, to the Company.

## Article VIII
### Books, Records and Accounting; Information Rights

8.1    <u>Books of Account; Access</u>.  The Board shall cause to be entered in appropriate books, kept at the Company's principal place of business, all transactions of or relating to the Company.  The books and records of the Company shall be made and maintained, and the financial position and the results of operations recorded, at the expense of the Company, in accordance with such method of accounting as is determined by the Board.  Each Member, for any purpose reasonably related to such Member's interest as a Member in the Company, shall have access to and the right, at such Member's sole cost and expense, to inspect and copy such books and records and to discuss the affairs, finances and accounts of the Company and its Subsidiaries with the officers, employees and the other Representatives of the Company and its Subsidiaries during normal business hours; <u>provided</u> that the inspecting Member shall be responsible for any out-of-pocket costs or expenses incurred by the Company in making any books and records available for inspection.

8.2    <u>Deposits of Funds</u>.  All funds of the Company shall be deposited in its name in such checking, money market or other account or accounts as the Board may from time to time designate; withdrawals shall be made therefrom on such signature or signatures as the Board shall determine.

8.3    <u>Information Rights</u>.

(a)    Each Member who agrees to such customary confidentiality restrictions as the Company shall reasonably request shall have the right to receive the following information (which right the Company may satisfy by providing access to each Member to a confidential, secure datasite (which website shall have a system of email notification of new postings and may require confirmation by

viewers of the site of the confidentiality obligations set forth in Section 6.15, a "Secure Site")), and each Member may share and discuss such information (along with any other information provided to Members pursuant to this Agreement and otherwise made available to Members via the Secure Site) with its Affiliates, directors, officers, partners, managers, stockholders, employees, investors and advisors as well as any bona fide prospective purchaser of Voting Interests or indebtedness for borrowed money incurred by the Company or its Subsidiaries and held by such Member that (x) is not a Competitor and (y)(i) has entered into, and delivered to the Company, a confidentiality agreement regarding the treatment of such information (and for the avoidance of doubt, at its election, the Company may share and discuss such information with any prospective purchaser of Voting Interests) or (ii) has entered into, and delivered to such Member, a confidentiality agreement regarding the treatment of such information containing provisions at least as restrictive as those of a similar confidentiality agreement with the Company and provides that the Company shall be a third party beneficiary with full enforcement rights thereunder:

(i)    within (x) one hundred fifty (150) days after the end of the first Fiscal Year ending after the Effective Date and (y) one hundred twenty (120) days after the end of each Fiscal Year ending thereafter, copies of annual consolidated financial statements of the Company and its Subsidiaries as of the end of such Fiscal Year, which financial statements shall (i) be prepared in accordance with GAAP, and (ii) be audited by a nationally recognized accounting firm approved by the Board; and

(ii)    As soon as available, and in any event within (x) one hundred twenty (120) days after the end of each of the first fiscal quarter ending after the Effective Date and (y) sixty (60) days after the end of each of the first three (3) fiscal quarters of each Fiscal Year ending thereafter, or such earlier date as the Company or any of its Subsidiaries may be required to deliver such information to the Company's lenders under any credit agreement, indenture or similar agreement with respect to indebtedness for borrowed money of the Company or any of its Subsidiaries, consolidated balance sheets of the Company and its subsidiaries as of the end of such period, and consolidated statements of income and cash flows of the Company and, if applicable, its Subsidiaries for the period then ended prepared in accordance with GAAP, except as otherwise noted therein, and subject to the absence of footnotes and to year-end adjustments (collectively, the "Quarterly Financials").

(b)    The Company shall host, and each Member holding at least one percent (1%) of the Voting Interests shall have access to, regular conference calls with senior officers of the Company to discuss the results of operations for the relevant reporting period, which calls shall include a reasonable and customary question and answer session.  Each such call shall be hosted no later than ten (10) Business Days after the Company furnishes the corresponding annual or quarterly report in accordance with this Section 8.3. Unless otherwise determined by the Board, the first conference call shall not be held until at least one (1) year following the Effective Date.

(c)    For so long as the Voting Interests remain outstanding and during any period during which the Company is not subject to Section 13 or Section 15(d) of the Exchange Act, as amended, nor exempt therefrom pursuant to Rule 12g3-2(b), the Company shall furnish to the holders of Voting Interests and, upon their request, prospective purchasers of the Voting Interests, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

(d)    During the term of the Company's existence, there shall be maintained in the Company's principal office or at the office of the Company's agents and representatives all records required to be kept pursuant to the Act, including (whether or not so required) a current list of the names, addresses and Voting Interests held by each of the Members (including the dates on which each of the Members became a Member), copies of federal, state and local information or income tax returns for

each of the Company's tax years, copies of this Agreement and each of the Company's organizational documents, including all amendments thereto and restatements thereof, and correct and complete books and records of account of the Company.  Prior to any termination of the Company's existence, the Company shall use all reasonable efforts to ensure that, for a period of six (6) years after any such termination, such information, to the extent still in existence and available, may be obtained by a Member's request in writing to a legal advisor or agent of the Company to be designated prior to any such termination, with the cost (as reasonably determined by such legal advisor or agent) of accessing and providing such information being borne by the requesting Member.

(e)      The rights of each Member granted pursuant to Sections 8.3(a) through 8.3(d) of this Agreement shall be freely Transferable by such Member in connection with any Transfer of its Voting Interests otherwise permitted in accordance with Article V.

(f)      The Company shall provide to each Director and, subject to the limitations set out in Section 6.9, each Observer, copies of any materials distributed or made available to any other Directors or Observers.  A Director or Observer shall be entitled to share and discuss with directors, officers and employees of the Member that appointed such Director or Observer any materials or other information obtained by such person in such capacity.

(g)      Promptly following any request therefor, the Company shall use its reasonable efforts to furnish to any Member information and documentation reasonably requested by such Member for purposes of such Member's compliance with applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT ACT of 2001 and 31 C.F.R. § 1010.230, and/or other due diligence related to regulatory requirements and/or reputational risk.

8.4      Information Rights of the Company.  As a result of the transactions contemplated by the RSA, after which the Company will have more than one regarded owner for U.S. federal income tax purposes, the Members agree to treat the Company as a newly formed partnership and the Members as partners for U.S. federal income tax purposes and shall file all tax returns accordingly. The Company may from time to time (including in connection with the admission of a new Member), but a Member may be compelled to answer no more frequently than once per calendar quarter (unless, with respect to clause (i) hereof, required by applicable law), reasonably request of any or all Members (at the expense of the Company) information (i) needed by the Company to comply with applicable law and/or (ii) regarding such Member's "accredited investor" status (within the meaning of Regulation D promulgated under the Securities Act).

## Article IX
## Term and Dissolution

9.1      Term.  The legal existence of the Company shall be perpetual, unless the Company is sooner dissolved as a result of an event specified in the Act or pursuant to a provision of this Agreement.

9.2      Dissolution.

(a)      The Company shall be dissolved and its affairs wound up upon the first to occur of the following:

(i)      The entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act;

(ii)    Approval of the dissolution of the Company by the Board pursuant to <u>Section 6.10(c)</u> hereof;

(iii)    The resignation, expulsion, Bankruptcy or dissolution of the last remaining Member or the occurrence of any other event which terminates the continued membership of the last remaining Member in the Company, unless the business of the Company is continued without dissolution in accordance with the Act; and

(iv)    The occurrence of any other event that causes the dissolution of a limited liability company under the Act, unless the Company is continued without dissolution in accordance with the Act.

(b)    Upon dissolution of the Company, the business of the Company shall continue for the sole purpose of winding up its affairs.  The winding up process shall be carried out by the Members unless the dissolution is caused by an event of withdrawal by the sole remaining Member, in which case the Board shall appoint a liquidating trustee.  Otherwise, a liquidating trustee may be appointed for the Company by vote of a majority in Percentage Interest of the Members holding Voting Interests (the Members or such liquidating trustee appointed by the Board or the Members is referred to herein as the "<u>Liquidator</u>").  In winding up the Company's affairs, every effort shall then be made to dispose of the assets of the Company in an orderly manner, having regard to the liquidity, divisibility and marketability of the Company's assets.  The Liquidator shall not be entitled to be paid by the Company any fee for services rendered in connection with the liquation of the Company, but the Liquidator (whether one or more Members or a liquidating trustee) shall be reimbursed by the Company for all third-party costs and expenses incurred by it in connection therewith and shall, to the fullest extent permitted by law, be indemnified by the Company with respect to any action brought against it in connection therewith by applying, *mutatis mutandis*, the provisions of <u>Section 12.1</u>.

9.3    <u>Application and Distribution of Assets</u>.  Upon a windup of the Company, the Company shall distribute its assets as follows:

(a)    <u>first</u>, to creditors of the Company, including Members and Directors who are creditors, to the extent permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for the payment thereof) and including any contingent, conditional and unmatured liabilities of the Company, taking into account the relative priorities thereof;

(b)    <u>second</u>, to the Members and former Members in satisfaction of liabilities under the Act for distributions to such Members and former Members; and

(c)    <u>third</u>, to the remainder of the Members in accordance with <u>Section 4.1</u>.

9.4    <u>Termination of the LLC</u>.  Subject to <u>Section 2.7</u>, the separate legal existence of the Company shall terminate upon a Reorganization or when all assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Members in the manner provided for in this <u>Article IX</u> and a certificate of cancellation of the Certificate shall have been filed in the manner required by Section 18-203 of the Act.

**Article X**
**Representations and Warranties of Members**

Each Member severally, but not jointly, represents and warrants as of the Effective Date to the Company and the other Members that:

10.1    <u>Authority</u>.  Each such Member that is a corporation or a limited liability company or a partnership is an entity duly formed and validly existing under the laws of the jurisdiction of its formation and the execution, delivery and performance by such Member of this Agreement have been duly authorized by all necessary corporate, limited liability company or partnership action, as applicable. Each such Member that is an individual is an individual with full legal capacity under the laws of his jurisdiction of domicile and has the capacity to execute, deliver and perform this Agreement, and this Agreement has been duly executed and delivered by such Member.

10.2    <u>Binding Obligations</u>.  This Agreement has been duly and validly executed and delivered by such Member and constitutes the binding obligation of such Member, enforceable against such Member in accordance with its terms.

10.3    <u>No Conflict</u>.   The execution, delivery and performance by such Member of this Agreement will not, with or without the giving of notice or the lapse of time or both, (a) violate any provision of law to which such Member is subject, (b) violate any order, judgment or decree applicable to such Member or (c) conflict with or result in a breach or default under, any term or condition of its certificate of incorporation or bylaws, certificate of limited partnership or partnership agreement, certificate of formation or limited liability company agreement, as applicable or, except where such conflict, breach or default would not reasonably be expected to, individually or in the aggregate, have an adverse effect on such Member's ability to satisfy its obligations hereunder.

10.4    <u>Purchase Entirely for Own Account</u>.   The Voting Interests to be acquired by such Member will be acquired for investment for such Member's own account, not as a nominee or agent and not with a view to the resale or distribution of any part thereof; such Member has no present intention of selling, granting any participation in or otherwise distributing the same; and such Member does not have any contract, undertaking, agreement or other arrangement with any Person to sell, transfer or grant participation to such Person or to any third Person, with respect to any of the Voting Interests.

10.5    <u>No Registration</u>.  Such Member understands that the Voting Interests, at the time of issuance, will not be registered under the Securities Act by reason of a specific exemption from the registration provisions of the Securities Act, the availability of which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of such Member's representations as expressed herein or otherwise made pursuant hereto.

10.6    <u>Investment Experience</u>.  Such Member confirms that the Member has such knowledge and experience in financial and business matters that such Member is capable of evaluating the merits and risks of an investment in the Voting Interests and of making an informed investment decision and understands that (a) this investment is suitable only for an investor that is able to bear the economic consequences of losing its entire investment, (b) the acquisition of Voting Interests hereunder is a speculative investment that involves a high degree of risk of loss of the entire investment and (c) there are substantial restrictions on the transferability of and there will be no public market for, the Voting Interests.

10.7    <u>Accredited Investor</u>.  Such Member is an "accredited investor" within the meaning of Regulation D, Rule 501(a), promulgated by the SEC under the Securities Act.

10.8    <u>Restricted Securities</u>.  Such Member understands that the Voting Interests may not be sold, transferred or otherwise disposed of without registration under the Securities Act or an exemption

therefrom, and that in the absence of either an effective registration statement covering such Voting Interests or an available exemption from registration under the Securities Act, the Voting Interests must be held indefinitely.  In particular, such Member is aware that the Voting Interests may not be sold pursuant to Rule 144 promulgated by the SEC under the Securities Act unless all of the conditions thereof are met.

10.9    Nonreliance.  No promise, agreement, statement or representation that is not expressly set forth in this Agreement or in any other agreement by and among any of the Company, the Members or their respective Affiliates has been made to such Member by any other Member or any other Member's Affiliates, counsel, agent or any other Person with respect to the terms set forth in this Agreement, and such Member is not relying upon any such promise, agreement, statement or representation of any other Member or any other Member's Affiliates, counsel, agent or any other Person.

## Article XI
## Allocation of Net Income and Net Loss

11.1    General.

(a)     After giving effect to the special allocations set forth in Section 11.2, Net Income or Net Loss and as and to the extent necessary items of income, gain, loss and deduction for each Fiscal Year or other taxable period shall be allocated among the Members (and credited and debited to their Capital Accounts) so as to cause, to the extent possible, each Member's Capital Account balance, as increased by the amount of such Member's share of partnership minimum gain (as defined in Regulation § 1.704-2(g)(1) and (3)) and the amount of such Member's share of partner nonrecourse debt minimum gain (as defined in Regulation § 1.704-2(i)(5)), to equal the amount that would be distributed to such Member if the Company sold all of its assets for their Gross Asset Value in cash, paid all of its liabilities to the extent required by their terms (limited, with respect to each nonrecourse liability (as defined in Regulation § 1.704-2(b)(3)) or partner nonrecourse debt (as defined in Regulation § 1.704-2(b)(4)), to the Gross Asset Value of the assets securing each such liability), and distributed its cash to the Members pursuant to Section 9.3 in complete liquidation.  For purposes of allocating Net Income and Net Loss and all other items of income, gain, deduction and loss pursuant to this Section 11.1 and Section 11.2, all outstanding Incentive Interests shall be treated as vested.

(b)     Notwithstanding any provision of Section 11.1(a), no allocation of Net Loss shall be made to a Member if it would cause the Member to have a negative balance in its Adjusted Capital Account.  Allocations of Net Loss that would be made to a Member but for this Section 11.1(b) shall instead be made to other Members pursuant to Section 11.1(a) to the extent not inconsistent with this Section 11.1(b).

11.2    Special Allocations.  The following special allocations shall be made in the following order of priority:

(a)     Losses, deductions or expenditures that are attributable to a particular partner nonrecourse liability (as defined in Regulation § 1.704-2(b)(4)) shall be allocated to the Member that bears the economic risk of loss for the liability in accordance with the rules of Regulation § 1.704-2(i).

(b)     Losses, deductions or expenditures that are attributable to nonrecourse liabilities (as defined in Regulation § 1.704-2(b)(3)) for any Fiscal Year or other taxable period shall be allocated to each Member in proportion to its ownership percentage of the total number of Interests outstanding.

(c)    If during a Fiscal Year or other taxable period there is a net decrease in "partnership minimum gain" (within the meaning of Regulation § 1.704-2(b)(2) and 1.704-2(d)) with respect to the Company, then there shall be allocated to each Member items of income and gain of the Company for such Fiscal Year or other taxable period (and, if necessary, for succeeding Fiscal Years or other taxable periods) equal to such Member's share of the net decrease in partnership minimum gain (as determined in accordance with Regulation § 1.704-2(g)(2)), subject to the exceptions set forth in Regulation § 1.704-2(f)(2) and (3), and to any exceptions provided by the Commissioner of the United States Internal Revenue Service pursuant to Regulation § 1.704-2(f)(4) and (5); provided, however, that if the Company has any discretion as to an exception provided pursuant to Regulation § 1.704-2(f)(4) or (5), the Board may exercise reasonable discretion on behalf of the Company.  The items of Company income and gain to be allocated pursuant to this Section 11.2(c) shall be determined in accordance with Regulation § 1.704-2(f)(6) and 1.704-2(j)(2).  The foregoing is intended to be a "minimum gain chargeback" provision as described in Regulation § 1.704-2(f) and shall be interpreted and applied in all respects in accordance with such Regulation.

(d)    If during a Fiscal Year or other taxable period there is a net decrease in partner nonrecourse debt minimum gain (as determined in accordance with Regulation § 1.704-2(i)(3)) with respect to the Company, then, in addition to the amounts, if any, allocated pursuant to the preceding paragraph, any Member with a share of such partner nonrecourse debt minimum gain (determined in accordance with Regulation § 1.704-2(i)(5)) as of the beginning of the Fiscal Year or other taxable period shall, subject to the exceptions set forth in Regulation § 1.704-2(i)(4), be allocated items of income and gain for such Fiscal Year or other taxable period (and, if necessary, for succeeding Fiscal Years or other taxable periods) equal to such Member's share of the net decrease in the partner nonrecourse debt minimum gain.  Allocations pursuant to the preceding sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto.  The items of Company income and gain to be allocated pursuant to this Section 11.2(d) shall be determined in accordance with Regulation § 1.704-2(i)(4) and 1.704-2(j)(2).  The foregoing is intended to be the "chargeback of partner nonrecourse debt minimum gain" required by Regulation § 1.704-2(i)(4) and shall be interpreted and applied in all respects in accordance with such Regulation.

(e)    If during any Fiscal Year or other taxable period a Member unexpectedly receives an adjustment, allocation or distribution described in Regulation § 1.704-1(b)(2)(ii)(d)(4), (5) or (6) that causes or increases a deficit balance in such Member's Adjusted Capital Account, there shall be allocated to such Member items of income and gain (consisting of a pro rata portion of each item of income, including gross income, and gain of the Company for such Fiscal Year or other taxable period) in an amount and manner sufficient to eliminate such deficit as quickly as possible; provided, however, that an allocation pursuant to this Section 11.2(e) shall be made if and only to the extent that such Member would have a deficit in its Adjusted Capital Account after all other allocations provided for in this Agreement have been tentatively made as if this Section 11.2(e) and Section 11.2(f) were not in this Agreement.  The foregoing is intended to be a "qualified income offset" provision as described in Regulation § 1.704-1(b)(2)(ii)(d) and shall be interpreted and applied in all respects in accordance with such Regulation.

(f)    If any Member has a deficit in its Adjusted Capital Account at the end of any Fiscal Year or other taxable period, such Member shall be specially allocated items of Company income and gain (consisting of a pro rata portion of each item of income, including gross income, and gain of the Company for such Fiscal Year or other taxable period) in the amount of such deficit as rapidly as possible; provided, however, that an allocation pursuant to this Section 11.2(f) shall be made if and only to the extent that such Member would have a deficit in its Adjusted Capital Account after all other

allocations provided for in this Agreement have been tentatively made as if this Section 11.2(f) were not in this Agreement.

(g)     To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 732(d), 734(b) or 743(b) is required pursuant to Regulation § 1.704-1(b)(2)(iv)(*m*)(*2*) or (*3*) or, in the case of a distribution to a Member in complete liquidation of its Interest, Regulation § 1.704-1(b)(2)(iv)(*m*)(*4*), to be taken into account in determining Capital Accounts, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of such Company asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with Section 11.1 in the event Regulation § 1.704-1(b)(2)(iv)(*m*)(*2*) or (*3*) applies, or to the Member to whom such distribution in complete liquidation of its Interest was made in the event Regulation § 1.704-1(b)(2)(iv)(*m*)(*4*) applies.

(h)     To the extent that any item of income, gain, loss or deduction has been specially allocated pursuant to Section 11.2(a)-(g) and such allocation is inconsistent with the way in which the same amount otherwise would have been allocated under Section 11.1, subsequent allocations under this Section 11.2(h) shall be made, to the extent possible and without duplication, in a manner consistent with Section 11.2 and taking into account future allocations under Section 11.2(a)-(g) that, although not yet made, are likely to offset other allocations previously made under Section 11.2(a)-(g), which negate as rapidly as possible the effect of all such inconsistent allocations under Section 11.2(a)-(g).

(i)     Any "imputed underpayment" within the meaning of Code Section 6225 (or any similar provision of state or local Law) paid (or payable) by the Company as a result of an adjustment with respect to any Company item, including any interest or penalties with respect to any such adjustment, shall be allocated to the Members in a manner consistent with applicable Regulations (or comparable provisions of applicable state or local Law) and Section 11.5.

(j)     Upon the exercise of any Noncompensatory Option, the allocation of any unrealized gain, loss, income or deduction from an adjustment to Gross Asset Value under clause (b)(v) of the definition thereof shall be made pursuant to Regulation § 1.704-1(b)(2)(iv)(s)(2) and, if necessary, a Capital Account reallocation shall be accomplished as provided in Regulation § 1.704-1(b)(2)(iv)(s)(3) and as further described in Section 11.3(d).

These provisions shall be applied as if all distributions and allocations were made at the end of the Fiscal Year or other taxable period. Where any provision depends on the balance of a Capital Account of any Member, such Capital Account shall be determined after the operation of all preceding provisions for the period. These allocations shall be made consistently with the requirements of Regulation § 1.704-2(j).

11.3    Allocations for Income Tax Purposes.

(a)     The income, gains, losses, deductions and credits of the Company for U.S. federal, state and local income tax purposes for any Fiscal Year or other taxable period shall be allocated to the Members in the same manner as Company items of income, gain, loss, deduction and credit were allocated to the Members for such Fiscal Year or other taxable period pursuant to Sections 11.1 and 11.2; provided, however, that solely for U.S. federal, state and local income and franchise tax purposes and not for book or Capital Account purposes, income, gain, loss and deduction with respect to any Company asset properly carried on the Company's Code Section 704(b) books at a value other than the tax basis of such Company asset shall be allocated in a manner determined in the

discretion of the Board so as to take into account (consistently with Code Section 704(c) principles) the difference between such Company asset's Code Section 704(b) book basis and its tax basis.

(b)      Allocations of tax credits, tax credit recapture, and any items related thereto shall be allocated to the Members according to their interests in such items as determined by the Board taking into account the principles of Regulation § 1.704-1(b)(4)(ii) and (viii).

(c)      If the Company recognizes Depreciation Recapture in respect of the disposition of any Company asset, (i) the portion of the gain on such disposition that is allocated to a Member pursuant to Section 11.1 or 11.2 shall be treated as consisting of a portion of the Company's Depreciation Recapture on the disposition and a portion of the Company's remaining gain on such sale under principles consistent with Regulation § 1.1245-1, and (ii) if, for U.S. federal income tax purposes, the Company recognizes both "unrecaptured section 1250 gain" (as defined in Code Section 1(h)) and gain treated as ordinary income under Code Section 1250(a) in respect of such disposition, the amount treated as Depreciation Recapture under clause (i) above shall comprise a proportionate share of both such types of gain.

(d)      If, as a result of an exercise of a Noncompensatory Option, a Capital Account reallocation is required under Regulation § 1.704-1(b)(2)(iv)(s)(3), the Company shall make corrective allocations pursuant to Regulation § 1.704-1(b)(4)(x).

11.4      Other Allocation Rules.

(a)      If any Interest in the Company or part thereof is Transferred or reduced (including due to the issuance of a new Interest) in any Fiscal Year or other taxable period, unless otherwise agreed to by the Transferor and Transferee and approved by the Board, the items of income, gain, loss, deduction and credit allocable to such Interest for such Fiscal Year or other taxable period shall be apportioned between the Transferor and the Transferee (in the case of a Transfer) or between the Member whose Interest was reduced and the other Members (in the case of a reduction) using the "interim closing method" and the "calendar day convention" of Regulation § 1.706-4.

(b)      Solely for purposes of determining a Member's proportionate share of the "excess nonrecourse liabilities" of the Company in any Fiscal Year or other taxable period within the meaning of Regulation § 1.752-3(a)(3), each Member's interests in Company profits shall be its ownership percentage of the total number of Interests outstanding.

11.5      Withholding and Entity-Level Taxes.

(a)      The Company shall comply with withholding requirements under U.S. federal, state and local and foreign law and shall remit amounts withheld to and file required forms with the applicable jurisdictions. To the extent the Company is required to withhold and pay over any amounts to any authority with respect to distributions or amounts allocable to any Member or to the extent the Company is required to pay any income tax (including interest and penalties) that (as reasonably determined by the Board based upon this Agreement) is attributable or allocable to any Member, the amount withheld or paid shall be deemed to be a distribution by the Company to such Member (which shall reduce the amounts that would subsequently otherwise be distributed to such Member pursuant to Section 4.1 in the order in which they would otherwise have been distributable). In the event of any claimed over-withholding, Members shall be limited to an action against the applicable jurisdiction. Each Member agrees to furnish the Company with any representations and forms as shall reasonably be

requested by the Company to assist it in determining the extent of, and in fulfilling, its withholding obligations.

(b)        If the Company receives proceeds in respect of which a tax has been withheld, the Company shall be treated as having received cash in an amount equal to the amount of such withheld tax, and, for all purposes of this Agreement, the portion of the withholding tax allocable to each Member, as reasonably determined by the Board, shall be deemed to be a distribution by the Company to such Member (which shall reduce the amounts that would subsequently otherwise be distributed to such Member pursuant to Section 4.1 in the order in which they would otherwise have been distributable).  In the event that the Company receives a refund of taxes previously withheld by a third party from one or more payments to the Company, the economic benefit of such refund shall be apportioned among the Members in a manner reasonably determined by the Board to offset the prior operation of this Section 11.5(b) in respect of such withheld taxes.

(c)        If the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, managers, members, partners, shareholders, employees, consultants, agents or advisors becomes liable as a result of a failure to withhold and remit taxes in respect of any Member (or former Member) hereunder, then such Member (or former Member) shall, to the fullest extent permitted by law, indemnify and hold harmless the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, managers, members, partners, shareholders, employees, consultants, agents or advisors, as the case may be, in respect of all taxes, including interest and penalties, and any expenses incurred in any examination, determination, resolution and payment of such liability (and any such indemnity with respect to any withholding taxes imposed pursuant to Code Section 1446(f)(4) and any interest, penalties and expenses in connection therewith shall be provided jointly and severally by the transferor Member (or former Member) and transferee Member (or former Member) of any Interest), except with respect to any penalties or expenses that arise as a result of any act or omission with respect to which a court of competent jurisdiction has issued a final, nonappealable judgment that the Company, the Board, or any of their respective Affiliates, or any of their respective officers, directors, employees, managers, members, partners, shareholders, and, as determined by the Board in its sole and absolute discretion, consultants, agents or advisors was grossly negligent or engaged in willful misconduct or fraud.  Additionally, each Member (and each former Member) shall indemnify the Company against any losses and liabilities (including interest and penalties) related to any income tax payable by the Company that (as reasonably determined by the Board based upon this Agreement) is attributable or allocable to such Member (or former Member), including under Code Section 6225(a) or any similar provision of state or local Law.  The provisions contained in this Section 11.5(c) shall survive the termination of the Company and the Transfer of any Interest.

## Article XII
## General Provisions

12.1    Exculpation and Indemnification.

(a)        Unless specifically set forth herein, to the fullest extent permitted by applicable law, no Member, officer, Director, Partnership Representative, Designated Individual, employee or agent of the Company and no officer, director, employee, Representative, agent or Affiliate of any Member (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of

such Covered Person's fraud, gross negligence or willful misconduct as determined by a final, non-appealable judgment of a court of competent jurisdiction.

(b)      To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by a Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's fraud, gross negligence or willful misconduct with respect to such acts or omissions as determined by a final, non-appealable judgment of a court of competent jurisdiction.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon demand by such Covered Person and receipt by the Company of an undertaking by or on behalf of such Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 12.1.

(c)      A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities or any other facts pertinent to the existence and amount of assets of the Company from which distributions to any Member might properly be paid.

(d)      As of or prior to the Effective Date, the Company has obtained directors' and officers' liability insurance for the Directors and officers of the Company, if any (a "D&O Insurance Policy"), with coverage under such D&O Insurance Policy to be effective no later than the Effective Date, naming each Director and officer as an insured in such a manner as to provide such Director the same rights and benefits, subject to the same limitations, as are accorded to the Directors or officers of the Company most favored by such D&O Insurance Policy.  The Company shall use its commercially reasonable efforts to maintain a D&O Insurance Policy at all times that are no less favorable to the Directors than the D&O Insurance Policy entered into pursuant to the first sentence of this Section 12.1(d).

(e)      The Company hereby acknowledges that a Covered Person may have certain rights to indemnification, advancement of expenses and/or insurance provided by companies for which such Covered Person serves as a director, officer or employee (collectively, the "Other Indemnitors").  The Company hereby agrees that it (i) is the indemnitor of first resort (i.e., its obligations to a Covered Person are primary and any obligation of the Other Indemnitors to advance expenses or to provide indemnification for the same expenses or liabilities incurred by or on behalf of such Covered Person are secondary), (ii) shall be required to advance the full amount of expenses incurred by or on behalf of such Covered Person and shall be liable for the full amount of all expenses, judgments, penalties, fines and amounts paid in settlement to the extent not prohibited by applicable law and as required by the terms of this Agreement, without regard to any rights such Covered Person may have against the Other Indemnitors and (iii) irrevocably waives, relinquishes and releases the Other Indemnitors from any and all claims against the Other Indemnitors for reimbursement, subrogation or any other recovery of any kind in respect thereof.  The Company further agrees that no advancement or payment by the Other Indemnitors on behalf of a Covered Person with respect to any claim for which a Covered Person has sought indemnification from the Company shall affect the foregoing and the Other Indemnitors shall have

a right of reimbursement and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of a Covered Person against the Company.  The Company and any Covered Person agree that the Other Indemnitors are express third-party beneficiaries of the terms of this Section 12.1(e).

    12.2    Entire Agreement; Amendments.

    (a)    This Agreement (including the exhibits and annexes attached hereto) contains the sole and entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

    (b)    Subject to the proviso hereafter, this Agreement may be modified or amended or supplemented with the approval of (1) a majority of the issued and outstanding Voting Interests, and (2) the Board; provided, however, that, notwithstanding anything in this Agreement to the contrary, (i) without the consent of any Member, the Board may amend Exhibit B from time to time so as to accurately reflect the information contained thereon upon (A) the withdrawal of a Member, (B) the admission of a new Member and (C) any changes to Percentage Interests and the number of Voting Interests held by Members as a consequence thereof, (ii) any change to any voting, consent or approval threshold or requirement specified in this Agreement shall require the approval of Members or Directors, as the case may be, constituting at least such voting, consent or approval threshold or otherwise satisfying such requirement, (iii) any amendment to this Agreement or any limited liability company agreement, charter, bylaws or comparable organizational document of the Company or any material Subsidiary of the Company that (w) modifies the limited liability of a Member, (x) changes the Capital Contribution required by a Member, (y) would reasonably be expected to materially adversely affect any Member's rights pursuant to Section 5.2, Section 5.3, Section 5.4, Section 5.6, Section 5.7, Section 6.2, Section 6.3, Section 6.9, Section 6.10 and this Section 12.2 or (z) would reasonably be expected to materially adversely affect any Member or group of Members in a manner that is disproportionate to the effect on any other holder or group of Members shall require the prior written consent of such Member or, with respect to a group of Member pursuant to clause (z) above, the holders of a majority of the collective Voting Interests of such group of Members, and (iv) any amendment to this Agreement or any limited liability company agreement, charter, bylaws or comparable organizational document of the Company or any material Subsidiary of the Company that does not and would not be reasonably expected to adversely affect any Member in any material respect may be made by the Board, without the consent of any Member, to the extent permitted by law.

    12.3    Avoidance of Provisions.  No party hereto shall avoid the provisions of this Agreement by making one or more Transfers to one or more Affiliates and then disposing of all or any portion of such party's interest in any such Affiliate.

    12.4    Binding Agreement.  The covenants and agreements herein contained shall inure to the benefit of and shall be binding upon the parties hereto and their respective Representatives, successors in interest and permitted assigns.

    12.5    Notices.  Unless otherwise provided in this Agreement, any and all notices contemplated by this Agreement shall be deemed adequately given if in writing and delivered in hand, or upon receipt when sent by telecopy or electronic transmission, including electronic mail.  All such notices to Members shall be addressed to the last address of record on the books of the Company; all such notices to the Company shall be addressed to the Company at the address set forth in Section 2.4 or at such other address as the Company may have designated by notice given in accordance with the terms of this subsection.

12.6    <u>Governing Law</u>.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, all rights and remedies being governed by such laws, without regard to its conflict of laws rules.

12.7    <u>Consent to Jurisdiction; WAIVER OF JURY TRIAL</u>.

(a)    The Company and each Member (i) irrevocably submits to the exclusive jurisdiction of the Chancery Court of the State of Delaware and the United States District Court for the District of Delaware (and the appropriate appellate courts), for the purposes of any suit, action or other proceeding arising out of this Agreement and (ii) agrees to commence any such action, suit or proceeding either in the United States District Court for the District of Delaware or if such suit, action or other proceeding may not be brought in such court for jurisdictional reasons, in the Chancery Court of the State of Delaware.  Notwithstanding the foregoing, any party hereto may commence an action, suit or proceeding with any governmental body anywhere in the world for the sole purpose of seeking recognition and enforcement of a judgment of any court referred to in the first sentence of this <u>Section 12.7(a)</u>.  The Company and each Member further (x) agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth on the Member List (or in the case of the Company, at the Company's principal office in Delaware) shall be effective service of process for any action, suit or proceeding in Delaware with respect to any matters to which it has submitted to jurisdiction in this <u>Section 12.7(a)</u> and (y) irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in (A) the Chancery Court of the State of Delaware, or (B) the United States District Court for the District of Delaware, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(b)    THE COMPANY AND EACH MEMBER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, INVOLVING OR OTHERWISE IN RESPECT OF THIS AGREEMENT OR SUCH MEMBER'S OWNERSHIP OF COMPANY COMMON EQUITY.  THE COMPANY AND EACH MEMBER (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE COMPANY OR ANY MEMBER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE COMPANY OR SUCH MEMBER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT THE COMPANY AND EACH MEMBER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 12.7(b)</u>.

12.8    <u>Construction</u>.  The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent and, to the fullest extent permitted by law, the parties intend that no rule of strict construction will be applied against any party.

12.9    <u>Severability</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.  In the case of any such invalidity or unenforceability, the parties hereto agree to use all reasonable best efforts to achieve the purpose of such provision by a new legally valid and enforceable stipulation.

12.10    Counterparts, Electronic Copies.    This Agreement may be executed in multiple counterparts, including by electronic transmission or portable document format (.pdf), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.11    Survival.    The provisions of Sections 6.15 and this Article XII shall survive the termination of this Agreement for any reason or the dissolution of the Company.  Subject to the Act, all other rights and obligations of the Members shall cease upon the earlier of the termination of this Agreement or dissolution of the Company.

12.12    Termination.

(a)    This Agreement will be automatically effective as of the Effective Date and will continue in effect until the earlier to occur of (i) its termination by the unanimous written consent of all Members of the Company, (ii) the dissolution, liquidation or winding up of the Company and (iii) the consummation of a Drag-Along Sale in which, for whatever reason, all of the Members participate either as Selling Members or Compelled Members.

(b)    Section 3.6(b), Sections 5.1 through 5.8, Section 6.10, Section 6.15, Section 8.3, Section 8.4 and Article X shall automatically terminate upon (i) a Qualified IPO or (ii) the listing of any equity securities of the Company on the NASDAQ, the NYSE or another U.S. national securities exchange.

12.13    Special Power of Attorney.    Each Member grants a majority of the Board and the Company (each a "Proxy Holder") a special power of attorney (with full power of substitution and resubstitution) irrevocably making, constituting, and appointing such person as the Member's attorney-in-fact, with full power and authority to act in the Member's name and on the Member's behalf to execute, acknowledge and deliver and swear to in the execution, acknowledgment, delivery and filing of any agreements or instruments that a majority of the Board deems necessary or appropriate in connection with a Drag-Along Sale or Sale of the Company, conducted pursuant to. and subject to the terms and conditions set forth in, Section 5.4 or Section 5.5, as applicable.  Further, each Member grants to each Proxy Holder with respect to such a Drag-Along Sale or Sale of the Company a special power of attorney (with full power of substitution and resubstitution) irrevocably making, constituting, and appointing such person as the Member's attorney-in-fact, with full power and authority to act in the Member's name and on the Member's behalf to: (a) vote on all matters to be voted on under this Agreement on behalf of such Members, (b) receive all notices on behalf of such Members, (c) execute and deliver, on behalf of such Members, any agreement, consent, assignment, waiver, other document or instrument or any amendment thereto or to take any other action required of such Members under this Agreement, including executing, acknowledging, delivering and swearing to in the execution, acknowledgment, delivery and filing of any agreements or instruments that a majority of the Board deems necessary or appropriate, and (d) take all other actions to be taken by or on behalf of the Members, as a group, and exercise any and all rights that such Members are permitted or required to do or exercise under this Agreement with respect to such a Drag-Along Sale or Sale of the Company.  The special powers granted in this Section 12.13 (i) is irrevocable, (ii) is coupled with an interest, and (iii) shall survive a Member's death, incapacity or dissolution.  A majority of the Board, duly appointed officer of the Company or other person duly designated by a majority of the Board and the Company may exercise the special power of attorney granted in this Section 12.13 by a facsimile or other electronic signature (including electronic mail with PDF attachment).

12.14    Further Assurance.    Each party to this Agreement agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents and to do all

such other acts and things, as may be required by law or as, in the reasonable judgment of the Board, may be necessary or reasonably advisable to carry out the intent and purpose of this Agreement.

[Signature pages follow]

IN WITNESS WHEREOF, the Members signatory hereto have entered into this Agreement on the date first above written:

MEMBERS:

*[●]Member*

_____

Name:
Title:

**Annex I**
**Registration Rights**

See attached.

## <u>REGISTRATION RIGHTS</u>

1.    <u>Definitions</u>. Capitalized terms used but not defined in this <u>Annex I</u> have the meanings given to such terms in the LLC Agreement.  As used in this <u>Annex I</u>, and solely for the purposes of this <u>Annex I</u>, the following terms have the meanings specified below:

"<u>Affiliated Holders</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this <u>Annex I</u>. "<u>beneficially owned</u>," "<u>beneficial ownership</u>" and similar phrases have the same meanings as such terms have under Rule 13d-3 (or any successor rule then in effect) under the Exchange Act, except that in calculating the beneficial ownership of any Holder, such Holder shall be deemed to have beneficial ownership of all securities that such Holder has the right to acquire, whether such right is currently exercisable or is exercisable upon the occurrence of a subsequent event.  For the avoidance of doubt, each Holder shall be deemed to beneficially own all of the Common Interests held by any of its Affiliates.

"<u>Block Sale</u>" means the sale of Common Interests constituting more than one percent (1%) of Common Interests then outstanding to one or more purchasers in a registered transaction without a prior marketing process by means of (i) a bought deal, (ii) a block trade or (iii) a direct sale.

"<u>Company Notice</u>" has the meaning set forth in <u>Section 2(a)(iii)</u> of this <u>Annex I</u>.

"<u>Demand Eligible Holder</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this <u>Annex I</u>.

"<u>Demand Eligible Holder Request</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this Annex I.

"<u>Demand Notice</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this <u>Annex I</u>.

"<u>Demand Registration</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this <u>Annex I</u>.

"<u>Demand Registration Statement</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this Annex I.

"<u>Effectiveness Period</u>" has the meaning set forth in <u>Section 2(b)(iii)</u> of this <u>Annex I</u>. "<u>Family Member</u>" means, with respect to any natural Person, such Person's parents, spouse (but not including a former spouse or a spouse from whom such Person is legally separated) and descendants (whether or not adopted) and any trust, family limited partnership or limited liability company that is and remains solely for the benefit of such Person's spouse (but not including a former spouse or a spouse from whom such Person is legally separated) and/or descendants.

"<u>FINRA</u>" means Financial Industry Regulatory Authority, Inc.

"<u>Holder</u>" means each Member of the Company who holds any portion of the Company's then outstanding Common Interests.

"<u>Indemnified Persons</u>" has the meaning set forth in <u>Section 5(a)</u> of this <u>Annex I</u>.

"<u>Initial Public Offering</u>" means the initial firm commitment underwritten public offering of Registrable Securities consummated for cash and registered under the Securities Act or equivalent foreign securities laws (other than a registration statement on Form S-4 or Form S-8 (or any similar or successor form or equivalent foreign form)) pursuant to which Registrable Securities are sold and concurrently listed on a national securities exchange in the United States.

"<u>Initiating Holders</u>" has the meaning set forth in <u>Section 2(b)(i)</u> of this <u>Annex I</u>.

"<u>Issuer Free Writing Prospectus</u>" means an issuer free writing prospectus, as defined in Rule 433 under the Securities Act, relating to an offer of the Registrable Securities.

"<u>LLC Agreement</u>" means that certain Amended and Restated Limited Liability Company

Agreement of [Reorganized Careismatic Brands, LLC], dated [●], 2024, to which these Registration Rights are attached as <u>Annex I</u>.

"<u>Losses</u>" has the meaning set forth in <u>Section 5(a)</u> of this <u>Annex I</u>.

"<u>Other Registrable Securities</u>" means Common Interests issued or issuable with respect to, on account of or in exchange for Common Interests, whether by dividend, recapitalization, merger or otherwise held by any other Person who has rights to participate in any public offering of securities by the Company pursuant to a registration rights agreement or other similar arrangement with the Company.

"<u>Piggyback Eligible Holders</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Notice</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Registration</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Registration Statement</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Piggyback Request</u>" has the meaning set forth in <u>Section 2(c)(i)</u> of this <u>Annex I</u>.

"<u>Proceeding</u>" means any action, claim, suit, proceeding or investigation (including a preliminary investigation or partial proceeding, such as a deposition) pending or known to the Company to be threatened.

"<u>Prospectus</u>" means the prospectus or prospectuses included in a Registration Statement (including a prospectus that includes any information previously omitted from a prospectus filed as part of an effective Registration Statement in reliance upon Rule 430A promulgated under the Securities Act or any successor rule thereto), all amendments and supplements to the prospectus, including post-effective amendments, all material incorporated by reference or deemed to be incorporated by reference in such prospectus or prospectuses and any Issuer Free Writing Prospectus.

"<u>Registrable Securities</u>" means any Common Interests and any other securities issued or issuable with respect to, on account of or in exchange for Common Interests, whether by dividend, recapitalization, merger or otherwise that are held by the Holder or that are held by any Affiliate, transferee or assignee of any Holder, all of which Common Interests are subject to the rights provided herein until such rights terminate pursuant to the provisions of this <u>Annex I</u>. As to any particular Registrable Securities, such securities shall cease to be Registrable Securities when (i) a registration statement registering such Registrable Securities under the Securities Act has been declared effective and such Registrable Securities have been sold, transferred or otherwise disposed of by the Holder thereof pursuant to such effective registration statement, (ii) such Registrable Securities are sold, transferred or otherwise disposed of pursuant to Rule 144, (iii) such securities cease to be outstanding, or (iv) such Registrable Securities as are held by any Holder who, together with its Affiliates, at the time of determination, holds in the aggregate less than one percent (1%) of the Company's then outstanding Common Interests; <u>provided</u> that such Common Interests may be sold pursuant to Rule 144(b)(1) under the Securities Act without limitations on volume.

"<u>Registration Date</u>" means the date on which the Company becomes subject to Section 13(a) or Section 15(d) of the Exchange Act in connection with the Common Interests or any other class of equity securities of the Company.

"<u>Registration Expenses</u>" has the meaning set forth in <u>Section 4(a)</u> of this <u>Annex I</u>.

"<u>Registration Statement</u>" means a registration statement of the Company filed with or to be filed with the SEC under the Securities Act and other applicable law, and including any Prospectus, amendments and supplements to each such registration statement or Prospectus, including pre- and post-effective amendments, all exhibits thereto and all material incorporated by reference or deemed to

be incorporated by reference in such registration statement.

"Rule 144" means Rule 144 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 144A" means Rule 144A promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 158" means Rule 158 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 405" means Rule 405 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Rule 424" means Rule 424 promulgated by the SEC pursuant to the Securities Act, as such rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the SEC having substantially the same effect as such rule.

"Selling Expenses" means all underwriting fees, discounts, selling commissions and transfer taxes applicable to the sale of Registrable Securities and related legal and other fees of a Holder or any underwriter not included within the definition of Registration Expenses.

"Shelf" has the meaning set forth in Section 2(a)(i) of this Annex I.

"Shelf Period" has the meaning set forth in Section 2(a)(i) of this Annex I.

"Shelf Registration" means the registration of the Registrable Securities on a Shelf pursuant to Section 2(a)(i) of this Annex I.

"Shelf Takedown Notice" has the meaning set forth in Section 2(a)(iii) of this Annex I.

"Suspension Period" has the meaning set forth in Section 2(e) of this Annex I.

"Trading Market" means any principal national securities exchange in the United States, including, but not limited to, the New York Stock Exchange or The Nasdaq Global Market or, in each case, any successor exchange on which Registrable Securities are (or are to be) listed.

"Underwritten Shelf Takedown" has the meaning set forth in Section 2(a)(ii) of this Annex I.

Unless the context requires otherwise: (a) any pronoun used in this Annex I shall include the corresponding masculine, feminine or neuter forms; (b) references to Sections, paragraphs and clauses refer to Sections, paragraphs and clauses of this Annex I; (c) the terms "include," "includes," "including" or words of like import shall be deemed to be followed by the words "without limitation"; (d) the terms "hereof," "herein" or "hereunder" refer to this Annex I as a whole and not to any particular provision of this Annex I; (e) unless the context otherwise requires, the term "or" is not exclusive and shall have the inclusive meaning of "and/or"; (f) defined terms herein will apply equally to both the singular and plural forms and derivative forms of defined terms will have correlative meanings; (g) references to any law or statute shall include all rules and regulations promulgated thereunder, and references to any form of Registration Statement, law or statute shall be construed as including any legal and statutory provisions consolidating, amending, succeeding or replacing the applicable form of Registration Statement, law or statute; (h) references to any Person include such Person's successors and permitted assigns; and (i) references to "days" are to calendar days unless otherwise indicated.

2.      Registration.  This Annex I, and the rights granted hereunder, shall not be effective and

will not vest until a majority of the members of the Board ratify this <u>Annex I</u>.

(a)    <u>Shelf Registration</u>.

(i)    As soon as reasonably practicable after the date on which the Company becomes eligible to use a Registration Statement on Form S-3 to register the resale of Registrable Securities, and upon the request of an eligible Holder beneficially owning at least five percent (5%) of the then outstanding Common Interests, the Company shall file a Registration Statement on Form S-3 covering the resale of all Registrable Securities on a delayed or continuous basis (the "<u>Shelf</u>") for such Registrable Securities held by all such requesting Holders. The Company shall use its reasonable best efforts to cause such Registration Statement to become effective as promptly as practicable. The Company shall use its reasonable best efforts to keep the Shelf continuously effective under the Securities Act until there are no longer any Registrable Securities (the "<u>Shelf Period</u>").

(ii)    Subject to the provisions of <u>Section 2(a)(v)</u> of this <u>Annex I</u>, at any time during which the Shelf is effective (or in connection with its initial effectiveness), any one or more of the eligible Holders of Registrable Securities may request to sell all or any portion of their Registrable Securities in an underwritten offering that is registered pursuant to the Shelf (each, an "<u>Underwritten Shelf Takedown</u>"); <u>provided</u> that in the case of each such Underwritten Shelf Takedown such Holder or Holders will be entitled to make such demand only if (A) the number of Registrable Securities to be sold in such Underwritten Shelf Takedown represents not less than ten percent (10%) of the outstanding Common Interests in the aggregate and (B) the total offering price of the Common Interests to be sold in such Underwritten Shelf Takedown (including any piggyback securities and before deduction of underwriting discounts) is reasonably expected to exceed, in the aggregate, [$200 million].

(iii)    All requests for Underwritten Shelf Takedowns shall be made by giving written notice to the Company (the "<u>Shelf Takedown Notice</u>"). Each Shelf Takedown Notice shall specify the approximate number of Registrable Securities to be sold in the Underwritten Shelf Takedown and the expected price range (net of underwriting discounts and commissions) of such Underwritten Shelf Takedown. Subject to <u>Section 2(i)</u> of this <u>Annex I</u> below, within three (3) days after receipt of any Shelf Takedown Notice, the Company shall give notice of such requested Underwritten Shelf Takedown to all other Holders of Registrable Securities (the "<u>Company Notice</u>") and, subject to the provisions of <u>Section 2(a)(iv)</u> and <u>Section 2(i)</u> of this <u>Annex I</u> below, shall include in such Underwritten Shelf Takedown all Registrable Securities with respect to which the Company has received written requests for inclusion therein within five (5) Business Days after giving the Company Notice.

(iv)    If the managing underwriters for such Underwritten Shelf Takedown advise the Company that in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company, if the Company concludes after consultation with such managing underwriters and the Holder of Registrable Securities proposed to be included in such Underwritten Shelf Takedown that in the Company's reasonable view, the number of Common Interests proposed to be included in such Underwritten Shelf Takedown exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Holders of a majority of the Registrable Securities requested to be included in the Underwritten Shelf Takedown, then the Company shall so advise all Holders of Registrable Securities proposed to be included in such Underwritten Shelf Takedown, and shall include in such Underwritten Shelf Takedown the number of Common Interests which can be so sold in the following order of priority: (A) <u>first</u>, the Registrable Securities requested to be included  in such Underwritten Shelf Takedown, which in the view of such underwriters or the Company, as applicable, can be sold in an orderly manner within the price range of such

offering, pro rata among the respective Holders of such Registrable Securities on the basis of the number of Registrable Securities requested to be included therein by each such Holder, and (B) second, Other Registrable Securities requested to be included in such Underwritten Shelf Takedown to the extent permitted hereunder, pro rata among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder.

(v)     Other than Block Sales, which shall not be classified as an Underwritten Shelf Takedown solely for the purposes of the limitations under this Section 2(a)(v) of this Annex I, the Company shall not be obligated to (A) effect an Underwritten Shelf Takedown within ninety (90) days (or such shorter period specified in any applicable lock-up agreement entered into with underwriters) after the consummation of a previous Underwritten Shelf Takedown or Demand Registration and (B) effect a total of not more than two (2) Underwritten Shelf Takedowns while any Registrable Securities remain outstanding; provided that one (1) of such two (2) Underwritten Shelf Takedowns shall be reserved for Holders who beneficially own in the aggregate more than 20 percent (20%) of the Company's then outstanding Common Interests.

(vi)    The Holders of a majority of the Registrable Securities requested to be included in an Underwritten Shelf Takedown shall have the right to select the investment banker(s) and manager(s) to administer the offering (which shall consist of one (1) or more reputable nationally recognized investment banks, subject to the Company's approval (which shall not be unreasonably withheld, conditioned or delayed)) and one (1) firm of counsel to represent all of the Holders (along with any reasonably necessary local counsel), in connection with such Underwritten Shelf Takedown; provided that the Company shall select such investment banker(s), manager(s) and counsel (including local counsel) if such Holders of such majority cannot so agree on the same within a reasonable time period.

(vii)   Any Holder whose Registrable Securities were to be included in any such registration pursuant to Section 2(a)(ii) of this Annex I may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future registration (or registrations), by written notice to the Company delivered on or prior to the effective date of the relevant Underwritten Shelf Takedown.

(viii)  As of the date this Annex I is ratified by a majority of the members of the Board, the Company represents and warrants that it is not a party to, or otherwise subject to, any agreement other than this Annex I granting registration rights to any other Person with respect to any securities of the Company.

(ix)    Notwithstanding any of the foregoing, the Company shall not be obligated to file any Registration Statement pursuant to Section 2(a) of this Annex I without the prior approval of a majority of the members of the Board.

(b)     Demand Registration. Subject to the terms and conditions of this Annex I (including Section 2(b)(ii)), at any time on or after an Initial Public Offering or the listing of the Common Interests on a Trading Market, upon written notice to the Company (a "Demand Notice") delivered by a Holder or Holders, collectively, beneficially owning more than ten percent (10%) of the then outstanding Common Interests in the aggregate or, which for the avoidance of doubt shall include any Holder with respect to which there is a director serving on the Board who was appointed by, or is otherwise employed by or affiliated with, such Holder or its Affiliates (each of the foregoing being referred to as the "Initiating Holders") at any time requesting that the Company effect the registration (a "Demand Registration") under the Securities Act (other than pursuant to a Registration Statement on Form S-4 or S-8) the number of Registrable Securities (which, for purposes of this Section 2(b)(i), shall include Common Interests

issuable pursuant to the Warrants) included in such Demand Notice, the Company shall promptly (but in any event, not later than five (5) Business Days following the Company's receipt of such Demand Notice) give written notice of the receipt of such Demand Notice to all other Holders that, to its knowledge, hold Registrable Securities (each, a "Demand Eligible Holder"). The Company shall promptly file the appropriate registration statement (the "Demand Registration Statement") and use its reasonable best efforts to effect, at the earliest practicable date, the registration under the Securities Act and under the applicable state securities laws of (1) the Registrable Securities which the Company has been so requested to register by the Initiating Holders in the Demand Notice and (2) all other Registrable Securities which the Company has been requested to register by the Demand Eligible Holders by written request (the "Demand Eligible Holder Request") given to the Company within ten (10) Business Days after the giving of such written notice by the Company, in each case subject to Section 2(b)(v) of this Annex I, all to the extent required to permit the disposition (in accordance with the intended methods of disposition) of the Registrable Securities to be so registered.

(i)      Notwithstanding anything herein to the contrary, the Company shall only be required to (A) effect one (1) Demand Registration in any six (6) month period and (B) effect a total of not more than three (3) Demand Registrations by Holders beneficially owning not less than ten percent (10%) of the outstanding shares of the Common Interests in the aggregate.

(ii)      The Company shall use its reasonable best efforts to keep the Demand Registration Statement continuously effective under the Securities Act for the period of time necessary for the underwriters or Holders to sell all the Registrable Securities covered by such Demand Registration Statement or such shorter period which will terminate when all Registrable Securities covered by such Demand Registration Statement have been sold pursuant thereto (including, if necessary, by filing with the SEC a post-effective amendment or a supplement to the Demand Registration Statement or the related Prospectus or any document incorporated therein by reference or by filing any other required document or otherwise supplementing or amending the Demand Registration Statement, if required by the rules, regulations or instructions applicable to the registration form used by the Company for such Demand Registration Statement or by the Securities Act, any state securities or "blue sky" laws, or any other rules and regulations thereunder) (the "Effectiveness Period"). A Demand Registration requested pursuant to this Section 2(b) shall not be deemed to have been effected (A) if the Registration Statement is withdrawn without becoming effective, (B) if the Registration Statement does not remain effective in compliance with the provisions of the Securities Act and the laws of any state or other jurisdiction applicable to the disposition of the Registrable Securities covered by such Registration Statement for the Effectiveness Period, (C) if, after it has become effective, such Registration Statement is subject to any stop order, injunction or other order or requirement of the SEC or other governmental or regulatory agency or court for any reason other than a violation of applicable law solely by any selling Holder and has not thereafter become effective, (D) in the event of an underwritten offering, if the conditions to closing specified in the underwriting agreement entered into in connection with such registration are not satisfied or waived other than by reason of some wrongful act or omission by an Initiating Holder, (E) if the Company does not include in the applicable Registration Statement any Registrable Securities held by a Holder that is required by the terms hereof to be included in such Registration Statement,  or (F) if the Initiating Holders and Demand Eligible Holders have not been able to sell at least seventy-five percent (75%) of the Registrable Securities that they have requested to sell in the Demand Notice or Demand Eligible Holder Request.

(iii)      Notwithstanding any other provision of this Section 2(b), if (A) the Initiating Holders intend to distribute the Registrable Securities covered by a Demand

Registration by means of an underwritten offering and (B) the managing underwriters advise the Company and the Initiating Holders that in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company and the Initiating Holders, the Company concludes after consultation with such managing underwriters and the Holders of Registrable Securities proposed to be included in such offering that in the Company's reasonable view, the number of Common Interests proposed to be included in such offering (including Registrable Securities requested by Holders to be included in such offering and any securities that the Company or any other Person proposes to be included that are not Registrable Securities) exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Holders of a majority of the Registrable Securities requested to be included in such Demand Registration, then the Company shall so advise all Initiating Holders and Demand Eligible Holders with Registrable Securities proposed to be included in such underwritten offering, and shall include in such offering the number of Common Interests which can be so sold in the following order of priority: (1) <u>first</u>, the Registrable Securities requested to be included in such underwritten offering by the Initiating Holders and the Demand Eligible Holders, which in the view of such underwriters or the Company, as applicable, can be sold in an orderly manner within the price range of such offering, pro rata among such Initiating Holders and Demand Eligible Holders on the basis of the number of Registrable Securities requested to be included therein by each such Initiating Holder and Demand Eligible Holder, and (2) <u>second</u>, Other Registrable Securities requested to be included in such underwritten offering to the extent permitted hereunder pro rata among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder.

(iv)    The determination of whether any offering of Registrable Securities pursuant to a Demand Registration will be an underwritten offering shall be made in the sole discretion of the Holders of a majority of the Registrable Securities included in such underwritten offering, and such Holders of a majority of the Registrable Securities shall have the right to (A) determine the plan of distribution, including the price at which the Registrable Securities are to be sold and the underwriting commissions, discounts and fees and (B) select the investment banker(s) and manager(s) to administer the offering (which shall consist of one (1) or more reputable nationally recognized investment banks, subject to the Company's approval (which shall not be unreasonably withheld, conditioned or delayed)) and one (1) firm of counsel to represent all of the Holders (along with any reasonably necessary local counsel), in connection with such Demand Registration; <u>provided</u> that the Company shall select such investment banker(s), manager(s) and counsel (including local counsel) if such Holders of such majority cannot so agree on the same within a reasonable time period.

(v)    Any Holder whose Registrable Securities were to be included in any such registration pursuant to this <u>Section 2(b)</u> may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future registration (or registrations), by written notice to the Company delivered on or prior to the effective date of the relevant Demand Registration Statement.

(c)    <u>Piggyback Registration</u>.

(i)    If at any time the Company proposes to file a Registration Statement (a "<u>Piggyback Registration Statement</u>"), other than pursuant to a Shelf Registration under <u>Section 2(a)</u> of this <u>Annex I</u> or any Demand Registration under <u>Section 2(b)</u> of this <u>Annex I</u> and other than an Initial Public Offering, for an offering of Common Interests or other equity interests for cash (whether in connection with a public offering of Common Interests by the Company, a public offering of Common Interests by holders of such securities other than Holders, or both,

but excluding an offering relating solely to an employee benefit plan, an offering relating to a transaction on Form S-4, an offering on any Registration Statement form that does not permit secondary sales or an offering in connection with any dividend or distribution reinvestment or similar plan), the Company shall give written notice (the "Piggyback Notice") to all Holders that, to its knowledge, hold at least 1% of the Company's outstanding Common Interests (collectively, the "Piggyback Eligible Holders") of the Company's intention to file a Piggyback Registration Statement reasonably in advance of (and in any event at least ten (10) Business Days before) the anticipated filing date of such Piggyback Registration Statement. The Piggyback Notice shall offer the Piggyback Eligible Holders the opportunity to include for registration in such Piggyback Registration Statement the number of Registrable Securities as they may request, subject to Section 2(c)(ii) of this Annex I (a "Piggyback Registration"). Subject to Section 2(c)(ii) of this Annex I, the Company shall use its reasonable best efforts to include in each such Piggyback Registration such Registrable Securities for which the Company has received written requests (each, a "Piggyback Request") from Piggyback Eligible Holders within five (5) Business Days after giving the Piggyback Notice. If a Piggyback Eligible Holder decides not to include all of its Registrable Securities in any Piggyback Registration Statement thereafter filed by the Company, such Piggyback Eligible Holder shall nevertheless continue to have the right to include any Registrable Securities in any subsequent Piggyback Registration Statements or registration statements as may be filed by the Company with respect to offerings of Common Interests, all upon the terms and conditions set forth herein. The Company shall use its reasonable best efforts to effect the registration under the Securities Act (other than pursuant to a Registration Statement on Form S-4 or S-8) of all Registrable Securities which the Company has been so requested to register pursuant to the Piggyback Requests, to the extent required to permit the disposition of the Registrable Securities so requested to be registered.

(ii)     If the Piggyback Registration under which the Company gives notice pursuant to Section 2(c)(i) of this Annex I is an underwritten offering, and the managing underwriter or managing underwriters of such offering advise the Company and the Piggyback Eligible Holders that, in their reasonable view, or, if such managing underwriters are unwilling to so advise the Company and the Piggyback Eligible Holders, the Company concludes after consultation with such managing underwriters and the Holders of Registrable Securities proposed to be included in such registration that in the Company's reasonable view, the amount of securities requested to be included in such registration (including Registrable Securities requested by the Piggyback Eligible Holders to be included in such offering and any securities that the Company or any other Person proposes to be included that are not Registrable Securities) exceeds the number of Common Interests which can be sold in an orderly manner in such offering within a price range acceptable to the Company, then the Company shall so advise all Piggyback Eligible Holders with Registrable Securities proposed to be included in such Piggyback Registration, and shall include in such offering the number which can be so sold in the following order of priority: (A) in the case of a Company-initiated registration, (1) first, the securities that the Company proposes to sell, (2) second, the Registrable Securities requested to be included in such Piggyback Registration pro rata among the Piggyback Eligible Holders on the basis of the number of Registrable Securities requested to be included therein by each Piggyback Eligible Holder and (3) third, Other Registrable Securities requested to be included in such Piggyback Registration, pro rata among the Holders thereof on the basis of the number of securities requested to be included therein by each such Holder and (B) in the case of a non-Company initiated registration, (1) first, the securities requested to be included in such offering by the Holders of the Company's securities initiating such registration and the Piggyback Eligible Holders, pro rata among such Holders on the basis of the number of securities requested to be included therein by each such Holder and (2) second, Other

Registrable Securities requested to be included in such offering to the extent permitted hereunder pro rata among the respective Holders of such Other Registrable Securities on the basis of the number of securities requested to be included therein by each such Holder. Promptly (and in any event within one (1) Business Day) following receipt of notification by the Company from the managing underwriter of a range of prices at which such Registrable Securities are likely to be sold, the Company shall so advise each Piggyback Eligible Holder requesting registration in such offering of such price. If any Piggyback Eligible Holder disapproves of the terms of any such underwriting (including the price offered by the underwriter(s) in such offering), such Piggyback Eligible Holder may elect to withdraw any or all of its Registrable Securities therefrom, without prejudice to the rights of any such Holder or Holders to include Registrable Securities in any future Piggyback Registration or other registration statement, by written notice to the Company and the managing underwriter(s) delivered on or prior to the effective date of such Piggyback Registration Statement. Any Registrable Securities withdrawn from such underwriting shall be excluded and withdrawn from the registration. For any Piggyback Eligible Holder that is a partnership, limited liability company, corporation or other entity, the partners, members, stockholders, subsidiaries, parents and Affiliates of such Piggyback Eligible Holder, or the estates and Family Members of any such partners or members and retired partners or members and any trusts for the benefit of any of the foregoing Persons, shall be deemed to be a single "Piggyback Eligible Holder," and any pro rata reduction with respect to such "Piggyback Eligible Holder" shall be based upon the aggregate amount of securities carrying registration rights owned by all entities and individuals included in such "Piggyback Eligible Holder," as defined in this sentence.

(iii)      The Company shall have the right to terminate or withdraw any registration initiated by it under this Section 2(c) prior to the effective date of such Registration Statement, whether or not any Piggyback Eligible Holder has elected to include Registrable Securities in such Registration Statement, without prejudice, however, to the right of the Holders immediately to request that such registration be effected as a registration under Section 2(b) of this Annex I to the extent permitted thereunder and subject to the terms set forth therein.

(iv)      If a Piggyback Registration pursuant to this Section 2(c) involves an underwritten offering, the Company shall have the right, in consultation with subject to the approval of the Holders of a majority of the Registrable Securities included in such underwritten offering (which approval shall not be unreasonably withheld, conditioned or delayed), to (A) determine the plan of distribution, including the price at which the Registrable Securities are to be sold and the underwriting commissions, discounts and fees and (B) select the investment banker or bankers and managers to administer the offering, including the lead managing underwriter.

(v)      No registration effected under this Section 2(c) shall relieve the Company of its obligations to effect any registration of the sale of Registrable Securities upon request under Section 2(a) or Section 2(b) of this Annex I and no registration effected pursuant to this Section 2(c) shall be deemed to have been effected pursuant to Section 2(a) or Section 2(b) of this Annex I.

(d)      Any Demand Notice, Demand Eligible Holder Request, Piggyback Request or Shelf Takedown Notice shall (i) specify the number or class of Registrable Securities and, if applicable, other securities, intended to be offered and sold by the Holder making the request, (ii) express such Holder's bona fide intent to offer such Registrable Securities for distribution, (iii) describe the nature or method of the proposed offer and sale of Registrable Securities (to the extent applicable) and (iv) contain the undertaking of such Holder to provide all such information and materials and take all action as may reasonably be required in order to permit the Company to comply with all applicable

requirements in connection with the registration of such Registrable Securities.

(e)     Notwithstanding any other provision of this Section 2, the Company shall have the right but not the obligation to defer the filing of, or suspend the use by the Holders of, any Demand Registration or Shelf Registration for a period of up to sixty (60) days if (i) the Board determines, in its good faith judgment, that the disclosure that would otherwise be required to file or update such Registration Statement would cause the disclosure of material non-public information in a manner that would materially and adversely interfere with any pending material financing or material acquisition, merger, recapitalization, consolidation or reorganization or similar transaction involving the Company; (ii) if the Company is subject to any of its customary suspension or blackout periods, for all or part of such period; (iii) upon issuance by the SEC of a stop order suspending the effectiveness of any registration statement with respect to Registrable Securities or the initiation of proceedings with respect to such registration statement under Section 8(d) or 8(e) of the Securities Act; (iv) if the Company believes that any such registration or offering (A) should not be undertaken because it would reasonably be expected to materially interfere with any material corporate development or plan or (B) would require the Company, under applicable securities laws and other laws, to make disclosure of material nonpublic information that would not otherwise be required to be disclosed at that time and the Company believes in good faith that such disclosures at that time would not be in the Company's best interests; provided that this exception (B) shall continue to apply only during the time that such material nonpublic information has not been disclosed and remains material; (v) if the Company elects at such time to offer Common Interests to (1) fund a merger, third-party tender offer or other business combination, acquisition of assets or similar transaction or (2) meet rating agency and other capital funding requirements; (vi) if the Company is pursuing a primary underwritten offering of Common Interests pursuant to a registration statement; provided that Holders shall have Piggyback Registration rights with respect to such primary underwritten offering in accordance with and subject to the restrictions set forth in Section 2(c) of this Annex I or (vii) if any other material development would materially and adversely interfere with any such Demand Registration or Shelf Registration (any such period, a "Suspension Period"); provided, however, that in such event, the Initiating Holders will be entitled to withdraw any request for a Demand Registration and, if such request is withdrawn, such Demand Registration will not count as a Demand Registration; and provided, further, that in no event shall the Company declare a Suspension Period more than twice in any twelve (12) month period or for more than an aggregate of ninety (90) days in any twelve (12) month period. The Company shall give written notice to the Holders of its declaration of a Suspension Period and of the expiration of the relevant Suspension Period.

(f)     The Company may require each Holder of Registrable Securities as to which any Registration Statement is being filed or sale is being effected to furnish to the Company such information regarding the distribution of such securities and such other information relating to such Holder and its ownership of Registrable Securities as the Company may from time to time reasonably request in writing (provided that such information shall be used only in connection with such registration) and the Company may exclude from such registration or sale the Registrable Securities of any such Holder who fails to furnish such information within a reasonable time after receiving such request. Each Holder agrees to furnish such information to the Company and to cooperate with the Company as reasonably necessary to enable the Company to comply with the provisions of this Annex I.

(g)     All registration rights granted under this Section 2 shall continue to be applicable with respect to any Holder until such Holder no longer holds any Registrable Securities.

(h)     Notwithstanding anything to the contrary contained herein, (i) no Holder shall be entitled to any piggyback right or to participate as a Demand Eligible Holder under this Section 2 in the event of a Block Sale (including Block Sales off of a Shelf; provided that any registration with respect to a Block Sale shall not constitute a Demand Registration for purposes of determining the number of

Demand Registrations effected by the Company under Section 2(b)(ii) of this Annex I) except as set forth in Section 2(h)(iii) below, (ii) no Holder, other than an Affiliated Holder, shall be permitted to request or participate in an underwritten offering (including an Underwritten Shelf Takedown) that is a Block Sale and (iii) an Affiliated Holder effecting an underwritten offering (including an Underwritten Shelf Takedown) that is a Block Sale shall provide prompt notice (but in no event later than twenty-four (24) hours prior to such Block Sale) to the Company and any other Affiliated Holder setting forth the proposed timeline for such offering to permit participation by such other Affiliated Holder in such offering, and such other Affiliated Holder shall be entitled to participate in such offering so long as such participation of such other Affiliated Holder does not materially delay the proposed timeline of such Block Sale specified in the notice.

(i)     Following the Registration Date, the Company, in connection with any action taken under this Annex I, may, in good faith, reasonably request in writing from any Holder the number of Registrable Securities held by such Holder, and any Holder receiving such a written request shall provide the duly requested information to the Company as promptly as is reasonably practicable.

3.     Registration Procedures.  The procedures to be followed by the Company and each participating Holder to register the sale of Registrable Securities pursuant to a Registration Statement in accordance with this Annex I, and the respective rights and obligations of the Company and such Holders with respect to the preparation, filing and effectiveness of such Registration Statement, are as follows:

(a)     The Company will (i) prepare and file a Registration Statement or a prospectus supplement, as applicable, with the SEC (within the time period specified in Section 2(a) or Section 2(b) of this Annex I, as applicable, in the case of a Shelf Registration, an Underwritten Shelf Takedown or a Demand Registration) which Registration Statement (A) shall be on a form selected by the Company for which the Company qualifies, (B) shall be available for the sale or exchange of the Registrable Securities in accordance with the intended method or methods of distribution, in the case of a Demand Registration Statement, a Shelf or an Underwritten Shelf Takedown, and (C) shall comply as to form in all material respects with the requirements of the applicable form and include and/or incorporate by reference all financial statements required by the SEC to be filed therewith, (ii) use its reasonable best efforts to cause such Registration Statement to become effective and remain effective for the periods provided under Section 2(a) or Section 2(b) of this Annex I, as applicable, in the case of a Shelf Registration Statement or a Demand Registration Statement, respectively, (iii) use its reasonable best efforts to prevent the occurrence of any event that would cause a Registration Statement to contain a material misstatement or omission or to be not effective and usable for resale of the Registrable Securities registered pursuant thereto (during the period that such Registration Statement is required to be effective as provided under Section 2(a) or Section 2(b) of this Annex I), and (iv) cause each Registration Statement and the related Prospectus and any amendment or supplement thereto, as of the effective date of such Registration Statement, amendment or supplement (A) to comply in all material respects with any requirements of the Securities Act and the rules and regulations of the SEC and (B) not to contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading. The Company will, (1) at least five (5) Business Days prior to the anticipated filing of a Registration Statement or any related Prospectus or any amendment or supplement thereto furnish to such Holders and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, copies of all such documents proposed to be filed, (2) use its reasonable best efforts to address in each such document prior to being so filed with the SEC such comments as such Holder or underwriter reasonably shall propose within three (3) Business Days of receipt of such copies by the Holders and (3) not file any Registration Statement or any related Prospectus or any amendment or supplement thereto to which a participating Holder reasonably objects.

(b)     The Company will use its reasonable best efforts to, as promptly as reasonably

practicable (i) prepare and file with the SEC such amendments, including post-effective amendments, and supplements to each Registration Statement and the Prospectus used in connection therewith as (A) may be reasonably requested by any Holder of Registrable Securities covered by such Registration Statement necessary to permit such Holder to sell in accordance with its intended method of distribution or (B) may be necessary under applicable law to keep such Registration Statement continuously effective with respect to the disposition of all Registrable Securities covered thereby for the periods provided under <u>Section 2(a)</u> or <u>Section 2(b)</u> of this <u>Annex I</u>, as applicable, in accordance with the intended method of distribution and, subject to the limitations contained in this <u>Annex I</u>, prepare and file with the SEC such additional Registration Statements in order to register for resale under the Securities Act all of the Registrable Securities held by the Holders, (ii) cause the related Prospectus to be amended or supplemented by any required prospectus supplement and, as so supplemented or amended, to be filed pursuant to Rule 424, (iii) respond to any comments received from the SEC with respect to each Registration Statement or Prospectus or any amendment thereto and (iv) as promptly as reasonably practicable, provide such Holders true and complete copies of all correspondence from and to the SEC relating to such Registration Statement or Prospectus other than any comments that the Company determines in good faith would result in the disclosure to such Holders of material and non-public information concerning the Company that is not already in the possession of such Holder.

(c)    The Company will comply in all material respects with the provisions of the Securities Act and the Exchange Act (including Regulation M under the Exchange Act) with respect to each Registration Statement and the disposition of all Registrable Securities covered by each Registration Statement.

(d)    The Company will notify such Holders that, to its knowledge, hold Registrable Securities and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, as promptly as reasonably practicable: (i)(A) when a Registration Statement, any pre-effective amendment, any Prospectus or any prospectus supplement or post- effective amendment to a Registration Statement or any free writing prospectus is proposed to be filed, (B) when the SEC notifies the Company whether there will be a "review" of such Registration Statement and whenever the SEC comments on such Registration Statement (in which case the Company shall provide true and complete copies thereof and all written responses thereto to each Holder and underwriter, if applicable, other than information which the Company determines in good faith would constitute material and non-public information that is not already in the possession of such Holder) and (C) with respect to each Registration Statement or any post- effective amendment thereto, when the same has been declared effective; (ii) of any request by the SEC or any other federal or state governmental or regulatory authority for amendments or supplements to a Registration Statement or Prospectus or for additional information (whether before or after the effective date of the Registration Statement) or any other correspondence with the SEC or any such authority relating to, or which may affect, the Registration Statement; (iii) of the issuance by the SEC or any other governmental or regulatory authority of any stop order, injunction or other order or requirement suspending the effectiveness of a Registration Statement covering any or all of the Registrable Securities or the initiation of any Proceedings for that purpose; (iv) of the receipt by the Company of any notification with respect to the suspension of the qualification or exemption from qualification of any of the Registrable Securities for sale in any jurisdiction, or the initiation or threatening of any Proceeding for such purpose; (v) if, at any time, to the Company's knowledge, the representations and warranties of the Company in any applicable underwriting agreement or similar agreement cease to be true and correct in all material respects or (vi) of the occurrence of any event that makes any statement made in such Registration Statement or Prospectus or any document incorporated or deemed to be incorporated therein by reference untrue in any material respect or if, as a result of such event or the passage of time, such Registration Statement, Prospectus or other documents requires revisions so that, in the case of such Registration Statement or the Prospectus, as the case may be, it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary

to make the statements therein (in the case of the Prospectus, in light of the circumstances under which they were made) not misleading, or when any Issuer Free Writing Prospectus includes information that may conflict with the information contained in the Registration Statement or Prospectus, or if, for any other reason, it shall be necessary during such time period to amend or supplement such Registration Statement or Prospectus in order to comply with the Securities Act, which shall correct such misstatement or omission or effect such compliance.

(e)     The Company will use its reasonable best efforts to avoid the issuance of or, if issued, obtain the withdrawal of (i) any stop order or other order suspending the effectiveness of a Registration Statement or the use of any Prospectus or (ii) any suspension of the qualification (or exemption from qualification) of any of the Registrable Securities for sale in any jurisdiction, at the earliest practicable moment, or if any such order or suspension is made effective during any Suspension Period, at the earliest practicable moment after the Suspension Period is over.

(f)     During the Effectiveness Period or the Shelf Period, as applicable, the Company will furnish to each Holder and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, upon their request, without charge, at least one (1) conformed copy of each Registration Statement and each amendment thereto and all exhibits to the extent requested by such Holder or underwriter (including those incorporated by reference) promptly after the filing of such documents with the SEC.

(g)     The Company will promptly deliver to each Holder and the managing underwriter or underwriters of an underwritten offering of Registrable Securities, if applicable, without charge, as many copies of each Prospectus or Prospectuses (including each form of prospectus) and each amendment or supplement thereto as such Holder or underwriter may reasonably request in order to facilitate the disposition of the Registrable Securities by such Holder or underwriter. The Company consents to the use of such Prospectus and each amendment or supplement thereto by each of the selling Holders and any applicable underwriter in connection with the offering and sale of the Registrable Securities covered by such Prospectus and any amendment or supplement thereto. The Company will use its reasonable best efforts to (i) register or qualify the Registrable Securities covered by a Registration Statement, no later than the time such Registration Statement is declared effective by the SEC, under all applicable securities laws (including the "blue sky" laws) of such jurisdictions each underwriter, if any, or any Holder shall reasonably request; (ii) keep each such registration or qualification effective during the period such Registration Statement is required to be kept effective under the terms of this Annex I and (iii) do any and all other acts and things which may be reasonably necessary or advisable to enable such underwriter, if any, and each Holder to consummate the disposition in each such jurisdictions of the Registrable Securities covered by such Registration Statement; provided, however, that the Company will not be required to (A) qualify generally to do business in any jurisdiction where it would not otherwise be required to qualify but for this subparagraph, (B) subject itself to taxation in any such jurisdiction or (C) consent to general service of process (other than service of process in connection with such registration or qualification or any sale of Registrable Securities in connection therewith) in any such jurisdiction.

(h)     The Company will cooperate with each Holder and the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if applicable, to facilitate the timely preparation and delivery of certificates representing Registrable Securities to be delivered to a transferee pursuant to a Registration Statement, which certificates shall be free of all restrictive legends indicating that the Registrable Securities are unregistered or unqualified for resale under the Securities Act, Exchange Act or other applicable securities laws, and to enable such Registrable Securities to be in such denominations and registered in such names as each Holder or the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if any, may request in writing. In connection therewith, if required by the Company's transfer agent, the Company will promptly, after the effective date of the Registration Statement, cause an opinion of counsel as to the effectiveness of the

Registration Statement to be delivered to and maintained with such transfer agent, together with any other authorizations, certificates and directions required by the transfer agent which authorize and direct the transfer agent to issue such Registrable Securities without any such legend upon sale by the Holder or the underwriter or managing underwriter of an underwritten offering of Registrable Securities, if any, of such Registrable Securities under the Registration Statement.

(i)        Upon the occurrence of any event contemplated by Section 3(d)(vi) of this Annex I, as promptly as reasonably practicable, the Company will prepare a supplement or amendment, including a post-effective amendment, if required by applicable law, to the affected Registration Statement or a supplement to the related Prospectus or any document incorporated or deemed to be incorporated therein by reference or to the applicable Issuer Free Writing Prospectus, and file any other required document so that, as thereafter delivered, no Registration Statement nor any Prospectus will contain an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein (in the case of a Prospectus, in light of the circumstances under which they were made) not misleading and no Issuer Free Writing Prospectus will include information that conflicts with information contained in the Registration Statement or Prospectus and such that each selling Holder can resume disposition of such Registrable Securities covered by such Registration Statement or Prospectus.

(j)        Such Holders may distribute the Registrable Securities by means of an underwritten offering; provided that (i) such Holders provide to the Company a Shelf Takedown Notice or Demand Notice of their intention to distribute Registrable Securities by means of an underwritten offering, (ii) the right of any Holder to include such Holder's Registrable Securities in such registration shall be conditioned upon such Holder's participation in such underwriting and the inclusion of such Holder's Registrable Securities in the underwriting to the extent provided herein, (iii) each Holder participating in such underwritten offering agrees to enter into an underwriting agreement in customary form and sell such Holder's Registrable Securities on the basis provided in any underwriting arrangements approved by the Holders entitled to select the managing underwriter or managing underwriters hereunder (provided that any such Holder shall not be required to make any representations or warranties to or agreements with the Company or the underwriters other than representations, warranties, agreements and indemnities regarding such Holder, such Holder's title to the Registrable Securities, such Holder's intended method of distribution, the accuracy of information concerning such Holder as provided by or on behalf of such Holder, and any other representations required to be made by the Holder under applicable law, and the aggregate amount of the liability of such Holder in connection with such offering shall not exceed such Holder's net proceeds from the disposition of such Holder's Registrable Securities in such offering) and (iv) each Holder participating in such underwritten offering completes and executes all questionnaires, powers of attorney, custody agreements and other documents reasonably required under the terms of such underwriting arrangements. The Company hereby agrees with each Holder that, in connection with any underwritten offering in accordance with the terms hereof, it will negotiate in good faith and execute all indemnities, underwriting agreements and other documents reasonably required under the terms of such underwriting arrangements, and will procure auditor "comfort" letters addressed to the underwriters in the offering from the Company's independent certified public accountants or independent auditors (and, if necessary, any other independent certified public accountants or independent auditors of any subsidiary of the Company or any business acquired by the Company for which financial statements and financial data are, or are required to be, included in the Registration Statement) in customary form and covering such matters of the type customarily covered by comfort letters as the underwriters reasonably request, dated the date of execution of the underwriting agreement and brought down to the closing under the underwriting agreement.

(k)        The Company will obtain for delivery to the underwriter or underwriters of an underwritten offering of Registrable Securities, an opinion or opinions from counsel for the Company

(including any local counsel reasonably requested by the underwriters) dated the most recent effective date of the Registration Statement or, in the event of an underwritten offering, the date of the closing under the underwriting agreement, in customary form, scope and substance, covering the matters customarily covered in opinions requested in sales of securities or underwritten offerings, which opinions shall be reasonably satisfactory to such underwriters and its counsel.

(l)      For a reasonable period prior to the filing of any Registration Statement and throughout the Effectiveness Period or the Shelf Period, as applicable, the Company will make available upon reasonable notice at the Company's principal place of business or such other reasonable place for inspection by a representative appointed by a majority of the Holders covered by the applicable Registration Statement, by any managing underwriter or managing underwriters selected in accordance with this Annex I and by any attorney, accountant or other agent retained by such Holders or underwriter, such financial and other information and books and records of the Company, and cause the officers, employees, counsel and independent certified public accountants of the Company to respond to such inquiries, as shall be reasonably necessary (and in the case of counsel, not violate an attorney-client privilege in such counsel's reasonable belief) to conduct a reasonable investigation within the meaning of Section 11 of the Securities Act.

(m)      The Company will (i) provide and cause to be maintained a transfer agent and registrar for all Registrable Securities covered by the applicable Registration Statement from and after a date not later than the effective date of such Registration Statement and provide and enter into any reasonable agreements with a custodian for the Registrable Securities and (ii) not later than the effective date of the applicable Registration Statement, provide a CUSIP number for all Registrable Securities.

(n)      The Company will cooperate with each Holder of Registrable Securities and each underwriter or agent participating in the disposition of Registrable Securities and their respective counsel in connection with any filings required to be made with FINRA and in performance of any due diligence investigations by any underwriter.

(o)      The Company will use its reasonable best efforts to comply with all applicable rules and regulations of the SEC, any securities exchange on which the Company's securities are listed, FINRA and any state securities authority, and make available to each Holder, as soon as reasonably practicable after the effective date of the Registration Statement, an earnings statement covering at least twelve (12) months which shall satisfy the provisions of Section 11(a) of the Securities Act and Rule 158.

(p)      The Company will use its reasonable best efforts to ensure that any Issuer Free Writing Prospectus utilized in connection with any Prospectus complies in all material respects with the Securities Act, is filed in accordance with the Securities Act to the extent required thereby, is retained in accordance with the Securities Act to the extent required thereby and, when taken together with the related Prospectus, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

(q)      In connection with any registration of Registrable Securities pursuant to this Annex I, the Company will use its reasonable best efforts to expedite or facilitate the disposition of Registrable Securities by such Holders, including using reasonable best efforts to cause appropriate officers and employees to be available, on a customary basis and upon reasonable advance notice, to meet with prospective investors in presentations, meetings and road shows but not in connection with more than four offerings in any twelve (12) months.

(r)      Following the listing of the Common Interests on the NYSE or NASDAQ or any successor national securities exchange, the Company will use its reasonable best efforts to maintain such listing until each Holder has sold all of its Registrable Securities.

4.    <u>Registration Expenses</u>. The Company shall bear all reasonable Registration Expenses in connection with any Demand Registration, Shelf Registration, Shelf Takedown Notice or Piggyback Registration (excluding any Selling Expenses), whether or not any Registrable Securities are sold pursuant to a Registration Statement.

(a)    "<u>Registration Expenses</u>" shall include, without limitation, (i) all registration, qualification and filing fees and expenses (including fees and expenses (A) of the SEC or FINRA, incurred in connection with the listing of the Registrable Securities on the Trading Market and in compliance with applicable state securities or "blue sky" laws (including reasonable documented fees and disbursements of counsel for the underwriters in connection with "blue sky" qualifications of the Registrable Securities)); (ii) printing expenses (including expenses of printing certificates for the Company's shares and of printing prospectuses); (iii) road show expenses of the Company and the underwriters, if any; (iv) messenger, telephone and delivery expenses; (v) reasonable documented fees and disbursements of counsel (including any local counsel), auditors and accountants for the Company (including the expenses incurred in connection with "comfort letters" required by or incident to such performance and compliance); (vi) the reasonable documented fees and disbursements of underwriters to the extent customarily paid by issuers or sellers of securities (including, if applicable, the fees and expenses of any "qualified independent underwriter" (and its counsel) that is required to be retained in accordance with the rules and regulations of FINRA); (vii) fees and expenses of any special experts retained by the Company; (viii) Securities Act liability insurance, if the Company so desires such insurance, and (ix) reasonable documented fees and disbursements of one counsel (along with any reasonably necessary local counsel) representing all Holders mutually agreed by Holders of a majority of the Registrable Securities participating in the related registration. In addition, the Company shall be responsible for all of its expenses incurred in connection with the consummation of the transactions contemplated by this <u>Annex I</u> (including expenses payable to third parties and including all salaries and expenses of the Company's officers and employees performing legal or accounting duties), the expense of any annual audit, the expense of any liability insurance it determines to obtain and any underwriting fees, discounts, selling commissions and stock transfer taxes and related legal and other fees applicable to securities sold by the Company and in respect of which proceeds are received by the Company. Each Holder shall pay any Selling Expenses applicable to the sale or disposition of such Holder's Registrable Securities pursuant to any Demand Registration Statement or Piggyback Registration Statement, or pursuant to any Shelf under which such selling Holder's Registrable Securities were sold, in proportion to the amount of such selling Holder's shares of Registrable Securities sold in any offering under such Demand Registration Statement, Piggyback Registration Statement or Shelf.

(b)    Notwithstanding anything to the contrary contained herein, the Company shall have no obligation to pay any underwriting discounts or selling commissions attributable to the Registrable Securities being sold by the Holders, which underwriting discounts or selling commissions shall be borne by the selling Holders, pro rata  in proportion to the respective amount of Registrable Securities each is selling in such offering.

5.    <u>Indemnification</u>.

(a)    If requested by a participating Holder, the Company shall indemnify and hold harmless each underwriter, if any, engaged in connection with any registration referred to in <u>Section 2</u> of this <u>Annex I</u> and provide representations, covenants, opinions and other assurances to such underwriter in form and substance reasonably satisfactory to such underwriter and the Company. Further, the Company shall indemnify and hold harmless each Holder, its Affiliates and each of their respective officers and directors and any Person who controls any such Holder (within the meaning of the Securities Act) and any agent thereof (collectively, "<u>Indemnified Persons</u>"), to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, joint or several, costs (including reasonable costs of preparation and reasonable attorneys' fees) and expenses, judgments,

fines, penalties, interest, settlements or other amounts, in each case to the extent, but only to the extent, arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, in which any Indemnified Person may be involved, or is threatened to be involved, as a party or otherwise, under the Securities Act or otherwise (collectively, "Losses"), as incurred, arising out of, based upon, resulting from or relating to (i) any untrue or alleged untrue statement of a material fact contained in any Registration Statement under which any Registrable Securities were registered, Prospectus (including in any preliminary prospectus (if used prior to the effective date of such Registration Statement)), or in any summary or final prospectus or free writing prospectus or in any amendment or supplement thereto or in any documents incorporated by reference in any of the foregoing or (ii) the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements made therein (in the case of a Prospectus or preliminary Prospectus, in light of the circumstances under which they were made), not misleading; provided, however, that the Company shall not be liable to any Indemnified Person to the extent that any such Losses arise out of, are based upon or result from an untrue or alleged untrue statement or omission or alleged omission made in such Registration Statement, such preliminary, summary or final prospectus or free writing prospectus or such amendment or supplement, in reliance upon and in conformity with written information furnished to the Company by or on behalf of such Indemnified Person specifically for use in the preparation thereof.

(b)      In connection with any Registration Statement filed by the Company pursuant to Section 2 of this Annex I in which a Holder has registered for sale its Registrable Securities, each such selling Holder agrees (severally and not jointly) to indemnify and hold harmless, to the fullest extent permitted by law, the Company, its directors and officers, each Person who controls the Company (within the meaning of the Securities Act or the Exchange Act) and each underwriter, if any, from and against any Losses resulting from (i) any untrue statement of a material fact in any Registration Statement under which such Registrable Securities were registered or sold under the Securities Act (including any final, preliminary or summary Prospectus contained therein or any amendment thereof or supplement thereto or any documents incorporated by reference therein) or (ii) any omission to state therein a material fact required to be stated therein or necessary to make the statements therein (in the case of a Prospectus or preliminary Prospectus, in light of the circumstances under which they were made) not misleading, in each case to the extent, but only to the extent, that such untrue statement or omission is contained in any information furnished in writing by or on behalf of such selling Holder to the Company specifically for inclusion in such Registration Statement or Prospectus. In no event shall the liability of any selling Holder hereunder be greater in amount than the dollar amount of the net proceeds received by such Holder under the sale of Registrable Securities giving rise to such indemnification obligation less any amounts paid by such Holder pursuant to Section 5(d) of this Annex I and any amounts paid by such Holder as a result of liabilities incurred under the underwriting agreement, if any, related to such sale. The underwriter for any underwritten offer shall provide the Company and any selling Holder with customary indemnifications and agree to contribution.

(c)      Any indemnified Person shall (i) give prompt written notice to the indemnifying party of any claim with respect to which it seeks indemnification; provided that any delay or failure to so notify the indemnifying party shall not relieve the indemnifying party of its obligations hereunder except to the extent, if at all, that it is actually and materially prejudiced by reason of such delay or failure and (ii) permit such indemnifying party to assume the defense of such claim with counsel reasonably satisfactory to the indemnified party; provided, however, that any indemnified Person shall have the right to select and employ separate counsel and to participate in the defense of such claim, but the fees and expenses of such counsel shall be at the expense of such indemnified Person unless (A) the indemnifying party has agreed in writing to pay such fees or expenses, (B) the indemnifying party shall have failed to assume the defense of such claim within a reasonable time after receipt of notice of such claim from the indemnified Person and employ counsel reasonably satisfactory to such indemnified Person, (C) the indemnified party has reasonably concluded (based upon advice of its counsel) that there

may be legal defenses available to it or other indemnified Persons that are different from or in addition to those available to the indemnifying party or (D) in the reasonable judgment of any such indemnified Person (based upon advice of its counsel) a conflict of interest may exist between such indemnified Person and the indemnifying party with respect to such claims (in which case, if the indemnified Person notifies the indemnifying party in writing that such indemnified Person elects to employ separate counsel at the expense of the indemnifying party, the indemnifying party shall not have the right to assume the defense of such claim on behalf of such indemnified Person). If the indemnifying party assumes the defense, the indemnifying party shall not have the right to settle such action without the consent of the indemnified Person. If such defense is not assumed by the indemnifying party, the indemnifying party will not be subject to any liability for any settlement made without its prior written consent, but such consent may not be unreasonably delayed, withheld or conditioned. It is understood that the indemnifying party or parties shall not, except as specifically set forth in this Section 5(c), in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees, disbursements or other charges of more than one separate firm admitted to practice in such jurisdiction at any one time.

(d)     If for any reason the indemnification provided for in Section 5(a) and Section 5(b) of this Annex I is unavailable to an indemnified Person (other than as a result of exceptions contained in Section 5(a) and Section 5(b) of this Annex I) or insufficient in respect of any Losses referred to therein, then the indemnifying party shall contribute to the amount paid or payable by the indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the indemnifying party on the one hand and the indemnified Person or Persons on the other hand in connection with the acts, statements or omissions that resulted in such Losses, as well as any other relevant equitable considerations. In connection with any Registration Statement filed with the SEC by the Company, the relative fault of the indemnifying party on the one hand and the indemnified Person on the other hand shall be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the indemnifying party or by the indemnified Person and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission. The parties hereto agree that it would not be just or equitable if contribution pursuant to this Section 5(d) were determined by pro rata allocation or by any other method of allocation that does not take account of the equitable considerations referred to in this Section 5(d). No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation. The amount paid or payable by an indemnified Person as a result of the Losses referred to in Section 5(a) and Section 5(b) of this Annex I shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified Person in connection with investigating or defending any such action or claim. Notwithstanding the provisions of this Section 5(d), in connection with any Registration Statement filed by the Company, a selling Holder shall not be required to contribute any amount in excess of the dollar amount of the net proceeds received by such Holder from the sale of Registrable Securities giving rise to such contribution obligation less any amounts paid by such Holder pursuant to Section 5(b) of this Annex I and any amounts paid by such Holder as a result of liabilities incurred under the underwriting agreement, if any, related to such sale. If indemnification is available under this Section 5, the indemnifying parties shall indemnify each indemnified Person to the full extent provided in Section 5(a) and Section 5(b) of this Annex I without regard to the provisions of this Section 5(d).

(e)     The remedies provided for in this Section 5 are not exclusive and shall not limit any rights or remedies which may otherwise be available to any indemnified party at law or in equity.

6.     Facilitation of Sales Pursuant to Rule 144 and Rule 144A.  The Company shall (a) to the extent it shall be required to do so under the Exchange Act, use its reasonable best efforts to timely

file the reports required to be filed by it under the Exchange Act or the Securities Act and the rules adopted by the SEC thereunder (including the reports under Sections 13 and 15(d) of the Exchange Act referred to in subparagraph (c)(1) of Rule 144), and (b) take such further action as any Holder may reasonably request and make available information necessary to comply with Rule 144 and Rule 144A, all to the extent required from time to time to enable the Holders to sell Registrable Securities without registration under the Securities Act within the limitations of the exemption provided by Rule 144 and 144A.  Upon the written request of any Holder in connection with that Holder's sale pursuant to Rule 144 or Rule 144A, the Company shall deliver to such Holder a written statement as to whether it has complied with such requirements.

7.      <u>Company Undertakings</u>.  In furtherance of the registration provisions set forth herein intended to facilitate the sale of Common Interests by the Holders, the Company shall furnish to each Holder (a) within ninety (90) days of the end of each fiscal year (or such longer period as may be permitted by Rule 12b-25 of the Exchange Act), annual audited financial statements for such fiscal year and (b) within forty-five (45) days of the end of each of the first three fiscal quarters of every fiscal year (or such longer period as may be permitted by Rule 12b-25 of the Exchange Act), unaudited financial statements for the interim period as of, and for the period ending on, the end of such fiscal quarter, in each case to be prepared on a basis substantially consistent with then applicable SEC.  Notwithstanding the foregoing, the Company will be deemed to have furnished such reports referred to above to the Holders if the Company has filed such reports with the SEC via the EDGAR filing system and such reports are publicly available

8.      <u>Discontinued Disposition</u>.  Each Holder agrees by its acquisition of Registrable Securities that, upon receipt of a notice from the Company of the occurrence of any event of the kind described in clauses (ii) through (iv) and (vi) of <u>Section 3(d)</u> of this <u>Annex I</u> or the occurrence of a Suspension Period, such Holder will forthwith discontinue disposition of such Registrable Securities under the Registration Statement until such Holder's receipt of the copies of the supplemental Prospectus or amended Registration Statement or until it is advised in writing by the Company that the use of the applicable Prospectus may be resumed, and, in either case, has received copies of any additional or supplemental filings that are incorporated or deemed to be incorporated by reference in such Prospectus or Registration Statement.  The Company may provide appropriate stop orders to enforce the provisions of this <u>Section 8</u>.  In the event the Company shall give any such notice, the period during which the applicable Registration Statement is required to be maintained effective shall be extended by the number of days during the period from and including the date of the giving of such notice to and including the date when each seller of Registrable Securities covered by such Registration Statement either receives the copies of the supplemented or amended Prospectus or is advised in writing by the Company that the use of the Prospectus may be resumed.

**Exhibit A**
**Certificate of Formation**

See attached.

**Exhibit B**

**Name and Notice Information of Members, Number of Common Interests; Number of Nexus Incentive Interests; and Percentage Interests**

*Last Updated: [●]*

| Name of Member | Notice Information | Number of Common Interests | Number of Nexus Incentive Interests | Percentage Interest |
|---|---|---|---|---|
| [●] | | | | |

**Exhibit C**
**Capital Contributions**

| Name of Member | | Total Initial Capital Contributions | Additional Capital Contributions |
|---|---|---|---|
| [●] | | $ [●] | $[●] |

**Exhibit D**
**Form of Joinder Agreement**

This Joinder Agreement (this "Joinder Agreement") is made as of **[_____ ___, 20__]** by the undersigned (the "Transferee") in accordance with the Amended and Restated Limited Liability Company Agreement of [Reorganized Careismatic Brands, LLC], dated as of [●] (as the same may be amended from time to time in accordance with its terms, the "LLC Agreement"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the LLC Agreement.

The Transferee hereby acknowledges, agrees and confirms that, by its execution of this Joinder Agreement, it shall become a party to the LLC Agreement and shall be fully bound by and subject to, all of the covenants, terms and conditions of the LLC Agreement as though an original party thereto and shall be deemed and is hereby admitted as, a Member for all purposes thereof and entitled to all the rights incidental thereto, as of the date first written above.

The Transferee hereby makes the representations and warranties of a Member set forth in the LLC Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Joinder Agreement as of the date first written above and hereby authorizes this signature page to be attached to a counterpart of the LLC Agreement.

**[TRANSFEREE]**

By: _____
  Name:
  Title:

**Exhibit E**
**Form of Warrant**

*[To be attached].*

*[Link-to-previous setting changed from off in original to on in modified.].*

**Schedule I**
**Competitors**

[Barco Uniforms
Fabletics
FIGS
Hanesbrands
Headwaters
Jaanu
Kindthreads
Partners Group
Superior Group of Companies]

## Exhibit B

### Identities of the Members of the New Board

As of the Effective Date, the terms of the current members of the CBI Parent Transaction Committee, the Intermediate Transaction Committee, and the boards of directors of each of the applicable Debtor Entities shall expire and the New Board will be instituted. The New Board will be comprised of seven voting members: Reorganized Careismatic's Chief Executive Officer and six members appointed by the First Lien Ad Hoc Group. The six members appointed by the Ad Hoc Group will include: (a) Natalie MacLennan; (b) Tom McInerney; (c) Evan Glucoft; (d) Jyothi Rao; (e) Greg Stuecheli; and (f) one director selected by Nexus.

### Biographies/Affiliations

- ***Natalie MacLennan.*** Ms. MacLennan is an accomplished leader with over 15 years of experience in strategy, retail and apparel. As the CEO of Dockers, she oversees all aspects of the brand across product, marketing, operations, and commercial. Since joining the Dockers team in 2020, Natalie has been pivotal in transforming Dockers into a larger and more profitable global, casual lifestyle brand. She previously ran the Dockers direct-to-consumer business globally, across retail and ecommerce, in addition to running business development, licensing, and overall brand strategy. Natalie joined Levi Strauss & Co. in 2017 to lead corporate strategy, playing a key role in the LS&Co. IPO, and driving strategic initiatives across the company. She then joined the Americas leadership team, supporting both Levi's and Dockers. Prior to joining LS&Co., Natalie spent 10 years in management consulting, most recently at The Boston Consulting Group, helping companies drive growth across apparel and consumer goods industries. She holds a bachelor's degree in mathematics from McGill University and an M.B.A. in finance from The Wharton School.

- ***Tom McInerney.*** Mr. McInerney has extensive business transformation and restructuring experience and is currently the Founder and Managing Member of M4 Advisors LLC, a business advisory firm that he started in September 2018. Most recently, Mr. McInerney was Chief Executive Officer of MedOptions, which was previously one of the largest outsourced providers of behavioral healthcare services to assisted living and skilled nursing facilities in the country serving nearly 1,600 facilities within a multi-state footprint. He originally joined the company as President and Chief Operating Officer leading various support center departments including the finance department as de-facto Chief Financial Officer before being promoted by the Board of Directors to Chief Executive Officer. Prior to joining MedOptions he held various positions with Employer Direct Healthcare, LLC, Centerbridge Partners, L.P. and its former affiliate Lantern Asset Management, LLC, Ally's Special Assets Group, Cerberus Operations and Advisory Company, and Marotta Gund Budd & Dzera, LLC, among others. He graduated from Princeton University with a B.A. in history and received an M.B.A. in finance, from the Stern School of Business at New York University.

- **Evan Glucoft.**  Mr. Glucoft is a Managing Director with Nexus Capital Management LP. Mr. Glucoft joined Nexus in 2017.  He currently serves on the Board of Directors of Savvas Learning Company, Xdora, HDT Global, and Medialab.ai.  Previously, Mr. Glucoft was a Senior Analyst at Alden Global Capital, where he focused on distressed and special-situation investments.  Prior to that time, Mr. Glucoft was at Moelis & Company, where he helped successfully restructure over $22 billion in liabilities.  He holds an M.B.A. from the University of Chicago and a B.A. from the University of California, Los Angeles.

- **Jyothi Rao.**  Ms. Rao is a retail executive and board advisor with over 30 years of experience in the retail sector.  She served as the President and CEO of Intermix (from 2014 - 2022), a leading omni-channel fashion retailer where she had full P&L responsibility for the business.    Ms. Rao is a multi-disciplinary operator and customer-centric leader with deep expertise in strategy, product, brand-building, and omni-channel retail.  She has worked for start-ups (Gilt Groupe), PE-backed (Intermix), and Fortune 500 companies (Gap Inc. & PVH).  She now serves on a public board at J Jill (JILL) where, during her tenure, the company has transformed from a "Going Concern" to a profitable company with a healthy balance sheet.  At J Jill, Ms. Rao serves on the Nominating, Governance, and ESG committee where she was the board lead on the development of the company's first ESG strategy.  She also serves on the Compensation committee.  Additionally, Ms. Rao advises one of the fastest growing Gen Z skincare brands in the market, Bubble Beauty, as well as a digital experience data analytics company, Contentsquare.  She is also a Senior Advisor at Boston Consulting Group in their Consumer, Fashion & Luxury practice, and a Board member of a non-profit called SALUTE, which is focused on advancing South Asian women leaders.  Ms. Rao holds a bachelor's degree in business administration from the University of Texas at Austin.

- **Greg Stuecheli.**  Mr. Stuecheli has over 25 years of experience in the credit and equity markets.  Currently, he is a Partner of Trive Mockingbird Management LLC which was formed in October 2020.  Prior to that, he was a Founding Partner of Mockingbird Credit Partners LLC which was formed in October 2013.  Until September 2012, he managed over $1.5 billion in assets for Highland Funds, including senior secured corporate loans, high yield corporate bonds, and structured products.  Mr. Stuecheli served as Portfolio Manager at Highland Floating Rate Opportunities Fund (an open-end mutual fund invested predominantly in senior secured corporate loans) and Nexpoint Credit Strategies Fund (a closed-end fund invested in senior secured corporate loans, structured products, high-yield bonds and equity).  Prior to his role at Highland Funds, Mr. Stuecheli was a Partner and Portfolio Manager at Highland Capital where he managed senior secured corporate loans, distressed credit, high-yield bonds, and special situations.  He served on the board of directors of CCS Medical Holding, Inc., EBM Holdco, LLC, LLV Holdco, LLC (as Chairman), and Safety-Kleen Holdco, Inc.  Prior to joining Highland in June 2002, Mr. Stuecheli served as an analyst at Gryphon Management Partners, L.P. (from 2000 - 2002) where his primary responsibilities included researching long and short investments.  Mr. Stuecheli was a Summer Associate with Hicks, Muse, Tate, & Furst (in 1999).  Mr. Stuecheli began his career as a chemical engineer at Jacobs Engineering Group and Cytec Industries (from 1995 - 1998).  He received an M.B.A. from Southern Methodist University

and a B.S. in chemical engineering from Rensselaer Polytechnic Institute and is a CFA charterholder.

- One (1) director to be selected by Nexus.

## Exhibit E

## Restructuring Steps Plan

This Restructuring Steps Plan sets forth a summary description of certain of the proposed Restructuring Transactions[1] to be effectuated prior to, on, or following the Effective Date in connection with the Plan.

The Debtors reserve all rights to modify, amend, supplement, or restate any part of this Restructuring Steps Plan at any time, and the Restructuring Transactions remain subject to modification, refinement, and change in all respects at any time, subject to the consent rights in the Plan and RSA. This Restructuring Steps Plan is subject to continued review, as applicable, by the Debtors and the Required Consenting First Lien Lenders, and the final version of any such documents may contain material differences from the version filed herewith. The respective rights of the Debtors and the Required Consenting First Lien Lenders, as applicable, are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan, or by order of the Court; provided that if any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Court.

The Plan provides that this Plan Supplement shall include the Restructuring Steps Plan and the various actions and transactions set forth in this Restructuring Steps Plan. The Debtors will also provide notice of any modifications or deviations from this Restructuring Steps Plan, subject to the applicable consent rights set forth in the RSA and the Plan. Pursuant to the Confirmation Order and the Plan, the Debtors and the Post-Effective Date Debtors, as applicable, shall have the right to take any and all actions as may be necessary or appropriate in their discretion, to implement any action or transaction described in, contemplated by, necessary or appropriate to effectuate the Plan, the Restructuring Steps Plan, and the Restructuring Transactions.

Specifically, pursuant to the Plan, and without limiting the terms thereof, the Debtors intend to implement the below Restructuring Transactions after the Confirmation Date but prior to, on, or following the Effective Date. The Restructuring Transactions shall occur in the order set forth below, unless otherwise specified.

---

[1] Capitalized terms used but not defined herein shall have the definitions set forth in the Plan. In the event of an inconsistency between the Plan and the terms hereof, the terms of the Plan shall control.

***On or before the Effective Date,***

*Upon the Effective Date, Reorganized Careismatic Brands, LLC (a new Delaware limited liability company that will be treated as a partnership for U.S. federal income tax purposes) will be "Reorganized Careismatic" pursuant to the Plan and the issuer of the New Common Stock and Second Lien Warrants, and Buyer will be the issuer of the Exit Term Loans.*

**Step 1**:   An agent for Holders of Allowed First Priority Claims forms Grandparent, LLC ("Grandparent"), a Delaware limited liability company that will elect to be taxed as a corporation for U.S. federal income tax purposes.  Immediately upon formation, no Person will own any interests in Grandparent.

**Step 2**:  Grandparent forms Parent, LLC ("Parent"), a Delaware limited liability company that will elect to be taxed as a corporation for U.S. federal income tax purposes.

**Step 3**:  Parent forms Buyer, LLC ("Buyer"), a Delaware limited liability company that will elect to be taxed as a corporation for U.S. federal income tax purposes.

***On the Effective Date, Pursuant to the Plan,***

**Step 4**:   Pursuant to a contribution agreement among Grandparent, Parent, and Buyer (the "Contribution Agreement"), Grandparent issues and contributes 100% of the Grandparent equity and warrants to Parent.

**Step 5**:  Pursuant to the Contribution Agreement, Parent then contributes such Grandparent equity and warrants to Buyer.  Accordingly, immediately after Step 5, Buyer owns 100% of the Grandparent equity and warrants.

**Step 6**:  Except as otherwise set forth in the books and records of the Debtors or Post-Effective Date Debtors, (a) all existing domestic Intercompany Claims are cancelled; (b) all existing Intercompany Claims involving the Stub Entities (as defined below) and any foreign entity are cancelled; and (c) all other intercompany claims involving foreign entities are Reinstated.

**Step 7**:  Buyer acquires 100% of the equity interests of Trojan Holdco, Inc. from New Trojan Parent, Inc. (the "Seller") in exchange for (i) 100% of the Grandparent equity and warrants that Buyer received in Step 5 and (ii) the issuance to Seller of the Exit Term Loan Facility (together, the "Careismatic Purchase Consideration").

**Step 8:**  The Seller distributes 100% of the Careismatic Purchase Consideration, together with any Cash intended to fund distributions under the Plan (collectively, the "Plan Consideration") to applicable Holders of Allowed Claims pursuant to the Plan and transfers the GUC Trust Assets to the GUC Trust.  Such distributions and transfer are in satisfaction of applicable Allowed Claims.

**Step 9:**  Holders of (i) Allowed First Priority Claims contribute the consideration received in Step 8 to Reorganized Careismatic in exchange for the New Common Stock, (ii) Allowed Second Lien Secured Claims contribute the consideration received in Step 8 to Reorganized Careismatic in exchange for the Second Lien Warrants, and (iii) Allowed DIP Claims contribute any Grandparent

2

equity deemed received in Step 8 in consideration of their DIP Premiums to Reorganized Careismatic in exchange for New Common Stock.

***Following the Effective Date,***

**Step 10**:  CBI Parent, L.P., CBI Midco, Inc., CBI Intermediate, Inc., and New Trojan Parent, Inc. (collectively, the "Stub Entities") wind down.  The acquisition agreements relating to Step 7 will provide that (i) Reorganized Careismatic will (a) be responsible for preparing and filing all tax returns relating to CBI Midco, Inc. and its subsidiaries and (b) control any related tax audits and (ii) CBI Midco, Inc., CBI Intermediate, Inc., and New Trojan Parent, Inc. will take all actions requested by Reorganized Careismatic in connection with the foregoing.

**Exhibit F**

**Schedule of Assumed Executory Contracts and Unexpired Leases**

Article V of the Plan provides that on the date that is ninety (90) days after the Effective Date, each Executory Contract or Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) is identified on the Assumed Executory Contracts and Unexpired Leases as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be assumed as of the Effective Date; (ii) is identified on the Rejected Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be rejected as of the Effective Date; (iii) previously expired or terminated pursuant to its own terms; (iv) is the subject of a motion to reject Filed on or before the Effective Date; or (v) is an insurance policy (which shall be treated in accordance with Article V.E); *provided* that the assumption, assumption and assignment, or rejection of all Executory Contracts and Unexpired Leases shall be subject to the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed).  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.

Article V of the Plan further provides that, notwithstanding anything to the contrary in the Plan, the Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List (i) to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List at any time prior to the Effective Date, and (ii) to add any Executory Contract or Unexpired Lease to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List not otherwise identified on the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List at any time through and including ninety (90) days after the Effective Date, the modifications thereto shall constitute assumption or rejection of such Executory Contract or Unexpired Lease as of the date of such modification, notwithstanding anything contained in Article V.A of the Plan; *provided* that, subject to Article V.C of the Plan, at any time during such ninety (90)-day period after the Effective Date, the Post-Effective Date Debtors shall remain liable for any and all amounts incurred under any such Executory Contract and Unexpired Lease not on the Rejected Executory Contracts and Unexpired Leases List in the ordinary course of business.  The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

Certain documents, or portions thereof, contained or to be contained in this **Exhibit F** and this Amended Plan Supplement remain subject to continued review, as applicable, by the Debtors and the Required Consenting First Lien Lenders, and the final version of any such document may contain material differences from the version filed herewith.  The respective rights of the Debtors and the Required Consenting First Lien Lenders, as applicable, are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement

this Amended Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan, or by order of the Court; *provided* that if any document in this Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Court.

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | 1 SYNC, Inc. | Princeton Pike Corporate Center | 1009 Lenox Drive, Suite 202 | Lawrenceville | NJ | 08648 | Trading partner services agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | 2 Hearts Medical, LLC | 17220 Hwy 3 | | Webster | TX | 77598 | Gold Elite | Carematic Brands, LLC | - |
| Software Agreement | 3CG ElmeTyd LLC | 16192 Coastal HWY | | Lewes | DE | 19958 | Vendor Chargeback Recovery Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | 410 Gift Shop | 1493 Joe Brown Hwy S | | Chadbourn | NC | 28431 | Gold Elite | Carematic Brands, LLC | - |
| Purchase Agreement | 48Forty Solutions, Inc. | 11740 KARY FWY | 11740 KARY FWY | HOUSTON | TX | 77079 | Affiliation Agreement | Strategic Distribution, L.P. | 11,607 |
| Elite Retailer Agreement | 4M Fashions/Uniform City | 6716 Blackhorse Pike | | Egg Harbor Township | NJ | 08234 | Gold Elite | Carematic Brands, LLC | - |
| Professional Services | 8020 Consulting LLC | 6303 Owensmouth Ave 10th Fl | | Woodland Hills | CA | 91367 | Contracting Agreement | Carematic Brands, LLC | - |
| Customer Contract | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | E-Commerce Agreement | Carematic Brands, LLC | - |
| Customer Contract | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A & K Uniforms | 2018 W. Ave J | | Lancaster | CA | 93536 | Gold Elite | Carematic Brands, LLC | - |
| Customer Contract | A Perfect Fit Uniform Boutique Inc. | 300 E John St Ste 154 | | Matthews | NC | 28105-4939 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A Perfect Fit Uniform Boutique Inc. | 300 E John St Ste 154 | | Matthews | NC | 28105-4939 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A Ray of Uniforms | 1177 US Route 9 | | Wappingers Falls | NY | 12590 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A-1 Uniforms | 1709 2nd St | | Coralville | IA | 52241-2622 | Titanium Elite | Carematic Brands, LLC | - |
| Customer Contract | A-1 Uniforms-Ogden | 134 31st St | | Ogden | UT | 84401-3811 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | A-1 Uniforms-Ogden | 134 31st St | | Ogden | UT | 84401-3811 | Titanium Elite | Carematic Brands, LLC | - |
| Customer Contract | AAA Uniforms | 3541 N Carefree Circle | | Colorado Springs | CO | 80917 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | AAA Uniforms | 3541 N Carefree Circle | | Colorado Springs | CO | 80917 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Abilene Uniform Center | 610 Walnut St | | Abilene | TX | 79601-5226 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | AC Uniforms & More | 3106 34th St | | Lubbock | TX | 79410 | Titanium Elite | Carematic Brands, LLC | - |
| Customer Contract | Ace Uniforms | 633 16th St | | San Diego | CA | 92101-7027 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Ace Uniforms | 633 16th St | | San Diego | CA | 92101-7027 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Action Uniform Co LLC | 1500 S New Rd | | Pleasantville | NJ | 8232 | Silver Elite | Carematic Brands, LLC | - |
| Customer Contract | Adam Medical Equipment Inc | 7215 Corporate Ct, Ste 201 | | Frederick | MD | 21703 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Adaptive Medical Equipment and Scrubs | 8701 Broadway St Ste 101 | | Pearland | TX | 77584 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Adorable Angels NY Inc | 321 E 149th St | | Bronx | NY | 10455 | Gold Elite | Carematic Brands, LLC | - |
| Purchase Agreement | Advantage Sales & Marketing | PO BOX 744347 | | ATLANTA | GA | 30374-4347 | ADDENDUM #0 TO ASSIGNMENT ORDER dated 12/8/2020 | AllHearts, LLC | - |
| Elite Retailer Agreement | Affordable Scrubs & Uniforms | 2401 NW 185th Ave | | Hillsboro | OR | 97124 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Aggieland Scrubs | 901 B Harvey Rd | | College Station | TX | 77840 | Gold Elite | Carematic Brands, LLC | - |
| Service Agreement | Air Power International Express (USA), Inc. | 8366 Aix Avenue | | Los Angeles | CA | 90045 | Logistics Services Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Aj's Uniforms | 900 N Mesa St | | El Paso | TX | 79902-2334 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Alabama Healthcare Equip., Inc. | 900 Woodward Ave | | Muscle Shoals | AL | 35661-1552 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Alameda Medical Supply | 1326 Airline Rd | | Corpus Christi | TX | 78412 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Alchemy Unlimited LLC | 1648 SAN ESTEBAN CIR | | ROSEVILLE | CA | 95747 | Independent Sales Contractor Agreement, Effective 11/1/2012 | Carematic Brands, LLC | - |
| Customer Contract | Alderman Acres Mfg Inc | 623 S Union St | | Coffeyville | KS | 67337-6019 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Alexanders Uniforms (E) | 999 Pontiac Ave | | Cranston | RI | 2920 | Diamond Elite | Carematic Brands, LLC | - |
| License Agreement | Alka Distributors | 8801 KELSO DR | | BALTIMORE | MD | 21221 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | All About Scrubs, Inc. | 1340 Missouri Ave N | | Largo | FL | 33770 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All About Scrubz Etc | 568 Blue Lakes Blvd N | | Twin Falls | ID | 83301 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All About Uniforms And More | 15600 Panama City Beach Parkway | | Panama City Beach | FL | 32413 | Diamond Elite | Carematic Brands, LLC | - |
| Consulting Agreement | ALL INDUSTRY CONSULTING LLC | 800 ANDOVA DR | | PROSPER | TX | 75078 | Marketplace Coaching, Advisory Services and Marketing Support | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Carematic Brands, LLC | - |
| License Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| | | | | | | | LIMITED LIABILITY COMPANY AGREEMENT OF ALLHEARTS, LLC DATED | | |
| Intercompany Agreement | AllHearts, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | 12/2/2022 | Carematic Brands, LLC | - |
| Intercompany Agreement | AllHearts, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Allhearts, LLC | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Alliance Medical SVS-Mobility Scooters | 3440 College St | | Beaumont | TX | 77701 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | All-Med Express | 9820 A Midlothian Turnpike | | North Chesterfield | VA | 23235 | Gold Elite | Carematic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Allowance Agreement #69978365 | Carematic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Freight Allowance Agreement #69993820 | Carematic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #69955030 | Carematic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #70028665 | Strategic Partners Corp. | - |
| Service Agreement | Amazon.com Services LLC and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #42732005 | Carematic, LLC | - |
| Service Agreement | Amazon.com Services LLC and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #42772995 | Carematic Brands, LLC | - |
| Service Agreement | Amazon.com Services, Inc. and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Allowance Agreement #27208675 | Carematic, LLC | - |
| Service Agreement | Amazon.com Services, Inc. and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Freight Allowance Agreement #26999765 | Carematic Brands, LLC | - |
| License Agreement | AMBER GARDNER | 18614 CREEK FOREST DRIVE | | MANVEL | TX | 77578 | LICENSING AGREEMENT | Carematic Brands, LLC | - |
| Service Agreement | Ameann Beauty | 19360 RINALDI ST #130 | | NORTHRIDGE | CA | 91326 | Proposal | Carematic Brands, LLC | - |
| Insurance Agreement | American Alternative Insurance Corporation | 555 College Rd E | | Princeton | NJ | 8540 | General Indemnity Agreement | Strategic Distribution, L.P. | - |
| Insurance Agreement | American Alternative Insurance Corporation | 555 College Rd E | | Princeton | NJ | 8540 | General Indemnity Agreement | Strategic Partners Corp. | - |
| Elite Retailer Agreement | American Discount Uniform | 912 New York Ave | | Lower Burrell | PA | 15068 | Diamond Elite | Carematic Brands, LLC | - |
| Service Agreement | Americas Express | 200 VESEY ST MANHATTAN | | NEW YORK | NY | 10285 | American Express@Work Services Agreement | Carematic Brands, LLC | - |
| | AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. | | | | | | AMERICAN EXPRESS @ WORK SERVICES AGREEMENT | | |
| License Agreement | American Gipper | PO BOX 360001 | | FORT LAUDERDALE | FL | 33336-0001 | E-Commerce Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | American Scrub Company | 3809 Faraon St | | St. Joseph | MO | 64506 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Amigo Store | 150 Dug Patch Trading Center | | London | KY | 40741 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Angela Fashion | 1521 Beaumont Ave | | McAllen | TX | 78501 | Titanium Elite | Carematic Brands, LLC | - |
| Customer Contract | Angels In Waiting USA | 423 S Main St | | McAllen | TX | 78501 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Angels New York World Inc | 28200 Hwy 189 Ste 205-C | | Lake Arrowhead | CA | 92352 | PE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Anna's Uniform Shop | 5424 5th Ave | | Brooklyn | NY | 11220 | Silver Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Anna's Uniform Shop | 23040 Woodward Ave | | Ferndale | MI | 48220-1340 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Annie's Fashion Scrubs Inc | 216-11 Jamaica Ave | | Queens | NY | 11428 | Gold Elite | Carematic Brands, LLC | - |
| Contractor Agreement | ANTHONY JONES | 2905/26TH AVE E | | LAKE TAPPS | WA | 98391 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Carematic Brands, LLC | - |
| Professional Services | AP Services LLC | 909 3rd Ave | | New York | NY | 10022 | Financial Services Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Apparel Pro | 2150-A W University Dr | | Tempe | AZ | 85281-7219 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Aray Medical Equipment | 4205 Spencer Hwy | | Pasadena | TX | 77504-1117 | Gold Elite | Carematic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 50Mbps Mountain Creek DC Backup | Carematic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 1GBPS Dedicated Fiber for LBJ | Carematic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 250Mbps backup Chatsworth | Carematic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 500MBPS Mountain Creek DC | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Athletic Lettering, Inc. | 2860 Eastern Blvd | | York | PA | 17402-2908 | Silver Elite | Carematic Brands, LLC | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 11/17/2000 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 11/17/2000 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 5/27/2013 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 5/27/2013 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | MAJOR ACCOUNTS AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC. | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | New Agreement Checklist | Carematic Brands, LLC | - |
| Service Agreement | Avalara | DEPT CH 16781 | | PALATINE | IL | 60055 | Sales Proposal executed 2/25/2021 | Carematic Brands, LLC | - |
| | | 150 NORTHWEST POINT BLVD, 2nd | | | | | | | |
| Insurance Agreement | Avalon Risk Management | Floor | | Elk Grove Village | IL | 60007 | Customs Bond Application & Indemnity | Krazy Kat Sportswear LLC | - |
| | | 150 NORTHWEST POINT BLVD, 2nd | | | | | | | |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | Floor | | Elk Grove Village | IL | 60007 | Collateral Policy Agreement | Carematic Brands, LLC | - |
| | | 150 NORTHWEST POINT BLVD, 2nd | | | | | | | |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | Floor | | Elk Grove Village | IL | 60007 | Collateral Policy Agreement | Krazy Kat Sportswear LLC | - |
| | | 150 NORTHWEST POINT BLVD, 2nd | | | | | | | |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | Floor | | Elk Grove Village | IL | 60007 | Bond Renewal e-mail dated 9/6/2023 | Krazy Kat Sportswear LLC | - |
| | | 150 NORTHWEST POINT BLVD, 2nd | | | | | | | |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | Floor | | Elk Grove Village | IL | 60007 | Collateral Instructions | Krazy Kat Sportswear LLC | - |
| Service Agreement | Avery Dennison | 170 Monarch Lane | | Miamisburg | OH | 45342 | 2019 Avery Dennison Service Agreement, No. 407023 | Strategic Distribution, L.P. | - |
| Others | Avery Dennison Hong Kong B.V. | 15/F, Harbourside HQ, | 8 Lam Chak Street | Kowloon Bay | | | Rebate Letter Agreement, 10/23/2020 | Carematic Brands, LLC | - |
| Elite Retailer Agreement | B & H Home Center | 1414 Rockaway Pkwy | | Brooklyn | NY | 11236 | Gold Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Ball, Stephen | 4557 JONESY LN | | MEMPHIS | TN | 38125 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | BandSores WorkWear | 8555 Weyand Ave | | Sacramento | CA | 95828 | Silver Elite | Carematic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Contractor Agreement | Barrett, Kathy | 2005 Cedar Drive | | New Brighton | MN | 55112-5239 | Independent Sales Contractor Agreement, Effective 3/1/2014 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bayou Medical Textile | 13488 Seymour Meyers Blvd | | Covington | LA | 70433-6876 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | BBC STUDIOS DISTRIBUTION LIMITED | 1 Television Centre | 101 Wood Lane | London | | W12 7FA | Merchandise Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Be Strong Uniforms & Learning Center | 26 Whittlesey Ave | | Norwalk | OH | 44857 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | PRODUCTION SERVICES AGREEMENT, 1/27/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | PRODUCTION SERVICES AGREEMENT, 1/27/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 11/1/2015 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 2/9/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 7/1/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 9/1/2015 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 9/1/2016 | Caresmatic Brands, LLC | - |
| Customer Contract | Beachley Medical Solutions | 6200 Days Cove Rd, Ste 3 | | White Marsh | MD | 21162 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Beakey, Clint | 10423 Tralcliff Drive | | Dallas | TX | 75238 | Independent Sales Contractor Agreement, Effective 3/1/2007 | Strategic Distribution, L.P. | - |
| Insurance Agreement | Beazley Insurance Services | 45 Rockefeller Plaza | | New York | NY | 10111 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Beazley Insurance Services | 45 Rockefeller Plaza | | New York | NY | 10111 | Crime Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Customer Contract | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Best Uniforms Center | 1904 Brookside Dr | | Kingsport | TN | 37660 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Betty's Uniforms | 2211 Pepperell Pkwy | | Opelika | AL | 36801-7229 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Big Dream Uniforms | 11865 SW 26th St Ste E10 | | Miami | FL | 33175 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | BizWear Consulting Inc | 4401 S 500 W | | Murray | UT | 84123 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | BlankRome | 2029 Century Park East | Sixth Floor | Los Angeles | CA | 90067 | Engagement Letter dated 6/23/2023 | Caresmatic Brands, LLC | - |
| Customer Contract | Blue Angels Nurses Uniform | 1052 Beach 20th St | | Far Rockaway | NY | 11691-3900 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Blue Angels Nurses Uniform | 1052 Beach 20th St | | Far Rockaway | NY | 11691-3900 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Blue Sky Hawaii, Inc. | 1423 Kapiolani Blvd 2nd Floor | | Honolulu | HI | 96814 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Boyle, Jason | 924 TRENTLE CT | | CHARLOTTE | NC | 28211 | Independent Sales Contractor Agreement, Effective 7/26/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Boyle, Jason | 924 TRENTLE CT | | CHARLOTTE | NC | 28211 | Independent Sales Contractor Agreement, Effective 7/26/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Brands DN USA LLC | 621 - 23rd St. | | Santa Monica | CA | 90402 | Consulting Agreement, Proprietary Information, Assignment of Inventions Agreement dated 3/1/2019 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Brands DN USA LLC | 621 - 23rd St. | | Santa Monica | CA | 90402 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 2/1/2018 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bright Side Scrubs, LLC | 20411 Route 19 Suite 5 | | Cranberry | PA | 16066 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bright Star Scrubs & Uniforms | 2205 W. Wabash Avenue | | Springfield | IL | 62704 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Buffalo Scrubs & Uniforms | 1031 Main St | | Buffalo | NY | 14203 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bullard Uniforms | 6030 N 1st St | | Fresno | CA | 93710-5495 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Buy & Save | 1005 Broad St | | Lake Charles | LA | 70601 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Byrd Watson Drug Co. | 1200 Main St | | Mount Vernon | IL | | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C & S Supply Co Inc | 1951 N Riverfront Dr | | Mankato | MN | 56001-3129 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C R Scrubs | 2209 S Broadway | | Tyler | TX | 75701 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C.C. Wholesale Mart | 3229 Ayers St | | Corpus Christi | TX | 78415 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Caesar's Medical Uniforms | 8145 Firestone Blvd | | Downey | CA | 90241 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Caesar's Medical Uniforms | 8145 Firestone Blvd | | Downey | CA | 90241 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Cal Uniforms | 3755 Park Blvd | | San Diego | CA | 92103 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | California Clothing | 2504 Jamacha Rd | | El Cajon | CA | 92019 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | California Scrubs and More | 15973 Piuma Avenue | | Cerritos | CA | 90703 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Cantu's Screen Printing & Embroidery | 2712 Pleasanton Road | | San Antonio | TX | 78221 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Cape Uniforms & More | 636 Del Prado Blvd | | Cape Coral | FL | 33990 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Cardinal Health | 7000 Cardinal Place | | Dublin | OH | 43017 | Wholesale Purchase and Distribution Agreement | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Cardinal Uniforms | 4640 Chamberlain Lane | | Louisville | KY | 40241 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Career Uniform | 1603 S Latah St | | Boise | ID | 83705-2991 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Career Uniforms | 638-C N University Dr | | Nacogdoches | TX | 75961 | Titanium Elite | Caresmatic Brands, LLC | - |
| Group Customer Contract | Caregivers of America | 70 East Sunrise Hwy. | | Valley Stream | NY | 11581 | Caregivers America Group Contract | AllHearts, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY AGREEMENT FOR APPOINTMENT OF DISTRIBUTOR | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY CENTRAL SUPPORT SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY AGREEMENT FOR THE SUPPLY OF GOODS | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY LOGISTICS SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY AGREEMENT FOR APPOINTMENT OF DISTRIBUTOR | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY AGREEMENT FOR THE SUPPLY OF GOODS | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Marketplace Impact, LLC | Marketplace Impact, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Silverts Adaptive, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Marketplace Impact, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | LIMITED LIABILITY COMPANY AGREEMENT OF ALLHEARTS, LLC DATED 12/2/2022 | AllHearts, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Silverts Adaptive, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Allhearts, LLC | Allhearts, LLC | - |
| Intercompany Agreement | Caresmatic Group II, Inc. | 2140 S Dupont Hwy | | Camden | DE | 19934 | Amended & Restated Operating Agreement of Krazy Kat Sportswear LLC | Krazy Kat Sportswear LLC | - |
| Intercompany Agreement | Caresmatic Group II, Inc. | 2140 S Dupont Hwy | | Camden | DE | 19934 | Amended and Restated Limited Liability Company Agreement of Caresmatic Brands, LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | LIMITED LIABILITY COMPANY AGREEMENT OF CARESMATIC RECEIVABLES LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Amended and Restated Limited Liability Company Agreement of Caresmatic Receivables LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | PURCHASE AND SALE AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | PURCHASE AND SALE AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic, LLC | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Operating Agreement | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic, LLC | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Group Customer Contract | Caris Healthcare | 10651 Coward Mill Road | | Knoxville | TN | 37931 | PURCHASE AGREEMENT | AllHearts, LLC | - |
| Contractor Agreement | Carlson Store Fixtures | Stein Industries, Inc | 7135 Northland Dr N | Brooklyn Park | MN | 55428-1514 | Contracting Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Carlson, Leonard | 613 BELLERIVE CT | | RICHMOND | VA | 23236 | Independent Sales Contractor Agreement, Effective 1/1/2012 | Caresmatic Brands, LLC | - |
| Customer Contract | Carolina Outfitter Apparel | 1000 N Pine St Ste #4 | | Spartanburg | SC | 29303 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Carolina Outfitter Apparel | 1000 N Pine St Ste #4 | | Spartanburg | SC | 29303 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Carolina Uniforms | 930 Cloverleaf Plaza | | Kannapolis | NC | 28083-6981 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Cart.com, Inc. | 1334 Brittmoore Road | Suite 225 | Houston | TX | 77043 | Master Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Cart.com, Inc. | 1334 Brittmoore Road | Suite 225 | Houston | TX | 77043 | Master Service Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Castle Uniforms | 1800 Skibo Rd Unit 226 | | Fayetteville | NC | 28303 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Castle Uniforms | 1800 Skibo Rd Unit 226 | | Fayetteville | NC | 28303 | Diamond Elite | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CBI PARENT GP, LLC | 1114 Avenue of the Americas | | NewYork | NY | 10036 | AGREEMENT OF LIMITED PARTNERSHIP OF CBI PARENT, L.P. | CBI Parent, L.P. | - |
| Service Agreement | Cellco Partnership, d/b/a Verizon Wireless | One Verizon Way | | Basking Ridge | NJ | 07920 | Verizon Wireless Major Account Agreement | Strategic Distribution, L.P. | - |
| | Character Arts, LLC | 37 Pond Road | | Wilton | CT | 06897 | Contract Amendment, Agreement dated as of 10/15/2013 | Strategic Distribution, L.P. | - |
| License Agreement | Character Arts, LLC | 37 Pond Road | | Wilton | CT | 06897 | LICENSE AGREEMENT | | - |
| Contractor Agreement | CHARLES CHASE | 1N575 AUGUSTA CT | | WINFIELD | IL | 60190-2361 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 100mbps Chatsworth MPLS | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 1GBPS Dedicated Broadband Line for Chatsworth | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 1GBPS Dedicated Fiber for LBJ | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 500mbps Santa Monica MPLS | Caresmatic Brands, LLC | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Business Class Customer Service Order, Account 8971 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Business Class Customer Service Order, Account 9959 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Ethernet and Dedicated Internet Access Service Level Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Fiber Internet Access Service Level Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 05702218 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 5193783 | Strategic Distribution, L.P. | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 5574871 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Service Order | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Service Order | Strategic Distribution, L.P. | - |
| Customer Contract | Chattahoochee Marketing Group (CMG) | 799 Georgia Ave SW #200 | | Gainesville | GA | 30501 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Purchase Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Cherokee Inc. | Careismatic Brands, LLC | - |
| Purchase Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Cherokee Inc. | Careismatic Brands, LLC | - |
| Customer Contract | Chester County Scrubs & More | 4670 W Lincoln Hwy | | Parkesburg | PA | 19365 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Chester County Scrubs & More | 4670 W Lincoln Hwy | | Parkesburg | PA | 19365 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Chicago Uniform Company | 550 West Roosevelt Rd | | Chicago | IL | 60607 | Gold Elite | Careismatic Brands, LLC | - |
| Professional Services | Chiesa Shahinian & Giantomasi PC | One Boland Dr | | West Orange | NJ | 07052 | Legal Services Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Choice Hotels International, Inc. | 1 CHOICE HOTELS CIRCLE | SUITE 400 | ROCKVILLE | MD | 20850 | CHOICE HOTELS QUALIFIED VENDOR PROGRAM AGREEMENT | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Choices Scrubs & Footwear | 424 W. Bakerview Rd Ste 102 | | Bellingham | WA | 98226 | Gold Elite | Careismatic Brands, LLC | - |
| Insurance Agreement | Chubb Group of Insurance Companies | 202B Hall's Mill Road | | Whitehouse Station | NJ | 08889 | General Liability, Employee Benefits Liability & Property Insurance - Policy No. 3608-38-65 | CBI Parent, L.P. | - |
| Contractor Agreement | Ciaramo, Cristina | 24 HUNTINGTON RD | | GARDEN CITY | NY | 11530 | Independent Sales Contractor Agreement, Effective 6/8/2015 | Careismatic Brands, LLC | - |
| Customer Contract | Cindy's Uniforms | 310 South Sharon Amity Rd Ste B | | Charlotte | NC | 28211 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | FACILITY SERVICES RENTAL SERVICE AGREEMENT dated 3/6/2009 | Strategic Distribution, L.P. | 1,104 |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Order Confirmation - Automatic External Defibrillator Service Agreement, Unit 3 | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Automatic External Defibrillator Service Agreement, Unit 1 | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Automatic External Defibrillator Service Agreement, Unit 2 | Strategic Distribution, L.P. | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | FACILITY SERVICES RENTAL SERVICE AGREEMENT dated 1/22/2014 | Strategic Distribution, L.P. | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Safety Director Emergency Eyewash Service Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | AUTOMATIC EXTERNAL DEFIBRILLATOR SERVICE AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | STANDARD RENTAL SERVICE AGREEMENT | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Careismatic Brands, LLC | - |
| Service Agreement | CINTAS, CORPORATION 2 | 6800 Cintas Blvd | | Mason | OH | 45040 | AUTOMATIC EXTERNAL DEFIBRILLATOR SERVICE AGREEMENT | Careismatic Brands, LLC | - |
| Customer Contract | Clarks Uniforms | 6100 E Central Ave | | Wichita | KS | 67206 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Clarks Uniforms | 6100 E Central Ave | | Wichita | KS | 67208 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Classic Image Uniforms LLC | 120 Staring Ln | | Baton Rouge | LA | 70810 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Classic Uniforms | 8507 N McCullough Ste B-3 | | San Antonio | TX | 78216 | Titanium Elite | Careismatic Brands, LLC | - |
| | | 101 E. Front Street, 5th | | | | | | | |
| Service Agreement | ClassPass, LLC and its affiliates | 615 S. Lewis St | | Missoula | MT | 59802 | CLASSPASS CORPORATE PROGRAM AGREEMENT | Careismatic Brands, LLC | 2,295 |
| Elite Retailer Agreement | Clinical Med Supply LLC | 521 E McDade Ave | | New Iberia | LA | 70560 | Silver Elite | Careismatic Brands, LLC | - |
| Customer Contract | Clothes Quarters, Inc. | 521 E McDade Ave | | Folsom | PA | 19033 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Clothes Quarters, Inc. | 521 E McDade Ave | | Folsom | PA | 19033 | Diamond Elite | Careismatic Brands, LLC | - |
| Service Agreement | Cloudflare | DEPT LA 24609 | | PASADENA | CA | 91185 | Enterprise Service Order Form | AllHearts, LLC | - |
| Elite Retailer Agreement | Clouds Clothing | 1268 W Stuart Dr | | Hillsville | VA | 24343-1592 | Titanium Elite | Careismatic Brands, LLC | - |
| Professional Services | CNM LLP | 6320 Canoga Ave Ste 150 | | Woodland Hills | CA | 91367 | Financial Services Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | CNY Uniforms Plus | 664 Burnet Ave | | Syracuse | NY | 13203 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Coast City Scrubs | 32 Mariposa Ave | | Watsonville | CA | 95076 | Silver Elite | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 10/26/2021 | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 10/26/2021 | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 8/30/2021 | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 8/30/2021 | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER SUBSCRIBER AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc | 2450 N ST., NW | | WASHINGTON | DC | 20037 | Letter of Authorization dated 9/6/2021 from Cogent | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Coldrons Uniform | 947 S Hwy 27 | | Somerset | KY | 42501-3518 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Comanche County Memorial Hospital | 924 Nw 38th St | | Lawton | OK | 73505-3703 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Comfort Medical Supply | 1273 Central Park Blvd | | Fredericksburg | VA | 22401 | Silver Elite | Careismatic Brands, LLC | - |
| Service Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | Commercehub Supplier Enrollment | Strategic Distribution, L.P. | - |
| Service Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | CommerceHub Supplier Enrollment | Strategic Distribution, L.P. | - |
| Service Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | Commercehub Supplier Enrollment | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Common Threads Uniform Shoppe | 1010 Porter Ave. | | Ocean Springs | MS | 39564 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Community Pharmacy and Mobility Inc | 163 Rte 37 W | | Toms River | NJ | 8755 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Concrete Rose Scrubs, LLC | 41 Coliseum Crossing | | Hampton | VA | 23666 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Connecticut Uniform | 567 Watertown Ave | | Waterbury | CT | 06708 | Titanium Elite | Careismatic Brands, LLC | - |
| Consulting Agreement | Contreras, Adam | 201 South Santa Fe Avenue | | Los Angeles | CA | 90012 | Consulting Agreement | Careismatic Brands, LLC | 9,000 |
| Software Agreement | CONVERGENT TECHNOLOGIES, LLC | 2304 TARPLEY RD | SUITE 124 | CARROLLTON | TX | 75006 | CUSTOMER SUPPORT PROGRAM | Careismatic Brands, LLC | - |
| Contractor Agreement | Corr, Michael | 6404 Highland Court | | Wilmington | DE | 19802 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Coulee Scrubs Llc | 1226 Crossing Meadows Dr | | Onalaska | WI | 54650 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Country Casuals | 1255 Brevard Rd | | Asheville | NC | 28806-9509 | Gold Elite | Careismatic Brands, LLC | - |
| Service Agreement | Cox Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Account Holder Update Packet Account 501, Modification of Commercial Services Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Cox Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Account Holder Update Packet Account 501, Modification of Commercial Services Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Crandall Consulting | 1912 Cherokee Street | | St. Louis | MO | 63118 | VENDOR AGREEMENT | Medallia, LLC | - |
| Elite Retailer Agreement | Crandall Consulting | 1912 Cherokee Street | | St. Louis | MO | 63118 | VENDOR AGREEMENT | AllHearts, LLC | - |
| Elite Retailer Agreement | CreditSafe | 4635 CRACKERSPORT RD | | ALLENTOWN | PA | 18104 | CreditSafe Renewal | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Crown Scrubs & Medical Supply | 2376 S Dairy Ashford | | Houston | TX | 77077 | Silver Elite | Careismatic Brands, LLC | - |
| Service Agreement | CSC Network | 1000 CORPORATE CENTRE DR #130 | | FRANKLIN | TN | 37067 | Supplier Requirements | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Custom Embroidery Plus | 304 N Lansing St. | | St. Johns | MI | 48879 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Cypress Medical Co. Uniforms & Suppl | 8320 Louetta Rd Ste 190 | | Spring | TX | 77379 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | DASCO Reid | 2003 Chester Blvd | | Richmond | IN | 47374 | Titanium Elite | Careismatic Brands, LLC | - |
| Service Agreement | Davaco | 6688 N Central Expwy | Suite 100 | Dallas | TX | 75206 | Master Agreement | Careismatic Brands, LLC | 20,361 |
| Service Agreement | Davaco | 6688 N Central Expwy | Suite 100 | Dallas | TX | 75206 | Master Agreement | Careismatic Brands, LLC | - |
| | Davila, Hector Ruben | | | | PR | 00918 | Independent Sales Contractor Agreement, Effective 2/1/2012 | Careismatic Brands, LLC | - |
| Contractor Agreement | Davis Advisory Services, LLC | 170 AVE ARTERIAL HOSTOS APT H8 | | SAN JUAN | PR | 00918 | | | - |
| Employment Agreement | Davis, Steve | 111 Arabian Road | | Schwenksville | PA | 19426 | Board director appointment | Trojan Holdco, Inc. | - |
| Employment Agreement | Davis, Steve | 111 Arabian Road | | Schwenksville | PA | 19426 | Independent Directorship Agreement | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Day Dreams Uniforms Inc | 8424 S US Highway 1 | | Port Saint Lucie | FL | 34952 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Deaconess Home Medical | 600 Mary St | | Evansville | IN | 47747 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | DeAngelo Uniforms | 6020 Market St | | Youngstown | OH | 44512-2918 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dean's Shoe Shack, Inc. | 1240 E Plumb Sho Bld 603 | | National City | CA | 91950 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Deb's Dancewear Uniform | 111 S 24th St W | | Billings | MT | 59102-5600 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Deb's Dancewear Uniform | 111 S 24th St W | | Billings | MT | 59102-5600 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | Defensive Networks LLC | 222 North Pacific Coast Highway | Suite 1620 | El Segundo | CA | 90245 | Order 1102 | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dennis Uniform Mfg Co - Medical | 135 SE Hawthorne Blvd | | Portland | OR | 97214 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Design Resources | 8032 Summa Ave Ste C | | Baton Rouge | LA | 70809 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Diamond L Designs | 1283 E Expressway Ln | | Spanish Fork | UT | 84660 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Diego Wear | 487 Pkwy Plaza | | El Cajon | CA | 92020 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Diggity Doodle | 606 7th Street NE | | Little Falls | MN | 56345 | Gold Elite | Careismatic Brands, LLC | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo, COLOCATION LICENSE AGREEMENT | Careismatic Brands, LLC | 143 |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo, Colocation PO# 60-00069633 | Careismatic Brands, LLC | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo, COLOCATION LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo, Colocation Order # 60-00069533 | Careismatic Brands, LLC | - |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | COLOCATION LICENSE AGREEMENT | Careismatic Brands, LLC | 143 |
| Service Agreement | Diligent Corporation | 111 West 33rd Street, 16th Floor | | New York | NY | 10120 | ORDER FORM, Agreement Number: Q-730132 | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Direct Uniform Sales | 5326 E Independence Blvd | | Charlotte | NC | 28212 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Discount Medical Uniforms | 805 Northlake Blvd | | North Palm Beach | FL | 33408 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Discount Scrubs & Fashion | 1911 N State Rd 7 | | Margate | FL | 33063 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Discount Uniform Store | 13578 University Plaza St | | Tampa | FL | 33613 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Discount Uniforms | 14486 Greenfield Rd | | Detroit | MI | 48227 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Discount Uniforms Center | 1874 Barker Cypress Rd | | Houston | TX | 77084 | Titanium Elite | Careismatic Brands, LLC | - |
| | Disney Consumer Products, Inc. | | | | | | | | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED APRIL 1, 2015 | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED APRIL 1, 2015 | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SECOND AMENDMENT TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIFTH AMENDMENT TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SIXTH AMENDMENT TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | Third Amendment to License Agreement | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED MARCH 6, 2018, | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | Third Amendment to License Agreement dtd 03/06/18 | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | EXTENSION OF LICENSE AGREEMENT TERM dated 12/18/2023 | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | STANDARD TERMS AND CONDITIONS | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | | | | | | Correspondence dated 5/3/2021 from Disney Consumer Products re: consent to | Careismatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | transfer & transfer fee | Careismatic Brands, LLC | - |
| | | | | | | | FIRST AMENDMENT TO STANDARD TERMS AND CONDITIONS DATED | | |
| License Agreement | DocuSign, Inc. | 221 Main Street, Suite 1000 | | San Francisco, | CA | 94105 | SEPTEMBER 1, 2013 | Careismatic Brands, LLC | - |
| License Agreement | Dog is Good, LLC | 10531 Humboldt Street | | Los Alamitos | CA | 90720 | ORDER FORM, Quote Number: Q-00293677 | Careismatic Brands, LLC | - |
| Contractor Agreement | Doll, J. A. Rafael | CAPARRA HTS\STATION | | SAN JUAN | PR | 00922 | Agreement - Amendment | Careismatic Brands, LLC | - |
| Professional Services | Donlin Recano & Company, Inc. | PO Box 2032 | | New York | NY | 10272-2042 | COMPENSATION | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dorothy's Uniforms | 39750 LBJ South | | Dallas | TX | 75237 | Voting and Consulting Services Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Double Eagle Uniforms | 1721 Eastern Blvd | | Montgomery | AL | 36117 | Titanium Elite | Careismatic Brands, LLC | - |
| Professional Service | Dr Kwane | P.O. Box 232579 | | Encinitas | CA | 92023-2579 | Titanium Elite | Dr Kwane | - |
| Purchase Agreement | Dr. Richard Sztramko | 134 STANLEY ST | | HAMILTON | ON | L8P3Y2 | Dr Kwane | Silverts Adaptive, LLC | - |
| Purchase Agreement | Dr. Richard Sztramko | 134 STANLEY ST | | HAMILTON | ON | L8P3Y2 | Retainer Agreement | Silverts Adaptive, LLC | - |
| License Agreement | Dr. Seuss Enterprises, L.P. | 9645 Scranton Road, Suite 130 | | San Diego | CA | 92121 | Retainer Agreement | Careismatic Brands, LLC | - |
| License Agreement | Dr. Seuss Enterprises, LLC | 9645 Scranton Road, Suite 130 | | San Diego | CA | 92121 | Amended and Restated License Agreement | Careismatic Brands, LLC | - |
| Customer Contract | Dr. Uniforms | 1311 Oriskany St | | West Utica | NY | 13502-2913 | First Amendment to Amended & Restated License Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dress Code | 8300 E Mill Plain Blvd, Unit B | | Vancouver | WA | 98664 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Customer Contract | Dress for Success Uniforms | 1618 W State Hwy 71 #548 | | La Grange | TX | 78945 | Gold Elite | Distribution, L.P. | - |
| Customer Contract | Drexel Healthcare Supplies | 9357 Krewstown Rd | | Philadelphia | PA | 19115 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Drexel Healthcare Supplies | 9357 Krewstown Rd | | Philadelphia | PA | 19115 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Professional Service | DSSI | 7301 W. Champions Way | | Milwaukee | WI | 53223 | Titanium Elite | Careismatic Brands, LLC | - |
| Contractor Agreement | Dubin, Alen | 6108 BITTERSWEET LANE | | CHARLOTTE | NC | 28210 | Transaction Services for DSSI E-Commerce Sites | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dubs Scrubs | 5438 Freeway Park Dr | | Riverdale | UT | 84405-3776 | Independent Sales Contractor Agreement, Effective 10/1/2003 | Diamond Elite | - |
| Elite Retailer Agreement | Duty Station Uniforms & Gear | 8128 S Memorial Dr | | Tulsa | OK | 74133 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dyna Wear | 40405 Winchester Rd Ste 102 | | Temecula | CA | 92591 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Dyna Wear - Murrieta | 40525 California Oaks Rd | | Murrieta | CA | 92562 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | E-Z Wear Uniforms | 6918 Market St | | Upper Darby | PA | 19082-2308 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Eagle Group Inc. | 6420 Guion Rd | | Indianapolis | IN | 46268 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | EK Embroidery | 2219 Pass Road | | Gulfport | MS | 39501 | Titanium Elite | Careismatic Brands, LLC | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Careismatic Brands, LLC | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Elivog Inc. | 3201 Chimneyrock Dr | | New Orleans | LA | 70119 | Gold Elite | Careismatic Brands, LLC | - |
| Customer Contract | Embroidery Express | 2495 Eastgate Pl Ste E | | Snellville | GA | 30078 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Emerson's at the Willow | 1631 4th St SW Ste 105 | | Mason City | IA | 50401 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Encore Uniform and Apparel | 1420 Riverside Ave Ste 102 | | Fort Collins | CO | 80524 | Silver Elite | Careismatic Brands, LLC | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | Master Electric Energy Sales Agreement | Careismatic Brands, LLC | 27,530 |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Careismatic Brands, LLC | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | Master Electric Energy Sales Agreement | Careismatic Brands, LLC | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION TEXAS FIXED PRICE RTC | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Envy Uniforms | 215 S Broad St | | Gastonia | NC | 28054 | Titanium Elite | Careismatic Brands, LLC | - |
| Employment Agreement | Eric Lehman | 348 Royal Assembly Drive | | Charleston | SC | 29492 | Directorship | CBI Parent, L.P. | - |
| Separation Agreement | Erin Earls | 6442 Platt Ave | | West Hills | CA | 91307 | Separation Agreement and Full and Final Release of Claims | CBI Parent, L.P. | - |
| Insurance Agreement | Everest (Nationwide) | ONE W NATIONWIDE BLVD | 1-14-301 | Columbus | OH | 43215-2220 | Product Liability Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | EVEREST EZ EXCESS POLICY CONDITIONAL BINDER | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Cyber Liability Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Executive Risk Package Insurance, Policy Number 1/4/2030 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Group Customer Contract | EyeCare Partners | 15933 Clayton Road | Suite 210 | Ballwin | MO | 63011 | PURCHASE AGREEMENT | AllHearts, LLC | - |
| Service Agreement | F.W.C. Inc. | 59 HILLSIDE RD | | CHESTER | NJ | 07930 | VENDOR AGREEMENT | AllHearts, LLC | - |
| Service Agreement | F5 NETWORKS, INC. | 801 FIFTH AVENUE | | SEATTLE | WA | 98104 | F5 MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Family Medical Supply Inc /Scrubs | 115 N College St | | Mountain Home | AR | 72653 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Famous Brand Uniform | 3843 Hamilton Rd Ste B | | Columbus | GA | 31904-7174 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Fashion For Less (NY) Inc. | 204-09 Hillside Ave | | Hollis | NY | 11423 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Fashion For Less (NY) Inc. | 204-09 Hillside Ave | | Hollis | NY | 11423 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Fashion Scrub Depot LLC | 5329 Central Ave | | Saint Petersburg | FL | 33710 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Fashion Uniforms ll | 3402 Jerome Ave | | Bronx | NY | 10467 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Fashionable Scrubs | 1630 E. Washington St | | Colton | CA | 92324 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Fashionable Scrubs | 1630 E. Washington St | | Colton | CA | 92324 | Gold Elite | Careismatic Brands, LLC | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Business Automobile - Policy No. 73635477 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Business Auto Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Commercial Package Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Umbrella Liability Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Service Agreement | FedEx | 942 South Shady Grove Road | | Memphis | TN | 38120-4117 | FedEx Transportation Services Agreement | Careismatic Brands, LLC | - |
| Professional Services | Ferraz de Camargo e Matsunaga Advogados | Rua Arquiteto Olavo Redig de Campos | 105 - Torre A | Sao Paulo | Brazil | 04711-904 | Legal Services Agreement | Careismatic Brands, LLC | - |
| Contractor Agreement | Feury Acquisition Corp | 2 Howe St Suite 2B | | New Haven | CT | 06511 | Diamond Elite | Careismatic Brands, LLC | - |
| Contractor Agreement | Finn Food Service | 14605 McCormick Place | | Tampa | FL | 33626 | Principal Representative Group Agreement effective 1/3/2018 | Careismatic Brands, LLC | - |
| Customer Contract | First Uniform Inc | 3616 Latrobe Dr | | Charlotte | NC | 28211-1183 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | First Uniform Inc | 3616 Latrobe Dr | | Charlotte | NC | 28211-1183 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Fittings Unlimited, Inc. | 402 10th St SE Ste 500 | | Cedar Rapids | IA | 52403 | Titanium Elite | Careismatic Brands, LLC | - |
| License Agreement | FiveTran Inc. | 405 14th Street, Suite 1100 | | Oakland | CA | 94612 | Service Order | Careismatic Brands, LLC | - |
| Customer Contract | Flemington Department Store | 151 Rte 31 | | Flemington | NJ | 08822-5748 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Flemington Department Store | 151 Rte 31 | | Flemington | NJ | 08822-5748 | Gold Elite | Careismatic Brands, LLC | - |
| License Agreement | FLOQAST | 14721 CAFILA ST | | SHERMAN OAKS | CA | 91411 | FLOQAST SERVICES ORDER | Careismatic Brands, LLC | - |
| Customer Contract | Florida Uniforms And Supplies | 3501 SW 2nd Ave | | Gainesville | FL | 32607 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Florida Uniforms And Supplies | 3501 SW 2nd Ave | | Gainesville | FL | 32607 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | FM Scrubs | 118-A Main St | | Rising Sun | IN | 47040 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | FoneTech | 2180 Iowa Blvd | | Vicksburg | MS | 39180 | Titanium Elite | Careismatic Brands, LLC | - |
| | ForceAmp.com LLC | | | | | | Invoice | Careismatic Brands, LLC | - |
| License Agreement | Formstack | 820 Highland Park Ave | | Coralville | IA | 52241 | | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Four Seasons | 73-19 Roosevelt Ave | | Jackson Heights | NY | 11372 | Titanium Elite | Careismatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Careismatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Careismatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Careismatic Brands, LLC | - |
| Customer Contract | Franks Md. Mart Inc | 2405 Mc Faddin St | | Beaumont | TX | 77703 | PE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Franks Md. Mart Inc | 2405 Mc Faddin St | | Beaumont | TX | 77703 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | Fivaion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Fivaion License Agreement dated 10/13/2023 | Careismatic Brands, LLC | - |
| Software Agreement | Fivaion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Fivaion License Agreement dated 10/30/2019 | Careismatic Brands, LLC | - |
| Software Agreement | Fivaion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Fivaion License Agreement dated 5/15/2023 | Careismatic Brands, LLC | - |
| Software Agreement | Fivaion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Migration Work Order | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Friends Gift Shop | 8075 Medical Ctr Dr | | Morgantown | WV | 26506 | Gold Elite | Careismatic Brands, LLC | - |
| Purchase Agreement | FULLSTORY CONTACT | 1745 Peachtree St. NW Ste G | | ATLANTA | GA | 30309 | SALES ORDER FORM | Careismatic Brands, LLC | - |
| Service Agreement | Gamut Management LLC | 9 COUNTRY RD | | LIVINGSTON | NJ | 07039 | Statement of Work | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Gantts Uniform Inc. | 2242 Augusta St | | Greenville | SC | 29605-1764 | Gold Elite | Careismatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Garrett's Medical | 485 First St North | | Winter Haven | FL | 33881-4114 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Gateway Uniforms | 120 Sunrise Ave | | Roseville | CA | 95661 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Glamour Uniforms | 4951 Sunset Blvd | | Hollywood | CA | 90027 | Titanium Elite | Carismatic Brands, LLC | - |
| License Agreement | Global Marsh Property Owner, L.P. | 2440 Marsh Ln | | Carrollton | TX | 75006 | Colocation Order # Q-00069974 | Carismatic Brands, LLC | - |
| Customer Contract | Gloria Kay Uniforms | 3720 N 124th St Unit G | | Wauwatosa | WI | 53222 | PIE 2.0 Customer Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Gloria Kay Uniforms | 3720 N 124th St Unit G | | Wauwatosa | WI | 53222 | Titanium Elite | Carismatic Brands, LLC | - |
| Service Agreement | GNG Uniforms, Inc. | 2740 Franklin Rd | | Roanoke | VA | 24014 | Silver Elite | Carismatic Brands, LLC | - |
| Service Agreement | GoGeoStat, LLC | 5100 Eldorado Pkwy, Unit 102-385 | | McKinney | TX | 75070 | Customer Master Service Agreement | Carismatic Brands, LLC | 7,630 |
| Elite Retailer Agreement | Goodman's Uniforms | 1390 W Broad St | | Columbus | OH | 43222-1345 | Silver Elite | Carismatic Brands, LLC | - |
| Service Agreement | Google Inc. | 1600 Amphitheatre Parkway | | Mountain View | CA | 94043 | Parental Guarantee | Silverts Adaptive, LLC | - |
| Service Agreement | Google LLC | 1600 Amphitheatre Parkway | | Mountain View | CA | 94043 | Guaranty | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Gould's Discount Medical | 3901 Dutchmans Ln | | Louisville | KY | 40207 | Gold Elite | Carismatic Brands, LLC | - |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Supply Agreement | Carismatic Brands, LLC | 11,639 |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Extension Agreement | Carismatic Brands, LLC | - |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Extension Agreement | Carismatic Brands, LLC | - |
| Customer Contract | Grannys Uniforms Work Fashions & More | 2525 College Ave | | Alton | IL | 62002 | PIE 2.0 Customer Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Great Lakes Workwear | 2825 E Highland Rd #125 | | Highland | MI | 48356 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Great Plains Uniforms | 4308 S 89th St | | Omaha | NE | 68127 | Silver Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Great Scrubs & More | 307 Kentucky Ave  Ste A-3 | | West Plains | MO | 65775 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Green River Scrubs | 3546 S Suncoast Blvd | | Homosassa | FL | 34448 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Greg's Uniforms | 2408 Commerce Road | | Jacksonville | NC | 28546 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Greg's Uniforms | 2408 Commerce Road | | Jacksonville | NC | 28546 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Griffins Uniforms | 115 Lamar | | Bainbridge | GA | 39817 | Titanium Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Grillo, Vince | 2305 Norwich Street | | Flower Mound | TX | 75028 | Independent Sales Contractor Agreement, Effective 10/1/2009 | Carismatic Brands, LLC | - |
| Contractor Agreement | Grillo, Vince | 2305 Norwich Street | | Flower Mound | TX | 75028 | Changes to Agreement - Fax dated 11/4/2003 | Carismatic Brands, LLC | - |
| License Agreement | GS1 US, Inc. | 7887 Washington Village Drive | | Dayton | OH | 45459 | License of GS1 Company Prefix | Strategic Distribution, L.P. | - |
| Manufacturing Agreement | Hachette Filipacchi Presse S.A. | 149 Rue Anatole | Levallois-Perret Cedex | | | | LICENSE AGREEMENT | Carismatic Brands, LLC | - |
| Others | Halo Branded Solutions, Inc. | 3182 MOMENTUM PL | | CHICAGO | IL | 60689-5331 | 2024 Preferred Supplier Program | Carismatic Brands, LLC | - |
| Customer Contract | Hanover Uniforms Co. | 3501 Marmenco Ct | | Baltimore | MD | 21230 | PIE 2.0 Customer Agreement | Carismatic Brands, LLC | - |
| Contractor Agreement | Hanson, Robert | 13765 ST CHARLES ROCK RD #114 | | BRIDGETON | MO | 63044 | Independent Sales Contractor Agreement, Effective 9/1/2011 | Carismatic Brands, LLC | - |
| Contractor Agreement | Hanson, Robert | 13765 ST CHARLES ROCK RD #114 | | BRIDGETON | MO | 63044 | Independent Sales Contractor Agreement, Effective 9/1/2011 | Carismatic Brands, LLC | - |
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | Commercial Insurance | AIIHearts, LLC | - |
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | Commercial Insurance | Carismatic Brands, LLC | - |
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | International Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Hawaii Work Uniforms, LLC | 1726 Kaahumanu Ave #D | | Wailuku | HI | 96793 | Silver Elite | Carismatic Brands, LLC | - |
| License Agreement | HawkSearch | 2700 S RIVE RD STE 400 | | DES PLAINES | IL | 60018 | Software Proposal | AIIHearts, LLC | - |
| Elite Retailer Agreement | Health Essentials | 3230 E Wisconsin Ste F | | Joplin | MO | 64804 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Health First Medical Equipment | 1131 W New Haven Ave Ste 101 | | West Melbourne | FL | 32904 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | HealthWear Inc. | 1320 Red Wolf Blvd | | Jonesboro | AR | 72401 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Heidis Uniforms | 1418 A Stratford Rd | | Winston Salem | NC | 27103 | Diamond Elite | Carismatic Brands, LLC | - |
| Service Agreement | Hemisphere Freight & Brokerage Service | 21 Goodrich Road | No. 3 | Toronto | ON | M8Z 643 | Continous general agency agreement | Strategic Distribution, L.P. | - |
| Contractor Agreement | Hinshaw, Craig | 161 Mill Spring | | Coatesville | IN | 46121 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Carismatic Brands, LLC | - |
| Contractor Agreement | Hooch, Dan | 14603 FOREST OAKS DR STE 300 | | LOUISVILLE | KY | 40245 | Independent Sales Contractor Agreement, Effective 1/1/2013 | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | House of Angels | 307 W 125th st | | New York | NY | 10027 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Hula B's, LLC. | 528 Harlow Rd | | Springfield | OR | 97477 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Ideal Department Store | 1816 Flatbush Ave | | Brooklyn | NY | 11210 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Identity Factor, LLC | 2965 N Germantown Rd Ste 125 | | Bartlett | TN | 38133 | Titanium Elite | Carismatic Brands, LLC | - |
| Consulting Agreement | iFranchise Group | 905 W  175th Street, 2nd Floor | | Homewood | IL | 60430 | Franchise Feasibility Assessment | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | IHC Supply, Inc | 3911 Central Ave Ste H | | Hot Springs | AR | 71913 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Images Shop | 1330 Mercy Dr NW | | Canton | OH | 44708-2626 | Silver Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Imlay's Uniforms | 2720 Maple Ave | | Zanesville | OH | 43701 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | In Home Care, Inc. | 201 Nottingham Ave NE | | Wise | VA | 24293-5612 | Silver Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | In Home Medical | 300 Coles Centre Pkwy | | Mattoon | IL | 61938 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Infinity Scrubs, LLC. | 10720 N Rodney Parham Road #D11 | | Little Rock | AR | 72212 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Inka's Uniforms | 11626 Sherwood Forest Ct | | Baton Rouge | LA | 70816 | Silver Elite | Carismatic Brands, LLC | - |
| License Agreement | INRVER AB | Södra Tullgatan 4 | | Malmö | | 211 40 | ORDER FORM ID 556650-5573 | Carismatic Brands, LLC | - |
| Software Agreement | Insight Direct, Inc. | 2701 E. INSIGHT WAY | | CHANDLER | AZ | 85286 | MICROSOFT PRODUCTS AND SERVICES AGREEMENT | Carismatic Brands, LLC | - |
| | Insight Enterprises, Inc. | 6820 South Harl Street | | Tempe | AZ | 85283 | E-Mail Security Change Order Form | Strategic Distribution, L.P. | - |
| License Agreement | Insight Enterprises, Inc. | 6820 South Harl Street | | Tempe | AZ | 85283 | | | - |
| License Agreement | INTELLIGENT FABRIC TECHNOLOGIES (NORTH AMERICA) INC. | 525 Denison Street, Unit 2 | | Markham | ON | L3R 1B8 | License and Supply Agreement | Carismatic Brands, LLC | - |
| License Agreement | Interact one inc | 4665 CORNELL RD | STE 255 | CINCINNATI | OH | 45241 | Magento Maintenance & Support - Monthly Retainer | Medelita, LLC | 3,200 |
| License Agreement | Interact one inc | 4665 CORNELL RD | STE 255 | CINCINNATI | OH | 45241 | Magento Maintenance & Support - Monthly Retainer | Medelita, LLC | - |
| Consulting Agreement | IPG DXTRA, Inc. d/b/a Weber Shandwick | 909 THIRD AVE | | NEW YORK | NY | 10022 | Agreement for Professional Service | Carismatic Brands, LLC | - |
| Service Agreement | Ironsides Inc | 100 W Harbor Blvd, Suite 700 | | Santa Monica | CA | 90401 | Letter Agreement dated 11/30/2023 | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | J & E Uniforms Inc. | 2425 Jefferson Davis Hwy | | Sanford | NC | 27332-7104 | Titanium Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | J & J Professional Uniform Shop | 689 Maple Valley Dr | | Farmington | MO | 63640 | Gold Elite | Carismatic Brands, LLC | 8,000 |
| Elite Retailer Agreement | J&D Uniforms, LLC | 1057 Goodman Rd | | Horn Lake | MS | 38637 | Titanium Elite | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Confirmation of Commencement of Lease Agreement | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Lease | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | First Amendment to Office Lease Agreement | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Second Amendment to Office Lease Agreement | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Property Tax Memo - Notice of Increase | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Office Lease | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Confirmation of Commencement of Lease Agreement and Office Lease | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | First Amendment to Office Lease | Carismatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Second Amendment to Office Lease Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | J2 Scrubs | 1575 Hwy 83 | | Sublette | KS | 67877 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jack L. Marcus Inc. | 5300 W Fond Du Lac Ave | | Milwaukee | WI | 53216-1348 | Titanium Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | JACK VAN VRANKEN | 141 CLIMBER DR | | MANCHESTER | NH | 03104 | Independent Sales Contractor Agreement, Effective 3/22/2002 | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jakes Kids LLC - School | 509 A St Mary Hwy | | Thibodaux | LA | 70301 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | James Medical Uniforms | 7821 Coldwater Rd Ste B | | Fort Wayne | IN | 46825-3409 | Titanium Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Jane McCulrey | 1026 LEGACY HILLS DR | | FRANKLIN | TN | 37064 | Independent Contractor/Proprietary Information/Assignment of Inventions | Carismatic Brands, LLC | - |
| Customer Contract | Jan's Uniforms | 26914 Gena Dr | | Chesterfield | MI | 48051-1532 | PIE 2.0 Customer Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jan's Uniforms | 26914 Gena Dr | | Chesterfield | MI | 48051-1532 | Titanium Elite | Carismatic Brands, LLC | - |
| Customer Contract | Jaye Uniform - Medical | 1000 Springfield Ave | | Irvington | NJ | 7111 | PIE 2.0 Customer Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jaye Uniform - Medical | 1000 Springfield Ave | | Irvington | NJ | 7111 | Diamond Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jeness Uniform Centers | 4728 Virginia Beach Blvd | | Virginia Beach | VA | 23462 | Titanium Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Jered Friedland | 9461 Charleville Blvd., #190 | | Beverly Hills | CA | 90212 | Independent Contractor/Propriety Information/Assignment of Inventions Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jeri's Uniforms | 5665 E Speedway Blvd | | Tucson | AZ | 85712 | Titanium Elite | Carismatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Statement of Work | Carismatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Statement of Work | Carismatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Addendum License Agreement | Carismatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | ADDENDUM to Software License Agreement | Carismatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Software as of Service Agreement (SAAS) | Carismatic Brands, LLC | - |
| Contractor Agreement | JIM BARLOW | 913 FOREST HYLANDS RD | | PRESCOTT | AZ | 86303 | Independent Sales Contractor Agreement, Effective 1/7/2002 | Carismatic Brands, LLC | - |
| Service Agreement | JMG Security Systems, Inc | 733 S. Marquette Ave | | Minneapolis | MN | 55402 | Commercial Security/Fire Alarm System Agreement | Strategic Distribution, L.P. | 2,401 |
| Service Agreement | JMG Security Systems, Inc | 17150 NEWHOPE ST STE 109 | | FOUNTAIN VALLEY | CA | 92708 | Addendum to Original Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | JMG Security Systems, Inc | 17150 NEWHOPE ST STE 109 | | FOUNTAIN VALLEY | CA | 92708 | Addendum to Security/Fire Alarm System Agreement dtd 08-09-05 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | JMV Trading Group | 11634 NW 91St Pl | | Hialeah Gardens | FL | 33018 | Gold Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Joann's Uniforms | 165 Heineberg Dr | | Colchester | VT | 05446-6810 | Gold Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Jonathan F. Hackett | 405 20th Place | | Manhattan Beach | CA | 90266 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Carismatic Brands, LLC | - |
| Contractor Agreement | Jonathan F. Hackett | 405 20th Place | | Manhattan Beach | CA | 90266 | Independent Contractor / Proprietary Information / Assignment of Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Jones Medical Equipment | 522 Elma G Miles Pkwy | | Hinesville | GA | 31313 | Silver Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Jose Mendoza | 5515 Canoga Avenue | Unit 109 | Los Angeles | CA | 91367 | Independent Contractor Agreement | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | Josie's Uniform Boutique | 54 New Hartford Shopping Ctr | | New Hartford | NY | 13413 | Silver Elite | Carismatic Brands, LLC | - |
| Elite Retailer Agreement | JT Healthcare Uniforms | 918 S Main St | | Salinas | CA | 93901 | Gold Elite | Carismatic Brands, LLC | - |
| Contractor Agreement | Julie Gimber | 2010 Prince Way | | Reno | NV | 89503 | Independent Contractor Agreement | Carismatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Contractor Agreement | Justicia, Andy | 216 CHESTERFIELD CT | | SCHAUMBURG | IL | 60193 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Justicia, Andy | 216 CHESTERFIELD CT | | SCHAUMBURG | IL | 60193 | Independent Sales Contractor Agreement, Effective 1/1/2012 | Caresmatic Brands, LLC | - |
| Service Agreement | JVS Melotti Solucoes Texteis Ltda. | LOTEAMENTO INDUSTRIAL WERNER PLAAS | | AMERICANA, SAN PAOLO | | 01347-8734 | Acordo De Representacao | | - |
| Service Agreement | JVS Melotti Solucoes Texteis Ltda. | LOTEAMENTO INDUSTRIAL WERNER PLAAS | | AMERICANA, SAN PAOLO | | 01347-8734 | Representation Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | JVS Melotti Solucoes Texteis Ltda. | LOTEAMENTO INDUSTRIAL WERNER PLAAS | | AMERICANA, SAN PAOLO | | 01347-8734 | Representation Agreement | Caresmatic Brands, LLC | - |
| Lease | JW Properties, LLC | 2583 Walnut Ave | | Geneva | IL | 60134 | First Amendment to Office Lease dated4/1/2013 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | K & M Uniforms, Inc. | 23A Lower Hudson Ave | | Green Island | NY | 12183 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | K C Uniforms, LLC | 1229 Pineview Dr | | Morgantown | WV | 26505 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kargbo's Medical Uniforms | 15069 Magnolia Ave | | Riverside | CA | 92505 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Karla Bakersmith | 2537 Baston Way | | Chesterfield | MO | 63017 | Consulting Agreement / Propriety Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kassaluscat Uniform Inc. | 485 S Broadway | | Yonkers | NY | 10705 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kay Fashion | 1270 N Euclid St | | Anaheim | CA | 92801-1966 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kelleigh's Uniforms | 7115 SR 54 | | New Port Richey | FL | 34653 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Kelley Johnson | 1826 12th St. #4 | | Manhattan Beach | CA | 90266 | Talent/Marketing Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Kelly's Uniforms/ Sassy Scrubs | 2253 Hwy 15N Pinetree Village | | Laurel | MS | 39440 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kelly's Uniforms/ Sassy Scrubs | 2253 Hwy 15N Pinetree Village | | Laurel | MS | 39440 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Ken Allen Uniform | 1046 W Hamilton St | | Allentown | PA | 18101-1033 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Kendall Barber | 10534 SW BARBER ST | | WILSONVILLE | OR | 97070 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kiefer Uniforms & Alterations | 1671 Hoffman Rd, Suite 130 | | Green Bay | WI | 54311 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 357 ENGLAND PL | | MARIETTA | GA | 30066 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 357 ENGLAND PL | | MARIETTA | GA | 30066 | Independent Sales Contractor Agreement, Effective 7/18/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 357 ENGLAND PL | | MARIETTA | GA | 30066 | INDEPENDENT SALES CONTRACTOR AGREEMENT, EFFECTIVE 7/11/2001 | Caresmatic Brands, LLC | - |
| Professional Service | Kirkland & Ellis LLP | 300 N Lasalle St | | Chicago | IL | 60654 | Legal Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Knzy Apparel, Inc. | 1164 S Creasy Ln | | Lafayette | IN | 47905 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Konica Minolta | 100 Williams Drive | | Ramsey | NJ | 07446 | Maintenance Agreement | Knzy Kat Sportswear LLC | 1,696 |
| Service Agreement | KPMG LLP | 811 Main Street | | Houston | TX | 77002 | Engagement Letter | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Krazy Kat Sportswear LLC | 25 East Union Ave | | EastRutherford | NJ | 7073 | Amended & Restated Operating Agreement of Krazy Kat Sportswear LLC | Caresmatic Group II, Inc. | - |
| Elite Retailer Agreement | Kristen Uniforms & Linens | 2010 Eggert Rd | | Amherst | NY | 14226-2101 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kristie's Scrub Shop | 517 West Broadway | | Muskogee | OK | 74401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | K-Scrubs | 321 Fort Riley Blvd | | Manhattan | KS | 66502 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | La Bella Uniforms | 19420 S La Grange Rd | | Mokena | IL | 60448 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Bella Uniforms | 19420 S La Grange Rd | | Mokena | IL | 60448 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Parisienne II, LLC | 214 N River St Ste 1 | | Calhoun | GA | 30701 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Parisienne Uniforms | 927 N Glenwood Ave | | Dalton | GA | 30721-2618 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LA Uniforms, LLC | 8312 Florida Blvd Ste B | | Baton Rouge | LA | 70806 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Labor of Love Scrubs LLC | 1020 E Cork St | | Kalamazoo | MI | 49001 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lafayette Bargain Store | 1800 Kaliste Saloom Road Ste#300 | | Lafayette | LA | 70505 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | LAFIG Belgium s.a. | Rue du Cerf 85 | | Genval | | 1332 | Merchandise License Agreement | Caresmatic Brands, LLC | 5,000 |
| License Agreement | LAFIG Belgium s.a. | Rue du Cerf 85 | | Genval | | 1332 | MERCHANDISING LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Laie Uniforms | 10601 US Hwy 441 | | Leesburg | FL | 34788-8204 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lakeville Uniforms | 27111 Union Tpke | | New Hyde Park | NY | 11040-1502 | Silver Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Lakham, Sidharth | 906 ILIFF ST | | PACIFIC PALISADES | CA | 90272 | Amended and Restated Employment Agreement dated December 2023 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lambert's Uniforms | 4901 N Broadway | | Knoxville | TN | 37918-2379 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Landsman Uniforms Inc | 6206 E Black Horse Pike | | Egg Harbor Township | NJ | 8234 | Silver Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Larry Smith | 7002 INDIAN SPRING LN | | FREDERICKSBURG | VA | 22407 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Larry Smith | 7002 INDIAN SPRING LN | | FREDERICKSBURG | VA | 22407 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Customer Contract | Las Vegas Uniforms | 967 E Sahara Ave | | Las Vegas | NV | 89104 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Las Vegas Uniforms | 967 E Sahara Ave | | Las Vegas | NV | 89104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Laurel Uniforms & Apparel | 5076 W 58th Ave | | Arvada | CO | 80002 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lavie Scrubs LLC | 2275 S Federal Hwy Ste 270 | | Delray Beach | FL | 33483 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Leggett Town Country | 335 Mt Cross Rd | | Danville | VA | 24540 | Titanium Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Lehman, Eric | 348 Royal Assembly Dr | | Charleston | SC | 29492 | Independent Directorship Appointment | CBI Parent, L.P. | - |
| Service Agreement | Lexicon Branding, Inc. | 30 Liberty Ship Way, Suite 3360 | | Sausalito | CA | 94965 | Professional Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Master Services Agreement | Strategic Distribution, L.P. | 59,000 |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Healing Hands Integration Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development SOW | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Silverts Adobe Commerce 2.4.3. Upgrade | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Branded Site Integration Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Silverts ERP/Commerce Site Development & Integration Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Maintenance Service Contract | Silverts Adaptive, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Maintenance Service Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LifeCare Uniforms | 15042 W Club Deluxe Rd | | Hammond | LA | 70403 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lightpath Outfitters | 324 Pine Mountain Rd | | Hudson | NC | 28638 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Little Lena's Scrubs & More, LLC | 606 N Eisenhower Dr Ste 4 | | Beckley | WV | 25801 | Silver Elite | Caresmatic Brands, LLC | - |
| Others | Living Doll LLC | 18525 RAILROAD ST | | CITY OF INDUSTRY | CA | 91748-1316 | Trademark Assignment Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Livingston International Professional Services, Inc. | 20700 Civic Center Drive, Suite 500 | | Southfield | MI | 48076 | Consulting Services Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Livingston International Trade Services, Inc. | 150 Pierce Road | | Itasca | IL | 60143 | Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Livingston International, Inc. | PO BOX 920 | | BUFFALO | NY | 14213 | General Agency Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Lizzie's Scrubs 'n Style | 4621 South Loop 289 | | Lubbock | TX | 79424 | Titanium Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Terrorism & Sabotage Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Basic License Agreement Number 526 | Caresmatic Brands, LLC | 17,156 |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Additional Software Amendment Number Four to Basic License Agreement Number 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | ADDITIONAL SOFTWARE AMENDMENT NUMBER TWO TO BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | ADDITIONAL SOFTWARE AMENDMENT NUMBER TWO TO BASIC LICENSE AGREEMENT NUMBER 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Amendment Number One to Basic License Agreement Number 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Amendment Number Two to Basic License Agreement Number 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | BASIC LICENSE AGREEMENT NUMBER 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Consulting Services Engagement Letter | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Logility Change Request Form | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | LOGILITY, INC. IMPLEMENTATION ASSISTANCE AMENDMENT NUMBER ONE TO BASIC LICENSE AGREEMENT NUMBER 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | Software Custom Modifications License and Service Agreement (Agreement Number 5392) | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410· Paces Ferry Rd | | Atlanta | GA | 30305 | SOFTWARE CUSTOM MODIFICATIONS, LICENSE AND SERVICES AGREEMENT Agreement Number 5392 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Long Term Medical Supply | 115 2nd Ave NW | | Hampton | IA | 50441 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LoveEndz | 2911 Commercial Wy | | Spring Hill | FL | 34606 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Love Scrubs | 7612 Linda Vista Road Ste 102 | | San Diego | CA | 92111 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Low Country Uniforms | 330 E 5th N St | | Summerville | SC | 29483 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LR Uniforms | 8591 Coral Wy | | Miami | FL | 33155 | Diamond Elite | Caresmatic Brands, LLC | - |
| Manufacturing Agreement | LucasGroup | 5001 Spring Valley Rd | Suite 650 | Dallas | TX | 75244 | Manufacturing Division Contingency Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | M P Nursing Apparel | 2733 W Emmaus Ave | | Allentown | PA | 18103-7297 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | M P Nursing Apparel | 2733 W Emmaus Ave | | Allentown | PA | 18103-7297 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Maersk Agency U.S.A., Inc. as agent for Maersk Line A/S | 2 GIRALDA FARMS | | MADISON | NJ | 07940-0880 | Service Contract No: 662295, Proposal No: 28.0, Amendment No: 000 | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Software Agreement | Magento, Inc | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Magento Subscription Agreement | AllHearts, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Addendum to Software License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Amendment to Software License Service Agreement | Caresmatic Brands, LLC | - |
| | | | | | | | Attachment A - Licensed Products and Customer Support  and Software | | |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Enhancements | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Proposal Correspondence from Manhattan Associates dated 11/20/2017 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Quote # M14Q26731 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software License,  Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | STANDARD TERMS & CONDITIONS | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Statement of Work for Strategic Partners , Slotting Optimization 2014 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Strategic Partners Upgrade Dallas Site to V2019 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Mani's Medical | 103 Blanchard St Ste D | | West Monroe | LA | 71291 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Marina Dedivanovic | 1320 York Avenue | Apartment 24F | New York | NY | 10021 | Service and Product Endorsement Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Markacy, LLC | 325 HUDSON ST 4TH FL | | NEW YORK | NY | 10013 | Consulting Agreement | Caresmatic Brands, LLC | - |
| Insurance Agreement | Markel American | 4521 HIGHWOODS PKWY | | GLEN ALLEN | VA | 23068 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Markel American | 4521 HIGHWOODS PKWY | | GLEN ALLEN | VA | 23068 | Executive Risk Package Insurance, Policy Number 47487 | CBI Parent, L.P. | - |
| Intercompany Agreement | Marketplace Impact, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Marketplace Impact, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Marketplace Impact, LLC | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Mark's Scrubs, Med Uniforms and Apparel | 1401 N Carbon St Ste B | | Marion | IL | 62959 | Titanium Elite | Caresmatic Brands, LLC | - |
| | | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions | | |
| Consulting Agreement | Martin Morris | Ringvagen 112 | | Stockholm | | LGH 1001, 11661 | Agreement | Caresmatic Brands, LLC | - |
| | | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions | | |
| Consulting Agreement | Martin Morris | Ringvagen 112 | | Stockholm | | LGH 1001, 11661 | Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Mary Osborne | 3809 VALLEY VIEW RD #5 | | AUSTIN | TX | 78704 | Silverts Influencer Ambassador / Creative / UGC Agreement | Silverts Adaptive, LLC | - |
| Customer Contract | McKay's Clothing | 851 Abbott Rd | | Buffalo | NY | 14220 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | McNeill, George | 7001 HUNTER COVE DR | | ARLINGTON | TX | 76001 | Independent Sales Contractor Agreement, Effective 8/29/1999 | Caresmatic Brands, LLC | - |
| Contractor Agreement | McNeill, George | 7001 HUNTER COVE DR | | ARLINGTON | TX | 76001 | Independent Sales Contractor Agreement, Effective 8/29/1999 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | McWilliams Uniform Shoppe | 364 Mill St | | Danville | PA | 17821 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | MD Uniforms | 19141 Stone Oak Pkwy Ste 606 | | San Antonio | TX | 78258 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | MD Uniforms | 19141 Stone Oak Pkwy Ste 606 | | San Antonio | TX | 78258 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Med Plus Uniforms & Scrubs | 695 Kidder St | | Wilkes-Barre | PA | 18702 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Plus Uniforms & Scrubs | 695 Kidder St | | Wilkes-Barre | PA | 18702 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Med Scrubs | 2900 N. Sugar Rd.  Suite E. | | Pharr | TX | 78577 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Scrubs | 2900 N. Sugar Rd.  Suite E. | | Pharr | TX | 78577 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Uniform | 26300 Cedar Rd Ste 1440 | | Beachwood | OH | 44122 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Ctr Medical Products | 1061 West Forest | | Jackson | TN | 38301 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Market | 2208 Worley Dr | | Alexandria | LA | 71301-3600 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Outfitters | 804 US Hwy 431 | | Boaz | AL | 35957 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Outfitters, LLC | 3904 Hixson Pike | | Chattanooga | TN | 37415 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Supply & Uniforms | 8062 Brooklyn Blvd | | Brooklyn Park | MN | 55445 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Uniform | 5152 Fredericksburg Rd #194 | | San Antonio | TX | 78229 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Medical Uniforms | 16126 Southwest Frwy Ste 160 | | Sugar Land | TX | 77479 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Uniforms | 16126 Southwest Frwy Ste 160 | | Sugar Land | TX | 77479 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Wear Outlet | 8211 Bruceville Rd #120 | | Sacramento | CA | 95823 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | MediGroup Physician Services | 100 Chesterfield Business Pkwy | Ste. 200 | Chesterfield | MO | 63005 | Group Purchasing Contract Agreement | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Medix Uniforms | 8128 Fredericksburg Rd | | San Antonio | TX | 78229 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Medwear Uniforms West Inc | 100 Sansbury Way #114 | | W Palm Beach | FL | 33411 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medwear Uniforms West Inc | 100 Sansbury Way #114 | | W Palm Beach | FL | 33411 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Meg's Medical Scrubs & Boutique | 205 1st Street S | | Winter Haven | FL | 33880 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Memorial Uniforms | 12371 Kingsride Ln | | Houston | TX | 77024 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Merchant Centric | 31365 Oak Crest Dr., Ste. 100 | | Westlake Village | CA | 91361 | Order Form Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Merchant Centric | 31365 Oak Crest Dr., Ste. 100 | | Westlake Village | CA | 91361 | Amendment/Agreement No. 1 | Caresmatic Brands, LLC | - |
| Customer Contract | Mercy Home Medical | 841 Springdale Dr | | Clinton | IA | 52732 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Mercy Home Medical | 841 Springdale Dr | | Clinton | IA | 52732 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Meridy's Uniform | 208 Madison St | | Vidalia | GA | 30474-4338 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Mettler-Toledo, LLC | 1900 Polaris Parkway | | Columbus | OH | 43240-4035 | Service Contract Acknowledgement | Strategic Distribution, L.P. | - |
| Service Agreement | Mettler-Toledo, LLC | 1900 Polaris Parkway | | Columbus | OH | 43240-4035 | Service Contract Acknowledgement 183646515 | Strategic Distribution, L.P. | - |
| Employment Agreement | Michael Penner | 632 Clarke Avenue | | Westmount | QC | H3Y 3E4 | Directorship Appointment | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Michael's LA Fashions | 1310 B S Broadway | | Santa Maria | CA | 93454 | Silver Elite | Caresmatic Brands, LLC | - |
| Software Agreement | MICROSOFT CORPORATION | DEPT. 551, VOLUME LICENSING | 6100 NEIL ROAD, SUITE 210 | RENO | NV | 89511-1137 | MICROSOFT PRODUCTS AND SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Midsouth Medical Equipment | 305 12th Street S | | Monroe | LA | 71201 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Midwest Uniform Suppliers Jasper | 420 S US Hwy 231 | | Jasper | IN | 47546 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Midwest Uniform Supply | 627 N Seminary St | | Galesburg | IL | 61401-2611 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Mid-west Uniforms Supply | 912 La Porte Rd | | Waterloo | IA | 50702-1836 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Miller Ink, Inc. | 11400 West Olympic Blvd., Suite 300 | | Los Angeles | CA | 90064 | Miller Ink Master Services Agreement | Caresmatic Brands, LLC | 2,054 |
| Contractor Agreement | Ming, Eddie R. | 8536 Breakers Point | | Dallas | TX | 75243 | Independent Sales Contractor Agreement, Effective 10/1/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Miracle Distributors | 327 Hilda Street | | East Meadow | NY | 11554 | Independent Sales Contractor Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Miracle Distributors | 327 Hilda Street | | East Meadow | NY | 11554 | Independent Sales Contractor Agreement, Effective 11/1/2008 | Caresmatic Brands, LLC | - |
| Contractor Agreement | MIRACLE DISTRIBUTORS (ANTHONY MASSERIA) | 327 HILDA STREET | | EAST MEADOW | NY | 11554 | Independent Sales Contractor Agreement, Effective 11/1/2008 | Caresmatic Brands, LLC | - |
| Service Agreement | Mister Sweeper LP | P.O. Box 560048 | | Dallas | TX | 75356 | Sweeper Contract | Strategic Distribution, L.P. | 92 |
| Service Agreement | Mister Sweeper LP | P.O. Box 560048 | | Dallas | TX | 75356 | Sweeper Contract | Strategic Distribution, L.P. | - |
| Consulting Agreement | Mobley, Wendell | 12358 Alderglen Street | | Moorpark | CA | 93021 | Consulting Agreement Proprietary Information Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Model Uniforms | 110 Vista Drive  Suite C | | Charleroi | PA | 15022 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | More Than Scrubs LLC | 480 Wilson Ave | | Thomasville | AL | 36784 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Morger's Shoes & Bootery | 2755 E Franklin Blvd | | Gastonia | NC | 28056 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Professional Services Agreement | New Trojan Parent, Inc. | - |
| | Moss Adams LLP | | | | | | Master Services Agreement Addendum Business Entity Tax Returns | Strategic Partners Acquisition Corp. | |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Master Services Agreement Addendum Transaction Services | Trojan Holdco, Inc. | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Addendum | Trojan Holdco, Inc. | - |
| Employment Agreement | Mr. Larry Benjamin | 130 E OWENTSIA RD | | LAKE FOREST | IL | 60045 | Board of Director Appointment | Trojan Holdco, Inc. | - |
| Employment Agreement | Mr. Lawrence Jackson | 2312 ELLISTON PL #451 | | NASHVILLE | TN | 37203 | Board of Director Appointment | Trojan Holdco, Inc. | - |
| Service Agreement | MRI Management Services | 5115 PECAN PARK BLVD | | GRAND PRAIRIE | TX | 75050 | Services Agreement | Caresmatic Brands, LLC | - |
| Employment Agreement | Ms. Kathleen Sanford | PO Box 350 | | Olalla | WA | 98359 | Board director appointment | Trojan Holdco, Inc | - |
| Employment Agreement | Ms. Kathleen Sanford | PO Box 350 | | Olalla | WA | 98359 | Incentive Unit Grant Agreement | New Trojan Parent, Inc | - |
| Elite Retailer Agreement | My Scrub Shop | 30 E Main St | | Palmyra | PA | 17078 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | My Uniform Corner | 4500 Rogers Ave Suite 1 | | Fort Smith | AR | 72903 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | My Uniform Corner | 4500 Rogers Ave Suite 1 | | Fort Smith | AR | 72903 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | CHANGE ORDER | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Statement of Work | AllHearts, LLC | - |
| Employment Agreement | Natalia Hodgson | 1600 MAGNOLIA AVE | | MANHATTAN BEACH | CA | 90266 | General Release Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | National Logistics Services (2006), Inc. | 150 Courtneypark Drive West | | Mississauga, ON | ON | L5W 1Y6 | General Services Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | National Logistics Services (2006), Inc. | 150 Courtneypark Drive West | | Mississauga, ON | ON | L5W 1Y6 | Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | National Outdoors | 5600 Bandera Rd | | San Antonio | TX | 78238 | Gold Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Navigators Insurance Company | One Penn Plaza | | New York | NY | 10119 | General Indemnity Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nea Uniforms | 3905 Stadium Blvd | | Jonesboro | AR | 72404-9006 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nea Uniforms | 2407 Linwood Dr Ste B | | Paragould | AR | 72450-4234 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nick's Shoes | 2103 Elm Rd | | Warren | OH | 44483 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | NedGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | NedGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | NedGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | 2022 SOFTWARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | NedGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | NedGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Contractor Agreement | NEELY, CAPRICE | 61548 Hardin Court | | Bend | OR | 97702 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | New Generation Computing, Inc. | 14900 NW 79th Ct. | | Miami Lakes | FL | 33016 | Software License and Services Agreement (Order Form No. 2324) | Caresmatic Brands, LLC | 27,861 |
| Elite Retailer Agreement | New Look Uniform & Embroidery | 800 S 20th St | | Altoona | PA | 16602-4541 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | New Nurse Academy LLC | 6340 Ross Street | | Philadelphia | PA | 19144 | AMENDMENT: Consulting Agreement / Proprietary Information / Assigment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | New Nurse Academy LLC | 6340 Ross Street | | Philadelphia | PA | 19144 | Consulting Agreement / Proprietary Information / Assigment of Inventions | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | New Waves Scrubs LLC | 16385 Bernardo Center Dr | | San Diego | CA | 92128 | Titanium Elite | Caresmatic Brands, LLC | - |
| Group Customer Contract | New York Presbyterian | 525 East 68th Street | | New York | NY | 10065 | Second Amendment to Medical Uniform Purchase Agreement | Med Couture, LLC | - |
| Service Agreement | Nextiva, Inc. | 9451 E. Via de Ventura | | Scottsdale | AZ | 85256 | Nextiva Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Nexus Technologies, LLC (d/b/a Nexustek) | 5899 S GREENWOOD PLZ BLVD | STE 201 | GREENWOOD VILLAGE | CO | 80111 | Master Service Agreement | Caresmatic Brands, LLC | 6,280 |
| Contractor Agreement | Nilsen, Chris | 9315 Highmeadow | | Houston | TX | 77063 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Nilsen, Chris | 9315 Highmeadow | | Houston | TX | 77063 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Noor Clothing | 681 Palomar St #A | | Chula Vista | CA | 91911 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | North Texas Uniforms | 151 College Park Dr | | Weatherford | TX | 76086 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Consulting Agreement / Proprietary Information /Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Independent Contractor / Proprietary Information / Assignment of Inventions | Caresmatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Independent Sales Contractor Agreement, Effective 9/7/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Independent Sales Contractor Agreement, Effective 9/7/2010 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Northshore Medical Supply | 375 Maxey Rd | | Houston | TX | 77013-4545 | Titanium Elite | Caresmatic Brands, LLC | - |
| Group Customer Contract | Northwestern | 541 N. Fairbanks | 18-1803 | Chicago | IL | 60611 | THIRD AMENDMENT TO THE MED COUTURE, INC. APPAREL PURCHASE AGREEMENT | Med Couture, LLC | - |
| Elite Retailer Agreement | N'Style Uniforms | 1125 N Simpson Dr. Ste. E | | Warrensburg | MO | 64093 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Nurses Boutique Etc | 1748 S Mooney Blvd | | Visalia | CA | 93277-7771 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Boutique Etc | 1748 S Mooney Blvd | | Visalia | CA | 93277-7771 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Unif & Shoes | 1460 North Ave Suite K | | Grand Junction | CO | 81501 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Uniform Place Inc | 1104 Chestnut St | | Philadelphia | PA | 19107 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Nye Uniform | 1030 Scribner | | Grand Rapids | MI | 49504-4212 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Office Depot, Inc. | PO BOX 28248 | | PHOENIX | AZ | 85038-9248 | Joinder Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Old Country Medical Apparel | 451 Old Country Rd | | Westbury | NY | 11590 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | MAINTENANCE AND USER SUPPORT AGREEMENT | Caresmatic Brands, LLC | 25,474 |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Software License Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Software License Agreement, nr. 2444 - OMP Plus | Caresmatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Maintenance and User Support Agreement, nr. 2444 - OMP Plus | Caresmatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | MAINTENANCE AND USER SUPPORT AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | OneMedSource | 4170 Lawon Dr #140 | | Garland | TX | 75040 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogix) | P.O. Box 6798 | | Scarborough | ME | 04070 | HOSTED EDITION MASTER SUBSCRIPTION AGREEMENT | AllHearts, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogix) | P.O. Box 6798 | | Scarborough | ME | 04070 | HOSTED EDITION MASTER SUBSCRIPTION AGREEMENT | AllHearts, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogix) | P.O. Box 6798 | | Scarborough | ME | 04070 | On-Line Technologies, Inc. (d.b.a. OrderLogix) Hosted Edition Master Subscription Agreement | AllHearts, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogix) | P.O. Box 6798 | | Scarborough | ME | 04070 | On-Line Technologies, Inc. (d.b.a. OrderLogix) Hosted Edition Master Subscription Agreement 20220406 | AllHearts, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Agreement 2023017 | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Fixed Price Statement of Work - Silverts | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle My Support Renewal | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite Estimate dated 11/15/2019, Estimate # 668354 | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Fixed Price Statement of Work | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Time & Material Statement of Work | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Time & Material Statement of Work - Silverts | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle Ordering Document | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Order Form re License and Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Statement of Work Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Statement of Work Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement - Silverts | Caresmatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Time & Material Statement of Work | Caresmatic Brands, LLC | - |
| Contractor Agreement | Orbit, LLC | 6 Highmeadow Road | | Weston | MA | 02493 | Advisory Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Orbit, LLC | 6 Highmeadow Road | | Weston | MA | 02493 | Advisory Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Outboundview LLC | 531 Alfred Ladd Road East | | Franklin | TN | 37064 | Consulting Agreement | AllHearts, LLC | - |
| Consulting Agreement | Outboundview LLC | 531 Alfred Ladd Road East | | Franklin | TN | 37064 | Consulting Agreement | AllHearts, LLC | - |
| Service Agreement | Outlaracation Inc | 900 BRIDGEWATER CT | | NASHVILLE | TN | 37221 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Contractor Agreement | Oxford Omega, Inc. | 1000 Wooten Avenue | | Canton | GA | 30114 | Independent Sales Contractor Agreement, Effective 9/1/2014 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Oxford Omega, Inc. | 1000 Wooten Avenue | | Canton | GA | 30114 | Independent Sales Contractor Agreement, Effective 9/1/2014 | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Pacoima Limited, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Pacoima Limited, LLC | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | EREQUESTER LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | EREQUESTER LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | Supplemental eRequester License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | SUPPLEMENTAL EREQUESTER LICENSE AGREEMENT (PROJECT ACCOUNTING MODULE) | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | Supplemental eRequester License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | SUPPLEMENTAL EREQUESTER LICENSE AGREEMENT (PROJECT ACCOUNTING MODULE) | Caresmatic Brands, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | Caresmatic Brands, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | AllHearts, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | Marketplace Impact, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUROY AGENT REPRESENTATION CONTRACT | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Parker's | 414 N Broadway | | Jennings | LA | 70546-5338 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Parker's Clothing | 39 Lance St Ste 4 | | Blue Ridge | GA | 30513 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | PREVENTIVE MAINTENANCE & EQUIPMENT AGREEMENT | Strategic Distribution, L.P. | 4,556 |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | EQUIPMENT AGREEMENT & CUSTOMER INFORMATION | Strategic Distribution, L.P. | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | OFFICE COFFEE SERVICEICE AND WATER ADDENDUM | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | OFFICE COFFEE SERVICEICE AND WATER ADDENDUM | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | PREVENTIVE MAINTENANCE & EQUIPMENT AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Parkway Scrubs | 2006 South Memorial Pkwy | | Huntsville | AL | 35801 | Diamond Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Pat O'Reilly Sales, Inc. | 10037 S MAPLEWOOD | | CHICAGO | IL | 60655 | Independent Sales Contractor Agreement, Effective 10/1/2011 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Pat O'Reilly Sales, Inc. | 10037 S MAPLEWOOD | | CHICAGO | IL | 60655 | Independent Sales Contractor Agreement, Effective 10/1/2011 | Caresmatic Brands, LLC | - |
| Contractor Agreement | PAUL HABER | 15221 VIBURNUM RD | | FRISCO | TX | 75035 | Independent Sales Contractor Agreement, Effective 1/1/1998 | Caresmatic Brands, LLC | - |
| Others | PAULA ERSKINE | 2304 GLASTONBURY RD | | BURLINGTON | NC | 27215 | Cobra Continuation Coverage | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Paylees Uniforms | 703 N 10th St | | McAllen | TX | 78501 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | PDQ TEMPORARIES, INC. | 702 HUNTERS ROW CT | | MANSFIELD | TX | 76063 | AGREEMENT TO PROVIDE STAFFING SERVICES | Caresmatic Brands, LLC | - |
| | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. FL 8, | | New York | NY | 10010 | SEVENTH AMENDMENT AGREEMENT | | 7,868 |
| License Agreement | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. FL 8, | | New York | NY | 10010 | FIFTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-5 D 6766 | Strategic Distribution, L.P. | - |
| License Agreement | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. FL 8, | | New York | NY | 10010 | FOURTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-4 D 6766 | Strategic Distribution, L.P. | - |
| License Agreement | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. FL 8, | | New York | NY | 10010 | FIFTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-5 D 6766 | Strategic Distribution, L.P. | - |
| Employment Agreement | Penner, Michael | 632 Clarke Avenue | | Westmount | QC | H3Y 6E4 | Independent Directorship Appointment | CBI Parent, L.P. | - |
| Customer Contract | Perfect Expressions | 3643 W Maple Rd | | Bloomfield Hills | MI | 48301 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Perkins Medical Supply | 3717 10th Ct | | Vero Beach | FL | 32960-6559 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Personal Graphics, Inc. | 610 W. Sheridan Ste 3 | | Petoskey | MI | 49770 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Picky Picky Picky Surplus | 600 E Street | | Eureka | CA | 95501 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Pinebeach, Inc. | 307 S 2nd St | | Laramie | WY | 82070 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Piranha Brands | 10658 W Centennial Rd Ste 400 | | Littleton | CO | 80127 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Piranha Brands Inc | 10658 W Centennial Rd Ste 400 | | Littleton | CO | 80127 | Titanium Elite | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT 41273202 | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | PURCHASE POWER AUTOMATIC PAYMENT AGREEMENT | Carematic Brands, LLC | - |
| Customer Contract | Planet Scrubs | 3501 Midway Rd Suite 260 | | Plano | TX | 75093 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | Planet Scrubs | 3501 Midway Rd Suite 260 | | Plano | TX | 75093 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Plaza Uniform | 1507 Lafayette Rd | | Rossville | GA | 30741 | Titanium Elite | Carematic Brands, LLC | - |
| Insurance Agreement | PMC Treasury | The Commerce Building | 708 Third Avenue, 20th Floor | New York | NY | 10017 | Interest Rate Hedging Advisory Proposal dated 9/2/2021 | New Trojan Parent, Inc. | - |
| Elite Retailer Agreement | Pocono Scrubs | 1545 N 9th St Ste 110 | | Stroudsburg | PA | 18360 | Gold Elite | Carematic Brands, LLC | - |
| Contractor Agreement | PONCE INTERNATIONAL, INC. | 1539 BRIARGLEN AVENUE | | WESTLAKE VILLAGE | CA | 91361 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Poughkeepsie Uniform Shop Inc | 2555 South Rd Ste 2 | | Poughkeepsie | NY | 12601 | Gold Elite | Carematic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Power Digital Marketing Campaign Agreement | Carematic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum | Carematic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum #4 | Carematic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum #5 | Carematic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Premiere Uniforms | 3196 N. College Ave | | Fayetteville | AR | 72703-3573 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Prism Medical Apparel | 340 Cutlers Hill Ct | | Lexington | KY | 40509 | Silver Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Prn Uniform & Medical | 921 Cypress Creek Pkwy Ste122 | | Houston | TX | 77090-2530 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | PRN Uniforms, LLC | 3295 South Cooper Street Ste 137 | | Arlington | TX | 76015-3466 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Pro Image Uniforms | 1216 Wildwood Ave | | Jackson | MI | 49202 | Gold Elite | Carematic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | By-Laws for the Procurement of Products | Carematic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | Supply Agreement | Carematic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | Affiliation Agreement | Carematic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | Affiliation Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Professional Apparel Co. | 847 Main St | | Battle Creek | MI | 49014-4569 | Diamond Elite | Carematic Brands, LLC | - |
| Customer Contract | Professional Fashion | 46 S Plaza Way | | Cape Girardeau | MO | 63703-5809 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Professional Fashion | 46 S Plaza Way | | Cape Girardeau | MO | 63703-5809 | Titanium Elite | Carematic Brands, LLC | - |
| Customer Contract | Professional Servicewear, Inc. | 3800 Quakerbridge Rd | | Hamilton | NJ | 08619 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Professional Servicewear, Inc. | 3800 Quakerbridge Rd | | Hamilton | NJ | 08619 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Proforma Business World | 634 W 2nd St | | Hastings | NE | 68901 | Silver Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Project Scrubs | 255341 Hwy 101 | | Port Angeles | WA | 98362 | Gold Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Pruitt, Jon | 85 NEWMAN PL | | FAIRFIELD | CT | 06825 | Independent Sales Contractor Agreement, Effective 9/19/2011 | Carematic Brands, LLC | - |
| Customer Contract | Putt & Go Video Inc | 126 Frontage Rd | | Forest City | NC | 28043-4338 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | QD Scrubs | 3233 W Saginaw | | Lansing | MI | 48917 | Titanium Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Quinn, Maria J. | 550 Morse Avenue | | Ridgefield | NJ | 07657 | Changes to Agreement | Carematic Brands, LLC | - |
| Contractor Agreement | QUYEN, DO NGOC | 60 Tran Phu Street, Chanh Nghia Ward | Thu Dau Mot city | Binh Duong province | | | Independent Contractor Agreement | Carematic Brands, LLC | - |
| Service Agreement | Rackspace USA, Inc. | 1 FANATICAL PL | | WINDCREST | TX | 78218 | Service Order (Rackspace Master Service Agreement (MSA) | Carematic Brands, LLC | 5,837 |
| Elite Retailer Agreement | Raley Medical Equipment | 6465 S. Yale Ave, Suite 512 | | Tulsa | OK | 74136 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Ravine Inc. | 610 7th St | | Altoona | PA | 16602 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | RC Uniforms | 11173 Beach Blvd | | Jacksonville | FL | 32246 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Read's Uniforms & Shoes - Medical | 4 Sweeten Creek Crossing | | Asheville | NC | 28803 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Red Dot Uniform Shoppe | 2603 Kirsten Lane | | Fargo | ND | 58103 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Regal Love Uniforms | 7301 Stonecrest Concourse | | Stonecrest | GA | 30038 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Reina Uniform | 9931-0035 Gidley St | | El Monte | CA | 91731 | Titanium Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Reis, Thomas | 4140 ROSEPARK DR | | WEST LINN | OR | 97068 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Service Agreement | RENTOKIL NORTH AMERICA D/B/A RENTOKIL | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | COMMERCIAL PEST MANAGEMENT MAINTENANCE AGREEMENT | Carematic Brands, LLC | 1,509 |
| Lease | RICOH CANADA INC. | 300-5520 EXPLORER DRIVE | | MISSISSAUGA | ON | L4W 5L1 | LEASE AGREEMENT | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Rig Outfitters | 1401 N Turner St Ste 6 | | Hobbs | NM | 88240 | Silver Elite | Carematic Brands, LLC | - |
| Service Agreement | RINGCENTRAL, INC. | 20 DAVIS DRIVE | | BELMONT | CA | 94002 | Master Services Agreement | Carematic Brands, LLC | - |
| Service Agreement | RINGCENTRAL, INC. | 20 DAVIS DRIVE | | BELMONT | CA | 94002 | RINGCENTRAL PROFESSIONAL SERVICES STATEMENT OF WORK | Carematic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Carematic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Carematic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Carematic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | FIRST AMENDMENT TO MASTER PURCHASE AGREEMENT CAREISMATIC BRANDS | Carematic Brands, LLC | - |
| Elite Retailer Agreement | RJW Enterprises | 221 Gatewood Dr | | Aiken | SC | 29801 | Titanium Elite | Carematic Brands, LLC | - |
| Software Agreement | RKL RESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #5000736-REV1 | Carematic Brands, LLC | - |
| Software Agreement | RKL RESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #500639 | AllHearts, LLC | - |
| Software Agreement | RKL RESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #6000041 | Carematic Brands, LLC | - |
| Contractor Agreement | ROBERT DREXEL KLEIN | 2525 BROWN DR | | FLOWER MOUND | TX | 75022 | Independent Sales Contractor Agreement, Effective 1/1/2003 | Carematic Brands, LLC | - |
| Contractor Agreement | Robert J. Blumenthal, Inc. | 777 NW 72 Avenue 3F19 | | Miami | FL | 33126 | Independent Sales Contractor Agreement, Effective 10/15/2001 | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Roberts Medical Uniforms | 1135 Commercial Ave SE | | New Philadelphia | OH | 44663-3802 | Diamond Elite | Carematic Brands, LLC | - |
| Professional Services | Robinhill LLC | 450 Lexington Ave | 4th Fl | New York | NY | 10017 | Contracting Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Rocky Brands | 45 E Canal St | | Nelsonville | OH | 45764 | Silver Elite | Carematic Brands, LLC | - |
| Employment Agreement | Roessler, Scott | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | Compensation Plan Effective 1/1/2001 | Carematic Brands, LLC | - |
| Employment Agreement | Roessler, Scott | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | Compensation Plan Effective 1/1/2001 | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Rogers Uniforms, LLC | 700 W Third St | | Williamsport | PA | 17701-5816 | Gold Elite | Carematic Brands, LLC | - |
| Others | RON BELENO | 10 DEAN PARK RD | UNIT 306 | TORONTO | ON | M1B3G8 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Silverts Adaptive, LLC | - |
| Contractor Agreement | Ronald Jocelyn | Santo 15A, #74 | | Croix-des-Bouquets | | | Agreement | Carematic Brands, LLC | - |
| Contractor Agreement | Rose Allen Industries | 222 3rd Ave SW | | Cedar Rapids | IA | 52404 | Silver Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Rothkin, Barry | 401 CLEARVIEW CT | | LAKE VILLA | IL | 60046 | Independent Sales Contractor Agreement, Effective 1/1/1999 | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Ruth Linen | 2142 NW 20th St Unit 5 & 6 | | Miami | FL | 33142 | Titanium Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Ruth's Uniforms | 2009 E Olive Rd | | Pensacola | FL | 32514 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Ryan Uniforms LLC | 8507 Midlothian Tpke | | Richmond | VA | 23235 | Titanium Elite | Carematic Brands, LLC | - |
| Service Agreement | RYU LAW FIRM | 915 WILSHIRE BOULEVARD | SUITE 1775 | LOS ANGELES | CA | 90017 | Engagement Letter for Legal Representative | Carematic Brands, LLC | - |
| Contractor Agreement | Saari, Jon K. | 1388 NATIONAL RD | UNIT 9 | WHEELING | WV | 26003 | Independent Sales Contractor Agreement, Effective 1/1/2004 | Carematic Brands, LLC | - |
| Contractor Agreement | Saari, Jon K. | 1388 NATIONAL RD | UNIT 9 | WHEELING | WV | 26003 | Independent Sales Contractor Agreement, Effective 1/1/2009 | Carematic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Amendment to Warehouse Services Agreement entered into on March 16., 2023 | Carematic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Statement of Work No. 1 dated as of September 21, 2021 | AllHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Master Warehouse Services Agreement entered into as of September 1, 2021 | AllHearts, LLC | - |
| Software Agreement | Sage Software, Inc. | 56 TECHNOLOGY DRIVE | | IRVINE | CA | 92618-2301 | SAGE SOFTWARE, INC. CLIENTCARE SUPPORT AND MAINTENANCE AGREEMENT FOR ACUITY APPLICATIONS SOFTWARE | Carematic Brands, LLC | - |
| Software Agreement | Sage Software, Inc. | 56 TECHNOLOGY DRIVE | | IRVINE | CA | 92618-2301 | ClientCare Support and Maintenance Agreement for Acuity Applications SoftWare | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Sand Oak Uniforms & Embroidery | 2616 Fondren Rd | | Houston | TX | 77063 | Silver Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Sanders Uniforms | 1570 Highway 1 South | | Greenville | MS | 38701-7000 | Titanium Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Sands, Timothy | 1495 WASHINGTON DT | | EAST BRIDGEWATER | MA | 02333-1624 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Santa Rosa Uniforms And Career Apparel | 1005 W College Ave | | Santa Rosa | CA | 95401-5029 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Savannah Kids Wear | 818 E Derenne Ave | | Savannah | GA | 31405 | Titanium Elite | Carematic Brands, LLC | - |
| Contractor Agreement | Scherer, Ron | 410 SWAN BLVD | | DEERFIELD | IL | 60015 | Independent Sales Contractor Agreement, Effective 3/12/2004 | Carematic Brands, LLC | - |
| Service Agreement | ScotiaBank | 720 KING ST WEST 2ND FL | | TORONTO | ON | M5V2T3 | Government Tax Payment & Filing Service Enrollment | Strategic Distribution, L.P. | - |
| Employment Agreement | SCOTT ROESSLER | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | COMPENSATION PLAN FOR SCOTT ROESSLER, EFFECTIVE 1/1/2001 | Carematic Brands, LLC | - |
| Customer Contract | Scottie's Scrubs & Stuff, 614 Apparel | 5800 Chantry Dr | | Columbus | OH | 43232 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Apparel Outlet | 17689 Coastal Hwy | | Lewes | DE | 19958 | Gold Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Bees | 2100 N Wilmot Rd Ste 308 | | Tucson | AZ | 85712-3051 | Gold Elite | Carematic Brands, LLC | - |
| Customer Contract | Scrub Dealer | 7592 154th Rd N | | Palm Beach Gardens | FL | 33418 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Depot, Inc. | 5828 Grape Rd | | Mishawaka | IN | 46545 | Diamond Elite | Carematic Brands, LLC | - |
| Customer Contract | Scrub Dub | 1327 S Beckham Ave | | Tyler | TX | 75701 | PIE 2.0 Customer Agreement | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Diamond Elite | Carematic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Gold Elite | Carematic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Identity | 4655 E 82nd Street | | Indianapolis | IN | 46250 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Jct | 1023 Yellowstone Ave H | | Pocatello | ID | 83201 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Loft | 7511 Warden Rd | | Sherwood | AR | 72120 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Mart | 2638 Main Street | | Chula Vista | CA | 91911 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Paradise LLC | 2800 SW 24th Ave | | Ocala | FL | 34471 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrub Patrol | 2595 E Missouri Ave | | Las Cruces | NM | 88011 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Shack | 5256 Rt 30 Ste. 111 | | Greensburg | PA | 15601 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Shack SC Inc | 1239 D. Burkemont Ave | | Morganton | NC | 28655 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Spot LLC | 3707 Ellison Dr NW Ste H-1 | | Albuquerque | NM | 87114 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Station | 2440 North Hills St Ste 107 | | Meridian | MS | 39305 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Wearhouse LLC | 2409 Main St | | Rocky Hill | CT | 06067 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub World | PO Box 7157 | | Hazard | KY | 41702 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrub411 | 13248 Hawthorne Blvd | | Hawthorne | CA | 90250-7001 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Beyond, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Krazy Kat Sportswear LLC | - |
| Elite Retailer Agreement | Scrubs & Beyond, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Med Couture, LLC | - |
| Purchase Agreement | SCRUBS & BEYOND, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Krazy Kat Sportswear LLC | - |
| Purchase Agreement | SCRUBS & BEYOND, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Med Couture, LLC | - |
| Customer Contract | Scrubs & Co | 992 State Hwy 46 South Ste 101 | | New Braunfels | TX | 78130 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Co | 992 State Hwy 46 South Ste 101 | | New Braunfels | TX | 78130 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Duds | 1223 E 10th St | | Odessa | TX | 79761 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Stitches | 37011 Cook St Ste103 | | Palm Desert | CA | 92211 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs & Stuff, LLC | 2687 Steelsburg Hwy | | Cedar Bluff | VA | 24609 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Stuff, LLC | 2687 Steelsburg Hwy | | Cedar Bluff | VA | 24609 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 101 Uniform Boutique | 3074 Ross Clark Cir | | Dothan | AL | 36301 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs 2 Go & More | 1010 Seminole Dr #109 | | Fort Lauderdale | FL | 33304-3201 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 365 | 3664 A Pacific Ave | | Olympia | WA | 98501 | Gold Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs 4 All | 36888 Airport Blvd | | Mobile | AL | 36608 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 All | 36888 Airport Blvd | | Mobile | AL | 36608 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 Less | 7800 E State Rt 69 Ste B1 | | Prescott Valley | AZ | 86314 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 Less | 7800 E State Rt 69 Ste B1 | | Prescott Valley | AZ | 86314 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 U | 23016 Lake Forest Dr Ste B | | Laguna Hills | CA | 92653 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs And Chefs Wear By Ann | 1076 Eagles Landing Pkwy | | Stockbridge | GA | 30281-5012 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs and More | 210 Needmore Rd Ste E | | Clarksville | TN | 37040 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Boutique and More LLC | 6301 NW Loop 410 | | San Antonio | TX | 78238 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Boutique and More LLC | 6301 NW Loop 410 | | San Antonio | TX | 78238 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs By Benji | 1104 Broadway Street | | Emmetsburg | IA | 50536 | Silver Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs By Design | 4817 SW 34th Street Ste. 1 & 2 | | Gainesville | FL | 32608 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs By Design | 4817 SW 34th Street Ste. 1 & 2 | | Gainesville | FL | 32608 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs By Pinque Lady | 7736 E US Highway 36 | | Avon | IN | 46123-7880 | Gold Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Cary | 669 Cary Towne Blvd | | Cary | NC | 27511 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Cary | 669 Cary Towne Blvd | | Cary | NC | 27511 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Central | 100 Pawnee Rd Suite A | | Chillicothe | OH | 45601 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Club | 1307 Scotland Crossing Dr | | Laurinburg | NC | 28352 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Club | 1307 Scotland Crossing Dr | | Laurinburg | NC | 28352 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Direct | 8232 Menaul Blvd NE | | Albuquerque | NM | 87110 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Elite | 1005 Hwy 72 East | | Corinth | MS | 38834 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Diamond Elite | Careismatic Brands, LLC | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Scrubs Express | 1908 Vestal Pkwy East | | Vestal | NY | 13850 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Express | 1908 Vestal Pkwy East | | Vestal | NY | 13850 | Titanium Elite | Careismatic Brands, LLC | - |
| Contract Contract | Scrubs Express, LLC | 843 Fairview Ave Ste A2 | | Bowling Green | KY | 42101 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Express, LLC | 843 Fairview Ave Ste A2 | | Bowling Green | KY | 42101 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs For Less | 9261 Halls Ferry Rd | | St. Louis | MO | 63136 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Galore | 6051 Dale Dr Ste B | | Marion | MS | 39342 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Galore N. More | 815 N 4th St Ste F | | Longview | TX | 75601 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs in a Tub | 850 W Lugonia Ave | | Redlands | CA | 92374 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Infinite | 499 New Brunswick Ave | | Fords | NJ | 08863 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Los Angeles Inc | 1040 E Walnut St | | Pasadena | CA | 91106 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Los Angeles Inc | 1040 E Walnut St | | Pasadena | CA | 91106 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Duds | 9300 4th Street North | | Saint Petersburg | FL | 33702 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs n Essentials | 3174 Romhardt College Pkwy | | Canton | GA | 30114 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Extras | 31141 Temecula Pkwy Ste H4 | | Temecula | CA | 92592 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 'n Scopes | 425 W Guadalupe #108 | | Gilbert | AZ | 85233-3203 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs N Stuff Inc | 3993 Tyrone Blvd N Ste 202 | | Saint Petersburg | FL | 33709-4106 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Stuff Inc | 3993 Tyrone Blvd N Ste 202 | | Saint Petersburg | FL | 33709-4106 | Diamond Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs -n- Tees | 203 Tanger Blvd | | Locust Grove | GA | 30248-3640 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs -n- Tees | 203 Tanger Blvd | | Locust Grove | GA | 30248-3640 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Nyack | 1520 Palisades Center Drive | | West Nyack | NY | 10994 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs of Evans, LLC | 4158 Washington Rd Ste 7 | | Evans | GA | 30809 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs On Site | 807 W 2nd St | | Holden | MO | 64040 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs on the Run | 2100 Outlet Center Dr #340 | | Oxnard | CA | 93036 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus | 21100 Dulles Town Cir Ste 280 | | Dulles | VA | 20166 | Gold Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | Titanium Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Plus, Inc | 811 South 500 West Ste 101 | | Bountiful | UT | 84010 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus, Inc | 811 South 500 West Ste 101 | | Bountiful | UT | 84010 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs PRN | 6326 NW Barry Rd | | Kansas City | MO | 64154 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs PRN | 6326 NW Barry Rd | | Kansas City | MO | 64154 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs To The Rescue, LLC | 8000 S Gessner Rd Ste 500 | | Houston | TX | 77036 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Today | 15909 118th Ave NW | | Gig Harbor | WA | 98329 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubsies Uniform Supply LLC | 414 Wallace Ct | | Richmond | KY | 40475 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs-n-more | 4649 Hardy Street | | Hattiesburg | MS | 39402 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubtastic of Tennessee | 2686 Kirby Whitten Ste 107 | | Memphis | TN | 38133 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubtopia Plus | 1730 Briarcrest Dr | | Bryan | TX | 77802 | Silver Elite | Careismatic Brands, LLC | - |
| Customer Contract | Scrubwagon | 684 Hanes Mall Blvd | | Winston Salem | NC | 27103 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubzilla of Alexandria | 5693 South Congress Ave | | Atlanta | GA | 33462 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Consulting Agreement | SEAN FRADY | 4511 HUNTWOOD HILL LN | | KATY | TX | 77494 | Independent Consultant Agreement | Careismatic Brands, LLC | - |
| | | | | | | | STATEMENT OF WORK NO. 1 BETWEEN STRATEGIC PARTNERS INC. AND | | |
| Contractor Agreement | SEAN RENET | 7803 KELVIN AVE | | WINNETKA | CA | 91306 | SEAN RENET, DATED 11/5/2018 | Careismatic Brands, LLC | - |
| Contractor Agreement | Second City Sales, Inc. | 7446 E BUCKHORN TRL | | SCOTTSDALE | AZ | 85266 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Careismatic Brands, LLC | - |
| | | | | | | | MASTER AGREEMENT FOR CLC SMARTSTORES PLATFORM AND B2B | | |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | PROGRAM MANAGER PLATFORM | Careismatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | Professional Services Bulk Buy-out of Hours | Careismatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | AGREEMENT FOR SERVICES | Careismatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | AGREEMENT FOR LICENSE AND MONTHLY MANAGEMENT | Careismatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | MedCouture Project | Careismatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Software Agreement | Sellers Commerce LLC | 5600N. RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | MASTER AGREEMENT FOR B2C SMARTSTORES PLATFORM AND B2B PROGRAM MANAGER PLATFORM | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Serendipity Uniforms | 5085 Virginia Loop Rd | | Montgomery | AL | 36116-5634 | Titanium Elite | Carekmatic Brands, LLC | - |
| License Agreement | SESAME WORKSHOP | 1900 BROADWAY | | NEW YORK | NY | 10023 | LICENSEE | Carekmatic Brands, LLC | - |
| License Agreement | SESAME WORKSHOP | 1900 BROADWAY | | NEW YORK | NY | 10023 | LICENSE AGREEMENT SESAME STREET | Carekmatic Brands, LLC | - |
| License Agreement | SESAME WORKSHOP | 1900 BROADWAY | | NEW YORK | NY | 10023 | 3-Year Renewal Agreement | Carekmatic Brands, LLC | - |
| License Agreement | Sesame Workshop LLC | One Lincoln Plaza | | New York | NY | 10023 | Renewal and Amendment to Agreement dated 7/1/2019 | Carekmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Independent Sales Contractor Agreement, Effective 8/23/1999 | Carekmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Independent Sales Contractor Agreement, Effective 8/23/1999 | Carekmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Independent Sales Contractor Agreement, Effective 8/23/1999 | Carekmatic Brands, LLC | - |
| Purchase Agreement | Sharp Electronics Corp | 100 PARAGON DR | | MONTVALE | NJ | 07645 | Contract # 8020128189 | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Shutters Apparel | 777 Alpha Dr | | Highland Heights | OH | 44143 | Silver Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Signature Uniforms | 1130 Geronimo Dr #1 | | El Paso | TX | 79925 | Titanium Elite | Carekmatic Brands, LLC | - |
| Intercompany Agreement | Silverts Adaptive, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Carekmatic Brands, LLC | - |
| Intercompany Agreement | Silverts Adaptive, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Carekmatic Brands, LLC | - |
| Customer Contract | Simply Scrubs | 802 S Peterson Ave Ste E | | Douglas | GA | 31533-5210 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Scrubs | 802 S Peterson Ave Ste E | | Douglas | GA | 31533-5210 | Diamond Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Scrubs of Florida, Inc. | 2751 Enterprise Rd Ste 115 | | Orange City | FL | 32763 | Diamond Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Uniforms | 5036 Goodman Rd Ste 112 | | Olive Branch | MS | 38654 | Gold Elite | Carekmatic Brands, LLC | - |
| Customer Contract | Sloms Professional Uniforms | 1125 Old York Rd | | Abington | PA | 19001-1917 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Sloms Professional Uniforms | 1125 Old York Rd | | Abington | PA | 19001-1917 | Titanium Elite | Carekmatic Brands, LLC | - |
| Service Agreement | SMART ACTION COMPANY, LLC | 300 CONTINENTAL BLVD STE 350 | | EL SEGUNDO | CA | 90245 | SMARTACTION AGREEMENT FOR STRATEGIC PARTNERS 11/24/2010 | Carekmatic Brands, LLC | 2,000 |
| License Agreement | Smart Sheet | 10500 NE 8th ST #1300 | | BELLEVUE | WA | 98004 | Order Q-1249979 | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Something Else Inc | 5552 US Hwy 29 N | | Blairs | VA | 24527 | Silver Elite | Carekmatic Brands, L.P. | - |
| Insurance Agreement | SOMPO International | 1221 Ave of Americas | | New York | NY | 10020 | Excess Liability Binder | CBI Parent, L.P. | - |
| Elite Retailer Agreement | South Texas Uniform | 2114B N 10th St | | McAllen | TX | 78501 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Southern Scrubs, LLC | 2904 North Ashley Street | | Valdosta | GA | 31602 | Gold Elite | Carekmatic Brands, LLC | - |
| Customer Contract | SP Uniforms Corp | 986 W Vernon | | Los Angeles | CA | 90037 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | SP Uniforms Corp | 986 W Vernon | | Los Angeles | CA | 90037 | Titanium Elite | Carekmatic Brands, LLC | - |
| Consulting Agreement | SPHERE PARTNERS LLC | 1119 COLORADO AVE | | SANTA MONICA | CA | 90401 | Consulting Services Agreement | Carekmatic Brands, LLC | - |
| Consulting Agreement | SPHERE PARTNERS LLC | 1119 COLORADO AVE | | SANTA MONICA | CA | 90401 | STATEMENT OF WORK #2022-106-CARBR | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | St. John Uniforms & More | 1111 N Dixie Hwy # 15 | | Elizabethtown | KY | 42701-2764 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Stacy's Uniforms | 4324 SW 45th Ave | | Amarillo | TX | 79109 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Star Uniforms of Central Illinois, LLC | 503 N. Prospect Rd. Suite 109 | | Bloomington | IL | 61704 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Stats | 119 1st St | | Grenada | MS | 38901-2615 | Silver Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Steele Uniforms & Accessories | 1305 E Broad Ave Ste 3 | | Rockingham | NC | 28379 | Gold Elite | Carekmatic Brands, LLC | - |
| Service Agreement | STERICYCLE INC - SHRED IT | 6100 CONDOR DRIVE | | NMOORPARK | CA | 93021 | PURGE SERVICE AGREEMENT EFFECTIVE 5/25/2021 | Carekmatic Brands, LLC | 1,004 |
| Employment Agreement | Steve Davis | 111 Arabian Road | | Schwenksville | PA | 19426 | Directorship | CBI Parent, L.P. | - |
| Consulting Agreement | Steven Land | 900 BRIDGEWATER CT | | NASHVILLE | TN | 37221 | Independent Sales Contractor Agreement | | - |
| Customer Contract | Stitch-N-Print | 3660 E Del Mar Blvd Ste 5 | | Laredo | TX | 78041 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Intercompany Agreement | Strategic General Partners, LLC | 14001 W State Hwy 29 #102 | | Liberyhill | TX | 78642 | Limited Liability Company Agreement of Strategic General Partners, LLC | Strategic General Partners, LLC | - |
| Intercompany Agreement | Strategic General Partners, LLC | 14001 W State Hwy 29 #102 | | Liberyhill | TX | 78642 | Limited Liability Company Agreement of Strategic General Partners, LLC | Strategic General Partners, LLC | - |
| Intercompany Agreement | Strategic Partners Holdings, Inc. | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Limited Liability Company Agreement of Strategic Partners Midco, LLC | Strategic Partners Midco, LLC | - |
| Intercompany Agreement | Strategic Partners, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Pacoima Limited, LLC | Pacoima Limited, LLC | - |
| Elite Retailer Agreement | Studio Scrubs, LLC | 8-B Elm Grove Crossing Mall | | Wheeling | WV | 26003 | Titanium Elite | Carekmatic Brands, LLC | - |
| Others | Sugar Hill Digital LLC | 1515 E. 15th Street | | Los Angeles | CA | 90021 | Trademark Assignment Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Sunshine Medical Uniforms | 902 Brooklyn Ave | | San Antonio | TX | 78215 | Diamond Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Superior Scrubs | 47 Highland Pavilion Ct Ste 103 | | Hiram | GA | 30141 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Surgical & Hospital Supplies | 276 Gabasse Street | | Houma | LA | 70360 | Titanium Elite | Carekmatic Brands, LLC | - |
| Service Agreement | SUZAN NGUYENNG | 15811 S ALLEY COURT | | HOUSTON | TX | 77082 | Retainer Agreement | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Sweetwater Scrubs, Inc. | 395 New Hwy 6B | | Sweetwater | TN | 37874 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Swift Uniforms | 7005 Woodway Dr Ste 205-206 | | Woodway | TX | 76712 | Titanium Elite | Carekmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC PLANNED SERVICE AGREEMENT | Carekmatic Brands, LLC | 828 |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC Planned Services Agreement | Carekmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC Planned Services Agreement | Carekmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC PLANNED SERVICE AGREEMENT | Carekmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | NEW HVAC PLANNED SERVICES AGREEMENT | Carekmatic Brands, LLC | - |
| Customer Contract | T & M Outlet | 1758 S Fayetteville St | | Asheboro | NC | 27205 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | T & M Outlet | 1758 S Fayetteville St | | Asheboro | NC | 27205 | Diamond Elite | Carekmatic Brands, LLC | - |
| Software Agreement | TAGGER MEDIA, INC. | 2001 WILSHIRE BLVD STE 301 | | SANTA MONICA | CA | 90403 | Saas Order Form | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | TBG Uniform Store | 5606 Church Ave | | Brooklyn | NY | 11203 | Gold Elite | Carekmatic Brands, LLC | - |
| Service Agreement | TCA TERRACARE ASSOCIATES, LP | 2433 MERRELL RD | | DALLAS | TX | 75229 | LANDSCAPE MAINTENACE AGREEMENT | Strategic Distribution, L.P | - |
| Service Agreement | TCA TERRACARE ASSOCIATES, LP | 2433 MERRELL RD | | DALLAS | TX | 75229 | LANDSCAPE MAINTENACE AGREEMENT | Strategic Distribution, L.P | - |
| Elite Retailer Agreement | TCB Uniforms, LLC | 361 Hwy 5 N | | Mountain Home | AR | 72653 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | TCS Uniforms | 2715 N State St | | Jackson | MS | 39216 | Diamond Elite | Carekmatic Brands, LLC | - |
| Consulting Agreement | TECHMEDICS | 527 WEST SEVENTH STREET | SUITE 500 | LOS ANGELES | CA | 90014 | PROCARE SERVICE LEVEL AGREEMENT | Carekmatic Brands, LLC | 3,405 |
| Service Agreement | TECHMEDICS | 527 WEST SEVENTH STREET | SUITE 500 | LOS ANGELES | CA | 90014 | PROCARE ADDENDUM MANAGEDCARE SERVICE LEVEL AGREEMENT | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Teddy Inc | 2721 Tamiami Trail # B | | Port Charlotte | FL | 33952 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | Templeton Uniforms | 3850 Ramada Dr A-1b | | Paso Robles | CA | 93446 | Gold Elite | Carekmatic Brands, LLC | - |
| Employment Agreement | Tepner, Harvey L. | 11 Fifth Avenue | apt 8-L | New York | NY | 10003 | Disinterested Directorship Appointment | CBI Parent, L.P. | - |
| Elite Retailer Agreement | The Care Shop | 1337 S Grand Blvd | | Spokane | WA | 99202 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Others | THE DAISY FOUNDATION | 6529 ALMEDA VISTA PL | | ANACORTES | WA | 98221 | PARTNERSHIP AGREEMENT | Carekmatic Brands, LLC | - |
| License Agreement | THE EARNEST ANALYTICS COMPANY | 43 West 24th Street, Floor 5 | | New York | NY | 10010 | Licensing Agreement dated 6/30/2023 | Carekmatic Brands, LLC | - |
| Service Agreement | The Grauer Group LLC | 935 TRENTLE CT | | CHARLOTTE | NC | 28211 | VENDOR AGREEMENT | Carekmatic Brands, LLC | - |
| Customer Contract | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | The Health Company | Carekmatic Brands, LLC | - |
| Customer Contract | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | Colombia Distributor Agreement | Carekmatic Brands, LLC | - |
| Customer Contract | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | Columbia Distributor Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Image Group | 1255 Corporate Dr | | Holland | OH | 43528 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Customer Contract | The Notion Shop | 115 E County Road | | Thomaston | GA | 30286 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Outlet | 9150 Reseda Blvd | | Northridge | CA | 91324 | Gold Elite | Carekmatic Brands, LLC | - |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | SOW for Logility Implementation dated February 12, 2024 | Carekmatic Brands, LLC | - |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | SOW for Logility Implementation dated February 12, 2024 | Carekmatic Brands, LLC | - |
| License Agreement | THE POKEMON COMPANY INTERNATIONAL, INC. | 10400 NE 4TH STREET | SUITE 2800 | BELLEVUE | WA | 98004 | Merchandise License Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Boutique LNJ | 2040 Corlies Ave | | Neptune City | NJ | 07753 | Silver Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Closet, LLC | 1292 Thompson Bridge Rd | | Gainesville | GA | 30501 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Club | 8527 E State Road 70 | | Bradenton | FL | 34202 | Diamond Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Connection | 108 Oakland Ave | | Seneca | SC | 29678 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Hub | 1506 West Beebe Capps Expressway | | Searcy | AR | 72143 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Hub, LLC | 19033 US Route 11 | | Watertown | NY | 13601 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shop | 6882 US Hwy 90 Ste 4 | | Daphne | AL | 36526 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shoppe | 2150 N Main St | | North Logan | UT | 84341 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shoppe | 2150 N Main St | | North Logan | UT | 84341 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Zone | 420 Hwy 51 N | | Brookhaven | MS | 39601-3650 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Center | 1156 E 700 S Ste 2 | | St George | UT | 84790 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Company | 1801 Lincoln Way Ste 6 | | Coeur d'Alene | ID | 83814 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Connection | 5740 Old Cheney Rd Ste 1 | | Lincoln | NE | 68516-3586 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Connection | 5740 Old Cheney Rd Ste 1 | | Lincoln | NE | 68516-3586 | Titanium Elite | Carekmatic Brands, LLC | - |
| Customer Contract | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | Titanium Elite | Carekmatic Brands, LLC | - |
| Customer Contract | The Uniform Place | 4679 Dressler Rd NW | | Canton | OH | 44718 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Place | 4679 Dressler Rd NW | | Canton | OH | 44718 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Silver Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shoppe Of Pikeville, Inc. | 70 Hillcrest Hts | | Pikeville | KY | 41501 | Silver Elite | Carekmatic Brands, LLC | - |
| Customer Contract | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | E-Commerce Agreement | Strategic Distribution, L.P | - |
| Elite Retailer Agreement | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | Titanium Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Spot | 627 South Houston Lake Road Suite 112 | | Warner Robins | GA | 31088 | Gold Elite | Carekmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store | 1120 N Duck Ste F | | Stillwater | OK | 74075-3648 | Titanium Elite | Carekmatic Brands, LLC | - |
| Customer Contract | The Uniform Store. | 1018 Main St | | Neodesha | KS | 66757 | PIE 2.0 Customer Agreement | Carekmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | The Uniform Store | 1018 Main St | | Neodesha | KS | 66757 | | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store | 1018 Main St | | Neodesha | KS | 66757 | | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store Llc | 6767 Dublin Center Drive | | Dublin | OH | 43017 | | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Superstore Inc | 555 Almeda Mall #70 | | Houston | TX | 77075 | | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Working Feet | 1950 Manhattan Blvd | | Harvey | LA | 70058-3561 | | Silver Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | The Yes Group | 1201 Mendota Heights Road | | Minneapolis | MN | 55120 | Principal/Representative Group Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Thee's Niche Scrub Shop | 3769 Fort St | | Lincoln Park | MI | 48146 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Thee's Niche Scrub Shop | 3769 Fort St | | Lincoln Park | MI | 48146 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Thrifty Home Medical | 226 E Main St | | Olney | IL | 62450 | | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | TIMARA LINK | 3917 OAKDALE AVENUE | | PASADENA | CA | 91107 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 3,866 |
| Elite Retailer Agreement | TMC Scrubs n More | 7227 Fannin St #105 | | Houston | TX | 77030 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Todays Uniforms | 58 N Williams St | | Crystal Lake | IL | 60014 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Todays Uniforms | 58 N Williams St | | Crystal Lake | IL | 60014 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tom & Jerry's Home | 620 Kristi Lane | | Connellsville | PA | 15425-2405 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tops Uniforms, Inc | 1742 Herlong Village Dr | | Rock Hill | SC | 29732 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | TORIN REA | 21021 N 56TH STREET | APT. 2102 | PHOENIX | AZ | 85054 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Scrubs, LLC | 101 North 1200 East Suite A3 | | Lehi | UT | 84043 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Sportswear Company | 25928 Western Ave | | Harbor City | CA | 90710 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Uniforms | 1301 W 34th St | | Austin | TX | 78705 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Trademark Uniforms, Inc | 2011 W 45th St | | Sioux Falls | SD | 57105 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | TRANSPORTATION INSIGHT, LLC | 310 MAIN AVENUE WAY, SE | | HICKORY | NC | 28602 | MASTER TRANSPORTATION MANAGEMENT SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Commercial Insurance | Caresmatic Brands, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Workers Comp & Employers Liability Insurance, Policy Number 1/1/2025 | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Trends SNJ Inc | 2201 S I-35E 514-B | | Denton | TX | 76205 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tri County Uniforms | 122 Rodgers Blvd | | Chiefland | FL | 32626-1106 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tri-parish | 947 Creswell Lane | | Opelousas | LA | 70570 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Tripp's Uniforms, Inc. | 268 Boston Turnpike | | Shrewsbury | MA | 01545-2639 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tuff Wear | 620 N Escondido Blvd | | Escondido | CA | 92025 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Two Sons Productions | 516 SOLAR NW | | ALBUQUERQUE | NM | 87107 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Boutique | 7513 Huntingdon Plaza Ste 1 | | Huntingdon | PA | 16652 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Carousel | 2216 Veterans Blvd | | Dublin | GA | 31021 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | Gold Elite | Caresmatic Brands, LLC | - |
| License Agreement | Uniform Concepts | 428 OLD YORK RD | | JENKINTOWN | PA | 19046 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Uniform Connection | 2123 E Edgewood Dr | | Lakeland | FL | 33803-3640 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Connection | 2123 E Edgewood Dr | | Lakeland | FL | 33803-3640 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Country | 1529 Courthouse Rd | | Roanoke | VA | 24015 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Den, Inc. | 1309 5th Ave | | Moline | IL | 61265-1333 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Express! | 333 Clark's Pond Pkwy Ste 9 | | South Portland | ME | 04106-2409 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Uniform Factory Outlet | 2378-G Corporation Parkway | | Burlington | NC | 27215 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Uniform Fashions | 2002 Mcfarland Blvd | | Tuscaloosa | AL | 35404-3839 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Headquarters | 455 S. 31st Street | | Paducah | KY | 42001 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Junction | 2740 Gray Fox Ste A | | Monroe | NC | 28110 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Junction | 2740 Gray Fox Ste A | | Monroe | NC | 28110 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Kingdom | 8240 Van Nuys Blvd | | Panorama City | CA | 91402 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Kingdom of NM, LLC | 910 San Juan Blvd | | Farmington | NM | 87401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Mart | 1387 S Babcock St | | Melbourne | FL | 32901-3068 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Mart | 1387 S Babcock St | | Melbourne | FL | 32901-3068 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Outfitters, Inc | 1106 N John Young Pkwy | | Kissimmee | FL | 34741 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Professionals | 2734 Rte 26 | | Cincinnatus | NY | 13040-9669 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shop | 210 Morehead Plaza | | Morehead | KY | 40351 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shop | 210 Morehead Plaza | | Morehead | KY | 40351 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shoppe | 2950 Market St | | Pascagoula | MS | 39567-5163 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shoppe Inc | 10503 N May Ave | | Oklahoma City | OK | 73120-2611 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Source, LLC | 2141 Cobb Pkwy NW | | Kennesaw | GA | 30152 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Specialists of Katy | 22129 Katy Fwy | | Katy | TX | 77450 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Specialists of Katy | 22129 Katy Fwy | | Katy | TX | 77450 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Station | 405 Stevens St | | Geneva | IL | 60134 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Store | 2022 Hwy 45 N | | Columbus | MS | 39705 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Unlimited | 850 Prince Ave | | Athens | GA | 30606-2724 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Village Inc | 1623 Eastern Pkwy | | Schenectady | NY | 12309-6011 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Village Inc | 1623 Eastern Pkwy | | Schenectady | NY | 12309-6011 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Works | 113 E 12th St | | Tifton | GA | 31794 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Works | 113 E 12th St | | Tifton | GA | 31794 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform World | 2112 Gulf Gate Dr | | Sarasota | FL | 34231 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform World Inc | 12225 Greenville Ave #120 | | Dallas | TX | 75243 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Zone | 1000 West Oaks Mall Ste 102 | | Houston | TX | 77082 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Zone | 1000 West Oaks Mall Ste 102 | | Houston | TX | 77082 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform-T | 13221 City Station Dr Ste 149 | | Jacksonville | FL | 32218 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformity Inc | 3427 N Cole Rd | | Boise | ID | 83704-4406 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformland | 23360 Valencia Blvd #F | | Valencia | CA | 91355 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformly Fit | 3510 Ryan St | | Lake Charles | LA | 70605 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformly Yours | 103 Beverly Pkwy | | Pensacola | FL | 32505-2818 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformly Yours, Inc | 115 Messer St | | Laconia | NH | 03246-2723 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms & More | 1930 N Jefferson | | Huntington | IN | 46750 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms & More | 1930 N Jefferson | | Huntington | IN | 46750 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms 2 U | 11846 Burgreen Rd | | Madison | AL | 35756 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms and Beyond, LLC | 1672 N Delsea Drive | | Vineland | NJ | 08360 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms By Julie | 2007 Palmyra Rd | | Albany | GA | 31701-1322 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms by Mickie | 2331 NW Federal Hwy | | Stuart | FL | 34994 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 9490 Airline Hwy# A | | Baton Rouge | LA | 70815 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Hawaii | 650 Iwilei Rd #115 | | Honolulu | HI | 96817 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms N More | 11408 E. Sprague Ave | | Spokane Valley | WA | 99206 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms N More Corp | 308 Almeda Mall | | Houston | TX | 77075 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Northwest | 901 Summitview Ave Ste 110 | | Yakima | WA | 98902-3080 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms PRN | 615 Washington Square Mall | | Washington | NC | 27889 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms PRN | 615 Washington Square Mall | | Washington | NC | 27889 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformz, LLC | 4008 Main St | | Bridgeport | CT | 06606 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Union Medical Supply | 655 E Main St | | Lake Butler | FL | 32054-1352 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Krazy Kat Sportswear LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | AllHearts, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Addendum to Carrier Agreement | Carexmatic Brands, LLC | - |
| | | | | | | | ADDENDUM STRATEGIC PARTNERS AND UNITED PARCEL SERVICE, INC. | | |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | CARRIER AGREEMENT | Carexmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Addendum to Carrier Agreement | Carexmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Carexmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Carexmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Carexmatic Brands, LLC | - |
| Customer Contract | United Uniforms | 4620 2nd Ave | | Brooklyn | NY | 11232 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | United Uniforms | 4620 2nd Ave | | Brooklyn | NY | 11232 | Titanium Elite | Carexmatic Brands, LLC | - |
| Customer Contract | United Uniforms / Sew Shore | 3845 Beck Blvd Ste 809-810 | | Naples | FL | 34114 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | United Uniforms / Sew Shore | 3845 Beck Blvd Ste 809-810 | | Naples | FL | 34114 | Titanium Elite | Carexmatic Brands, LLC | - |
| License Agreement | Universal Studios | File 50789 | | Los Angeles | CA | 90074 | Universal Studios | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Unlimited Active Wear El Centro | 3451 S Dogwood Ave #1014 | | El Centro | CA | 92243 | Titanium Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Unlimited Active Wear, Inc. | 632 Palomar St #501 | | Chula Vista | CA | 91911 | Titanium Elite | Carexmatic Brands, LLC | - |
| Service Agreement | UPS FREIGHT | P.O. BOX 1216 | | RICHMOND | VA | 23218-1216 | STATEMENT OF AGREED PRICING | Strategic Distribution, L.P. | - |
| Service Agreement | UPS WWF/ UPS OHIO/UPS WWF | 1201 W. Olympic Blvd. | | Los Angeles | CA | 90015 | USPS Global International Incentive Program Agreement | Strategic Distribution, L.P. | - |
| Insurance Agreement | US Premium Finance | 280 Technology Parkway | Suite 200 | Norcross | GA | 30092 | Premium Finance Agreement and Disclosure Statement | Carexmatic Brands, LLC | - |
| Customer Contract | Usa Scrub Inc | 135 16 Jamaica Ave | | Richmond Hill | NY | 11418-1957 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Usa Scrub Inc | 135 16 Jamaica Ave | | Richmond Hill | NY | 11418-1957 | Titanium Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | USA Scrubs 2, Inc. | 173 Fulton Ave | | Hempstead | NY | 11550 | Titanium Elite | Carexmatic Brands, LLC | - |
| Insurance Agreement | USI of Southern CA | P.O. Box 4367 | | Woodland Hills | CA | 91365-4367 | Insurance Binder/Cover Note | Carexmatic Brands, LLC | - |
| Customer Contract | UV Image Experts | 1623 Eastern Pkwy | | Schenectady | NY | 12309-6011 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Contractor Agreement | Valdiveso, Danny | 1683 N CREST VIEW DR | | LA PORTE | IN | 46350 | Independent Sales Contractor Agreement, Effective 5/5/2014 | Carexmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service | Carexmatic Brands, LLC | 49 |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service | Carexmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service/Cellular Primary backup | Carexmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Valley installed system | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley Medical Supply | 501 E. Herning Ave Ste #1 | | Wasilla | AK | 99654 | Gold Elite | Carexmatic Brands, LLC | - |
| Customer Contract | Valley Outfitters, LLC | 923 Roanoke Ave | | Roanoke Rapids | NC | 27870 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley Scrubs | 4063 Nazareth Pike Ste A | | Bethlehem | PA | 18020 | Gold Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley West Uniforms | 4100 University Ave Ste 230 | | West Des Moines | IA | 50266 | Diamond Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Vanderbilts #5, Inc. | 2704 Vine St Ste A | | Hays | KS | 67601 | Titanium Elite | Carexmatic Brands, LLC | - |
| Customer Contract | Veb Scrubs | 7020 Quaker Ave Ste 5 | | Lubbock | TX | 79424 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Veb Scrubs | 7020 Quaker Ave Ste 6 | | Lubbock | TX | 79424 | Titanium Elite | Carexmatic Brands, LLC | - |
| Service Agreement | Velocity Leadership | 1501 SAINSBURY DR | | MIDLOTHIAN | VA | 23113 | Leadership Development Outline/Agreement | Carexmatic Brands, LLC | - |
| Service Agreement | Velocity Leadership | 1501 SAINSBURY DR | | MIDLOTHIAN | VA | 23113 | Coaching/Outline Agreement | Carexmatic Brands, LLC | - |
| Service Agreement | Vertex Inc. | 2301 RENAISSANCE BLVD 4TH FL | | KING OF PRUSSIA | PA | 19406 | Vertex Cloud Indirect Tax Services | AllHearts, LLC | 142,555 |
| License Agreement | VF Imagewear CH Holdings GMBH | Obergrundstrasse 61 | 1st Floor | Lucerne | | 6003 | Restricted Names Domain Agreement | Carexmatic Brands, LLC | 64,069 |
| License Agreement | VF Imagewear CH Holdings GMBH | Obergrundstrasse 61 | 1st Floor | Lucerne | | 6003 | Third Amendment to License Agreement | Carexmatic Brands, LLC | - |
| License Agreement | VF Imagewear CH Holdings GMBH | Obergrundstrasse 61 | 1st Floor | Lucerne | | 6003 | SIXTH AMENDMENT TO LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Vitals LLC dba Well | 3903 E State Blvd | | Fort Wayne | IN | 46805 | Gold Elite | Carexmatic Brands, LLC | - |
| Service Agreement | Vixen Health | 7006 WOODBRIDGE CREEK CT | | SAINT LOUIS | MO | 63129 | Sponsorship agreement | Carexmatic Brands, LLC | - |
| Contractor Agreement | Wachenfeld, Christine | 6292 LILBUR LN | | CINCINNATI | OH | 45230 | Independent Sales Contractor Agreement, Effective 8/2/2010 | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Walkabout Jct | 2064 E 17th St Ste 1 | | Idaho Falls | ID | 83404 | Titanium Elite | Carexmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | Purchase of goods by Walmart | Carexmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | VENDOR AGREEMENT | Carexmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | VENDOR AGREEMENT | Carexmatic Brands, LLC | - |
| Customer Contract | Walmart Inc. | 2001 Southeast 10th Street | | Bentonville | AR | 72716-0550 | WALMART REALTY SUPPLIER AGREEMENT | Carexmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | DSV Overview Guide Acknowledgement Form | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | ADDENDUM TO SUPPLIER AGREEMENT (Direct Ship Vendor Services) | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| | | | | | | | DIRECT STORE DELIVERY CONSOLIDATION SHORTAGE ALLOWANCE | | |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | (DSDC) AMENDMENT TO THE SUPPLIER AGREEMENT | Carexmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | Silver Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | Silver Elite | Carexmatic Brands, LLC | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | PRODUCT LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| | | | | | | | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , Strategic Distribution, L.P. | | |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | #19102-WBLT - AMENDMENT | Strategic Distribution, L.P. | - |
| | | | | | | | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , Strategic Distribution, L.P. | | |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | #19127-WBLT - Amendment #1 | Strategic Distribution, L.P. | - |
| | | | | | | | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , Strategic Distribution, L.P. | | |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | #19127-WBLT - AMENDMENT | Strategic Distribution, L.P. | - |
| Insurance Agreement | Westchester a Chubb Company | 11575 GREAT OAKS WAY STE 200 | | ALPHARETTA | GA | 30022 | ACE EXPRESS Private Company Management Indemnity Package | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 47487 | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Service Agreement | Western Overseas Corporation | 10731-B WALKER ST | | CYPRESS | CA | 90630 | Customs Power of Attorney | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | White Angel Medical Uniform | 1224 N Hacienda Blvd | | La Puente | CA | 91744 | Titanium Elite | Carexmatic Brands, LLC | - |
| Service Agreement | Widen Enterprises, Inc | 6911 Mangrove Lane | | Madison | WI | 53713 | Amendment No. 5452 | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | LICENSE AGREEMENT | Carexmatic Brands, LLC | 557,513 |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | SECOND AMENDMENT TO LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | Third Amendment to License Agreement | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | First Amendment to License Agreement | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | First Amendment to License Agreement | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | SECOND AMENDMENT TO LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Carexmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Mfg Co. | 509 West Vickery Blvd | | Fort Worth | TX | 76104 | Notice of Intent to Renew Carhartt Contract Agreement | Carexmatic Brands, LLC | - |
| Customer Contract | Wilsons Uniforms | 528 McHenry Ave | | Modesto | CA | 95354 | PIE 2.0 Customer Agreement | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Wilsons Uniforms | 528 McHenry Ave | | Modesto | CA | 95354 | Titanium Elite | Carexmatic Brands, LLC | - |
| Contractor Agreement | Windy City Kidz | APPAREL CTR - STE 6-121 | 350 N ORLEANS ST | CHICAGO | IL | 60654 | Independent Sales Contractor Agreement, Effective 8/10/2004 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Woodville Road Surplus, Inc. | 2172 Woodville Rd | | Oregon | OH | 43616 | Diamond Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Woody's Shirts | 603 Brannen St | | Statesboro | GA | 30458 | Gold Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Work Choice Uniforms | 1662 N Garnett St | | Henderson | NC | 27536 | Gold Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Work Wear Uniforms | 4285 167TH ST | | COUNTRY CLUB HILLS | IL | 60478-5917 | Diamond Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Work World America, Inc. | 299 Milwaukee St | | Denver | CO | 80206 | Diamond Elite | Carexmatic Brands, LLC | - |
| Service Agreement | Workaholics, LLC | 913 US Hwy 80 E | | Demopolis | AL | 36732 | Gold Elite | Carexmatic Brands, LLC | - |
| Software Agreement | Workday, Inc. | 110 Stoneridge Mall Road | | Pleasanton | CA | 94588 | ORDER FORM 00360551.0 | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Workingman's Family Store, Llc | 140 5th Avenue | | Huntington | WV | 25701-1808 | Titanium Elite | Carexmatic Brands, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | ORDER FORM | AllHearts, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Assignment and Assumption Agreement / Magneto Subscription Agreement | AllHearts, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Magneto Subscription Agreement | Medetta, LLC | - |
| Software Agreement | X.COMMERCE INC. D/B/A MAGENTO | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | LICENSING AGREEMENT | Carexmatic Brands, LLC | - |
| Software Agreement | X.COMMERCE INC. D/B/A MAGENTO | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Cloud Renewal | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Y&G T-Shirt Outlet | 2704 N Blackstone Ave | | Fresno | CA | 93703 | Gold Elite | Carexmatic Brands, LLC | - |
| Contractor Agreement | Yaverski, Mike | 158 CASTLE HILL RD | | EAST AURORA | NY | 14052 | Independent Sales Contractor Agreement, Effective 9/15/2007 | Carexmatic Brands, LLC | - |
| Contractor Agreement | Yaverski, Mike | 158 CASTLE HILL RD | | EAST AURORA | NY | 14052 | Independent Sales Contractor Agreement, Effective 9/15/2007 | Carexmatic Brands, LLC | - |
| Contractor Agreement | YAY Scrubs | 1766 Hylan Blvd Unit B | | Staten Island | NY | 10305 | Titanium Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | YAY Scrubs | 1766 Hylan Blvd Unit B | | Staten Island | NY | 10305 | Titanium Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | York Uniforms | 7330 A B George Wash Mem Hwy | | Yorktown | VA | 23692-4889 | Gold Elite | Carexmatic Brands, LLC | - |
| | | | | | | | AMENDMENT #1 INDEPENDENT SALES CONTRACTOR AGREEMENT, | | |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | EFFECTIVE 7/1/2005 | Strategic Distribution, L.P. | - |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | Independent Sales Contractor Agreement, Effective 8/1/2004 | Carexmatic Brands, LLC | - |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | Independent Sales Contractor Agreement, Effective 8/1/2004 | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Your Choice Uniforms | 902 Chambers Blvd | | Bardstown | KY | 40004 | Silver Elite | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Z & Zuri's Scrubs and more boutique | 333 Cavalier Square | | Hopewell | VA | 23860 | Silver Elite | Carexmatic Brands, LLC | - |
| Service Agreement | Zappos.com, LLC | 400 E STEWART AVE | | LAS VEGAS | NV | 89101 | Vendor Payment and Allowance Terms | Silver Adaptive, LLC | - |
| Service Agreement | Zayo Group | PO Box 952136 | | Dallas | TX | 75395 | 1GBPS Dedicated Fiber for Colo | Carexmatic Brands, LLC | - |
| Elite Retailer Agreement | Zemsky Corporation | 4181 S Archer Ave | | Chicago | IL | 60632-1840 | Titanium Elite | Carexmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Zier Inc. | P.O. Box 14190 | | Ft. Lauderdale | FL | 33302 | Vendor agreement and Indemnification | Carismatic Brands, LLC | - |

## **Exhibit F-1**

**Redline to Schedule of Assumed
Executory Contracts and Unexpired Leases Filed May 16, 2024**

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | 1 SYNC, Inc. | Princeton Pike Corporate Center | 1009 Lenox Drive, Suite 202 | Lawrenceville | NJ | 08648 | Trading partner services agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | 2 Hearts Medical, LLC | 17220 Hwy 3 | | Webster | TX | 77598 | Gold Elite | Caresmatic Brands, LLC | - |
| Software Agreement | 3CG DimeTyQ LLC | 16192 Coastal HWY | | Lewes | DE | 19958 | Vendor Chargeback Recovery Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | 410 Gift Shop | 1493 Joe Brown Hwy S | | Chadbourn | NC | 28431 | Gold Elite | Caresmatic Brands, LLC | - |
| Purchase Agreement | 48Forty Solutions, Inc. | 11740 KATY FWY | STE 1200 | HOUSTON | TX | 77079 | Affiliation Agreement | Caresmatic Brands, LLC | 11,607 |
| Elite Retailer Agreement | 4M Fashions/Uniform City | 6716 Blackhorse Pike | | Egg Harbor Township | NJ | 08234 | Gold Elite | Caresmatic Brands, LLC | - |
| Professional Services | 8020 Consulting LLC | 6303 Owensmouth Ave 10th Fl | | Woodland Hills | CA | 91367 | Contracting Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | E-Commerce Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A & H Uniforms | 25863 Lasher Rd | | Southfield | MI | 48033 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A & K Uniforms | 2016 W. Ave J. | | Lancaster | CA | 93536 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | A Perfect Fit Uniform Boutique Inc. | 300 E John St Ste 154 | | Matthews | NC | 28105-4939 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A Perfect Fit Uniform Boutique Inc. | 300 E John St Ste 154 | | Matthews | NC | 28105-4939 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | A Ray of Uniforms | 1177 US Route 9 | | Wappingers Falls | NY | 12590 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A-1 Uniforms | 1709 2nd St | | Coralville | IA | 52241-2822 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | A-1 Uniforms-Ogden | 134 31st St | | Ogden | UT | 84401-3811 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | A-1 Uniforms-Ogden | 134 31st St | | Ogden | UT | 84401-3811 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | AAA Uniforms | 3541 N Carefree Circle | | Colorado Springs | CO | 80917 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | AAA Uniforms | 3541 N Carefree Circle | | Colorado Springs | CO | 80917 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Abilene Uniform Center | 610 Walnut St | | Abilene | TX | 79601-5226 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | AC Uniforms & More | 3100 34th St | | Lubbock | TX | 79410 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Ace Uniforms | 633 16th St | | San Diego | CA | 92101-7027 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Ace Uniforms | 633 16th St | | San Diego | CA | 92101-7027 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Aclon Uniform Co LLC | 1500 S New Rd | | Pleasantville | NJ | 8232 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Adam Medical Equipment Inc | 7215 Corporate Ct, Ste 201 | | Frederick | MD | 21703 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Adaptive Medical Equipment and Scrubs | 8701 Broadway St Ste 101 | | Pearland | TX | 77584 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Adorable Angels NY Inc | 321 E 149th St | | Bronx | NY | 10455 | Gold Elite | Caresmatic Brands, LLC | - |
| Purchase Agreement | Advantage Sales & Marketing | PO BOX 744347 | | ATLANTA | GA | 30374-4347 | ADDENDUM #6 TO ASSIGNMENT ORDER dated 12/8/2020 | AllHearts, LLC | - |
| Elite Retailer Agreement | Affordable Scrubs & Uniforms | 2431 NW 185th Ave | | Hillsboro | OR | 97124 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Affordable Uniforms | 24777 Lorain Rd | | North Olmsted | OH | 44070-2070 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Aggieland Scrubs | 901 B Harvey Rd | | College Station | TX | 77840 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Air Power International Express (USA), Inc. | 8366 Isis Avenue | | Los Angeles | CA | 90045 | Logistics Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | AJ's Uniforms | 900 N Mesa St | | El Paso | TX | 79902-2334 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Alabama Healthcare Equip., Inc. | 900 Woodward Ave | | Muscle Shoals | AL | 35661-1552 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Alameda Medical Supply | 1326 Airline Rd | | Corpus Christi | TX | 78412 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Alchemy Unlimited LLC | 1648 SAN ESTEBAN CIR | | ROSEVILLE | CA | 95747 | Independent Sales Contractor Agreement, Effective 11/1/2012 | Caresmatic Brands, LLC | - |
| Customer Contract | Alderman Acres Mfg Inc | 623 S Union St | | Coffeyville | KS | 67337-6019 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Alexanders Uniforms (E) | 999 Pontiac Ave | | Cranston | RI | 2920 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | Alko Distributors | 8801 KELSO DR | | BALTIMORE | MD | 21221 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | All About Scrubs, Inc. | 1340 Missouri Ave N | | Largo | FL | 33770 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | All About Scrubz Etc | 568 Blue Lakes Blvd N | | Twin Falls | ID | 83301 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | All About Uniforms And More | 15600 Panama City Beach Parkway | | Panama City Beach | FL | 32413 | Diamond Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | ALL INDUSTRY CONSULTING LLC | 800 KIOWA DR | | PROSPER | TX | 75078 | Marketplace Coaching, Advisory Services and Marketing Support | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | All Uniform Wear | 12001 S Cleveland Ave | | Fort Myers | FL | 33907 | Titanium Elite | Caresmatic Brands, LLC | - |
| Intercompany Agreement | AllHearts, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | LIMITED LIABILITY COMPANY AGREEMENT OF ALLHEARTS, LLC DATED 12/2/2022 | Caresmatic Brands, LLC | - |
| Intercompany Agreement | AllHearts, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of AllHearts, LLC | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Alliance Medical SVS-Mobility Scooters | 3440 College St | | Beaumont | TX | 77701 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | All-Med Express | 9820 A Midlothian Turnpike | | North Chesterfield | VA | 23235 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Allowance Agreement #69978365 | Caresmatic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Freight Allowance Agreement #69993820 | Caresmatic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #69995030 | Caresmatic Brands, LLC | - |
| Service Agreement | Amazon.com Services LLC | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #70028665 | Strategic Partners Corp. | - |
| Service Agreement | Amazon.com Services LLC and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #42732905 | Caresmatic, LLC | - |
| Service Agreement | Amazon.com Services, LLC and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | MDF/COOP Agreement #42772895 | Caresmatic Brands, LLC | - |
| Service Agreement | Amazon.com Services, Inc. and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Allowance Agreement #27208675 | Caresmatic, LLC | - |
| Service Agreement | Amazon.com Services, Inc. and its affiliates | DEPT 30 - 2100034228 | PO BOX 9020 | DES MOINES | IA | 50368-9020 | Freight Allowance Agreement #26999765 | Caresmatic Brands, LLC | - |
| License Agreement | AMBER GARDNER | 18 814 CREEK FOREST DRIVE | | MAGNOLIA | TX | 77578 | LICENSING AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | Ameann Beauty | 19360 RINALDI ST #130 | | NORTHRIDGE | CA | 91326 | Proposal | Caresmatic Brands, LLC | - |
| Insurance Agreement | American Alternative Insurance Corporation | 555 College Rd E | | Princeton | NJ | 8540 | General Indemnity Agreement | Strategic Partners Corp. | - |
| Insurance Agreement | American Alternative Insurance Corporation | 555 College Rd E | | Princeton | NJ | 8540 | General Indemnity Agreement | Strategic Partners Corp. | - |
| Elite Retailer Agreement | American Discount Uniform | 912 New York Ave | | Lower Burrell | PA | 15068 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | American Express | 200 VESEY ST MANHATTAN | | NEW YORK | CA | 10285 | American Express@Work Services Agreement | Caresmatic Brands, LLC | - |
| | AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. | | | | | | AMERICAN EXPRESS @ WORK SERVICES AGREEMENT | | |
| License Agreement | | PO BOX 360001 | | FORT LAUDERDALE | FL | 33336-0001 | | | - |
| Elite Retailer Agreement | American Gipper | 3609 Faraon St | | St. Joseph | MO | 64506 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | American Scrub Company | 150 Dog Patch Trading Center | | London | KY | 40741 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Amigo Store | 1521 Beaumont Ave | | McAllen | TX | 78501 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Angela Fashion | 423 S Main St | | McAllen | TX | 78501 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Angels In Waiting USA | 28200 Hwy 189 Ste 205-C | | Lake Arrowhead | CA | 92352 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Angels New York World Inc | 5424 5th Ave | | Brooklyn | NY | 11220 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Anna's Uniform Shop | 23040 Woodward Ave | | Ferndale | MI | 48220-1340 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Annie's Fashion Scrubs Inc | 216-11 Jamaica Ave | | Queens | NY | 11428 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | ANTHONY JONES | 2905208TH AVE E | | LAKE TAPPS | WA | 98391 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Caresmatic Brands, LLC | - |
| Professional Services | AP Services LLC | 909 3rd Ave | | New York | NY | 10022 | Financial Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Apparel Pro | 2150-A W University Dr | | Tempe | AZ | 85281-7219 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Aray Medical Equipment | 4205 Spencer Hwy | | Pasadena | TX | 77504-1117 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 100mbps Mountain Creek DC Backup | Caresmatic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 1GBPS Dedicated Fiber for LBJ | Caresmatic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 250mbps backup Chatsworth | Caresmatic Brands, LLC | - |
| Service Agreement | AT&T | Payment Center | | Sacramento | CA | 95887-0001 | 500MBPS Mountain Creek DC | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Athletic Lettering, Inc. | 2880 Eastern Blvd | | York | PA | 17402-2908 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 11/17/2000 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 11/17/2000 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 3/22/2013 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | Client Account Agreement and Authorization to Debit/Credit, 3/27/2013 | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | MAJOR ACCOUNTS AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | AUTOMATIC DATA PROCESSING, INC | PO BOX 31001-1874 | | PASADENA | CA | 91110-1874 | New Agreement (ADP) | Strategic Distribution, L.P. | - |
| Service Agreement | Avalara | DEPT CH 16781 | | PALATINE | IL | 60055 | Sales Proposal executed 2/25/2021 | Caresmatic Brands, LLC | - |
| Insurance Agreement | Avalon Risk Management | 150 NORTHWEST POINT BLVD, 2nd Floor | | Elk Grove Village | IL | 60007 | Customs Bond Application and Indemnity | Krazy Kat Sportswear LLC | - |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | 150 NORTHWEST POINT BLVD, 2nd Floor | | Elk Grove Village | IL | 60007 | Collateral Policy Agreement | Caresmatic Brands, LLC | - |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | 150 NORTHWEST POINT BLVD, 2nd Floor | | Elk Grove Village | IL | 60007 | Collateral Policy Agreement | Krazy Kat Sportswear LLC | - |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | 150 NORTHWEST POINT BLVD, 2nd Floor | | Elk Grove Village | IL | 60007 | Bond Renewal e-mail dated 9/6/2023 | Krazy Kat Sportswear LLC | - |
| Insurance Agreement | AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC | 150 NORTHWEST POINT BLVD, 2nd Floor | | Elk Grove Village | IL | 60007 | Collateral Policy Agreement | Krazy Kat Sportswear LLC | - |
| Service Agreement | Avery Dennison | 170 Monarch Lane | | Miamisburg | OH | 45342 | 2019 Avery Dennison Service, Agreement No. 407023 | Strategic Distribution, L.P. | - |
| Others | Avery Dennison Hong Kong B.V. | 15/F, Harbourside HQ, | 8 Lam Chak Street | Kowloon Bay | | | Rebate Letter Agreement, 1/1/2020 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | B & H Home Center | 1414 Rockaway Pkwy | | Brooklyn | NY | 11236 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Ball, Stephen | 4557 JONESY LN | | MEMPHIS | TN | 38125 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Barrett, Kathy | 8585 Weyand Ave | | Sacramento | CA | 95828 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Barrett, Kathy | 2005 Cypress Drive | | New Brighton | MN | 55112-5239 | Independent Sales Contractor Agreement, Effective 3/1/2014 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Bayou Medical Textile | 13488 Seymour Meyers Blvd | | Covington | LA | 70433-6876 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | BBC STUDIOS DISTRIBUTION LIMITED | 1 Television Centre | 101 Wood Lane | London | | W12 7FA | Merchandise Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | BCS Emporium & Learning Center | 26 Whitlesey Ave | | Norwalk | OH | 44857 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | PRODUCTION SERVICES AGREEMENT, 1/27/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | PRODUCTION SERVICES AGREEMENT, 1/27/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 11/1/2015 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 2/9/2016 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Films, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 7/1/2016 | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Beachglass Firms, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 9/1/2015 | Caresmatic Brands, LLC | - |
| Service Agreement | Beachglass Firms, Inc. | 703 Pier Ave., Suite 282 | | Hermosa Beach | CA | 90254 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 9/1/2015 (Revised) | Caresmatic Brands, LLC | - |
| Customer Contract | Beachley Medical Solutions | 6200 Days Cove Rd, Ste 3 | | White Marsh | MD | 21162 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Beakey, Clint | 10423 Tradcliff Drive | | Dallas | TX | 75238 | Independent Sales Contractor Agreement, Effective 3/1/2007 | Strategic Distribution, L.P. | - |
| Insurance Agreement | Beazley Insurance Services | 45 Rockefeller Plaza | | New York | NY | 10111 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Beazley Insurance Services | 45 Rockefeller Plaza | | New York | NY | 10111 | Crime Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Customer Contract | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Best Buy Uniforms | 1807 N Garey Ave | | Pomona | CA | 91767 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Best Uniforms Center | 1904 Brookside Dr | | Kingsport | TN | 37660 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Betty's Uniforms | 2211 Pepperell Pkwy | | Opelika | AL | 36801-7229 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Big Dream Uniforms | 11865 SW 26th St Ste E10 | | Miami | FL | 33175 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | BizWear Consulting Inc | 4401 S 500 W | | Murray | UT | 84123 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | BlankRome | 2029 Century Park East | Sixth Floor | Los Angeles | CA | 90067 | Engagement Letter dated 6/23/2023 | Caresmatic Brands, LLC | - |
| Customer Contract | Blue Angels Nurses Uniform | 1052 Beach 20th St | | Far Rockaway | NY | 11691-3900 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Blue Angels Nurses Uniform | 1052 Beach 20th St | | Far Rockaway | NY | 11691-3900 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Blue Sky Hawaii, Inc. | 1423 Kapiolani Blvd 2nd Floor | | Honolulu | HI | 96814 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Boyle, Jason | 924 TRENTLE CT | | CHARLOTTE | NC | 28211 | Independent Sales Contractor Agreement, Effective 7/26/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Boyle, Jason | 924 TRENTLE CT | | CHARLOTTE | NC | 28211 | Diamond Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Brands DN USA LLC | 621 - 23rd St | | Santa Monica | CA | 90402 | Consulting Agreement, Proprietary Information, Assignment of Inventions Agreement dated 3/1/2019 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Brands DN USA LLC | 621 - 23rd St | | Santa Monica | CA | 90402 | INDEPENDENT CONTRACTOR, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT, 2/1/2018 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bright Side Scrubs, LLC | 20411 Route 19 Suite 5 | | Cranberry | PA | 16066 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bright Star Scrubs & Uniforms | 2205 W. Wabash Avenue | | Springfield | IL | 62704 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Buffalo Scrubs & Uniforms | 1031 Main St | | Buffalo | NY | 14203 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Bullard Uniforms | 6030 N 1st St | | Fresno | CA | 93710-5495 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Buy & Save | 1005 Broad St | | Lake Charles | LA | 70601 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Byrd Watson Drug Co | 1200 Main St | | Mount Vernon | IL | 62864 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C & S Supply Co Inc | 1951 N Riverfront Dr | | Mankato | MN | 56001-3129 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C R Scrubs | 2209 S Broadway | | Tyler | TX | 75701 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | C.C. Wholesale Mart | 3229 Ayers St | | Corpus Christi | TX | 78415 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Caesar's Medical Uniforms | 8145 Firestone Blvd | | Downey | CA | 90241 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Caesar's Medical Uniforms | 8145 Firestone Blvd | | Downey | CA | 90241 | Diamond Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Cal Uniforms | 3755 Park Blvd | | San Diego | CA | 92103 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | California Clothing | 2504 Jamacha Rd | | El Cajon | CA | 92019 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | California Scrubs and More | 15973 Piuma Avenue | | Cerritos | CA | 90703 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Cantu's Screen Printing & Embroidery | 2712 Pleasanton Road | | San Antonio | TX | 78221 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Cape Uniforms & More | 636 Del Prado Blvd | | Cape Coral | FL | 33990 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Cardinal Health | 7000 Cardinal Place | | Dublin | OH | 43017 | Wholesale Purchase and Distribution Agreement | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Cardinal Uniforms | 4040 Chamberlain Lane | | Louisville | KY | 40241 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Career Uniform | 1603 S Latah St | | Boise | ID | 83705-2991 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Career Uniforms | 636-C N University Dr | | Nacogdoches | TX | 75961 | Titanium Elite | Caresmatic Brands, LLC | - |
| Group Customer Contract | Caregivers of America | 70 East Sunrise Hwy. | | Valley Stream | NY | 11581 | Caregivers America Group Contract | AllHearts, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY AGREEMENT FOR APPOINTMENT OF DISTRIBUTOR | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY CENTRAL SUPPORT SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands Europe Limited | 1 BARTHOLOMEW LN | | LONDON | | EC2N 2AX | INTERCOMPANY AGREEMENT FOR THE SUPPLY OF GOODS | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY LOGISTICS SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY AGREEMENT FOR APPOINTMENT OF DISTRIBUTOR | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands NL B.V. | APOLLOLAAN 151 | | AMSTERDAM | | | INTERCOMPANY AGREEMENT FOR THE SUPPLY OF GOODS | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Marketplace Impact, LLC | Marketplace Impact, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Silverts Adaptive, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Marketplace Impact, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | LIMITED LIABILITY COMPANY AGREEMENT OF ALLHEARTS, LLC DATED 12/2/2022 | AllHearts, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Silverts Adaptive, LLC | - |
| Intercompany Agreement | Caresmatic Brands, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Allhearts, LLC | AllHearts, LLC | - |
| Intercompany Agreement | Caresmatic Group II, Inc. | 2140 S Dupont Hwy | | Camden | DE | 19934 | Amended & Restated Operating Agreement of Krazy Kat Sportswear LLC | Krazy Kat Sportswear LLC | - |
| Intercompany Agreement | Caresmatic Group II, Inc. | 2140 S Dupont Hwy | | Camden | DE | 19934 | Amended and Restated Limited Liability Company Agreement of Caresmatic Brands, LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | LIMITED LIABILITY COMPANY AGREEMENT OF CARESMATIC RECEIVABLES LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Amended and Restated Limited Liability Company Agreement of Caresmatic Receivables LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | PURCHASE AND SALE AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CARESMATIC RECEIVABLES LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | PURCHASE AND SALE AGREEMENT | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic, LLC | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Operating Agreement | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Caresmatic, LLC | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Intercompany Agreement | Caresmatic, LLC | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Operating Agreement of Caresmatic, LLC | Caresmatic, LLC | - |
| Group Customer Contract | Caris Healthcare | 10651 Coward Mill Road | | Knoxville | TN | 37931 | PURCHASE AGREEMENT | AllHearts, LLC | - |
| Contractor Agreement | Carlson Store Fixtures | Stein Industries, Inc. | 7135 Northland Dr N | Brooklyn Park | MN | 55428-1514 | Contracting Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Carlson, Leonard | 613 BELLERIVE CT | | RICHMOND | VA | 23236 | Independent Sales Contractor Agreement, Effective 1/1/2012 | Caresmatic Brands, LLC | - |
| Customer Contract | Carolina Outfitter Apparel | 1000 N Pine St Ste #4 | | Spartanburg | SC | 29303 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Carolina Outfitter Apparel | 1000 N Pine St Ste #4 | | Spartanburg | SC | 29303 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Carolina Uniforms | 930 Cloverleaf Plaza | | Kannapolis | NC | 28083-6581 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Carl.com, Inc. | 1234 Biltmore Road | Suite 225 | Houston | TX | 77022 | Master Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Carl.com, Inc. | 1234 Biltmore Road | Suite 225 | Houston | TX | 77022 | Master Service Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Castle Uniforms | 1800 Skibo Rd Unit 228 | | Fayetteville | NC | 28303 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Castle Uniforms | 1800 Skibo Rd Unit 228 | | Fayetteville | NC | 28303 | Diamond Elite | Caresmatic Brands, LLC | - |
| Intercompany Agreement | CBI PARENT GP, LLC | 1114 Avenue of the Americas | | NewYork | NY | 10036 | AGREEMENT OF LIMITED PARTNERSHIP OF CBI PARENT, L.P. | CBI Parent, L.P. | - |
| Service Agreement | Cellco Partnership, d/b/a Verizon Wireless | One Verizon Way | | Basking Ridge | NJ | 07920 | Verizon Wireless Major Account Agreement | Strategic Distribution, L.P. | - |
| | Character Arts, LLC | 37 Pond Road | | Wilton | CT | 06897 | Contract Amendment, Agreement dated as of 10/15/2013 | Strategic Distribution, L.P. | - |
| License Agreement | | | | | | | | | - |
| | Character Arts, LLC | 37 Pond Road | | Wilton | CT | 06897 | LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | | | | | | | | | - |
| License Agreement | CHARLES CHASE | 1N575 AUGUSTA CT | | WINFIELD | IL | 60190-2361 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 100Mbps Chatsworth MPLS | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 1GBPS Dedicated Broadband Line for Chatsworth | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 1GBPS Dedicated Fiber for LBJ | Caresmatic Brands, LLC | - |
| Service Agreement | Charter | PO Box 60074 | | City of Industry | CA | 91716-0074 | 500mbps Santa Monica MPLS | Caresmatic Brands, LLC | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Business Class Customer Service Order, Account 8971 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Business Class Customer Service Order, Account 9959 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Ethernet and Dedicated Internet Access Service Level Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Fiber Internet Access Service Level Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 05702218 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 5193783 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Order # 5574871 | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | PIE 2.0 Customer Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Charter Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Service Order | Strategic Distribution, L.P. | - |
| Service Agreement | Chattahoochee Marketing Group (CMG) | 7919 Georgia Ave SW #200 | | Gainesville | GA | 30501 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Purchase Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Cherokee Inc. | Caresmatic Brands, LLC | - |
| Purchase Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Cherokee Inc. | Strategic Distribution, L.P. | - |
| Customer Contract | Chester County Scrubs & More | 4670 W Lincoln Hwy | | Parkesburg | PA | 19365 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Chester County Scrubs & More | 4670 W Lincoln Hwy | | Parkesburg | PA | 19365 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Chicago Uniform Company | 550 West Roosevelt Rd | | Chicago | IL | 60607 | Gold Elite | Caresmatic Brands, LLC | - |
| Professional Services | Chiesa Shahinian & Giantomasi PC | One Boland Dr | | West Orange | NJ | 07052 | Legal Services Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Choice Hotels International, Inc. | 1 CHOICE HOTELS CIRCLE | SUITE 400 | ROCKVILLE | MD | 20850 | CHOICE HOTELS QUALIFIED VENDOR PROGRAM AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Choices Scrubs & Footwear | 424 W Bakerview Rd Ste 102 | | Bellingham | WA | 98226 | Gold Elite | Caresmatic Brands, LLC | - |
| | | 202B Hail's Mill Road | | | | | | | |
| Insurance Agreement | Chubb Group of Insurance Companies | | | Whitehouse Station | NJ | 08889 | General Liability, Employee Benefits Liability & Property Insurance - Policy No. 3608-38-65 | CBI Parent, L.P. | - |
| Contractor Agreement | Ciaramo, Cristina | 24 HUNTINGTON RD | | GARDEN CITY | NY | 11530 | Independent Sales Contractor Agreement, Effective 6/8/2015 | Caresmatic Brands, LLC | - |
| Customer Contract | Cindy's Uniforms | 310 South Sharon Amity Rd Ste B | | Charlotte | NC | 28211 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | FACILITY SERVICES RENTAL SERVICE AGREEMENT dated 3/6/2009 | Caresmatic Brands, LLC | 1,104 |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Order Confirmation - Automatic External Defibrillator Service Agreement, Unit 3 | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Automatic External Defibrillator Service Agreement, Unit 1 | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Automatic External Defibrillator Service Agreement, Unit 2 | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | FACILITY SERVICES RENTAL SERVICE AGREEMENT dated 1/23/2014 | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Safety Director Emergency Eyewash Service Agreement | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | AUTOMATIC EXTERNAL DEFIBRILLATOR SERVICE AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | STANDARD RENTAL SERVICE AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Cintas Corporation | 6800 Cintas Blvd | | Mason | OH | 45040 | Supplier Confidentiality and Proprietary Information Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | CINTAS, CORPORATION 2 | 6800 Cintas Blvd | | Mason | OH | 45040 | AUTOMATIC EXTERNAL DEFIBRILLATOR SERVICE AGREEMENT | Caresmatic Brands, LLC | - |
| Contract Contract | Clarks Uniforms | 6100 E Central Ave | | Wichita | KS | 67208 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Clarks Uniforms | 6100 E Central Ave | | Wichita | KS | 67208 | Gold Elite | | - |
| Elite Retailer Agreement | Classic Image Uniforms LLC | 120 Staring Ln | | Baton Rouge | LA | 70810 | Gold Elite | | - |
| Elite Retailer Agreement | Classic Uniforms | 8507 N McCullough Ste B-3 | | San Antonio | TX | 78216 | Titanium Elite | | - |
| | | 101 E. Front Street, 5th | | | | | | | |
| Service Agreement | ClassPass, LLC and its affiliates | | | Missoula | MT | 59802 | CLASSPASS CORPORATE PROGRAM AGREEMENT | Caresmatic Brands, LLC | 2,295 |
| Elite Retailer Agreement | Clinical Med Supply LLC | 615 S. Lewis St | | New Iberia | LA | 70560 | Silver Elite | | - |
| Customer Contract | Clothes Quarters, Inc. | 521 E McDade Ave | | Folsom | PA | 19033 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Clothes Quarters, Inc. | 521 E McDade Ave | | Folsom | PA | 19033 | Diamond Elite | | - |
| Service Agreement | CloudIware | DEPT LA 24609 | | PASADENA | CA | 91185 | Enterprise Service Order Form | AllHearts, LLC | - |
| Elite Retailer Agreement | Clouds Clothing | 1268 W Stuart Dr | | Hillsville | VA | 24343-1592 | Titanium Elite | | - |
| Professional Services | CNM LLP | 6320 Canoga Ave Ste 150 | | Woodland Hills | CA | 91367 | Financial Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | CNY Uniforms Plus | 664 Burnet Ave | | Syracuse | NY | 13203 | Gold Elite | | - |
| Elite Retailer Agreement | Coast City Scrubs | 32 Mariposa Ave | | Watsonville | CA | 95076 | Gold Elite | | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 10/26/2021 | Caresmatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 10/26/2021 | Caresmatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 8/30/2021 | Caresmatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | CUSTOMER ORDER FORM Dedicated Internet Access dated 8/30/2021 | Caresmatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | MASTER SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | Cogent Communications, Inc. | 2450 N ST., NW | | WASHINGTON | DC | 20037 | Letter of Authorization dated 9/8/2021 from Cogent | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Coldrons Uniform | 947 S Hwy 27 | | Somerset | KY | 42501-3518 | Titanium Elite | | - |
| Elite Retailer Agreement | Comanche County Memorial Hospital | 924 Nw 38th St | | Lawton | OK | 73505-3703 | Silver Elite | | - |
| Elite Retailer Agreement | Comfort Medical Supply | 1273 Central Park Blvd | | Fredericksburg | VA | 22401 | Silver Elite | | - |
| Service Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | CommerceHub Supplier Enrollment | Caresmatic Brands, LLC | - |
| Service Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | CommerceHub Supplier Enrollment | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | CommerceHub | 800 TROY-SCHENECTADY RD | STE 100 | LATHAM | NY | 12110 | CommerceHub Supplier Enrollment | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Common Threads Uniform Shoppe | 1010 Porter Ave. | | Ocean Springs | MS | 39564 | Gold Elite | | - |
| Elite Retailer Agreement | Community Pharmacy and Mobility Inc | 163 Rte 37 W | | Toms River | NJ | 8755 | Gold Elite | | - |
| Elite Retailer Agreement | Concrete Rose Scrubs, LLC | 41 Colleuem Crossing | | Hampton | VA | 23666 | Silver Elite | | - |
| Elite Retailer Agreement | Connecticut Uniform | 567 Watertown Ave | | Waterbury | CT | 06708 | Titanium Elite | | - |
| Consulting Agreement | Contreras, Adam | 201 South Santa Fe Avenue | | Los Angeles | CA | 90012 | Consulting Agreement | Caresmatic Brands, LLC | 9,000 |
| Software Agreement | CONVERGINT TECHNOLOGIES, LLC | 2304 TARPLEY RD | SUITE 124 | CARROLLTON | TX | 75006 | CUSTOMER SUPPORT PROGRAM | Caresmatic Brands, LLC | - |
| Contractor Agreement | Corr, Michael | 6404 Highland Court | | Wilmington | DE | 19802 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Couzee Scrubs Llc | 1226 Crossing Meadows Dr | | Onalaska | WI | 54650 | Gold Elite | | - |
| Elite Retailer Agreement | Country Casuals | 1255 Brevard Rd | | Asheville | NC | 28806-9509 | Gold Elite | | - |
| Service Agreement | Cox Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Account Holder Update Packet Account 501, Modification of Commercial Services Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Cox Communications | PO Box 60074 | | City of Industry | CA | 91716-0074 | Account Holder Update Packet Account 501, Modification of Commercial Services Agreement | Medelita, LLC | - |
| Service Agreement | Crandall Consulting | 1912 Cherokee Street | | St. Louis | MO | 63118 | VENDOR AGREEMENT | AllHearts, LLC | - |
| Service Agreement | Crandall Consulting | 1912 Cherokee Street | | St. Louis | MO | 63118 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | CreditSafe | 4635 CRACKERSPORT RD | | ALLENTOWN | PA | 18104 | CreditSafe Renewal | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Crown Scrubs & Medical Supply | 2376 S Dairy Ashford | | Houston | TX | 77077 | Silver Elite | | - |
| Service Agreement | CSC Network | 1000 CORPORATE CENTRE DR #130 | | FRANKLIN | TN | 37067 | Supplier Requirements | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Custom Embroidery Plus | 304 N Lansing St | | St. Johns | MI | 48879 | Titanium Elite | | - |
| Elite Retailer Agreement | Cypress Medical Co. Uniforms & Suppl | 8320 Louetta Rd Ste 190 | | Spring | TX | 77379 | Silver Elite | | - |
| Elite Retailer Agreement | DASCO Red | 2003 Chester Blvd | | Richmond | IN | 47374 | Titanium Elite | | - |
| Service Agreement | Davaco | 6688 N Central Expwy | Suite 100 | Dallas | TX | 75206 | Master Agreement | Caresmatic Brands, LLC | 20,361 |
| Service Agreement | Davaco | 6688 N Central Expwy | Suite 100 | Dallas | TX | 75206 | Master Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Davis, Hector Ruben | 170 AVE ARTERIAL HOSTOS APT H8 | | SAN JUAN | PR | 00918 | Independent Sales Contractor Agreement, Effective 2/1/2012 | Caresmatic Brands, LLC | - |
| Professional Services | Davis Advisory Services, LLC | 11 Arabian Road | | Schwenksville | PA | 19426 | Board director appointment | Trojan Holdco, Inc. | - |
| Employment Agreement | Davis, Steve | 11 Arabian Road | | Schwenksville | PA | 19426 | Independent Directorship Appointment | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Day Dreams Uniforms Inc | 8424 S US Highway 1 | | Port Saint Lucie | FL | 34952 | Titanium Elite | | - |
| Elite Retailer Agreement | Deaconess Home Medical | 600 Mary St | | Evansville | IN | 47747 | Titanium Elite | | - |
| Elite Retailer Agreement | DeAngelo Uniforms | 6020 Market St | | Youngstown | OH | 44512-2918 | Titanium Elite | | - |
| Elite Retailer Agreement | Dean's Shoe Shack, Inc. | 1240 E Plaza Blvd Ste 603 | | National City | CA | 91950 | Titanium Elite | | - |
| Customer Contract | Deb's Dancewear Uniform | 111 S 24th St W | | Billings | MT | 59102-5800 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Deb's Dancewear Uniform | 111 S 24th St W | | Billings | MT | 59102-5800 | Titanium Elite | | - |
| Software Agreement | Defensive Networks LLC | 222 North Pacific Coast Highway | Suite 1620 | El Segundo | CA | 90245 | Order 1102 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Dennis Uniform Mfg Co - Medical | 135 SE Hawthorne Blvd | | Portland | OR | 97214 | Titanium Elite | | - |
| Elite Retailer Agreement | Design Resources | 8032 Summa Ave Ste C | | Baton Rouge | LA | 70809 | Gold Elite | | - |
| Customer Contract | Diamond L Designs | 1283 E Expressway Ln | | Spanish Fork | UT | 84660 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Diego Wear | 487 Pkwy Plaza | | El Cajon | CA | 92020 | Titanium Elite | | - |
| Elite Retailer Agreement | Diggity Dwele | 606 7th St Nw | | Little Falls | MN | 56345 | Silver Elite | | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo COLOCATION LICENSE AGREEMENT | Caresmatic Brands, LLC | 143 |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo Colocation Order #Q-00069533 | Caresmatic Brands, LLC | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo COLOCATION LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Digital 2260 East El Segundo, LLC | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | El Segundo Colocation Order # Q-00069533 | Caresmatic Brands, LLC | - |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | COLOCATION LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | Diligent Corporation | 111 West 33rd Street, 16th Floor | | New York | NY | 10120 | ORDER FORM, Agreement Number: Q-730132 | Caresmatic Brands, LLC | 143 |
| Elite Retailer Agreement | Direct Uniform Sales | 5326 E Independence Blvd | | Charlotte | NC | 28212 | Silver Elite | | - |
| Elite Retailer Agreement | Discount Medical Uniforms | 805 Northdale Blvd | | North Palm Beach | FL | 33408 | Gold Elite | | - |
| Elite Retailer Agreement | Discount Scrubs & Fashion | 1911 N State Rd 7 | | Margate | FL | 33063 | Titanium Elite | | - |
| Elite Retailer Agreement | Discount Uniform Store | 13578 University Plaza St | | Tampa | FL | 33613 | Titanium Elite | | - |
| Elite Retailer Agreement | Discount Uniforms | 14486 Greenfield Rd | | Detroit | MI | 48227 | Titanium Elite | | - |
| Elite Retailer Agreement | Discount Uniforms Center | 1874 Barker Cypress Rd | | Houston | TX | 77084 | Titanium Elite | | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED APRIL 1, 2015 | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED APRIL 1, 2015 | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SECOND AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIFTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SIXTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | Third Amendment to License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO THE LICENSE AGREEMENT DATED MARCH 6, 2019. | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | SCHEDULE TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | Third Amendment to License Agreement dated 03/06/18 | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | EXTENSION OF LICENSE AGREEMENT TERM dated 12/18/2023 | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | STANDARD TERMS AND CONDITIONS | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | Correspondence dated 5/3/2021 from Disney Consumer Products re: consent to transfer & transfer fee | Caresmatic Brands, LLC | - |
| License Agreement | Disney Consumer Products, Inc. | 500 South Buena Vista St. | | Burbank | CA | 91521 | FIRST AMENDMENT TO STANDARD TERMS AND CONDITIONS DATED SEPTEMBER 1, 2013 | Caresmatic Brands, LLC | - |
| License Agreement | DocuSign, Inc. | 221 Main Street, Suite 1000 | | San Francisco, | CA | 94105 | ORDER FORM, Quote Number: Q-02036077 | Caresmatic Brands, LLC | - |
| License Agreement | Dog is Good, LLC | 10531 Humboldt Street | | Los Alamitos | CA | 90720 | Agreement - Amendment | Caresmatic Brands, LLC | - |
| Contractor Agreement | Doll, J. A. Rafael | CARRAMA HTESTATION | | SAN JUAN | PR | 00922 | COMPENSATION | Caresmatic Brands, LLC | - |
| Professional Services | Donlin Recano & Company, Inc. | PO Box 2032 | | New York | NY | 10272-2042 | Voting and Consulting Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Dorothy's Uniforms | 39759 LBJ South | | Dallas | TX | 75237 | Titanium Elite | | - |
| Elite Retailer Agreement | Double Eagle Uniforms | 1721 Eastern Blvd | | Montgomery | AL | 36117 | Titanium Elite | | - |
| Professional Services | Dr Keane | P.O. Box 232570 | | Encinitas | CA | 92023-2570 | Dr Keane | Caresmatic Brands, LLC | - |
| Purchase Agreement | Dr. Richard Schranko | 134 STANLEY ST | | HAMILTON | ON | L8P3Y2 | Retainer Agreement | Silverts Adaptive, LLC | - |
| Purchase Agreement | Dr. Richard Schranko | 134 STANLEY ST | | HAMILTON | ON | L8P3Y2 | Retainer Agreement | Silverts Adaptive, LLC | - |
| License Agreement | Dr. Seuss Enterprises, L.P. | 9645 Scranton Road, Suite 130 | | San Diego | CA | 92121 | Amended and Restated License Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Dr. Seuss Enterprises, L.P. | 9645 Scranton Road, Suite 130 | | San Diego | CA | 92121 | First Amendment to Amended & Restated License Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Dr. Uniforms | 1311 Oriskany St | | West Utica | NY | 13502-2913 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Dress Code | 3300 E Mill Plain Blvd Unit B | | Vancouver | WA | 98684 | Gold Elite | | - |
| Customer Contract | Dress for Success Uniforms | 1618 W State Hwy 71 #548 | | La Grange | TX | 78915 | PIE 2.0 Customer Agreement | | - |
| Elite Retailer Agreement | Drexel Healthcare Supplies | 9357 Howardtown Rd | | Philadelphia | PA | 19115 | Titanium Elite | | - |
| Elite Retailer Agreement | Drexel Healthcare Supplies | 9357 Howardtown Rd | | Philadelphia | PA | 19115 | Titanium Elite | | - |
| Professional Services | DSSI | 7301 W. Champions Way | | Milwaukee | WI | 53223 | Transaction Services for DSSI E-Commerce Sites | Caresmatic Brands, LLC | - |
| Contractor Agreement | Dubin, Alon | 6108 BITTERSWEET LANE | | CHARLOTTE | NC | 28270 | Independent Sales Contractor Agreement, Effective 10/1/2003 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Dubs Scrubs | 5438 Freeway Park Dr | | Riverdale | UT | 84405-3776 | Diamond Elite | | - |
| Elite Retailer Agreement | Duty Station Uniforms & Gear | 8128 S Memorial Dr | | Tulsa | OK | 74133 | Titanium Elite | | - |
| Elite Retailer Agreement | Dyna Wear | 40405 Winchester Rd Ste 102 | | Temecula | CA | 92591 | Titanium Elite | | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Dyna Wear - Murrieta | 40525 California Oaks Rd | | Murrieta | CA | 92562 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | E Z Wear Uniforms | 6912 Market St | | Upper Darby | PA | 19082-2308 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Eagle Group Inc. | 6420 Guion Rd | | Indianapolis | IN | 46268 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | EK Embroidery | 2219 Pass Road | | Gulfport | MS | 39501 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | Elavon, Inc. | 7300 Chapman Highway | | Knoxville | TN | 37920 | PAYMENT DEVICE PROCESSING AGREEMENT | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Elivog Inc. | 3201 D'hemecourt St | | New Orleans | LA | 70119 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Embroidery Express | 2495 Eastgate Pl Ste E | | Snellville | GA | 30078 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Emerson's at the Willow | 1631 4th St SW Ste 105 | | Mason City | IA | 50401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Encore Uniform and Apparel | 1420 Riverside Ave. Ste 102 | | Fort Collins | CO | 80524 | Silver Elite | Caresmatic Brands, LLC | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | Master Electric Energy Sales Agreement | Caresmatic Brands, LLC | 27,530 |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Caresmatic Brands, LLC | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | Master Electric Energy Sales Agreement | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION TEXAS FIXED PRICE RTC | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Purchase Agreement | Engie Resources LLC | 1360 Post Oak Blvd | Suite 440 | Houston | TX | 77056 | SALES CONFIRMATION | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Envy Uniforms | 215 S Broad St | | Gastonia | NC | 28054 | Titanium Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Eric Lehman | 348 Royal Assembly Drive | | Charleston | SC | 29492 | Directorship | CBI Parent, L.P. | - |
| Separation Agreement | Eric Solis | 1847 Red Ave | | West Covina | CA | 91790 | Separation Agreement and Full and Final Release of Claims | Caresmatic Brands, LLC | - |
| Insurance Agreement | Euclid (Nationwide) | ONE W NATIONWIDE BLVD | 1-16-301 | COLUMBUS | OH | 43215-2220 | Product Liability Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Everest Insurance | 461 Fifth Avenue, 4th Floor | | New York | NY | 10017-6234 | EVEREST EZ EXCESS POLICY CONDITIONAL BINDER | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Cyber Liability Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Executive Risk Package Insurance, Policy Number 1/4/2030 | CBI Parent, L.P. | - |
| Insurance Agreement | Everest National | 100 EVEREST WAY | | WARREN | NJ | 07059 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Group Customer Contract | EyeCare Partners | 13933 Clayton Road | | Ballwin | MO | 63011 | PURCHASE AGREEMENT | AllHearts, LLC | - |
| Service Agreement | F.W.C. Inc. | 59 HILLSIDE RD | | CHESTER | NJ | 07930 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | F5 NETWORKS, INC | 801 FIFTH AVENUE | | SEATTLE | WA | 98104 | F5 MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Family Medical Supply Inc /Scrubs | 115 N College St. | | Mountain Home | AR | 72653 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Famous Brand Uniforms | 3843 Hamilton Rd. Ste B | | Columbus | GA | 31904-7174 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Fashion For Less (NY) Inc. | 204-08 Hillside Ave | | Hollis | NY | 11423 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Fashion For Less (NY) Inc. | 204-08 Hillside Ave | | Hollis | NY | 11423 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Fashion Scrub Depot LLC | 5329 Central Ave | | Saint Petersburg | FL | 33710 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Fashion Uniforms II | 3402 Jerome Ave | | Bronx | NY | 10467 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Fashionable Scrubs | 1630 E. Washington St | | Colton | CA | 92324 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Fashionable Scrubs | 1630 E. Washington St | | Colton | CA | 92324 | Gold Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Business Automobile - Policy No. 73635477 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Business Auto Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Commercial Package Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Federal Insurance Company (Chubb) | CAPITAL CENTER | 251 NORTH ILLINOIS STE 1100 | INDIANAPOLIS | IN | 46204-1927 | Umbrella Liability Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Service Agreement | FedEx | 942 South Shady Grove Road | | Memphis | TN | 38120-4117 | FedEx Transportation Services Agreement | Caresmatic Brands, LLC | - |
| Professional Services | Ferraz de Camargo e Matsunaga Advogados | Rua Arquiteto Olavo Redig de Campos | 105 - Torre A | Sao Paulo | Brazil | 04711-904 | Legal Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Fiery Acquisition Corp | 2 Howe St Suite 2B | | New Haven | CT | 06511 | Diamond Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Finn Food Service | 14605 McCormick Place | | Tampa | FL | 33626 | Principal Representative Group Agreement effective 1/3/2018 | Caresmatic Brands, LLC | - |
| Customer Contract | First Uniform Inc | 3616 Latrobe Dr | | Charlotte | NC | 28211-1183 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | First Uniform Inc | 3616 Latrobe Dr | | Charlotte | NC | 28211-1183 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Fittings Unlimited, Inc. | 402 10th St SE Ste 500 | | Cedar Rapids | IA | 52403 | Titanium Elite | Caresmatic Brands, LLC | - |
| License Agreement | FiveTran Inc. | 405 14th Street, Suite 1100 | | Oakland | CA | 94612 | Service Order | Caresmatic Brands, LLC | - |
| Customer Contract | Flemington Department Store | 151 Rte 31 | | Flemington | NJ | 08822-5748 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Flemington Department Store | 151 Rte 31 | | Flemington | NJ | 08822-5748 | Gold Elite | Caresmatic Brands, LLC | - |
| License Agreement | FLOQAST | 14721 CAPITA ST | | SHERMAN OAKS | CA | 91411 | FLOQAST SERVICES ORDER | Caresmatic Brands, LLC | - |
| Customer Contract | Florida Uniforms And Supplies | 3501 SW 2nd Ave | | Gainesville | FL | 32607 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Florida Uniforms And Supplies | 3501 SW 2nd Ave | | Gainesville | FL | 32607 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | FM Scrubs | 118-A Main St | | Rising Sun | IN | 47040 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | FoneTech | 2180 Iowa Blvd | | Vicksburg | MS | 39180 | Titanium Elite | Caresmatic Brands, LLC | - |
| | ForceAmp.com LLC | | | | | | Invoice | | - |
| License Agreement | | 820 Highland Park Ave | | Coralville | IA | 52241 | | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Four Seasons | 73-19 Roosevelt Ave | | Jackson Heights | NY | 11372 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Fox, Lennie | 940 HOOKLINE CIR | | LOXAHATCHEE | FL | 33470 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Customer Contract | Franks Md. Mart Inc | 2405 Mc Faddin St | | Beaumont | TX | 77702 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Franks Md. Mart Inc | 2405 Mc Faddin St | | Beaumont | TX | 77702 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | Frazion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Frazion License Agreement dated 10/13/2023 | Caresmatic Brands, LLC | - |
| Software Agreement | Frazion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Frazion License Agreement dated 10/30/2019 | Caresmatic Brands, LLC | - |
| Software Agreement | Frazion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Supplemental Frazion License Agreement dated 5/15/2023 | Caresmatic Brands, LLC | - |
| Software Agreement | Frazion Spend Management LLC | 3131 Elliott Ave | Suite 450 | Seattle | WA | 98121 | Migration Work Order | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Friends Gift Shop | 8075 Medical Ctr Dr | | Morgantown | WV | 26506 | Gold Elite | Caresmatic Brands, LLC | - |
| Purchase Agreement | FULLSTORY CONTACT | 1745 Peachtree St. NW Ste G | | ATLANTA | GA | 30309 | SALES ORDER FORM | Caresmatic Brands, LLC | - |
| Service Agreement | Gamut Management LLC | 9 COVENTRY RD | | LIVINGSTON | NJ | 07039 | Statement of Work | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Gards Uniform Inc. | 2242 Augusta St | | Greenville | SC | 29605-2764 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Garrett's Medical | 485 First St North | | Winter Haven | FL | 33881-4114 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Gateway Uniforms | 120 Sunrise Ave | | Roseville | CA | 95661 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Glamour Uniforms | 4951 Sunset Blvd | | Hollywood | CA | 90027 | Titanium Elite | Caresmatic Brands, LLC | - |
| License Agreement | Global Marsh Property Owner, L.P. | 2440 Marsh Ln | | Carrollton | TX | 75006 | Colocation Order # Q-00009974 | Caresmatic Brands, LLC | - |
| Customer Contract | Gloria Kay Uniforms | 3720 N 124th St Unit G | | Wauwatosa | WI | 53222 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Gloria Kay Uniforms | 3720 N 124th St Unit G | | Wauwatosa | WI | 53222 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | GNG Uniforms, Inc. | 2740 Franklin Rd | | Roanoke | VA | 24014 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | GoGeoStat, LLC | 5100 Eldorado Pkwy, Unit 102-385 | | Mckinney | TX | 75070 | Customer Master Service Agreement | Caresmatic Brands, LLC | 7,630 |
| Elite Retailer Agreement | Goodman's Uniforms | 1390 W Broad St | | Columbus | OH | 43223-1345 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Google Inc. | 1600 Amphitheatre Parkway | | Mountain View | CA | 94043 | Parental Guarantee | Silverts Adaptive, LLC | - |
| Service Agreement | Google LLC | 1600 Amphitheatre Parkway | | Mountain View | CA | 94043 | Guaranty | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Gould's Discount Medical | 3901 Dutchmans Ln | | Louisville | KY | 40207 | Gold Elite | Caresmatic Brands, LLC | - |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Supply Agreement | Caresmatic Brands, LLC | 11,639 |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Extension Agreement | Caresmatic Brands, LLC | - |
| Purchase Agreement | GP Corrugated LLC | 133 Peachtree Street NE | | Atlanta | GA | 30303 | Extension Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Grace Anna's Boutique | 2429 Bosomont St #619 | | Houston | TX | 77005 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Granny Uniforms Work Fashions & More | 2525 College Ave | | Alton | IL | 62002 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Great Lakes Workwear | 2825 E Highland Rd #125 | | Highland | MI | 48356 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Great Plains Uniforms | 4308 S 89th St | | Omaha | NE | 68127 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Great Scrubs & More | 307 Kentucky Ave. Ste A-3 | | West Plains | MO | 65775 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Green River Scrubs | 3548 S Suncoast Blvd | | Homosassa | FL | 34448 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Greg's Uniforms | 2408 Commerce Road | | Jacksonville | NC | 28546 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Greg's Uniforms | 2408 Commerce Road | | Jacksonville | NC | 28546 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Griffins Uniforms | 115 Lamar | | Bainbridge | GA | 39817 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Grillo, Vince | 2305 Norwich Street | | Flower Mound | TX | 75028 | Independent Sales Contractor Agreement, Effective 10/1/2009 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Grillo, Vince | 2305 Norwich Street | | Flower Mound | TX | 75028 | Changes to Agreement - Fax dated 11/4/2003 | Caresmatic Brands, LLC | - |
| License Agreement | GS1 US, Inc. | 7887 Washington Village Drive | | Dayton | OH | 45459 | License of GS1 Company Prefix | Strategic Distribution, L.P. | - |
| Manufacturing Agreement | Hachette Filipacchi Presse S.A. | 149 Rue Anatole | Levallois-Perret Cedex | | | | LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| Others | Haas Bonded Solutions, Inc. | 3162 MOMENTUM PL | | CHICAGO | IL | 62534 | 00689-5331 2024 Preferred Supplier Program | Caresmatic Brands, LLC | - |
| Customer Contract | Hanover Uniforms Co. | 3501 Marlmenco Ct | | Baltimore | MD | 21230 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Hanson, Robert | 13765 ST CHARLES ROCK RD #114 | | BRIDGETON | MO | 63044 | Independent Sales Contractor Agreement, Effective 9/1/2011 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Hanson, Robert | 13765 ST CHARLES ROCK RD #114 | | BRIDGETON | MO | 63044 | Independent Sales Contractor Agreement, Effective 9/1/2011 | Caresmatic Brands, LLC | - |
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | Commercial Insurance | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Agreement | HARTFORD | ONE HARTFORD PLZ | | HARTFORD | CT | 06155 | International Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Hawaii Work Uniforms, LLC | 1728 Kauhumanu Ave #D | | Wailuku | HI | 96793 | Silver Elite | Caresmatic Brands, LLC | - |
| License Agreement | HawkSearch | 2700 S RIVE RD STE 400 | | DES PLAINES | IL | 60018 | Software Proposal | AllHearts, LLC | - |
| Elite Retailer Agreement | Health Essentials | 3230 S Wisconsin Ste F | | Joplin | MO | 64804 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Health First Medical Equipment | 1131 W New Haven Ave Ste 101 | | West Melbourne | FL | 32904 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | HealthWear Inc. | 1320 Red Wolf Blvd | | Jonesboro | AR | 72401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Heidis Uniforms | 1418 A Stratford Rd | | Winston Salem | NC | 27103 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Hemisphere Freight & Brokerage Services | 21 Goodrich Road | No. 3 | Toronto | ON | M8Z 4H3 | Continuous general agency agreement | Strategic Distribution, L.P | - |
| Contractor Agreement | Hinshaw, Craig | 161 Mill Spring | | Coatesville | IN | 46121 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Hooch, Dan | 14803 FOREST OAKS DR STE 300 | | LOUISVILLE | KY | 40245 | Independent Sales Contractor Agreement, Effective 1/1/2013 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | House of Angels | 307 W 125th st | | New York | NY | 10027 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Huls B's, LLC | 328 Harlow Rd. | | Springfield | OR | 97477 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Ideal Department Store | 1816 Flatbush Ave | | Brooklyn | NY | 11210 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Identity Factor, LLC | 2965 N Germantown Rd Ste 125 | | Barlett | TN | 38133 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | iFranchise Group | 905 W. 175th Street, 2nd Floor | | Homewood | IL | 60430 | Franchise Feasibility Assessment | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | IHC Supply, Inc | 3911 Central Ave Ste H | | Hot Springs | AR | 71913 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Images Shop | 1330 Mercy Dr NW | | Canton | OH | 44708-2626 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Imlay's Uniforms | 2720 Maple Ave | | Zanesville | OH | 43701 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | In Home Care, Inc. | 201 Nottingham Ave NE | | Wise | VA | 24293-5612 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | In Home Medical | 300 Coles Centre Pkwy | | Mattoon | IL | 61938 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Infinity Scrubs, LLC. | 10720 N Rodney Parham Road #D11 | | Little Rock | AR | 72212 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Inka's Uniforms | 11626 Sherwood Forest Ct | | Baton Rouge | LA | 70816 | Silver Elite | Caresmatic Brands, LLC | - |
| License Agreement | INRIVER AB | Södra Tullgatan 4 | | Malmö | | 211 40 | ORDER FORM ID 556650-5573 | Caresmatic Brands, LLC | - |
| Software Agreement | Insight Direct, Inc | 2701 E. INSIGHT WAY | | CHANDLER | AZ | 85286 | MICROSOFT PRODUCTS AND SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| | Insight Enterprises, Inc. | | | | | | E-Mail Security Change Order Form | Strategic Distribution, L.P | - |
| License Agreement | Insight Enterprises, Inc. | 6820 South Harl Street | | Tempe | AZ | 85283 | | | |
| | | | | | | | E-Mail Security Service Order Form | Strategic Distribution, L.P | - |
| License Agreement | | 6820 South Harl Street | | Tempe | AZ | 85283 | | | |
| License Agreement | INTELLIGENT FABRIC TECHNOLOGIES (NORTH AMERICA) INC. | 525 Denison Street, Unit 2 | | Markham | ON | L3R 1B8 | License and Supply Agreement | Caresmatic Brands, L.P. | - |
| License Agreement | Interact ona Inc | 4665 CORNELL RD | STE 255 | CINCINNATI | OH | 45241 | Magento Maintenance & Support - Monthly Retainer | Medellia, LLC | 3,200 |
| License Agreement | Interact ona Inc | 4665 CORNELL RD | STE 255 | CINCINNATI | OH | 45241 | Magento Maintenance & Support - Monthly Retainer | Medellia, LLC | - |
| Consulting Agreement | IPG DXTRA, Inc. d/b/a Weber Shandwick | 909 THIRD AVE | | NEW YORK | NY | 10022 | Agreement for Professional Service | Caresmatic Brands, LLC | - |
| Service Agreement | Ironsides Inc | 100 Wilshire Blvd, Suite 700 | | Santa Monica | CA | 90401 | Letter Agreement dated 11/30/2023 | Caresmatic Brands, LLC | 8,000 |
| Elite Retailer Agreement | J & E Uniforms Inc | 2425 Jefferson Davis Hwy | | Sanford | NC | 27332-7104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | J & J Professional Uniform Shop | 669 Maple Valley Dr | | Farmington | MO | 63640 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | J&D Uniforms, LLC. | 1057 Goodman Rd | | Horn Lake | MS | 38637 | Titanium Elite | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Confirmation of Commencement of Lease Agreement | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Office Lease | Caresmatic, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | First Amendment to Office Lease Agreement | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Second Amendment to Office Lease Agreement | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Property Tax Memo - Notice of Increase | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Office Lease | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Confirmation of Commencement of Lease Agreement and Office Lease | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | First Amendment to Office Lease Agreement | Caresmatic Brands, LLC | - |
| Lease | J.W. Properties Group, LLC | 2583 Walnut Avenue | | Geneva | IL | 60134 | Second Amendment to Office Lease Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | J2 Scrubs | 1575 Hwy 83 | | Sublette | KS | 67877 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jack L. Marcus Inc. | 5300 W Fond Du Lac Ave | | Milwaukee | WI | 53216-1348 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | JACK VAN VRANKEN | 141 CURRIER DR | | MANCHESTER | NH | 03104 | Independent Sales Contractor Agreement, Effective 3/22/2002 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jakes Kids LLC - School | 509 A St Mary Hwy | | Thibodaux | LA | 70301 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | James Medical Uniforms | 7821 Coldwater Rd Ste B | | Fort Wayne | IN | 46825-3409 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Jane McCurey | 1026 MEADOW LANE | | RENO | NV | 89503 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Jan's Uniforms | 26914 Gena Dr | | Chesterfield | MI | 48051-1532 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jan's Uniforms | 26914 Gena Dr | | Chesterfield | MI | 48051-1532 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Jays Uniform - Medical | 1000 Springfield Ave | | Irvington | NJ | 7111 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jays Uniform - Medical | 1000 Springfield Ave | | Irvington | NJ | 7111 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jeness Uniform Centers | 4728 Virginia Beach Blvd | | Virginia Beach | VA | 23462 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Jered Friedland | 9461 Charleville Blvd., #190 | | Beverly Hills | CA | 90212 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jerri's Uniforms | 5665 E Speedway Blvd | | Tucson | AZ | 85712 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Statement of Work | Caresmatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Statement of Work | Caresmatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Addendum License Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | ADDENDUM to Software License Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Jesta I.S. Inc. | 755 RUE BERRI STE 200 | | MONTREAL | QC | H2Y3E5 | Software as of Service Agreement (SAAS) | Caresmatic Brands, LLC | - |
| Contractor Agreement | JIM BARLOW | 913 FOREST HYLANDS RD | | PRESCOTT | AZ | 86303 | Independent Sales Contractor Agreement, Effective 1/7/2002 | Caresmatic Brands, LLC | - |
| Service Agreement | JMG Security Systems, Inc | 733 S. Marquette Ave | | Minneapolis | MN | 55402 | Commercial Security/Fire Alarm System Agreement | Strategic Distribution, L.P | 2,401 |
| Service Agreement | JMG Security Systems, Inc | 17150 NEWHOPE ST STE 109 | | FOUNTAIN VALLEY | CA | 92708 | Addendum to Original Agreement | Strategic Distribution, L.P | - |
| Service Agreement | JMG Security Systems, Inc | 17150 NEWHOPE ST STE 100 | | FOUNTAIN VALLEY | CA | 92708 | Addendum to Security/Fire Alarm System Agreement dtd 08-09-05 | Strategic Distribution, L.P | - |
| Elite Retailer Agreement | JMV Trading Group | 6 S Saginaw St | | Pontiac | MI | 48342 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Joann's Uniforms | 165 Henneberg Dr | | Colchester | VT | 05446-6810 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jonathan F. Hackett | 405 20th Place | | Manhattan Beach | CA | 90266 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Jonathan F. Hackett | 405 20th Place | | Manhattan Beach | CA | 90266 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Jones Medical Equipment | 522 Elma G Miles Pkwy | | Hinesville | GA | 31313 | Silver Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Jose Mendiola | 5515 Canoga Avenue | Unit 109 | Los Angeles | CA | 91367 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Josie's Uniform Boutique | 54 New Hartford Shopping Ctr | | New Hartford | NY | 13413 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | JT Healthcare Uniforms | 918 S Main St | | Salinas | CA | 93901 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Julie Gimber | 2010 Prince Way | | Reno | NV | 89503 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Justicia, Andy | 216 CHESTERFIELD CT | | SCHAUMBURG | IL | 60193 | Independent Sales Contractor Agreement, Effective 12/1/2008 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Justicia, Andy | 216 CHESTERFIELD CT | | SCHAUMBURG | IL | 60193 | Independent Sales Contractor Agreement, Effective 1/1/2012 | Caresmatic Brands, LLC | - |
| | | | | | | | Acordo De Representacao | Caresmatic Brands, LLC | - |
| Service Agreement | JVS Melotti Solucoes Texteis Ltda. | LOTEAMENTO INDUSTRIAL WERNER PLAAS | | AMERICANA, SAN PAOLO | | 01347-8734 | | | |
| | | | | | | | Representation Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | JVS Melotti Solucoes Texteis Ltda. | LOTEAMENTO INDUSTRIAL WERNER PLAAS | | AMERICANA, SAN PAOLO | | 01347-8734 | | | |
| | | | | | | | Representation Agreement | Caresmatic Brands, LLC | - |
| Lease | JW Properties, LLC | 2583 Walnut Ave | | Geneva | IL | 60134 | First Amendment to Office Lease dated 4/1/2013 | Strategic Distribution, L.P | - |
| Elite Retailer Agreement | K & M Uniforms, Inc. | 23A Lower Hudson Ave | | Green Island | NY | 12183 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | K C Uniforms, LLC | 1229 Pineview Dr | | Morgantown | WV | 26505 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kargbo's Medical Uniforms | 10569 Magnolia Ave | | Riverside | CA | 92505 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Karla Bakersmith | 2537 Boston Way | | Chesterfield | MO | 63017 | Consulting Agreement / Propriety Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kassabaum Uniform Inc. | 485 S Broadway | | Yonkers | NY | 10705 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kay Fashion | 1270 N Euclid St | | Anaheim | CA | 92801-1966 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kelleigh's Uniforms | 711 S. SR 54 | | New Port Richey | FL | 34653 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Kelley Johnson | 1826 12th St. #4 | | Manhattan Beach | CA | 90266 | Talent/Marketing Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Kelly's Uniforms/ Sassy Scrubs | 2253 Hwy 15N Pinetree Village | | Laurel | MS | 39440 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kelly's Uniforms/ Sassy Scrubs | 2253 Hwy 15N Pinetree Village | | Laurel | MS | 39440 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Ken Allen Uniform | 1046 Veterans Blvd | | Metairie | LA | 70005 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Kendall Barber | 10534 SW BARBER ST | | WILSONVILLE | OR | 97070 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kiefer's Alterations | 1671 Hoffman Rd, Suite 130 | | Green Bay | WI | 54311 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 307 ENGLAND PL | | MARIETTA | GA | 30066 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 307 ENGLAND PL | | MARIETTA | GA | 30066 | Independent Sales Contractor Agreement, Effective 7/18/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Kimmelman, Warren | 307 ENGLAND PL | | MARIETTA | GA | 30066 | INDEPENDENT SALES CONTRACTOR AGREEMENT, EFFECTIVE 7/11/2001 | Caresmatic Brands, LLC | - |
| Professional Services | Kirkland & Ellis LLP | 300 N Lasalle St | | Chicago | IL | 60654 | Legal Services Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kirton's Uniforms | 1104 S Creasy Ln | | Lafayette | IN | 47905 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Konica Minolta | 100 Williams Drive | | Ramsey | NJ | 07446 | Maintenance Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | KPMG LLP | 811 Main Street | | Houston | TX | 77002 | Engagement Letter | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Krazy Kat Sportswear LLC | 25 East Union Ave | | East Rutherford | NJ | 7073 | Amended & Restated Operating Agreement of Krazy Kat Sportswear LLC | Caresmatic Group II, Inc. | - |
| Elite Retailer Agreement | Kristen Uniforms & Linens | 2010 Eggert Rd | | Amherst | NY | 14226-2101 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Kristie's Scrub Shop | 517 West Broadway | | Muskogee | OK | 74401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | K-Scrubs | 321 Fort Riley Blvd | | Manhattan | KS | 66502 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | La Bella Uniforms | 19420 S La Orange Rd | | Mokena | IL | 60448 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Bella Uniforms | 19420 S La Orange Rd | | Mokena | IL | 60448 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Parisienne II, LLC | 214 N River St Ste 1 | | Calhoun | GA | 30701 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | La Parisienne Uniforms | 2601 N Glenwood Ave | | Dalton | GA | 30721 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LA Uniforms, LLC | 8312 Florida Blvd Ste B | | Baton Rouge | LA | 70806 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Labor of Love Scrubs, LLC. | 1020 E Cork St | | Kalamazoo | MI | 49001 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lafayette Bargain Store | 1800 Kaliste Saloom Road Ste#300 | | Lafayette | LA | 70508 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | LAFIG Belgium s.a. | Rue du Cerf 85 | | Genval | | 1332 | Merchandise License Agreement | Caresmatic Brands, LLC | 5,000 |
| License Agreement | LAFIG Belgium s.a. | Rue du Cerf 85 | | Genval | | 1332 | MERCHANDISING LICENSE AGREEMENT | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Lake Uniforms | 10601 US Hwy 441 | | Leesburg | FL | 34788-8204 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lakeville Uniforms | 27111 Union Tpke | | New Hyde Park | NY | 11040-1502 | Silver Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Lakhani, Sidharth | 906 ILIFF ST | | PACIFIC PALISADES | CA | 90272 | Amended and Restated Employment Agreement, dated December 2023 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lambert's Uniforms | 4901 N Broadway | | Knoxville | TN | 37918-2379 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Landsman Uniforms Inc | 6206 E Black Horse Pike | | Egg Harbor Township | NJ | 8234 | Silver Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Larry Smith | 7002 INDIAN SPRING LN | | FREDERICKSBURG | VA | 22407 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Larry Smith | 7002 INDIAN SPRING LN | | FREDERICKSBURG | VA | 22407 | Independent Sales Contractor Agreement, Effective 8/1/2001 | Caresmatic Brands, LLC | - |
| Customer Contract | Las Vegas Uniforms | 967 E Sahara Ave | | Las Vegas | NV | 89104 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Las Vegas Uniforms | 967 E Sahara Ave | | Las Vegas | NV | 89104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Laurel Uniforms & Apparel | 5076 W 58th Ave | | Arvada | CO | 80002 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lavie Scrubs LLC | 2275 S Federal Hwy Ste 270 | | Delray Beach | FL | 33483 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Leggett Town Country | 335 Mt Cross Rd | | Danville | VA | 24540 | Titanium Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Lehman, Eric | 348 Royal Assembly Dr | | Charleston | SC | 29492 | Independent Directorship Appointment | CBI Parent, L.P. | - |
| Service Agreement | Lexicon Branding, Inc. | 30 Liberty Ship Way, Suite 3360 | | Sausalito | CA | 94965 | Professional Services Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Master Services Agreement | Strategic Distribution, L.P. | 59,000 |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Healing Hands Integration Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development SOW | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Commerce 2.4.3, Upgrade | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Branded Site Integration Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Silverts ERP/Commerce Site Development & Integration Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Maintenance Service Contract | Strategic Distribution, L.P. | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Maintenance Service Contract | Silverts Adaptive, LLC | - |
| Software Agreement | Lexin IT Corp | 11580 Seaboard Cir. | | Stanton | CA | 90680 | Website Development Contract | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LifeCare Uniforms | 15042 W Club Deluxe Rd | | Hammond | LA | 70403 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lightgrub Outfitters | 324 Pine Mountain Rd | | Hudson | NC | 28638 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Lil Lena's Scrubs & More, LLC | 606 N Eisenhower Dr Ste 4 | | Beckley | WV | 25801 | Silver Elite | Caresmatic Brands, LLC | - |
| Others | Living Dol LLC | 18525 RAILROAD ST | | CITY OF INDUSTRY | CA | 91748-1316 | Trademark Assignment Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Livingston International Professional Services, Inc. | 20700 Civic Center Drive, Suite 500 | | Southfield | MI | 48076 | Consulting Services Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | Livingston International Trade Services, Inc. | 150 Pierce Road | | Itasca | IL | 60143 | Service Agreement | Caresmatic Brands, LLC | - |
| Insurance Agreement | Livingston International, Inc. | PO BOX 920 | | BUFFALO | NY | 14213 | General Agency Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Lizzie's Scrubs 'n Style | 4621 South Loop 289 | | Lubbock | TX | 79424 | Titanium Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Lloyds | 60 GREAT TOWER ST | PLANTATION PLACE SOUTH | LONDON | | EC3R 5AD | Terrorism & Sabotage Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Basic License Agreement Number 526 | Caresmatic Brands, LLC | 17,156 |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Additional Software Amendment Number Four to Basic License Agreement Number 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | ADDITIONAL SOFTWARE AMENDMENT NUMBER TWO TO BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | ADDITIONAL SOFTWARE AMENDMENT NUMBER TWO TO BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Amendment Number One to Basic License Agreement Number 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Amendment Number Two to Basic License Agreement Number 526 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Consulting Services Engagement Letter | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Logility Change Request Form | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | LOGILITY, INC. IMPLEMENTATION ASSISTANCE AMENDMENT NUMBER ONE TO BASIC LICENSE AGREEMENT NUMBER 5296 | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | Software Custom Modifications License and Service Agreement (Agreement Number 5392) | Caresmatic Brands, LLC | - |
| Software Agreement | Logility Inc | 410 Paces Ferry Rd | | Atlanta | GA | 30305 | SOFTWARE CUSTOM MODIFICATIONS, LICENSE AND SERVICES AGREEMENT , Agreement Number 5392 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Long Term Medical Supply | 115 2nd Ave NW | | Hampton | IA | 50441 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LoosEndz | 2911 Commercial Wy | | Spring Hill | FL | 34606 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Low Scrubs | 7612 Linda Vista Road Ste 102 | | San Diego | CA | 92111 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Low Country Uniforms | 330 E 5th N St | | Summerville | SC | 29483 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | LR Uniforms | 8591 Coral Wy | | Miami | FL | 33155 | Diamond Elite | Caresmatic Brands, LLC | - |
| Manufacturing Agreement | LucasGroup | 5001 Spring Valley Rd | Suite 650 | Dallas | TX | 75244 | Manufacturing Division Contingency Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | M P Nursing Apparel | 2733 W Emmaus Ave | | Allentown | PA | 18103-7297 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | M P Nursing Apparel | 2733 W Emmaus Ave | | Allentown | PA | 18103-7297 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Maersk Agency U.S.A., Inc. as agent for Maersk Line A/S | 2 GIRALDA FARMS | | MADISON | NJ | 07940-0680 | Service Contract No: 662295, Proposal No: 28.0, Amendment No: 000 | Caresmatic Brands, LLC | - |
| Software Agreement | Magento, Inc | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Magento Subscription Agreement | AllRights, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Addendum to Software License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Amendment to Software License Service Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A - Licensed Products and Customer Support and Software Enhancements | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Attachment A to Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Proposal Correspondence from Manhattan Associates dated 11/20/2017 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Quote # M14Q06731 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Software, License, Services and Maintenance Agreement | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | STANDARD TERMS & CONDITIONS | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Statement of Work for Strategic Partners , Slotting Optimization 2014 | Caresmatic Brands, LLC | - |
| Software Agreement | Manhattan Associates, Inc | 2300 Windy Ridge Parkway | | Atlanta | GA | 30339 | Strategic Partners Upgrade Dallas Site to V2019 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Marie's Medical | 103 Blanchard St Ste D | | West Monroe | LA | 71291 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Marina Deshavonic | 1320 York Avenue | Apartment 24F | New York | NY | 10021 | Services and Product Endorsement Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Markacy, LLC. | 325 HUDSON ST 4TH FL | | NEW YORK | NY | 10013 | Consulting Agreement | Caresmatic Brands, LLC | - |
| Insurance Agreement | Markel American | 4521 HIGHWOODS PKWY | | GLEN ALLEN | VA | 23068 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Markel American | 4521 HIGHWOODS PKWY | | GLEN ALLEN | VA | 23068 | Executive Risk Package Insurance, Policy Number 47487 | CBI Parent, L.P. | - |
| Intercompany Agreement | Marketplace Impact, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement | Marketplace Impact, LLC | - |
| Intercompany Agreement | Marketplace Impact, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Marketplace Impact, LLC | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Mark's Scrubs, Med Uniforms and Apparel | 1401 N Carlton St Ste B | | Marion | IL | 62959 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Martin Morris | Ringvagen 112 | | Stockholm | | | LGH 1001, 11661  Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | Martin Morris | Ringvagen 112 | | Stockholm | | | LGH 1001, 11661  Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Mary Osborne | 3809 VALLEY VIEW RD #6 | | AUSTIN | TX | 78704 | Silverts Influencer Ambassador / Creative / UGC Agreement | Silverts Adaptive, LLC | - |
| Customer Contract | McKay's Clothing | 651 Abbott Rd | | Buffalo | NY | 14220 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | McNeill, George | 7001 HUNTER COVE DR | | ARLINGTON | TX | 76001 | Independent Sales Contractor Agreement, Effective 8/29/1999 | Caresmatic Brands, LLC | - |
| Contractor Agreement | McNeill, George | 7001 HUNTER COVE DR | | ARLINGTON | TX | 76001 | Independent Sales Contractor Agreement, Effective 8/29/1999 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | McWilliams Uniform Shoppe | 364 Main St | | Danville | PA | 17821 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | MD Uniforms | 10141 Stone Oak Pkwy Ste 606 | | San Antonio | TX | 78258 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | MD Uniforms | 10141 Stone Oak Pkwy Ste 606 | | San Antonio | TX | 78258 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Med Plus Uniforms & Scrubs | 895 Kidder St | | Wilkes-Barre | PA | 18702 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Plus Uniforms & Scrubs | 895 Kidder St | | Wilkes-Barre | PA | 18702 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Med Scrubs | 2900 N. Sugar Rd. Suite E. | | Pharr | TX | 78577 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Scrubs | 2900 N. Sugar Rd. Suite E. | | Pharr | TX | 78577 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Med Uniform | 28300 Cedar Rd Ste 1440 | | Beachwood | OH | 44122 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Ctr Medical Products | 1061 West Forest | | Jackson | TN | 38301 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Market | 2208 Worley Dr | | Alexandria | LA | 71301-3600 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Outfitters | 804 US Hwy 431 | | Boaz | AL | 35957 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Outfitters, LLC | 3904 Hixon Pike | | Chattanooga | TN | 37415 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Supply & Uniforms | 8062 Brooklyn Blvd | | Brooklyn Park | MN | 55445 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Medical Uniforms | 5152 Fredericksburg Rd #194 | | San Antonio | TX | 78229 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Uniforms | 18126 Southwest Fwy Ste 165 | | Sugar Land | TX | 77479 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Uniforms | 18126 Southwest Fwy Ste 165 | | Sugar Land | TX | 77479 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medical Wear Outlet | 8211 Bruceville Rd #120 | | Sacramento | CA | 95823 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | MedGroup Physician Services | 100 Chesterfield Business Pkwy | | Chesterfield | MO | 63005 | Group Purchasing Contract Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medix Uniforms | 8128 Fredericksburg Rd | | San Antonio | TX | 78229 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Medwear Uniforms West Inc | 100 Sansbury Way #114 | | W Palm Beach | FL | 33411 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Medwear Uniforms West Inc | 100 Sansbury Way #114 | | W Palm Beach | FL | 33411 | Diamond Elite | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Meg's Medical Scrubs & Boutique | 205 1st Street S | | Winter Haven | FL | 33880 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Memorial Uniforms | 12371 Kingsride Ln | | Houston | TX | 77024 | Titanium Elite | Careismatic Brands, LLC | - |
| Service Agreement | Merchant Centric | 31365 Oak Crest Dr., Ste. 100 | | Westlake Village | CA | 91361 | Order Form Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Merchant Centric | 31365 Oak Crest Dr., Ste. 100 | | Westlake Village | CA | 91361 | Amendment Agreement No. 1 | Careismatic Brands, LLC | - |
| Customer Contract | Mercy Home Medical | 841 Springdale Dr | | Clinton | IA | 52732 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Mercy Home Medical | 841 Springdale Dr | | Clinton | IA | 52732 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Merely's Uniform | 208 Madison St | | Vidalia | GA | 30474-4338 | Diamond Elite | Careismatic Brands, LLC | - |
| Service Agreement | Mettler-Toledo, LLC | 1900 Polaris Parkway | | Columbus | OH | 43240-4035 | Service Contract Acknowledgement | Strategic Distribution, L.P. | - |
| Service Agreement | Mettler-Toledo, LLC | 1900 Polaris Parkway | | Columbus | OH | 43240-4035 | Service Contract Acknowledgement 183648515 | Careismatic Brands, LLC | - |
| Employment Agreement | Michael Penner | 632 Clarke Avenue | | Westmount | QC | H3Y 3E4 | Directorship Appointment | CBI Parent, L.P. | - |
| Elite Retailer Agreement | Michael's LA Fashions | 1310-B S Los Angeles St | | Los Angeles | CA | 90015 | Diamond Elite | Careismatic Brands, LLC | - |
| Software Agreement | MICROSOFT CORPORATION | DEPT. 551, VOLUME LICENSING | 6100 NEIL ROAD, SUITE 210 | RENO | NV | 89511-1137 | MICROSOFT PRODUCTS AND SERVICES AGREEMENT | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Midsouth Medical Equipment | 3209 Breard St | | Monroe | LA | 71201 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Midwest Uniform Suppliers Jasper | 423 S US Hwy 231 | | Jasper | IN | 47546 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Midwest Uniform Supply | 627 N Seminary St | | Galesburg | IL | 61401-2611 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Mid-west Uniforms | 912 La Porte Rd | | Waterloo | IA | 50702-1836 | Titanium Elite | Careismatic Brands, LLC | - |
| Consulting Agreement | Miller Ink, Inc. | 11400 West Olympic Blvd., Suite 300 | | Los Angeles | CA | 90064 | Miller Ink Master Services Agreement | Careismatic Brands, LLC | 2,054 |
| Contractor Agreement | Ming, Eddie R. | 8536 Breakers Point | | Dallas | TX | 75243 | Independent Sales Contractor Agreement, Effective 10/1/2010 | Careismatic Brands, LLC | - |
| Contractor Agreement | Miracle Distributors | 327 Hilda Street | | East Meadow | NY | 11554 | Independent Sales Contractor Agreement | Careismatic Brands, LLC | - |
| Contractor Agreement | Miracle Distributors | 327 Hilda Street | | East Meadow | NY | 11554 | Independent Sales Contractor Agreement, Effective 11/1/2008 | Careismatic Brands, LLC | - |
| Contractor Agreement | MIRACLE DISTRIBUTORS (ANTHONY MASSERIA) | 327 HILDA STREET | | EAST MEADOW | NY | 11554 | Independent Sales Contractor Agreement, Effective 11/1/2008 | Careismatic Brands, LLC | - |
| Service Agreement | Mister Sweeper LP | P.O. Box 560048 | | Dallas | TX | 75356 | Sweeper Contract | Strategic Distribution, L.P. | 92 |
| Service Agreement | Mister Sweeper LP | P.O. Box 560048 | | Dallas | TX | 75356 | Sweeper Contract | Strategic Distribution, L.P. | - |
| Consulting Agreement | Mobley, Wendell | 12358 Alderglen Street | | Moorpark | CA | 93021 | Consulting Agreement Proprietary Information Assignment of Inventions Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Model Uniforms | 110 Vista Drive Suite C | | Charleroi | PA | 15022 | Silver Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | More Than Scrubs LLC | 480 Wilson Ave | | Thomasville | AL | 36784 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Morgan's Shoes & Bootery | 2755 E Franklin Blvd | | Gastonia | NC | 28056 | Titanium Elite | Careismatic Brands, LLC | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Professional Services Agreement | New Trojan Parent, Inc. | - |
| | Moss Adams LLP | | | | | | Master Services Agreement Addendum Business Entity Tax Returns | Strategic Partners Acquisition Corp. | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | | | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Master Services Agreement Addendum Transaction Services | Trojan Holdco, Inc. | - |
| Service Agreement | Moss Adams LLP | 10960 Wilshire Boulevard | Suite 1100 | Los Angeles | CA | 90024 | Addendum | Trojan Holdco, Inc. | - |
| Employment Agreement | Mr. Larry Benjamin | 130 E ORIENTISTA RD | | LAKE FOREST | IL | 60045 | Board of Director Appointment | Trojan Holdco, Inc. | - |
| Employment Agreement | Mr. Lawrence Jackson | 2312 ELLISTON PL #401 | | NASHVILLE | TN | 37203 | Board of Director Appointment | Trojan Holdco, Inc. | - |
| Service Agreement | MRP Management Services | 2502 INGLESIDE DR | | GRAND PRAIRIE | TX | 75050 | VENDOR AGREEMENT | Careismatic Brands, LLC | - |
| Employment Agreement | Ms. Kathleen Sanford | PO Box 350 | | Olalla | WA | 98359 | Board director appointment | Trojan Holdco, Inc. | - |
| Employment Agreement | Ms. Kathleen Sanford | PO Box 350 | | Olalla | WA | 98359 | Incentive Unit Grant Agreement | New Trojan Parent, Inc. | - |
| Elite Retailer Agreement | My Scrub Source | 228 Main St | | South Williamsport | PA | 17702 | Silver Elite | Careismatic Brands, LLC | - |
| Customer Contract | My Uniform Corner | 4500 Rogers Ave Suite 1 | | Fort Smith | AR | 72903 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | My Uniform Corner | 4500 Rogers Ave Suite 1 | | Fort Smith | AR | 72903 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | CHANGE ORDER | Careismatic Brands, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | AllHearts, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | Careismatic Brands, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Service Order | Careismatic Brands, LLC | - |
| Software Agreement | Narvar, Inc. | 3 East Third Avenue | Suite 211 | San Mateo | CA | 94401 | Statement of Work | AllHearts, LLC | - |
| Employment Agreement | Natalia Hodgson | 1600 MAGNOLIA AVE | | MANHATTAN BEACH | CA | 90266 | General Release Agreement | Careismatic Brands, LLC | - |
| Consulting Agreement | National Logistics Services (2006), Inc. | 150 Courtepark Drive West | | Mississauga, ON | ON | L5W 1Y6 | Service Agreement (NLS Contract #NLS 07247) | Careismatic Brands, LLC | - |
| Consulting Agreement | National Logistics Services (2006), Inc. | 150 Courtepark Drive West | | Mississauga, ON | ON | L5W 1Y6 | Services Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | National Outdoors | 5600 Banndera Rd | | San Antonio | TX | 78238 | Gold Elite | Careismatic Brands, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Commercial Insurance | Careismatic Brands, LLC | - |
| Insurance Agreement | Navigators | PENN PLAZA 32ND FLOOR | | NEW YORK | NY | 10119 | Cargo Insurance, Policy Number 7/28/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Navigators Insurance Company | One Penn Plaza | | New York | NY | 10119 | General Indemnity Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Nea Uniforms | 2407 Linwood Dr Ste 9 | | Paragould | AR | 72450-4234 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Neal's Shoes | 2103 Elm Rd | | Warren | OH | 44483-6003 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | NeoGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | NeoGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | NeoGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | 2024 SOFTWARE MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | NeoGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | NeoGraphics | 135 W. 41ST STREET | | NEW YORK | NY | 10036 | SOFTWARE MAINTENANCE AGREEMENT | Careismatic Brands, LLC | - |
| Contractor Agreement | NEELY, CAPRICE | 6154B Hardin Martin Court | | Bend | OR | 97702 | Independent Contractor Agreement | Careismatic Brands, LLC | - |
| Software Agreement | New Generation Computing, Inc. | 14900 NW 79th Ct. | | Miami Lakes | FL | 33016 | Software License and Services Agreement (Order Form No. 2324) | Careismatic Brands, LLC | 27,861 |
| Elite Retailer Agreement | New Look Uniform & Embroidery | 800 S 20th St | | Altoona | PA | 16602-4541 | Titanium Elite | Careismatic Brands, LLC | - |
| Consulting Agreement | New Nurse Academy LLC | 6340 Ross Street | | Philidelphia | PA | 19144 | AMENDMENT: Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Careismatic Brands, LLC | - |
| Consulting Agreement | New Nurse Academy LLC | 6340 Ross Street | | Philidelphia | PA | 19144 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | New Waves Scrubs LLC | 16385 Bernardo Center Dr | | San Diego | CA | 92128 | Titanium Elite | Careismatic Brands, LLC | - |
| Group Customer Contract | New York Presbyterian | 525 East 68th Street | | New York | NY | 10065 | Second Amendment to Medical Uniform Purchase Agreement | Med Couture, LLC | - |
| Service Agreement | Nexiva, Inc. | 9451 E. Via de Ventura | | Scottsdale | AZ | 85256 | Nexiva Service Agreement | Careismatic Brands, LLC | - |
| Service Agreement | Nexus Technologies, LLC (d/b/a Nexusdek) | 5899 S GREENWOOD PLZ BLVD | STE 201 | GREENWOOD VILLAGE | CO | 80111 | Master Service Agreement | Careismatic Brands, LLC | 6,280 |
| Contractor Agreement | Nilsen, Chris | 9315 Highmeadow | | Houston | TX | 77063 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Careismatic Brands, LLC | - |
| Contractor Agreement | Nilsen, Chris | 9315 Highmeadow | | Houston | TX | 77063 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Noor Clothing | 681 Paloroar St #A | | Chula Vista | CA | 91911 | Titanium Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | North Texas Uniforms | 151 College Park Dr | | Weatherford | TX | 76086 | Titanium Elite | Careismatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Careismatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Careismatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Independent Sales Contractor Agreement, Effective 9/7/2010 | Careismatic Brands, LLC | - |
| Contractor Agreement | Northeast Warehouse Sales, Inc. | 1055 Stewart Avenue, Suite 6B | | Bethpage | NY | 11714 | Independent Sales Contractor Agreement, Effective 9/7/2010 | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Northshore Medical Supply | 375 Maxey Rd | | Houston | TX | 77013-4545 | Titanium Elite | Careismatic Brands, LLC | - |
| Group Customer Contract | Northwestern | 541 N. Fairbanks | 18-1803 | Chicago | IL | 60611 | THIRD AMENDMENT TO THE MED COUTURE, INC. APPAREL PURCHASE AGREEMENT | Med Couture, LLC | - |
| Elite Retailer Agreement | NStyle Uniforms | 1125 N Simpson Dr, Ste. E | | Warrensburg | MO | 64093 | Gold Elite | Careismatic Brands, LLC | - |
| Customer Contract | Nurses Boutique Etc | 1748 S Mooney Blvd | | Visalia | CA | 93277-7771 | PIE 2.0 Customer Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Boutique Etc | 1748 S Mooney Blvd | | Visalia | CA | 93277-7771 | Diamond Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Unif & Shoes | 1460 North Ave Suite K | | Grand Junction | CO | 81501 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Nurses Uniform Place Inc | 1104 Chestnut St | | Philadelphia | PA | 19107 | Gold Elite | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Nye Uniform | 1030 Scribner | | Grand Rapids | MI | 49504-4212 | Titanium Elite | Careismatic Brands, LLC | - |
| Service Agreement | Office Depot, Inc. | PO BOX  28248 | | PHOENIX | AZ | 85038-0248 | Joinder Agreement | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | Old Country Medical Apparel | 451 Old Country Rd | | Westbury | NY | 11590 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | MAINTENANCE AND USER SUPPORT AGREEMENT | Careismatic Brands, LLC | 25,474 |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Software License Agreement, Sr. 2444 - OMP Plus | Careismatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Software License Agreement, Sr. 2444 - OMP Plus | Careismatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | Maintenance and User Support Agreement, nr. 2444 - OMP Plus | Careismatic Brands, LLC | - |
| Software Agreement | OM Partners N.V | 2727 Paces Ferry Road, | Bldg I Suite 1750, | Atlanta | GA | 30339 | MAINTENANCE AND USER SUPPORT AGREEMENT | Careismatic Brands, LLC | - |
| Elite Retailer Agreement | OneMedSource | 4170 Lavon Dr #140 | | Garland | TX | 75040 | Titanium Elite | Careismatic Brands, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogic) | P.O. Box 6798 | | Scarborough | ME | 04070 | HOSTED EDITION MASTER SUBSCRIPTION AGREEMENT | AllHearts, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogic) | P.O. Box 6798 | | Scarborough | ME | 04070 | HOSTED EDITION MASTER SUBSCRIPTION AGREEMENT | Careismatic Brands, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogic) | P.O. Box 6798 | | Scarborough | ME | 04070 | On-Line Technologies, Inc. (d.b.a. OrderLogic) Hosted Edition Master Subscription Agreement 20220406 | AllHearts, LLC | - |
| Software Agreement | On-Line Technologies, Inc. (d.b.a. OrderLogic) | P.O. Box 6798 | | Scarborough | ME | 04070 | On-Line Technologies, Inc. (d.b.a. OrderLogic) Hosted Edition Master Subscription Agreement 20230517 | AllHearts, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Fixed Price Statement of Work - Silverts | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle My Support Renewal | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite Estimate dated 11/15/2019, Estimate # 668354 | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Fixed Price Statement of Work | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Time & Material Statement of Work | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle NetSuite, Time & Material Statement of Work - Silverts | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Oracle Ordering Document | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Order Form on License and Services Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Statement of Work Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Statement of Work Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Subscription Services Agreement - Silverts | Careismatic Brands, LLC | - |
| Software Agreement | Oracle America, Inc. (Netsuite) | 500 Oracle Parkway | | Redwood Shores | CA | 94065 | Time & Material Statement of Work | Careismatic Brands, LLC | - |
| Contractor Agreement | Orbit, LLC | 6 Highmeadow Road | | Weston | MA | 02493 | Advisory Agreement | Careismatic Brands, LLC | - |
| Contractor Agreement | Orbit, LLC | 6 Highmeadow Road | | Weston | MA | 02493 | Advisory Agreement | Careismatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Consulting Agreement | Outboundview LLC | 531 Alfred Ladd Road East | | Franklin | TN | 37064 | Consulting Agreement | AllHearts, LLC | - |
| Consulting Agreement | Outboundview LLC | 531 Alfred Ladd Road East | | Franklin | TN | 37064 | Consulting Agreement | AllHearts, LLC | - |
| Service Agreement | Outlandish 1, LLC | 900 BRIDGEWATER CT | | NASHVILLE | TN | 37221 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Contractor Agreement | Oxford Omega, Inc. | 1000 Wooten Avenue | | Canton | GA | 30114 | Independent Sales Contractor Agreement, Effective 9/1/2014 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Oxford Omega, Inc. | 1000 Wooten Avenue | | Canton | GA | 30114 | Independent Sales Contractor Agreement, Effective 9/1/2014 | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Pacoima Limited, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Amended Liability Company Agreement of Pacoima Limited, LLC | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | EREQUESTER LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | EREQUESTER LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | Supplemental eRequester License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | SUPPLEMENTAL EREQUESTER LICENSE AGREEMENT (PROJECT ACCOUNTING MODULE) | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | Supplemental eRequester License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | PAPERLESS BUSINESS SYSTEMS, INC. | 1511 THIRD AVENUE | SUITE 433 | SEATTLE | WA | 98101 | SUPPLEMENTAL EREQUESTER LICENSE AGREEMENT (PROJECT ACCOUNTING MODULE) | Caresmatic Brands, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | Caresmatic Brands, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | AllHearts, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | Marketplace Impact, LLC | - |
| Service Agreement | PARACORP INCORPORATED | PO BOX 160568 | | SACRAMENTO | CA | 95816-0568 | STATUTORY AGENT REPRESENTATION CONTRACT | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Parker's | 414 N Broadway | | Jennings | LA | 70546-5338 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Parker's Clothing | 39 Lance St Ste 4 | | Blue Ridge | GA | 30513 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | PREVENTIVE MAINTENANCE & EQUIPMENT AGREEMENT | Strategic Distribution, L.P. | 4,598 |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | EQUIPMENT AGREEMENT & CUSTOMER INFORMATION | Strategic Distribution, L.P. | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | OFFICE COFFEE SERVICE/ICE AND WATER ADDENDUM | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | OFFICE COFFEE SERVICE/ICE AND WATER ADDENDUM | Caresmatic Brands, LLC | - |
| Service Agreement | Parks Coffee | 2629 DICKERSON PKWY | | CARROLLTON | TX | 75007-0209 | PREVENTIVE MAINTENANCE & EQUIPMENT AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Parkway Scrubs | 2006 South Memorial Pkwy | | Huntsville | AL | 35801 | Diamond Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Pat O'Reilly Sales, Inc. | 10037 S MAPLEWOOD | | CHICAGO | IL | 60655 | Independent Sales Contractor Agreement, Effective 10/1/2011 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Pat O'Reilly Sales, Inc. | 10037 S MAPLEWOOD | | CHICAGO | IL | 60655 | Independent Sales Contractor Agreement, Effective 10/1/2011 | Caresmatic Brands, LLC | - |
| Contractor Agreement | PAUL HABER | 15221 VIBURNUM RD | | FRISCO | TX | 75035 | Independent Sales Contractor Agreement, Effective 1/1/1998 | Caresmatic Brands, LLC | - |
| Others | PAULA ERSKINE | 2364 GLASTONBURY RD | | BURLINGTON | ON | L7P 3Y3 | UGC AGREEMENT | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Payless Uniforms | 703 N 10th St | | McAllen | TX | 78501 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | PDG TEMPORARIES, INC. | 702 HUNTERS ROW CT | | MANSFIELD | TX | 76063 | AGREEMENT TO PROVIDE STAFFING SERVICES | Caresmatic Brands, LLC | - |
| | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. Fl. 8, | | | | | SEVENTH AMENDMENT TO AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | | | | New York | NY | 10010 | | | |
| | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. Fl. 8, | | | | | FIFTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-5 D 6766 | Strategic Distribution, L.P. | 7,868 |
| License Agreement | | | | New York | NY | 10010 | | | |
| | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. Fl. 8, | | | | | FOURTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-4 D 6766 | Strategic Distribution, L.P. | - |
| License Agreement | | | | New York | NY | 10010 | | | |
| | PEANUTS WORLDWIDE LLC | 352 Park Avenue So. Fl. 8, | | | | | FIFTH AMENDMENT TO AGREEMENT CONTRACT NO. 511309-4-6 D 6766 | Caresmatic Brands, LLC | - |
| License Agreement | | | | New York | NY | 10010 | | | |
| Employment Agreement | Penner, Michael | 632 Clarke Avenue | | Westmount | QC | H3Y EE4 | Independent Directorship Appointment | CBI Parent, L.P. | - |
| Customer Contract | Perfect Expressions | 3643 W Maple Rd | | Bloomfield Hills | MI | 48301 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Perkins Medical Supply | 3717 10th Ct | | Vero Beach | FL | 32960-6559 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Personal Graphics Inc. | 610 W. Sheridan Ste 3 | | Petoskey | MI | 49770 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Picky Picky Picky Surplus | 600 E Street | | Eureka | CA | 95501 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Pinebeach, Inc. | 307 S 2nd St | | Laramie | WY | 82070 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Contract | Piranha Brands | 10658 W Centennial Rd Ste 400 | | Littleton | CO | 80127 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Piranha Brands Inc | 10658 W Centennial Rd Ste 400 | | Littleton | CO | 80127 | Titanium Elite | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371886 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT 41273202 | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | LEASE AGREEMENT | Caresmatic Brands, LLC | - |
| Lease | Pitney Bowes Inc | PO BOX 371896 | | PITTSBURGH | PA | 15250-7896 | PURCHASE POWER AUTOMATIC PAYMENT AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | Planet Scrubs | 3501 Midway Rd Suite 260 | | Plano | TX | 75093 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | Planet Scrubs | 3501 Midway Rd Suite 260 | | Plano | TX | 75093 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Plaza Uniform | 1507 Lafayette Rd | | Rossville | GA | 30741 | Titanium Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | PMC Treasury | The Commerce Building | 708 Third Avenue, 20th Floor | New York | NY | 10017 | Interest Rate Hedging Advisory Proposal dated 9/2/2021 | New Trojan Parent, Inc. | - |
| Elite Retailer Agreement | Pocono Scrubs | 1545 N 9th St Ste 110 | | Stroudsburg | PA | 18360 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | PONCE INTERNATIONAL, INC. | 1539 BRIARGLEN AVENUE | | WESTLAKE VILLAGE | CA | 91361 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Poughkeepsie Uniform Center Inc. | 2555 South Rd Ste 2 | | Poughkeepsie | NY | 12601 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Power Digital Marketing Campaign Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum | Caresmatic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum #4 | Caresmatic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum #5 | Caresmatic Brands, LLC | - |
| Service Agreement | Power Digital Marketing, Inc. | 2251 SAN DIEGO AVENUE SUITE A250 | | SAN DIEGO | CA | 92110 | Campaign Agreement Addendum | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Premiere Uniforms | 3196 N. College Ave | | Fayetteville | AR | 72703-3573 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Prism Medical Apparel | 340 Cutlers Hill Ct | | Lexington | KY | 40509 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Pro Uniform & Medical | 921 Cypress Creek Pkwy Ste122 | | Houston | TX | 77090-2530 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | PRN Uniforms, LLC | 3295 South Cooper Street Ste 137 | | Arlington | TX | 76015-3466 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Pro Image Uniforms | 1216 E Wildwood Ave | | Jackson | MI | 49202 | Silver Elite | Caresmatic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | By-Laws for the Procurement of Products | Caresmatic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | Supply Agreement | Caresmatic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | | Atlanta | GA | 30339 | Affiliation Agreement | Caresmatic Brands, LLC | - |
| Others | Procurement Advisors LLC | 3101 Tower Creek Parkway | Suite 250 | Atlanta | GA | 30339 | Affiliation Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Professional Apparel Co. | 847 Main St | | Battle Creek | MI | 49014-4969 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Professional Fashion | 46 S Plaza Way | | Cape Girardeau | MO | 63703-5809 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Professional Fashion | 46 S Plaza Way | | Cape Girardeau | MO | 63703-5809 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Professional Servicewear, Inc. | 3800 Quakerbridge Rd | | Hamilton | NJ | 08619 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Professional Servicewear, Inc. | 3800 Quakerbridge Rd | | Hamilton | NJ | 08619 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Proforma Business World | 634 W 2nd St | | Hastings | NE | 68901 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Project Scrubs | 25534 Hwy 101 | | Port Angeles | WA | 98362 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Pruitt, Jon | 85 NEWMAN PL | | FAIRFIELD | CT | 06825 | Independent Sales Contractor Agreement, Effective 9/18/2011 | Caresmatic Brands, LLC | - |
| Customer Contract | Putt & Go Video Inc | 126 Frontage Rd | | Forest City | NC | 28043-4336 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | QD Scrubs | 3233 W Saginaw | | Lansing | MI | 48917 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Quinn, Maynard | 501 Morse Avenue | | Ridgefield | NJ | 07657 | Amendment to Commission Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | QUYEN, DO NGOC | 60 Tran Phu Street, Chanh Nghia Ward | Thu Dau Mot city | Binh Duong province | | | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Rackspace USA, Inc. | 1 FANATICAL PL | | WINDCREST | TX | 78218 | Service Order (Rackspace Master Service Agreement (MSA) | Caresmatic Brands, LLC | 5,837 |
| Elite Retailer Agreement | Raley Medical Equipment | 6465 S. Yale Ave, Suite 512 | | Tulsa | OK | 74136 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Ravine Inc. | 610 7th St | | Altoona | PA | 16602 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | RC Uniforms | 11173 Beach Blvd | | Jacksonville | FL | 32246 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Read's Uniforms & Shoes - Medical | 4 Sweeten Creek Crossing | | Asheville | NC | 28803 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Red Dot Uniform Shoppe | 2603 Kirsten Lane | | Fargo | ND | 58103 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Regal Love Uniforms | 7301 Stonecrest Concourse | | Stonecrest | GA | 30038 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Reina Uniform | 9931-9935 Gidley St | | El Monte | CA | 91731 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Reis, Thomas | 4140 ROSEPARK DR | | WEST LINN | OR | 97068 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Service Agreement | RENTOKIL NORTH AMERICA D/B/A RENTOKIL | PO BOX 371866 | | PITTSBURGH | PA | 15250-7866 | COMMERCIAL PEST MANAGEMENT MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | 1,509 |
| Lease | RICOH CANADA INC. | 300-5520 EXPLORER DRIVE | | MISSISSAUGA | ON | L4W 5L1 | LEASE AGREEMENT | Silverts Adaptive, LLC | - |
| Elite Retailer Agreement | Rig Outfitters | 1401 N Turner St Ste 6 | | Hobbs | NM | 88240 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | RINGCENTRAL, INC. | 20 DAVIS DRIVE | | BELMONT | CA | 94002 | Master Services Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | RINGCENTRAL, INC. | 20 DAVIS DRIVE | | BELMONT | CA | 94002 | RINGCENTRAL PROFESSIONAL SERVICES STATEMENT OF WORK | Caresmatic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Caresmatic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Caresmatic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | Master Purchase Agreement | Caresmatic Brands, LLC | - |
| Group Customer Contract | Rite Aid Headquarters Corp. | 30 Hunter Lane | | Camp Hill | PA | 17011 | FIRST AMENDMENT TO MASTER PURCHASE AGREEMENT CARESMATIC BRANDS | Caresmatic Brands, LLC | - |
| Software Agreement | RJW Enterprises | 221 Oakwood Dr | | Aiken | SC | 29801 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | RKL ESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #5000736-REV1 | AllHearts, LLC | - |
| Software Agreement | RKL ESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #500639 | Caresmatic Brands, LLC | - |
| Software Agreement | RKL ESOLUTIONS, LLC | 1800 FRUITVILLE PIKE | P.O. BOX 8408 | LANCASTER | PA | 17604 | STATEMENT OF WORK #8600041 | Caresmatic Brands, LLC | - |
| Contractor Agreement | ROBERT DREXEL KLEIN | 2525 BROWN DR | | FLOWER MOUND | TX | 75022 | Independent Sales Contractor Agreement, Effective 1/1/2003 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Robert J. Blumenthal, Inc. | 777 NW 72 Avenue 3F 19 | | Miami | FL | 33126 | Independent Sales Contractor Agreement, Effective 10/15/2001 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Roberts Medical Uniforms | 1135 Commercial Ave SE | | New Philadelphia | OH | 44663-3802 | Diamond Elite | Caresmatic Brands, LLC | - |
| Professional Services | Robinhill LLC | 450 Lexington Ave | 4th Fl | New York | NY | 10017 | Contracting Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Rocky Brands | 45 E Canal St | | Nelsonville | OH | 45764 | Silver Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Roessler, Scott | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | Compensation Plan Effective 1/1/2001 | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Employment Agreement | Roessler, Scott | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | Compensation Plan Effective 1/1/2001 | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Rogers Uniforms, LLC | 700 W Third St | | Williamsport | PA | 17701-5616 | Gold Elite | Caresmedic Brands, LLC | - |
| Others | RON BELENO | 10 DEAN PARK RD | | TORONTO | ON | M1B3G8 | Retainer Agreement | Silverts Adaptive, LLC | - |
| Contractor Agreement | Ronald Jocelyn | Santo 16A, #74 | | Crois-des-Bouquets | | | Independent Contractor / Propriety Information / Assignment of Inventions Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Rose Allen Industries | 222 3rd Ave SW | | Cedar Rapids | IA | 52404 | Silver Elite | Caresmedic Brands, LLC | - |
| Contractor Agreement | Rothlein, Barry | 401 CLEARVIEW CT | | LAKE VILLA | IL | 60046 | Independent Sales Contractor Agreement, Effective 1/1/1999 | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Ruth Linen | 2142 NW 20th St Unit 9 & 6 | | Miami | FL | 33142 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Ruth's Uniforms | 2009 E Olive Rd | | Pensacola | FL | 32514 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Ryan Uniforms LLC | 8507 Midlothian Tpke | | Richmond | VA | 23235 | Titanium Elite | Caresmedic Brands, LLC | - |
| Service Agreement | RYU LAW FIRM | 915 WILSHIRE BOULEVARD | SUITE 1775 | LOS ANGELES | CA | 90017 | Engagement Letter for Legal Representative | Caresmedic Brands, LLC | - |
| Contractor Agreement | Saari, Jon K. | 1388 NATIONAL RD | UNIT 9 | WHEELING | WV | 26003 | Independent Sales Contractor Agreement, Effective 1/1/2004 | Caresmedic Brands, LLC | - |
| Contractor Agreement | Saari, Jon K. | 1388 NATIONAL RD | UNIT 9 | WHEELING | WV | 26003 | Independent Sales Contractor Agreement, Effective 1/1/2009 | Caresmedic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Amendment to Warehouse Services Agreement (NOW No. ) entered into on March 18 , 2022 | Caresmedic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | FIFTH AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | FIFTH AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | FOURTH AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | FOURTH AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | MASTER WAREHOUSE SERVICES AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | SADDLE CREEK WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | SADDLE CREEK WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Seventh AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | SEVENTHAMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Sixth AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Sixth AMENDMENT TO WAREHOUSE AND FULFILLMENT AGREEMENT | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3015 Saddle Creek Road | | Lakeland | FL | 33801 | STORAGE FACILITY - PRODUCT/MERCHANDISE | Caresmedic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | ADDENDUM TO Contract and Rate Quotation between Saddle Creek Corporation | Caresmedic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | SADDLE CREEK CORPORATION; SCHEDULE A | AlHearts, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | SADDLE CREEK CORPORATION; CONTRACT AND RATE QUOTATION | Caresmedic Brands, LLC | - |
| Lease | Saddle Creek Corporation | 3010 Saddle Creek Road | | Lakeland | FL | 33801 | Statement of Work No. 1, dated as of September 21, 2021 | AlHearts, LLC | - |
| Lease | SADDLE CREEK LOGISTICS SERVICE | 3010 SADDLE CREEK ROAD | | LAKELAND | FL | 33801 | MASTER WAREHOUSE SERVICES AGREEMENT Master Warehouse Services Agreement entered into as of September 1, 2021 | AlHearts, LLC | - |
| Lease | SADDLE CREEK LOGISTICS SERVICE | 3010 SADDLE CREEK ROAD | | LAKELAND | FL | 33801 | CONTRACT AND RATE QUOTATION | Caresmedic Brands, LLC | - |
| Software Agreement | Sage Software, Inc. | 56 TECHNOLOGY DRIVE | | IRVINE | CA | 92618-2301 | SAGE SOFTWARE, INC. CLIENTCARE SUPPORT AND MAINTENANCE AGREEMENT FOR ACUITY APPLICATIONS SOFTWARE | Caresmedic Brands, LLC | - |
| Software Agreement | Sage Software, Inc. | 56 TECHNOLOGY DRIVE | | IRVINE | CA | 92618-2301 | ClientCare Support and Maintenance Agreement for Acuity Applications SoftWare | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-01104885 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-01113095 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-01113095 - ExecTarget - Corporate Edition | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-02222280 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-02677492 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-03105920 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-03267538 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-03077180 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-03393565 | Caresmedic Brands, LLC | - |
| Software Agreement | salesforce.com, inc. | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc. - Quote Number: Q-03925175 | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Sand Oak Uniforms & Embroidery | 2616 Foxden Rd | | Houston | TX | 77063 | Silver Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Sanders Uniforms | 1570 Highway 1 South | | Greenville | MS | 38701-7000 | Diamond Elite | Caresmedic Brands, LLC | - |
| Contractor Agreement | Sands, Timothy | 1495 WASHINGTON ST | | EAST BRIDGEWATER | MA | 02333-1624 | Independent Sales Contractor Agreement, Effective 1/1/2006 | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Santa Rosa Uniforms And Career Apparel | 1005 W College Ave | | Santa Rosa | CA | 95401-5029 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Savannah Kids Wear | 818 E Derenne Ave | | Savannah | GA | 31405 | Titanium Elite | Caresmedic Brands, LLC | - |
| Contractor Agreement | Scherer, Ron | 410 SWAN BLVD | | DEERFIELD | IL | 60015 | Independent Sales Contractor Agreement, Effective 3/12/2004 | Caresmedic Brands, LLC | - |
| Service Agreement | ScotiaBank | 720 KING ST WEST 2ND FL | | TORONTO | ON | M5V2T3 | Government Tax Payment & Filing Service Enrollment | Strategic Distribution, L.P. | - |
| Employment Agreement | SCOTT ROESSLER | 417 PINE AVE | | EGG HARBOR TOWNSHIP | NJ | 08234-7133 | COMPENSATION PLAN FOR SCOTT ROESSLER, EFFECTIVE 1/1/2001 | Caresmedic Brands, LLC | - |
| Customer Contract | Scottie's Scrubs & Stuff, 614 Apparel | 5800 Country Dr | | Columbus | OH | 43232 | PIE 2.0 Customer Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Apparel Outlet | 17689 Coastal Hwy | | Lewes | DE | 19958 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Bees | 2100 N West Rd Ste 308 | | Tucson | AZ | 85712-3051 | Gold Elite | Caresmedic Brands, LLC | - |
| Customer Contract | Scrub Dealer, Inc. | 7592 154th Rd N | | Palm Beach Gardens | FL | 33418 | PIE 2.0 Customer Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Depot, Inc. | 5828 Grape Rd | | Mishawaka | IN | 46545 | Diamond Elite | Caresmedic Brands, LLC | - |
| Customer Contract | Scrub Duds | 1327 S Beckham Ave | | Tyler | TX | 75701 | PIE 2.0 Customer Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Diamond Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Hub | 393 E Main St Ste 6C | | Hendersonville | TN | 37075 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Identity | 4655 E 82nd Street | | Indianapolis | IN | 46250 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Jct | 1023 Yellowstone Ave H | | Pocatello | ID | 83201 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Loft | 7008 Warden Rd | | Sherwood | AR | 72120 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Mart | 2638 Main Street | | Chula Vista | CA | 91911 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Paradise LLC | 2600 SW 24th Ave | | Ocala | FL | 34471 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Patrol | 2595 E Missouri Ave | | Las Cruces | NM | 88011 | Gold Elite | Caresmedic Brands, LLC | - |
| Customer Contract | Scrub Shack | 5256 Rt 30 Ste. 111 | | Greensburg | PA | 15601 | PIE 2.0 Customer Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Shack SC Inc | 1239 D Burkemont Ave | | Morganton | NC | 28655 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Spot LLC | 3707 Ellison Dr NW Ste H-1 | | Albuquerque | NM | 87114 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Station | 2440 North Hills St Ste 107 | | Meridian | MS | 39305 | Gold Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub Warehouse LLC | 2409 Main St | | Rocky Hill | CT | 06067 | Diamond Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrub World | PO Box 7157 | | Hazard | KY | 41702 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrubbly | 13248 Hawthorne Blvd | | Hawthorne | CA | 90250-7001 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Beyond, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Krazy Kat Sportswear LLC | - |
| Elite Retailer Agreement | Scrubs & Beyond, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Med Couture, LLC | - |
| Purchase Agreement | SCRUBS & BEYOND, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Krazy Kat Sportswear LLC | - |
| Purchase Agreement | SCRUBS & BEYOND, LLC | 12969 Manchester Rd | | St. Louis | MO | 63131 | Private Brand Agreement | Med Couture, LLC | - |
| Customer Contract | Scrubs & Co | 992 State Hwy 46 South Ste 101 | | New Braunfels | TX | 78130 | PIE 2.0 Customer Agreement | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Co | 992 State Hwy 46 South Ste 101 | | New Braunfels | TX | 78130 | Diamond Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Duds | 1223 E 10th St | | Odessa | TX | 79761 | Titanium Elite | Caresmedic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Gold Elite | Caresmedic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & More | 19931 Hwy 6 Ste C | | Manvel | TX | 77578 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Stitches | 37011 Cook St Ste103 | | Palm Desert | CA | 92211 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Stuff, LLC | 2687 Steelsburg Hwy | | Cedar Bluff | VA | 24609 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs & Stuff, LLC | 2687 Steelsburg Hwy | | Cedar Bluff | VA | 24609 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 101 Uniform Boutique | 3074 Ross Clark Cir | | Dothan | AL | 36301 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs 2 Go & More | 1010 Seminole Dr #109 | | Fort Lauderdale | FL | 33304-3201 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 365 | 3664 A Pacific Ave | | Olympia | WA | 98501 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs 4 All | 3688A Airport Blvd | | Mobile | AL | 36608 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 All | 3688A Airport Blvd | | Mobile | AL | 36608 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs 4 Less | 7800 E State Rt 69 Ste B1 | | Prescott Valley | AZ | 86314 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 Less | 7800 E State Rt 69 Ste B1 | | Prescott Valley | AZ | 86314 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 4 U | 23016 Lake Forest Dr Ste B | | Laguna Hills | CA | 92653 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs And Chefs Wear By Ann | 1076 Eagles Landing Pkwy | | Stockbridge | GA | 30281-6012 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs and More | 210 Needmore Rd Ste E | | Clarksville | TN | 37040 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Boutique and More LLC | 6301 NW Loop 410 | | San Antonio | TX | 78238 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Boutique and More LLC | 6301 NW Loop 410 | | San Antonio | TX | 78238 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs By Benji | 2187 Broadway Street | | Emmetsburg | IA | 50536 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs By Design | 4817 SW 34th Street Ste. 1 & 2 | | Gainesville | FL | 32608 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs By Design | 4817 SW 34th Street Ste. 1 & 2 | | Gainesville | FL | 32608 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs by Pinque Lady | 7736 E US Highway 36 | | Avon | IN | 46123-7880 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Cary | 669 Cary Towne Blvd | | Cary | NC | 27511 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Cary | 669 Cary Towne Blvd | | Cary | NC | 27511 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Central | 100 Pawnee Rd Suite A | | Chillicothe | OH | 45601 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Club | 1307 Scotland Crossing Dr | | Laurinburg | NC | 28352 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Club | 1307 Scotland Crossing Dr | | Laurinburg | NC | 28352 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Direct | 8232 Menaul Blvd NE | | Albuquerque | NM | 87110 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Elite | 1005 Hwy 72 East | | Corinth | MS | 38834 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | Diamond Elite | Caresmatic Brands, LLC | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| License Agreement | Scrubs Etc. | 1220 Pennsylvania Ave | | Fort Worth | TX | 76104 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Scrubs Express | 1908 Vestal Pkwy East | | Vestal | NY | 13850 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Express | 1908 Vestal Pkwy East | | Vestal | NY | 13850 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Express, LLC | 843 Fairview Ave Ste A2 | | Bowling Green | KY | 42101 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Express, LLC | 843 Fairview Ave Ste A2 | | Bowling Green | KY | 42101 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs For Less | 9261 Halls Ferry Rd | | St. Louis | MO | 63136 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Galore | 6051 Dale Dr Ste B | | Marion | MS | 39342 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Galore N More | 615 N 4th St Ste F | | Longview | TX | 75601 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs in a Tub | 850 W Lugonia Ave | | Redlands | CA | 92374 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Infinite | 499 New Brunswick Ave | | Fords | NJ | 08863 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Los Angeles Inc | 1040 E Walnut St | | Pasadena | CA | 91106 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Los Angeles Inc | 1040 E Walnut St | | Pasadena | CA | 91106 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Duds | 9300 4th Street North | | Saint Petersburg | FL | 33702 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs n Essentials | 2719 Reinhardt College Pkwy | | Canton | GA | 30114 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Extras | 31141 Temecula Pkwy Ste H4 | | Temecula | CA | 92592 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs 'n Scopes | 425 W Guadalupe #108 | | Gilbert | AZ | 85233-3203 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs N Stuff Inc | 3993 Tyrone Blvd N Ste 202 | | Saint Petersburg | FL | 33709-4106 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs N Stuff Inc | 3993 Tyrone Blvd N Ste 202 | | Saint Petersburg | FL | 33709-4106 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs -n- Tees | 203 Tanger Blvd | | Locust Grove | GA | 30248-3640 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs -n- Tees | 203 Tanger Blvd | | Locust Grove | GA | 30248-3640 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Nyack | 1520 Palisades Center Drive | | West Nyack | NY | 10994 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs of Evans, LLC. | 4158 Washington Rd Ste 7 | | Evans | GA | 30809 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs On Site | 807 W 2nd St | | Holden | MO | 64040 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs on the Run | 2100 Outlet Center Dr #040 | | Oxnard | CA | 93036 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus | 21100 Dulles Town Cir Ste 280 | | Dulles | VA | 20166 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus LLC | 214 E 6th St | | Anniston | AL | 36207 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Plus, Inc | 811 South 500 West Ste 101 | | Bountiful | UT | 84010 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Plus, Inc | 811 South 500 West Ste 101 | | Bountiful | UT | 84010 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs PRN | 6326 NW Barry Rd | | Kansas City | MO | 64154 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs PRN | 6326 NW Barry Rd | | Kansas City | MO | 64154 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs To The Rescue, LLC | 8000 S Gessner Rd Ste 500 | | Houston | TX | 77036 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Today | 15909 118th Ave NW | | Gig Harbor | WA | 98329 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | E-Commerce Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs Unlimited, LLC | 1600 Wayne Memorial Dr Ste A | | Goldsboro | NC | 27534 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubsies Uniform Supply LLC | 414 Wallace Ct | | Richmond | KY | 40475 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubs-n-more | 4649 Hardy Street | | Hattiesburg | MS | 39402 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubtastic of Tennessee | 2680 Kirby Whitten Ste 107 | | Memphis | TN | 38133 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Scrubtopia Plus | 1730 Briarcrest Dr | | Bryan | TX | 77802 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Scrubwagon | 684 Hanes Mall Blvd | | Winston Salem | NC | 27103 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Seacoast Embroidery | 5893 South Congress Ave | | Atlantis | FL | 33462 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | SEAN FRIDY | 6511 HUNTINGTON HILL LN | | KATY | TX | 77494 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | SEAN RENET | 7803 KELVIN AVE | | WINNETKA | CA | 91306 | STATEMENT OF WORK NO. 1 BETWEEN STRATEGIC PARTNERS INC. AND SEAN RENET, DATED 11/5/2018 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Second City Sales, Inc. | 7446 E BUCKHORN TRL | | SCOTTSDALE | AZ | 85266 | Independent Sales Contractor Agreement, Effective 6/1/2010 | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | MASTER AGREEMENT FOR B2C SMARTSTORES PLATFORM AND B2B PROGRAM MANAGER PLATFORM | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | Professional Services Bulk Buy-out of Hours | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | AGREEMENT FOR SERVICES | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | AGREEMENT FOR LICENSE AND MONTHLY MANAGEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | MedCouture Project | Caresmatic Brands, LLC | - |
| Software Agreement | Sellers Commerce LLC | 5600N, RIVER RD | SUITE 800 | ROSEMONT | IL | 60018 | MASTER AGREEMENT FOR B2C SMARTSTORES PLATFORM AND B2B PROGRAM MANAGER PLATFORM | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Serendipity Uniforms | 5085 Virginia Loop Rd | | Montgomery | AL | 36116-5634 | Titanium Elite | Caresmatic Brands, LLC | - |
| License Agreement | SESAME WORKSHOP | 1900 BROADWAY | | NEW YORK | NY | 10023 | LICENSEE | Caresmatic Brands, LLC | - |
| License Agreement | SESAME WORKSHOP | 1900 BROADWAY | | NEW YORK | NY | 10023 | LICENSE AGREEMENT SESAME STREET | Caresmatic Brands, LLC | - |
| License Agreement | Sesame Workshop LLC | One Lincoln Plaza | | New York | NY | 10023 | 3-Year Renewal Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Renewal and Amendment to Agreement dated 7/1/2019 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Independent Sales Contractor Agreement, Effective 8/23/1999 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Shaffer, Michael | 193 COURTLAND | | HOLLISTON | MA | 01746 | Independent Sales Contractor Agreement, Effective 8/23/1999 | Caresmatic Brands, LLC | - |
| Purchase Agreement | Sharp Electronics Corp | 100 PARAGON DR | | MONTVALE | NJ | 07645 | Contract # 8020128189 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Shutters Apparel | 777 Alpha Dr | | Highland Heights | OH | 44143 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Signature Uniforms | 1130 Geronimo Dr #1 | | El Paso | TX | 79925 | Titanium Elite | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Silverts Adaptive, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Silverts Adaptive, LLC | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Operating Agreement of Silverts Adaptive, LLC | Caresmatic Brands, LLC | - |
| Customer Contract | Simply Scrubs | 802 S Peterson Ave Ste E | | Douglas | GA | 31533-5210 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Scrubs | 802 S Peterson Ave Ste E | | Douglas | GA | 31533-5210 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Scrubs of Florida, Inc. | 2751 Enterprise Rd Ste 115 | | Orange City | FL | 32763 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Simply Uniforms | 5036 Goodman Rd Ste 112 | | Olive Branch | MS | 38654 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Sloms Professional Uniforms | 1125 Old York Rd | | Abington | PA | 19001-1917 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Sloms Professional Uniforms | 1125 Old York Rd | | Abington | PA | 19001-1917 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | SMART ACTION COMPANY, LLC | 300 CONTINENTAL BLVD STE 350 | | EL SEGUNDO | CA | 90245 | SMARTACTION AGREEMENT FOR STRATEGIC PARTNERS 11/24/2010 | Caresmatic Brands, LLC | 2,000 |
| License Agreement | Smart Sheet | 10500 NE 8th ST #1300 | | BELLEVUE | WA | 98004 | Order Q-1246979 | Caresmatic Brands, LLC | - |
| Insurance Agreement | Somerset Capital Group, Ltd | 5555 US Hwy 1 N | | Blaine | VA | 24382 | Silver Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | SOMPO International | 1221 Ave of Americas | | New York | NY | 10020 | Excess Liability Binder | CBI Parent, L.P. | - |
| Elite Retailer Agreement | South Texas Uniform | 2146 N 10th St | | McAllen | TX | 78501 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Southern Scrubs, LLC | 2904 North Ashley Street | | Valdosta | GA | 31602 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | SP Uniforms Corp | 966 W Vernon | | Los Angeles | CA | 90037 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | SP Uniforms Corp | 966 W Vernon | | Los Angeles | CA | 90037 | Titanium Elite | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Consulting Agreement | SPHERE PARTNERS LLC | 1119 COLORADO AVE | | SANTA MONICA | CA | 90401 | Consulting Services Agreement | Caresmatic Brands, LLC | - |
| Consulting Agreement | SPHERE PARTNERS LLC | 1119 COLORADO AVE | | SANTA MONICA | CA | 90401 | STATEMENT OF WORK #2022-106-CARBR | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | St. John Uniforms & More | 1111 N Dixie Hwy # 15 | | Elizabethtown | KY | 42701-2764 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Stacy's Uniforms | 4324 SW 45th Ave | | Amarillo | TX | 79109 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Star Uniforms of Central Illinois, LLC | 503 N. Prospect Rd. Suite 109 | | Bloomington | IL | 61704 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Stats | 119 1st St | | Grenada | MS | 38901-2615 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Steele Uniforms & Accessories | 1305 E Broad Ave Ste 3 | | Rockingham | NC | 28379 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | STERICYCLE INC. - SHRED IT | 6100 CONDOR DRIVE | | NMOORPARK | CA | 93021 | PURGE SERVICE AGREEMENT EFFECTIVE DATE 5/25/2021 | Caresmatic Brands, LLC | 1,004 |
| Employment Agreement | Steve Davis | 111 Arabian Road | | Schwenksville | PA | 19426 | Directorship | CBI Parent, L.P. | - |
| Consulting Agreement | Steven Land | 900 BRIDGEWATER CT | | NASHVILLE | TN | 37221 | Independent Sales Contractor Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Stitch-N-Print | 3660 E Del Mar Blvd Ste 5 | | Laredo | TX | 78041 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Strategic General Partners, LLC | 14001 W State Hwy 29 #102 | | Libertyhill | TX | 78642 | Limited Liability Company Agreement of Strategic General Partners, LLC | Caresmatic Brands, LLC | - |
| Intercompany Agreement | Strategic General Partners, LLC | 14001 W State Hwy 29 #102 | | Libertyhill | TX | 78642 | Limited Liability Company Agreement of Strategic General Partners, LLC | Strategic General Partners, LLC | - |
| Intercompany Agreement | Strategic Partners Holdings, Inc. | 1119 Colorado Ave | | Santa Monica | CA | 90401 | Limited Liability Company Agreement of Strategic Partners Midco, LLC | Strategic Partners Midco, LLC | - |
| Intercompany Agreement | Strategic Partners, Inc. | 9800 De Soto Ave | | Chatsworth | CA | 91311 | Limited Liability Company Agreement of Pacoima Limited, LLC | Pacoima Limited, LLC | - |
| Elite Retailer Agreement | Studio Scrubs, LLC | 8-B Elm Grove Crossing Mall | | Wheeling | WV | 26003 | Titanium Elite | Caresmatic Brands, LLC | - |
| Others | Sugar Hill Digital LLC | 1515 E. 15th Street | | Los Angeles | CA | 90021 | Trademark Assignment Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Sunshine Medical Uniforms | 902 Brooklyn Ave | | San Antonio | TX | 78215 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Superior Scrubs | 47 Highland Pavilion Ct Ste 103 | | Hiram | GA | 30141 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Surgical & Hospital Supplies | 276 Galloxsee Street | | Houma | LA | 70360 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | SUZAN NGUYENING | 15811 S ALLEY COURT | | HOUSTON | TX | 77082 | Retainer Agreement | Silvertis Adaptive, LLC | - |
| Elite Retailer Agreement | Sweetwater Scrubs, Inc. | 395 New Hwy 68 | | Sweetwater | TN | 37874 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Swirl Uniforms | 6035 Cliff Dr Ste 100 | | Woodway | TX | 76712 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC PLANNED SERVICE AGREEMENT | Caresmatic Brands, LLC | 828 |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC Planned Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC Planned Service Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | HVAC PLANNED SERVICE AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | SYNERGY ENVIRONMENTAL SERVICES, LLC | PO BOX 1217 | | HURST | TX | 76053 | NEW HVAC PLANNED SERVICES AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | T & M Outlet | 1758 S Fayetteville St | | Asheboro | NC | 27205 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | T & M Outlet | 1758 S Fayetteville St | | Asheboro | NC | 27205 | Diamond Elite | Caresmatic Brands, LLC | - |
| Software Agreement | TAGGER MEDIA, INC. | 2001 WILSHIRE BLVD STE 301 | | SANTA MONICA | CA | 90403 | Saas Order Form | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | TBG Uniform Store | 5606 Church Ave | | Brooklyn | NY | 11203 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | TCA TERRACARE ASSOCIATES, LP | 2433 MERRELL RD | | DALLAS | TX | 75229 | LANDSCAPE MAINTENANCE AGREEMENT | Strategic Distribution, L.P. | - |
| Service Agreement | TCA TERRACARE ASSOCIATES, LP | 2433 MERRELL RD | | DALLAS | TX | 75229 | LANDSCAPE MAINTENANCE AGREEMENT | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | TCB Uniforms, LLC | 361 Hwy 5 N | | Mountain Home | AR | 72653 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | TCS Uniforms | 2715 N State St | | Jackson | MS | 39216 | Diamond Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | TECHMEDICS | 527 WEST SEVENTH STREET | SUITE 500 | LOS ANGELES | CA | 90014 | PROCARE SERVICE LEVEL AGREEMENT | Caresmatic Brands, LLC | 3,405 |
| Service Agreement | TECHMEDICS | 527 WEST SEVENTH STREET | SUITE 500 | LOS ANGELES | CA | 90014 | PROCARE ADDENDUM MANAGEDCARE SERVICE LEVEL AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Teddy Inc | 2721 Tamiami Trail # B | | Port Charlotte | FL | 33952 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Templeton Uniforms | 3850 Ramada Dr A-1b | | Paso Robles | CA | 93446 | Gold Elite | Caresmatic Brands, LLC | - |
| Employment Agreement | Tepner, Harvey L. | 11 Fifth Avenue | Apt 8-L | New York | NY | 10003 | Disinterested Directorship Appointment | CBI Parent, L.P. | - |
| Customer Contract | The Care Shop | 1337 S Grand Blvd | | Spokane | WA | 99202 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Others | THE DAISY FOUNDATION | 6529 ALMEDA VISTA PL | | ANACORTES | WA | 98221 | PARTNERSHIP AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | THE EARNEST ANALYTICS COMPANY | 43 West 24th Street, Floor 5 | | New York | NY | 10010 | Licensing Agreement dated 6/30/2023 | Caresmatic Brands, LLC | - |
| Service Agreement | The Grower Group LLC | 935 TRENTLE CT | | CHARLOTTE | NC | 28211 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | The Health Company | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | Colombia Distributor Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | The Health Company | Calle 24N #5C | 43 Cali | Valle | | | Columbia Distributor Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | The Image Group | 1255 Corporate Dr | | Holland | OH | 43528 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Notion Shop | 115 E County Road | | Thomaston | GA | 30286 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Outlet | 9192 Reseda Blvd | | Northridge | CA | 91324 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | SOW for Loglity Implementation dated February 12, 2024 | Caresmatic Brands, LLC | - |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | SOW for Loglity Implementation dated February 12, 2024 | Caresmatic Brands, LLC | - |
| License Agreement | THE POKEMON COMPANY INTERNATIONAL, INC. | 10400 NE 4TH STREET | SUITE 2800 | BELLEVUE | WA | 98004 | Merchandise License Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Boutique Ltd | 2040 Corlies Ave | | Neptune City | NJ | 07753 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Club, LLC | 1292 Thompson Bridge Rd | | Gainesville | GA | 30501 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Club | 8527 E State Road 70 | | Bradenton | FL | 34202 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Connection | 307 Market Street | | Seneca | SC | 29678 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Hub | 1506 West Beebe Capps Expressway | | Searcy | AR | 72143 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Hub, LLC | 19033 US Route 11 | | Watertown | NY | 13601 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shop | 6882 US Hwy 90 Ste 4 | | Daphne | AL | 36526 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shoppe | 2150 N Main St | | North Logan | UT | 84341 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Shoppe | 2150 N Main St | | North Logan | UT | 84341 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Scrub Zone | 420 Hwy 51 N | | Brookhaven | MS | 39601-3656 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Center | 1156 E 700 S Ste 2 | | St George | UT | 84790 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Company | 1801 Lincoln Way Ste 6 | | Coeur d'Alene | ID | 83814 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | The Uniform Connection | 5740 Old Cheney Rd Ste 1 | | Lincoln | NE | 68516-3586 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Connection | 5740 Old Cheney Rd Ste 1 | | Lincoln | NE | 68516-3586 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform House | 125 S Winstead Ave | | Rocky Mount | NC | 27804-2534 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | The Uniform Place | 4679 Dressier Rd NW | | Canton | OH | 44718 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Place | 4679 Dressier Rd NW | | Canton | OH | 44718 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shop | 30 Germantown Rd | | Danbury | CT | 06810-5033 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Shoppe Of Pikeville, Inc. | 70 Hillcrest Hts | | Pikeville | KY | 41501 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Customer Contract | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Source | 1032-E Vann Drive | | Jackson | TN | 38305 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Spot | 627 South Houston Lake Road Suite 112 | | Warner Robins | GA | 31088 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Stop | 1120 N Duck Ste F | | Stillwater | OK | 74075-3648 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | The Uniform Store | 1018 Main St | | Neodesha | KS | 66757 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store | 1018 Main St | | Neodesha | KS | 66757 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store | 1018 Main St | | Neodesha | KS | 66757 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Store Llc | 6767 Dublin Center Drive | | Dublin | OH | 43017 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Uniform Superstore Inc | 555 Almeda Mall #706 | | Houston | TX | 77075 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | The Working Feet | 1950 Manhattan Blvd | | Harvey | LA | 70058-3581 | Silver Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | The Yes Group | 1201 Mendota Heights Road | | Minneapolis | MN | 55120 | Principal/Representative Group Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Theo's Niche Scrub Shop | 3769 Fort St | | Lincoln Park | MI | 48146 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Theo's Niche Scrub Shop | 3769 Fort St | | Lincoln Park | MI | 48146 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Thrifty Home Medical | 226 E Main St | | Olney | IL | 62450 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | TIMARA LINK | 3917 OAKDALE AVENUE | | PASADENA | CA | 91107 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 3,866 |
| Elite Retailer Agreement | TMC Scrubs n More | 7227 Fannin St #105 | | Houston | TX | 77030 | Diamond Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Todays Uniforms | 58 N Williams St | | Crystal Lake | IL | 60014 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Todays Uniforms | 58 N Williams St | | Crystal Lake | IL | 60014 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tom & Jerry's Home | 620 Knott Lane | | Connellsville | PA | 15425-2405 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tops Uniforms, Inc. | 1742 Herlong Village Dr | | Rock Hill | SC | 29732 | Titanium Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | TORIN REA | 21021 N 56TH STREET | APT. 2102 | PHOENIX | AZ | 85054 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Scrubs, LLC | 101 North 1200 East Suite A3 | | Lehi | UT | 84043 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Sportwear Company | 3101 Pacific Ave | | Harbor City | CA | 90710 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Total Uniforms | 1301 W 34th St | | Austin | TX | 78705 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Trademark Uniforms, Inc | 2011 W 45th St | | Sioux Falls | SD | 57105 | Diamond Elite | Caresmatic Brands, LLC | - |
| Service Agreement | TRANSPORATION INSIGHT, LLC | 310 MAIN AVENUE WAY, SE | | HICKORY | NC | 28602 | MASTER TRANSPORATION MANAGEMENT SERVICES AGREEMENT | AllHearts, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Commercial Insurance | AllHearts, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Commercial Insurance | Caresmatic Brands, LLC | - |
| Insurance Agreement | TRAVELERS | ONE TOWER SQUARE | | HARTFORD | CT | 06183 | Workers Comp & Employers Liability Insurance, Policy Number 1/1/2025 | Caresmatic Brands, L.P. | - |
| Elite Retailer Agreement | Trends SNJ Inc | 2201 S I-35E S14-B | | Denton | TX | 76205 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tri County Uniforms | 122 Rodgers Blvd | | Chalford | FL | 32926-1106 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tri-parish | 947 Creswell Lane | | Opelousas | LA | 70570 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Tripp's Uniforms, Inc. | 268 Boston Turnpike | | Shrewsbury | MA | 01545-2619 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Tuff Wear | 620 N Escondido Blvd | | Escondido | CA | 92025 | Gold Elite | Caresmatic Brands, LLC | - |
| Consulting Agreement | Two Sons Productions | 516 SOLAR NW | | ALBUQUERQUE | NM | 87107 | Independent Contractor Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Boutique | 7513 Huntington Plaza Ste 1 | | Huntingdon | PA | 16652 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Carousel | 2216 Veterans Blvd | | Dublin | GA | 31021 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| Elite Retailer Agreement | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Center | 1118 N 3rd St | | Bismarck | ND | 58501 | Gold Elite | Caresmatic Brands, LLC | - |
| License Agreement | Uniform Concepts | 428 OLD YORK RD | | JENKINTOWN | PA | 19046 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Uniform Connection | 2123 E Edgewood Dr | | Lakeland | FL | 33803-3640 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Connection | 2123 E Edgewood Dr | | Lakeland | FL | 33803-3640 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Country | 2243 Colonial Ave SW | | Roanoke | VA | 24015 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Den, Inc. | 1309 5th Ave | | Moline | IL | 61265-1333 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Express | 333 Clark's Pond Pkwy Ste 9 | | South Portland | ME | 04106-2409 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Uniform Factory Outlet | 2378-G Corporation Parkway | | Burlington | NC | 27215 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Uniform Fashions | 2002 Mcfarland Blvd | | Tuscaloosa | AL | 35404-3809 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Headquarters | 455 S. 31st Street | | Paducah | KY | 42001 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Junction | 2740 Gray Fox Ste A | | Monroe | NC | 28110 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Junction | 2740 Gray Fox Ste A | | Monroe | NC | 28110 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Kingdom | 8240 Van Nuys Blvd | | Panorama City | CA | 91402 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Kingdom of NM, LLC | 910 San Juan Blvd | | Farmington | NM | 87401 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Mart | 1387 S Babcock St | | Melbourne | FL | 32901-3068 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Mart | 1387 S Babcock St | | Melbourne | FL | 32901-3068 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Outfitters, Inc | 1106 N John Young Pkwy | | Kissimmee | FL | 34741 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Professionals | 2734 Rte 26 | | Cincinnatus | NY | 13040-9669 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shop | 210 Morehead Plaza | | Morehead | KY | 40351 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shop | 210 Morehead Plaza | | Morehead | KY | 40351 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shoppe | 2950 Market St | | Pascagoula | MS | 39567-5163 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Shoppe Inc | 10505 N May Ave | | Oklahoma City | OK | 73120-2911 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Source, LLC | 2141 Cobb Pkwy NW | | Kennesaw | GA | 30152 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Specialists of Katy | 22129 Katy Fwy | | Katy | TX | 77450 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Specialists of Katy | 22129 Katy Fwy | | Katy | TX | 77450 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Station | 405 Stevens St. | | Geneva | IL | 60134 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Store | 2022 Hwy 45 N | | Columbus | MS | 39705 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Unlimited | 850 Prince Ave | | Athens | GA | 30606-2724 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Village Inc | 1623 Eastern Pkwy | | Schenectady | NY | 12309-6011 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Village Inc | 1623 Eastern Pkwy | | Schenectady | NY | 12309-6011 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniform Works | 113 E 12th St | | Tifton | GA | 31794 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Works | 113 E 12th St | | Tifton | GA | 31794 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform World | 2112 Gulf Gate Dr | | Sarasota | FL | 34231 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform World Inc | 12225 Greenville Ave #120 | | Dallas | TX | 75243 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Zone | 1000 West Oaks Mall Ste 102 | | Houston | TX | 77082 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform Zone | 1000 West Oaks Mall Ste 102 | | Houston | TX | 77082 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniform-T | 13221 N Main St | | Jacksonville | FL | 32218 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformity | 1140 West State Rd 434 Ste 100 | | Longwood | FL | 32750-5104 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformity Inc | 3427 N Cole Rd | | Boise | ID | 83704-6406 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformland | 23360 Valencia Blvd #F | | Valencia | CA | 91355 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformly Fit | 3510 Ryan St | | Lake Charles | LA | 70605 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniformly Yours | 103 Beverly Pkwy | | Pensacola | FL | 32505-2818 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniformly Yours, Inc | 115 Messer St | | Laconia | NH | 03246-2723 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms & More | 1930 N Jefferson | | Huntington | IN | 46750 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms & More | 1930 N Jefferson | | Huntington | IN | 46750 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms 2 U | 11846 Burgreen Rd | | Madison | AL | 35756 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms and Beyond, LLC | 1672 N Delsea Drive | | Vineland | NJ | 08360 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms By Julie | 2007 Palmyra Rd | | Albany | GA | 31701-1322 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms by Mickie | 2331 NW Federal Hwy | | Stuart | FL | 34994 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc | 9490 Airline Hwy # 4 | | Baton Rouge | LA | 70815 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Etc. | 637 1st St | | LaSalle | IL | 61301 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms for America | 3740 Woodruff Rd | | Columbus | GA | 31904 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Hawaii | 650 Iwilei Rd #115 | | Honolulu | HI | 96817 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms N More | 11408 E. Sprague Ave | | Spokane Valley | WA | 99206 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms N More Corp | 306 Ameda Mall | | Houston | TX | 77075 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Northwest | 901 Summitview Ave Ste 110 | | Yakima | WA | 98902-3080 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Plus | 316 W Roosevelt Blvd | | Monroe | NC | 28110 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms PRN | 615 Washington Square Mall | | Washington | NC | 27889 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms PRN | 615 Washington Square Mall | | Washington | NC | 27889 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms Unlimited | 118 South Blvd | | Salisbury | MD | 21804 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Uniforms, Etc., LLC | 480-A North Sam Houston Blvd | | San Benito | TX | 78586 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Unitomz, LLC | 4008 Main St | | Bridgeport | CT | 06606 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Union Medical Supply | 655 E Main St | | Lake Butler | FL | 32054-1352 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Krazy Kat Sportswear LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Strategic Distribution, L.P. | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | AllHearts, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Addendum to Carrier Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | ADDENDUM STRATEGIC PARTNERS AND UNITED PARCEL SERVICE, INC. CARRIER AGREEMENT | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Addendum to Carrier Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | United Parcels Service, Inc. | 2925 Merrel Road | | Dallas | TX | 75229 | Carrier Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | United Uniforms | 4620 2nd Ave | | Brooklyn | NY | 11232 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | United Uniforms | 4620 2nd Ave | | Brooklyn | NY | 11232 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | United Uniforms / Sew Shore | 3845 Beck Blvd Ste 809-810 | | Naples | FL | 34114 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | United Uniforms / Sew Shore | 3845 Beck Blvd Ste 809-810 | | Naples | FL | 34114 | Titanium Elite | Caresmatic Brands, LLC | - |
| License Agreement | Universal Studios | File 50789 | | Los Angeles | CA | 90074 | Universal Studios | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Unlimited Active Wear El Centro | 3451 S Dogwood Ave #1014 | | El Centro | CA | 92243 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Unlimited Active Wear, Inc. | 632 Palomar St #501 | | Chula Vista | CA | 91911 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | UPS Freight | P.O. BOX 1216 | | RICHMOND | VA | 23218-1216 | STATEMENT OF AGREED PRICING | Strategic Distribution, L.P. | - |
| Service Agreement | UPS WWFI UPS OHIO/UPS WWF | 1201 W. Olympic Blvd. | | Los Angeles | CA | 90015 | USPS Global International Incentive Program Agreement | Strategic Distribution, L.P. | - |
| Insurance Agreement | US Premium Finance | 280 Technology Parkway | Suite 200 | Norcross | GA | 30092 | Premium Finance Agreement and Disclosure Statement | Caresmatic Brands, LLC | - |
| Customer Contract | Usa Scrub Inc | 135 16 Jamaica Ave | | Richmond Hil | NY | 11418-1957 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Usa Scrub Inc | 135 16 Jamaica Ave | | Richmond Hil | NY | 11418-1957 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | USA Scrubs 2, Inc. | 173 Fulton Ave | | Hempstead | NY | 11550 | Titanium Elite | Caresmatic Brands, LLC | - |
| Insurance Agreement | USI of Southern CA | P.O. Box 4367 | | Woodland Hills | CA | 91365-4367 | Insurance Binder/Cover Note | Caresmatic Brands, LLC | - |
| Customer Contract | UV Image Experts | 1623 CREST VIEW DR | | Schenectady | NY | 12309-6011 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Valdinezo, Danny | 1683 N CREST VIEW DR | | LA PORTE | IN | 46350 | Independent Sales Contractor Agreement, Effective 5/5/2014 | Caresmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service | Caresmatic Brands, LLC | 48 |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service | Caresmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Contract repair service/Cellular Primary backup | Caresmatic Brands, LLC | - |
| Service Agreement | Valley Alarm | 804 Pico Street | | San Fernando | CA | 91340 | Valley Alarm Service | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley Medical Supply | 501 E. Herring Ave Ste #1 | | Wasilla | AK | 99654 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Valley Outfitters, LLC | 923 Roanoke Ave | | Roanoke Rapids | NC | 27870 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley Scrubs | 4063 Nazareth Pike Ste A | | Bethlehem | PA | 18020 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Valley West Uniforms | 4100 University Ave Ste 230 | | West Des Moines | IA | 50266 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Vanderbilts #5, Inc. | 2704 Wine St Ste A | | Hays | KS | 67601 | Silver Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Veb Scrubs | 7020 Quaker Ave Ste 8 | | Lubbock | TX | 79424 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Veb Scrubs | 7020 Quaker Ave Ste 8 | | Lubbock | TX | 79424 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Velocity Leadership | 1501 SAINSBURY DR | | MIDLOTHIAN | VA | 23113 | Leadership Development Outline/Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Velocity Leadership | 1501 SAINSBURY DR | | MIDLOTHIAN | VA | 23113 | Coaching/Outline/Agreement | Caresmatic Brands, LLC | - |
| Service Agreement | Vertex Inc. | 2301 RENAISSANCE BLVD 4TH FL | | KING OF PRUSSIA | PA | 19406 | Vertex Cloud Indirect Tax Services | AllHearts, LLC | 142,555 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| License Agreement | VF Imagewear CH Holdings GMBH | Obergrundstrasse 61 | 1st Floor | Lucerne | | 6003 | Restricted Names Domain Agreement | Caresmatic Brands, LLC | 64,069 |
| License Agreement | VF Imagewear CH Holdings GMBH | Oberngrundstrasse 61 | 1st Floor | Lucerne | | 6003 | Third Amendment to License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | VF Imagewear CH Holdings GMBH | Oberngrundstrasse 61 | 1st Floor | Lucerne | | 6003 | SIXTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Vitals Llc | 3903 E State Blvd | | Fort Wayne | IN | 46805 | Gold Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Viven Health | 7006 WOODBRIDGE CREEK CT | | SAINT LOUIS | MO | 63129 | Sponsorship agreement | Caresmatic Brands, LLC | - |
| Contractor Agreement | Wachenfeld, Christine | 6092 LILBURN LN | | CINCINNATI | OH | 45230 | Independent Sales Contractor Agreement, Effective 8/2/2010 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Walkabout Jct | 2064 E 17th St Ste 1 | | Idaho Falls | ID | 83404 | Titanium Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | Purchase of goods by Walmart | Caresmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Canada Corp. | 1940 Argentia Road | | Mississauga | ON | L5N 1P9 | VENDOR AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | Walmart Inc. | 2001 Southeast 10th Street | | Bentonville | AR | 72716-0550 | WALMART REALTY SUPPLIER AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | DSV Overview Guide Acknowledgement Form | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | ADDENDUM TO SUPPLIER AGREEMENT (Direct Ship Vendor Services) | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | DIRECT STORE DELIVERY CONSOLIDATION SHORTAGE ALLOWANCE (DSDC) AMENDMENT TO THE SUPPLIER AGREEMENT | Caresmatic Brands, LLC | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| Customer Contract | Wal-Mart Stores, Inc. | 1301 SE 10TH ST | | BENTONVILLE | AR | 72716 | WALMART GENERAL MERCHANDISE SUPPLIER AGREEMENT | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | Titanium Elite | Caresmatic Brands, LLC | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | PRODUCT LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , #19102-WBLT - AMENDMENT | Strategic Distribution, L.P. | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , #19127-WBLT - Amendment #1 | Strategic Distribution, L.P. | - |
| License Agreement | Warner Bros Consumer Products, Inc | 4000 Warner Blvd | | Burbank | CA | 91522 | PRODUCT LICENSE AGREEMENT , WARNER BROS. CONSUMER PRODUCTS , #19127-WBLT - AMENDMENT | Strategic Distribution, L.P. | - |
| Insurance Agreement | Westchester a Chubb Company | 11575 GREAT OAKS WAY STE 200 | | ALPHARETTA | GA | 30022 | ACE EXPRESS Private Company Management Indemnity Package | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Commercial Insurance | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 47487 | CBI Parent, L.P. | - |
| Insurance Agreement | Westchester Surplus Lines Insurance Company | 11575 Great Oaks Way | | Alpharetta | GA | 30022 | Executive Risk Package Insurance, Policy Number 4/1/2024 | CBI Parent, L.P. | - |
| Service Agreement | Western Overseas Corporation | 10731-B WALKER ST | | CYPRESS | CA | 90630 | Customs Power of Attorney | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | White Angel Medical Uniform | 1224 N Hacienda Blvd | | La Puente | CA | 91744 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Widen Enterprises, Inc. | 6911 Mangrove Lane | | Madison | WI | 53713 | Amendment No. 5452 | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 557,513 |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | SECOND AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | Third Amendment to License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | First Amendment to License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | First Amendment to License Agreement | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | SECOND AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Canada Company | 6711 Mississauga Road | Suite 600 | Mississauga | ON | L5N 2W3 | FOURTH AMENDMENT TO LICENSE AGREEMENT | Caresmatic Brands, LLC | - |
| License Agreement | Williamson-Dickie Mfg Co. | 509 West Vickery Blvd | | Fort Worth | TX | 76104 | Notice of Intent to Renew Canada Contract Agreement | Caresmatic Brands, LLC | - |
| Customer Contract | Wilsons Uniforms | 528 McHenry Ave | | Modesto | CA | 95364 | PIE 2.0 Customer Agreement | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Wilsons Uniforms | 528 McHenry Ave | | Modesto | CA | 95354 | Titanium Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Windy City Kidz | APPAREL CTR - STE 6-121 | 350 N ORLEANS ST | CHICAGO | IL | 60654 | Independent Sales Contractor Agreement, Effective 6/10/2004 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Woodville Road Surplus, Inc | 2172 Woodville Rd | | Oregon | OH | 43616 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Woody's Shirts | 603 Brannen St | | Statesboro | GA | 30458 | Gold Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Work Choice Uniforms | 1662 N Garnett St | | Henderson | NC | 27536 | Gold Elite | Caresmatic Brands, LLC | - |
| Customer Contract | Work Wear Uniforms | 4285 167TH ST | | COUNTRY CLUB HILLS | IL | 60478-2017 | E-Commerce Agreement | Strategic Distribution, L.P. | - |
| Elite Retailer Agreement | Work World America, Inc. | 299 Milwaukee St | | Denver | CO | 80206 | Diamond Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Workaholics, LLC | 10 US Hwy 80 E | | Demopolis | AL | 36732 | Gold Elite | Caresmatic Brands, LLC | - |
| Software Agreement | Workday, Inc. | 110 Stoneridge Mall Road | | Pleasanton | CA | 94588 | ORDER FORM 00366551.0 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Workingman's Family Store, Llc | 350 Main St Ste 4 | | Huntington | WV | 25701-1908 | Titanium Elite | Caresmatic Brands, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | ORDER FORM | AllHearts, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Assignment and Assumption Agreement / Magneto Subscription Agreement | AllHearts, LLC | - |
| Software Agreement | X. Commerce, Inc. | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Assignment Agreement | Medella, LLC | - |
| Software Agreement | X-COMMERCE INC. D/B/A MAGENTO | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | LICENSING AGREEMENT | Caresmatic Brands, LLC | - |
| Software Agreement | X-COMMERCE INC. D/B/A MAGENTO | 345 PARK AVENUE | | SAN JOSE | CA | 95110-2704 | Cloud Renewal | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Y&G T-Shirt Outlet | 2704 N Blackstone Ave | | Fresno | CA | 93703 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Yaverski, Mike | 158 CASTLE HILL RD | | EAST AURORA | NY | 14052 | Independent Sales Contractor Agreement, Effective 9/15/2007 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Yaverski, Mike | 158 CASTLE HILL RD | | EAST AURORA | NY | 14052 | Independent Sales Contractor Agreement, Effective 9/15/2007 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | YAY Scrubs | 1766 Hylan Blvd Unit B | | Staten Island | NY | 10305 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | YAY Scrubs | 1766 Hylan Blvd Unit B | | Staten Island | NY | 10305 | Titanium Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | York Uniforms | 7330 A B George Wash Mem Hwy | | Yorktown | VA | 23692-4889 | Gold Elite | Caresmatic Brands, LLC | - |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | AMENDMENT #1 INDEPENDENT SALES CONTRACTOR AGREEMENT, EFFECTIVE 7/1/2005 | Strategic Distribution, L.P. | - |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | Independent Sales Contractor Agreement, Effective 8/1/2004 | Caresmatic Brands, LLC | - |
| Contractor Agreement | Young, Perry C. | 142 STAYNER AVE | | NORTH YORK | ON | M6B1P3 | Independent Sales Contractor Agreement, Effective 8/1/2004 | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Your Choice Uniforms | 962 Chambers Blvd | | Bardstown | KY | 40004 | Silver Elite | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Z & Zurl's Scrubs and more boutique | 333 Cavalier Square | | Hopewell | VA | 23860 | Silver Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Zappos.com, LLC | 400 E STEWART AVE | | LAS VEGAS | NV | 89101 | Vendor Payment and Allowance Terms | Silverts Adaptive, LLC | - |
| Service Agreement | Zayo Group | PO Box 952136 | | Dallas | TX | 75395 | 1GBPS Dedicated Fiber for Colo | Caresmatic Brands, LLC | - |
| Elite Retailer Agreement | Zemsky Corporation | 4181 S Archer Ave | | Chicago | IL | 60632-1849 | Titanium Elite | Caresmatic Brands, LLC | - |
| Service Agreement | Zier Inc. | P.O. Box 14190 | | Ft. Lauderdale | FL | 33302 | Vendor agreement and Indemnification | Caresmatic Brands, LLC | - |

## Exhibit G

### Schedule of Rejected Executory Contracts and Unexpired Leases

Article V of the Plan provides that on the date that is ninety (90) days after the Effective Date, each Executory Contract or Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) is identified on the Assumed Executory Contracts and Unexpired Leases as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be assumed as of the Effective Date; (ii) is identified on the Rejected Executory Contracts and Unexpired Leases List as of the Effective Date, in which case such Executory Contract of Unexpired Lease shall be rejected as of the Effective Date; (iii) previously expired or terminated pursuant to its own terms; (iv) is the subject of a motion to reject Filed on or before the Effective Date; or (v) is an insurance policy (which shall be treated in accordance with Article V.E); *provided* that the assumption, assumption and assignment, or rejection of all Executory Contracts and Unexpired Leases shall be subject to the consent of the Required Consenting First Lien Lenders (not to be unreasonably withheld, conditioned, or delayed).  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.

Article V of the Plan further provides that, notwithstanding anything to the contrary in the Plan, the Debtors and the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List (i) to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List and the Rejected Executory Contracts and Unexpired Leases List at any time prior to the Effective Date, and (ii) to add any Executory Contract or Unexpired Lease to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List not otherwise identified on the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List at any time through and including ninety (90) days after the Effective Date, the modifications thereto shall constitute assumption or rejection of such Executory Contract or Unexpired Lease as of the date of such modification, notwithstanding anything contained in Article V.A of the Plan; *provided* that, subject to Article V.C of the Plan, at any time during such ninety (90)-day period after the Effective Date, the Post-Effective Date Debtors shall remain liable for any and all amounts incurred under any such Executory Contract and Unexpired Lease not on the Rejected Executory Contracts and Unexpired Leases List in the ordinary course of business.  The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List or the Rejected Executory Contracts and Unexpired Leases List to the counterparties to the Executory Contracts or Unexpired Leases affected thereby.

Certain documents, or portions thereof, contained or to be contained in this **Exhibit G** and this Amended Plan Supplement remain subject to continued review, as applicable, by the Debtors and the Required Consenting First Lien Lenders, and the final version of any such document may contain material differences from the version filed herewith.  The respective rights of the Debtors and the Required Consenting First Lien Lenders, as applicable, are expressly reserved, subject to the terms and conditions set forth in the Plan and the RSA, to alter, amend, modify, or supplement

this Amended Plan Supplement and any of the documents contained herein in accordance with the terms of the Plan, or by order of the Court; *provided* that if any document in this Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Court.

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| License Agreement | 3M Company | | | | | | Litman Stethoscope Wholesaler Distribution Agreement, 2011 | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | 3M Company | 2501 Hudson Road | | St. Paul | MN | 55144 | Health Care Littmann Stethoscope Wholesaler Distribution Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | 3M Company | 2501 Hudson Road | | St. Paul | MN | 55144 | Trademark License Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | 3M Global Channel Services, Inc. | 3M Center Building 224-1N-31 | | St.Paul | MN | 55144-1000 | Distributor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | 3M Global Channel Services, Inc. | 3M Center Building 224-1N-31 | | St.Paul | MN | 55144-1000 | Littmann Stethoscope Dealer Agreement | AllHearts, LLC | 6/15/2024 |
| License Agreement | 3M Health Care | 2300 Lakeview Parkway | Suite 700 | Alpharetta | GA | 30004 | Wholesale Distribution Agreement | Strategic Partners Corp. | 6/15/2024 |
| Service Agreement | A.T. Kearney, Inc. | 7 Times Square, 36th Floor | | New York | NY | 10036 | Correspondence dated 5/19/2022 from A.T. Kearney, Inc. | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Addendum # 1 , Equipment List , Schedule A | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement Service Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Abtech Service Order - Hardware and Software Maintenance | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement Service Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Abtech Service Order: Hardware and Software Maintenance | Caresimatic Brands, LLC | 6/15/2024 |
| | Acceleration LLC | 1875 Century Park East | Suite 1200 | Los Angeles | CA | 90067 | Correspondence dated 9/12/2019 from Michaelman & Robinson LLP re: Communication Strategy for Michael Singer / Strategic Partners Legal Action | | |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Proposal and Sales Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Proposal and Sales Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Not Reviewed | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Commercial Schedule of Protection Proposal and Sales Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Commercial Schedule of Protection Proposal and Sales Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Intermediate, Inc. | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Midco, Inc. | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Parent, L.P. | 6/15/2024 |
| Consulting Agreement | ALICIA DE GREGORIO | 12411 OSBORNE ST. | UNIT 11 | PACOIMA | CA | 91331 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | | |
| Service Agreement | American Diagnostic Corporation | 55 Commerce Drive | | Hauppauge | NY | 11788 | ADC & Strategic Partners, Inc. Distributor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | American Diagnostic Corporation | 55 Commerce Drive | | Hauppauge | NY | 11788 | Amendment ADC & Strategic Partners, Inc. Distributor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Group Customer Contract | American Red Cross | 13500 S point Blvd Ste L | | Charlotte | NC | 28273 | CONTRACT FOR GOODS AND SERVICES | AllHearts, LLC | 6/15/2024 |
| Equipment Agreement | Amerigas | 6801 Mitchell Parkway | | Arlington | TX | 76002 | Propane Supply Agreement and Equipment Lease | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Analysis Group, Inc. | 111 HUNTINGTON AVE 14TH FL | | BOSTON | MA | 02199 | Litigation Retention | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Analysis Group, Inc. | 111 HUNTINGTON AVE 14TH FL | | BOSTON | MA | 02199 | Litigation Retention | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | ANTONIO L. DIAZ | 3836 HEMLOCK FARMS | | LORDS VALLEY | PA | 18428 | CONSULTING SERVICES AS PROJECT MANAGER FOR CBI | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Architectural Design Guild | 2710 Sutton Blvd | | St. Louis | MO | 63143 | Store Planning Proposal | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Arkansas Analytics Group | 8296 W BROWN RD | | LOWELL | AR | 72745 | Consulting Agreement / Proprietary Information /Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axis Technology, Inc. | 2468 TAPO CANYON RD | | SIMI VALLEY | CA | 93063 | Professional Services Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Axis Technology, Inc. | 2468 TAPO CANYON RD | | SIMI VALLEY | CA | 93063 | Professional Services Agreement, Effective 8/27/2015 | Strategic Distribution, L.P. | 6/15/2024 |
| | ASGN Incorporated | 4400 Cox Road | Suite 110 | Glen Allen | VA | 23060 | | | |
| Service Agreement | ASP Staffing | 9995 Muirlands Blvd. | | Irvine | CA | 92618 | MASTER CLIENT AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Attentive Mobile, Inc. | 221 River Street | Suite 9047 | Hoboken | NJ | 07030 | Attentive Order Form | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / Warehousing Solutions Quotation 031011 | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / WAREHOUSING SOLUTIONS QUOTATION 051611 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / WAREHOUSING SOLUTIONS QUOTATION 051611 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axone PR, Inc. | 3432 Via Oporto #209 | | Newport Beach | CA | | Service Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 92665 | AZONE Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | Ares Lease Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | Waiver of Landlord's Lien | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | LEASE AGREEMENT, (SINGLE TENANT) | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | LEASE AGREEMENT (SINGLE TENANT) | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | BCM One | PO Box 22270 | | New York | NY | 10087-2270 | | Krazy Kat Sportswear LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 1/1/2022 | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 11/9/2015 | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 8/15/2006 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Bemo Corp | 16625 Redmond Way Ste 116 | | Redmond | WA | | Microsoft Enterprise Mobility + Security E5 | Caresimatic Brands, Inc. | 6/15/2024 |
| Service Agreement | BIG STRIKE LLC | 151 W. Rosecrans Ave. | | Gardena | CA | 90248 | Trademark License Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Billian Publishing Inc. | | | | | | STANDARD DATABASE LICENSE AGREEMENT (INTERNET VERSION) | Caresimatic, LLC | 6/15/2024 |
| License Agreement | Billian Publishing Inc. | 2100 RIVEREDGE PKWY STE 1200 | | ATLANTA | GA | 30328 | RENEWAL OF STANDARD DATABASE LICENSE AGREEMENT | Caresimatic, LLC | 6/15/2024 |
| Consulting Agreement | Boston Consulting Group | 200 Pier 4 Boulevard | 10 floor | Boston | MA | 02210 | Engagement Letter dated 5/25/2021 | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Boston Consulting Group | 200 Pier 4 Boulevard | 10 floor | Boston | MA | 02210 | Engagement Letter dated 8/10/2021 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Brand Model & Talent Agency, Inc. | 601 N Baker | | Santa Ana | CA | 92703 | | | |
| Service Agreement | Brand Triangle Company PTY LTD. | Ground Floor, 28 Fricker Road | Illovo, Johannesburg, | Gauteng | | 2196 | MEMORANDUM OF AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Building Cleaning Services, Inc. | 820 THOMPSON AVE | UNIT 26 | GLENDALE | CA | 91201 | Maintenance Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | ACQUISITION AGREEMENT LEASE OR PURCHASE | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Lease Agreement 69231-123 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 1036826 (019) and Addendum 662494 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 1092142 (020) | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 1111834 (021) | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement related to Acquisition Agreement SO135704 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement SO192721 .01 | Strategic Distribution, L.P. | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement S034811B.01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement S034811B.01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 1 - 69231 - 17 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 20 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 21 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 19 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 23 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 23 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease - S047B233.02 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease -S047686T.01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Not Reviewed | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Therefore Software License Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Capital Innovations, Inc | PO Box 49625 | | Los Angeles | CA | 90049 | STANDARD OFFICE LEASE | Careismatic Brands, LLC | 6/15/2024 |
| Lease | Capital Innovations, Inc. | PO Box 49625 | | Los Angeles | CA | 90049 | STANDARD OFFICE LEASE | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Capital One N.A. | PO Box 669354 | | Dallas | TX | 75266-9354 | Signature Page for Capital Innovations | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Capro Consulting LLC | 1400 Preston Rd, Suite 400 | | Plano | TX | 75093 | Agreement | Careismatic Brands, LLC | 6/15/2024 |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| License Agreement | Certilogo Inc | 275 BATTERY ST STE 2600 | | SAN FRANCISCO | CA | 94111 | MASTER SUBSCRIPTION AGREEMENT FOR SERVICES | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Correspondence dated 7/7/2008 memorializing agreement | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cheryl Smith | 8212 Hunnicut Rd | | Dallas | TX | 75228 | | | 6/15/2024 |
| Lease | Choices Home Health Store | 414 West Bakerview Rd | Suite 111 | Bellingham | WA | 98226 | Cherokee Shop Concept Agreement | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | CHRISTINA-INDUSTRIES, INC. | 10473 Artesia Blvd. | | Bellflower | CA | 90706 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | CIP global executive search AB | Nybrogatan 17 | | Stockholm | | 114 39 | EXECUTIVE SEARCH AGREEMENT | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cision US Inc. | 332 South Michigan Avenue | Suite 900 | Chicago | IL | 60604-4301 | Contract Summary | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Cision US Inc. | 332 South Michigan Avenue | Suite 900 | Chicago | IL | 60604-4301 | Proposal for Brunner dated 10/26/2011 | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | Master Lease Agreement | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | EQUIPMENT SCHEDULE #DCC-1704645 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | EQUIPMENT SCHEDULE #DCC-1687300 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | Addendum to Master Lease Schedule | Krazy Kat Sportswear LLC | 6/15/2024 |
| Service Agreement | Clarke Warehousing and Distribution | 1201 CREDITSTONE RD | | CONCORD | ON | L4K0C2 | Service Agreement | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | Clayco LLC | 1221 SOUTHSIDE DRIVE | | SALEM | VA | 24153 | Lease Addendum | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 082907 to Software License Agreement dated 8/29/2007 | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 032707 to Software License Agreement dated 3/27/2007 | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Master Services Agreement | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Software Licensing Agreement | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 121316 to Master Services Agreement | Med Couture, LLC | 6/15/2024 |
| Maintenance Agreement | Convergent | 2304 TARPLEY RD | SUITE 124 | CARROLLTON | TX | 75006 | CUSTOMER SUPPORT PROGRAM | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | Cordial Experience, Inc | 402 West Broadway, Suite 700 | | San Diego | CA | 92101 | Cordial Master Services Agreement | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cresa Dallas Project Management | 1 Cowboys Way Ste 350 | | Frisco | TX | 75034 | ProJect Management Services | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Business Intelligence Project Executed 12/16/2017 | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Business Intelligence Project Executed 12/2/2016 | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Walmart BI Project, Executed 5/6/2019 | Careismatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Dallas Police Department | PO Box 840185 | | Dallas | TX | 75284-0186 | Alarm Permit Registration | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/18/2016 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/12/2016 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/16/2017 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 6/9/2016 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/27/2015 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 5/16/20212 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/5/2016 | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Hosting Services Agreement | Careismatic Brands, LLC | 6/15/2024 |
| Software Agreement | Datasite LLC | 733 S. Marquette Ave | | Minneapolis | MN | 55402 | Statement of Work, Agreement # 2311220774 | Careismatic Brands, LLC | 6/15/2024 |
| Lease | DEBORAH SINGER | | | | | | LEASE CONTRACT AMENDMENT TO ADD OR CHANGE A ROOMMATE DURING LEASE TERM | Careismatic Brands, LLC | 6/15/2024 |
| Lease | DEBORAH SINGER | 4020 PRADO DEL TRIGO | | CALABASAS | CA | 91302 | | | 6/15/2024 |
| Repurchase Agreement | DEBORAH SINGER | 4020 Prado Del Trigo | | Calabasas | CA | 91302 | 91302 REPURCHASE AGREEMENT | CBI Parent, L.P. | 6/15/2024 |
| Separation Agreement | DEBORAH SINGER | 4020 Prado Del Trigo | | Calabasas | CA | 91302 | 91302 SEPARATION AGREEMENT | Careismatic Brands, LLC | 6/15/2024 |
| License Agreement | Debs Dancewear & Uniforms Inc. | 111 South 24th St West #207 | | Billings | MT | 59102 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Deloy S Lopez | 5-08 Bergen Ave | | Fairlawn | NJ | 07410 | | Careismatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Deligero, Wendeline | | | Port Au Prince | | HT6120 | CONSULTING AGREEMENT, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT | Careismatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Dell Financial Services LLC | #28 Rue Des Nimes Delma 31 PAYMENT PROCESSING CTR | | CAROL STREAM | IL | 60197-5292 | Equipment Lease # # 001-9011634-002 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Equipment Agreement | Dell Financial Services LLC | PAYMENT PROCESSING CTR | | CAROL STREAM | IL | 60197-5292 | Equipment Lease # # 001-9011634-002, Exhibit A | Krazy Kat Sportswear LLC | 6/15/2024 |
| Software Agreement | Dematic | 500 Plymouth Ave NE | | Grand Rapids | MI | 49505-6029 | Contract for Divert Zone Addition | Careismatic Brands, LLC | 6/15/2024 |
| Others | DEMATIC CORP. | 684125 NETWORK PL | | CHICAGO | IL | 60673-1684 | AMENDMENT 2 TO REMOTE SUPPORT PROGRAM AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20421833LA | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20421833LA | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20438363 | Med Couture, LLC | 6/15/2024 |
| Lease | DEX IMAGING, INC. | 5109 W. LEMON STREET | | TAMPA | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Lease | DEX IMAGING, INC. | 5109 W. LEMON STREET | | TAMPA | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Lease | DFW Trailers | PO Box 561212 | | Dallas | TX | 75336 | Rental/Lease Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | Carrollton, TX Colocation Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | Carrollton, TX Colocation License Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Dito | PO Box 888452 | | Los Angeles | CA | 90088-8452 | | Medalta | 6/15/2024 |
| License Agreement | DREAM WORKS ANIMATION LICENSING, LLC | 1000 Flower Street | | Glendale | CA | 91201 | Merchandise License Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | DropBox Inc | Dept LA 24086 | | Pasadena | CA | 91185-4086 | Payment Invoice | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Efficio | 579 5TH AVE STE 1200 | | NEW YORK | NY | 10017 | Engagement Letter dated 7/27/2023 | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Silvertis Adaptive LLC - New Deal dated 8/3/2022 | Silvertis Adaptive, LLC | |
| Service Agreement | EmberTribe | 1250 Revolution Mill Dr, Suite 7 | | Greensboro | NC | 27405 | | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | Flex-E Rent Contract | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | Schedule A dated 2/24/2022 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | FLEX-E-RENT CONTRACT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Evergreen Line | One Evertrust Plaza | | Jersey City | NJ | 07302 | Ocean Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Evergreen Line | One Evertrust Plaza | | Jersey City | NJ | 07302 | Ocean Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | fashionABLE | 1512 Compton Avenue | | Nashville | TN | 37212 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Salesforce Marketing Cloud Implementation | | |
| Service Agreement | FAST SLOW MOTION, LLC | 120 19TH ST NORTH | STE 2001 | BIRMINGHAM | AL | 35203 | Proposal dated 12/6/2021 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | First Choice Coffee Services | 18840 PARTHENIA ST | | NORTHRIDGE | CA | 91324 | Service Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | First Choice Coffee Services | 18840 PARTHENIA ST | | NORTHRIDGE | CA | 91324 | Service Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Ford Global Technologies, LLC | 330 Town Center Drive | | Dearborn | MI | 48126 | Trademark License Agreement #2012163 | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Ford Motor Company | 16800 Executive Plaza Drive | Room 5N214 | Dearborn | MI | 48126 | Trademark License Agreement #2012163 | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work dated 4/7/2021 | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Preliminary Functional Specification | | |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Document (PFSD) | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Preliminary Functional Specification Document | | |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | (PFSD) | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Professional Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | IDD Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Automatic Bagging Solution | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Professional Service Agreement - Automatic | | |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Bagging Solution | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Automatic Bagging Solution | Caresimatic Brands, LLC | 6/15/2024 |
| | | | | | | | Preliminary Functional Specification Document | | |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | (PFSD) | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | IDD Agreement Amendment | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Master MHS Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Master MHS Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Preliminary Functional Specification Document | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | ASSIGNMENT OF PURCHASE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Progress Payment Request and Authorization #1 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Fredrikson & Byron PA | 200 South Sixth St | Suite 4000 | Minneapolis | MN | 55402-1425 | Engagement Letter dated 5/12/2023 | Caresimatic Brands, LLC | 6/15/2024 |
| | | Freshlink Product Development LLC, | | | | | | | |
| Service Agreement | dba Prepara | 247 Centre Street-4th Floor | | New York | NY | 10013 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Frontier | PO Box 740407 | | Cincinnati | OH | 45274-0407 | 1GBPS Dedicated Fibre for Santa Monica | Caresimatic Brands, LLC | 6/15/2024 |
| | GDF SUEZ ENERGY RESOURCES | | | | | | SALES CONFIRMATION TEXAS FIXED PRICE | | |
| Purchase Agreement | NA, INC. | 1990 POST OAK BLVD | | HOUSTON | TX | 77056 | RTC | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Geneva Capital LLC | | | | | | MASTER EQUIPMENT LEASE AGREEMENT, | Medalta, LLC | 6/15/2024 |
| | | 522 Broadway Street, Suite 4 | | Alexandria | MN | 56308 | Agreement # 47454 | | |
| License Agreement | Genundewah Uniforms | 137 South Main St | | Canandaigua | NY | 14424 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | GeoState LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | GeoState LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | GeoState LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Separation Agreement | Girisha Chandraraj | 2238 Iroquois Road | | Wilmette | IL | 60091 | SEPARATION AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Employment Agreement | Girisha Chandraraj | 2238 Iroquois Road | | Wilmette | IL | 60091 | Correspondence dated 1/4/2024 re: separation | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | GLAS Americas LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07302 | Performance Guaranty | New Trojan Parent, Inc. | 6/15/2024 |
| | | | | | | | Administrative Agent and Collateral Agent Fee | | |
| Service Agreement | GLAS Americas LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07302 | Letter | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | GLAS USA LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07311 | Backup Service Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Globalux Inc., d/b/a Aquiesse | 331 Science Drive | | Moorpark | CA | 93021 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Granite Landscape & Maintenance | PO Box 2022 | | Grapevine | TX | 76051 | Maintenance Agreement Contract | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Halcyon Security LLC | 4700 Birchbend Lane | | Fort Worth | TX | 76137 | Equipment Finance Agreement No. 108117 | Caresimatic Brands, LLC | 6/15/2024 |
| | Hanchett Paper Company d/b/a | | | | | | | | |
| Purchase Agreement | Short Packaging Corp. | 4000 FERRY RD | | AURORA | IL | 60502 | Affiliation Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Hearst Holdings, Inc. | 300 West 57th Street, 15th Floor | | New York | NY | 10019 | Licensing Agreement Domestic | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Herbert Mines Associates Inc. | 290 Park Ave | | New York | NY | | 10017 | | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hivelocity Ventures Corp. | 8010 Woodland Center Blvd Ste 700 | | Tampa | FL | 33614 | Purchase - Invoice Number: INV-12985-350147 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hoopnotica Corp | 1800-A Abbot Kinney Blvd | | Venice | CA | 90291 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | Medalta, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | GUARANTEE OF LEASE | New Trojan Parent, Inc. | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | GUARANTEE OF LEASE | Medalta, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | GUARANTEE OF LEASE | New Trojan Parent, Inc. | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | Medalta, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | New Trojan Parent, Inc. | 6/15/2024 |
| Service Agreement | Hy-Tek Material Handling, LLC | 4600 Houston Road | | Florence | KY | 41042 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hy-Tek Material Handling, LLC | 4600 Houston Road | | Florence | KY | 41042 | Addendum A | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Service Agreement | Ice Affects Inc. | #102 1207 11 Ave SW | | Calgary | Alberta | T3C0M5 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | iLobby Corp. | | | | | | | | |
| Equipment Agreement | | 3605 Weston Rd. | | Toronto | ON | M9L 1V7 | Order Number: 27072020 - 02 | Caresimatic Brands, LLC | 6/15/2024 |
| | iLobby Corp. | | | | | | | | |
| Equipment Agreement | | 3605 Weston Rd. | | Toronto | ON | M9L 1V7 | END USER LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| | iLobby Corp. | | | | | | | | |
| Equipment Agreement | | 3605 Weston Rd. | | Toronto | ON | M9L 1V7 | FeverCheck Terms and Conditions | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | ImageNet Consulting | 13 NORTH BROADWAY AVE | | OKLAHOMA CITY | OK | 73102 | Smart Lease, Sales Order 295481 | Med Couture, LLC | 6/15/2024 |
| Lease | ImageNet Consulting LLC | 913 N Broadway Ave | | Oklahoma City | OK | | 73102 Smart Lease | Med Couture, LLC | 6/15/2024 |
| | Information & Computing Services, | | | | | | On-Line Services Agreement RF-Smart for | | |
| Service Agreement | Inc. | 3563 Philips Highway | Suite F-601 | Jacksonville | FL | 32207 | Netsuite | Medalta, LLC | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | PackageCare Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | Asset Swap / Unit Replace - Addendum | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | Package Care Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | Package Care Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | PackageCare Amendment: Term Extension | Strategic Distribution, L.P. | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Intertel NetSolutions | 885 Trademark Drive | | Reno | NV | 89521 | Dedicated Long Distance Service Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Purchase Agreement | Inter-Tel Technologies, Inc. | 1251 E. Dyer Rd. | Suite 100 | Santa Ana | CA | 92705 | PURCHASE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | Agreement for IntraLinks Services, BCN 192040 | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | Contract ID: 5089666, Quote ID: Q150998 | Caresimatic Brands, LLC | 6/15/2024 |
| On Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | On Demand Work Space Order, BCN 82132 | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Support Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract  C-2020846 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2023941 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2021270 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract  C-2020773 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract  C-2020863 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract-C-2020864 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract C - 2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2021270 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020864 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020773 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2023739 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020846 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020863 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2021270 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2023941 | Med Couture, LLC | 6/15/2024 |
| Lease | Irvine Company | 662773 - 100 - 524524 | PO BOX 846461 | LOS ANGELES | CA | 90084-6461 | 27 Hubble Lease, ID. 524524 | Medelita, LLC | 6/15/2024 |
| Software Agreement | iSoft Corporation | 10300 North Central Expressway | Suite 500 | Dallas | TX | 75231 | Master License Agreement dated 1/3/2003 | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | iSoft Corporation | 10300 North Central Expressway | Suite 500 | Dallas | TX | 75231 | Master License Agreement dated 1/3/2003 | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | J.C. Penney Corporation, Inc. | 6501 Legacy Drive | | Plano | TX | 75024-3698 | Trading Partner Agreement for Domestic Merchandise Purchase Contracts | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Jink of NWA LLC | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 8296 W BROWN RD | | LOWELL | AR | 72745 | Consulting Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S | | Woods Cross | UT | 84087 | Project Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S | | Woods Cross | UT | 84087 | Project Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S | | Woods Cross | UT | 84087 | Project Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | John David Price | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | | 2207A Pullman Lane | | Redondo Beach | CA | 90278 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | John Purcell | 472 Lakeshore Drive | | Berkeley Lake | GA | 30096 | Assignment of Inventions Agreement | | 6/15/2024 |
| Service Agreement | Jordan Wright | 921 N Gardner St #2 | | West Hollywood | CA | 90046 | | | 6/15/2024 |
| Service Agreement | Justine Ipac | 9577 Gondolier St | | Las Vegas | NV | 89178 | | | 6/15/2024 |
| Service Agreement | Kaiio, Inc. | 19200 Stevens Creek Blvd. | Suite 210 | Cupertino | CA | 95014 | Internet Marketing Services Agreement | AllHearts, LLC | 6/15/2024 |
| License Agreement | Katie Duke | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Contractor Agreement | Katie Duke | | | | | | Independent Contractor / Propriety Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | | | 6/15/2024 |
| Contractor Agreement | Katie Duke | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | Talent/Marketing Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Katten Muchin Rosenman LLP | 525 W Monroe St Ste 1900 | | Chicago | IL | 60661 | | Caresimatic Brands, LLC | 6/15/2024 |
| Separation Agreement | Kayla Singer | 25334 Prado de la Felicidad | | Calabasas | CA | 91302 | SEPARATION AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | First Amendment to Office Lease | AllHearts, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | Office Lease | AllHearts, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | Correspondence dated 6/16/2016 re: lease term dates | AllHearts, LLC | 6/15/2024 |
| Consulting Agreement | Kim Mullin | | | | | | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | | PO Box 724 | | Pineville | MO | 64856 | | | 6/15/2024 |
| Service Agreement | Klein & Wilson | 4770 VON KARMAN AVE | | NEWPORT BEACH | CA | 92660 | Attorney Client Hourly Fee Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | KPAX Consul LTD. | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Kyle Vromen | 4426 W. Collins Circle | | Rogers | AR | 72758 | PURCHASE AGREEMENT | Trojan Buyer, Inc. | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | 9400 CORBIN AVE #4100 | | NORTHRIDGE | CA | 91324 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease (COVID Rent Abatement) | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Lease Option Exercise Notice | Krazy Kat Sportswear LLC | 6/15/2024 |
| Consulting Agreement | Laurie Kaplan | 2784 N. Augusta Drive | | Wadsworth | IL | 60083 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | | 6/15/2024 |
| Consulting Agreement | Lavetta Willis | | | | | | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| | | 621 McCadden Place | | Los Angeles | CA | 90005 | | | 6/15/2024 |
| | Law Office of William J. Mall, III | 2201 E CHAPMAN AVE | | FULLERTON | CA | 92831 | Legal Fee Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Leaf Capital Funding LLC | 2005 Market St 14th Floor | | Philadelphia | PA | 19103 | LEASE AGREEMENT | Medelita, LLC | 6/15/2024 |
| Service Agreement | Liaison Technologies, Inc. | DEPT AT 952956 | | ATLANTA | GA | 31192-2956 | Schedule No. 2 Liaison Master Software and Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Lionfish Partners | 630 South Orange Drive | | Los Angeles | CA | 90036 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Livingston International Professional Services, Inc. | 20700 Civic Center Drive, Suite 500 | | Southfield | MI | 48076 | Consulting Services Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Livingston International Trade Services, Inc. | 150 Pierce Road | | Itasca | IL | 60143 | Service Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Livingston International, Inc. | PO BOX 920 | | BUFFALO | NY | 14213 | General Agency Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Lucia Boss | 10324 Larwin Ave | | Los Angeles | CA | 91311 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Luvy Jusseth Urbina Sandino | ANTIGUA TERMINAL DE BUSES DE TIPITAPA 1C | | BARRIO ORONTE CENTENO | | | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | | 6/15/2024 |
| Equipment Agreement | Malin Integrated Handling Solutions and Design | 15870 Midway Road | | Addison | TX | 75001 | Proposal | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Manufacturing Agreement | Managed Healthcare Associates, Inc. | 25-A Vreeland Road, Suite 200 | | Florham Park | NJ | 07932 | MHA Contract #SILV2021 | Silverts Adaptive, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Consulting Agreement | MARK SCHAUSTER | | | | | | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Marlin Business Bank | PO BOX 13604 | | HIGHLAND | IL | 62249 | | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Brands, LLC | 135 West 50th Street, 7th Floor | | PHILADELPHIA | PA | 19101-3604 | New Agreement Checklist | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Brands, LLC | 135 West 50th Street, 7th Floor | | New York | NY | 10020 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Characters B.V. | | | New York | NY | 10020 | SCHEDULE TO LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | | 500 South Buena Vista St. MC3301, | FG Wells Building, 2nd Floor | Burbank | CA | 91311 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | Marys Scrubs N Stuff | 3419 Route 40 | | Washington | PA | 15301 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Employment Agreement | McAdam, Paul | 328 VLG POINTE LN | | WILLIAMSVILLE | NY | 14221 | TRANSITION AND SEPARATION AGREEMENT FULL AND FINAL RELEASE OF CLAIMS | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Melona Reyes Pingkian | Imp. Helene St. Macary | Berth 1, Morne Brun Pension Ville | Prince | | | Independent Contractor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Employment Agreement | Michael Singer | 25334 PRADO DE LA FELICIDAD | | CALABASAS | CA | 91302 | Confidential Separation Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Michael Singer | 25334 PRADO DE LA FELICIDAD | | CALABASAS | CA | 91302 | CONSULTING AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Michaelman & Robinson LLP | 10880 Wilshire Blvd | 19th Floor | Los Angeles | CA | 90024 | Correspondence dated 9/12/2019 from Michaelman & Robinson LLP re: Communication Strategy for Michael Singer / Strategic Partners Legal Action | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Michelman & Robinson LLP | 10880 Wilshire Blvd | 19th Floor | Los Angeles | CA | 90024 | | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Microtrace, LLC | 790 Fletcher Drive, Suite 106 | | Elgin | IL | 60123-4755 | Consulting Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Microtrace, LLC | 790 Fletcher Drive, Suite 106 | | Elgin | IL | 60123-4755 | Memo re Consulting Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #3 to Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #3 to Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #1 to Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #2 to Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #2 to Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum to Agreement Letter for 2014 Services (Newtopia/Scrubs Wellness Challenge) | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum to Agreement Letter for 2014 Services (Scrubs Magazine / Spring 2015 / Four Additional Edit Pages) | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2013 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2014 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2015 Services | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Mitel Technologies, Inc. | 1146 North Alma School Road | | Mesa | AZ | 85201 | Purchase Order Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Moody's Investors Service | 7 WTC at 250 Greenwich Street | | New York | NY | 10007 | Rating Service Agreement | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | Moody's Investors Service | 7 WTC at 250 Greenwich Street | Suite 300 | New York | NY | 10007 | Fee Schedule | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | MorganFranklin Consulting, LLC | 7900 Tysons One Place | | McLean | VA | 22102 | Purchase Order Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Amendment: Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Second Amendment: Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Networks Electronic Corp. | 9750 DE SOTO AVE | | CHATSWORTH | CA | 91311-4409 | Addendum to Lease | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Networks Electronic Corp. | 9750 DE SOTO AVE | | CHATSWORTH | CA | 91311-4409 | First Amendment to Standard Industrial/Commercial Multi-Tenant Lease-Net | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | NFP | 401K ADVISORS INC | 120 VANTIS STE 400 | ALISO VIEJO | CA | 92656 | Engagement Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | COMPREHENSIVE FIXED PRICE MAINTENANCE | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190005 | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190076B | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190101 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1200043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1180041 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190005 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190024 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190076 | Caresimatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | COMPREHENSIVE FIXED PRICE MAINTENANCE | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | COMPREHENSIVE FIXED PRICE MAINTENANCE | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Norton Rose Fulbright US LLP | 2200 Ross Avenue, Suite 3600 | | Dallas | TX | 75201-7932 | Letter of Engagement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | NovaModule | 7901 Oakport St. Ste 4250 | | Oakland | CA | 94621 | | Medellia LLC | 6/15/2024 |
| Service Agreement | nuCourse Distribution Inc. | 7465 Lampson Ave | | Garden Grove | CA | 92748 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Oculus, Inc. | One S. Memorial Drive | Suite 1500 | St. Louis | MO | 63102 | Architectural Services Master Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | P. M. Thomas, Inc. | 200 Gorham Road | | South Portland | ME | 04106 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | Patent to Person LLC | 247 Bridges Lane | | North Andover | MA | | 1845 LICENSE AGREEMENT dated October 2019 | Silverts Adaptive, LLC | 6/15/2024 |
| Professional Services | Partners Group AG | Zugerstrasse 57 | | Baar | Zug, Switzerland | | 6341 | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group Investment Services AG | Zugerstrasse 57 | | Baar | Zug, Switzerland | | 6341 | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group US Investment Services LL | 1114 Avenue of the Americas, 37th Fl | | New York | NY | | 10036 | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group US Investment Services LL | 1114 Avenue of the Americas, 37th Fl | | New York | NY | | 10036 | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | PATIENT TO PERSON, LLC | 1 PARKER STREET | | LAWRENCE | MA | 01843 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | PATIENT TO PERSON, LLC | 1 PARKER STREET | | LAWRENCE | MA | 01843 | DESIGN SERVICE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | PATRICK J. LEE | 2401 CRESTON DRIVE | | LOS ANGELES | CA | 90068 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Equipment Agreement | PURE HEALTH SOLUTIONS, INC. (PHSI) | 950 CORPORATE WOODS PARKWAY | | VERNON HILLS | IL | 60061 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Quadient Postage (Neopost Texas) | Quadient Finance USA, Inc | PO Box 6813 | Carol Stream | IL | 60197-6813 | Quadient Leasing - Stamp Machine Lease # N19072410 (7.19.19 - 1.3.25) | Med Couture, LLC | 6/15/2024 |
| Service Agreement | R2E ASSOCIATES INCORPORATED | 1177 California St | | San Francisco | CA | 94108 | Letter of Intent - Space Planning & Procurement Services 2.1 Dallas Texas | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Radial, Inc | PO BOX 204113 | | DALLAS | TX | 75320-4114 | SUPPLIER ACCESS AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Rana Yousef Deeb Ali | 711 Cortland Street | | Bentonville | AR | 72712 | Rana Ali Mar 22 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Red Banks Consulting Inc. | 1079 Cragmont Ave | | Berkeley Lake | CA | 94708 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Remedies LLC | 14 Wheeler Pl | | West Nyack | NY | 10994 | Code Happy Store Vendor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Supplement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Supplement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | RODERICK KELLER | 201 S. GIBSON ROAD, #2213 | | HENDERSON | NV | 89012 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | ROPES & GRAY LLP | 800 Boylston St | | Boston | MA | 02199 | (blank) | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Amendment to SOW | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Statement of Work | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Repurchase Agreement | Ruth Singer | 25334 Prado de la Felicidad | | Calabasas | CA | 91302 | REPURCHASE AGREEMENT | CBI Parent, L.P. | 6/15/2024 |
| Service Agreement | S&P GLOBAL | 55 WATER STREET | | NEW YORK | NY | 10041 | S&P Global Ratings Engagement Letter | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Mulesoft - Contract ID 2711518 | Caresmatic Brands, LLC Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Mulesoft - Contract ID #5559 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Order 14165722 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-01413335 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0171886 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02137560 - ExactTarget - Corporate Edition | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02222285 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02877352 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03129322 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03267558 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03277186 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03293065 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03529176 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 3161362 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2450862 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2911101 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Order 14165722 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-01413335 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0171886 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02137560 - ExactTarget - Corporate Edition | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02222285 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-02877352 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03129322 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03267558 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03277186 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03293065 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-03529176 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2336471 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2199026 | Caresmatic Brands, LLC Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SAMANTHA NOYES DESIGN, LLC | 222 SE Adler Street | | Portland | OR | 97214 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | | 6/15/2024 |
| Professional Services | Sandler, Travis & Rosenberg, P.A. | 5835 Blue Lagoon Dr Ste 200 | | Miami | FL | 33126 | | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SANDRA ROBBINS | 6331 VALLEY VIEW ROAD | | ROGERS | AR | 72758 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SANDY CHO | 26061 Shadow Rock Lane | | Valencia | CA | | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Sanrio, Inc. | 2050 West 190th Street, Suite 205 | | Torrance | CA | 90504 | Merchandise License Agreement dated June 1, 2018 (34049 -- MLA2018025) and amended June 23, 2020 (AM 1) and Second Amendment dated 6/29/2021 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | | 46037 INSTALLATION AND SERVICE AGREEMENT, EFFECTIVE 2/18/2023 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | VALUE LEASE AGREEMENT | Medelita, LLC | 6/15/2024 |
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | CUSTOMER CARE MAINTENANCE AGREEMENT | Medelita, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | CUSTOMER CARE MAINTENANCE AGREEMENT | Medelita, LLC | 6/15/2024 |
| Consulting Agreement | SHAWN BESNIA | 610 LANTANA STREET | #63 | CAMARILLO | CA | 93010 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | Sherry D. Thomas | 4312 N Verde St | | Tacoma | WA | 98407 | | | 6/15/2024 |
| Consulting Agreement | SHUSOLTIONS, INC. | 100 COVENTRY WAY | | HIGHLAND | IL | 62249 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Repurchase Agreement | Singer Family Trust | 4020 Prado Del Trigo | | Calabasas | CA | | 91302 REPURCHASE AGREEMENT | CBI Parent, L.P. | 6/15/2024 |
| Professional Services | Skadden, Arps, Slate, Meagher & Flom LLP | PO Box 1764 | | White Plains | NY | 10602 | | Caresimatic Brands, LLC | 6/15/2024 |
| Professional Services | Skadden, Arps, Slate, Meagher & Flom LLP | PO Box 1764 | | White Plains | NY | 10602 | | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | SOFIA VERGARA ENTERPRISES, INC. | 2601 S. BAYSHORE DRIVE, SUITE 235 | | MIAMI | FL | 33133 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | SPS Commerce, Inc. | 333 S 7TH ST STE 1000 | | MINNEAPOLIS | MN | 55402 | EDI Testing Contract dated 8/27/2012 | Caresimatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | SUEZ ENERGY RESOURCES NA, INC. | 1990 POST OAK BLVD | | HOUSTON | TX | 77056 | SALES CONFIRMATION TEXAS FIXED PRICE RTC | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | SUPERREGADO | 8100 BARKER CYPRESS ROAD 1900 | SUITE #102 | CYPRESS | TX | 77433 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | TEALIUM INC. | DEPT CH 19762 | | PALATINE | IL | 60055-9762 | TEALIUM SERVICE ORDER | AllHearts, LLC | 6/15/2024 |
| Service Agreement | The Allen Company | 712 E. Main St. | | Blanchester | OH | 45107 | Code Happy Store Vendor Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30082 | Logility Platform Implementation for Caresimatic Brands | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30082 | | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30082 | | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30082 | | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30082 | | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | The Pokemon Company International, Inc. | 10400 NE 4th Street, | Suite 2800 | Bellevue | WA | 98004 | FIRST AMENDMENT TO THE, Exhibit A | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Vertical Collective, LLC | 116 South Catalina Avenue | | Redondo Beach | CA | | Vendor Agreement/Assignment of Inventions 90277 Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | THERMOFOOT LLC | 4510 Guildhall Court | | Westlake Village | CA | | 91361 Consulting Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | THERMOFOOT LLC | 4510 Guildhall Court | | Westlake Village | CA | | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS 91361 AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | Correspondence from Time Payment Corp dated 6/2/2016 | Caresimatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | TOMMASO CARDULLO | 512 West 4770 North | | Provo | UT | | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement 84604 | Caresimatic Brands, LLC | 6/15/2024 |
| License Agreement | TOMMYE MASK 2020 LLC | 10103 EMILY SPRINGS | | SAN ANTONIO | TX | 78255 | LICENSE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | SOW 02 TO PERFORM SERVICES FOR CARESIMATIC | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | SOW 01 TO PERFORM SERVICES FOR CARESIMATIC | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1680 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1680 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1680 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2542 - TLS 1030 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2543 - TLS 2134 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2544 - TLS 4001 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2545 - TLS 1014, EQUIPMENT LEASE NO. 2542 - TLS 1030, EQUIPMENT LEASE NO. 2546 - TLS 1033, EQUIPMENT LEASE NO. 2547 - TLS 1034, EQUIPMENT LEASE NO. 2548 - TLS 1078, EQUIPMENT LEASE NO. 2549 - TLS 2007, EQUIPMENT LEASE NO. 2543 - TLS 2134, EQUIPMENT LEASE NO. 2544 - TLS 4001 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2545 - TLS 1014 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2546 - TLS 1033 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2547 - TLS 1034 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2548 - TLS 1078 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2549 - TLS 2007 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2550 - TLS 1024, EQUIPMENT LEASE NO. 2553 - TLS 2131, EQUIPMENT LEASE NO. 2552 - TLS 2083, EQUIPMENT LEASE NO. 2551 - TLS 999895, EQUIPMENT LEASE NO. 2554 - TLS 2003, EQUIPMENT LEASE NO. 2555 - TLS 2104, EQUIPMENT LEASE NO. 2556 - TLS 56347, EQUIPMENT LEASE NO. 2557 - TLS 533498, EQUIPMENT LEASE NO. 2559 - TLS 2096, EQUIPMENT LEASE NO. 2560 - TLS 2103 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2554 - TLS 2003 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2555 - TLS 2104 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2556 - TLS 56347 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2557 - TLS 533498 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2559 - TLS 2096 | Caresimatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2560 - TLS 2103 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2561 - TLS 2132 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2562 - TLS 2138 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2563 - TLS 5263 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2564 - TLS 9144 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2565 - TLS 2005 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2566 - TLS 140808, EQUIPMENT LEASE NO. 2565 - TLS 2005, EQUIPMENT LEASE NO. 2567 - TLS 94078, EQUIPMENT LEASE NO. 2568 - TLS 994572 EQUIPMENT LEASE NO. 2566 - TLS 140808 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2567 - TLS 94078 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2568 - TLS 994572 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2572 - TLS 2228 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2573 - TLS 2058 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2574 - TLS 1058 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2575 - TLS 394 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2576 - TLS 32220 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2577 - TLS 2127 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2579 - TLS 1040 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2828 - TLS 94078 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | Trailer Lease | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | Trailer Lease | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2838 - TLS 1022 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2839 - TLS 2001 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2840 - TLS 142019 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2856 - TLS 2130 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2857 - TLS 2090 | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GREAND PRAIRIE | TX | 75050 | Master Service Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | TURKATECH, INC. | 5462 JILLSON STREET | | LOS ANGELES | CA | 90040 | PURCHASE AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | UBS SECURITIES LLC | 1285 AVENUE OF AMERICAS | | NEW YORK | NY | 10019 | STRATEGIC PARTNERS ACQUISITION CORP. AMENDMENT ENGAGEMENT LETTER | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | UBS SECURITIES LLC | 1285 AVENUE OF AMERICAS | | NEW YORK | NY | 10019 | STRATEGIC PARTNERS ACQUISITION CORP. AMENDMENT ENGAGEMENT LETTER | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-004 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-000 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-000 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-002 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-002 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-002 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-002 | Caresimatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-0602212-003 | Caresimatic Brands, Inc. | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | EQUIPMENT LEASE | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | EQUIPMENT LEASE | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | Equipment Value Supplement | Caresimatic Brands, LLC | 6/15/2024 |
| Service Agreement | US Securtiy Associates, Inc. | 800 W. AIRPORT FREEWAY | SUITE 230 | DALLAS | TX | 75236 | SECURITY SERVICE AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | US Securtiy Associates, Inc. | 800 W. AIRPORT FREEWAY | SUITE 230 | DALLAS | TX | 75236 | SECURITY SERVICE AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | SUBLEASE FOR A SINGLE SUBLESSEE | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | Commencement Date Memorandum | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | SUBLEASE FOR A SINGLE SUBLESSEE | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Service Agreement | Virtu | 4025 Spencer Street | Suite 305 | Torrance | CA | 90503 | Code Happy Store Online Channel Partner Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | SEO ORDER FORM | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | Master Services Agreement | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresimatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Waterlogic USA | PO BOX 829669 | | PHILADELPHIA | PA | 19182-9669 | RENTAL AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Waterlogic USA | PO BOX 829669 | | PHILADELPHIA | PA | 19182-9669 | RENTAL AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Lease | Waterlogic USA | PO BOX 829669 | | PHILADELPHIA | PA | 19182-9669 | RENTAL AGREEMENT | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingshire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Master Equipment Lease Agreement #32224 | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingshire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | SECURITY AGREEMENT dated as of July 28, 2023 | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingshire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Master Lease Agreement #32224 (Equipment Schedule #01) | Caresimatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingshire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Waiver of Landlord's Lien | Caresimatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 ASSIGNMENT OF PURCHASE AGREEMENT | Carelsmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 Progress Payment Request and Authorization #1 | Carelsmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 Patent Security Agreement | Carelsmatic Brands, LLC | 6/15/2024 |
| Lease | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 | Carelsmatic Brands, LLC | 6/15/2024 |
| Lease | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 Master Equipment Lease #32224 | Carelsmatic Brands, LLC | 6/15/2024 |
| Lease | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | | 92780 Equipment Schedule # 01 | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | WPROMOTE AGREEMENT | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | EXHIBIT A STATEMENT OF WORK STATEMENT OF WORK: SEO & CONTENT SERVICES | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | ORDER FORM | Medellia, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #4 | AllHearts, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #4 | AllHearts, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #5 | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #5 | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #6 | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #6 | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #3 & #1 | Medellia, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | AMENDMENT #1 TO ORDER FORMS | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | AMENDMENT #1 TO ORDER FORMS | Carelsmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND TEXT ORDER FORM #3 | Medellia, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND TEXT ORDER FORM #2 | Medellia, LLC | 6/15/2024 |
| Service Agreement | Zayo Group | PO Box 952136 | | Dallas | TX | 75395 | 1GBPS Dedicated Fiber for Colo | | 6/15/2024 |
| Service Agreement | Zellers Inc. | 6495 Tamken Road | | Mississauga | ON | L5T 2X7 | Master merchandise vendor agreement | Carelsmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Zerolog Communications, Inc. | 289 S. Robertson Blvd. | #441 | Beverly Hills | CA | 90211 | Master Services Agreement | Carelsmatic Brands, LLC | 6/15/2024 |

## <u>Exhibit G-1</u>

**Redline to Schedule of Rejected
Executory Contracts and Unexpired Leases Filed May 16, 2024**

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| License Agreement | 3M Company | 2501 Hudson Road | | St. Paul | MN | 55144 | Littman Stethoscope Wholesaler Distribution Agreement, 2011 | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | 3M Company | 2501 Hudson Road | | St. Paul | MN | 55144 | Health Care Littmann Stethoscope Wholesaler Distribution Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | 3M Company | 2501 Hudson Road | | St. Paul | MN | 55144 | Trademark License Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | 3M Global Channel Services, Inc. | 3M Center Building 224-1N-31 | | St.Paul | MN | 55144-1000 | Distributor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | 3M Global Channel Services, Inc. | 3M Center Building 224-1N-31 | | St.Paul | MN | 55144-1000 | Littmann Stethoscope Dealer Agreement | Allhearts, LLC | 6/15/2024 |
| Service Agreement | 3M Health Care | 2300 Lakeview Parkway | Suite 700 | Alpharetta | GA | 30004 | Wholesale Distribution Agreement | Strategic Partners Corp. | 6/15/2024 |
| Service Agreement | A.T. Kearney, Inc. | 7 Times Square, 35th Floor | | New York | NY | 10036 | Correspondence dated 5/19/2022 from A.T. Kearney, Inc. | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Addendum # 1, Equipment List , Schedule A | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Abtech Service Order - Hardware and Software Maintenance | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Abtech Technologies, Inc. | 2042 Corte Del Nogal, # D | | Carlsbad | CA | 92011-1438 | Abtech Service Order - Hardware and Software Maintenance | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Acceleration LLC | | | | | | Correspondence dated 9/12/2019 from Acceleration & Robinson LLP re: Communication Strategy for Michael Singer / Strategic Partners Legal Action | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | 1875 Century Park East | Suite 1200 | Los Angeles | CA | 90067 | | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Proposal and Sales Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Proposal and Sales Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Not Reviewed | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Commercial Schedule of Protection Proposal and Sales Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ADT Commercial | PO Box 49292 | | Wichita | KS | 67201 | Commercial Schedule of Protection Proposal and Sales Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | Caresmatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Intermediate, Inc. | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Midco, Inc. | 6/15/2024 |
| Purchase Agreement | Ahren, LLC, a Delaware limited liability company | 2175 NW RALEIGH ST STE 110 | | PORTLAND | OR | 97210 | ASSET PURCHASE AGREEMENT dated May 31, 2023 | CBI Parent, L.P. | 6/15/2024 |
| Consulting Agreement | ALICIA DE GREGORIO | 12411 OSBORNE ST. | UNIT 11 | PACOIMA | CA | 91331 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | American Diagnostic Corporation | 55 Commerce Drive | | Hauppauge | NY | 11788 | ADC & Strategic Partners, Inc. Distributor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | American Diagnostic Corporation | 55 Commerce Drive | | Hauppauge | NY | 11788 | Amendment ADC & Strategic Partners, Inc. Distributor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Group Customer Contract | American Red Cross | 13500 S point Blvd Ste L | | Charlotte | NC | | 28273 CONTRACT FOR GOODS AND SERVICES | Allhearts, LLC | 6/15/2024 |
| Equipment Agreement | Amerigas | 6901 Mitchell Parkway | | Arlington | TX | 76002 | Propane Supply Agreement and Equipment Lease | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Analysis Group, Inc. | 111 HUNTINGTON AVE 14TH FL | | BOSTON | MA | 02199 | Litigation Retention | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Analysis Group, Inc. | 111 HUNTINGTON AVE 14TH FL | | BOSTON | MA | 02199 | Litigation Retention | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | ANTONIO L. DIAZ | 3836 HEMLOCK FARMS | | LORDS VALLEY | PA | 18428 | CONSULTING SERVICES AS PROJECT MANAGER FOR CBI | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Architectural Design Guild | 2710 Sutton Blvd | | St. Louis | MO | 63143 | Store Planning Proposal | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Arkansas Analytics Group | 8266 W BROWN RD | | LOWELL | AR | 72745 | Consulting Agreement / Proprietary Information /Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Aris Technology, Inc. | 2468 TAPO CANYON RD | | SIMI VALLEY | CA | 93063 | Professional Services Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Aris Technology, Inc. | 2468 TAPO CANYON RD | | SIMI VALLEY | CA | 93063 | Professional Services Agreement, Effective 8/27/2015 | Strategic Distribution, L.P. | 6/15/2024 |
| | ASCN Incorporated | | | | | | | | |
| Service Agreement | | 4400 Cox Road | | Glen Allen | VA | | 23060 | | | 6/15/2024 |
| Service Agreement | ASP Staffing | 9995 Marineola Blvd. | | Irvine | CA | 92618 | MASTER CLIENT AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Attentive Mobile, Inc. | 221 River Street | Suite 9047 | Hoboken | NJ | 07030 | Attentive Order Form | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | Avista Capital Holdings, L.P. | 65 East 55th Street, 18th Floor | | New York | NY | 10022 | Monitoring Agreement, Exhibit B | Strategic Partners Corp. | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / Warehousing Services Quotation 031011 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / WAREHOUSING SOLUTIONS QUOTATION 051611 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | 3PL / WAREHOUSING SOLUTIONS QUOTATION 051611 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Axiom Corporation | 200 WESTCREEK BLVD | | BRAMPTON | ON | L6T5T7 | Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Azione PR, Inc. | 3432 Via Oporto #200 | | Newport Beach | CA | 92663 | AZIONE Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | Area Lease Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | Waiver of Landlord's Lien | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | LEASE AGREEMENT, (SINGLE TENANT) | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | BCIF 120 Logistics Park LLC | 1200 17th Street, Suite 2900 | | Denver | CO | 80202 | LEASE AGREEMENT (SINGLE TENANT) | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | BCM One | PO Box 22270 | | New York | NY | 10087-2270 | | Krazy Kat Sportswear LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 1/1/2022 | Caresmatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 11/9/2015 | Caresmatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Belanger Landscape | 2595 MILITARY AVENUE | | Los Angeles | CA | 90064 | LANDSCAPE MAINTENANCE CONTRACT, 8/1/2008 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Bemo Corp | 18625 Redmond Way Ste 116 | | Redmond | WA | 98052 | Microsoft Enterprise Mobility + Security E5 | Caresmatic Brands, Inc | 6/15/2024 |
| License Agreement | BIG STRIKE LLC | 151 W. Rosecrans Ave. | | Gardena | CA | 90248 | Trademark License Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Bilian Publishing Inc. | 2100 RIVEREDGE PKWY STE 1200 | | ATLANTA | GA | 30328 | STANDARD DATABASE LICENSE AGREEMENT (INTERNET VERSION) | Caresmatic, LLC | 6/15/2024 |
| License Agreement | Bilian Publishing Inc. | 2100 RIVEREDGE PKWY STE 1200 | | ATLANTA | GA | 30328 | RENEWAL OF STANDARD DATABASE LICENSE AGREEMENT | Caresmatic, LLC | 6/15/2024 |
| Consulting Agreement | Boston Consulting Group | 200 Pier 4 Boulevard | 10 floor | Boston | MA | 02210 | Engagement Letter dated 5/25/2021 | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Boston Consulting Group | 200 Pier 4 Boulevard | 10 floor | Boston | MA | 02210 | Engagement Letter dated 8/10/2021 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Brand Model & Talent Agency, Inc. | 601 N Baker | | Santa Ana | CA | 92703 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Brand Triangle Company PTY LTD. | Ground Floor, 28 Fricker Road | Illovo, Johannesburg, | Gauteng | | 2196 | MEMORANDUM OF AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Building Cleaning Services, Inc | 820 THOMPSON AVE | UNIT 26 | GLENDALE | CA | 91201 | Maintenance Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | ACQUISITION AGREEMENT LEASE OR PURCHASE | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Lease Agreement 69231-123 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 105830821 and Addendum 982484 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 105074 (-023) | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement 111183 (-021) | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement 50135704 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement 50192721.21 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement 50348118.01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Maintenance Agreement Related to Acquisition Agreement 50348118.01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 1 - 69231 - 17 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 20 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 21 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 19 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 22 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease, Agreement No. 69231 - 23 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease -50476833-02 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Equipment Lease -50476867-01 | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Not Reviewed | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Canon Business Solutions, Inc. | 4 Ohio Drive | | Lake Success | NY | 11042 | Therefore Software License Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Capital Innovations, Inc. | PO Box 49625 | | Los Angeles | CA | 90049 | STANDARD OFFICE LEASE | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Capital Innovations, Inc. | PO Box 49625 | | Los Angeles | CA | 90049 | STANDARD OFFICE LEASE | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Capital One N.A. | PO Box 660354 | | Dallas | TX | 75266-0354 | Signature Page for Capital Innovations | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Capro Consulting LLC | 1400 Preston Rd, Suite 400 | | Plano | TX | 75093 | Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| ~~Service Agreement~~ | ~~CarLuvrs, Inc.~~ | ~~1234 Brilmore Road~~ | ~~Suite 220~~ | ~~Houston~~ | ~~TX~~ | ~~77016~~ | ~~Master Services Agreement~~ | ~~Caresmatic Brands, LLC~~ | ~~6/15/2024~~ |
| ~~Service Agreement~~ | ~~CarLuvrs, Inc.~~ | ~~1234 Brilmore Road~~ | ~~Suite 220~~ | ~~Houston~~ | ~~TX~~ | ~~77016~~ | ~~Master Services Agreement~~ | ~~Caresmatic Brands, LLC~~ | ~~6/15/2024~~ |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medalla, LLC | 6/15/2024 |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medalla, LLC | 6/15/2024 |
| Lease | CBRE | 3601 Jamboree Road | Suite 100 | Newport Beach | CA | 92660-2940 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Certlogo Inc | 275 BATTERY ST STE 2600 | | SAN FRANCISCO | CA | 94111 | MASTER SUBSCRIPTION AGREEMENT FOR SERVICES | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Cherokee, Inc. | 6835 Valjean Avenue | | Van Nuys | CA | 91406 | Correspondence dated 7/7/2008 memorializing agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Cheryl Smith | 8212 Huntcrest Rd | | | TX | | 75228 | | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Choices Home Health Store | 414 West Bakerview Rd | Suite 111 | Bellingham | WA | 98226 | Cherokee Shop Concept Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | CHRISTINA INDUSTRIES, INC. | | | | | | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| | | 10473 Arkesia Blvd. | | Bellflower | CA | 90706 | | | |
| Service Agreement | CIP global executive search AB | Nybrogaten 17 | | Stockholm | | 114 39 | EXECUTIVE SEARCH AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cision US Inc. | 332 South Michigan Avenue | Suite 900 | Chicago | IL | 60604-4301 | Contract Summary | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cision US Inc. | 332 South Michigan Avenue | Suite 900 | Chicago | IL | 60604-4301 | Proposal for Brandwatch dated 10/26/2011 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | Master Lease Agreement | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | EQUIPMENT SCHEDULE #DCC-1704645 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | EQUIPMENT SCHEDULE #DCC-1687300 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | CIT Group Inc. | 155 Commerce Way | | Portsmouth | NH | 03801 | Addendum to Master Lease Schedule | Krazy Kat Sportswear LLC | 6/15/2024 |
| Service Agreement | Clarke Warehousing and Distribution | 1201 CRESTSTONE RD | | CONCORD | ON | L4K0C2 | Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Clayco LLC | 1221 SOUTHSIDE DRIVE | | SALEM | VA | 24153 | Lease Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 062907 to Software License Agreement dated 8/29/2007 | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 032707 to Software License Agreement dated 3/27/2007 | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Master Services Agreement | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Software Licensing Agreement | Med Couture, LLC | 6/15/2024 |
| License Agreement | COMPUTER GENERATED SOLUTIONS, INC. | 1675 Broadway | | New York | NY | 10019 | Addendum 121318 to Master Services Agreement | Med Couture, LLC | 6/15/2024 |
| Maintenance Agreement | Convergent | 2304 TARPLEY RD | SUITE 124 | CARROLLTON | TX | 75006 | CUSTOMER SUPPORT PROGRAM | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cordial Experience, Inc. | 402 West Broadway, Suite 700 | | San Diego | CA | 92101 | Cordial Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Cresa Dallas Project Management | 1 Cowboys Way Ste 300 | | Frisco | TX | 75034 | Project Management Services | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Business Intelligence Project Executed 12/16/2017 | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Business Intelligence Project Executed 12/22/2016 | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | CREST DATA SYSTEMS | 1ST FL DIVYA BHASKAR HOUSE | SGROAD MAKARBA | AHMEDABAD | | 380015 | Project Title: Walmart BI Project, Executed 5/6/2019 | Caresmatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Equipment Agreement | Dallas Police Department | PO Box 840185 | | Dallas | TX | 75284-0185 | Alarm Permit Registration | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/18/2016 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/12/2016 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/16/2017 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 6/9/2016 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/27/2015 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 5/16/2012 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Amendment to Hosting Services Agreement 2/5/2016 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Datapipe, Inc. | 10 Exchange Place | Suite 1200 | Jersey City | NJ | 07302 | Hosting Services Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Software Agreement | Dataxle LLC | 733 S. Marquette Ave | | Minneapolis | MN | 55402 | Statement of Work, Agreement # 2311220774 | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | DEBORAH SINGER | 4020 PRADO DEL TRIGO | | CALABASAS | CA | 91302 | LEASE CONTRACT AMENDMENT TO ADD OR CHANGE A ROOMMATE DURING LEASE TERM | Caremomatic Brands, LLC | 6/15/2024 |
| Repurchase Agreement | DEBORAH SINGER | 4020 Prado Del Trigo | | Calabasas | CA | 91302 | REPURCHASE AGREEMENT | CBI Parent, L.P. | 6/15/2024 |
| Separation Agreement | DEBORAH SINGER | 4020 Prado Del Trigo | | Calabasas | CA | 91302 | SEPARATION AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Debs Dancewear & Uniforms Inc. | 111 South 24th St West #207 | | Billings | MT | 59102 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Dekalb County | 5668 Memorial Drive | | Fairview | NJ | 07410 | | | 6/15/2024 |
| Consulting Agreement | Deligero, Wendoline | #28 Rue Des Nimes Delma 31 | | Port Au Prince | | HT0120 | CONSULTING AGREEMENT, PROPRIETARY INFORMATION, ASSIGNMENT OF INVENTIONS AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Dell Financial Services LLC | PAYMENT PROCESSING CTR | | CAROL STREAM | IL | 60197-5292 | Equipment Lease # # 001-9011634-002 | Krazy Kat Sportswear LLC | 6/15/2024 |
| Equipment Agreement | Dell Financial Services LLC | PAYMENT PROCESSING CTR | | CAROL STREAM | IL | 60197-5292 | Equipment Lease # # 001-9011634-002, Exhibit A | Krazy Kat Sportswear LLC | 6/15/2024 |
| Software Agreement | Dematic | 500 Plymouth Ave NE | | Grand Rapids | MI | 49505-6029 | Contract for Divert-Zone Addition | Caremomatic Brands, LLC | 6/15/2024 |
| Others | DEMATIC CORP. | 684125 NETWORK PL | | CHICAGO | IL | 60675-1684 | AMENDMENT 2 TO REMOTE SUPPORT PROGRAM AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Sales Order/Service Agreement | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20421833LA | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20421833LA | Med Couture, LLC | 6/15/2024 |
| Lease | Dex Imaging | 5109 West Lemon ST | | Tampa | FL | 33609 | Lease Agreement 20429833b | Med Couture, LLC | 6/15/2024 |
| Lease | DEX IMAGING, INC. | 5109 W. LEMON STREET | | TAMPA | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Lease | DEX IMAGING, INC. | 5109 W. LEMON STREET | | TAMPA | FL | 33609 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Lease | DFW Trailers | PO Box 561212 | | Dallas | TX | 75336 | RentalLease Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | Carrolton, TX Colocation License Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Digital Realty Trust, L.P. | 2323 Bryan Street, Suite 1800 | | Dallas | TX | 75201 | Carrolton, TX Colocation License Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Dito | PO Box 888452 | | Los Angeles | CA | 90088-8452 | | Medallia | 6/15/2024 |
| License Agreement | DREAM WORKS ANIMATION LICENSING, LLC | 1000 Flower Street | | Glendale | CA | 91201 | Merchandise License Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | DropBox Inc | Dept LA 24086 | | Pasadena | CA | 91185-4086 | Payment Invoice | Caremomatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Edgewell Personal Care | 579 5TH AVE STE 1200 | | NEW YORK | NY | 10017 | Engagement Letter dated 7/27/2023 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | EmberTribe | 1250 Revolution Mill Dr, Suite 7 | | Greensboro | NC | 27405 | Silverts Adaptive LLC - New Deal dated 8/3/2022 | Silverts Adaptive, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | Flex-E-Rent Contract | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | Schedule A dated 2/24/2022 | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | Enterprise Truck Rental | 4201 North State Highway 161 | | Irving | TX | 75038 | FLEX-E-RENT CONTRACT | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Evergreen Line | One Evertrust Plaza | | Jersey City | NJ | 07302 | Ocean Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Evergreen Line | One Evertrust Plaza | | Jersey City | NJ | 07302 | Ocean Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | fashionABLE | 1512 Compton Avenue | | Nashville | TN | 37212 | Code Happy Store Vendor Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | FAST SLOW MOTION, LLC | 120 19TH ST NORTH | STE 200 | BIRMINGHAM | AL | 35203 | Salesforce Marketing Cloud Implementation Proposal dated 12/6/2021 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | First Choice Coffee Services | 18840 PARTHENIA ST | | NORTHRIDGE | CA | 91324 | Service Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | First Choice Coffee Services | 18840 PARTHENIA ST | | NORTHRIDGE | CA | 91324 | Service Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Ford Global Technologies, LLC | 330 Town Center Dr. | | Dearborn | MI | 48126 | Trademark License Agreement #2012163 | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Ford Motor Company | 16800 Executive Plaza Drive | Room 5N214 | Dearborn | MI | 48126 | Trademark License Agreement #2012163 | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work dated 4/7/2021 | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Preliminary Functional Specification | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Document (PFSD) | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Preliminary Functional Specification Document (PFSD) | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Professional Services Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | IDD Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Automatic Bagging Solution | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Professional Service Agreement - Automatic Bagging Solution | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Automatic Bagging Solution | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Preliminary Functional Specification Document (PFSD) | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | IDD Agreement Amendment | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Master MHS Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Master MHS Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Preliminary Functional Specification Document | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Statement of Work | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | ASSIGNMENT OF PURCHASE AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Fortna Inc. | 1349 W. Peachtree St. NW | Suite 1300 | Atlanta | GA | 30309 | Progress Payment Request and Authorization #1 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Fredrikson & Byron PA | 200 South Sixth St | Suite 4000 | Minneapolis | MN | 55402-1425 | Engagement Letter dated 5/12/2023 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Freshlink Product Development LLC, dba Prepara | 247 Centre Street-4th Floor | | New York | NY | 10013 | Code Happy Store Vendor Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | Frontier | PO Box 740407 | | Cincinnati | OH | 45274-0407 | Lease agreement, Account Number 915 | Caremomatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | GDF SUEZ ENERGY RESOURCES NA, INC. | 1990 POST OAK BLVD | | HOUSTON | TX | 77056 | SALES CONFIRMATION TEXAS FIXED PRICE RTC | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Geneva Capital LLC | 522 Broadway Street, Suite 4 | | Alexandria | MN | 56308 | MASTER EQUIPMENT LEASE AGREEMENT, Agreement # 47454 | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Genuundewah Uniforms | 137 South Main St | | Canandaigua | NY | 14424 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | GeoSlate LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | GeoSlate LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | GeoSlate LLC | 5100 Eldorado Parkway | Unit 102-385 | McKinney | TX | 75070 | Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Separation Agreement | Girisha Chandraraj | 2238 Iroquois Road | | Wilmette | IL | 60091 | SEPARATION AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| Employment Agreement | Girisha Chandraraj | 2238 Iroquois Road | | Wilmette | IL | 60091 | Correspondence dated 1/4/2024 re: separation | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | GLAS Americas LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07302 | Performance Guaranty | New Trojan Parent, Inc. | 6/15/2024 |
| Service Agreement | GLAS Americas LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07302 | Administrative Agent and Collateral Agent Fee Letter | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | GLAS USA LLC | 3 Second St | Suite 206 | Jersey City | NJ | 07302 | Backup Service Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Globalux Inc., d/b/a Aquaease | 331 Science Drive | | Moorpark | CA | 93021 | Code Happy Store Vendor Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | Granite Landscape & Maintenance | PO Box 2022 | | Grapevine | TX | 76051 | Landscape Maintenance Contract | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | GXS, Inc. | PO BOX 640731 | | PITTSBURG | PA | 15264-0371 | GXS Active Catalogue Services Schedule | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Halcyon Security LLC | 4700 Birchbend Lane | | Fort Worth | TX | 76137 | Equipment Finance Agreement No. 108117 | Caremomatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Hanchett Paper Company d/b/a Shorr Packaging Corp. | 4000 FERRY RD | | AURORA | IL | 60502 | Affiliation Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| License Agreement | Hearst Holdings, Inc. | 300 West 57th Street, 15th Floor | | New York | NY | 10019 | Licensing Agreement Domestic | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | Herbert Mines Associates Inc. | 250 Park Ave | | New York | NY | 10017 | | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hiverlocity Ventures Corp. | 8010 Woodland Center Blvd Ste 700 | | Tampa | FL | 33614 | Purchase - Invoice Number: INV-12985-350147 | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hoopster's Corp. | 1800-A Abbot Kinney Blvd | | Venice | CA | 90291 | Code Happy Store Vendor Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | Medelita, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | GUARANTEE OF LEASE | New Trojan Parent, Inc. | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | Medelita, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | GUARANTEE OF LEASE | New Trojan Parent, Inc. | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | Medelita, LLC | 6/15/2024 |
| Lease | HUBBLE PARKER LLC | 550 Newport Center Drive | | Newport Beach | CA | 92660 | Lease | New Trojan Parent, Inc. | 6/15/2024 |
| Service Agreement | Hy-Tek Material Handling, LLC | 4600 Houston Road | | Florence | KY | 41042 | Master Services Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Service Agreement | Hy-Tek Material Handling, LLC | 4600 Houston Road | | Florence | KY | 41042 | Addendum A | Caremomatic Brands, LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G Direct Real Estate 32H LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Service Agreement | Ice Affects Inc | #102 1207 11 Ave SW | | Calgary | Alberta | T3C0M5 | Code Happy Store Vendor Agreement | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | iLobby Corp. | 3600 Weston Rd. | | Toronto | ON | M9L 1V7 | Order Number: 27072020 - 02 | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | iLobby Corp. | 3600 Weston Rd. | | Toronto | ON | M9L 1V7 | END USER LICENSE AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | iLobby Corp. | 3600 Weston Rd. | | Toronto | ON | M9L 1V7 | END USER LICENSE AGREEMENT | Caremomatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | ImageNet Consulting | 13 NORTH BROADWAY AVE | | OKLAHOMA CITY | OK | 73102 | FeverCheck Terms and Conditions | Med Couture, LLC | 6/15/2024 |
| Maintenance Agreement | ImageNet Consulting LLC | 613 N Broadway Ave | | Oklahoma City | OK | 73102 | Smart Lease, Sales Order 205461 | Med Couture, LLC | 6/15/2024 |
| Service Agreement | Information & Computing Services, Inc. | 3563 Philips Highway | Suite F-601 | Jacksonville | FL | 32207 | On-Line Services Agreement RF-Smart for Netsuite | Medelita, LLC | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | PackageCare Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | PackageCare Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | Package Care Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Ingersoll-Rand Company | 800-B Beaty Street | | Davidson | NC | 28036 | PackageCare Amendment: Term Extension | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | Intertel NetSolutions | 885 Trademark Drive | | Reno | NV | 89521 | Dedicated Long Distance Service Agreement | Strategic Distribution, L.P. | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Purchase Agreement | Inter-Tel Technologies, Inc. | 1251 E. Dyer Rd. | Suite 100 | Santa Ana | CA | 92705 | PURCHASE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | Agreement for IntraLinks Services, BCN 192040 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | Contract ID: 5089666, Quote ID: Q150998 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Intralinks, Inc. | 150 East 42nd Street | | New York | NY | 10017 | On Demand Work Space Order, BCN 82132 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Support Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract  C-2020846 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2023941 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement  C-2021270 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract C-2020773 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract C-2020663 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract C-2020864 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Premise Equipment Agreement, Contract C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Ipro Anywhere Services and Support Agreement C-2020099 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020864 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020773 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020739 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020846 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2020663 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2021270 | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Ipro Media Inc. | 6652 Pinecrest Drive | Suite 400 | Plano | TX | 75024 | Equipment Agreement C-2023941 | Med Couture, LLC | 6/15/2024 |
| Lease | Irvine Company | 662773 - 100 - 524524 | PO BOX 846461 | LOS ANGELES | CA | 90084-6461 | 27 Hubble Lease, ID 524524 | Medelita, LLC | 6/15/2024 |
| Software Agreement | iSoft Corporation | 10300 North Central Expressway | Suite 500 | Dallas | TX | 75231 | Master License Agreement dated 1/3/2003 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | iSoft Corporation | 10300 North Central Expressway | Suite 500 | Dallas | TX | 75231 | Master License Agreement dated 1/3/2003 | Caresmatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | J.C. Penney Corporation, Inc. | 6501 Legacy Drive | | Plana | TX | 75024-3698 | Trading Partner Agreement for Domestic Merchandise Purchase Contracts | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Jink of NWA LLC | 6296 W BROWN RD | | LOWELL | AR | 72745 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S. | | Woods Cross | UT | 84087 | Project Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S. | | Woods Cross | UT | 84087 | Project Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jmills Entertainment | 1589 W. 2225 S. | | Woods Cross | UT | 84087 | Project Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | John David Price | 2207A Pullman Lane | | Redondo Beach | CA | 90278 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | John Purcell | 472 Lakeshore Drive | | Berkeley Lake | GA | 30096 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Jordan Wright | 921 N Gardner St #2 | | West Hollywood | CA | 90046 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Justin Ijac | 9900 E. Capri Ct. | | Fountain Hills | AZ | 85268 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Kalo, Inc. | 19200 Stevens Creek Blvd. | Suite 210 | Cupertino | CA | 95014 | Internet Marketing Services Agreement | AllHearts, LLC | 6/15/2024 |
| License Agreement | Kate Duke | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Contractor Agreement | Kate Duke | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | Independent Contractor / Propriety Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Contractor Agreement | Kate Duke | 204 E. 84th Street, Apt. 1E | | New York | NY | 10028 | Talent/Marketing Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Katten Muchin Rosenman LLP | 525 W Monroe St Ste 1900 | | Chicago | IL | 60661 | | Caresmatic Brands, LLC | 6/15/2024 |
| Separation Agreement | Kayla Singer | 25334 Prado de la Felicidad | | Calabasas | CA | 91302 | SEPARATION AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | First Amendment to Office Lease | AllHearts, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | Office Lease | AllHearts, LLC | 6/15/2024 |
| Lease | Kilroy Realty, L.P. | 12200 West Olympic Blvd | Suite 200 | Los Angeles | CA | 90064 | Correspondence dated 8/19/2016 re: lease term dates | AllHearts, LLC | 6/15/2024 |
| Consulting Agreement | Kim Mullin | PO Box 724 | | Pineville | MO | 64856 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Kiwi & Wallis | 11245 West Bernardo Court | | San Diego | CA | 92127 | Photography Services Agreement dated 4/11/2018 | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | KPAX Consul LTD. | 4426 W. Collins Circle | | Rogers | AR | 72758 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Kyle Warner | 9400 CORBIN AVE #4100 | | NORTHRIDGE | CA | 91324 | PURCHASE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Agreement of Lease | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | First Amendment to Lease (COVID Rent Abatement) | Krazy Kat Sportswear LLC | 6/15/2024 |
| Lease | I&G DIRECT REAL ESTATE 32H, LP | One Meadowlands Plaza | Suite 804 | East Rutherford | NJ | 07073 | Lease Option Exercise Notice | Krazy Kat Sportswear LLC | 6/15/2024 |
| Consulting Agreement | Laurie Kaplan | 2784 N. Augusta Drive | | Wadsworth | IL | 60083 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Lavetta Willis | 621 McCadden Place | | Los Angeles | CA | 90005 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Law Office of William J. Matt, III | 2201 E CHAPMAN AVE | | FULLERTON | CA | 92831 | Legal Fee Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Leaf Capital Funding LLC | 2005 Market St 14th Floor | | Philadelphia | PA | 19103 | LEASE AGREEMENT | Med Couture, LLC | 6/15/2024 |
| Service Agreement | Liaison Technologies, Inc. | DEPT AT 952956 | | ATLANTA | GA | 31192-2956 | Schedule No. 2 Liaison Master Software and Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Lionfish Partners | 630 South Orange Drive | | Los Angeles | CA | 90036 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Livingston International Professional Services, Inc. | 20700 Civic Center Drive, Suite 500 | | Southfield | MI | 48076 | Consulting Services Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Livingston International Trade Services, Inc. | 150 Pierce Road | | Itasca | IL | 60143 | Service Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Livingston International, Inc. | PO BOX 920 | | BUFFALO | NY | 14213 | General Agency Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Lucia Boss | 10324 Larwin Ave | | Los Angeles | CA | 91311 | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Luvy Juseeth Urbina Sandino | | | | | | Consulting Agreement / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| | | ANTIGUA TERMINAL DE BUSES DE TIPITAPA 1C | | BARRIO ORIONTE CENTENO | | | | | |
| Equipment Agreement | Malin Integrated Handling Solutions and Design | 15870 Midway Road | | Addison | TX | 75001 | Proposal | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Med Couture, LLC | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Exclusive Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | Malin, A Raymond Company | 15870 Midway Rd. | | Addison | TX | 75001 | Demo-Rental Proposal Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | Managed Healthcare Associates, Inc. | 25-A Vreeland Road, Suite 200 | | Florham Park | NJ | 07932 | MHA Contract #SKV2021 | Silverts Adaptive, LLC | 6/15/2024 |
| Consulting Agreement | MARK SCHAUSTER | 100 COVENTRY WAY | | HIGHLAND | IL | 62249 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Martin Business Bank | PO BOX 13604 | | PHILADELPHIA | PA | 19101-3604 | New Agreement Checklist | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Brands, LLC | 135 West 50th Street, 7th Floor | | New York | NY | 10020 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Brands, LLC | 135 West 50th Street, 7th Floor | | New York | NY | 10020 | SCHEDULE TO LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | Marvel Characters B.V. | 500 South Buena Vista St. MC3301, | FG Wells Building, 2nd Floor | Burbank | CA | 91511 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Marys Scrubs N Stuff | 3419 Route 40 | | Washington | PA | 15301 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| | | | | | | | TRANSITION AND SEPARATION AGREEMENT | | |
| Employment Agreement | McAdam, Paul | 328 VLG POINTE LN | | WILLIAMSVILLE | NY | 14221 | FULL AND FINAL RELEASE OF CLAIMS | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Melena Reyes Pingican | | | | | | Contractor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| | | Insp. Helene St. Macary | Berth 1, Morne Brun Pension Ville | Prince | | | | | |
| Employment Agreement | Michael Singer | 25334 PRADO DE LA FELICIDAD | | CALABASAS | CA | 91302 | Confidential Separation Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Michael Singer | 25334 PRADO DE LA FELICIDAD | | CALABASAS | CA | 91302 | CONSULTING AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Michaelman & Robinson LLP | 10880 Wilshire Blvd | 19th Floor | Los Angeles | CA | 90024 | Correspondence dated 9/12/2019 from Michaelman & Robinson LLP re: Communication Strategy for Michael Singer / Strategic Partners Legal Action | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Michelman & Robinson LLP | 10880 Wilshire Blvd | 19th Floor | Los Angeles | CA | 90024 | | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Microtrace, LLC | 790 Fletcher Drive, Suite 106 | | Elgin | IL | 60123-4755 | Consulting Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Microtrace, LLC | 790 Fletcher Drive, Suite 106 | | Elgin | IL | 60123-4755 | Memo re Consulting Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #3 to Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #5 to Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #2 to Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum #4 to Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2013 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum to Agreement Letter for 2014 Services (Newtopia/Scrubs Wellness Challenge) | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Addendum to Agreement Letter for 2014 Services (Scrubs Magazine / Spring 2015 / Additional Edit Pages) | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2014 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Mind Over Media | 702 16th Street | | Santa Monica | CA | 90402 | Agreement Letter for 2015 Services | Caresmatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | Mitel Technologies, Inc. | 1146 North Alma School Road | | Mesa | AZ | 85201 | Purchase Order Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Moody's Investors Service | 7 WTC at 250 Greenwich Street | | New York | NY | 10007 | Rating Service Agreement | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | Moody's Investors Service | 7 WTC at 250 Greenwich Street | | New York | NY | 10007 | Fee Schedule | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | Morgan/Franklin Consulting, LLC | 7900 Tysons One Place | Suite 300 | McLean | VA | 22102 | Purchase Order Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Amendment / Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | Nancy Sullivan | 487 E. Providencia Ave | Unit A | Burbank | CA | 91501 | Second Amendment: Independent Contractor / Proprietary Information / Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Networks Electronic Corp. | 9750 DE SOTO AVE | | CHATSWORTH | CA | 91311-4409 | Addendum to Lease | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Networks Electronic Corp. | 9750 DE SOTO AVE | | CHATSWORTH | CA | 91311-4409 | First Amendment to Industrial Lease | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | NFP | 4516 ADVISORS INC | 120 VANTIS STE 400 | ALISO VIEJO | CA | 92656 | Engagement Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190101 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190101 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190101 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190101 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malin & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190024 | Strategic Distribution, L.P. | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Maintenance Agreement | NJ Malm & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190043 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malm & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | Comprehensive Fixed Price Maintenance Agreement Number: 1190076 | Strategic Distribution, L.P. | 6/15/2024 |
| Maintenance Agreement | NJ Malm & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | COMPREHENSIVE FIXED PRICE MAINTENANCE | Caresmatic Brands, LLC | 6/15/2024 |
| Maintenance Agreement | NJ Malm & Associates LLC | 15870 Midway Road | | Addison | TX | 75001 | COMPREHENSIVE FIXED PRICE MAINTENANCE | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Norton Rose Fulbright US LLP | 2200 Ross Avenue, Suite 3600 | | Dallas | TX | 75201-7932 | Letter of Engagement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | NoveMedux | 7901 4th Street N Ste 4250 | | Oakland | CA | 94621 | | Medelita LLC | 6/15/2024 |
| Service Agreement | nuCourse Distribution Inc | 7460 Lampson Ave | | Garden Grove | CA | 92748 | Code Happy Store Vendor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Oculus, Inc. | One S. Memorial Drive | Suite 1500 | St. Louis | MO | 63102 | Architectural Services Agreement | Caresmatic Brands, L.P. | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | One Edge Inc. | 1345 Avenue of the Americas | 2nd Floor | New York | NY | 10105 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | P. M. Thomas, Inc. | 200 Gorham Road | | South Portland | ME | 04106 | E-Commerce Agreement | Strategic Distribution, L.P. | 6/15/2024 |
| License Agreement | Patient lo Person LLC | 251 Pleasant Street 347 Bridges Lane | Suite 333 | Northampton North Andover | MA | 01060 01845 | LICENSE AGREEMENT dated October 2019 | Silverts Adaptive, LLC | 6/15/2024 |
| Professional Services | Partners Group Investment Services AG | Zugerstrasse 57 | | Baar | Zug, Switzerland | 6341 | | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group Investment Services AG | Zugerstrasse 57 | | Baar | Zug, Switzerland | 6341 | | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group US Investment Services LLC | 1114 Avenue of the Americas, 37th Fl | | New York | NY | 10036 | | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Partners Group US Investment Services LLC | 1114 Avenue of the Americas, 37th Fl | | New York | NY | 10036 | | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | PATENT TO PERSON, LLC | 1 PARKER STREET | | LAWRENCE | MA | 01843 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | PATENT TO PERSON, LLC | 1 PARKER STREET | | LAWRENCE | MA | 01843 | DESIGN SERVICE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | PATRICK J. LEE | 2401 CRESTON DRIVE | | LOS ANGELES | CA | 90068 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | PURE HEALTH SOLUTIONS, INC. (PHSI) | 950 CORPORATE WOODS PARKWAY | | VERNON HILLS | IL | 60061 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Quadient Postage (Neopost Texas) | Quadient Finance USA, Inc | PO Box 6813 | Carol Stream | IL | 60197-6813 | Quadient Leasing - Stamp Machine Lease # N190724TG (7.19.19 - 1.3.25) | Med Couture, LLC | 8/15/2024 |
| | CELIS COMPANIES PATE & PARENTO | NEW HIKEN FR | | | | | | | |
| Service Agreement | Radial, Inc | PO BOX 204113 | | DALLAS | TX | 75320-4114 | SUPPLIER ACCESS AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | Rare Yousef Deeb Ali | 201 Courtland Street | | Bentonville | AR | 72712 | Rana Ali Mar 22 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Red Banks Consulting Inc | 1079 Cragmont Ave | | Berkeley Lake | CA | 94708 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Remedies LLC | 14 Wheeler Pl | | West Nyack | NY | 10994 | Code Happy Store Vendor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Equipment | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Equipment | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | REVOLUTION OFFICE | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Value Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | RODERICK KELLER | 201 S. GIBSON ROAD, #2213 | | HENDERSON | NV | 89012 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | ROPES & GRAY LLP | 800 Boylston St | | Boston | MA | 02199 | (blank) | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Amendment to SOW | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Statement of Work | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | R-Pac International LLC | 132 West 36th Street | | New York | NY | 10018 | Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Repurchase Agreement | Ruth Singer | 25334 Prado de la Felcidad | | Calabasas | CA | 91302 | REPURCHASE AGREEMENT | CB Parent, L.P. | 6/15/2024 |
| Service Agreement | S&P GLOBAL | 55 WATER STREET | | NEW YORK | NY | 10041 | S&P Global Ratings Engagement Letter | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Mulesoft - Contract ID 2711518 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Mulesoft - Contract ID #5559 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Order 14165722 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0143335 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0171886 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0213760 - ExactTarget - Corporate Edition | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0222285 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0267352 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0312922 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0267558 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0327108 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0283065 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote Number: Q-0352176 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 3161362 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2450862 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2611101 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # 14165722 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0143335 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0171886 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0213760 - ExactTarget - Corporate Edition | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0222285 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0267352 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0312922 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0267558 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0327108 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0283065 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Order Form for Strategic Partners, Inc., Quote # Q-0352176 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | salesforce.com, Inc | 415 MISSION STREET, 3RD FLOOR | | San Francisco | CA | 94105 | Contract no. 2911011 2106826 | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SAMANTHA NOYES DESIGN, LLC | 222 SE Alder Street | | Portland | OR | 97214 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Sandler, Travis & Rosenberg, P.A. | 5835 Blue Lagoon Dr Ste 200 | | Miami | FL | 33126 | | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SANDRA ROGERS | 6331 VALLEY VIEW ROAD | | ROGERS | AR | 72758 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SANDY CHO | 26061 Shadow Rock Lane | | Valencia | CA | 91381 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| | | | | | | | Independent License Agreement dated June 1, 2018 (34049 – MLA2018025) and amended June 23, 2020 (AM 1) and Second Amendment dated | | |
| License Agreement | Sanrio, Inc. | 2050 West 190th Street, Suite 205 | | Torrance | CA | 90504 | 6/29/2021 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | Schedule of Service and Protection | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Securitas Technology Corporation | 8350 SUNLIGHT DRIVE | | FISHERS | IN | 46037 | MASTER SERVICE AGREEMENT, EFFECTIVE 2/18/2023 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | VALUE LEASE AGREEMENT | Medelita LLC | 6/15/2024 |
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | CUSTOMER CARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Sharp Electronics Corporation | 100 PARAGON DR | | MONTVALE | NJ | 07645 | CUSTOMER CARE MAINTENANCE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SHAWN BEDNA | 610 LANTANA STREET | #63 | CAMARILLO | CA | 93010 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Sherry D. Thomas | 4312 N Verde St | | WACO | TX | 76708 | | Caresmatic Brands, LLC | 6/15/2024 |
| Consulting Agreement | SHUSOLTONS, INC. | 100 COVENTRY WAY | | HIGHLAND | IL | 62249 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Repurchase Agreement | Singer Family Trust | 4020 Prado Del Trigo | | Calabasas | CA | 91302 | REPURCHASE AGREEMENT | CB Parent, L.P. | 6/15/2024 |
| Professional Services | Skadden, Arps, Slate, Meagher & Flom LLP | PO Box 1764 | | White Plains | NY | 10602 | | Caresmatic Brands, LLC | 6/15/2024 |
| Professional Services | Skadden, Arps, Slate, Meagher & Flom LLP | PO Box 1764 | | White Plains | NY | 10602 | | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | SOFIA VERGARA ENTERPRISES, INC. | 2001 S. BAYSHORE DRIVE, SUITE 235 | | MIAMI | FL | 33133 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | SPS Commerce, Inc | 333 S 7TH ST STE 1000 | | MINNEAPOLIS | MN | 55402 | EDI Testing Contract dated 6/27/2012 | Caresmatic Brands, LLC | 6/15/2024 |
| Purchase Agreement | SUEZ ENERGY RESOURCES NA, INC. | 1990 POST OAK BLVD | | HOUSTON | TX | 77056 | SALES CONFIRMATION TEXAS FIXED PRICE RTC | Strategic Distribution, L.P. | 6/15/2024 |
| Equipment Agreement | SUPERREGADIO | 8190 BARKER CYPRESS ROAD 1900 | SUITE #102 | CYPRESS | TX | 77433 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | TEALIUM INC. | DEPT CH 19760 | | PALATINE | IL | 60055-9760 | TEALIUM SERVICE ORDER | AllHearts, LLC | 6/15/2024 |
| Service Agreement | The Aten Company | 712 E Main St | | Blanchester | OH | 45107 | Code Happy Store Vendor Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | | | | | | LEASE CONTRACT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | LEASE CONTRACT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | 9400 CORBIN AVENUE | | NORTHRIDGE | CA | 91324 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | Logility Platform Implementation for Caresmatic Brands | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Parker Avery Group | 3225 Shallowford Rd Ste 310 | | Marietta | GA | 30062 | | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | The Pokemon Company International, Inc. | 10400 NE 4th Street, | Suite 2800 | Bellevue | WA | 98004 | FIRST AMENDMENT TO THE, Exhibit A | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | The Vertical Collective, LLC | 116 South Catalina Avenue | | 119 Redondo Beach | CA | 90277 | Vendor Agreement/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | THERMOFOOT LLC | 4510 Guildhall Court | | Westlake Village | CA | 91361 | Consulting Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | THERMOFOOT LLC | 4510 Guildhall Court | | Westlake Village | CA | 91361 | CONSULTING AGREEMENT/PROPRIETARY INFORMATION/ASSIGNMENT OF INVENTIONS AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | RENTAL AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | TimePayment Corp. | 1600 District Ave | Suite 200 | Burlington | MA | 01803 | Correspondence from Time Payment Corp dated 6/2/2016 | Strategic Distribution, L.P. | 6/15/2024 |
| Consulting Agreement | TOMMASO CARDULLO | 512 West 4770 North | | Provo | UT | 84604 | Independent Contractor/Proprietary Information/Assignment of Inventions Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| License Agreement | TOMMYE MASK 2020 LLC | 10103 EMILY SPRINGS | | SAN ANTONIO | TX | 78255 | LICENSE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | SOW 02 TO PERFORM SERVICES FOR CARESMATIC | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | TOMORROW AGENCY LLC | 24 LINCOLN AVENUE | | RUMSON | NJ | 07760 | SOW 01 TO PERFORM SERVICES FOR CARESMATIC | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1080 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1080 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Equipment Agreement | TONER EXPRESS | 1080 COURTNEYPARK DRIVE | UNIT 5 | MISSISSAUGA | ON | L5T 1R4 | RENTAL CONTRACT | Silverts Adaptive, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2542 - TLS 1030 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2543 - TLS 2134 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2544 - TLS 4001 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2545 - TLS 1014, EQUIPMENT LEASE NO. 2542 - TLS 1030, EQUIPMENT LEASE NO. 2546 - TLS 1033, EQUIPMENT LEASE NO. 2547 - TLS 1034, EQUIPMENT LEASE NO. 2548 - TLS 1078, EQUIPMENT LEASE NO. 2549 - TLS 2007, EQUIPMENT LEASE NO. 2543 - TLS 2134, EQUIPMENT LEASE NO. 2544 - TLS 4001 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2545 - TLS 1014 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2546 - TLS 1033 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2547 - TLS 1034 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2548 - TLS 1078 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2549 - TLS 2007 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2550 - TLS 1024, EQUIPMENT LEASE NO. 2553 - TLS 2131, EQUIPMENT LEASE NO. 2552 - TLS 2083, EQUIPMENT LEASE NO. 2551 - TLS 569095 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2554 - TLS 2003, EQUIPMENT LEASE NO. 2555 - TLS 2104, EQUIPMENT LEASE NO. 2556 - TLS 56347, EQUIPMENT LEASE NO. 2557 - TLS 53498, EQUIPMENT LEASE NO. 2559 - TLS 2096, EQUIPMENT LEASE NO. 2560 - TLS 2103 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2554 - TLS 2003 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2555 - TLS 2104 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2556 - TLS 56347 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2557 - TLS 53498 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2559 - TLS 2096 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2560 - TLS 2103 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2561 - TLS 2132 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2562 - TLS 2138 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2563 - TLS 5263 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2564 - TLS 9144 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2565 - TLS 2005 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | Trailer Lease | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2838 - TLS 1022 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2839 - TLS 2001 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2840 - TLS 142019 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2856 - TLS 2130 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | EQUIPMENT LEASE NO. 2857 - TLS 2090 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | TRAILER LEASING SOLUTIONS, LLC | 385 E. SHADY GROVE ROAD | | GRAND PRAIRIE | TX | 75050 | Master Service Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | TURKATECH, INC. | 5452 JILLSON STREET | | LOS ANGELES | CA | 90040 | PURCHASE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | UBS SECURITIES LLC | 1285 AVENUE OF AMERICAS | | NEW YORK | NY | 10019 | STRATEGIC PARTNERS ACQUISITION CORP. AMENDMENT ENGAGEMENT LETTER | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Service Agreement | UBS SECURITIES LLC | 1285 AVENUE OF AMERICAS | | NEW YORK | NY | 10019 | STRATEGIC PARTNERS ACQUISITION CORP. AMENDMENT ENGAGEMENT LETTER | Strategic Partners Acquisition Corp. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-004 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-020 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-022 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-022 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-002 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-002 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-003 | Caresmatic Brands, Inc. | 6/15/2024 |
| Lease | US Bank / Revolution Office | 9043 LURLINE AVENUE | | CHATSWORTH | CA | 91311 | Agreement # 500-06022112-003 | Caresmatic Brands, Inc. | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | EQUIPMENT LEASE | Caresmatic Brands, Inc. | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | EQUIPMENT LEASE | Caresmatic Brands, Inc. | 6/15/2024 |
| Equipment Agreement | US BANK EQUIPMENT FINANCE | 1310 MADRID ST | | MARSHALL | MN | 56258-4002 | Equipment Value Agreement | Caresmatic Brands, Inc. | 6/15/2024 |
| Service Agreement | US Security Associates, Inc. | 800 W. AIRPORT FREEWAY | SUITE 230 | DALLAS | TX | 75236 | SECURITY SERVICE AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Service Agreement | US Security Associates, Inc. | 800 W. AIRPORT FREEWAY | SUITE 230 | DALLAS | TX | 75236 | SECURITY SERVICE AGREEMENT | Strategic Distribution, L.P. | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | SUBLEASE FOR A SINGLE SUBLESSEE | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | Commencement Date Memorandum | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | SUBLEASE FOR A SINGLE SUBLESSEE | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Lease | Virgin Galactic Holdings, Inc. | 166 NORTH ROADRUNNER PARKWAY | SUITE 1C | LAS CRUCES | NM | 88011 | FIRST AMENDMENT TO LEASE AND CONSENT TO SUBLETTING | Medelita, LLC | 6/15/2024 |
| Service Agreement | Virtu | 4025 Spencer Street | Suite 305 | Torrance | CA | 90503 | Code Happy Store Online Channel Partner Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | SEO ORDER FORM | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | Master Services Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Visiture, LLC | 444 King Street | | Charleston | SC | 29403 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Wakelogic USA | PO BOX 826689 | | PHILADELPHIA | PA | 19182-9989 | RENTAL AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Wakelogic USA | PO BOX 826689 | | PHILADELPHIA | PA | 19182-9989 | RENTAL AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Master Equipment Lease Agreement #32224 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | SECURITY AGREEMENT dated as of July 28, 2023 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Master Lease Agreement #32224 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | (Equipment Schedule #01) | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Waiver of Landlord's Lien | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | ASSIGNMENT OF PURCHASE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Progress Payment Request and Authorization #1 | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Patent Security Agreement | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Guaranty | Caresmatic Brands, LLC | 6/15/2024 |
| Equipment Agreement | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Master Equipment Lease Agreement #32224 | Caresmatic Brands, LLC | 6/15/2024 |
| Lease | Wingspire Equipment Finance, LLC | 18302 Irvine Blvd Ste 300 | | Tustin | CA | 92780 | Equipment Schedule # 01 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | WPROMOTE AGREEMENT | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | EXHIBIT A STATEMENT OF WORK | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | Wpromote | 2100 E. Grand Ave. First Floor | | El Segundo | CA | 90245 | STATEMENT OF WORK: SEO & CONTENT SERVICES | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | ORDER FORM | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #4 | AllHearts, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #5 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #6 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #3 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND ORDER FORM #3 & #1 | Medelita, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | AMENDMENT #1 TO ORDER FORM#5 | Caresmatic Brands, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | AMENDMENT #1 TO ORDER FORM #3 | Medelita, LLC | 6/15/2024 |
| Software Agreement | WUNDERKIND CORPORATION | 285 FULTON ST FL 74 | ONE WORLD TRADE CTR | NEW YORK | NY | 10007 | WUNDERKIND TEXT ORDER FORM #2 | Caresmatic Brands, LLC | 6/15/2024 |
| Service Agreement | Zayo Group | PO Box 952136 | | Dallas | TX | 75395 | 1GBPS Dedicated Fiber for Colo | Caresmatic Brands, LLC | 6/15/2024 |

| Category | Contract Counterparty | Address 1 | Address 2 | CITY | STATE | ZIP | Contract Description | Legal Entity | Reject Date |
|---|---|---|---|---|---|---|---|---|---|
| Service Agreement | Zellers Inc. | 6455 Tamken Road | | Mississauga | ON | L5T 2X7 | Master merchandise vendor agreement | Careismatic Brands, LLC | 6/15/2024 |
| Service Agreement | Zerolag Communications, Inc. | 289 S. Robertson Blvd. | #441 | Beverly Hills | CA | 90211 | Master Services Agreement | Careismatic Brands, LLC | 6/15/2024 |